IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

   Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

   Defendants.

**JOINT MOTION TO RESOLVE DISPUTE REGARDING PROTECTIVE ORDER
AND FOR ENTRY OF PROTECTIVE ORDER**

**I. INTRODUCTION**

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA"), Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A. (collectively, "PNC"), and Defendants Heather Kelly and Alex Tsarnas (the "Individual Defendants") hereby move this Court to resolve their dispute regarding a Protective Order in this case, and for entry of a Protective Order.

The parties anticipate that they will be required to produce documents and information in this lawsuit that are confidential and competitively sensitive, including technical product details, product roadmaps, business strategies, and pricing information.

The parties therefore jointly request entry of a two-tier Protective Order that permits the designation of certain categories of non-public business information as "Confidential" and the

1

designation of certain categories of competitively-sensitive information as "Highly Confidential – Attorneys' Eyes Only" (or "HC-AEO"). The disclosure of the parties' confidential and sensitive information outside of this litigation could result in significant injury to one or more of the parties' business or privacy interests. In crafting the proposed Protective Order, the parties have taken into consideration the procedures set forth in *Gillard v. Boulder Valley School Dist.*, 196 F.R.D. 382 (D. Colo. 2000). In light of the foregoing, there is good cause to enter the proposed Protective Order in this case.

Apart from one section (Section 7.3(k)), the parties have agreed on the terms of the proposed Protective Order. Regarding Section 7.3(k), the parties met and conferred in good faith but were unable to resolve a dispute over the limits on the Individual Defendants' review of documents designated as HC-AEO. The parties' respective positions on this issue are set forth below. The parties are also filing herewith, and providing in MS Word format, an accompanying proposed Protective Order that contains all of the terms agreed upon by the parties, with competing proposals from the parties for the provision in dispute.

Accordingly, the parties hereby jointly request that the Court enter a version of the proposed Protective Order that adopts one of the parties' proposals for Section 7.3(k), or that provides such other relief as the Court may deem appropriate.

## II.     PLAINTIFFS' POSITION

SRSA requests a Protective Order requiring that the Individual Defendants' review of HC-AEO documents (a) must take place in the presence of counsel or over a screen-sharing application, such as WebEx or Google Hangouts, controlled by outside counsel; and (b) must be limited to HC-AEO documents that the Individual Defendants authored or possessed, or that they

had access to at SRSA (a condition all parties have agreed to).  Under the circumstances of this case, the Individual Defendants should not be permitted to possess copies of HC-AEO documents, nor should they be permitted to access those documents online outside the presence of counsel (e.g., by reviewing them, unsupervised, over a document review platform).  This balanced approach appropriately protects SRSA's trade secrets and highly confidential information from further misappropriation or use while enabling counsel to show HC-AEO documents to the Individual Defendants for purposes of preparing their defense.

### A. Background

The Individual Defendants—Heather Kelly and Alex Tsarnas—were high-level and trusted employees at SRSA from 2014-2018 with significant product development and customer-facing job responsibilities.  (Verified First Amended Complaint (Dkt. No. 12) ("VFAC") ¶¶ 45-49.)  On January 23, 2018, however, SRSA fired Tsarnas after discovering that he had embezzled over $35,000 from the company through deliberate misuse of multiple credit cards and falsification of his expense reports.[1]  (VFAC ¶¶ 50-51.)  But even before SRSA fired Tsarnas, he and Kelly had been plotting together to leave SRSA, join a competitor, and build a copycat product.  (VFAC ¶ 52.)  Kelly followed Tsarnas out the door on March 8, 2018, and both joined Defendant PNC in the ensuing two weeks.  (VFAC ¶ 60.)

SRSA's subsequent forensic analysis has revealed that, in the several days between leaving SRSA and joining PNC, Kelly surreptitiously downloaded and/or emailed herself

---

[1] When confronted with the evidence of this misconduct, Tsarnas eventually admitted that he had submitted false statements for reimbursement and, later in 2018, repaid the amount he had embezzled from SRSA.

3

numerous SRSA trade secret documents.  (VFAC ¶¶ 61-68.)[2]  Text messages sent by Kelly in April 2018 show that, within weeks of joining PNC, Kelly assumed an integral role in guiding PNC's development of a remarkably similar product—one that, accordingly to PNC's marketing literature, copies all of the key features of SRSA's core products, even integrating forms that were *developed by SRSA* and misappropriated by Tsarnas and Kelly.  (VFAC ¶¶ 72, 75.)  Since launching its copycat product, PNC (with Tsarnas and Kelly in key customer-facing roles) has successfully targeted SRSA's customers, including customers whose previous relationship with SRSA was not publicly known.  (VFAC ¶¶ 79-85.)

After SRSA filed and served its Verified First Amended Complaint, SRSA requested that, during the pendency of this lawsuit, the Individual Defendants cease working on products that compete with SRSA's.  Defendants refused.  In light of SRSA's specific, verified allegations against the Individual Defendants and their refusal to cease competing directly with SRSA, SRSA faces the threat of further irreparable harm if the Individual Defendants receive unregulated access to trade secrets and highly confidential documents produced by SRSA.

### B. Argument

The Court may, for good cause, issue a blanket protective order requiring that "trade secret[s] or other confidential research, development, or commercial information . . . be revealed only in a specified way."  *See* Fed. R. Civ. P. 26(c)(1)(G); *Gillard*, 196 F.R.D. at 385. Good cause exists for limiting the Individual Defendants' review of HC-AEO documents as proposed by SRSA, because these limitations are necessary to protect SRSA's trade secrets and

---

[2] Forensic analysis of Tsarnas's devices is ongoing but indicates that he too may have copied and taken with him confidential SRSA information.

4

highly confidential business information. In response to Defendants' requests for production, SRSA will be producing not only the detailed technical workings of its software products but also its business strategies, its product roadmaps, its customer information, and its pricing programs, among other confidential documents. These are the sorts of information typically subject to restrictive conditions in a protective order.

Indeed, it is common practice, both in this District and elsewhere, to enter two-tier protective orders that *entirely prevent* individual defendants in trade secrets cases from seeing HC-AEO-designated material. "The disclosure of confidential information on an 'attorneys' eyes only' basis is a routine feature of civil litigation involving trade secrets. . . . The purpose of this form of limited disclosure is to prevent a party from viewing the sensitive information while nevertheless allowing the party's lawyers to litigate on the basis of that information." *Paycom Payroll, LLC v. Richison*, 758 F.3d 1198, 1202-03 (10th Cir. 2014). For example, out of the seven two-tier protective orders that parties have stipulated to in trade secret cases before Magistrate Judge Crews, four entirely prohibit the individual defendants from reviewing material designated "attorneys' eyes only."[3] Courts in other cases have upheld similar provisions. *See, e.g.*, *Brand Energy & Infrastructure Servs., Inc. v. Irex Corp.*, No. 16-cv-2499, 2017 WL 9512135, at *3 (E.D. Pa. May 4, 2017) ("The amended complaint alleges that these individuals and others unlawfully stole trade secret and other business sensitive information from Brand. These allegations are adequate to establish a reason for not sharing AEO-designated materials

---

[3] *See BOKF, N.A. v. Condon*, No. 1:19-cv-01044, Dkt. No. 43 at ¶ 5; *Cloud Investment, LLC v. Wraight*, No. 1:18-cv-02851, Dkt. No. 29 at ¶ 7.3; *Optiv Security Inc. v. Defy Security, LLC*, No. 1:18-cv-02212, Dkt. No. 31 at page 3; *Dalkita, Inc. v. Devin Mills Consulting, LLC*, No. 1:18-cv-01398, Dkt. No. 48 at ¶ 5.

5

with these individual defendants.").

  This established body of law would support precluding the Individual Defendants from having *any* access to HC-AEO materials. Nevertheless, as a compromise, SRSA has agreed that the Individual Defendants may review certain HC-AEO materials in the physical presence of counsel or through a screen-share session (such as a WebEx or Google Hangout) hosted by counsel. SRSA's proposal enables Kelly and Tsarnas to provide input regarding specific HC-AEO documents and review them in preparation for testimony, while preventing their unfettered access to the very documents and information they misappropriated.[4] By comparison, the Individual Defendants' proposal—that they have around-the-clock access to HC-AEO documents through a web-based document review platform—is functionally no different than giving them copies of SRSA's HC-AEO documents for the duration of the litigation, since they would be able to access SRSA's trade secrets and highly confidential information at their leisure, even as they actively compete against SRSA.[5] Notably, Defendants take the position that they no longer possess any SRSA confidential information—due at least in part to intentional spoliation efforts by Defendant Kelly when she learned that SRSA was investigating her. (*See* VFAC ¶ 65.) Enabling Kelly and Tsarnas to review HC-AEO documents outside the presence of

---

[4] *See, e.g.*, *Sci. Games Int'l, Inc. v. Cash*, No. 16-cv-00142, 2017 WL 542034, at *7 (N.D. Ga. Jan. 25, 2017) (permitting defense counsel to show HC-AEO documents to individual defendant, but requiring that the defendant "may not take notes about the document and may not maintain a copy after his review").

[5] Even if PNC were able to disable the review platform's "print" and "download" features, as Defendants have suggested (which is far from certain), that would not prevent the Individual Defendants from using the "Print Screen" function, copying and pasting text, writing down trade-secret information, or literally reviewing SRSA trade secrets on one computer monitor while they develop sales plans or product development roadmaps for PNC on the other.=

6

counsel would therefore create new and unnecessary risk of further misappropriation.

Defendants' arguments to the contrary are without merit.  First, the Individual Defendants have no absolute due process right to access SRSA's HC-AEO documents and information.  *See Brand Energy* at *4-5 ("[The individual defendants] have not established that the AEO designation will prevent them from defending Brand's claims."); *UCC Ueshima Coffee Co. v. Tully's Coffee Corp*., No. 06-cv-1604, 2007 WL 710092, at *2 (W.D. Wash. Mar. 6, 2007) ("The Court finds defendant has not established that restricting the list's disclosure to defendant's attorneys and experts will prejudice its case.").  SRSA's proposal removes any plausible prejudice by permitting outside counsel at Ballard Spahr, designated in-house counsel at PNC, and testifying and non-testifying experts hired on the Individual Defendants' behalf to possess HC-AEO information produced by SRSA, and the Individual Defendants themselves to review HC-AEO information in the presence of counsel.

Second, allowing the Individual Defendants to review HC-AEO information through a screen-share session hosted by counsel adequately addresses Defendants' concern that requiring review in the presence of counsel makes such review impractical.  With screen-sharing, the Individual Defendants can review HC-AEO information with counsel remotely over the Internet, providing the Individual Defendants ample opportunity to review HC-AEO information without further jeopardizing SRSA's trade secrets and highly confidential business information.  Nor does it impose an unreasonable burden on counsel to have SRSA's trade-secret documents reviewed in person or via screen-sharing.  Defendants are represented by Ballard Spahr, a firm with over 650 attorneys, including counsel of record in Pennsylvania, where PNC is based.

Finally, Defendants' argument that SRSA's approach is untenable because SRSA might

7

"over-designate" documents as HC-AEO is a red herring. The proposed Protective Order already includes a mechanism for challenging designations with which a party disagrees. And Defendants' argument that SRSA has already "over-designated" is plain wrong. The 400 pages of HC-AEO material Defendants refer to are from a set of thirteen lengthy, hard-copy SRSA documents that Kelly kept in her possession after joining PNC and that were later returned to SRSA by PNC's then-counsel. SRSA made an informal production of these documents to Defendants' current counsel of record several weeks ago as a courtesy. That production included a 176-page work notebook of Kelly's that is rife with customer contact information, details of deals Kelly worked on at SRSA, prices and other confidential information about SRSA and its customers. SRSA appropriately designated that notebook as HC-AEO. Defendants now cherry-pick four non-confidential pages out of those 176 pages to suggest that there was an "over-designation," without providing to the Court any explanation of the provenance of the document, its size, or the remainder of its contents. This is misleading at best. SRSA will comply with the protective order's rules on designation; and if PNC disagrees with any particular designation, the protective order spells out the procedure to follow.

Since good cause exists to limit the Individual Defendants' review of SRSA's HC-AEO information to in-person review with counsel or through a screen-share session hosted by counsel, SRSA respectfully requests that the Court enter its proposed Section 7.3(k).

## III.    DEFENDANT'S POSITION

There is no dispute as to the following: (1) Mr. Tsarnas and Ms. Kelly (the "Individual Defendants") will not possess physical copies of any AEO documents; (2) any electronic access to the AEO documents will be in a manner that does not allow the Individual Defendants to print

8

or download the materials;[6] (3) any AEO documents produced in this case will be subject to a Protective Order entered by the Court; and (4) this Court possesses broad powers to enforce the terms of its Protective Order in the event of a violation. Consequently, the only issue in dispute is whether the Individual Defendants are limited to reviewing what is already hundreds and is likely to be thousands pages of AEO documents only when their counsel is able to remotely babysit their review of documents that cannot be downloaded or printed.

      **A.**     *SRSA's Proposal Would be Highly Prejudicial*

SRSA's entire case is premised on three assumptions, namely that: (1) the information SRSA seeks to protect qualifies as a trade secret; (2) the Individual Defendants possess "intimate knowledge" of these alleged trade secrets; and (3) the Individual Defendants must have disclosed SRSA's alleged trade secrets to their new employer because, according to SRSA, PNC would not have been able to create a competitive online platform for M&A payments absent unlawful use of SRSA's alleged trade secrets. Importantly, the issue before the Court does not involve disclosing an alleged trade secret to someone for the first time. Instead, SRSA's entire claim is specifically based on the allegation that the Individual Defendants already know the alleged trade secrets and are regularly using them in their new positions at PNC. In essence, SRSA "claims [that] the individual Defendants have already viewed and stolen the information at their leisure...Plaintiffs essentially accuse Defendants of having taken the information but do not want Defendants to be able to see the information Plaintiffs claim Defendants stole." *Core Laps LP v. AmSpec*, 2017 U.S. Dist. LEXIS 132317, at *8 (S.D. Ala. Aug. 18, 2017) (affirming magistrate

---

[6] Undersigned counsel is advised that its database platform has a setting which will allow viewing only.

judge de-designation of documents). Here, SRSA is not only attempting to restrict the Individual Defendants' ability to review the very documents they allegedly "stole," SRSA is even contending that Ms. Kelly's own handwritten notes constitute a trade secret that she should not be permitted to review absent supervision. *See* Exhibit A.[7]

The Individual Defendants are the witnesses most, and in some respects uniquely, able to disprove each of SRSA's allegations against them and it would be fundamentally prejudicial to drastically restrict their ability to do so. For example, the Individual Defendants would be prejudiced in their ability to demonstrate that the information that SRSA now claims is proprietary and a trade secret is well-known in the industry in which the Individual Defendants have spent their careers. Ms. Kelly and Mr. Tsarnas, excluding the couple of years of employ with SRSA, have a combined four decades of experience in this industry. They are uniquely positioned to explain and demonstrate that SRSA's solutions to common issues are "readily ascertainable" and otherwise "generally known." *See* 18 U.S.C. §1839(3)(B) (defining a trade secret to require, among other things, that it not be generally known or readily ascertainable). This will include reviewing the alleged trade secret documents page by page and analyzing

---

[7] This is not an isolated example of over-designation by SRSA. Even though no party has made a formal production to date in this case, SRSA has already designated over 400 pages as AEO. This does not include the Spanish homework of Ms. Kelly's child, a receipt for her husband's painting business, and nearly 250 additional pages of materials, which SRSA initially designated as AEO but after "carefully" reviewing them re-designated as *merely* Confidential. *See* Exhibit B. SRSA accuses Defendants of "cherry-picking" examples of SRSA's improper designations. Given that SRSA is the party seeking to substantially prejudice Defendants' ability to prepare its defense through the restrictions on AEO documents, it does not seem unfair for the Court to insist on some level of selectivity in SRSA's use of that designation. Otherwise, both the Parties and the Court will be required to devote substantial time and resources to conducting hundreds of mini-trials as to whether a particular document is a trade secret and thus appropriate for the AEO designation.

where the information contained therein can be found in the public domain or is well known to others in the industry.  Given the expansive approach SRSA has taken to the identification of its alleged trade secrets to date, it will be impossible for the Individual Defendants to review what is likely to be thousands of pages of documents under the restrictions of SRSA's proposal.  *See* Am. Compl. ¶¶ 86-88 (alleging that twenty different broad categories of trade secrets are at issue).

The Individual Defendants are also uniquely positioned to compare SRSA's alleged trade secrets to the way in which PNC accomplishes similar functionality.  SRSA alleges that the M&A payments industry is a "highly complex business" and the technology necessary to perform these services through an online platform are "highly complicated."  *See* Am. Compl. ¶23; *id.* at ¶35.  Moreover, SRSA alleges that the Individual Defendants each possess "deep knowledge" of how SRSA managed these complexities.  *See* Am. Compl. ¶42; *id.* at ¶¶47-49.

Where, as here, individuals possess a unique ability to analyze the allegedly proprietary information of the other party, courts routinely find that impairing the individual's ability to assist in the preparation of the case is prejudicial.  For example, in *MGP Ingredients, Inc. v. Mars, Inc.*, 2007 U.S. Dist. LEXIS 16815, at *8 (D. Kan. Mar. 8, 2007), the court explained that it "is likely that Plaintiff will be prejudiced if its in-house scientists cannot have access to the confidential and highly confidential information disclosed by Defendants in this case.  Plaintiff must be able to rely on its in-house scientists to help direct the litigation, devise legal strategy, and provide assistance to Plaintiff's outside counsel.  Given the technical nature of this case, the advice of Plaintiff's in-house scientists with specialized knowledge of the industry could be essential to the proper handling of this litigation by outside counsel." *Id.*  Likewise, it is

prejudicial for a party to be unable to review the other party's allegedly proprietary information where they possess unique knowledge by virtue of their relationship with the other party or experience in the industry.  *See Lindsay v. Elsevier, Inc.*, 2016 U.S. Dist. LEXIS 111786, at *13-*14 (S.D. Cal. Aug. 19, 2016) (Given Plaintiff's extensive experience working in the field and with Defendant...the Court further finds that Plaintiff would be prejudiced if he were not permitted to review [defendant's] information.").

Here, Defendants are entitled to similarly rely on the Individual Defendants' four decades of experience in this industry.  Conducting a detailed analysis of the dozens of individual trade secrets that SRSA has claimed to date will require a significant expenditure of time on behalf of the Individual Defendants.  Requiring the Individual Defendants to coordinate schedules with their counsel each time will turn a difficult task into an impossible one.

**B.**     ***SRSA's Proposal Would Impose a Significant Burden on Defendants***

As explained above, the Individual Defendants possess unique knowledge that will assist in the defense of this action.  Nevertheless, Defendants have endeavored to assuage SRSA's concerns by agreeing to not provide physical copies of AEO documents to the Individual Defendants and limiting their electronic review to a platform that will prevent the downloading or printing of these documents.  SRSA insists that these safeguards are insufficient and demands a Protective Order that permit the Individual Defendants to review AEO documents electronically only if they are published through a "screen-sharing application such as WebEx, Skype for Business or Google Hangouts controlled by outside counsel."  Aug. 12, 2019 e-mail of W. Brauning.  SRSA's proposal that an attorney act as an electronic page turner for the Individual Defendants would not only impose significant costs on the Defendants but would

require Defendants to devote countless attorney hours that would otherwise be spent preparing for the preliminary injunction hearing in this matter.[8]

Given the extreme burden SRSA's proposal would place on Defendants' ability to defend themselves, it is particularly noteworthy that SRSA's proposal would not provide it any greater comfort than it would receive under Defendants' proposal. SRSA cannot articulate the particularized harm that it believes would be prevented from requiring Defendants' counsel to participate in an electronic review. Under either party's proposal, the Individual Defendants would not be able to download or print documents displayed to them electronically. SRSA's only attempt to justify the extraordinary burden it seeks to impose is that Defendants' "would not prevent the Individual Defendants from using the "Print Screen" function, copying and pasting text, writing down trade-secret information, or literally reviewing SRSA trade secrets on one computer monitor while they develop sales plans or product development roadmaps for PNC on the other." Of course, nothing in SRSA's proposal would prevent the Individual Defendants similarly taking notes of alleged trade secret information, taking screenshots of the screens displayed by outside counsel, or simultaneously using a second computer to somehow misappropriate SRSA's alleged trade secrets. And of course, any party can speculate as to elaborate spy novel inspired ways in which a Protective Order might be violated. Every

---

[8] Nor would these costs and burdens be insubstantial. The Individual Defendants are separated from their counsel by thousands of miles and across multiple time zones. Ms. Kelly lives in Wisconsin and Mr. Tsarnas lives in New Jersey. SRSA points out that both Ballard Spahr and PNC are located in Pennsylvania as evidence that the burden is not great. First, neither Mr. Tsarnas or Ms. Kelly live in Pennsylvania. Further, Philadelphia where Ballard Spahr is located is 300 miles from Pittsburgh where PNC located. In other words, Pittsburgh is as close to Philadelphia as Santa Fe is to Denver.

Protective Order involves reliance on the Parties and their Counsel to abide by its terms in good faith while simultaneously empowering the Court with broad and expansive power to enforce its term so that no party is required to rely solely on the good faith of its adversary.  Thus, the <u>only</u> difference is that in SRSA's proposal, Defendants would incur substantial prejudice and costs without impacting the hypothetical and unsupported threat of disclosure to SRSA in any meaningful way.  Given that SRSA receives no greater protection under its proposal, imposing such prejudice on Defendants, to say nothing of the financial and logistical hardships, would be an undue burden.

Respectfully submitted,

Dated: September 4, 2019

By: */s/ Warren A. Braunig*
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Maya Karwande
*mkarwande@keker.com*
Victor H. Yu
*vyu@keker.com*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:      415-391-5400
Facsimile:       415-397-7188

|  |  |
|---|---|
|  | SHERIDAN ROSS P.C.<br>Scott R. Bialecki<br>*sbialecki@sheridanross.com*<br>Matthew C. Miller<br>*mmiller@sheridanross.com*<br>1560 Broadway, Suite 1200<br>Denver, Colorado 80202<br>Telephone:     303 863 9700<br>Facsimile:      303 863 0223<br>Email:     litigation@sheridanross.com<br><br>Attorneys for Plaintiffs<br>SRS ACQUIOM INC. AND SHAREHOLDER REPRESENTATIVE SERVICES LLC |
| Dated:  September 4, 2019 | By:  */s/ Sarah Block Wallace*<br>Andrew J. Petrie<br>Sarah Block Wallace<br>**BALLARD SPAHR LLP**<br>1225 Seventeenth Street, Suite 2300<br>Denver, Colorado 80202-5596<br>Telephone: 303-292-2400<br>Facsimile: 303-296-3956<br>petriea@ballardspahr.com<br>wallaces@ballardspahr.com<br><br>Hara K. Jacobs<br>Noah S. Robbins<br>**BALLARD SPAHR LLP**<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103-7599<br>Telephone: 215-668-8500<br>Facsimile: 215-864-8999<br>jacobsh@ballardspahr.com<br><br>Attorneys for Defendants<br>PNC FINANCIAL SERVICES GROUP, INC., PNC BANK, N.A., HEATHER KELLY, and ALEX TSARNAS |

We hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.