IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability
company,

       Plaintiffs,

   v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

       Defendants.

---

## STIPULATED ORDER REGARDING DISCOVERY OF ELECTRONICALLY STORED INFORMATION

---

THE COURT, having reviewed the parties' Joint Motion For Entry Of Stipulated Forensic Inspection Order and Stipulated Order Regarding Discovery Of Electronically Stored Information, and for good cause shown, hereby ORDERS as follows:

### <u>DEFINITIONS</u>

1.     "Bates Number" means a unique number affixed to each page of a document produced in the Litigation.

2.     "Custodian" or "Custodians" shall include those current and former employees of a Party who were involved in and/or have knowledge of the matters at issue in the Complaint.

3. "Database" means a collection of related Electronic Data organized (often in rows, columns and tables in an electronic environment for a particular purpose). Databases often perform various functions, including data analysis, data sorting and report generation. Microsoft Access and Oracle are common database platforms.

4. "Document" or "documents" shall include both Hard Copy and Electronic Documents as defined herein.

5. "Electronic Document" means Documents existing in electronic form at the time of collection, including but not limited to: email, word processing files (e.g. Microsoft Word), computer presentations (e.g., PowerPoint slides), spreadsheets (e.g., Excel), image files (e.g., PDF) and instant messaging files sent via chat client or SMS.

6. "E-mail" (Electronic mail) means an electronic means for sending, receiving, and managing communications via a multitude of different structured data applications (e-mail client software), including, but not limited to, Outlook, or Lotus Notes, or those often known as "webmail," including, but not limited to, Gmail or Yahoo Mail.

7. "ESI" is an abbreviation of "electronically stored information" shall include all electronic files, documents, data and information covered under the Federal Rules of Civil Procedure.

8. "Extracted Text" means the text extracted from a Native Format file and includes all header, footer and document body information, including any hidden content where available.

9. "Format" means the internal structure of a file, which defines the way it is stored and used.

10.     "Hard Copy Document" means Documents existing in paper form at the time of collection.

11.     "Load file" means an electronic file containing information identifying a set of paper-scanned images or processed ESI and indicating where individual pages or files belong together as documents, including attachments, and where each document begins and ends.  A Load file will also contain data relevant to the individual Document, including extracted and use-created Metadata, as well as links to Native or Text Files, should such data be available.

12.     "Metadata" means corresponding data about an Electronic Document that resides in the un-viewed area of an Electronic Document and is generally not seen when such a Document is printed (e.g., Date Created, Author).  It is information associated with or about a file which describes the characteristics, origins, usage or validity of the electronic file and is information generated automatically by the operation of a computer or other information technology system when a native file is created, modified, transmitted, deleted, saved or otherwise manipulated by a user of the system or application that generated, edited or modified such native file.

13.     "Native Format" means the format of an Electronic Document in which the Document was created and used (also referred to in terms of "Native Production").

14.     "OCR" means the optical character recognition technology.

15.     "Producing Party" shall refer to the party producing Documents and other ESI in response to a discovery request propounded by another party.

16.     "Receiving Party" shall refer to the party receiving Documents and other ESI in response to a discovery request propounded by the Receiving Party.

17.     "Static Image" means or refers to a representation of Documents or other ESI produced by converting a native file into a standard image format capable of being viewed and printed on standard computer systems.  A Tagged Image File Format (TIFF) is an example of a Static Image.

18.     "Text File" means a file containing the full multi-page text of a native extracted directly from the native file, or a file containing the text resulting from OCR of Hard Copy or redacted Documents.

## COOPERATION

The parties will conduct discovery in a cooperative matter.  The parties will identify liaisons who are knowledgeable about (a) the parties' electronic information storage systems and capabilities, (b) the parties' electronic discovery efforts, and (c) relevant aspects of electronic discovery, including search methodology and form of production, to explain those systems and capabilities and answer relevant questions.  Each party's liaison will be available to meet and confer about issues or disputes related to electronic discovery to avoid or resolve disputes without court intervention.

## SCOPE OF DISCOVERY AND PROPORTIONALITY

This protocol does not affect the proper subject matter of discovery in this action, nor does this protocol imply that Documents or other ESI produced under its terms are relevant or admissible in this action or in any other proceeding or action.

The parties will incorporate the proportionality standard set forth in Fed. R. Civ. P. 26(b)(2)(C) in formulating their discovery plan.   To further the application of the proportionality standard in discovery, requests for production of Documents and other ESI and related responses should be reasonably targeted, clear and as specific as practicable.

## **PRESERVATION**

A party has a common law obligation to take reasonable and proportional steps to preserve discoverable information in the party's possession, custody or control.  This order does not alter or expand the preservation obligations of any party.

With respect to ESI, the following provisions apply:

1.      Absent a showing of good cause by the requesting party, the parties shall not be required to modify, on a going-forward basis, the procedures used by them in the ordinary course of business to back-up and archive data; provided, however, that the parties shall take reasonable and proportional measures to preserve all discoverable ESI in their possession, custody or control.

2.      Absent a showing of good cause by the requesting party, the following categories of ESI need not be preserved:

a.      Random access memory (RAM), temporary files, or other ephemeral data that are difficult to preserve without disabling the operating system.

b.      Back-up data that are substantially duplicative of data that are more accessible elsewhere.

      c.     Data remaining from systems no longer in use that is unintelligible on the systems in use.

      d.     Electronic data (e.g., email, calendars, contact data, notes, and text messages) sent to or from mobile devices (e.g., iPhone, iPad, Android devices), provided that a copy of all such electronic data is routinely saved elsewhere (such as on a server, laptop, desktop or on "cloud" storage).

3.     If there is a dispute concerning the scope of a party's preservation obligations, the parties will meet and confer regarding what additional efforts would be reasonable and proportionate.

## PRODUCTION OF HARD COPY DOCUMENTS

1.     **IMAGE FORMAT.**  Documents that exist in hard copy format only shall be scanned and produced as single page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi).  By default, all documents are to be produced in black and white. Documents will be produced in color only where color is reasonably necessary to understand a document or image that is relevant to the claims or defenses of any party.  If any document that contains color is produced in black and white, each party shall honor reasonable and specific requests for the reproduction of color image(s) of such documents.  Color documents may be produced in .JPG format in lieu of TIFF images; where so produced, color JPG files should also be provided with a resolution of at least 300 dpi.  Each TIFF or JPG image shall be branded with sequential production numbers and appropriate confidentiality designations.  Each TIFF or JPG image filename shall correspond to the Bates number associated with that page.  TIFF or JPG files shall

show all text and images that would be visible to a user of the hard copy documents.

2.      **DATABASE LOAD FILES/CROSS-REFERENCE FILES**.   A production shall be provided with (a) a delimited data file (.dat) using Concordance default delimiters, and (b) an Opticon (Concordance Image) image load file (.opt) that can be loaded into Concordance version 8 or above.  In addition:

i.The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

ii.The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises.  Each TIFF or JPG in a production must be referenced in the corresponding image load file.

3.      **OCR TEXT FILES.** A commercially acceptable technology for optical character recognition ("OCR") shall be used for all scanned, hard copy documents.  The filename for the multi-page text file described above shall correspond to the beginning production number of the document.  If a document is redacted, the text files shall not contain the redacted portions of the documents, but should contain the remaining unredacted text.

4.      **METADATA.**  The following information shall be produced in the delimited data file accompanying hard copy documents: (a) BEGBATES, (b) ENDBATES, (c) CUSTODIAN, (d) CONFIDENTIALITY, (e) PAPERBOX, (f) PAPERFOLDER, and (g) PAPERTAB.  (e), (f) and (g) need only be provided where it is readily apparent during the scanning process.

5.   **UNITIZING OF DOCUMENTS.**   In scanning paper documents, distinct documents should not be merged into a single record, and single documents should not be split into multiple records (i.e., paper documents should be logically unitized).   The parties will use reasonable efforts to unitize documents correctly to avoid producing large numbers of documents in single "clumps".

## PRODUCTION OF ELECTRONICALLY STORED INFORMATION (ESI)

1.   **CULLING\FILTERING.**   Each party will use its best efforts to filter out common system files and application executable files by using a commercially reasonably hash identification process.   Hash values that may be filtered out during this process are in the National Software Reference Library ("NRSL") Modern RDS (minimal) hash set list. That list can be found at https://www.nist.gov/itl/ssd/software-quality-group/nsrl-download/current-rds-hash-sets.

2.   **DEDUPLICATION.**  Each producing party shall de-duplicate ESI on a global level (across all custodians) prior to production.   The basis for such de-duplication shall be the MD5 or SHA1 Hash values, or full text de-duplication.   For generating either the MD5 or SHA1 hash values for email, the parties shall instruct their ESI processing vendors to take attachments into account for such hash value generation.   The custodians of deduplicated copies of documents should be included in the database load file in a field for duplicative or other custodians (e.g. Dupe Custodian or All Custodian) and that field shall be updated via an overlay periodically and at the completion of document production in each major phase of the case.   Email threading technology may also be used in order to produce only the most inclusive version email of a thread and to exclude all other

lesser-included emails within that same thread that contain duplicative textual content which is subsumed by the emails designated by the threading technology as inclusive.  Lesser-included emails with attachments that are not present in the most inclusive copy of the email must be produced separately, and the parties are responsible for ensuring that their discovery software and vendors are taking this into account for the purpose of email threading.  Following production of the most-inclusive email threads, a receiving party may request, in writing, production of individual lesser-inclusive emails. The producing party shall produce any such requested emails within 3 business days of receiving the request.

3.    **STRUCTURED DATA.**  The parties shall meet and confer with respect to structured data sources that contain relevant information to determine what information the reports should contain.  Generally, data that is stored in a database, whether maintained internally by the party or through a third-party provider, shall be produced as reports in Microsoft Excel, Microsoft Access or ASCII delimited text format.

4.    **BACKUP DATA.**  Absent a showing of good cause, no party need restore any form of media upon which backup data is maintained in a party's normal or allowed processes, including but not limited to backup tapes, disks, SAN, disaster recovery systems, and other forms of media, to comply with its discovery obligations in the present case.

5.    **PRODUCTION FORMAT FOR ESI.** The format of productions of ESI shall comply with the below listed requirements:

a.    **IMAGE FORMAT.**   All documents covered by Sec. III of this

stipulation shall be produced as single page black and white Group IV TIFFs, created with a resolution of at least 300 dots per inch (dpi), unless so excepted by this order.  By default, all documents are to be produced in black and white.  Documents will be produced in color only where color is reasonably necessary to understand a document or image that is relevant to the claims or defenses of any party. If any document that contains color is produced in black and white, each party shall honor reasonable and specific requests for the reproduction of color image(s) of such documents. Color documents may be produced in .JPG format in lieu of TIFF images; where produced, color JPG files should also be provided with a resolution of at least 300 dpi.   Each TIFF or JPG image shall be branded with sequential production numbers and appropriate confidentiality designations.  Each TIFF or JPG image filename shall correspond to the Bates number associated with that page.  TIFF or jpg files shall show all text and images that would be visible to a user of the ESI documents.

      i.**PRESENTATIONS.**   The parties shall take reasonable efforts to process presentations (*e.g.*, PowerPoint) with hidden slides and speaker's notes unhidden, and to show both the slide and the speaker's notes on the TIFF of jpg image.

b.    **DATABASE LOAD FILES/CROSS-REFERENCE FILES.**   A production should be provided with (a) a delimited data file (.dat) using Concordance default delimiters, and (b) an Opticon (Concordance Image)

image load file (.opt) that can be loaded into Concordance version 8 or above.

      i.The total number of documents referenced in a production's data load file should match the total number of designated document breaks in the Image Load file(s) in the production.

      ii.The Opticon file should provide the beginning and ending Bates number of each document and the number of pages it comprises. Each TIFF in a production must be referenced in the corresponding image load file.

c.     **TEXT FILES.** The multi-page text files described above shall include text extracted from ESI with extractable text. For electronic files without extractable text (e.g. scanned paper documents, PDF files without text, etc.) or documents produced with redactions, the producing party shall use optical character recognition software (OCR) to generate text for the document. OCR generated text shall be provided for all documents without extractable text in the original native file unless the document is handwritten notes, drawings or is otherwise not easily convertible into a searchable format. The filename for the multi-page text file shall correspond to the beginning production number of the document.

d.     **NATIVE FILES.** Any file produced in native format should be produced with a link in the NativeLink field, along with extracted full text and applicable metadata fields set forth in Schedule A. Any file produced in

native format should be named to match the beginning Bates number of their corresponding entries in the database load files.  Additionally, every file produced natively should be accompanied by a Bates-stamped and confidentiality-stamped TIFF placeholder indicating the document was provided in native format.  Only the files discussed below may be produced in native format unless both parties agree otherwise in writing.

i. **SPREADSHEETS.**  Except for the placeholder referenced above, TIFF or JPG images of spreadsheets need not be produced unless redacted.  Where produced in TIFF or JPG format, the parties will make reasonable efforts to ensure that any spreadsheets that are produced only as TIFF or JPG images are formatted so as to be readable.

ii. **VIDEO AND AUDIO FILES.**  Audio and Video files will be produced in native format, with TIFF placeholders and available metadata provided in database load files.

iii. **EXCEPTIONS.**  For any processing exception (i.e. a file that cannot be processed by standard ESI processing tools) that is being produced due to document family relationships, the producing party shall provide a placeholder image, a Bates number and a confidentiality designation, in addition to associated metadata.

iv. **REQUEST(S) FOR ADDITIONAL NATIVE FILES.**  If good cause exists to request production of specified files, other than those

specifically set forth above, in native format, the requesting party may request such production and provide an explanation of the need for native file review, which request shall not unreasonably be denied. Any native files that are produced should be produced with a link in the NativeLink field, along with all extracted text and applicable metadata fields, as well as a Bates-stamped and confidentiality-stamped TIFF placeholder.

e.      **METADATA FIELDS AND PROCESSING.**   Each of the metadata and coding fields set forth in Appendix 1 that can be extracted shall be produced for each document.   The parties are not obligated to populate manually any of the fields in Schedule A if such fields cannot be extracted from a document, except for the following: (a) BEGBATES, (b) ENDBATES, (c) BEGATTACH, (d) ENDATTACH; (e) CUSTODIAN; and (f) CONFIDENTIALITY, which should be populated by the party or the party's vendor.

6.      **FORMAT & FOLDER STRUCTURE.**   The production data may be exchanged between counsel in encrypted form (*e.g.* VeraCrypt, password-protected Zip, or RAR files).  Productions of 10GB or less may be made via FTP or secure server; larger productions should be made on hard media (e.g., hard drives).  Each production shall be provided in the following folder structure:

a.      Top-level folder: This folder will indicate the production volume;

i.Sub-folders:

1.      IMAGES:  This folder will contain multiple sub-folders with ONLY TIFF (or .jpg) files in them.  No other type of file should reside in the "IMAGES" folder.  Sub-folders shall not contain more than 1000 images per folder.

2.      TEXT:   This folder will contain the full text files in UNICODE, UTF8 or ANSI format in a separate folder labeled TEXT.  Sub-folders shall not contain more than 1000 text files per folder.

3.      DATA:   This folder will contain load files compatible with Concordance version 8 or above and Opticon.

4.      NATIVES:  This folder will contain native files that the parties agree to produce during this litigation.  Sub-folders shall not contain more than 1000 native files per folder.

## PRIVILEGE LOGS

1.  For all documents withheld based on privilege, the parties agree to furnish logs which comply with the legal requirements under federal law, but at a minimum will include the following information:

a.      A unique number for each entry on the log.

b.      The date of document.  For emails this should be the sent date of the document and for loose ESI this should be the last-modified date of the document.

c.      The Author of the document.  For emails this should be populated

with the metadata extracted from the "Email From" field associated with the file.  For loose ESI, this should be populated with the metadata extracted from the "Author" field..

d.      Recipient(s) of the document where reasonably ascertainable.  For emails this should be populated with the metadata extracted from the "Email To" field associated with the file.  Separate columns should be included for the metadata extracted from the "Email CC" and "Email BCC" fields, where populated.

e.      A description of why privilege is being asserted over the document. This description should include information sufficient to identify if the document contained attachments over which privilege is also being asserted.

f.      The type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

2.      The parties shall identify on their logs where counsel is present in conversation, specifically for columns 1(c) and (d) noted above.  Where counsel creating the privilege is not readily ascertainable from columns 1(c) and (d) above, the parties shall include a reference to counsel in the privilege description field described in 1(e) above.

3.      Privilege logs may be produced on a rolling basis or after all productions are complete, but prior to the close of discovery.  If the log(s) are produced after all productions are complete, the receiving party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), regardless of the date of the

close of fact discovery.

## REDACTION LOGS

1.      For each document that is redacted, in addition to providing the redacted version of the document, the parties agree to furnish logs which comply with the legal requirements under Federal Law, but at a minimum will include the following information:

      a.      The Begin Production ID of the document.

      b.      The End Production ID of the document.

      c.      A description of why privilege is being asserted over the document.

      d.      If the document was redacted for privilege concerns, the type of privilege being asserted: (a) AC for Attorney/Client, (b) WP for Attorney Work Product, (c) CI for Common Interest.

2.      Redaction logs may be produced on a rolling basis or after all productions are complete, but prior to the close of discovery.  If the log(s) are produced after all productions are complete, the receiving party shall have thirty (30) days from the date of receipt to review and register complaints about said log(s), regardless of the date of the close of fact discovery.

## EXCEPTION TO LOGGING – LITIGATION RELATED PRIVILEGE DOCS

Communications involving inside or outside counsel for the parties related to this case, and materials withheld from discovery on grounds of privilege, work product or similar doctrines, that were created on or after May 1, 2019, need not be included in the parties' privilege log(s) as a matter of course.  These exceptions are made without prejudice to any party's ability and right to assert that such materials are discoverable and

not privileged or protected. These exceptions also do not apply to the redacted documents and their respective redaction log(s).

## INADVERTENT PRODUCTION OF PRIVILEGED INFORMATION

Pursuant to Federal Rule of Evidence 502(d), the inadvertent production of privileged or work product protected data is not a waiver in the pending case or in any other federal or state proceeding. The receiving party shall not use produced data that the producing party asserts is attorney-client privileged or work product protected to challenge the privilege or protection. The mere production of privileged information in a litigation as part of a mass production shall not itself constitute a waiver for any purpose.

In addition, the inadvertent production of any privileged document, information or thing shall not be deemed a waiver of such privilege or otherwise affect the producing party's right to seek return of the inadvertently produced document, information, or thing. The party receiving the document(s) that appears to be privileged shall promptly notify the producing party upon becoming aware that the document(s) may have been inadvertently produced and in any event, before making use of said document.

If documents which are claimed to be privileged or subject to the work-product doctrine are inadvertently produced, such documents shall be returned by the receiving party within two (2) calendar days of any written request therefore. The receiving party shall return all copies of the inadvertently produced document(s) and not retain any copies, notes, or summaries of said documents. If the receiving party seeks to challenge the privileged nature of the document(s), the receiving party must still return the document(s) to the producing party but may then seek re-production of the document(s).

It is the desire, intention and mutual understanding of the parties that all inadvertently or unintentionally disclosed or produced privileged information shall be treated as confidential and may not be disclosed by the receiving party to persons or entities other than the producing party without the written consent of the producing party.

If a party who received documents or information over which a privilege is asserted has disclosed such documents or information to any person or in any circumstance, the party must immediately: (a) notify, in writing, the producing party of the disclosure; (b) use best efforts to retrieve all copies of the documents or information over which the privilege is asserted; and (c) notify, in writing, the producing party regarding whether all copies have been retrieved.

The parties further agree that no motion to compel or other argument for waiver of privilege will be raised based upon the inadvertent or unintentional production or disclosure of privileged information.

Nothing herein shall prevent the receiving party from challenging the propriety of the claim of attorney client privilege, work product protections or other applicable privilege or immunity designation by submitting a written challenge to the court.

DATED: September 5, 2019.

BY THE COURT:

S. Kato Crews
United States Magistrate Judge

APPROVED:

By:  /s/   *Warren A. Braunig*
     Warren A. Braunig
     *wbraunig@keker.com*
     Benjamin D. Rothstein
     *brothstein@keker.com*
     Maya Karwande
     *mkarwande@keker.com*
     Victor H. Yu
     *vyu@keker.com*
     KEKER, VAN NEST & PETERS LLP
     633 Battery Street
     San Francisco, CA 94111-1809
     Telephone:    415-391-5400
     Facsimile:    415-397-7188

     SHERIDAN ROSS P.C.
     Scott R. Bialecki
     *sbialecki@sheridanross.com*
     Matthew C. Miller
     *mmiller@sheridanross.com*
     1560 Broadway, Suite 1200
     Denver, Colorado 80202
     Telephone:    303 863 9700
     Facsimile:    303 863 0223
     Email:   litigation@sheridanross.com

     ATTORNEYS FOR PLAINTIFFS


By:  /s/   *Sarah B. Wallace*
     Andrew J. Petrie
     Sarah Block Wallace
     **BALLARD SPAHR LLP**
     1225 Seventeenth Street, Suite 2300
     Denver, Colorado 80202-5596
     Telephone: 303-292-2400
     Facsimile: 303-296-3956
     petriea@ballardspahr.com
     wallaces@ballardspahr.com

     ATTORNEYS FOR DEFENDANTS

**<u>SCHEDULE A</u>**

**Production Fields**

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| PRODBEG | Number endorsed on first page of document. | Number endorsed on first page of document. | Number endorsed on first page of document. |
| PRODEND | Number endorsed on last page of document. | Number endorsed on last page of document. | Number endorsed on last page of document. |
| PRODBEGATTACH | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on first page of first document in a family (*i.e.*, documents and all attachments thereto). |
| PRODENDATTACH | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). | Number endorsed on last page of last document in a family (*i.e.*, documents and all attachments thereto). |
| Custodian | Custodial or non-custodial source(s). | Custodial or non-custodial source(s). | Custodial or non-custodial source(s). |
| DupeCustodian or AllCustodian | All Custodians other than the primary Custodian who also had a copy of the document but said document was removed due to de-duplication. | All Custodians other than the primary Custodian who also had a copy of the document but said document was removed due to de-duplication. | All Custodians other than the primary Custodian who also had a copy of the document but said document was removed due to de-duplication. |
| Date Sent | Date the E-mail was sent, including month, date and year. | N/A | N/A |

1

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| Time Sent | Time the E-mail was sent, including hour, minute, second and time zone. | N/A | N/A |
| Date Received | Date the E-mail was received, including month, date and year. | N/A | N/A |
| Time Received | Time the E-mail was sent, including hour, minute, second and time zone. | N/A | N/A |
| Email Subject | Verbatim subject or re: line, as stated in the e-mail. | N/A | N/A |
| Email From | Email sender | N/A | N/A |
| Email To | All information contained in the "To" field of the e-mail. | N/A | N/A |
| Email CC | All information contained in the "CC" field of the e-mail. | N/A | N/A |
| Email BCC | All information contained in the "BCC" field of the e-mail.  If the "BCC" field is not used by vendor to generate a HASH value for de-duplication, then all BCC names from de-duplicated e-mail(s) must be populated in this field. | N/A | N/A |

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|-------|-----------|-----------|---------|
| Date Created | N/A | Date the document was created, for non-e-mail electronic documents, including the month, date and year. | N/A |
| Time Created | N/A | Time the document was created, for non-e-mail electronic documents, including hour minute, and second. | N/A |
| Date Modified | N/A | Date the document was last modified, for non-e-mail electronic documents, including the month, date and year. | N/A |
| Time Modified | N/A | Time the document was last modified, for non-e-mail electronic documents, including hour, minute, second and time zone. | N/A |
| Date Last Accessed | N/A | Date the document was last accessed, for non-e-mail electronic documents, including the month, date and year. | N/A |

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| Date Last Accessed | N/A | Time the document was last accessed, for non-e-mail electronic documents, including hour, minute, second and time zone. | N/A |
| Date Last Printed | N/A | Date the document was last printed, including month, date, and year | N/A |
| Time Last Printed | N/A | Time the document was last printed, including month, date, and year | N/A |
| Last Modified By/Last Author | N/A | Name of the individual who last modified the document | N/A |
| Author(s) | N/A | Verbatim value from original metadata Author | N/A |
| Filename | Original file name. | Original file name. | N/A |
| Title (unless redacted) | N/A | Verbatim value from original metadata Title | N/A |
| DocExt | File Extension of the Native File *(e.g. ,* .msg, .doc). | File Extension of the Native File *(e.g.,* .msg, .doc). | N/A |
| FileSize | Size of the original email. | Size of the electronic file. | N/A |
| RecordType | Describes the application associated with the document. | Describes the application associated with the document. | N/A |

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| DocType | Whether the document is an email, email attachment, edoc, edoc attachment, or hardcopy document. | Whether the document is an email, email attachment, edoc, edoc attachment, or hardcopy document. | Whether the document is an email, email attachment, edoc, edoc attachment, or hardcopy document. |
| FilePath | Original folder name within the e-mail account. | Original folder name where the electronic file resided. | N/A |
| NumAttach | The number of attachments to a particular email. | The number of attachments to a particular loose ESI document. | N/A |
| Conversation Index | Position of the message in a conversation | N/A | N/A |
| MD5/SHA VALUE | MD5/SHA Value | MD5/SHA Value | N/A |
| PAPERBOX | N/A | N/A | To the extent reasonably available, this is the identifying information from the Box where the paper was stored. |
| PAPERFOLDER | N/A | N/A | To the extent reasonably available, this is the identifying information from the Folder where the paper was stored. |
| PAPERTAB | N/A | N/A | To the extent reasonably available, this is the identifying information from the Tab where the paper was stored. |
| PRODVOL | Production volume (e.g. AMGCOH-01) | Production volume (e.g. AMGCOH-01) | Production volume (e.g. AMGCOH-01) |

| FIELD | EMAIL ESI | OTHER ESI | NON-ESI |
|---|---|---|---|
| PGCOUNT | Total number of pages in document. | Total number of pages in document. | Total number of pages in document. |
| CONFDESIGNATION | The confidential designation endorsed on the document.  If no designation is present, a default value of "None" will be coded. | The confidential designation endorsed on the document. If no designation is present, a default value of "None" will be coded. | The confidential designation endorsed on the document.  If no designation is present, a default value of "None" will be coded. |
| TEXTPATH | File path on production media to text file containing full text of the e-mail. | File path on production media to text file containing full text of the document. | N/A |
| NATIVELINK | The full path to Native File on production media if producing in Native. | The full path to Native File on production media if producing in Native. | N/A |