**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

       Plaintiffs,

   v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

       Defendants.

---

**DEFENDANTS' BRIEF REGARDING DISCOVERY DISPUTE**

---

## I.    INTRODUCTION

Defendants PNC Financial Services Group, Inc. and PNC Bank N.A. (collectively "PNC") as well as Defendants Heather Kelly and Alex Tsarnas (the "Individual Defendants") hereby submit this brief regarding their discovery dispute with plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively "SRSA") regarding certain of PNC's Requests for Production ("RFPs") directed to SRSA and certain of SRSA's RFPs directed to PNC.  Defendants hereby move to compel production of documents responsive to PNC RFPs Number 4 as well as documents related to versions of SRSA's alleged technical trade secrets existing through the present, without temporal limitation.

## II.     PNC'S REQUESTS TO SRSA

In response to PNC's RFPs, SRSA has consistently refused to comply with its obligations under the Federal Rules of Civil Procedure to specifically identify its objections and the bases upon which it is actually withholding responsive documents.  In its initial responses and objections to PNC's fifteen requests for production, SRSA propounded nearly thirty pages of general and boilerplate objections.  In every instance, SRSA failed to indicate whether they were withholding any documents on the basis of these myriad objections.  This obfuscation made it impossible for PNC to determine if SRSA is withholding and/or refusing to search for responsive documents.  In 2015, Federal Rule of Civil Procedure 34 was amended to preclude precisely this misconduct.  Specifically, Federal Rule of Civil Procedure 34(b)(2)(C) was amended to require that "[a]n objection must state whether any responsive materials are being withheld on the basis of that objection."  As the Committee Notes to the 2015 Amendment explain:

> This amendment should end the confusion that frequently arises when a producing party states several objections and still produces information, leaving the requesting party uncertain whether any relevant and responsive information has been withheld on the basis of the objections. The producing party does not need to provide a detailed description or log of all documents withheld, but does need to alert other parties to the fact that documents have been withheld and thereby facilitate an informed discussion of the objection. An objection that states the limits that have controlled the search for responsive and relevant materials qualifies as a statement that the materials have been "withheld."

There is no dispute that SRSA's responses to Defendants' requests for production did not comply with Federal Rule of Civil Procedure 34(b)(2)(C).  Accordingly, PNC informed SRSA that this failure to comply with the requirements of Federal Rule of Civil Procedure 34 to state objections with specificity and clearly indicate whether responsive documents were being withheld

constituted a total waiver of all of SRSA's objections, except those as to privilege.  *See Fischer v. Forrest*, Nos. 14 Civ. 1304 (PAE) (AJP); 14 Civ. 1307 (PAE) (AJP), 2017 U.S. Dist. LEXIS 28102, at *9 (S.D.N.Y. Feb. 28, 2017) ("[A]ny discovery response that does not comply with Rule 34's requirement to state objections with specificity (and to clearly indicate whether responsive material is being withheld on the basis of objection) will be deemed a waiver of all objections (except as to privilege).").  "Indeed, courts in this District have found that 'boilerplate, generalized objections are inadequate and tantamount to not making any objection at all.'" *Bautista v. MVT Servs.*, No. 16-cv-01086-NYW, 2017 U.S. Dist. LEXIS 79752, at *14 (D. Colo. Mar. 20, 2017) (quoted authority omitted).  Though SRSA admitted this violation and subsequently served amended responses and objections omitting its general objections, substantive issues remain.  Defendants attach SRSA's amended responses as Exhibit A.

SRSA initially refused to produce any documents regarding the current state of its alleged trade secrets and asserted that it would only produce documents regarding its alleged trade secrets as they existed on March 16, 2018, when Ms. Kelly resigned from SRSA.  Following multiple meet and confer efforts, SRSA agreed to withdraw this objection to its alleged "commercial trade secrets" but maintains its refusal to produce documents concerning modifications or revisions to its numerous alleged "technical trade secrets".  SRSA argues that, since it does not "currently" allege that Defendants misappropriated trade secrets that existed past that date, subsequent versions of SRSA's trade secrets are not relevant to their request for injunctive relief.  Though these documents may not support SRSA's affirmative claims, this does not mean that such documents are irrelevant to this dispute.  To the contrary, discovery produced to PNC to date indicates SRSA substantially reworked or redesigned many of the components it

claims constitute trade secrets in this case subsequent to March 2018.  Indeed, documents that SRSA produced reflect not only that SRSA made significant modifications but, in some instances, the reasons for such changes, including that the alleged trade secrets Defendants allegedly misappropriated simply did not perform their stated function.  For this reason, documents reflecting reasons why SRSA has reworked, revised, or altered its alleged technical trade secrets bear directly on whether the versions allegedly misappropriated by Defendants were trade secrets at all.

These documents are also probative of SRSA's claim of irreparable injury, which exists solely to prevent future irreparable harm and not to merely enjoin what has already allegedly been done.  If technical trade secrets Defendants allegedly misappropriated have materially changed, then continued use of these trade secrets cannot create a risk of future harm to SRSA. *See Qwest Commc'ns. Int'l, Inc. v. Worldquest Networks, Inc.*, 213 F.R.D. 418, 421 (D. Colo. 2003) ("[P]reliminary injunctive relief cannot remedy harm that already has occurred."); s*ee also Devere Co. v. McColley*, No. 14-cv-534, 2014 U.S. Dist. LEXIS 162092, *23 (W.D. Wisc. Nov. 18, 2014) (denying a preliminary injunction against a former employee for violation of UTSA because all information the plaintiff sought to protect "is only valuable for a limited period of time").  SRSA has agreed to produce documents relating to its so-called commercial trade secrets regardless of date.  In light of this concession that such documents are relevant, SRSA offers no justification for its withholding of documents relating to technical trade secrets after March 16, 2018.  PNC requests that this Court compel SRSA to withdraw its artificial time limitation on documents relating to its alleged technical trade secrets and produce any documents it has withheld on this basis.

In response to PNC's RFP Number 4 requesting copies of all documents "distributed, provided or available to third-parties, customers, potential customers, investors, or potential investors" concerning SRSA's products or services that it contends constitute trade secrets, SRSA limited its production to copies of the documents it distributed devoid of context. These documents are particularly relevant here, where SRSA is claiming trade secret protection over the same alleged functionality that it advertises to customers in documents, which by their very nature, are designed to be shared with third-parties. Nevertheless, SRSA refuses to produce the communications by which these documents were distributed to third parties. SRSA's justification for this refusal is that the RFP seeks "a copy" of the requested documents. This overly technical interpretation of PNC's RFP excludes relevant, responsive documents from production. For example, SRSA did not produced its Confidential Information Presentation ("CIP") sent to investor and purchaser Lovell Minnick Partners. After meeting and conferring with PNC, SRSA agreed to produce the CIP sent to Lovell as well as communications with Lovell discussing SRSA's trade secrets. However, this concession is not sufficient. PNC is entitled to discovery into other third parties to which SRSA shared information about its alleged trade secrets. For example, SRSA has produced many presentation templates intended to be sent to customers but because the transmission communications were not produced, PNC has no way of discerning whether these presentations were actually sent and to whom.

Communications showing to whom SRSA distributed documents concerning its alleged trade secrets is highly probative of whether these alleged trade secrets were, in fact, kept confidential. The owner of a trade secret may forfeit trade secret protection by "disclosing those matters to customers … without reservations or requirements of confidentiality." *L-3 Commc'ns*

*Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 3d 1155, 1181 (D. Colo. 2015); *see also*

*Ruckelshaus v. Monsanto Co.*, 467 U.S. 986, 1002 (1984) ("If an individual discloses his trade

secret to others who are under no obligation to protect the confidentiality of the information, or

otherwise publicly discloses the secret, his property right is extinguished.")  PNC is entitled to

discover whether SRSA disclosed its alleged trade secrets to third parties as this bears directly on

whether SRSA has forfeited trade secret protection.  PNC requests this Court compel SRSA to

produce the cover communications to third parties in response to PNCs RFP Number 4.

**III.    SRSA'S REQUESTS TO PNC**

PNC and the Individual Defendants have produced thousands of documents responsive to

the overwhelming majority of SRSA's RFPs but have objected to producing documents

responsive to two RFPs that seek customer and financial information irrelevant to SRSA's

request for preliminary injunctive relief.  Specifically, SRSA RFPs Number 8 and 9 seek:

> Documents sufficient to show the identity of all potential or actual
> customers targeted by PNC for PNC's M&A Payments and
> Escrow Products, the first date such customer was contacted about
> PNC's M&A Payments and Escrow Products, and the PNC
> employee who served as the primary contact for such customer.
>
> Documents sufficient to show the monthly, quarterly and annual
> revenues, expenses and profits for PNC's M&A Payments and
> Escrow Products from January 1, 2018 to the present.

PNC objected to RFP 8 because its customer information, especially the identities of future

customers PNC plans to target, is irrelevant to any claim in this case.  PNC objected to RFP 9 as

premature – this request for financial information is not relevant to SRSA's request for injunctive

relief.  The information SRSA seeks to discover with these RFPs is irrelevant to its request for

injunctive relief.  SRSA justifies its requests for irrelevant customer and financial information by

claiming this information relates to various supposed forms of irreparable harm.  At the same time, SRSA has refused to articulate to PNC its theory of irreparable harm, begging the question whether SRSA in fact has any theory of irreparable harm that it can assert in good faith.    In fact, SRSA RFPs appear to be a fishing expedition in its effort to find a theory of irreparable harm. Neither of these areas of highly sensitive competitive information are relevant to SRSA's request for a preliminary injunction, despite the many nebulous theories of irreparable harm to which SRSA has alluded but not committed.

In its RFP Number 8, SRSA seeks to discover "the identity of all potential or actual customers targeted by PNC for PNC's M&A Payments and Escrow Products."  SRSA alleges in its Amended Complaint that it lost eight deals to PNC.  Although PNC is under no obligation whatsoever not to solicit and win business from current and former customers of SRSA, PNC offered to produce documents relating to those eight deals, provided SRSA identify those customers.  SRSA rejected this compromise, insisting that PNC produce documents identifying all of its actual and potential customers for its M&A Payments and Escrow products.  SRSA asserts it is entitled to expansive discovery not only into PNC's entire customer base and efforts to attract customers, but into any success PNC has had in the M&A Payments market as a whole, because that information is probative of irreparable harm.  This information does not relate to any of SRSA's claims, let alone show that SRSA will suffer future unquantifiable harm if its request for injunctive relief against PNC is not granted.

The discovery SRSA seeks into actual and potential customers of PNC Paid has no bearing on any of the theories of irreparable harm SRSA has variously referenced.  Information concerning customers PNC has already won is irrelevant to irreparable harm as it bears no

relation to a risk of continuing harm, *i.e.,* the burden SRSA must carry to obtain its requested relief.  SRSA cannot establish a risk of future irreparable injury based on past conduct.  *See DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1131 (D. Col. 2017) (finding plaintiff failed to show irreparable harm resulting from alleged violation of a non-compete covenant intended to protect trade secrets where plaintiffs would "be able to calculate their damages according to the value of the contract [lost.]");  *see also First Am. Title Ins. Co. v. Nw. Title Ins. Agency, LLC*, No. 2:15-cv-00229, 2016 U.S. Dist. LEXIS 133521, at *22 (D. Utah Sep. 27, 2016) (finding no irreparable harm where "[e]very alleged harm occurred in the past and is now more appropriately the basis for legal remedies").  In fact, SRSA is not entitled to discovery into past conduct on the basis of irreparable harm.  *See Qwest.*, 213 F.R.D. at 421 ("Much of the expedited discovery that [plaintiff] seeks addresses conduct that has already occurred, which would have little, if any, bearing on irreparable injuries that may occur").  And information on customers PNC plans to pursue, or has unsuccessfully pursued to date, is irrelevant where PNC is free to pursue any customers and any restrictions on Heather Kelly's solicitation of customers ended when her contract with SRSA expired in March 2019.  This requested discovery on PNC's current and potential customers is a clear fishing expedition by SRSA.

During the meet and conferral process, SRSA argued that the identity of PNC's customers is relevant to determining PNC's commercial success.  Neither case SRSA cites stand for the proposition that discovery into PNC's customers is relevant to its claim of irreparable harm.  Indeed neither relates to the requested discovery at all.  In *Brocade Commc'ns Sys., Inc. v. A10 Networks, Inc.*, the court considered a plaintiff's request for a permanent injunction following a jury verdict finding defendant had misappropriated plaintiff's trade secrets.

*Brocade*, No. C 10-3428 PSG, 2013 WL 140039, at *9 (N.D. Cal. Jan. 10, 2013).  The court found defendant's use of plaintiff's trade secrets improved the performance of defendant's product, giving it a commercial advantage supporting irreparable harm.  The court inferred commercial advantage from a jury verdict finding misappropriation of trade secrets rather than reviewing any evidence of customers.  In *Haggard v. Spine*, the court similarly found plaintiff suffered a "loss of competitive advantage" resulting from the disclosure of plaintiff's trade secrets. *Haggard*, No. 09-cv-00721-CMA-KMT, 2009 U.S. Dist LEXIS 54818, at *43 (D. Colo. June 12, 2009).  Again the court did not consider evidence of defendant's customers.  Nor is the requested customer information relevant to a theory of market share erosion because the identity of PNC's customers, including potential but not actual customers, would not permit SRSA to calculate market share erosion.

In its RFP Number 9 to PNC, SRSA seeks information on the revenues, expenses, and profits for PNC's M&A Payments and Escrow Products.  PNC objected that information relating to PNC's financial profits is irrelevant to, and in fact inconsistent with, SRSA's request for preliminary injunctive relief.  SRSA argues that PNC's financial information would reveal PNC's "ill-gotten gains" which demonstrate irreparable harm and that PNC's financial information would be probative of whether PNC relied upon SRSA pricing information in selling its products.  As to the second argument, SRSA's theory that PNC's aggregate financial information would reveal the rates at which PNC is pricing individual M&A Payment deals on a granular level demonstrates a misunderstanding of accounting.  If SRSA intended to seek information on the pricing of specific deals, SRSA should have requested it.  SRSA did not but

rather seeks aggregate information relating to revenues, costs, and profits – the very information SRSA would require to support a disgorgement theory of <u>monetary</u> damages.

As to the first argument, which again relies on nebulous assertions of irreparable harm, SRSA misunderstands the legal requirements of its own request for injunctive relief.  PNC's financial information is irrelevant to SRSA's request for injunctive relief.  Injunctive relief may be granted where a plaintiff can establish, among other requirements, that it will suffer continuing irreparable harm absent an injunction.  *Qwest*, 213 F.R.D. at 421.  The essence of irreparable harm is harm that could not be remedied by quantifiable money damages.  *Id.* Financial harm such as lost revenue "is monetary, and thus does not amount to an irreparable injury."  *Mountain Med. Equip., Inc. v. Healthdyne, Inc.*, 582 F. Supp. 846, 848 (D. Col. 1984). PNC's profits on its M&A Payments & Escrow Products is not relevant to irreparable harm but to the contrary would only support a claim for monetary damages, a notion fundamentally at odds with the request for injunctive relief for which the expedited discovery is intended.

SRSA argues that whether PNC financially benefitted is relevant to irreparable harm, citing two cases it claims support this proposition.  Once again, neither case addresses the requested discovery at all.  In *Brocade*, as discussed *supra*, commercial advantage was inferred from jury verdict finding of misappropriation of trade secrets.  *Brocade*, 2013 WL 140039, at *9. In considering irreparable harm, the court makes no mentions of revenue or profits.  In *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, the court found defendant stood to gain a head start into the marketplace also based on misappropriation of plaintiff's trade secrets.  *Xantrex*, No. 07-cv-02324-WYD-MEH, 2008 WL 2185882 (D. Colo. May 23, 2008).  The court did not consider

defendant's actual success in the marketplace, measured financially or otherwise, finding it immaterial whether defendant was even entering the market at all.

In short, PNC's financial information has no bearing on SRSA's claims of irreparable harm and is inconsistent with its request for injunctive relief.   PNC's financial information might be relevant, if at all, to a future claim for damages  if the case were to move forward following a decision on SRSA's request for injunctive relief.  But this financial information is irrelevant at this stage of the discovery, especially to the question of whether SRSA has suffered harm that cannot be remedied by monetary damages.

Dated:  October 3, 2019                By:    /s/ *Sarah B. Wallace*
                                             Andrew J. Petrie
                                             Sarah Block Wallace
                                             **BALLARD SPAHR LLP**
                                             1225 Seventeenth Street, Suite 2300
                                             Denver, Colorado 80202-5596
                                             Telephone: 303-292-2400
                                             Facsimile: 303-296-3956
                                             petriea@ballardspahr.com
                                             wallaces@ballardspahr.com

                                             Hara K. Jacobs
                                             Noah Robbins
                                             **BALLARD SPAHR LLP**
                                             1735 Market Street, 51st Floor
                                             Philadelphia, PA 19103-7599
                                             Telephone: 215-668-8500
                                             Facsimile: 215-864-8999
                                             jacobsh@ballardspahr.com
                                             robbinsn@ballardspahr.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 3rd day of October, 2019, a true and correct copy of the foregoing **DEFENDANTS' BRIEF REGARDING DISCOVERY DISPUTE** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Warren A. Braunig
Benjamin D. Rothstein
Maya Karwande
Victor H. Yu
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

Scott R. Bialecki
Matthew C. Miller
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202

*Attorneys for Plaintiffs SRS Acquiom Inc., a Delaware corporation and Shareholder Representative Services LLC, a Colorado limited liability company*

*s/ Ellen Phillipson*
Ellen Phillipson