IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
U.S. Magistrate Judge S. Kato Crews

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., and
SHAREHOLDER REPRESENTATIVE SERVICES LLC,

       Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC.,
PNC BANK, N.A.,
HEATHER KELLY, and
ALEX TSARNAS,

       Defendants.

## ORDER RE: OCTOBER 10, 2019 DISCOVERY HEARING

       This Discovery Order addresses a discovery dispute concerning four discovery requests between Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC ("Plaintiffs"), and Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A. ("PNC Defendants"). The dispute arises out of the Court's July 26, 2019 Scheduling and Expedited Discovery Order ("Expedited Discovery Order"). [#26.][1] In that Order, the

---

[1] The Court uses "[# __ ]" to refer to entries in the CM/ECF electronic docket.

1

Court limited discovery to matters relevant to Plaintiffs' anticipated motion for preliminary injunction.[2]

On September 20, 2019, counsel for the Parties contacted my chambers (consistent with this Court's Practice Standards) to alert the Court to their discovery dispute. [#47.] They subsequently submitted discovery briefs [#48 and #49] wherein they argued their respective positions with supporting authority. The Court held oral argument at a Discovery Hearing on October 10, 2019 and took the matter under advisement. [#50 (Courtroom Minutes).] The Court construes these Parties' respective issues as dual motions to compel.

At the outset, the Court notes that, "[e]xpedited discovery should be limited . . . and narrowly tailored to seek information necessary to support expedited or preliminary relief." *Avaya, Inc. v. Acumen Telecom Corp.*, No. 10-cv-03075-CMA-BNB, 2011 WL 9293, at *2 (D. Colo. Jan. 3, 2011) (citations omitted). Expedited discovery which is sweeping in its scope should be denied. *See Id.*

### 1. Plaintiffs' RFP No. 8

Plaintiffs ask the Court to compel the PNC Defendants' to produce "[d]ocuments sufficient to show the identity of all potential or actual customers targeted by PNC for PNC's M&A Payments and Escrow Products, the first date such customer was contacted about PNC's M&A Payments and Escrow Products, and the PNC employee who served as the primary contact for such customer." [#49 at p. 6.] Plaintiffs assert this information

---

[2] Plaintiffs' deadline to file a Motion for Preliminary Injunction is October 18, 2019. [#26 at p.4.]

is necessary to prove irreparable harm, bringing it within the scope of the Expedited Discovery Order.

The Court finds this request overly broad because it seeks information for "all potential or actual customers targeted by PNC" for its M&A Payment and Escrow Products, rather than being limited to the potential or actual customers the PNC Defendants targeted and whose names appear on Plaintiffs' customer lists allegedly misappropriated. The latter is relevant to the likelihood of success on the merits. The Court disagrees that the former is relevant to show irreparable harm—instead, the former exceeds the Expedited Discovery Order and appears as a fishing expedition to discover a broad swath of the PNC Defendants' current or prospective customers without any material tie to the claims and defenses to arise during the preliminary injunction hearing. *See Dominion Video Satellite, Inc. v. Echostar Satellite Corp.*, 356 F.3d 1256, 1264-65 (10th Cir. 2004) (citing cases where irreparable harm arose because of harm to a unique market position based on evidence of loss of a unique product or goodwill, or difficulty in calculating damages).

For these reasons, the Court PARTIALLY GRANTS Plaintiffs' motion to compel. The PNC Defendants shall respond to RFP No. 8 limited to those customers from the applicable customer lists whom the PNC Defendants targeted for its competing program.

**2.     Plaintiffs' RFP No. 9**

Plaintiffs seek to compel the PNC Defendants to produce financial data from January 1, 2018, to present. [*See* #49 at p. 6.] Plaintiffs assert this information is relevant

to irreparable harm because it will show the commercial advantage and head start the PNC Defendants' gained by allegedly misappropriating Plaintiffs' trade secrets.

Plaintiffs' argument—that financial data of the breadth it seeks will show commercial advantage from misappropriation—is misplaced. Plaintiffs' reliance on *Brocade Commc'ns Sys., Inc. v. A10 Networks Inc.*, No. C 10-3428 PSG, 2013 WL 890126, at *9 (N.D. Cal. Jan 23, 2013), to show that financial data may evidence commercial advantage is unavailing. [#48 at pp.4-5.] In *Brocade*, the court's finding of commercial advantage was not based on financial data, but rather, was based on testimony that misappropriated trade secrets improved the performance of the competing product at issue. *Brocade*, 2013 WL 890126, at *9. This enhanced performance borne of misappropriated trade secrets was shown to aid in the "<u>pursuit</u> of sales of customers"— not an increase in sales. *Id.* (emphasis added). Further, no cases from this judicial district suggest that this type of financial data is pertinent to irreparable harm, whether based on head start or commercial advantage theories. *See, e.g., Dominion Video*, 356 F.3d at 1264; *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, No. 07-cv-02324-WYD-MEH, 2008 WL 2185882, at *15-16 (D. Colo. May 23, 2008).

Plaintiffs have not persuaded me that there is a relevant correlation between the PNC Defendants' financial data generally and irreparable harm. As discussed on the record, research and development costs for the PNC Defendant's competing program, however, appears relevant and proportional. The motion is PARTIALLY GRANTED—the PNC Defendants shall respond to RFP No. 9 as limited to its research and development costs for its competing program.

4

### 3. PNC Defendants RFP No. 4

Concerning the PNC Defendants' RFP No. 4, during the discovery hearing, the Court ordered Plaintiffs to identify by bates number those sales and marketing documents already produced which were "regularly disseminated to third parties" or "shared with investors that specifically relate to [Plaintiffs'] products and trade secrets," as represented by Plaintiffs in their discovery brief. [#48 at p.11.] Thus, the PNC Defendants' motion to compel is GRANTED in this regard. Further, based on the discussion on the record, the Parties stipulated that of these documents to be identified, Plaintiffs would further identify those documents that were not subject to a non-disclosure agreement. The Court FURTHER ORDERS Plaintiffs to produce copies of any non-disclosure agreements covering any of the documents identified in response to RFP No. 4. The Court FINDS this information relevant to the PNC Defendants' defenses to Plaintiffs' claim that certain information qualifies as a trade secret under state and federal law.

### 4. PNC Defendants' Request for Subsequent Iterations of Plaintiffs' Claimed Trade Secrets

PNC Defendants ask the Court to compel Plaintiffs to produce information regarding subsequent iterations of, or modifications to, its claimed trade secrets used to develop Plaintiffs' second generation of the product at issue in this case. Defendant argues that this information is relevant to the relative "value" of the claimed trade secrets, and thus, bears on irreparable harm or the threshold question of whether the claimed trade secrets are trade secrets at all.

The Court disagrees that this information is relevant or proportional to the limited scope of discovery afforded by the Expedited Discovery Order. The value of trade secrets

5

from first-generation technology depends on "how much someone is willing to pay for it." Richard Posner, *Economic Analysis of Law* 10 (6th Ed. 2003) ("The economic value of something is how much someone is willing to pay for it or, if he has it already, how much money he demands for parting with it.") "Defendants do not need to know the trade secrets of a different product to determine what the value of the product at issue is. They need to know whether someone was willing to pay for the product at issue during the period of time relevant to this action (and, perhaps, how much)." *Dow Corning Corp. v. Jie Xiao*, 283 F.R.D. 353, 361 (E.D. Mich. 2012) (emphasis added). While trade secrets regarding later generations might be discoverable to rebut certain allegations in the Complaint, for purposes of the limited expedited discovery here, the Court observes that trade secret law merely requires that the information be valuable to Plaintiffs, their competitors, or someone willing to pay for them.

For these reasons, the motion to compel is DENIED as it pertains to this information.

The Court notes that these rulings are limited to the scope of discovery under the Expedited Discovery Order and do not necessarily control the scope of overall discovery in the case.

DATED: October 17, 2019.

BY THE COURT:

S. Kato Crews
U.S. Magistrate Judge

6