# Exhibit B

## GENERAL EMPLOYMENT TERMS & CONDITIONS

Name: Heather Kelly

Date of Offer: June 2, 2014  Scheduled Reporting Date: June 23, 2014

1. Compensation: ████████████

2. **Expenses.** SRS will reimburse you for reasonable and necessary expenses incurred by you in furtherance of SRS business. All expenses claimed are subject to the review and approval of your supervisor. Records must be maintained and submitted for any expenses to be reimbursed - including destination for auto mileage totals and receipts for all other items. Use of personal automobile for SRS business will be reimbursed at the applicable IRS rate in effect per mile.

3. **Trade Secrets and Proprietary Information.** You will be required to execute SRS's Employment Invention Assignment and Confidentiality Agreement ("EIACA"), a copy of which is attached hereto, as a condition to, and prior to commencement of, your employment. However, your commencement of employment shall constitute acceptance of all the terms and conditions in the EIACA.

4. **SRS Property.** During and after your employment, you will not use any SRS Property for any purpose other than for the benefit of SRS. Except for business uses related to the performance of your job, you will not remove from SRS premises any SRS Property without written consent of your supervisor. In the event of your termination of employment, or at any time at the request of SRS, you will return all SRS Property. You will also return all copies of SRS Property, and any work product derived from SRS Property.

"SRS Property" means (as defined in the EIACA, as applicable) Proprietary Information or Trade Secrets of SRS, work product, customer lists, prospect lists, forms, manuals, records, correspondence, contracts, notes, memoranda, notebooks and other documents of SRS, software media, equipment, credit cards, keys, computers and other intangible and tangible property owned by SRS.

5. **Duty Not to Compete.** You understand that your employment with SRS requires your undivided attention and effort. As a result, during your employment, you will not, without SRS express written consent, engage in any other employment or business, or invest in or assist in any manner in any other business which directly or indirectly competes with the business or future business plans of SRS or if any such investment or assistance would detract from your services to SRS or would otherwise be detrimental to SRS. This provision does not preclude purchase of securities in a publicly held company or work for non-profit organizations, so long as such work does not detract from your services to SRS or is not otherwise detrimental to SRS.

6. **Name & Likeness Rights** You hereby provide SRS and its successors, assigns and licensees the worldwide right to, for reasonable and customary purposes: (a) copyright, use, reuse, publish and republish photographic portraits, pictures, and caricatures, motion or still, of me, or in which you may be included, whether heretofore taken by SRS or its agents or to be taken in the future by SRS or its agents, and reproductions thereof, in color or otherwise, made through any media, current or later developed, for art, advertising, trade or any other purpose; (b) reproduce, amplify, simulate, or dub your voice and transmit the same by any mechanical or electrical means, for any purpose; and (c) use your biographical information and name for advertising, trade or any other business related purpose during the term of your employment. Once your employment ceases, the rights conveyed in this paragraph only apply to materials created prior to the termination of your employment. This release is intended to be of perpetual duration.

7.  <u>Governing Law; Injunctive Relief.</u> This letter will be governed and interpreted in accordance with the internal laws of the State of Colorado, without regard to or application of choice of law rules or principles. You understand that in the event of a breach or threatened breach of this letter by you, SRS will suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this letter.

8.  <u>At-Will Employment.</u> As SRS is the company for which you will perform service, we will retain the right to control and direct your work, its results, and the manner and means by which your work is accomplished. Your employment with SRS is at will, and therefore, may be terminated by you or SRS at any time and for any reason, with or without cause, and with or without notice. This "at will" employment relationship may not be modified by any oral or implied agreement, and if in writing, such modification must specify a defined period of employment and be executed by SRS' Managing Director.

9.  <u>Duties.</u> You understand that SRS has affiliated companies and you may be expected to perform your duties for such affiliates, but you are an employee of only SRS. Unless otherwise stipulated in your Offer Letter, it is a condition of your employment that you provide services from SRS offices located in Denver, Colorado. Normal working hours are from 8:30 a.m. to 5:30 p.m., Monday through Friday. Notwithstanding the foregoing, your hours and the location where you will work (e.g. telecommuting from home) will be flexible upon agreement between you and your manager. As an exempt salaried employee, you will be expected from time to time to work additional hours as required by the nature of your work assignments. Of course, SRS may change your position, title, duties, compensation, benefits and place of employment from time to time as it deems necessary.

10. <u>Miscellaneous.</u> Any amendment to the terms of your employment contained in this letter or in the EIACA may only be in writing and must be signed by you and SRS' Managing Director. In the event that any provision of this letter is found by a court, arbitrator, or other tribunal to be illegal, invalid, or unenforceable, then such provision shall not be voided, but shall be enforced to the maximum extent permissible under applicable law, and the remainder of this letter shall remain in full force and effect. This letter states the complete and exclusive terms and conditions of your employment and supersedes any and all prior agreements, whether written or oral. By joining SRS, you are agreeing to abide by all laws and regulations and all SRS policies and procedures and to acknowledge in writing that you have read the Company's Employee Handbook. Violations of these policies may lead to immediate termination of employment.

I accept the above terms of employment as stated:

_____    6·9·14
Addressee's Signature                 Date

Approved by SR8 (Following receipt of signed acceptance by employee)

_____    6.9.14
Name: Malke B. Vogel             Date
Title: Managing Director
Page 6 of 14

# EMPLOYEE INVENTION ASSIGNMENT AND CONFIDENTIALITY AGREEMENT

In consideration of, and as a condition of my employment with Shareholder Representative Services LLC, a Colorado limited liability company (the "Company"), I hereby represent to, and agree with the Company as follows:

1. **Purpose of Agreement.** I understand that the Company is engaged in a continuous program of research, development, production and marketing in connection with its business and that it is critical for the Company to preserve and protect its Trade Secrets (as defined below), its Proprietary Information (as defined below), its rights in Inventions (as defined below) and in all related intellectual property rights. Accordingly, I am entering into this Agreement as a condition of my employment with the Company, whether or not I am expected to create inventions of value for the Company.

2. **Disclosure of Inventions.** I will promptly disclose in confidence to the Company all inventions, improvements, designs, original works of authorship, formulas, processes, compositions of matter, computer software programs, databases, mask works and trade secrets ("Inventions") that I make or conceive or first reduce to practice or create, either alone or jointly with others, during the period of my employment, whether or not in the course of my employment, and whether or not such Inventions are patentable, copyrightable or protectable as trade secrets.

3. **Work for Hire; Assignment of Inventions.** I acknowledge and agree that any copyrightable works prepared by me within the scope of my employment are "works for hire" under the Copyright Act and that the Company will be considered the author and owner of such copyrightable works. I agree that all Inventions that (a) are developed using equipment, supplies, facilities or trade secrets of the Company, (b) result from work performed by me for the Company, or (c) relate to the Company's business or current or anticipated research and development, will be the sole and exclusive property of the Company and are hereby irrevocably assigned by me to the Company.

4. **Labor Code 2870 Notice.** I have been notified and understand that the provisions of paragraphs 3 and 5 of this Agreement may not apply to any Invention that qualifies fully under the provisions of Section 2870 of the California Labor Code, to the extent that California may now or in the future be applicable to my employment, which states as follows:

> ANY PROVISION IN AN EMPLOYMENT AGREEMENT WHICH PROVIDES THAT AN EMPLOYEE SHALL ASSIGN, OR OFFER TO ASSIGN, ANY OF HIS OR HER RIGHTS IN AN INVENTION TO HIS OR HER EMPLOYER SHALL NOT APPLY TO AN INVENTION THAT THE EMPLOYEE DEVELOPED ENTIRELY ON HIS OR HER OWN TIME WITHOUT USING THE EMPLOYER'S EQUIPMENT, SUPPLIES, FACILITIES, OR TRADE SECRET INFORMATION EXCEPT FOR THOSE INVENTIONS THAT EITHER: (1) RELATE AT THE TIME OF CONCEPTION OR REDUCTION TO PRACTICE OF THE INVENTION TO THE EMPLOYER'S BUSINESS, OR ACTUALLY OR DEMONSTRABLY ANTICIPATED RESEARCH OR DEVELOPMENT OF THE EMPLOYER, OR (2) RESULT FROM ANY

WORK PERFORMED BY THE EMPLOYEE FOR THE EMPLOYER. TO THE EXTENT A PROVISION IN AN EMPLOYMENT AGREEMENT PURPORTS TO REQUIRE AN EMPLOYEE TO ASSIGN AN INVENTION OTHERWISE EXCLUDED FROM BEING REQUIRED TO BE ASSIGNED UNDER CALIFORNIA LABOR CODE SECTION 2870(a), THE PROVISION IS AGAINST THE PUBLIC POLICY OF THIS STATE AND IS UNENFORCEABLE.

5. **Assignment of Other Rights.** In addition to the foregoing assignment of Inventions to the Company, I hereby irrevocably transfer and assign to the Company: (a) all worldwide patents, patent applications, copyrights, mask works, trade secrets and other intellectual property rights in any Invention; and (b) any and all "Moral Rights" (as defined below) that I may have in or with respect to any Invention. I also hereby forever waive and agree never to assert any and all Moral Rights I may have in or with respect to any Invention, even after termination of my work on behalf of the Company. "Moral Rights" mean any rights to claim authorship of an Invention to object to or prevent the modification of any Invention, or to withdraw from circulation or control the publication or distribution of any Invention, and any similar right, existing under judicial or statutory law of any country in the world, or under any treaty, regardless of whether or not such right is denominated or generally referred to as a "moral right".

6. **Assistance.** I agree to assist the Company in every proper way to obtain for the Company and enforce patents, copyrights, mask work rights, trade secret rights and other legal protections for the Company's Inventions in any and all countries. I will execute any documents that the Company may reasonably request for use in obtaining or enforcing such patents, copyrights, mask work rights, trade secrets and other legal protections. My obligations under this paragraph will continue beyond the termination of my employment with the Company, provided that the Company will compensate me at a reasonable rate after such termination for time or expenses actually spent by me at the Company's request on such assistance. I appoint the Secretary of the Company as my attorney-in-fact to execute documents on my behalf for this purpose.

7. **Trade Secrets.** During and after my employment, I will hold all Trade Secrets of Company in confidence; I will not disclose these Trade Secrets to any one. This does not apply to information disclosed in the ordinary course of business to other persons who are employees of Company at the time. "Trade Secrets" means the information described in the Description of Trade Secrets (Attachment A hereto), as pertaining to SRS or any of its affiliates, and any other information that from time to time may be identified by Company as confidential or is otherwise known to me as being confidential, whether embodied in memoranda, manuals, letters, or other documents, computer disks, tapes or other information storage devices, hardware, or other media or vehicles. Trade Secrets do not include information generally known or that is or becomes public domain information through no fault of mine.

I will also hold confidential any confidential information of any customer, prospective customer, vendor or other person, if I am told or if I know that the information is confidential.

I will not use any Trade Secrets of Company other than for the benefit of Company; and I will not use any confidential information of any customer, prospective customer, vendor or other person other than for the benefit of such customer, vendor or other person if such disclosure is required in the performance of my normal work duties.

8.  **Proprietary Information.** I understand that my employment by the Company creates a relationship of confidence and trust with respect to any information of a confidential or secret nature that may be disclosed to me by the Company that relates to the business of the Company or to the business of any parent, subsidiary, affiliate, customer or supplier of the Company or any other party with whom the Company agrees to hold information of such party in confidence ("Proprietary Information"). Such Proprietary Information includes but is not limited to Trade Secrets, Inventions, marketing plans, product plans, business strategies, financial information, forecasts, personnel information and customer lists. Proprietary Information does not include information generally known or that is or becomes public domain information through no fault of mine.

9.  **Confidentiality.** At all times, both during my employment and after its termination, I will keep and hold all such Proprietary Information in strict confidence and trust, and I will not use or disclose any of such Proprietary Information without the prior written consent of the Company, except as may be necessary to perform my duties as an employee of the Company for the benefit of the Company. Upon termination of my employment with the Company, I will promptly deliver to the Company all documents and materials of any nature pertaining to my work with the Company and I will not take with me any documents or materials or copies thereof containing any Proprietary Information.

10. **Third Party Information.** I understand, in addition, that the Company has received and in the future will receive from third parties confidential or proprietary information ("Third Party Information") subject to a duty on the Company's part to maintain the confidentiality of such information and to use it only for certain limited purposes. During the term of my employment and thereafter, I will hold Third Party Information in the strictest confidence and will not disclose to anyone (other than Company personnel who need to know such information in connection with their work for the Company) or use, except in connection with my work for the Company, Third Party Information unless expressly authorized by an officer of the Company in writing.

11. **Prior Inventions.** Inventions, if any, patented or unpatented, which I made prior to the commencement of my employment with the Company are excluded from the scope of this Agreement. To preclude any possible uncertainty, I have set forth on Exhibit B (Previous Inventions) attached hereto a complete list of all Inventions that I have, alone or jointly with others, conceived, developed or reduced to practice or caused to be conceived, developed or reduced to practice prior to the commencement of my employment with the Company, that I consider to be my property or the property of third parties and that I wish to have excluded from the scope of this Agreement (collectively referred to as "Prior Inventions"). If disclosure of any such Prior Invention would cause me to violate any prior confidentiality agreement, I understand that I am not to list such Prior Inventions in Exhibit B but am only to disclose a cursory name for each such invention, a listing of the party(ies) to whom it belongs and the fact that full disclosure as to such inventions has not been made for that reason. A space is provided on Exhibit B for such purpose. If no such disclosure is attached, I represent that there are no Prior Inventions. If, in the course of my employment with the Company, I incorporate a Prior Invention into a Company product, process or machine, the Company is hereby granted and shall have a nonexclusive, royalty-free, irrevocable, perpetual, worldwide license (with rights to sublicense through multiple tiers of sublicensees) to make, have made, modify, use and sell such Prior Invention. Notwithstanding the foregoing, I agree

that I will not incorporate, or permit to be incorporated, Prior Inventions in any Company Inventions without the Company's prior written consent.

12. **Return Of Company Documents.** When I leave the employ of the Company, I will deliver to the Company any and all drawings, notes, memoranda, specifications, devices, formulas, and documents, together with all copies thereof, and any other material containing or disclosing any Inventions, Third Party Information or Proprietary Information of the Company. I further agree that any property situated on the Company's premises and owned by the Company, including disks and other storage media, filing cabinets or other work areas, is subject to inspection by Company personnel at any time with or without notice. Prior to leaving, I will cooperate with the Company in completing and signing the Company's termination statement.

13. **No Breach of Prior Agreement.** I represent that my performance of all the terms of this Agreement and my duties as an employee of the Company will not breach any invention assignment, proprietary information or similar agreement with any former employer or other party. I represent that I will not bring with me to the Company or use in the performance of my duties for the Company any documents or materials or intangibles of a former employer that are not generally available to the public or have not been legally transferred to the Company.

14. **Notification.** I hereby authorize the Company to notify my actual or future employers of the terms of this Agreement and my General Employment Terms and Conditions and my responsibilities hereunder and thereunder.

15. **Survival.** The provisions of this Agreement shall survive the termination of my employment and the assignment of this Agreement by the Company to any successor in interest or other assignee.

16. **Entire Agreement.** The obligations pursuant to this Agreement shall apply to any time during which I was previously employed, or am in the future employed, by the Company as a consultant if no other agreement governs nondisclosure and assignment of inventions during such period. This Agreement is the final, complete and exclusive agreement of the parties with respect to the subject matter hereof and supersedes and merges all prior discussions between us. No modification of or amendment to this Agreement, nor any waiver of any rights under this Agreement, will be effective unless in writing and signed by the party to be charged. Any subsequent change or changes in my duties, salary or compensation will not affect the validity or scope of this Agreement.

17. **Non-Solicitation.** During, and for a period of one year after termination of, my employment with the Company, I will not directly or indirectly solicit or take away suppliers, customers, employees or consultants of the Company other than those set forth on Schedule 1 below for my own benefit or for the benefit of any other party.

18. **Injunctive Relief.** I understand that in the event of a breach or threatened breach of this Agreement by me the Company may suffer irreparable harm and will therefore be entitled to injunctive relief to enforce this Agreement.

19. **Governing Law; Severability.** This Agreement will be governed and interpreted in accordance with the internal laws of the State of Colorado, without regard to or application of

choice of law rules or principles. In the event that any provision of this Agreement is found by a court, arbitrator or other tribunal to be illegal, invalid or unenforceable, then such provision shall not be voided, but shall be enforced to the maximum extent permissible under applicable law, and the remainder of this Agreement shall remain in full force and effect.

20. **No Duty to Employ; "At Will" Employment.** I understand that this Agreement does not constitute a contract of employment or obligate the Company to employ me for any stated period of time. I understand that I am an "at will" employee of the Company and that my employment can be terminated at any time, for any reason or for no reason, by either the Company or myself.

This Agreement shall be effective as of the first day of my employment by the Company.

SHAREHOLDER REPRESENTATIVE SERVICES LLC

By: _[signature]_

Name: _Mark B. Vogel_

Title: _Managing Director_

Employee:

_[signature]_
Signature

Name (Please print): _Heather Kelly_

## Exhibit A

## LIMITED EXCLUSION NOTIFICATION

This is to notify you in accordance with Section 2872 of the California Labor Code, to the extent that California law may now or in the future be applicable to your employment, that the foregoing Agreement between you and the Company may not require you to assign or offer to assign to the Company any invention that you developed entirely on your own time without using the Company's equipment, supplies, facilities or trade secret information except for those inventions that either:

1.   Relate at the time of conception or reduction to practice of the invention to the Company's business, or actual or demonstrably anticipated research or development of the Company; or

2.   Result from any work performed by you for the Company.

To the extent a provision in the foregoing Agreement purports to require you to assign an invention otherwise excluded from the preceding paragraph, the provision is against the public policy of this state and is unenforceable.

This limited exclusion does not apply to any patent or invention covered by a contract between the Company and the United States or any of its agencies requiring full title to such patent or invention to be in the United States.

I acknowledge receipt of a copy of this notification.

_Heather Kelly_
By: (Printed Name Of Employee)
Date: 6.9.14

Witnessed By:

_[signature]_
(Printed Name Of Representative)

## Exhibit B

TO:      Shareholder Representative Services LLC

FROM:  *Heather Kelly*

DATE:  *6.9.14*

SUBJECT:  Previous Inventions

1.    Except as listed in Section 2 below, the following is a complete list of all inventions or improvements relevant to the subject matter of my employment by Shareholder Representative Services LLC (the "Company") that have been made or conceived or first reduced to practice by me alone or jointly with others prior to my engagement by the Company:

    ✓    No inventions or improvements.

    ___    See below:

    ___    Additional sheets attached.

2.    Due to a prior confidentiality agreement, I cannot complete the disclosure under Section 1 above with respect to inventions or improvements generally listed below, the proprietary rights and duty of confidentiality with respect to which I owe to the following party(ies):

| Invention or Improvement | Party(ies) | Relationship |
|---|---|---|
| 1. | | |
| 2. | | |
| 3. | | |

    ___    Additional sheets attached.

## ATTACHMENT A

## DESCRIPTION OF TRADE SECRETS AND PROPRIETARY INFORMATION

- Employee list and all information contained in employee records

- Vendor list and all information contained in vendor records

- Customer list and all information contained in customer/subscriber records

- Prospective Customer list and all information contained in prospective customer/subscriber records

- Stockholder list and all information contained in stockholder records

- All information concerning the financial condition of SRS, including information contained in any income statement, balance sheet or other internal financial report.

- Marketing plans and strategies of SRS, including information pertaining to prospective customers.

- Financing plans and strategies of SRS.

- Staffing plans and strategies of SRS.

- Expansion plans and business strategies of SRS.

- Negotiations for financing, merger, acquisition, new customers, new vendors or otherwise

- Technical research projects, methodologies and results

- Other research and development projects

- Drawings and specifications

- Software and hardware documentation

- Forms, manuals, handbooks and guidelines written for internal staff use

- Any materials for which SRS has copyright protection or are marked confidential

- SRS' proprietary operating procedures and systems

**Schedule 1**

| | |
|---|---|
| • Answers Corporation<br>• TA Associates<br>• Oracle Corporation<br>• Medtronic, Inc.<br>• Boston Scientific Corporation<br>• United Health Group, Inc.<br>• Eli Lilly & Company<br>• Monsanto & Company<br>• Teleflex Inc.<br>• Red Hat Corporation<br>• VMWare<br>• Western Digital Corporation<br>• Qualcomm<br>• Citrix Systems<br>• Medsave USA<br>• Merkle, Inc.<br>• Parsons Corporation<br>• Nautic Partners<br>• Blackboard, Inc<br>• Abry Partners<br>• Iasis Healthcare<br>• GrubHub Seamless<br>• CA Technologies<br>• Teva Pharmaceuticals<br>• CR Bard<br>• RR Donnelly | • Brooks<br>• Dreamworks<br>• Fashion to Figure<br>• Tory Burch LLC<br>• Cubist Pharmaceuticals<br>• GE Capital<br>• Welsh Carson<br>• Ascend Learning<br>• Live Nation<br>• Cargill Inc.<br>• Behrman Capital<br>• Saab Corporation<br>• Levin Leichman<br>• Covidien<br>• Allergan, Inc.<br>• Sophos Inc.<br>• Papa Murphys<br>• Booz Allen<br>• Charles Bank Capital Partners<br>• Verizon<br>• EnerNOC<br>• Biogen Idec<br>• Entegris, Inc.<br>• EMC Corporation |

Heather Kelly Schedule 1