**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

**DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO FILE A SECOND AMENDED COMPLAINT**

## I. INTRODUCTION

Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A. (collectively "PNC") as well as Defendants Heather Kelly and Alex Tsarnas (the "Individual Defendants" and, collectively with PNC, the "Defendants") oppose Plaintiffs' SRS Acquiom Inc. and Shareholder Representative Services LLC's (collectively "SRSA") untimely and futile Motion for Leave to File a Second Amended Complaint Based on Newly Discovered Evidence. The Court should deny the Motion because SRSA unduly delayed in seeking to file this Motion fewer than two weeks before its preliminary injunction motion is due. SRSA now seeks to assert claims based on documents SRSA has had in its possession since September. Further, though SRSA does not name Luda Semenova as a party, the proposed Second Amended Complaint ("SAC") is rife with allegations about Ms. Semenova's supposed violation of her unenforceable

non-solicitation agreement in a blatant attempt to prop up SRSA's improper request for a preliminary injunction. Granting SRSA's Motion now, on the eve of injunction briefing and after the close of expedited discovery would prejudice Defendants' ability to defend these newly asserted claims. Further, the Motion should be denied because amendment would be futile. SRSA fails to state a cognizable claim in any one of the additional causes of action set forth in the proposed SAC. Should this Court allow SRSA to amend its Complaint at this stage in the proceedings, it should not allow SRSA to rely on these newly asserted claims and allegations in support of its request for injunctive relief.

## II.     PROCEDURAL BACKGROUND

In March 2018, PNC hired Alex Tsarnas and Heather Kelly, two former SRSA employees. Sixteen months later, in July 2019, SRSA filed this suit against PNC, Mr. Tsarnas, and Ms. Kelly alleging misappropriation of SRSA's trade secrets and breach of the Individual Defendants' agreements with SRSA. SRSA immediately threatened to file for a Temporary Restraining Order (TRO). ECF No. 24. After negotiation, the parties agreed that SRSA would refrain from filing for a TRO, Defendants would agree to provide digital forensic evidence, and the parties would enter into an expedited scheduling order. *Id.* Accordingly, this Court on July 26, 2019 issued a Scheduling and Expedited Discovery Order setting the schedule for expedited discovery as well as the briefing on SRSA's anticipated motion for a preliminary injunction. ECF No. 26.

Though SRSA requested this expedited discovery schedule, SRSA has repeatedly requested extensions of that schedule or failed to meet agreed-upon discovery deadlines. Due to SRSA's representation that it would not be able to meet the court-ordered document production

deadline, the parties agreed to produce documents on a rolling basis concluding on September 25, 2019. ECF No. 46.  Accordingly, Defendants produced the vast majority of their documents to SRSA by September 25, 2019.  On October 29, 2019, after SRSA had deposed Mr. Tsarnas and Ms. Kelly[1], at SRSA's request, the parties filed a Joint Motion to Amend the Scheduling Order, setting the date for SRSA to file its preliminary injunction motion for November 25, 2019.  ECF No. 57.  At no point in the negotiation of this proposed scheduling order did SRSA advise or otherwise indicate that it intended to amend its Complaint.  On November 13, 2019, SRSA filed its Motion to Amend its Complaint.

SRSA seeks to amend its Complaint to include three additional causes of action and new factual allegations as follows:  SRSA now seeks to assert a cause of action for breach of contract – non-solicitation obligation against Ms. Kelly.  In addition, SRSA has added two entirely new claims: intentional interference with prospective economic business advantage against PNC and Ms. Kelly and breach of the duty of loyalty against Ms. Kelly.  SRSA also seeks to add factual allegations to support its claims for breach of contract – non-solicitation obligation and intentional interference with contractual relations. Now, after the expedited discovery period is over, SRSA argues it should be allowed to include these additional claims and allegations in its motion for a preliminary injunction due Monday November 25, 2019.  PNC is required to respond to SRSA's motion for a preliminary injunction by December 13, 2019.

---

[1] On October 14, 2019, SRSA cancelled the deposition of Ms. Semenova scheduled for that week.  Ms. Semenova's deposition was re-scheduled for November 5, 2019.

### III. THE BASES ON WHICH THIS COURT SHOULD DENY THE MOTION TO AMEND

#### A. SRSA Unduly Delayed Filing Its Motion to Amend.

While ordinarily leave to amend is granted freely as justice requires under Rule 15(a), motions to amend are subject to denial where, as here, a party unduly delays in seeking amendment. Motions to amend are subject to denial on the basis of delay because a "party who delays in seeking an amendment is acting contrary to the spirit of the rule[.]" *Minter v. Prime Equip. Co.*, 451 F.3d 1196, 1205 (10th Cir. 2006) (internal quotation omitted). Accordingly, the Tenth Circuit has held that "plaintiffs cannot wait until the last minute to ascertain and refine the theories on which they intend to build their case." *Alpenglow Botanicals, LLC v. United States*, 894 F.3d 1187, 1203 (10th Cir. 2018) (internal quotation omitted). Yet, that is what SRSA attempts here.

SRSA possessed documents and information from which it could have discovered at least some of these proposed claims and allegations since 2018, and SRSA could have discovered all of them upon receipt of Defendants' document production in September 2019. By waiting until two weeks before preliminary injunction briefing is set to begin, SRSA has unduly delayed seeking to file its SAC.

Many of the claims SRSA seeks to assert in its untimely SAC are based upon facts SRSA knew when it filed its original Complaint. Courts have denied motions to amend "where the moving party was aware of the facts on which the amendment was based for some time prior to the filing of the motion to amend." *Fed. Ins. Co. v. Gates Learjet Corp.*, 823 F.2d 383, 387 (10th Cir. 1987) (denying leave to amend where "at the time the lawsuit was filed [the moving party] possessed documents from which it could have discovered and asserted [a] defense.") In its

4

proposed SAC, SRSA asserts for the first time a breach of the duty of loyalty claim against Ms. Kelly based upon her "assisting and collaborating with Tsarnas on 'how to build' a copycat product." SAC p. 60. But, SRSA was aware of this information when it filed its original complaint. SRSA alleged "Kelly was coordinating with [Tsarnas] to leave SRSA and start a competing automated escrow and payment service at another financial institution." FAC ¶ 52.[2] . SRSA offers no justification for its failure to bring the breach of the duty of loyalty claim against Ms. Kelly in its original Complaint filed in July 2019. This delay is unreasonable and inexcusable.

SRSA's new allegations regarding Ms. Semenova make clear that SRSA is using its untimely Motion to try to salvage its forthcoming preliminary injunction motion. SRSA knew that PNC had hired Ms. Semenova when it filed its original Complaint in July 2019. FAC ¶ 85. By September 2019, SRSA received PNC's internal documents from which it discovered its additional allegations concerning Ms. Semenova.[3] Despite receiving these documents in September, SRSA did not seek to file the proposed SAC until two weeks before its preliminary injunction motion is due, insisting that "SRSA should be allowed to raise these new allegations as part is its Preliminary Injunction Motion[.]" SRSA Motion to File Second Amended Complaint (ECF No. 61) p. 8. SRSA's scheme is apparent. Though the non-solicitation provisions of Mr. Tsarnas and Ms. Kelly's contracts have expired and cannot support injunctive

---

[2] Moreover, SRSA possessed and in fact produced to PNC the documents on which this claim is based including a February 21, 2018 email from Mr. Tsarnas to Ms. Kelly transmitting a draft presentation. *Id.* ¶ 58. *See* Tsarnas Dep. Ex. 7 SRSAvPKT00026427 attached as Exhibit 1.

[3] For example, exhibits 12 and 13 to Ms. Semenova's deposition, which are at the core of the amended claims, are documents PNC produced on September 18, 2019. Semenova Ex. 12 PNC_00043003 attached as Exhibit 2; Semenova Ex. 13 PNC_00043016 attached as Exhibit 3.

5

relief, Ms. Semenova's "non solicitation obligation to SRSA will not expire until March 2020." SAC ¶ 175.[4]  SRSA seeks to amend so that it can use Ms. Semenova's contract to support its request for injunctive relief.  But, courts in this Circuit "will properly deny a motion to amend when it appears that the plaintiff is using Rule 15 to make the complaint a moving target [or] to salvage a lost case by untimely suggestion of new theories of recovery." *Minter*, 451 F.3d at 1206 (internal quotations omitted).  This Court should not allow SRSA to amend its Complaint to use this new theory of injunctive recovery based on Ms. Semenova's unenforceable contract.

### B. Defendants Will Suffer Substantial Prejudice if the Motion is Granted.

"The second, and most important, factor in deciding a motion to amend the pleadings, is whether the amendment would prejudice the nonmoving party." *Id.* at 1207.  The Court should not allow SRSA to amend its Complaint on the eve of injunction briefing as such amendment would prejudice Defendants' ability to defend these new claims.  Courts find amendment prejudicial when "the amendment unfairly affects the defendants in terms of preparing their defense to the amendment." *Id.* at 1208 (internal quotation omitted).  Though SRSA asserts that "this matter is relatively early in the overall discovery process of the case, and there remains abundant time for Defendants to develop their defenses," this belies the current state of the case.  ECF No. 61 at p. 8.  The period for expedited discovery is over.  SRSA will file its preliminary injunction motion, including these newly asserted claims, tomorrow.  Defendants anticipate SRSA will request injunctive relief consisting of PNC shutting down its entire M&A payments

---

[4] *See DTC Energy Grp., Inc. v. Hirschfeld*, 912 F.3d 1263, 1274 (10th Cir. 2018) ("when an injunction is based on 'a restrictive employment agreement,' the injunction 'must be co-extensive with the terms of the' agreement") (quoting *Phoenix Capital, Inc. v. Dowell*, 176 P.3d 835, 843 (Colo. App. 2007)).

6

business. Adding additional claims after the close of expedited discovery would unfairly prejudice Defendants. *See Garcia v. Dillon Cos.*, Civil Action No. 05-cv-02339-MSK-MEH, 2008 U.S. Dist. LEXIS 123139, at *7 (D. Colo. Aug. 12, 2008) (denying motion to amend complaint to add claims "well after the close of discovery" because it "would unfairly prejudice Defendant"). Allowing SRSA to amend its Complaint in support of its preliminary injunction motion would prejudice Defendants by allowing no opportunity whatsoever to develop defenses to these claims. If the Court allows SRSA to amend its Complaint, it should nonetheless prohibit SRSA from relying on these newly asserted claims in support of its request for injunctive relief.

### C.  Amending the Complaint Would be Futile.

Even if SRSA's proposed amendment is found to be timely, the Court should deny the Motion because SRSA's requested amendments would be futile. There are long-recognized exceptions to allowing leave to amend, such that leave need not be "freely given", that include "futility of amendment". *Foman v. Davis*, 371 U.S. 178, 182 (1962). "A proposed amendment is futile if the complaint, as amended, would be subject to dismissal. The futility question is functionally equivalent to the question whether a complaint may be dismissed for failure to state a claim." *Gohier v. Enright*, 186 F.3d 1216, 1218 (10th Cir. 1999). Thus, an amendment that fails to state a claim should be denied. In its SAC, SRSA seeks to add factual allegations as well as new causes of action. But, SRSA's Motion should be denied because it fails to state any additional claim.

#### 1.  SRSA Cannot State a Claim Against Heather Kelly for Breach of Her Non-Solicitation Obligation.

SRSA cannot state a claim against Ms. Kelly for breach of her non-solicitation obligation. Under Colorado law, claims for breach of contract, including non-solicitation

contracts, require showing damages to the plaintiff resulting from defendant's breach. *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1125 (D. Colo. 2017) (finding plaintiff failed to show a likelihood of proving damages resulting from defendant's breach where the customer independently decided to move that work away from plaintiff). In support of its breach of contract claim against Ms. Kelly, SRSA alleges that in March 2018 she "encourage[d] Ali Bryson and Amanda Jackson to leave SRSA." SAC ¶ 108. Neither Ms. Bryson nor Ms. Jackson left SRSA. Therefore, this alleged solicitation did not cause any damages and cannot support a claim for breach of contract.

SRSA also alleges that Ms. Kelly "began talking with Luda Semenova, a relationship manager at SRSA, about possible employment with PNC" and that "Tsarnas and Kelly's efforts were successful, and PNC hired Semenova on March 8, 2019." *Id.* at ¶¶ 109-112. But, Ms. Semenova testified that it was she who reached out to Ms. Kelly about possible employment at PNC. Semenova Tr. 77:02-08 attached as Exhibit 4 ("I have reached out not just to Heather but to every single person that I knew in the industry looking for a job as I needed to get out of SRS."). There is no evidence to the contrary. Courts have held that violation of non-solicitation provision requires proactive initiating steps. *See SliceX, Inc. v. Aeroflex Colo. Springs, Inc.*, No. 2:04-cv-615, 2006 U.S. Dist. LEXIS 51000, at *19 (D. Utah July 25, 2006) (rejecting claim for violation of non-solicitation agreement where "each of these individuals testified … that it was they who made first contact with [Defendant], not the other way around " so that "Plaintiff has failed to produce any evidence which shows that Defendant took any proactive step to obtain former SliceX employees"); *Enhanced Network Sols. Grp., Inc. v. Hypersonic Techs. Corp.*, 951 N.E.2d 265, 269 (Ind. Ct. App. 2011) ("all major steps were initiated and taken by [the former

8

employee]… Therefore, we conclude that [defendant] did not breach the non-solicitation clause of the Agreement."). Indeed, Colorado courts have found a non-solicitation provision is enforceable if it "is limited to prohibiting *only* initiating contacts or '*active*' solicitation of the employer's employees. *Phx. Capital, Inc. v. Dowell*, 176 P.3d 835, 844 (Colo. App. 2007) (emphasis added). It was Ms. Semenova who made initiating contact.

Finally, SRSA relies on Ms. Kelly's alleged participation in the solicitation of Ms. Lisa Kremers, another SRSA employee. *Id.* at ¶ 113. PNC did not hire Ms. Kremers until June 2019, months after Ms. Kelly's non-solicitation obligation expired. *Id.* To the extent SRSA alleges that Ms. Kelly's interfered with Ms. Semenova's Employee Invention Assignment and Confidentiality ("EIAC") Agreement with SRSA by relying on her assistance to recruit Mr. Kremers, this claim fails because Ms. Semenova's non-solicitation agreement is unenforceable. Throughout its proposed SAC, SRSA makes allegations regarding supposed violations of Ms. Semenova's EIAC Agreement with SRSA. *See, e.g.,* SAC ¶¶ 107, 112, 117, 119, 120. This agreement includes a non-solicitation provision with a period of one year following termination of employment. Semenova EIAC ¶ 17, attached to the SAC as Exhibit D. But, the agreement is governed by the laws of the State of California. *Id.* at ¶ 19. Therefore, the non-solicitation obligation is invalid and cannot be enforced.

Under California law, non-solicitation agreements are invalid. Section 16600 of the California Business and Professions Code states that "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void[.]" This provision, applicable to non-solicitation agreements, "expresses California's strong public policy of protecting the right of its citizens to pursue any lawful employment and

9

enterprise of their choice." *AMN Healthcare, Inc. v. Aya Healthcare Servs*., Inc., 28 Cal. App. 5th 923, 935 (Cal. App. 4th Dist. 2018).  As a citizen of California, Ms. Semenova's rights are protected by this policy.  Courts applying California law have consistently refused to enforce non-solicitation clauses, finding them to be void as a matter of law in violation of Section 16600. *Id.* (holding a provision prohibiting defendants from soliciting or recruiting employees of the former employer for at least one year was void under Section 16600 because it restrained defendants from practicing their profession); *Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (Cal. App. 2d Dist. 2009) (rejecting non-solicitation clause which prevented employees from soliciting any business from any of clients of their former employer for 18 months); *The Retirement Grp. v. Galante,* 176 Cal. App. 4th 1226, 1240 (Cal. App. 4th Dist. 2009) (holding non-solicitation of customers clause violated Section 16600).  Notably, California courts "doubt the continued viability of the common law trade secrets exception" to this policy.  *Dowell*, 179 Cal. App. 4th at 577 (rejecting argument that non-solicitation clause was narrowly tailored to protect trade secrets and thus fell within the so-called "trade secrets exception" to the rule). Under California law, set forth in the governing law provision, the non-solicitation provision of Ms. Semenova's EIAC Agreement is void as a matter of law.

> **2. SRSA Cannot State a Claim for Intentional Interference with Prospective Economic Business Advantage.**

SRSA cannot state a claim against Ms. Kelly and PNC for intentional interference with prospective advantage based on a deal to which PNC and SRSA both submitted bids as competitors.  Because the law favors competition, generally, "a plaintiff cannot sue one of its competitors intentional interference in prospective economic advantage." *Occusafe, Inc. v. EG&G Rocky Flats*, 54 F.3d 618, 622-23 (10th Cir. 1995).  "A legitimate business activity

10

intended to achieve an advantage over competitors, but which does not rely on improper methods, cannot provide a basis for liability." *Campfield v. State Farm Mut. Auto. Ins. Co.*, 532 F.3d 1111, 1123 (10th Cir. 2008). To state a claim for intentional interference, a plaintiff must show improper methods and when a competitor is involved, the plaintiff must show "particularly severe conduct[.]" *SGS Acquisition Co. v. Linsley*, 352 F. Supp. 3d 1109, 1118 (D. Colo. 2018). Here, SRSA cannot show that PNC or Ms. Kelly used any improper means, let alone severe conduct, when submitting their bid. As of June 2019, Ms. Kelly had no non-solicitation obligation to SRSA – she, together with PNC, was a competitor of SRSA. SRSA argues that PNC and Ms. Kelly used improper means because they relied on assistance from Ms. Semenova, knowing her assistance would violate her EIAC Agreement with SRSA. SAC ¶ 190. But, as detailed *supra* § III.C.1, the non-solicitation provision of Ms. Semenova's EIAC Agreement is legally void. Any reliance on Ms. Semenova's alleged assistance would not be improper as she had no obligation to SRSA. SRSA alleges nothing more than competition in the market.

### 3. SRSA Cannot State a Claim for Breach of the Duty of Loyalty Against Heather Kelly.

SRSA's untimely claim against Ms. Kelly for breach of the duty of loyalty fails for two independent reasons. Initially, it is barred by the economic loss doctrine. Even if it were not barred, the claim fails because SRSA does not allege any injury resulting from the supposed breach. SRSA now alleges that Ms. Kelly agreed "as a condition of her employment" "to adhere to SRSA's General Employment Terms & Conditions, which include a 'Duty Not to Compete.'" SAC p. 60. Ms. Kelly allegedly breached this duty by collaborating with Mr. Tsarnas on a presentation on building a competing platform she knew he would send to an SRSA competitor.

11

SRSA's breach of the duty of loyalty claim is barred by the economic loss doctrine. The economic loss rule provides that "a party suffering only economic loss from the breach of an express or implied contractual duty may not assert a tort claim for such a breach absent an independent duty of care under tort law." *Great Am. Opportunities, Inc. v. Kent*, 352 F. Supp. 3d 1126, 1138 (D. Colo. 2018). Though employees have a common law duty of loyalty, if the duty is also imposed by the contract, a tort claim based on that duty is barred. *23 Ltd. v. Jayson Lessing & Talent Factory LLC*, No. 2015CV31187, 2016 Colo. Dist. LEXIS 370, at *6 (Colo. Dist. Ct. Jan. 21, 2016). Courts in Colorado have found the economic loss rule bars breach of the duty of loyalty claims. *Id.* at *7; *Amec Env't & Infrastructure v. Newfields Cos.*, No. 14CV30669, 2015 Colo. Dist. LEXIS 268, at *8 (Colo. Dist. Ct. Jan. 22, 2015). Here, SRSA explicitly cites Ms. Kelly's contractual "Duty Not to Compete" in support of its breach of the duty of loyalty claim. Thus a tort claim arising from the same duty is barred.

SRSA's breach of the duty of loyalty claim against Ms. Kelly fails for the additional reason that SRSA has not alleged any damages as a result. Under Colorado law, a claim for a breach of fiduciary duty requires showing that the plaintiff incurred damages caused by defendant's breach of fiduciary duty. *SGS Acquisition Co.*, 352 F. Supp. 3d at 1119. In support of this claim, SRSA alleges Ms. Kelly assisted Mr. Tsarnas with a presentation she knew he would send to a competitor of SRSA. SRSA fails to allege that it suffered any injury or damage as a result of Ms. Kelly's supposed assistance with this presentation, or that this entity ever even became a competitor. This is because neither Mr. Tsarnas nor Ms. Kelly ever worked for the company to whom he allegedly sent the document, and that company never entered the

marketplace to compete with SRSA.  In the absence of any conceivable damages resulting from the alleged breach, this claim fails.

### 4. SRSA Cannot Add Allegations Regarding Ms. Semenova's Non-Solicitation Obligation to Support Its Claims.

Because Ms. Semenova's non-solicitation agreement is invalid under California law, it would be futile for SRSA to add allegations relating to this agreement in support of its claim for intentional interference with contractual relations.  SRSA may not add allegations in support of its interference with contractual relations claim based on Ms. Semenova's invalid contract.  In support of its claim that PNC and Individual Defendants interfered with SRSA's contracts, SRSA seeks to allege that "Defendants PNC and Kelly improperly and intentionally interfered with Semenova's EIAC Agreement with SRSA by encouraging her to solicit several of SRSA's biggest clients and one of SRSA's then-employees."  SAC ¶ 174.  SRSA also alleges that Ms. Semenova's "non solicitation obligation to SRSA will not expire until March 2020."  *Id.* ¶ 175.  SRSA seeks to amend its Complaint to include allegations focusing on Ms. Semenova's supposed non-solicitation obligation though March 2020 in an attempt to shore up its forthcoming request for injunctive relief.  But, the non-solicitation provision of Ms. Semenova's EIAC Agreement is void and unenforceable.  Not only is there no valid contract with which PNC and Ms. Kelly could have interfered, but Ms. Semenova was free, under California law, to solicit SRSA employees and customers.  Adding these allegations would thus be futile.

13

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny SRSA's Motion for leave to file a Second Amended Complaint. Should the Court allows SRSA to amend its Complaint, Defendants respectfully request that SRSA be prohibited from relying on these newly asserted claims and allegation in support of its forthcoming request for injunctive relief.

Dated: November 24, 2019

By: *Sarah B. Wallace*
Andrew J. Petrie
Sarah B. Wallace
**BALLARD SPAHR LLP**
1225 Seventeenth Street, Suite 2300
Denver, Colorado 80202-5596
Telephone: 303-292-2400
Facsimile: 303-296-3956
petriea@ballardspahr.com
wallaces@ballardspahr.com

Hara K. Jacobs
Noah S. Robbins
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215-668-8500
Facsimile: 215-864-8999
jacobsh@ballardspahr.com
robbinsn@ballardspahr.com