**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

**DEFENDANTS' BRIEF REGARDING MOTION TO COMPEL TEXT MESSAGES,
SPOLIATION, AND SPREADSHEETS**

PNC immediately arranged for the forensic imaging of the phones of Defendants Kelly and Tsarnas (the "Individual Defendants") as soon as it learned of the existence of this Action. Defendants reviewed the text messages on those phones and produced any messages relevant to SRSA's requests. That was not enough. SRSA now asserts that text messages are so relevant to this dispute that the deletion of a microscopic number of text messages prior to SRSA filing this Action is a basis to request sanctions. Against this backdrop, SRSA's refusal to search its own text messages is both shocking and sanctionable. Defendants move to compel SRSA to: (A) conduct the required search of text messages of SRSA employees for internal SRSA communications that are responsive to Defendants' August 2, 2019 discovery requests or otherwise relevant to the parties' claims and defenses, or to produce the devices for forensic imaging and searching; and (B) to produce those text messages.[1]

It is galling for SRSA to come before this Court seeking sanctions for Defendants' failure to produce a few texts deleted in the ordinary course before the lawsuit was filed, while on the other hand brazenly contending that it is not even required to search its employees' text messages as part of its discovery obligations in this case. SRSA believes that it has satisfied its burden by simply asking its custodians whether any of their text messages might be responsive to Defendants' discovery requests and only producing three strings of text messages in this case. Defendants first raised SRSA's failure to fulfill its discovery obligations regarding text messages in October. [Exhibit 1]. At the time, SRSA's counsel stated that he needed to investigate whether

---

[1] At the least, Defendants ask that SRSA search the texts of: Mark Vogel, Paul Koenig, Lon LeClair, Glen Colthup, Michael Perry and Hannah Lee, members of senior management; Eric Miller, Mr. Tsarnas' replacement and Ms. Kelly's superior; Christa Fancher and Ali Bryson, relationship managers; and Amanda Jackson, Managing Director of Business Development.

SRSA had even collected text and instant messages. [*Id.*]. Thereafter, SRSA engaged in a protracted cat-and-mouse game, demanding that Defendants accept the its assertion that no responsive text messages were located while refusing to provide the basic information supporting that contention such as whether SRSA's counsel even searched text messages and, if so, from whom. It is now clear that SRSA was merely delaying until it could conjure up a dispute of its own with the hope that the Court would conflate Defendants' legitimate discovery concern with SRSA's manufactured and illegitimate complaint. The record, however, is clear. Defendants have gone above and beyond in fulfilling their discovery obligations while SRSA has failed to conduct even the most perfunctory search for relevant information. The Court should respectfully grant Defendants' motion and deny SRSA's motion in its entirety.

## I.   PNC'S MOTION TO COMPEL REGARDING TEXT MESSAGES

### A.   Relevant Background Facts

SRSA's witnesses have testified that they used text messaging for business purposes on company-owned phones. Paul Koenig, co-founder and co-CEO of SRSA, testified he texted Messrs. Vogel, LeClair, and Nelson, and Ms. Jackson for SRSA business. [Exhibit 2 at 24:19-25:13]. Mr. Koenig testified he did not personally search his company phone for text messages, but he turned his phone over to counsel "to do that search." [*Id.* at 23:16-24:17]. Yet, not a single text message from Mr. Koenig has been produced.

Marc Vogel, co-founder and co-CEO of SRSA, similarly testified that he texted with SRSA employees and he is aware that other employees text among themselves. [Exhibit 3 at 20:13-21]. And, Ms. Kelly advises that, based on her experience, Mr. Vogel's preferred method of communication is via text and not email. Yet again, SRSA did not produce any text

2

messages from Mr. Vogel. Lon LeClair, COO of SRSA, testified that he texted with Heather Kelly. [Exhibit 4 at 20:10-19]. PNC has produced those text messages, but SRSA has not.

Amanda Jackson, Managing Director of East Coast Development, uses text messaging "with many employees who serve as relationship manager and the executive team, when needed." [Exhibit 5 at 22:3-15]. She also texts with the executive team (Mark Vogel, Paul Koenig, Lon LeClair) when trying to get someone's attention "with something more urgent." [*Id.* at 22:25-23:13]. Despite this fact, Ms. Jackson testified no one has asked to review her phone to retrieve any text messages. [*Id.* at 23:14-24:7].

In its Second Amended Complaint, SRSA now accuses PNC, Tsarnas and Kelly of soliciting its employees Ali Bryson and Amanda Jackson [ECF No. 66, ¶¶ 107-108], but has not produced text records of any such contacts.

In response, SRSA has produce only 3 "threads" of texts: (1) An undated string between Heather Kelly and an unidentified recipient discussing Kelly making pies due to PNC not being ready for her; (2) a message string between Alex Tsarnas and Christa Fancher between November 27, 2017 and March 8, 2018 discussing random business and Tsarnas's departure from SRSA; and (3) a message string between Heather Kelly and Christa Fancher between August 29, 2017 and June 6, 2019 discussing random business and Tsarnas's and Kelly's departures, and SRSA's efforts to intimidate Tsarnas and Kelly through attorney letters.[2]

---

[2] Common sense dictates that SRSA would possess text messages responsive to a number of Defendants' requests, including: No. 6(c) (documents concerning whether Tsarnas or Kelly used, disclosed, or otherwise misappropriated the alleged Trade Secret following their departure from SRS); No. 7 (documents concerning the loss of customers alleged in the Complaint); No. 9 (documents concerning the Individual Defendants alleged breach of the non-solicitation covenant); No. 11 (documents concerning the Individual Defendants' retention of allegedly confidential documents); No. 13 (communications concerning the Individual Defendants following their departure from SRSA); No. 14 (documents relating

In comparison, PNC has located and produced 3,610 messages across 39 separate threads, and 35 LinkedIn messages across 11 threads. When sued, PNC immediately obtained all the devices from which Tsarnas and Kelly could have sent messages, retained an independent third-party to image those devices, and searched them for responsive documents. [ECF No. 43-1, ¶¶1 (iii), (iv), (vi)]. In addition, PNC produced text messages from all its key witnesses.

In sharp contrast, SRSA did not gather devices from its principal actors and, instead, apparently interviewed them to see if they would either remember or admit that they might have something relevant or likely to be relevant to PNC's document requests. By doing so, SRSA completely abrogated its and its counsel's obligation to identify materials relevant to the parties' claims and defenses by improperly deferring to the memory of the SRSA employees involved.

During the meet-and-confer process, in an effort to determine the scope of SRSA's failure to conduct a proper inquiry, Defendants asked SRSA to identify the custodians it interviewed about potentially responsive text messages and which of those custodian's texts SRSA then reviewed for responsiveness. SRSA refused to even provide that information.

**B.    SRSA Is Required to Conduct a Review of Its Key Employees' Text Messages and Defendants Are Entitled to See SRSA's Text Messages**

It defies credulity to assert that there were no text messages between SRSA's principals concerning the termination of Tsarnas and the resignation of Kelly, their subsequent hiring by PNC, SRSA's knowledge of PNC Paid, SRSA "customers lost to PNC," and SRSA's unsupported allegations that these individuals misappropriated trade secrets and caused irreparable harm to SRSA—all subject matters that would be undoubtedly responsive to PNC's

---

to SRSA's alleged irreparable harm); and No. 15 (documents concerning PNC Paid) [ECF No. 49-1].

outstanding discovery requests.

Text messages are a valuable source of discoverable information both because of their ubiquitous use and the fact that parties using texts are generally more candid and unguarded. In a case of this magnitude – in which SRSA seeks to shut down an entire line of PNC's business, including an online banking application for which PNC has invested $5 million – it is clearly appropriate and proportional to require SRSA to collect and review its key employees' texts. It is not appropriate and not proportional to rely on supposed "custodian interviews" of select, unidentified witnesses and delegate a party/counsel's obligation to identify responsive information to the witnesses' memory. In this case, given the uncontroverted evidence that the key witnesses all regularly use text for work purposes, it is unfathomable that counsel did not actually search text messages. Suffice it to say that if PNC had proceeded in the same fashion, SRSA's howls of protest would ring long and loud.

SRSA purports to excuse its conduct as an issue of "proportionality," but this misses the point. SRSA seeks to shut down PNC's entire paying agent and escrow business where the employees left SRSA for PNC in March 2018, PNC's business has been up and running for over a year, and SRSA has known it was competing with PNC since at least the fall of 2018. The effort to obtain texts is minimal and proportional to the needs of this case and to the expedited proceedings on which SRSA professes to have embarked.[3]

The general rule is that where the entity exercises control over the phone, or the phone is provided by the entity and used for work purposes, the entity has an obligation to search for or

---

[3] This is not a burdensome project. In order to gather the texts, SRSA need only provide the devices to the existing discovery vendor and have them imaged. The images can then be searched using key words.

5

produce responsive text messages. *See e.g., Cotton v. Costco Wholesale Corp.*, 2013 U.S. Dist. LEXIS 103367, n. 25 (D. Kan., July 25, 2013); *Hayse v. City of Melvindale*, 2018 U.S. Dist. LEXIS 129637, at *17-18 (E.D. Mich., Aug. 2, 2018). This rule applies even when the device in question also serves as a custodian's personal device. *See Thomas v. Starz Entm't, LLC*, No. CV 15-09239 CAS (AFMx), 2017 U.S. Dist. LEXIS 60808, at *2-3 (C.D. Cal. Apr. 5, 2017) (ordering review and production of business communications made on personal devices); *Small v. Univ. Med. Ctr. of S. Nev.*, No. 2:13-cv-00298-APG-PAL, 2014 U.S. Dist. LEXIS 114406, at *44 (D. Nev. Aug. 18, 2014) (failure to identify, preserve, collect, or search personal mobile devices used for business likely resulted in destruction of responsive ESI).

In *Allstate Ins. Co. v. Papanek*, 2018 U.S. Dist. LEXIS 2253, at *12-13 (S.D. Ohio, Jan. 5, 2018), Allstate relied on its individual employees' review of their phones to identify whether there was responsive information, and the fact that those individuals' searches produced no responsive information. *Id.* at *13. "The Court question[ed] whether such review by the individual employees themselves, rather than a review by counsel, [was] sufficient," and ordered both Allstate and its counsel to conduct a "reasonable search of the devices … responsive to Defendants' Rule 34 request and to provide Defendants with a supplemental response which includes a detailing of all efforts undertaken to search for responsive information." *Id.* at *13-*14. SRSA's review here is equally insufficient and the Court should require SRSA's counsel to review its key employees' text messages and produce responsive texts immediately.

## II. THIS COURT SHOULD REJECT SRSA'S REQUEST RELATING TO DELETED TEXT MESSAGES

### A. Relevant Background Facts

SRSA terminated Alex Tsarnas on January 23, 2018. Heather Kelly left SRSA on March

8, 2018. PNC hired both in late March 2018. On March 9, 2018, prior to PNC hiring either employee, Jonathan Patchen, outside counsel for SRSA, wrote PNC regarding the hiring of the Individual Defendants, and SRSA's alleged concern that the Individual Defendants would not respect SRSA's "trade secrets." What followed was a series of back and forth correspondences between Mr. Patchen and Mr. DeForest, outside counsel for PNC. The final correspondence relating to Ms. Kelly was on April 2, 2018. Mr. Patchen sent a final letter regarding Tsarnas to Mr. DeForest on June 15, 2018 regarding Tsarnas's employment, which specifically stated that "SRS, at this juncture, will rely on Tsarnas's and PNC's assurances that Tsarnas will not engage in any further wrongdoing." [Exhibit 6]. PNC heard nothing further from Mr. Patchen or SRSA for over a year until SRSA chose to initiate the instant lawsuit on July 11, 2019.

Upon initiation of the lawsuit, counsel for the Defendants immediately collected electronic devices from Kelly and Tsarnas, which were forensically imaged on or around July 14, 2019. Counsel reviewed thousands of text, iMessage, and WhatsApp messages, with over 3,600 messages being produced to SRSA. Out of those thousands of messages, SRSA now takes issue with 35 deleted messages (.5% of the approximately 7000 messages exchanged between Kelly and Tsarnas), which SRSA claims are evidence of spoliation. Out of those 35 messages, the four listed on Forensic Pursuit's reports from Tsarnas's phone have corresponding entries in the report generated from Kelly's phone. The substance of those texts demonstrates that the deletion of this small number of texts was not part of a nefarious strategy to deprive SRSA of the factual basis for its claims that it presently lacks. Rather, the innocuous four texts Tsarnas allegedly deleted are as follows:

7

| Date Sent | Time Sent | Who Sent | Text Body |
|---|---|---|---|
| 6/23/2019 | 7:44:28 AM | Heather Kelly | Sorry for early morning. I sent an email. There may be a problem with the Carrick funds on instamed and we should address ASAP if we can. |
| 6/23/2019 | 12:30:12 AM | Heather Kelly | Let me know when it looks good |
| 6/23/2019 | 7:41:46 PM | Heather Kelly | The fix to PAID us being done in about an hour in which case the upload we uploaded to fix Carrick entities will need to be re-uploaded. |
| 7/5/2019 | 12:33:04 PM | Alex Tsarnas | Yikes. |

According to the testimony of SRSA's undisclosed and improper forensic expert, Kelly deleted the remaining 31 messages, which were sent in the interval between July 16, 2018 and December 25, 2018, sometime between December 25, 2018 and February 7, 2019. [ECF No. 70, ¶ 67]. In other words, Ms. Kelly deleted these texts nine months after the final SRSA letter directed to her, seven months after the last communication from SRSA to anyone at PNC, and seven months before SRSA filed suit.

### B.      Relevant Legal Standard

"To obtain sanctions for spoliation of evidence, a party must first show that '(1) a party ha[d] a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of the evidence.'" *Wolff v. United Airlines, Inc.*, Civil Action No. 1:18-cv-00591-RM-SKC, 2019 U.S. Dist. LEXIS 158350, at *4-6 (D. Colo. Sep. 17, 2019) (J. Crews) (quoted authority omitted). "In determining whether a party's duty to preserve has been triggered, courts evaluate facts such as the likelihood a certain kind of incident will result in litigation; the knowledge of certain employees about threatened litigation based on their participation in the dispute; or notification received from a potential

8

adversary." *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1163 (D. Colo. 2015).

Fed. R. Civ. P. 37(e) governs the preservation of electronic information. Before applying remedial measures SRSA must prove prejudice and before ordering the drastic remedy of an adverse inference the Court must find "that the party acted with the intent to deprive another party of the information's use in the litigation."

### C.     Kelly and Tsarnas Had No Duty to Preserve Their Personal Text Messages

The entire thrust of SRSA's complaint is the legally unsupported notion that the receipt of a letter triggers a perpetual duty to preserve. "The undeniable reality is that litigation is an ever-present possibility in our society. While a party should not be permitted to destroy potential evidence after receiving unequivocal notice of impending litigation, the duty to preserve relevant documents should require more than a mere possibility of litigation." *Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC*, 244 F.R.D. 614, 623 (D. Colo. 2007) (two-year delay between initial contact from opposing attorney and filing of lawsuit did not trigger any duty to preserve). Courts have routinely found that a preservation obligation does not accrue when the delay between an original statement of discontent and the filing of the lawsuit was significantly delayed. *Price v. Peerson*, No. CV 13-3390 PSG (JEMx), 2014 U.S. Dist. LEXIS 195108, at *22 (C.D. Cal. Apr. 23, 2014) (two-year delay between attorney complaint and lawsuit did not trigger duty to preserve); *Edifecs, Inc. v. Welltok, Inc.*, No. C18-1086JLR, 2019 U.S. Dist. LEXIS 194858, at *12 (W.D. Wash. Nov. 8, 2019) (legal hold not triggered by informing employee that he must respect his prior contracts). Here, SRSA sent letters to PNC regarding SRSA's former employees, and then went silent for 13 months (Mr. Tsarnas) and 15 months (Ms. Kelly). [Exhibit 6]. The law simply does not require a person to maintain a

9

perpetual legal hold on their personal devices, especially where, as here, there was no imminent threat of litigation. Accordingly, the ordinary course cleaning out of old texts on Kelly's and Tsarnas' personal devices was entirely proper.

### D. Kelly and Tsarnas Did Not Delete Their Messages in Bad Faith

Even assuming a duty to preserve existed, if a party "seeks an adverse inference to remedy the spoliation, it must also prove bad faith." *Turner v. Pub. Serv. Co. of Colo.*, 563 F.3d 1136, 1149 (10th Cir. 2009) (citations and quotation omitted). There is a strong rationale for requiring a showing a bad faith:

> Adverse-inference instructions were developed on the premise that a party's intentional loss or destruction of evidence to prevent its use in litigation gives rise to a reasonable inference that the evidence was unfavorable to the party responsible for loss or destruction of the evidence. Negligent or even grossly negligent behavior does not logically support that inference. Information lost through negligence may have been favorable to either party, including the party that lost it, and inferring that it was unfavorable to that party may tip the balance at trial in ways the lost information never would have.

*EEOC v. JetStream Ground Servs.*, 878 F.3d 960, 966 (10th Cir. 2017) (citing Fed. R. Civ. P. 37 Advisory Committee Note to Subdivision (e)(2), 2015 Amendment).

SRSA has not provided any evidence of bad faith or intent to deprive SRSA's use of the information's on either Tsarnas's or Kelly's part. Kelly repeatedly testified at her deposition that she would periodically delete texts from her phone in an attempt to get organized. [Exhibit 7 at 26:23-27:7; 29:14-30:13]. Other courts have previously held that routine deletion of text messages, absent a duty to preserve, cannot establish the necessary bad faith for an adverse inference. *See Edifecs*, 2019 U.S. Dist. LEXIS 194858, at *14; *Federico v. Lincoln Military Hous., LLC*, No. 2:12-cv-80, 2014 U.S. Dist. LEXIS 178943, at *31 (E.D. Va. Dec. 31, 2014). Because Kelly was merely following her usual pattern of periodically deleting her text messages,

there is no basis whatsoever to infer, let alone to conclude, that she acted in bad faith or with the intent to deprive SRSA of the information's use in litigation as Fed. R. Civ. P. 37(e) requires.

Tsarnas was never asked about his text retention policies during his deposition, but all *four* of the deleted texts from the forensic examination of his personal mobile device have been found through searching the collected messages from Kelly, and are clearly not relevant to this dispute. Given the text messages in question have "been restored or replaced through additional discovery" SRSA has not been prejudiced as required under Fed. R. Civ. P. 37(e). Further, the substance of those text messages demonstrates that SRSA has no basis to claim that that any texts were deleted in bad faith.

### III. PNC NEED NOT PRODUCE NON-RESPONSIVE DOCUMENTS SIMPLY BECAUSE SRSA WANTS THEM

On November 18, 2019, SRSA requested pursuant to Paragraph 8 of the Forensic Protocol [ECF No. 43-1] that the neutral forensic examiner, Forensic Pursuit, provide five deleted excel spreadsheets residing on Kelly's PNC laptop for review and potential production to SRSA. At the time, SRSA stated that, due to the filenames, it believed the documents were potentially derivatives of a contact list that Kelly created while at SRSA. [Exhibit 8]. Forensic Pursuit provided the documents to Ballard Spahr on November 19, 2019.

Ballard Spahr reviewed the materials provided by Forensic Pursuit. Of the five excel spreadsheets, Ballard Spahr produced two of the spreadsheets to SRSA, which were other versions of the contact list Kelly created. Ballard Spahr advised SRSA the three remaining spreadsheets were not responsive to any SRSA document request. [Exhibit 9]. SRSA argued during the meet and confer that it was entitled to the three remaining spreadsheets for two reasons: (1) they were responsive to RFP No. 4 based on the name alone; and (2) that "nothing in

11

the forensic protocol limits [SRSA] to seeking user files that are also responsive to RFPs." [Exhibit 10].

Addressing SRSA's first argument, undersigned counsel reviewed the documents and they are not responsive to RFP No. 4 which requested budgets, business plans, business strategies, sales strategies, or competitive analysis. The documents are also not responsive to RFP No. 8 (which is likely what SRSA meant to refer to). RFP No. 8 requested "documents sufficient to show the identity of all potential or actual customers targeted by PNC for PNC's M&A Payments and Escrow Products, the first date such customer was contacted about PNC's M&A Payments and Escrow Products, and the PNC employee who served as the primary contact for such customer." This Court then limited RFP No. 8 to customer contacts where the customer was on a customer list that Kelly or Tsarnas are alleged to have taken with them to PNC. [ECF No. 51 at 2-3]. The documents at issue are potential customer lists but are not responsive because they do not evidence PNC's first contact with, or the PNC primary contact for, any customer on the lists that SRSA claims that Tsarnas and Kelly took with them to PNC.

SRSA's argument that by virtue of the parties' Forensic Protocol, the parties agreed that one party could request any document regardless of responsiveness and be entitled to that document simply because it was on a device subject to the protocol is baseless. A forensic protocol does not make non-responsive documents suddenly responsive and there is no communication among the parties supporting SRSA's position. To find otherwise would turn the rules of discovery on their head.

Dated:  December 12, 2019

By: _/s/ Sarah B. Wallace_____
Andrew J. Petrie
Sarah B. Wallace
**BALLARD SPAHR LLP**
1225 Seventeenth Street, Suite 2300
Denver, Colorado 80202-5596
Telephone: 303-292-2400
Facsimile: 303-296-3956
petriea@ballardspahr.com
wallaces@ballardspahr.com

Hara K. Jacobs
Noah S. Robbins
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215-668-8500
Facsimile: 215-864-8999
jacobsh@ballardspahr.com
robbinsn@ballardspahr.com

## CERTIFICATE OF SERVICE

      I hereby certify that on this 12th day of December, 2019, a true and correct copy of the foregoing **DEFENDANTS' BRIEF REGARDING MOTION TO COMPEL TEXT MESSAGES, SPOLIATION, AND SPREADSHEETS** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

    Warren A. Braunig
    Maya Karwande
    Benjamin D. Rothstein
    Michelle Ybarra
    Victor H. Yu
    KEKER, VAN NEST & PETERS LLP
    633 Battery Street
    San Francisco, CA 94111-1809

    Scott R. Bialecki
    Matthew C. Miller
    SHERIDAN ROSS P.C.
    1560 Broadway, Suite 1200
    Denver, CO 80202

    *Attorneys for Plaintiffs SRS Acquiom Inc., a Delaware corporation and Shareholder Representative Services LLC, a Colorado limited liability company*

                                            */s/ Brian S.S. Auerbach*
                                              Brian S.S. Auerbach