# EXHIBIT 75

# *SRS ACQUIOM INC*

## *VS.*

## *PNC FINANCIAL SERVICES GROUP*

**Deposition**

## *PAUL KOENIG 30(b)(6)*

*11/15/2019*

---

## *AB Court Reporting & Video*

*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

## Page 25

1　Wilmington Trust was describing its spreadsheets to
2　be in its lawsuit, again without ever having seen
3　their spreadsheets.
4　　　Q　Do you now have a different understanding
5　as to the substance of the spreadsheets that
6　Wilmington Trust accused Mr. Nelson of bringing with
7　him to SRS?
8　　　MS. YBARRA:  Objection, outside the scope.
9　　　A　Do I -- I still have not seen the
10　spreadsheets, so my understanding is the same as what
11　it was based on their description.
12　　　Q　(BY MR. ROBBINS)  So if it was just a
13　customer list but all it set forth was the name of a
14　customer, you would agree that's not a trade secret,
15　correct?
16　　　MS. YBARRA:  Objection, incomplete
17　hypothetical, and it calls for a legal conclusion.
18　　　A　That depends.  So compilations, as you
19　know, can be a trade secret depending on what that
20　compilation is.  So I would need to know more about
21　what that customer list is.
22　　　Q　(BY MR. ROBBINS)  I just told you, the
23　customer list is the name of customers, nothing else.
24　　　　Is that a compilation of trade secret, in
25　your view?

## Page 26

1　　　MS. YBARRA:  Objection, calls for a legal
2　conclusion, incomplete hypothetical.
3　　　A　I don't know without the facts and
4　circumstances related to it.  If it's a list of three
5　customers, it may not be.  If it's a compilation, I
6　don't know when it becomes a trade secret.
7　　　Q　(BY MR. ROBBINS)  So M&A attorneys,
8　they're easily found through simple Internet
9　searches, is your declaration in Mr. Koenig's -- in
10　Mr. Nelson's case, correct?
11　　　MS. YBARRA:  Objection, mischaracterizes
12　the document.
13　　　A　So the document says, M&A attorneys and
14　all their contact information can be easily found
15　through simple Internet searches.
16　　　Q　(BY MR. ROBBINS)  And you stand by that
17　test -- that statement, correct?
18　　　A　I do.
19　　　Q　But yet you believe if somebody simply
20　takes that Internet search and plops it into a
21　spreadsheet, that becomes a trade secret?
22　　　MS. YBARRA:  Objection, vague, calls for a
23　legal conclusion, incomplete hypothetical.
24　　　A　That's not what I said.
25　　　Q　(BY MR. ROBBINS)  Okay.  So what else

## Page 27

1　would someone have to add to transform the results of
2　simple Internet searches into a trade secret list, in
3　your view?
4　　　MS. YBARRA:  Objection, vague, incomplete
5　hypothetical, calls for a legal conclusion.
6　　　A　They could either contain additional
7　information or be a significant compilation that it
8　becomes a trade secret.
9　　　Q　(BY MR. ROBBINS)  Now, you've never seen
10　the spreadsheets that Mr. Nelson was accused of
11　taking, correct?
12　　　A　That's correct.
13　　　Q　So you have no idea how significant a
14　compilation they are, right?
15　　　A　As I said on this, based on the
16　description, my understanding is that we would not
17　see value, but I was basing it on the description.
18　　　Q　Now, Mr. Nelson was also alleged to have
19　taken a list of all of Wilmington Trust's deals,
20　correct?
21　　　A　I don't recall if that was specifically
22　what was alleged.
23　　　Q　I'm sorry, all of his deals at Wilmington
24　Trust?
25　　　A　Again, I don't recall specifically if it

## Page 28

1　was alleged there was a list of all his deals, some
2　of his deals.  I don't remember specifically what
3　they alleged.
4　　　Q　Okay.  So if Ms. Kelly brought a list of
5　some of her deals from SRS to PNC, is that okay?
6　　　MS. YBARRA:  Objection, vague, incomplete
7　hypothetical, calls for a legal conclusion, I think.
8　　　A　I don't know specifically what all
9　Mr. Nelson's obligations were to Wilmington Trust and
10　how that may have factored in.
11　　　　I know that Ms. Kelly specifically had
12　obligations under a contractual agreement not to
13　retain any information or materials whatsoever, and
14　to keep confidential everything -- all information
15　she had to us.
16　　　MR. ROBBINS:  Motion to strike.  That's
17　definitely not what the confidentiality agreement
18　says.
19　　　Q　(BY MR. ROBBINS)  Now, you also state in
20　this declaration, which, again, this is subject to
21　the penalty of perjury, correct?
22　　　A　I'm sorry, what is, the declaration?
23　　　Q　Yes.
24　　　A　I assume it is, yes.
25　　　Q　As is the complaint, you're also subject