**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

   v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION TO DISMISS NEW CLAIMS
ASSERTED IN SECOND AMENDED COMPLAINT**

1361755

**TABLE OF CONTENTS**

**Page**

I.     INTRODUCTION ................................................................................................................1

II.    BACKGROUND .................................................................................................................2

       A.     Defendants use SRSA's confidential and trade-secret information to build
              competing products for PNC ....................................................................................2

       B.     Discovery confirms SRSA's allegations and reveals additional misconduct ..........3

III.   ARGUMENT .......................................................................................................................5

       A.     SRSA has stated a claim for breach of Kelly's non-solicitation agreement
              (Fourth Cause of Action Against Kelly) ..................................................................5

              1.     Defendants' motion does not address SRSA's allegations of
                     customer solicitation ......................................................................................6

              2.     Kelly breached her contract by directly and indirectly soliciting
                     Luda Semenova ..............................................................................................7

              3.     SRSA sufficiently alleges damages based on improper solicitation............9

       B.     SRSA has stated a claim for interference with prospective economic
              advantage (Eighth Cause of Action) .......................................................................11

       C.     SRSA has stated a claim for breach of the duty of loyalty against Kelly
              (Ninth Cause of Action) ..........................................................................................12

       D.     If the Court grants any portion of Defendants' motion, SRSA should be
              given leave to amend ...............................................................................................14

IV.    CONCLUSION..................................................................................................................14

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*Adperio Network, LLC v. AppSlide, LLC*,
   2017 WL 4407928 (D. Colo. Mar. 28, 2017) ............................................................................14

*Alexander & Alexander, Inc. v. Frank B. Hall & Co.*,
   1990 WL 8028 (D. Colo. Jan. 31, 1990)....................................................................................8

*AMG Nat. Tr. Bank v. Ries*,
   No. 06-cv-4337, 2007 WL 2713218 (E.D. Pa. Sept. 13, 2007)..................................................7

*Brever v. Rockwell Int'l Corp.*,
   40 F.3d 1119 (10th Cir. 1994) .................................................................................................14

*DigitalGlobe, Inc. v. Paladino*,
   269 F. Supp. 3d 1112 (D. Colo. 2017)...........................................................................7, 8, 11

*Doubleclick Inc. v. Paikin*,
   402 F. Supp. 2d 1251 (D. Colo. 2005).......................................................................................8

*Echostar Satellite, L.L.C. v. Persian Broad. Co, Inc.*,
   No. 05-cv-00466-PSF-MEH, 2006 WL 446087 (D. Colo. Feb. 22, 2006) ........................10, 14

*Energex Enters., Inc. v. Anthony Doors, Inc*.,
   250 F. Supp. 2d 1278 (D. Colo. 2003).....................................................................................12

*Enhanced Network Sols. Grp., Inc. v. Hypersonic Techs. Corp*.,
   951 N.E.2d 265, 267 (Ind. Ct. App. 2011)). .............................................................................9

*Glob. Trim Sales, Inc. v. Checkpoint Sys. UK Ltd.*,
   No. 12-cv-1314-JLS-RNB, 2014 WL 12690629 (C.D. Cal. Sept. 17, 2014) ..........................12

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
   863 F. Supp. 2d 1066 (D. Colo. 2012).............................................................................11, 13

*Marsh USA Inc. v. Karasaki*,
   No. 08-cv-4195-JGK, 2008 WL 4778239 (S.D.N.Y. Oct. 31, 2008).........................................8

*Nation v. First Tenn. Bank Nat'l Ass'n*,
   No. 08-cv-02671-PAB-CBS, 2010 WL 3894160 (D. Colo. Sept. 30, 2010)...........................10

1361755

*Reconstruction Experts v. Franks*,
  No. 18-cv-30509, 2018 WL 1973177 (D. Colo. Feb. 23, 2018) ................................................ 8

*Robbins v. Wilkie*,
  300 F.3d 1208 (10th Cir. 2002) .............................................................................................. 10

*T.A. Pelsue Co. v. Grand Enters., Inc.*,
  782 F. Supp. 1476 (D. Colo. 1991) ......................................................................................... 14

*Wells Fargo Ins. Servs. USA, Inc. v. McQuate*,
  276 F. Supp. 3d 1089 (D. Colo. 2016) ...................................................................................... 9

*Wolf Auto Ctr. Sterling, LLC v. Schadegg*,
  No. 15-cv-01035-MSK-KLM, 2016 WL 10570867 (D. Colo. Oct. 31, 2016) ........................ 12

**State Cases**

*Bermel v. BlueRadios, Inc.*,
  440 P.3d 1150 (Colo. 2019) .................................................................................................... 13

*DISH Network Corp. v. Altomari*,
  224 P.3d 362 (Colo. App. 2009) ........................................................................................... 7, 8

*Gordon v. Landau*,
  321 P.2d 456 (1958) ................................................................................................................ 12

*Hervey v. Mercury Cas. Co.*,
  185 Cal. App. 4th 954 (2010) ................................................................................................. 13

*Phoenix Capital, Inc. v. Dowel*,
  176 P.3d 835 (Colo. App. 2007) ........................................................................................... 7, 9

**State Statutes**

Colo. Rev. Stat. § 8-2-113(2)(b) ................................................................................................... 7

Colo. Rev. Stat. § 8-2-113(2)(d) ................................................................................................... 7

**Rules**

F.R.Civ.P. 8(a)(3) ....................................................................................................................... 11

iii

1361755

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively "SRSA") submit this response to "Defendants' Motion To Dismiss New Claims Asserted In Second Amended Complaint [ECF No. 66]," filed December 6, 2019, at ECF 106.

## I. INTRODUCTION

Defendants are engaged in an ongoing scheme to unfairly compete with SRSA[1] through misuse of SRSA's confidential and proprietary information, in violation of the trade secret statutes and in breach of confidentiality agreements with SRSA. Those facts are well-established and form the basis of SRSA's pending preliminary injunction motion. Because Defendants have already answered those claims, they are not at issue here.

The present motion concerns new claims that SRSA added to its Second Amended Complaint ("SAC") based on evidence revealed during expedited discovery that Kelly solicited numerous SRSA customers and employees in violation of her contract with SRSA (Fourth Cause of Action against Kelly), Defendants intentionally interfered with SRSA's prospective economic advantage by using wrongful means to target and win business from an established SRSA customer (Eighth Cause of Action), and Kelly breached her duty of loyalty to SRSA by conspiring with Tsarnas to misappropriate SRSA trade secrets while still employed at SRSA (Ninth Cause of Action).

Defendants' challenges to these new causes of action are meritless. *First*, Defendants' contend that the Fourth Cause of Action against Kelly fails because (a) Kelly only "indirectly" solicited the SRSA *employees* who joined PNC (and therefore lawfully under Colorado law, despite language her contract prohibiting indirect solicitation), and (b) the other *employees* she

---

[1] "Defendants" refers collectively to PNC, Alex Tsarnas, and Heather Kelly.

solicited still work at SRSA (and therefore SRSA cannot allege damages). This argument fails because it ignores SRSA's detailed allegations improperly solicited SRSA's *customers*, also in breach of her employment contract with SRSA. Additionally, the provision in Kelly's contract prohibiting "indirect solicitation" is valid under Colorado law because Kelly was "management personnel" at SRSA, and SRSA's damages allegations with respect to *all* solicited employees easily satisfies the pleading standard.

*Second*, Defendants argue that SRSA's Eighth Cause of Action fails to state a claim for intentional interference, because SRSA has not alleged "improper means" by which PNC and Kelly interfered with SRSA's prospective business relations. But SRSA alleges that Defendants misused SRSA information and induced another former employee to breach her SRSA employment agreement—two independently sufficient grounds to state a claim for interference with prospective economic advantage against a competitor.

*Finally*, Defendants argue that SRSA's Ninth Cause of Action against Kelly fails to state a claim for breach of duty of loyalty, because SRSA already alleged a separate cause of action for breach of contract, and Kelly's duty of loyalty is contractual. But Defendants' answer asserts that Kelly's agreement with SRSA is unenforceable, so SRSA is permitted to plead breach of the duty of loyalty as an alternative tort claim.

## II.   BACKGROUND

### A.   Defendants use SRSA's confidential and trade-secret information to build competing products for PNC

Over years of hard work and investment, SRSA developed a specialized suite of software products and services for the mergers-and-acquisitions (M&A) payments-and-escrow business. ECF 66 (hereafter "SAC") ¶1. The two individual Defendants—Heather Kelly and Alex

Tsarnas—were both senior executives at SRSA with deep knowledge of SRSA's customers and, while at the company, access to SRSA's trade-secret product roadmaps and strategies, pricing strategies, and customer information. *Id.* ¶¶13-14, 45-49. In January 2018, SRSA fired Tsarnas after discovering that he had embezzled over $35,000. *Id.* ¶¶42, 50-51. Kelly quit SRSA several weeks later, but only after using her SRSA-issued computer to steal numerous trade secret documents—including customer lists and product specifications—and then attempting to destroy the forensic evidence of her theft. *Id.* ¶¶42, 59-68.

In mid-March 2018, Kelly and Tsarnas both joined PNC—a national bank with no previous foothold in the M&A payments-and-escrow business that sought to replicate SRSA's unique and valuable suite of products. *Id.* ¶¶2, 60. In the ensuing weeks and months, Kelly and Tsarnas used stolen SRSA trade secrets to help PNC build a copycat product suite and—with uncanny success—target SRSA's core customers. *Id.* ¶¶42, 69-75, 114-121. On July 11, 2019, SRSA filed this lawsuit to stop Defendants' continued use of SRSA's trade secrets and to enforce its contractual rights against its former employees. *Id.* ¶6.

**B.**     **Discovery confirms SRSA's allegations and reveals additional misconduct**

Expedited discovery confirmed that Defendants' misuse of SRSA information is pervasive, ongoing, and has given PNC a significant head-start in the market. As detailed in SRSA's preliminary injunction motion, Defendants used customer information stolen by Kelly to solicit SRSA's customers with PNC's competing products; Kelly stole and distributed within PNC SRSA's "Payments Spreadsheet," a cornerstone back-end specification and data template that PNC continues to use; and Tsarnas and Kelly provided detailed information about SRSA's product-development and pricing strategies to help PNC develop its copycat products and

3

underbid SRSA on competitive deals. ECF 86 at 10-21. Defendants' misappropriation has degraded SRSA's status as innovator, allowed PNC to successfully compete with SRSA for business earlier than it otherwise could have, and forced SRSA to compete against its own technology. *Id.* ¶79.

Discovery has also revealed additional, previously unknown misconduct, including the following:

**Solicitation of SRSA Customers:** Kelly's SRSA employment agreement prohibits her from directly or indirectly soliciting SRSA customers or employees. *Id.* ¶105. On March 7, 2018, the day before Kelly resigned from SRSA, she began compiling a spreadsheet of SRSA customers, their key points of contact and contact information, the deals they hired SRSA to work on, and other information that would aid in future solicitations of their business. *Id.* ¶114. In June and October 2018, with PNC's knowledge and encouragement, Kelly solicited numerous clients and referral sources—including SRSA customers—to bring their business to PNC. *Id.* In January 2019, Kelly again solicited at least four (and likely many more) SRSA customers. *Id.* ¶¶115-16. One of them, Customer A, was among PNC's first customers. *Id.* ¶116.

**Solicitation of SRSA Employees:** Kelly and Tsarnas also solicited at least three SRSA employees—Luda Semenova, Amanda Jackson, and Ali Bryson—for employment at PNC. *Id.* ¶107. Kelly texted with Semenova about potential PNC employment within weeks of resigning from SRSA, and she and Tsarnas later orchestrated PNC's efforts to solicit her. *Id.* ¶¶109-11. Kelly and Tsarnas both later deleted their texts with Semenova. *Id.* ¶121. Kelly and Tsarnas also hatched an elaborate plan to sow discontent among Jackson and Bryson at SRSA, in hope of bringing them to PNC. *Id.* ¶108. When this plan failed, Defendants recruited Jackson directly. *Id.*

4

**Interference with SRSA's Business Opportunities**: Kelly and Tsarnas possessed confidential knowledge about SRSA's relationship with Customer B, an established SRSA customer that stood to provide SRSA with future business. Defendants systematically targeted Customer B using SRSA confidential and trade-secret information and convinced Customer B to shift its business from SRSA to PNC. *Id.* ¶117. Defendants also induced Semenova to breach her SRSA employment agreement by directing her to solicit SRSA customers, including Customer B. *Id.* Semenova attended a meeting with Customer B, placed follow-up phone calls to Customer B, made strategy recommendations, and helped put together PNC's winning bid for Customer B's business. *Id.* Likewise, Semenova participated in at least two client dinners with another SRSA customer, Customer C, that has since ceased doing business with SRSA. *Id.* ¶118.

**Competing with SRSA While Still an Employee:** In February 2018, after Tsarnas had been terminated but before Kelly resigned, Kelly collaborated with Tsarnas on how to replicate SRSA's products and co-authored (with Tsarnas) a presentation on that topic for the purpose of advertising her and Tsarnas's services to a potential SRSA competitor. *Id.* ¶¶58, 198; *see* ECF 100-6.

On November 13, 2019, SRSA filed a Second Amended Complaint alleging these new facts and asserting the additional causes of action that they support. ECF 66. This motion followed.

### III.   ARGUMENT

#### A.   SRSA has stated a claim for breach of Kelly's non-solicitation agreement (Fourth Cause of Action Against Kelly)

As a condition of her employment, Kelly agreed not to solicit SRSA employees or customers as follows:

5

1361755

> During and for a period of one year after termination of, my employment with [SRSA], I will not *directly or indirectly* solicit or take away *suppliers, customers, employees, or consultants of [SRSA]* other than those set forth on Schedule 1 below for my own benefit or for the benefit of any other party.

ECF 66-2 ¶17 (emphasis added). Kelly violated those obligations by soliciting SRSA employees for employment at PNC and by soliciting numerous SRSA customers. SAC ¶¶106-20, 157-165. The SAC amended the Fourth Cause of Action (Breach of Non-Solicitation Obligation) to add Kelly as a defendant on that claim based on the forgoing.

### 1. Defendants' motion does not address SRSA's allegations of customer solicitation

Defendants argue that SRSA fails to state a claim that Kelly breached by soliciting SRSA *employees*. That is wrong, as detailed below. But Defendants' argument fails out of the gate because it ignores SRSA's detailed allegations that Kelly solicited SRSA's *customers*. Specifically, Kelly compiled a list of SRSA's customers immediately before leaving SRSA, took that list with her, directly solicited SRSA customers on that list during her non-solicitation period, and caused at least one of those customers to become among PNC's first clients. SAC ¶¶114-116, 147. These allegations were incorporated by reference into the Fourth Cause of Action (SAC ¶157), and alone are sufficient to state a claim for breach of Kelly's non-solicitation obligation.[2]

---

[2] Defendants may attempt to argue on reply that, under certain circumstances, Colorado law prohibits customer non-solicit agreements. That prohibition is inapplicable here because Kelly was management personnel at SRSA (section III.A.2, *infra*), and because Kelly's customer non-solicit is a "contract for the protection of trade secrets." Colo. Rev. Stat. § 8-2-113(2)(b); *see also AMG Nat. Tr. Bank v. Ries*, No. 06-cv-4337, 2007 WL 2713218, at *8 (E.D. Pa. Sept. 13, 2007), *aff'd*, 319 F. App'x 90 (3d Cir. 2008). In *AMG*, the court, interpreting Colorado law, upheld a two-year prohibition on client solicitation because it protected the employer's trade-secret customer information. *Id.* at *9. SRSA has alleged that Kelly, like the employee in *AMG*, had extensive access to SRSA's trade-secret customer lists and information. *Id.* ¶77. Her one-year

6

### 2. Kelly breached her contract by directly and indirectly soliciting Luda Semenova

Defendants' Motion oddly attempts to parcel out the allegations based on the particular employees Kelly solicited. Defendants argue that SRSA fails to state a claim based on Kelly's solicitation of Luda Semenova, because SRSA failed to allege that Kelly "actively solicited" her, and the clause of Kelly's non-solicit that prohibits her from "*indirectly*" soliciting SRSA's employees and customers is invalid. ECF 106 at 5; ECF 66-2 ¶17. In fact, SRSA *did* allege that Kelly directly solicited Semenova. SAC ¶¶109-112. But, even if her solicitation of Semenova were merely indirect, Kelly's obligation to refrain from *indirect* solicitation is valid and enforceable, as Kelly was "management personnel" at SRSA.

Colorado permits employment agreements that bar *indirect* solicitation of employees (as well as solicitation of customers) where, as here, the employee is an "executive" or "management personnel." Colo. Rev. Stat. § 8-2-113(2)(d); *Phoenix Capital, Inc. v. Dowel,* 176 P.3d 835, 841-43 (Colo. App. 2007). "Management personnel" includes "persons who conduct or supervise a business," *DISH Network Corp. v. Altomari*, 224 P.3d 362, 366 (Colo. App. 2009), as determined by a fact-specific inquiry considering the employee's title, job responsibilities, compensation, autonomy, access to confidential and trade-secret information, and involvement in strategy and decision-making. *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1122 (D. Colo. 2017). Allegations that an Assistant Vice President "supervised employees" and "independently handled the needs of clients and developed new business" adequately pleaded management personnel status. *See Alexander & Alexander, Inc. v. Frank B. Hall & Co.*, 1990

---

customer non-solicit is valid for the independent reason that it serves to protect SRSA's trade secrets.

WL 8028, at *5 (D. Colo. Jan. 31, 1990) (denying motion to dismiss claim for breach of indirect solicitation clause). Other courts have found that highly-compensated "mid-level" managers with autonomy, involvement in company strategy, and access to trade secrets similarly qualify. *See, e.g., DigitalGlobe*, 269 F. Supp. 3d at 1125; *Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1259 (D. Colo. 2005); *DISH Network*, 224 P.3d at 368.

Kelly likewise qualifies as "management personnel." Kelly was hired as a "Senior Vice President and Relationship Manager" and compensated generously. SAC ¶13; ECF No. 66-2 (Ex. B). She was responsible for managing deals and building relationships with key customers—both essential drivers of SRSA's business—and reported to the senior-most executive in SRSA's sales organization. *Id.*¶¶2, 14. Kelly supervised and trained associates that worked under her and had access to SRSA's confidential and trade-secret product roadmaps, pricing strategies, and customer information. *Id.* ¶¶13, 49, 87, 100. She also regularly participated in product development and business strategy meetings. *Id.* ¶49. Kelly therefore qualifies as "management personnel" within the statutory exception to Colorado's prohibitions on non-competes.[3]

As noted above though, even if Kelly were not "management personnel" (and she certainly was), the Fourth Cause of Action survives because SRSA alleges that Kelly *directly*

---

[3] Courts interpreting Colorado law have found allegations of indirect solicitation sufficient to establish a likelihood of success on the merits warranting entry of an injunction. *See, e.g., Reconstruction Experts v. Franks*, No. 18-cv-30509, 2018 WL 1973177, at *2 (D. Colo. Feb. 23, 2018) (entering TRO based on allegations that defendant attempted to recruit former colleagues through a proxy, in violation of non-solicit agreement); *Marsh USA Inc. v. Karasaki*, No. 08-cv-4195-JGK, 2008 WL 4778239, at *20 (S.D.N.Y. Oct. 31, 2008) (entering preliminary injunction based on evidence of indirect solicitation). SRSA's allegations are certainly sufficient to state a claim under the more lenient motion to dismiss standard.

solicited Semenova and other employees. Defendants do not contest that provisions restricting *direct* solicitation of employees are valid. *Phoenix Capital,* 176 P.3d at 841-43. The SAC alleges that Kelly discussed employment at PNC with Semenova weeks after resigning from SRSA. SAC ¶109.[4] Later, Kelly and Tsarnas discussed PNC employment options with Semenova again, while coordinating PNC's recruitment efforts. *Id.* ¶¶109-12. They also closely managed the efforts of third parties to recruit Jackson and Bryson. *Id.* ¶108. That conduct is far from the benign, passive behavior—e.g., posting job opportunities on public websites, responding to unprompted inquiries—deemed permissible in the cases on which Defendants rely. ECF 106 at 5 (citing *SliceX, Inc. v. Aeroflex Colo. Springs, Inc.*, No. 2:04-cv-615-TS, 2006 WL 2088282, at *1 (D. Utah July 25, 2006); *Enhanced Network Sols. Grp., Inc. v. Hypersonic Techs. Corp.,* 951 N.E.2d 265, 267 (Ind. Ct. App. 2011)). Nor do Defendants identify any authority limiting "solicitation" to initiation of contact.[5] On the contrary, Colorado courts have held otherwise. *See, e.g., Wells Fargo Ins. Servs. USA, Inc. v. McQuate,* 276 F. Supp. 3d 1089, 1111 (D. Colo. 2016) (explaining that "under Colorado law, conduct may fall within the definition of 'solicit' and 'solicitation' even in the absence of Defendants making the initial contact," and citing cases).

### 3. SRSA sufficiently alleges damages based on improper solicitation.

According to Defendants, SRSA fail to allege breach based on Kelly's solicitation of Amanda Jackson and Ali Bryson, because "SRSA does not allege that either Ms. Bryson or Ms. Jackson left SRSA as a result or otherwise caused SRSA any legally cognizable damages." ECF

---

[4] It cannot yet be determined who initiated certain contacts because Kelly deleted her texts with Semenova. *Id.* ¶121.

[5] To the extent that Defendants suggest that *Phoenix Capital* so limits the enforceability of non-solicitation agreements as a matter of law, it does not. *Phoenix Capital*, 176 P.3d at 844.

106 at 4. This argument fails for two reasons: *First*, as a threshold issue, Colorado law does not require *actual* damages (as opposed to nominal damages) for establishing breach of contract. *See Nation v. First Tenn. Bank Nat'l Ass'n*, No. 08-cv-02671-PAB-CBS, 2010 WL 3894160, at *7 (D. Colo. Sept. 30, 2010) (denying summary judgment on contract claim where plaintiff failed to show disputed issue of material fact on actual damages on contract claim). And, *second*, the SAC is replete with allegations that Kelly's solicitation caused SRSA damages, including from the solicitation of SRSA customers and from the solicitation of Semenova.

Even as to Jackson and Bryson, SRSA *did* allege damages based on Kelly's solicitation of them, and these allegations easily meet the liberal pleading standard. "[A]t the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice[.]" *Robbins v. Wilkie*, 300 F.3d 1208, 1211 (10th Cir. 2002). The SAC alleges that, as a result of Kelly's breach of her non-solicitation obligation, SRSA "suffered irreparable injury and significant damages, in an amount to be proven at trial" and is "entitled to damages sufficient to compensate" the breach. SAC ¶¶164-65. At this stage, nothing further is required, especially since SRSA has not had the opportunity to take discovery on damages issues. *See Echostar Satellite, L.L.C. v. Persian Broad. Co, Inc.*, No. 05-cv-00466-PSF-MEH, 2006 WL 446087, at *5 (D. Colo. Feb. 22, 2006) (upholding breach of contract claim against motion to dismiss, where plaintiff alleged only that "'[a]s a direct and proximate result of Echostar's breach, Tapesh suffered damages[,]'" and emphasizing "liberal requirements" of F.R.Civ.P. 8(a)(3)).

Defendants ignore the pleading standard entirely. The *only* case cited by Defendants on this point—*DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112 (D. Colo. 2017)—is a preliminary injunction case in which the contract claim at issue *survived* a motion to dismiss, and

the court found no likelihood of success on damages only after assessing the evidence. Defendants therefore fail to provide any legal authority supporting their argument that the pleading standard for contract damages requires greater specificity than set forth in the SAC.

### B. SRSA has stated a claim for interference with prospective economic advantage (Eighth Cause of Action)

To state a claim for intentional interference with prospective economic advantage, SRSA must allege Defendants used "improper means" to intentionally prevent SRSA from an economic relationship with a third-party. *See L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, 863 F. Supp. 2d 1066, 1085-86 (D. Colo. 2012). SRSA alleges that Kelly and PNC won business from Customer B, an established SRSA client, where they knew that SRSA had submitted a competing bid. SAC ¶188. SRSA alleges that Kelly and PNC were able to win the bid because of

> their misuse of SRSA's trade secret, confidential and proprietary information, *and* because they relied on assistance from Luda Semenova—knowing that Semenova's assistance would violate her [non-solicitation agreement] with SRSA—to win that deal.

SAC ¶¶188-89. (emphasis added). Defendants contend that SRSA failed to allege "improper means" because Semenova's non-solicitation agreement is void under California law. ECF 106 at 6.

But that is only half the story. Defendants' misuse of SRSA's confidential and proprietary information to win business from Customer B also constitutes "wrongful means." SAC ¶190, ECF 66-2 at 9, ¶¶8-9; ECF 66-4 ¶¶8-9. Numerous courts—including this one—have recognized that "a competitor's interference with another's prospective business relations through independently actionable conduct such as misappropriation of trade secrets or breach of a confidentiality agreement between the parties constitutes 'wrongful conduct'" sufficient to

11

state a claim for interference with prospective economic advantage. *Energex Enters., Inc. v. Anthony Doors, Inc.*, 250 F. Supp. 2d 1278, 1285 (D. Colo. 2003) (citing cases). Thus, Defendants' use of SRSA's information and Kelly's breach of her confidentiality agreement each independently satisfy the "wrongful means" element—regardless of the validity of Semenova's non-solicitation agreement.[6] Defendants' motion should be denied on this basis alone.

Moreover, Semenova's contract is valid under California's trade-secret exception to the prohibition on non-competes. *See, e.g., Glob. Trim Sales, Inc. v. Checkpoint Sys. UK Ltd.*, No. 12-cv-1314-JLS-RNB, 2014 WL 12690629, at *5 (C.D. Cal. Sept. 17, 2014) (citation omitted). Because the agreement is reasonable in duration (one year) and designed to protect SRSA's trade secrets, including confidential customer information (SAC ¶112), it is valid and enforceable. *See, e.g., Gordon v. Landau*, 321 P.2d 456 (1958) (upholding one-year non-solicitation agreement).[7] Moreover, any dispute over the interpretation of the agreement or its purpose the issue is not properly resolved on a motion to dismiss. *See Hervey v. Mercury Cas. Co.*, 185 Cal. App. 4th 954, 962 (2010) ("[W]hen the plaintiff alleges a meaning to the document that is reasonable in light of its terms, the court cannot grant a [motion to dismiss] but must permit the admission of extrinsic evidence regarding the meaning of the document as intended by the parties."). SRSA has properly alleged "wrongful means" sufficient to state a claim, and Defendants' motion to dismiss the Eighth Cause of Action should be denied.

### C. SRSA has stated a claim for breach of the duty of loyalty against Kelly

---

[6] Because SRSA alleges interference using non trade-secret information, its claim is not preempted. *Wolf Auto Ctr. Sterling, LLC v. Schadegg*, No. 15-cv-01035-MSK-KLM, 2016 WL 10570867, at *3 (D. Colo. Oct. 31, 2016).

[7] To the extent the Court finds the non-solicitation agreement overbroad, the Court may enforce it "to the maximum extent permissible under applicable law." ECF 66-4 ¶19.

### (Ninth Cause of Action)

An employee owes a fiduciary duty "not to compete" with their employer while they remain employed. *L-3 Commc'ns*, 863 F. Supp. at 1087. As alleged, Kelly breached her duty of loyalty to SRSA by collaborating with Tsarnas on how to replicate SRSA's products and authoring part of a presentation on that topic intended for a potential competitor. SAC ¶¶58-60, 195-99. Kelly does not dispute that this conduct constitutes disloyalty but argues that (1) SRSA's claim is barred by the economic-loss rule, which prohibits tort claims where the underlying duty is imposed by contract; and (2) SRSA fails to allege damages. ECF 106 at 9-10. Both arguments lack merit.

*First*, it is doubtful that the economic loss rule applies to intentional torts such as breach of fiduciary duty. *See Bermel v. BlueRadios, Inc.*, 440 P.3d 1150, 1155 n.6 (Colo. 2019) ("[T]he economic loss rule generally should not be available to shield intentional tortfeasors from liability for misconduct that happens also to breach a contractual obligation."). Defendants do not cite or address *Bermel*, a 2019 decision from the Supreme Court of Colorado. Moreover, the economic loss rule would not justify dismissal here even if it applied, because Defendants contest the validity of Kelly's entire SRSA employment agreement, so SRSA is permitted to maintain an alternative tort claim for breach of duty of loyalty. ECF 31 (Defendants' Answer) at 25. *See Adperio Network, LLC v. AppSlide, LLC*, 2017 WL 4407928, at *5 n.4 (D. Colo. Mar. 28, 2017) (where defendant simultaneously "contests the validity and enforceability of the contract, dismissal on the basis of the economic loss rule" is improper).

*Second*, SRSA alleged it has "suffered damages" and "is entitled to disgorgement in an amount to be determined at trial." SAC ¶199. Under Colorado law, Kelly is liable for the amount

13

of her salary from the period of her disloyalty to SRSA. *T.A. Pelsue Co. v. Grand Enters., Inc.*, 782 F. Supp. 1476, 1487 (D. Colo. 1991). These allegations are sufficient to state a claim for damages. *Echostar Satellite,* 2006 WL 446087, at *5. Defendants' motion to dismiss the Ninth Cause of Action should also be denied.

### D. If the Court grants any portion of Defendants' motion, SRSA should be given leave to amend

Defendant's motion should be denied in full. But to the extent the Court finds any defects in the SAC's allegations, they are curable by amendment and SRSA should be afforded the opportunity to do so. *Brever v. Rockwell Int'l Corp.*, 40 F.3d 1119, 1131 (10th Cir. 1994) (leave to amend should be granted "if it is at all possible that the party against whom the dismissal is directed can correct the defect in the pleading").

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Defendants' motion to dismiss.

### Compliance with Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.2.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: December 27, 2019 | By: _s/ Warren A. Braunig_<br>Warren A. Braunig<br>*wbraunig@keker.com*<br>Michelle S. Ybarra<br>*mybarra@keker.com*<br>Benjamin D. Rothstein<br>*brothstein@keker.com*<br>Maya Karwande<br>*mkarwande@keker.com*<br>Victor H. Yu<br>*vyu@keker.com*<br>KEKER, VAN NEST & PETERS LLP<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415-391-5400<br>Facsimile:     415-397-7188<br><br>SHERIDAN ROSS P.C.<br>Scott R. Bialecki<br>*sbialecki@sheridanross.com*<br>Matthew C. Miller<br>*mmiller@sheridanross.com*<br>1560 Broadway, Suite 1200<br>Denver, Colorado 80202<br>Telephone:     303 863 9700<br>Facsimile:     303 863 0223<br>Email:     *litigation@sheridanross.com*<br><br>Attorneys for Plaintiffs<br>SRS ACQUIOM INC. AND<br>SHAREHOLDER REPRESENTATIVE<br>SERVICES LLC |

1361755