**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

   v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

**REPLY MEMORNADUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS NEW CLAIMS ASSERTED IN SECOND AMENDED COMPLAINT**

## I.    INTRODUCTION

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively "SRSA") devoted months of expedited discovery seeking to uncover a factual basis to substantiate their claims for trade secret misappropriation in support of their request for extraordinary injunctive relief to shut down an entire business unit. *See* ECF No. 88. After the close of expedited discovery, but before filing its motion for injunctive relief, SRSA filed a Second Amended Complaint ("SAC") (ECF No. 66) purporting to assert three additional claims against Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A. (collectively "PNC") as well as Heather Kelly.[1] In its motion to file the SAC, filed fewer than two weeks before its injunction motion was due, SRSA claimed that these new causes of action would

---

[1] Collectively referred to with PNC and Alex Tsarnas as "Defendants."

support for its request for injunctive relief.  *See* ECF No. 61 at p. 2.  SRSA ultimately did not move for injunctive relief on *any* of the additional causes of action asserted in the SAC.  The reason for this omission is clear: these new claims do not provide any basis for relief in the preliminary injunction context or for that matter, any other context, because they fail as a matter of law.

The glaring substantive void of SRSA's new claims is patently obvious from the face of SRSA's new factual allegations as well as the arguments it presented to this Court concerning the relief it will seek.  SRSA's new allegations rest on boilerplate labels and conclusions that are insufficient to state a claim in an initial complaint, let alone in an amended complaint filed after months of intensive document and deposition discovery.  For example, in support of its tortious interference claim, SRSA fails to identify any legally-recognized "improper means" used by Defendants, which is a requisite element of the cause of action, relying instead on a boilerplate allegation that Defendants misused some unidentified quantum of confidential SRSA information.  When faced with the reality that it cannot satisfy the damages element of its cause of action against Kelly for alleged breach of contract, SRSA argues that it will seek an unpled request for nominal damages.  *See* SRSA Response to Defendants' Motion to Dismiss New Claims Asserted in Second Amended Complaint (ECF No. 140) at p. 10.  SRSA's desire to protract and multiply the length and cost of these proceedings to embark on a quixotic quest for $1 foreshadows the merits of its entire case.  Finally, SRSA argues that it has stated a claim for breach of loyalty against Kelly for allegedly authoring one slide of a presentation sent to a bank that never entered the market – notwithstanding the indisputable lack of harm to its business – because SRSA is entitled to recover the amount of Kelly's salary for the period of her alleged

disloyalty – less than a day.  *Id.* at pp. 13-14.  The duty of loyalty, however, does not prevent an employee from planning to compete against their present employer in the future.  For these reasons and those set forth in Defendants' opening brief, the Court should grant Defendants' motion.

**II.     ARGUMENT**

  **A.     SRSA Fails to State a Claim for Breach of Contract.**

  **1.     SRSA Cannot State a Claim Against Kelly for Indirect Solicitation Because Kelly Cannot be Considered Management Personnel.**

In support of its claim that Kelly solicited SRSA's employees and customers *indirectly*, SRSA argues that it may bind her to non-solicitation obligations otherwise unenforceable under Colorado law because Kelly was allegedly management personnel.  SRSA does not, because it cannot, allege any facts from which the Court could conclude that Kelly was akin to management at SRSA.

The management personnel exception to Colorado's general policy against covenants not to compete does not save SRSA's claims.  Colorado law generally deems covenants not to compete void but includes a narrow statutory exception for "executive and management personnel."  *Alexander & Alexander, Inc. v. Frank B. Hall & Co.*, No. 88-A-1621, 1990 U.S. Dist. LEXIS 21024, at *13-*14 (D. Colo. Jan. 31, 1990) (citing C.R.S. § 8-2-113(2)(d)).  While Colorado law does not define executive and management personnel, prior decisions require a significant level of management responsibility.  For example, the cases cited by SRSA found employees to be management personnel where defendants "had been supervising thirty

3

employees[,]"[2] "supervised approximately fifty employees[,]"[3] and were a "mid-level manager who supervised fifty employees."[4]  In contrast, courts in this District have found that employees are not management personnel where they "were essentially salespersons, and had three levels of management above them [and] had no hiring, firing, or other similar authority" as well as where "his duties and responsibilities suggest that he was a sales person. He supervised two people, but had no hiring or firing authority."  *Wells Fargo Ins. Servs. USA v. McQuate*, 276 F. Supp. 3d 1089, 1105 (D. Colo. 2016); *Cont'l Credit Corp. v. Dragovich*, Civil Action No. 13-cv-01349-WYD-MJW, 2013 U.S. Dist. LEXIS 93952, at *11-*12 (D. Colo. July 1, 2013).

Here, SRSA's claim that Kelly was "management personnel" fails for the simple reason that SRSA alleges no facts in support of this conclusion.  While SRSA (inaccurately) alleges that Kelly had knowledge of its alleged trade secrets, SAC at ¶¶ 13, 49, 87, 100, nowhere does SRSA allege facts analogous to the supervisory responsibilities found sufficient in other cases.  As a result, SRSA's unadorned allegation that Kelly was "management," is precisely the sort of "labels and conclusions" that simply "will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 545 (2007).  Since the management personnel exception to Colorado's prohibition on restrictive covenants is inapplicable to Kelly, any prohibition on indirect solicitation is invalid.  *See Phx. Capital, Inc. v. Dowell*, 176 P.3d 835, 844 (Colo. App. 2007); *see also Wells Fargo*, 276 F. Supp. 3d at 1108 ("the former employee needs to be free to solicit") (quoting *Phx. Capital*, 176

---

[2]   *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1125 (D. Colo. 2017).

[3]   *Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1259 (D. Colo. 2005).

[4]   *DISH Network Corp. v. Altomari*, 224 P.3d 362, 368 (Colo. Ct. App. 2009).

P.3d at 844). As a result, SRSA's claim for breach of contract, to the extent it is predicated on alleged indirect solicitation by Kelly, fails as a matter of law.

### 2. SRSA Fails to State a Claim Against Kelly for Solicitation of SRSA Employees.

Even if SRSA could proceed on a theory that Kelly indirectly solicited Luda Semenova, its allegations nevertheless fail to state a claim upon which relief could be granted under Colorado law. SRSA cites two cases for the proposition that courts interpreting Colorado law have found allegations of indirect solicitation sufficient to establish a likelihood of success on the merits. Neither is apt. In *Reconstruction Experts, Inc. v. Franks*, the court *denied* plaintiffs' request for injunctive relief. No. 18-cv-0466-WJM-KLM, 2018 U.S. Dist. LEXIS 67470, at *16 (D. Colo. Apr. 23, 2018). *Marsh USA Inc. v. Karasaki*, which was decided under New York law – not Colorado – is equally inapplicable. No. 08 Civ. 4195 (JGK), 2008 U.S. Dist. LEXIS 90986, at *13 (S.D.N.Y. Oct. 31, 2008) ("The RCA, NSA, and Confidentiality Agreement each provide that they are to be governed by New York law."). Because Colorado law does not support a prohibition on indirect solicitation, SRSA cannot pursue a claim for breach of a non-solicitation obligation against Kelly based on her contact with Semenova.

Additionally, SRSA cannot demonstrate damages based on the alleged solicitation of employees who continue to work for SRSA to this day: Ali Bryson and Amanda Jackson. SRSA argues that, even though it suffered no harm whatsoever by Kelly's alleged breach, it is entitled to pursue a claim for nominal damages. ECF No. 144 at p. 10.[5] SRSA, however, has not

---

[5] Not only would such a fruitless pursuit waste this Court's time, the case cited by SRSA in support of this proposition was decided under Tennessee law. *Nation v. First Tenn. Bank Nat'l Ass'n*, No. 08-cv-02671-PAB-CBS, 2010 U.S. Dist. LEXIS 104732, at *8 (D. Colo. Sept. 30, 2010) (finding this "contractual dispute is governed by Tennessee law").

advanced a theory of nominal damages – indeed, nowhere does SRSA request nominal damages in its prolix prayer for relief. *See Blakely v. USAA Cas. Ins. Co.*, 691 F. App'x 526, 539 (10th Cir. 2017) (finding plaintiffs "stumble at the outset because they have not advanced a theory of nominal damages independent of their other damages theories"). SRSA's nuisance claim against Kelly for alleged breach of her non-solicitation obligation should be dismissed because the SAC does not allege actionable harm resulting from these contacts and does not even demand nominal damages to compensate for SRSA's non-existent harm.

### 3. SRSA Did Not Allege that Kelly Solicited SRSA Customers in Attempting to Please a Breach of Contract Claim.

In its opposition to Defendants' Motion, SRSA claims "Defendants' argument fails out of the gate because it ignores SRSA's detailed allegations that Kelly solicited SRSA's customers." ECF No. 140 at p. 6. Critically, however, SRSA *never alleges* that Kelly solicited SRSA customers in support of its claim for breach of contract in the SAC. In its Fourth Cause of Action, SRSA alleges only that Kelly solicited SRSA employees, not customers. *Compare* ECF No. 140 at p. 6 *with* SAC at ¶ 163. SRSA is not permitted to amend its SAC through its response to Defendants' Motion to Dismiss. *See In re Qwest Communs. Int'l Inc. Securities Litig.*, 396 F. Supp. 2d 1178 (D. Colo. 2004). Moreover, any attempt by SRSA to amend its Complaint yet again would be futile. Kelly's agreement with SRSA included a Schedule 1 listing 50 customers, which SRSA agreed to exempt from her one-year non-solicitation obligation.[6] SAC Ex. B Schedule 1. SRSA fails to allege that Kelly caused any harm by allegedly soliciting any

---

[6] Though SRSA alleges elsewhere in the SAC that Kelly contacted SRSA customers she was contractually prohibited from soliciting and that a customer moved business to PNC, SRSA fails to allege that the unidentified customer was one that Kelly was prohibited from soliciting. SAC at ¶¶ 114-116.

customer that she was contractually prohibited from contacting (*i.e.* not on her Schedule 1), and SRSA cannot state a breach of contract claim against Kelly.

### B. SRSA Cannot State a Claim for Intentional Interference with Prospective Economic Business Advantage.

In the absence of any "improper means" used by Defendants, SRSA's claim for intentional interference with prospective business advantage is, like its motion for preliminary injunctive relief, a hollow complaint about facing lawful competition in the market. Instead, SRSA merely hypothesizes several supposedly improper means employed by Defendants. None substantiates its claim. First, SRSA claims that Defendants misused SRSA's "confidential and proprietary information." ECF No. 140 at p. 11. But, SRSA recognizes, as it must, that "a claim of tortious interference [that] relies on the theft of a trade secret to establish the requisite 'improper means,' … is preempted by CUTSA[.]" *Wolf Auto CTR. Sterling, LLC v. Schadegg*, No. 15-cv-01035-MSK-KLM, 2016 U.S. Dist. LEXIS 194062, at *7 (D. Colo. Oct. 31, 2016). Thus, alleged use of SRSA's alleged trade secrets cannot constitute improper means. SRSA, therefore, argues that it "alleges interference using non trade-secret information." ECF No. 140 at p. 12. Notwithstanding SRSA's insistence that all of its information, from customer names to services advertised on its website, are trade secrets, SRSA nowhere identifies the supposed confidential and proprietary, but not trade secret, information that Defendants allegedly misused. *Big Squid, Inc. v. Domo, Inc.*, 2019 U.S. Dist. LEXIS 131094, at *23 (D. Utah Aug. 5, 2019) (plaintiff's "patchwork of allegations does not provide Domo with adequate notice of Big Squid's tortious interference theory.").

Second, SRSA claims that the improper means consist of the assistance from former SRSA employee Luda Semenova. ECF No. 140 at p. 12. Semenova's mere existence is neither

7

confidential nor propriety and, as fully discussed in Defendant's opening brief (ECF No. 106 at pp. 7-8), her non-solicitation agreement is unenforceable as a matter of law. Accordingly, Semenova's alleged assistance did not breach any valid contract and cannot constitute "improper means." Consequently, SRSA's tortious interference claim represents nothing more than an effort to stifle proper competition in the marketplace.

### C. SRSA Cannot State a Claim for Breach of the Duty of Loyalty Against Kelly.

In support of its breach of the duty of loyalty claim, SRSA alleges that Kelly "author[ed] a description of 'how to build' a competing product that she knew Tsarnas would include in a presentation to an SRSA competitor that Kelly had corresponded with about potential future employment." [7] SAC at ¶ 198. Colorado courts recognize "a privilege in favor of employees which enables them to prepare or make arrangements to compete with their employers prior to leaving the employ of their prospective rivals without fear of incurring liability for breach of their fiduciary duty of loyalty." *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 493 (Colo. 1989) (internal citation and quotation marks omitted). Accordingly, when evaluating a breach of the duty of loyalty claim, courts consider factors including "the impact or potential impact of the employee's actions on the employer's operations[.]" *Prof'l Home Health Care, Inc. v. Complete Home Health Care, Inc. (In re Prof'l Home Health Care, Inc.)*, 159 F. App'x 32, 34 (10th Cir. 2005). Here, there was no impact whatsoever on SRSA and, indeed, the SAC does not allege any facts from which the Court could conclude otherwise.

---

[7] SRSA's opposition brief styles its claim against Kelly for breach of the duty of loyalty as breaching a duty not to compete but the SAC does not allege facts demonstrating that Kelly ever competed with SRSA during her employment. At most, SRSA alleges that Kelly exercised her lawful right *to prepare to compete* while an SRSA employee.

SRSA's breach of the duty of loyalty claim fails because SRSA cannot allege any harm resulting from Kelly's alleged authorship of a slide in a presentation. In granting summary judgment, a court in this Circuit reasoned that cases in which breach of the duty of loyalty claims succeed "[a]ll involved some concrete action that affirmatively harmed the employer independently of the harm created by new competition." *Scenic Aviation, Inc. v. Blick*, No. 2:02-CV-01201, 2003 U.S. Dist. LEXIS 28009, at *38 (D. Utah Aug. 4, 2003). The duty of loyalty does not prohibit an employed individual from preparing to or seeking alternative employment while employed but merely prohibits an employee from "from *actively* and *directly* competing with his employer" during the term of employment. *Id.* at *35 (emphasis added). Notably, SRSA does not allege that this "competitor" ever released a competing product – let alone with Kelly's assistance.[8] Thus, SRSA cannot even allege that it suffered harm created by new competition since that bank never entered the market with a competing product. "In short, this case involves a commonplace decision by [Kelly] to leave for greener pastures and begin competing with [her former] employer. This is not the stuff from which a breach of loyalty claim can be manufactured." *Id.* at *38. In the absence of any harm or improper conduct, SRSA's duty of loyalty claim is nothing more than a request to transform an employee's drafting

---

[8] SRSA argues that it may seek damages consisting of "the amount of [Kelly's] salary for the period she was disloyal to SRSA." ECF No. 140 at pp. 13-14. The case SRSA cites for this proposition involved a claim for defendant's compensation for a period of *over two years*. *See T.A. Pelsue Co. v. Grand Enters.*, 782 F. Supp. 1476, 1487 (D. Colo. 1991) ("Beavers is not entitled to the compensation he received from Pelsue Co. between February 1, 1987 …and March 3, 1989"). By stark contrast, the period in which Kelly was allegedly disloyal to SRSA lasted less than one day.

9

of a cover letter, updating a resume, or skillfully preparing for an interview into the commission of a tort against a current employer. That request should be summarily denied.

## III. CONCLUSION

For the foregoing reasons and those articulated in Defendants' opening brief, Defendants respectfully request the Court dismiss with prejudice SRSA's claims for breach of contract against Kelly, intentional interference with prospective economic business advantage against PNC and Kelly, and breach of the duty of loyalty against Kelly.

Respectfully submitted,

Dated: January 10, 2020

By: */s/ Noah S. Robbins*
Hara K. Jacobs
Noah S. Robbins
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215-668-8500
Facsimile: 215-864-8999
jacobsh@ballardspahr.com
robbinsn@ballardspahr.com

Andrew J. Petrie
Sarah B. Wallace
**BALLARD SPAHR LLP**
1225 Seventeenth Street, Suite 2300
Denver, Colorado 80202-5596
Telephone: 303-292-2400
Facsimile: 303-296-3956
petriea@ballardspahr.com
wallaces@ballardspahr.com

## **CERTIFICATE OF COMPLIANCE**

I certify this pleading complies with the type-volume limitation set forth in Judge Domenico's Civil Practice standard III.A.2

                                                 */s/ Elizabeth Weissert*
                                                 Elizabeth Weissert

# CERTIFICATE OF SERVICE

I hereby certify that on this 10th day of January 2020, a true and correct copy of the foregoing **REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS NEW CLAIMS ASSERTED IN SECOND AMENDED COMPLAINT** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Warren A. Braunig
Benjamin D. Rothstein
Michelle Ybarra
Victor H. Yu
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

Scott R. Bialecki
Matthew C. Miller
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202

*Attorneys for Plaintiffs SRS Acquiom Inc., a Delaware corporation and Shareholder Representative Services LLC, a Colorado limited liability company*

*/s/ Elizabeth Weissert*
Elizabeth Weissert