**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

**PLAINTIFFS' RESPONSE TO DEFENDANTS' MOTION [ECF NO. 137] TO STRIKE
THE DECLARATION AND EXHIBITS OF ANDY CRAIN [ECF NOS. 70-71]**

---

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. BACKGROUND .....................................................................................................................3

    A. The parties negotiate the Stipulated Forensic Inspection Protocol and disclose computer forensics experts. ........................................................................3

    B. Forensic discovery proceeds iteratively throughout the expedited discovery period. .......................................................................................................4

    C. SRSA produces all forensic data relied upon by Mr. Crain, and then files and serves Mr. Crain's declaration on November 25. ............................................5

    D. During expedited discovery, Defendants never requested disclosure of any expert testimony SRSA intended to offer in support of their preliminary injunction, as Defendants now misleadingly claim. ..................................................5

    E. Defendants never request a deposition of Mr. Crain and take no additional forensic discovery. .....................................................................................................6

    F. Defendants initially request additional materials "considered" by Mr. Crain, but then abandon discussions over access to requested SRSA accounts and computers. ............................................................................................7

III. ARGUMENT ...........................................................................................................................7

    A. Rule 26(a)(2) does not apply to preliminary injunction proceedings. .....................8

    B. SRSA's disclosures of Mr. Crain comply with Rule 26(a)(2). ..............................11

    C. Defendants have not suffered any prejudice resulting from SRSA's timely disclosure of Mr. Crain's testimony. .......................................................................14

IV. CONCLUSION ......................................................................................................................15

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Goodness Films, LLC v. TV One, LLC*,
    No. 12-cv-08688-GWJ-EMX, 2013 WL 12136374 (C.D. Cal. Aug. 13, 2013) .................. 8, 10

*Heideman v. South Salt Lake City*,
    348 F.3d 1182 (10th Cir. 2003) ........................................................................................... 8

*Intervet, Inc. v. Merial Ltd.*,
    No. 8:07-cv-194, 2007 WL 1797643 (D. Neb. June 20, 2007), *aff'd*, No. 8:07-
    cv-194, 2007 WL 2344815 (D. Neb. Aug. 15, 2007) .................................................. 9, 10, 11

*L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*,
    No. 10-cv-02868-MSK-KMT, 2013 WL 61395 (D. Colo. Jan. 4, 2013) .................... 2, 3, 9, 14

*Midwest Guar. Bank v. Guar. Bank*,
    270 F. Supp. 2d 900 (E.D. Mich. 2003) ............................................................................ 9, 10

*In re Ohio Execution Protocol Litigation*,
    No. 2:11-cv-1016, 2019 WL 4024765 (S.D. Ohio Aug. 27, 2019) .............................. 9, 10, 14

*Seattle Audubon Soc. v. Sutherland*,
    No. 06-cv-1608-MJP, 2007 WL 1655152 (W.D. Wash. June 5, 2007) ............................. 9, 11

*Shell Offshore, Inc. v. Greenpeace, Inc.*,
    No. 3:15-cv-00054-SLG, 2015 WL 3508068 (D. Alaska June 4, 2015) ............................... 8

*South Yuba River Citizens League v. National Marine Fisheries Serv.*,
    257 F.R.D. 607 (E.D. Cal. 2009) ...................................................................................... 9, 10

*Spurlock v. Fox*,
    No. 3:09-cv-0756, 2010 WL 3807167 (M.D. Tenn. Sept. 23, 2010) .......................... 9, 10, 14

*Univ. of Texas v. Camenisch*,
    451 U.S. 390 (1981) ............................................................................................................. 8

**Rules**

Fed. R. Civ. P. 26(a)(2) ............................................................................................... *passim*

Fed. R. Civ. P. 26(b)(3) ........................................................................................................ 10

Fed. R. Civ. P. 30(b)(6)............................................................................................................6

iii

1363522

**I.      INTRODUCTION**

Defendants Heather Kelly and Alex Tsarnas had computer access to SRSA's[1] most sensitive trade secret documents prior to joining PNC,[2] and SRSA's complaint specifically alleged they used electronic means to misappropriate trade secrets. (ECF No. 12 at ¶¶3, 52-68.) Consequently, at the outset of this case, the parties negotiated a Stipulated Forensic Inspection Protocol (ECF No. 43-1) pursuant to which *both parties* subsequently made electronic devices available for inspection, *both parties* disclosed experts in computer forensics, and *both parties* requested and received substantial forensic data throughout the expedited discovery period. Defendants' production of forensic data continued until November 14, 2019. Less than two weeks later, SRSA filed and served the declaration of its computer forensics expert, Andy Crain, in support of its November 25, 2019 preliminary injunction motion. (ECF No. 73.)

As set forth and explained in Mr. Crain's detailed declaration, the forensic data ultimately produced by Defendants provided direct and overwhelming evidence that Kelly and Tsarnas misappropriated SRSA's trade secrets using electronic means; utilized SRSA information in the scope of their work at PNC; and, on multiple occasions, destroyed potentially relevant documents—including all text messages between them dating from the months just before and after they joined PNC. (*See generally id*.)

Defendants now move to strike this inculpatory evidence based on a misplaced procedural appeal to Rule 26(a)(2), a manufactured claim of "prejudice," and hyperbolic

---

[1] "SRSA" refers collectively to Plaintiffs SRSA Acquiom Inc. and Shareholder Representative Services LLC.

[2] "PNC" refers collectively to Defendants PNC Financial Services Group, Inc. and PNC Bank, N.A.

1

accusations that SRSA engaged in "gross misconduct"[3] by serving Mr. Crain's declaration on November 25—less than two weeks after Defendants completed producing forensic data, and at least two months in advance of the preliminary injunction hearing. The Court should deny Defendants' motion.

First, there is no legal basis for Defendants' request, because Rule 26(a)(2) does not apply at the preliminary injunction stage. Indeed, courts *routinely* permit experts to testify in PI proceedings without making complete Rule 26(a)(2)(B) disclosures. *See, e.g.*, *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02868-MSK-KMT, 2013 WL 61395, at *2 (D. Colo. Jan. 4, 2013) (denying similar motion to preclude testimony of two experts at preliminary injunction hearing, despite absence of "Rule 26(a)(2)(B) expert disclosures"). Defendants' argument that Rule 26(a)(2) applies to preliminary injunction proceedings misconstrues the three out-of-circuit cases it relies on and overlooks overwhelming conflicting authority.

Second, even if Rule 26(a)(2) were applicable (it is not), Mr. Crain's declaration satisfies all of Rule 26(a)(2)'s requirements. SRSA served Mr. Crain's declaration well more than 90 days before the trial date (Rule 26(a)(2)(D)) and well in advance of the preliminary injunction hearing, which remains unset. The declaration also provides all information required under Rule 26(a)(2)(B), including detailed explanations of Mr. Crain's opinions. Defendants' complaint that SRSA imposed "draconian strictures" on their access to materials that Mr. Crain relied upon is counterfactual and provides no basis for the extreme relief Defendants seek, particularly since Defendants never met and conferred with SRSA about that issue before filing their motion.

---

[3] ECF No. 137 at 5; *see also, e.g.*, *id*. at 2 ("SRSA's flagrant discovery violation"); *id*. at 9 ("SRSA … willfully chose to keep Defendants in the dark"); *id*. at 13 ("SRSA's scheme to orchestrate an unfair advantage over Defendants").

1363522

Third, Defendants did not suffer any prejudice. Given both parties' early identification of computer forensics experts and the voluminous forensic discovery both parties engaged in, Defendants' claim that Mr. Crain's declaration caught them by "surprise" is absurd. Regardless, Defendants received more-than-sufficient notice of Mr. Crain's opinion through his comprehensive November 25, 2019 declaration, which SRSA filed and served 47 days ago. *See L-3 Commc'ns*, 2013 WL 61395, at *1 (denying motion to preclude and permitting experts to testify at PI hearing, where "Defendants have now had, as of the date of this Order, *thirty-seven days notice* [of plaintiff's experts] and, as of the date of the hearing, *forty-nine days notice*" (emphasis in original)). In nearly two months since receiving Mr. Crain's declaration, Defendants have not requested his deposition or any additional discovery pursuant to the parties' Forensic Inspection Protocol. In short, *even if* SRSA had committed a discovery violation (which it very clearly did not) and *even if* Defendants' claim of "prejudice" were genuine, they have made no effort to cure it, and therefore are not entitled to the exclusionary remedy they seek.

## II.     BACKGROUND

### A.     The parties negotiate the Stipulated Forensic Inspection Protocol and disclose computer forensics experts.

In July 2019, as part of the negotiated expedited discovery schedule, the parties agreed to engage in forensic discovery of eight specific electronic devices in Defendants' possession. (ECF No. 26 at ¶2.) But on August 2, 2019, Defendants refused SRSA's proposal that Defendants produce complete "images" (forensic copies) of those devices, stating: "***We have never and will not agree to allow your paid consultant to search freely through the complete images of these***

3

*devices, which contain personal and PNC confidential information.*" (Ex. A.[4]) Instead, Defendants insisted that the parties engage "an independent third-party" to hold the device images and produce discrete forensic data upon request, and maintained that such a procedure would be sufficient "to determine whether SRSA information was deleted, exported, or otherwise altered." (*Id*.)

On August 14, 2019, the parties executed the Stipulated Forensic Inspection Protocol (the "Protocol") adopting the procedure Defendants demanded. (ECF No. 43-1.) On August 23, 2019, SRSA disclosed Andy Crain as its "identified representative" under the Protocol, and Defendants identified Michael Huber from Ernst & Young as theirs. (Ex. B.) On September 5, 2019, the Court entered an order binding the parties to the terms of the Protocol.

### B. Forensic discovery proceeds iteratively throughout the expedited discovery period.

During the expedited discovery period, both parties took advantage of the Protocol's provisions for requesting forensic data and user files stored on the devices subject to inspection, and for requesting inspection of additional devices. In total, SRSA made four separate requests for forensic data, five requests for user files, and requested and received inspection of one additional device (Tsarnas's home iMac). (Rothstein Dec. ¶2.) Defendants made three separate requests for forensic data and requested and received inspection of two additional devices (Tsarnas's and Kelly's SRSA-issued MacBooks). (*Id.*) To date, the parties have received 396,649 forensic files from eleven devices subject to inspection. (*Id.* ¶3.)

---

[4] All exhibit references are to the accompanying Declaration of Benjamin D. Rothstein ("Rothstein Dec.").

SRSA worked diligently to complete its forensic discovery. For example, within three days of uncovering evidence in Kelly's October 23, 2019 deposition that she and Tsarnas both deleted responsive text messages, SRSA requested inspection of Tsarnas's home iMac and additional text-message-related data from other devices already subject to the protocol. (Exs. C and D; Rothstein Dec. ¶4.) Defendants provided an image of Tsarnas's iMac to the third-party vendor October 30, 2019, SRSA received the requested data from that machine on November 7, and SRSA received the requested text-message-related data from the other devices on November 14. (Exs. E and F.)[5]

      **C.**     **SRSA produces all forensic data relied upon by Mr. Crain, and then files and serves Mr. Crain's declaration on November 25.**

On November 25, 2019, SRSA filed and served Andy Crain's declaration alongside its preliminary injunction motion papers. The declaration, which is thirty-six pages long, provides a complete statement of all of Mr. Crain's opinions and detailed explanations of the basis for each opinion. (ECF No. 73.) The declaration includes opinions based on the text-message-related forensic data that SRSA did not receive until November 14. (*Id*. ¶¶65-68.)

      **D.**     **During expedited discovery, Defendants never requested disclosure of any expert testimony SRSA intended to offer in support of their preliminary injunction, as Defendants now misleadingly claim.**

Defendants now claim that they "directly asked" SRSA, on November 5, 2019, whether SRSA "intended to offer expert testimony" in connection with its preliminary injunction motion and requested expert disclosures by November 8, 2019. (ECF No. 137 at 4, 7, 9.) This is a significant mischaracterization of the parties' discussion.

---

[5] Unfortunately, the text messages they intentionally deleted—which undoubtedly contain relevant evidence—could not be recovered.

That correspondence specifically addressed Topic 8 in Defendants' Rule 30(b)(6) deposition notice—"***The factual basis for SRSA's allegation that PNC Paid incorporates or otherwise misappropriates SRSA's alleged trade secrets***." (Ex. G.) Because Topic 8 requires comparing SRSA's products to PNC's products, SRSA initially proposed offering a *liability* expert (not a *forensics* expert) as a witness. (ECF No. 137-2.) On November 5, 2019, defense counsel requested that, if SRSA "intends to have an expert witness designated on this topic" during the week of November 18, 2019, then SRSA should "provide the required disclosure and report" by November 8, 2019. (*Id*. (emphasis added).) SRSA ultimately offered an employee on Topic 8 instead of an expert and therefore did not disclose a liability expert prior to the Topic 8 deposition.

In this correspondence, Defendants did not—as they now claim—"directly ask" SRSA whether it intended to rely on *any* expert testimony in connection with the preliminary injunction motion or demand disclosure of any such expert by November 8, 2019 (or any other deadline).

### E. Defendants never request a deposition of Mr. Crain and take no additional forensic discovery.

In the forty-seven days that have elapsed since SRSA filed and served Mr. Crain's declaration, Defendants have never requested to depose him. Defendants also have not made any additional requests pursuant to the Forensic Inspection Protocol for data from the images of the Kelly or Tsarnas SRSA-issued MacBooks or any other devices that are currently in the third-party vendor's possession. (Rothstein Dec. ¶5.)

### F. Defendants initially request additional materials "considered" by Mr. Crain, but then abandon discussions over access to requested SRSA accounts and computers.

On November 29, 2019, Defendants demanded unlimited access to sources of forensic data that Mr. Crain stated that he "considered" outside of the strictures of the Forensic Inspection Protocol, including complete images of Tsarnas's and Kelly's SRSA-issued MacBooks. (Ex. H.) Despite Defendants' own refusal to provide the same level of access to the devices in its possession (Section II.A, *supra*), SRSA promptly proposed making the requested sources available under conditions that adequately safeguarded the extensive highly confidential and non-responsive content contained in those devices. (*Id.*)

Importantly, SRSA also asked Defendants in the same correspondence to confirm whether *their* forensic analysts had "accessed the devices made available *by Defendants* outside the strictures of the Forensic Protocol." (*Id.* (emphasis added).) If Defendants *had* permitted their expert to look at complete images of Defendants' devices, then Mr. Crain should be able to analyze those images under the same safeguarded conditions in SRSA's proposal. (*Id.*) Defendants never responded to this correspondence, despite SRSA following up later the same week. (*Id.*) Instead, after two weeks of radio silence, Defendants demanded that SRSA withdraw Mr. Crain's declaration. (Ex. I.) Defendants' motion ensued.

### III. ARGUMENT

The chain of logic in Defendants' brief is the following: (a) Rule 26(a)(2)'s expert disclosure requirements apply at the PI stage; (b) SRSA failed to comply with Rule 26(a)(2); and (c) Defendants suffered resulting incurable prejudice, so SRSA should be sanctioned. Each link in this chain of logic is wrong. The Court should deny Defendants' motion to strike Mr. Crain's

7

declaration because there is no legal basis to require compliance with Rule 26(a)(2) at this stage, SRSA complied with Rule 26(a)(2) regardless, and Defendants cannot plausibly claim incurable prejudice from a declaration filed 47 days ago.

### A.     Rule 26(a)(2) does not apply to preliminary injunction proceedings.

Defendants' assert, as an unqualified proposition of law, that "[t]he Federal Rules' requirement for expert disclosures fully applies at the preliminary injunction stage." (ECF No. 137 at 7.) This is false.  Rule 26(a)(2) applies to experts whom the offering party "may use *at trial*…." Fed. R. Civ. P. 26(a)(2)(A) (emphasis added). A preliminary injunction proceeding is not a trial; the proceedings are expedited, there is no jury, the motion is resolved on a less-complete record, and the Court's ruling does not result in a judgment, among other obvious differences. For these reasons, "a preliminary injunction is customarily granted on the basis of procedures that are less formal and evidence that is less complete than a trial on the merits."[6]

For that reason, courts routinely permit parties to rely on expert testimony in preliminary injunction proceedings without adhering to Rule 26(a)(2)'s disclosure requirements. *See, e.g.*, *Shell Offshore, Inc. v. Greenpeace, Inc.*, No. 3:15-cv-00054-SLG, 2015 WL 3508068, at *2 (D. Alaska June 4, 2015) ("[F]or purposes of the preliminary injunction hearing, the Court declines to strike the testimony of Mr. George and Mr. Lee based on a lack of complete compliance with the pretrial disclosure requirements for experts set out in Civil Rule 26."); *Goodness Films, LLC v. TV One, LLC*, No. 12-cv-08688-GWJ-EMX, 2013 WL 12136374, at *2 (C.D. Cal. Aug. 13, 2013) (considering non-rule-compliant expert declaration at preliminary injunction stage);

---

[6] *Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981); *see also Heideman v. South Salt Lake City*, 348 F.3d 1182, 1188 (10th Cir. 2003) ("The Federal Rules of Evidence do not apply to preliminary injunction hearings.").

8

*Intervet, Inc. v. Merial Ltd.*, No. 8:07-cv-194, 2007 WL 1797643, at *1 (D. Neb. June 20, 2007), *aff'd*, No. 8:07-cv-194, 2007 WL 2344815 (D. Neb. Aug. 15, 2007) ("Compliance with the disclosure requirements of Rule 26(a)(2)(B) was not mandatory" in PI proceedings); *Seattle Audubon Soc. v. Sutherland*, No. 06-cv-1608-MJP, 2007 WL 1655152, at *1 (W.D. Wash. June 5, 2007) (denying motion to strike expert declarations submitted as part of response to PI motion, reasoning that Rule 26(a)(2)'s disclosure deadlines did not apply because "the parties are not preparing for trial, but for a preliminary injunction hearing"); *Midwest Guar. Bank v. Guar. Bank*, 270 F. Supp. 2d 900, 908 n.2 (E.D. Mich. 2003) (noting "expedited nature of a preliminary injunction hearing" and overruling objection to non-rule-complaint expert declaration "for the limited purpose of deciding the instant [preliminary injunction] motion"). Indeed, what appears to be the only case to address the issue in this jurisdiction, *L-3 Communications*, reached the same conclusion: Rule 26 disclosures are not required before experts may testify at a preliminary-injunction hearing. 2013 WL 61395, at *2 (denying motion to preclude testimony).

Against the weight of this voluminous authority—which Defendants' brief completely ignores—Defendants cite three cases: *South Yuba River Citizens League v. National Marine Fisheries Serv.*, 257 F.R.D. 607 (E.D. Cal. 2009) ("**South Yuba River**"); *In re Ohio Execution Protocol Litigation*, No. 2:11-cv-1016, 2019 WL 4024765 (S.D. Ohio Aug. 27, 2019) ("**In re Ohio**"); and *Spurlock v. Fox*, No. 3:09-cv-0756, 2010 WL 3807167 (M.D. Tenn. Sept. 23, 2010) ("**Spurlock**"). (ECF No. 137 at 7.) None of these cases supports Defendants' incorrect position.

Defendants claim *South Yuba River* "appl[ied] expert disclosure requirements at [the] preliminary injunction stage…." (ECF No. 137 at 7.) It did not. In fact, compliance with Rule 26's "expert disclosure requirements" was not at issue in *South Yuba River*. In that case, as here,

9

the plaintiff filed an expert declaration accompanying its PI motion. The defendant then moved to *compel* the expert's correspondence with plaintiff's counsel and draft declarations, based on the prior formulation of Rule 26. The court assumed, "while expressly refraining from deciding," that all of Rule 26's expert provisions apply to PI proceedings, but acknowledged "conflicting" authority in regard to Rule 26's disclosure requirements (including the *Midwest* and *Intervet* cases discussed above), and limited its holding to granting the motion to compel. 257 F.R.D. at 611 & n.1.[7]

In both *In re Ohio* and *Spurlock*, unlike here, the court had entered a scheduling order expressly requiring service of expert reports by specific deadlines. (*See* Exs. J and K.) Neither case supports Defendants' argument that Rule 26(a)(2) inherently applies to all PI proceedings. Additionally, the expert reports in both cases were *substantively* defective. Neither case struck testimony on the ground urged here by Defendants—that the offering party caused "surprise" by filing an expert declaration alongside its PI motion. In fact, in both *In re Ohio* and *Spurlock*, the court-ordered expert report deadlines *followed* the filing date for the PI motion and were within three weeks of the PI hearing.

Since the predicate of Defendants' entire motion to strike—that Rule 26(a)(2)'s disclosure requirements apply to preliminary injunction proceedings—is incorrect, their motion never gets off the ground.

---

[7] *South Yuba* pre-dates the 2010 amendments to Rule 26 limiting expert discovery. Fed. R. Civ. P. 26(b)(3). Even for the limited proposition it reached, *South Yuba* is no longer good law. *See Goodness Films, LLC v. TV One, LLC*, No. 12-cv-08688-GWJ-EMX, 2013 WL 12136374, at *1 (C.D. Cal. Aug. 13, 2013).

10

### B. SRSA's disclosures of Mr. Crain comply with Rule 26(a)(2).

Defendants have never explained in clear terms *how* Mr. Crain's declaration failed to comply with Rule 26(a)(2), either in the meet-and-confer correspondence leading up to the motion (*see* Ex. L) or in the brief itself. But there are only two possibilities: either (a) the declaration was untimely; or (b) SRSA did not disclose information required by Rule 26(a)(2)(B). Neither pans out.

*Mr. Crain's declaration was timely*. Rule 26(a)(2)(D)—which Defendants never mention in their brief—sets a disclosure deadline of "90 days before the date set for trial" in the absence of an alternative scheduling order. Fed. R. Civ. P. 26(a)(2)(D)(i). As there is no current trial date, Rule 26 did not require disclosure of Mr. Crain by a date certain. Under such circumstances, filing and serving an expert declaration with preliminary injunction motion papers is a recognized and appropriate manner for providing notice of intent to rely on that expert's testimony in the PI proceedings. *See, e.g.*, *Intervet*, 2007 WL 1797643, at *1 (denying motion to strike and considering expert declaration submitted as part of response to PI motion); *Seattle Audubon*, 2007 WL 1655152, at *1 (holding that, absent a contrary scheduling order, plaintiffs were not required to submit a rebuttal expert disclosure in support of their PI motion any earlier than the deadline for their reply brief). Additionally, in this case there is no way SRSA could have served Mr. Crain's declaration any earlier than November 25, 2019, since—as Defendants well know—Defendants were still producing forensic data Mr. Crain relied upon in his declaration until November 14.

Lacking legal authority to support their "untimeliness" argument, Defendants instead rely on the *absence* of specific expert deadlines in the expedited discovery scheduling order, and the

11

related argument that SRSA "never sought to include experts within expedited discovery." (ECF No. 137 at 10.) But to be clear, ***the parties specifically negotiated for—and the Court subsequently ordered—expert analysis of forensic artifacts during the expedited discovery period***. (ECF No. 26 at ¶2; ECF No. 43-1.) Considering these orders and the voluminous forensic discovery engaged in by *both parties*, the absence of a specific deadline for expert disclosures cannot possibly be interpreted as a *restriction* from relying on any forensic expert analysis at the preliminary-injunction stage. And as explained in Section II.D, *supra*, Defendants' claim that their November 5, 2019 email broadly requested disclosures of any experts SRSA intended to rely on at the PI stage by November 8 is incorrect and misleading; that correspondence pertained only to SRSA's "Topic 8" 30(b)(6) witness and has nothing to do with Mr. Crain.

***Mr. Crain's declaration provided all required information***. There is no dispute that Mr. Crain's declaration provides the substantive information required by Rule 26(a)(2)(B), including a detailed and comprehensive "statement of all opinions [Mr. Crain] will express [in connection with the PI motion] and the basis and reasons for them…." Fed. R. Civ. P. 26(a)(2)(B)(i).[8] Instead, the final section of Defendants' brief argues that Mr. Crain "considered" materials that "were not disclosed or produced to Defendants." (ECF No. 137 at 11-13.) Once again, this is incorrect. When Defendants identified the narrow set of sources that Mr. Crain "considered" and that they had not received, all of which contain numerous highly-confidential non-responsive

---

[8] On a meet-and-confer call leading up to Defendants' motion, Defendants noted the inadvertent omission from Mr. Crain's declaration of his hourly rate. Immediately thereafter, SRSA disclosed Mr. Crain's rate by email (Ex. L) and filed a supplemental Crain Declaration disclosing his rate and identifying the specific portions in his November 25, 2019 declaration that identify the other information required by Rule 26(a)(2)(B) (ECF No. 118). In the meet-and-confer correspondence leading to Defendants' motion, they refused to identify any other specific alleged defect in Mr. Crain's declaration under Rule 26. (Ex. L.)

12

files, SRSA immediately offered to make those sources available with adequate safeguards. (Ex. H.) Undeterred, Defendants argue that SRSA's offer was insufficient, because SRSA placed "draconian strictures" on Defendants' access. (ECF No. 137 at 5, 13-14.) The Court should reject this argument for multiple reasons.

*First*, the safeguards SRSA proposed on December 4, 2019 were reasonable, since Defendants sought "unfettered" access to complete images of SRSA computers—the exact same type of discovery that Defendants themselves rejected when negotiating the Stipulated Forensic Inspection Protocol, arguing that the protective order was inadequate to guard the "confidential" nature of *PNC's* complete device images. (*See* Section II.F, *supra*.) Since Defendants have refused to make complete device images available under *any conditions whatsoever*, their criticism of SRSA's offer for making its own images available rings hollow.

*Second*, Defendants never met and conferred with SRSA regarding the proposed safeguards. Instead, they ignored SRSA's proposal, and then, twelve days later, demanded unconditional and complete withdrawal of Mr. Crain's declaration. Defendants do not cite a single case, nor is SRSA aware of any, where the court *struck expert testimony* because of a disagreement between the parties over the terms of access to highly-confidential materials considered by the expert, which the moving party did not even try to resolve.

*Finally*, unmentioned in Defendants' brief is that SRSA conditioned its offer on Defendants providing the same level of access to *their* devices, if it turned out that *their* expert had considered complete images of those devices. Defendants have never responded to this issue, which begs the question: did they refuse SRSA's offer because it was "draconian," or because they feared that accepting it would open the door to even more inculpatory forensic evidence?

13

For each of these reasons, the safeguards proposed by SRSA in response to Defendants' request to access complete device images provide no basis for striking Mr. Crain's declaration.

### C. Defendants have not suffered any prejudice resulting from SRSA's timely disclosure of Mr. Crain's testimony.

Given that the parties specifically negotiated for Court-ordered forensic discovery during the expedited discovery period, *both parties* engaged and disclosed forensics experts, and *both parties* engaged in substantial expert forensic discovery until November 14, 2019, Defendants' purported "surprise" to see Mr. Crain's November 25, 2019 declaration is difficult to take seriously. And regardless, Defendants have had 47 days and counting to prepare for and respond to Mr. Crain's declaration. Even under *Defendants'* cases, that is more than adequate notice: In *Spurlock*, the Court-ordered expert report deadline followed the PI briefing and was *twenty-one days* before the hearing (*see* Ex. K); in *In re Ohio*, the deadline also followed briefing and was only *twenty days* before the hearing (*see* Ex. J). *See also L-3 Commc'ns*, 2013 WL 61395, at *2 (denying motion to preclude and permitting experts to testify at PI hearing, where "Defendants have now had, as of the date of this Order, *thirty-seven days notice* [of plaintiff's experts] and, as of the date of the hearing, *forty-nine days notice*" (emphasis in original)).

In the 47 days since receiving Mr. Crain's report, Defendants have done nothing to cure any of the "prejudice" they claim they suffered, despite requesting and receiving from the Court an additional ten days to oppose the PI motion. (ECF No. 111.) They never met and conferred with SRSA regarding access to the materials they claim they needed. They never requested additional forensic analysis pursuant to the Protocol. And, most tellingly, they never requested a deposition of Mr. Crain. The picture that emerges is clear: Defendants do not *want* to address the

14

timely and comprehensively-disclosed inculpatory evidence in Mr. Crain's declaration—they just want the Court to ignore it.

## IV.     CONCLUSION

For the reasons set forth above, the Court should deny Defendants' motion to strike the Crain Declaration.

## COMPLIANCE WITH TYPE-VOLUME LIMITATION

The undersigned counsel certifies that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

Respectfully submitted,

Dated: January 13, 2020

By: _s/Warren A. Braunig_
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Victor H. Yu
*vyu@keker.com*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:      415-391-5400
Facsimile:       415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
*sbialecki@sheridanross.com*
Matthew C. Miller
*mmiller@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:      303 863 9700
Facsimile:       303 863 0223
Email:    *litigation@sheridanross.com*

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

16

1363522