# EXHIBIT 26
# TO DECLARATION OF BENJAMIN D. ROTHSTEIN

ATTORNEYS' EYES ONLY - CONFIDENTIAL TRANSCRIPT

Heather Kelly                                                    October 23, 2019

|    |                                                              |
|----|--------------------------------------------------------------|
|    |                                                    Page 1    |
| 1  |                       - - -                                  |
| 2  |        IN THE UNITED STATES DISTRICT COURT                   |
|    |            FOR THE DISTRICT OF COLORADO                      |
| 3  |                       - - -                                  |
| 4  | SRS ACQUIOM, INC., a           )Civil Action No.             |
|    | Delaware corporation, and      )1:19-cv-02005-DDD-SKC        |
| 5  | SHAREHOLDER REPRESENTATIVE     )                             |
|    | SERVICES, LLC, a Colorado      )                             |
| 6  | limited liability company,     )                             |
|    |                                )                             |
| 7  |                                )                             |
|    |           Plaintiffs,          )                             |
| 8  |                                )                             |
|    |     vs.                        )                             |
| 9  |                                )                             |
|    | PNC FINANCIAL SERVICES         )                             |
| 10 | GROUP, INC., a Pennsylvania    )                             |
|    | corporation, PNC BANK, N.A.,   )                             |
| 11 | a national association,        )                             |
|    | HEATHER KELLY, an              )                             |
| 12 | individual, and                )                             |
|    | ALEX TSARNAS, an individual,   )                             |
| 13 |                                )                             |
|    |                                )                             |
| 14 |           Defendants.          )                             |
| 15 |                                                              |
| 16 |       VIDEOTAPED DEPOSITION OF HEATHER KELLY                 |
| 17 |                                                              |
| 18 |                                                              |
| 19 |                                                              |
| 20 |   ATTORNEYS' EYES ONLY - CONFIDENTIAL TRANSCRIPT             |
| 21 |                                                              |
| 22 |                                                              |
| 23 |                                                              |
| 24 |                                                              |
| 25 |                                                              |

ATTORNEYS' EYES ONLY - CONFIDENTIAL TRANSCRIPT

Heather Kelly                                                October 23, 2019

**Page 66**

1  version.
2      Q.   And do you recognize that some of
3  the comments in purple are your comments?
4      A.   Let's see.
5      Q.   Maybe just to start, I'll draw your
6  attention to the final two pages.
7      A.   Okay.  So these are comments that
8  are, basically -- these comments belong here;
9  is that what you're saying?
10     Q.   Do you recall that you -- that you
11 iterated -- does this refresh your recollection
12 that you were personally involved in iterating
13 the payment product specification document at
14 SRS?
15     A.   This is, as I mentioned, I may have
16 commented this document, obviously.  I don't
17 know that it made it into the final iteration.
18 They rarely listen to me around there.  But I
19 did have plenty of comments to the way they
20 were doing things.
21     Q.   Did you -- did you red line the --
22 did you make -- are you responsible for the
23 purple red lines in Kelly 7?
24     A.   My name is associated with them.
25     Q.   Does that lead you to think they are

**Page 67**

1  probably your red lines?
2      A.   I would have to review the document.
3  Would you like me to do that?
4      Q.   I'm not going to ask you to review
5  every page of it, but your recollection is that
6  you participated in iterating the payment
7  specification product document?
8           MR. PETRIE:  Object to the
9  form.
10 BY MR. BRAUNIG:
11     Q.   Correct?
12     A.   It appears but, again, I would have
13 to review the document to determine those are
14 actually my comments.  If you know how Google
15 Drive works, you can label a comment with
16 whatever you want.
17     Q.   When you printed -- you said you
18 didn't recall one way or the other whether you
19 printed Kelly 6 or Kelly 7 in February of 2018;
20 correct?
21     A.   The same way that I don't remember
22 if I printed form of agreement or my pay stub
23 on that day, correct.
24     Q.   Did you print these documents -- did
25 you print Kelly 6 because you wanted to be able

**Page 68**

1  to take it with you to your new employer?
2      A.   Absolutely not.
3      Q.   Did you -- you're laughing.  Why are
4  you laughing?
5      A.   Sorry.  Well, again, I just got done
6  telling you that the way they did things was
7  absolutely wrong.  So I wouldn't have a clue
8  what the purpose would be.  I didn't mean to
9  laugh at your question.
10          Why would you want to bring a
11 product specification that you needed to refer
12 to to do things the wrong way to your new
13 employer?  It just didn't make sense to me,
14 but --
15     Q.   It's a great question.  How would
16 you -- how would you -- is it your testimony
17 that this would be a useless document to a
18 competitor?
19     A.   I don't know.
20     Q.   Would Kelly 6, if someone had access
21 to Kelly 6, would that tell you how -- does
22 that tell you how Acquiom does its online
23 payment process?
24     A.   I would have to review the document.
25 Do you want me to?

**Page 69**

1      Q.   Yeah.  You are familiar with this
2  document from your work at SRS Acquiom; right?
3      A.   I'm familiar with the form of this
4  document, not the document.  So to answer your
5  question, I would have to review.
6           Can you repeat your question?
7      Q.   Yeah.  Does Kelly 6 provide relevant
8  information about how Acquiom does its online
9  payments process?
10          MR. PETRIE:  He's asking you
11 about Kelly 6.
12          THE WITNESS:  I don't know,
13 but -- no.
14 BY MR. BRAUNIG:
15     Q.   No?
16     A.   No.
17     Q.   It doesn't tell you anything useful
18 about how Acquiom does its process?
19     A.   Yes.  That's not what you said a
20 minute ago.
21     Q.   Can you clarify what your testimony
22 is?
23     A.   What was your question?
24     Q.   My question was does Kelly 6, which
25 is the same document as Kelly 7 but Kelly 7 has

ATTORNEYS' EYES ONLY - CONFIDENTIAL TRANSCRIPT

Heather Kelly                                                    October 23, 2019

---

Page 70

1   comment bubbles, does this provide information
2   about how Acquiom does its online payments
3   process?
4       A.   No.
5            MR. PETRIE:  Object to the
6   form.
7   BY MR. BRAUNIG:
8       Q.   And are you objecting to the word
9   "online"?  Is that why you're answering no?
10      A.   That's why I'm answering no.
11      Q.   Because you think this doesn't have
12  anything to do with an online process?
13      A.   This appears to be how they
14  administer their payments option to the market.
15  Stuff that everyone knows how to do.  Every
16  bank in this country could write something
17  exactly like this outside of the, you know --
18  as I mentioned, top criteria of oddities.
19      Q.   But Kelly 6 is Acquiom's version of
20  that document; right?  Acquiom's explanation of
21  how they administer their payments option to
22  the market; correct?
23      A.   I don't know.  I used it as a
24  reference, but I don't know what else they use
25  it for.

---

Page 71

1       Q.   And you don't know whether you
2   printed it on February 23, 2018?
3       A.   I do not.
4       Q.   And you don't know why you printed
5   it?
6       A.   I would have printed it to do my
7   job, if I printed it.
8            (Deposition Exhibit No. 8 was
9   marked for identification.)
10  BY MR. BRAUNIG:
11      Q.   Kelly 8, HK 42 through 112.  Do you
12  recognize Kelly 8?
13      A.   I do not.
14      Q.   Did you print Kelly 8 on or about
15  February 23, 2018?
16      A.   I'm not familiar with this document.
17      Q.   Did you use Kelly 8 in the course of
18  performing your job at SRS?
19           MR. PETRIE:  Object to the
20  form.
21           THE WITNESS:  I'm not familiar
22  with this document.
23  BY MR. BRAUNIG:
24      Q.   I understand that.  My question was
25  did you have reason to use Kelly 8 in the

---

Page 72

1   course of performing your job for SRS Acquiom?
2            MR. PETRIE:  Same objection.
3            THE WITNESS:  I'm not familiar
4   with the document, so I don't know that I would
5   have ever seen the document.
6   BY MR. BRAUNIG:
7       Q.   Would you have had any reason to
8   print it in February of 2018?
9       A.   Not intentionally.
10      Q.   Do you sometimes unintentionally
11  print documents?
12      A.   Sure.  You can accidentally do lots
13  of things.
14      Q.   Did you print Kelly 8 in February
15  2018 with the understanding that you might be
16  able to take Kelly 8 to a competitor?
17      A.   No.
18      Q.   One question, I want to go back to
19  Kelly 6, which you have.  That's the payment
20  product specification document.
21           Is the payments product
22  specification document, is that a document that
23  was considered confidential at SRS Acquiom?
24      A.   I don't know.  They didn't really
25  consider much confidential there.

---

Page 73

1            MR. BRAUNIG:  Objection, move
2   to strike.
3   BY MR. BRAUNIG:
4       Q.   Do -- did -- was Kelly 6 published
5   on SRS Acquiom's website?
6       A.   I don't know.
7       Q.   Do you know whether it was ever
8   shared with people outside of SRS Acquiom?
9       A.   I don't know that either.
10      Q.   Do you know whether Kelly 6 was
11  shared externally?
12      A.   I do not know.
13      Q.   And I assume since you aren't
14  familiar with Kelly 8, you wouldn't be able to
15  tell me one way or the other whether that's a
16  document that SRS considered to be
17  confidential?
18      A.   That's accurate.  I'm not familiar
19  with the document.
20      Q.   You were asked, after you resigned,
21  to return all SRSA information that you had in
22  your possession; right?
23      A.   I recall that, yes.
24      Q.   When you left SRS, you had both
25  Kelly 6 and Kelly 8 in your possession;

ATTORNEYS' EYES ONLY - CONFIDENTIAL TRANSCRIPT

Heather Kelly                                                                October 23, 2019

```
 1   correct?
 2       A.   No.
 3       Q.   You didn't -- you did not have a
 4   copy of Kelly 6 or Kelly 8 when you -- when you
 5   left SRS?
 6       A.   I don't know.  I would have assumed
 7   I would have turned it over if I had it.
 8       Q.   Why would you have turned it over?
 9       A.   I was advised to.
10       Q.   By whom?
11       A.   My attorney.
12       Q.   Were you also advised when you left
13   SRS, by Hannah Lee, to return any SRS documents
14   and information that you had?
15       A.   I could have been.  She's a very
16   confrontational human, so I tune her out.
17            MR. BRAUNIG:  Move to strike
18   everything after "I could have been."
19   BY MR. BRAUNIG:
20       Q.   You resigned on or about March 8 of
21   2018?
22       A.   That sounds right.
23       Q.   Your last date at SRS was the next
24   day, was March 9; right?
25       A.   Initially, I gave two weeks, and
                                              Page 74
```

```
 1   they accepted my two weeks.  And then I was
 2   abruptly terminated on the 9th, to the best of
 3   my recollection.
 4       Q.   You were terminated on the 9th?
 5       A.   It was not well communicated, but it
 6   appeared to be a termination.
 7       Q.   There was another week before you
 8   returned your current SRS laptop to SRSA;
 9   right?
10       A.   No.
11       Q.   You returned your laptop
12   immediately?
13       A.   Yes.
14       Q.   The day you were terminated?
15       A.   Yes.
16       Q.   Are you sure about that?
17       A.   I leased an office or SRS leased an
18   office in Hudson, Wisconsin, and the day I was
19   terminated, I had my property in that office,
20   which was SRS's office.
21            Now, the question to return and go
22   out of my way to take it to the Denver office
23   could have been done a little faster if I
24   wouldn't have been handled so abruptly.
25       Q.   Was there about a week after you --
                                              Page 75
```

```
 1   after you received -- after your employment
 2   ceased at SRSA in which you continued to use
 3   your current SRSA laptop?
 4       A.   Could you repeat the question?
 5       Q.   Yeah.  Was there -- between March
 6   9th when you were, in your words, terminated,
 7   did you -- after that date, was there a period
 8   of time in which you continued to use your
 9   current SRS laptop?
10       A.   I don't recall.  You would have to
11   probably further define "use."
12            (Deposition Exhibit No. 9 was
13   marked for identification.)
14   BY MR. BRAUNIG:
15       Q.   You have in front of you Kelly 9
16   Bates stamped SRSA 87550 through 554.  You see
17   on the page with 553 at the bottom, on March
18   13th at 2:33 p.m., you asked Hannah which
19   address should the laptop come back to; do you
20   see that?
21       A.   I do.
22       Q.   And if you flip one page forward,
23   you see that Ms. Lee, on March 14th, said, I
24   received your E-mails and tried to return your
25   call, da, da, da, regarding your company
                                              Page 76
```

```
 1   equipment, please pack and ship your laptop and
 2   desk phone to the following address, and she
 3   gives you an address on March 14th.
 4            Do you see that?
 5       A.   I see that.
 6       Q.   And then in an E-mail starting on
 7   March 15th at 11:30 a.m., did you tell Ms. Lee,
 8   I will send back the laptop and phone when I
 9   receive written confirmation that I will be
10   reimbursed promptly, but in no event after 3/31
11   for the expense and, two, I receive a response
12   to the below question via E-mail.
13            Do you see that?
14       A.   I am reviewing the document.
15            Could you repeat your question,
16   please?
17       Q.   Yeah.  Did you tell Ms. Lee on March
18   15th that you would return the laptop when you
19   received responses on a couple of different
20   issues?  And I draw your attention to the
21   second bullet at the top of 552.
22       A.   I see that.
23       Q.   And then if you look at the -- if
24   you look at the first E-mail on Kelly 9 on
25   7550, you say, re:  Equipment, I will ship SRS
                                              Page 77
```

```
 1  COMMONWEALTH OF PENNSYLVANIA    )
                                    ) SS
 2  COUNTY OF ALLEGHENY             )
 3              CERTIFICATE
 4      I, Karen A. Nickel, a notary public in and
    for the Commonwealth of Pennsylvania, do hereby
 5  certify that the witness, HEATHER KELLY, was by
    me first duly sworn to testify the truth, the
 6  whole truth, and nothing but the truth; that
    the foregoing deposition was taken at the time
 7  and place stated herein; and that the said
    deposition was recorded stenographically by me
 8  and then reduced to typewriting under my
    direction, and constitutes a true record of the
 9  testimony given by said witness.
10      I further certify that I am not a
    relative, employee or attorney of any of the
11  parties, or a relative or employee of either
    counsel, and that I am in no way interested
12  directly or indirectly in this action.
13      IN WITNESS WHEREOF, I have hereunto set my
    hand and affixed my seal of office this 25th
14  day of October, 2019.
15
    _____
16         Karen A. Nickel, Notary Public
           Registered Professional Reporter
17         Certified Realtime Reporter
18
19
20
21
22
23
24
25
                                        Page 334
```