IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

       Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

       Defendants.

**DEFENDANTS' REPLY MOTION TO STRIKE THE DECLARATION AND EXHIBITS OF ANDY CRAIN [ECF NOS. 70-71]**

In its Opposition Brief to Defendants' Motion to Strike the Declaration and Exhibits of Andy Crain (ECF Nos. 70 – 71), Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") does not dispute that it retained its forensics expert, Andy Crain, more than four months before submitting his previously undisclosed expert testimony to this Court. Nor does it dispute that Mr. Crain relied upon documents and materials that SRSA has *never* produced to Defendants. Instead, SRSA incorrectly argues that the Federal Rules of Civil Procedure do not expressly require a party to provide expert disclosures in advance of a preliminary injunction hearing. Dkt. No. 153 at 15.[1] SRSA's position ignores its failure to

---

[1] SRSA attempts to excuse its failure to disclose Mr. Crain as a testifying expert by arguing "*both parties* engaged and disclosed forensics experts[.]" Dkt. No. 153 at 14. But SRSA merely disclosed Mr. Crain as an "Identified Representative" consultant under the Forensic Inspection Protocol - not as a testifying expert. And Defendants have not presented any expert testimony.

1

comply with the Initial Disclosure requirements that apply in this case, ignores the basic tenets governing discovery, and ignores contrary positions it has advanced to this Court.

*First*, Mr. Crain relied upon documents and materials that have *never* been produced to Defendants. Those documents and materials, which SRSA is relying upon to support its claims in this case, were required to be produced to Defendants pursuant to Fed. R. Civ. P. 26(a)(1)(A)(ii) and in response to Defendants' discovery requests. SRSA provides no explanation for its failure to timely produce this information and the silence of its brief on this point is telling.

*Second*, SRSA contends that undisclosed expert testimony is permissible because other courts have permitted the testimony of undisclosed experts in preliminary injunction proceedings. The cases cited by SRSA all involve parties seeking to introduce expert testimony without a timely disclosure either because of the imminent timing of the injunction hearing or because the conduct of their adversary made a timely disclosure impossible. Those decisions are premised on a basic tenet of the Federal Rules of Civil Procedure, namely, to secure justice and a fair proceeding. SRSA's position here is the precise opposite of fairness and justice. SRSA could have disclosed Mr. Crain months earlier during the parties' expedited discovery period, enabling Defendants to depose him, but instead chose to surprise Defendants with his sworn declaration.

SRSA's request that this Court condone its submission of testimony from an undisclosed expert that relied upon documents and information never produced to Defendants should be

rejected.[2]  Mr. Crain's declaration should be stricken or, in the alternative, Defendants should be permitted to depose Mr. Crain after receiving the unproduced materials and to supplement their briefing in opposition to SRSA's motion for a preliminary injunction.

I. **ARGUMENT**

   A. *SRSA's Failure to Produce the Underlying Documents Relied on by its Expert Warrants Exclusion of Both*

While SRSA contests whether it was required to previously disclose Mr. Crain's identity and opinions, it offers no justification for its independent failure to have produced the documents on which Mr. Crain relied in forming his undisclosed opinions.  SRSA suggests that Mr. Crain was merely opining on information *Defendants* produced during discovery.  *See, e.g.,* Dkt. No. 153 at 6.  SRSA is incorrect in making that argument.  Mr. Crain explicitly reviewed, considered, and opined on information received directly from SRSA that SRSA never provided to Defendants.  *See* Crain Decl. at ¶11(c)-(d).  For example, Mr. Crain's declaration contained screenshots from SRSA's CrashPlan Account Interface, access to which PNC was denied.  Not only was this evidence discussed throughout the Crain declaration, but SRSA highlights this evidence in its Motion for a Preliminary Injunction.  Dkt. No. 88 at 9.  This evidence, which SRSA offers to support its claims, was required to be produced as part of its Initial Disclosures.  *See* Fed. R. Civ. P. 26(a)(1)(A)(ii).  Moreover, SRSA willfully withheld this evidence despite its

---

[2] This request should be rejected for the additional reason that SRSA takes a contradictory position on Defendants' discovery.  Only three days before filing this brief, SRSA filed a motion for sanctions against Defendants based on the unintentional, and promptly corrected, redaction of a single tab from a spreadsheet.  Dkt. No. 145 at 12.  SRSA simultaneously claims it is entitled to sanctions for the erroneous and promptly corrected redaction of a single document but that it is entitled to present the testimony of an undisclosed expert witness who SRSA never made available for a deposition and who relied on documents that SRSA has never produced.

responsiveness to multiple of Defendants' discovery requests. SRSA should have produced the information it provided to Mr. Crain in response to Request No. 6(c). Ex. F ("all Documents Concerning whether Tsarnas or Kelly used, disclosed or otherwise misappropriated the alleged Trade Secret following their departure from SRS"). SRSA neither produced the information nor disclosed that it was withholding responsive information.[3]

Given that SRSA's failure to produce the evidence reviewed and considered by Mr. Crain is not in dispute, the only question is the appropriate relief afforded Defendants for SRSA's discovery failures. Courts in similar situations have precluded the use of belatedly disclosed expert reports. *Tessina Holdings v. Trend S.P.A.*, 2018 U.S. Dist. LEXIS 171017, at \*22 (S.D. Fla. Oct. 1, 2018) ("In short, Fabricant's supplemental report and the eleventh-hour documents that it relies on should be excluded"); *Asus Computer Int'l v. Round Rock Research*, 2014 U.S. Dist. LEXIS 50728, at \*36-\*37 (N.D. Cal. Apr. 11, 2014) (excluding belatedly-produced

---

[3] SRSA now asserts that Defendants have not requested Crain's deposition or "made any additional requests pursuant to the Forensic Inspection Protocol . . . ." Dkt. No. 153 at 6. Defendants immediately requested the information on which Crain relied. *See* Dkt. No. 137, Ex. B at 4. SRSA refused to produce the information upon which its expert relied. *See id.* at 1-3. The notion that Defendants should have requested to depose an expert while SRSA refuses to provide even the basic information necessary for such deposition – such as the documents and information Crain relied upon – is nonsensical. SRSA intentionally withheld this information on which it intended to rely. It was SRSA's obligation to immediately attempt to mitigate the prejudice that its conduct caused by producing the information without request and offering Crain for deposition. Instead, SRSA required Defendants to request information that SRSA was required to produce months ago and which SRSA *still* refuses to produce. *Id.*

For the same reason, SRSA's assertion that Defendants were required to negotiate access to non-produced information *after SRSA relied upon it* is without merit. If SRSA believed the Protective Order, which was sufficient to file the Crain declaration, was insufficient to protect the information Crain relied on in forming those opinions, it should have raised such concerns *months ago* and not while Defendants were preparing their response to SRSA's 4,800+ page submission. SRSA provides no explanation as to why an expert engaged by Defendants should not be entitled to the same exact access that SRSA provided to its own expert.

4

documents and report); *In re Omeprazole Patent Litig.*, 2002 U.S. Dist. LEXIS 3225, at *3-*10 (S.D.N.Y. Feb. 26, 2002).  In *Sunroof de Max S.A. de C.V. v. Webasto Roof Sys.*, 2006 U.S. Dist. LEXIS 20895, at *21 (E.D. Mich. Apr. 19, 2006), the court excluded plaintiff's expert and the belatedly-produced documents on which he relied, explaining:

> The analogy used at the hearing on this motion to strike was that Plaintiff was given a deadline, and then an extended deadline, to produce the 'deck of cards' on damages that it wished to use in this case.  Then, without prior notice nor prior Court permission, Plaintiff chose to add a significant number of cards to the deck that had been used in formulating its expert damages report.  While after the expert depositions, Plaintiff finally decide to provide the Defendant the modified deck of damages documents, this does not undo nor justify the prior wrongdoing.  Plaintiff's counsel again asks for 'pardon' instead of 'permission.'

Here, SRSA argues that Mr. Crain's testimony is permissible despite its failure to produce the "deck of cards" on which his expert testimony is based and despite denying Defendants the opportunity to depose Mr. Crain at all.  SRSA's late disclosure of Mr. Crain's expert declaration should not be countenanced.

### B.     *SRSA's Case Law Do Not Support its Position Here*

The "basic purpose of the Federal Rules is to administer justice through fair trials . . . ." *Surowitz v. Hilton Hotels Corp.*, 383 U.S. 363, 373 (1966) ("Rule 23(b), like the other civil rules, was written to further, not defeat, the ends of justice"); *see also Hefley v. Textron, Inc.*, 713 F.2d 1487, 1499 (10th Cir. 1983) ("Nor do we encourage rigid or restrictive interpretations of the Federal Rules of Civil Procedure").  When faced with an issue where the Rules are silent or ambiguous, courts strive to apply them in a manner most fair and consonant with the court's search for truth based on the circumstances before it.  *See, e.g., Ellis-Hall Consultants v. Hoffman*, 2018 U.S. Dist. LEXIS 150592, at *9-*10 (D. Utah Sept. 4, 2018) (acknowledging an "ambiguity of Rule 45" and finding the minority position more consistent with Fed. R. Civ. P. 1

given the circumstances of the case). The premise of SRSA's legal position – that silence in the Federal Rules concerning disclosure of expert testimony condones unfair surprise – is directly contrary to the proper interpretation of the Federal Rules. The cases upon which SRSA relies do not support its assertion that expert opinions enjoy blanket protection from disclosure and discovery in the context of a preliminary injunction. The cases stand for the unremarkable proposition that where prior disclosure is impossible or impracticable – which is not the situation here – expert testimony may be permitted.

*Shell Offshore, Inc. v. Greenpeace, Inc.*, No. 3:15-cv-00054-SLG, 2015 WL 3508068 (D. Alaska June 4, 2015) provides no support for SRSA's assertion that a party may withhold information during months of expedited discovery only to produce it in the form of an undisclosed expert report in support of its motion for a preliminary injunction. Indeed, comparing the timeline of that case to the instant one amply demonstrates why what was reasonable in *Shell* is prejudicial here:

|  | ***Shell Offshore*** | ***SRSA v. PNC*** |
|---|---|---|
| Motion for Preliminary Injunction Filed | April 8, 2015 | July 31, 2019 |
| Briefing Completed on Motion for Preliminary Injunction | April 27, 2015 (less than three weeks after filing) | January 17, 2020 (over five months after filing) |
| Preliminary Injunction Hearing | April 28, 2015 | Hearing Date to be Set |

While it is one thing for a court to condone the failure to disclose experts where there is true urgency and less than three weeks elapsed between the filing of the motion for a preliminary injunction and the hearing itself, it is quite another to permit a party to withhold such information, and the underlying evidence, for over six months.

6

*Goodness Films, LLC v. TV One, LLC*, No. 12-cv-08688-GWJ-EMX, 2013 WL 12136374 (C.D. Cal. Aug. 13, 2013), cited by SRSA at page 8 of its brief, is irrelevant and, in fact, unhelpful to SRSA's position. There, the court considered whether the non-moving party was entitled to *drafts* of an expert's declaration, not whether the declaration was timely produced. *Id.* ("the only matter in dispute is the discoverability of attorney communications other than facts, data and assumptions"). The schedule in *Goodness Films* was more akin to that in *Shell* than here. There, the plaintiffs filed their motion for a preliminary injunction on November 19, 2012 and a hearing on the motion was conducted on December 27, 2012. *See* Exs. G and H. Critically, the offending party in *Goodness* did precisely what SRS did not: "produced [] all facts, data and assumptions counsel provided to" the expert. Ex. I at 2.

In *Seattle Audubon Soc. v. Sutherland*, No. 06-cv-1608-MJP, 2007 WL 1655152 (W.D. Wash. June 5, 2007), cited by SRSA at page 9 of its brief, the issue before the court concerned the timing of plaintiffs' submission of "their expert rebuttal witnesses." Ex. J at 2. The only issue before the court was whether plaintiff should have disclosed its rebuttal expert reports thirty days after receipt of defendant's expert reports (on April 22, 2007) and not on May 18, 2007 as set forth in the Court's scheduling order. This case in no way stands for the proposition that a party to a preliminary injunction proceeding is permitted to withhold documents and witnesses on which it intends to rely at an injunction hearing.

Finally, SRSA's reliance on *L-3 Commc'ns Corp. v. Jaxon Eng'g & Maint., Inc.*, No. 10-cv-02868-MSK-KMT, 2013 WL 61395 (D. Colo. Jan. 4, 2013), cited by SRSA at pages 2, 3, 9, and 14 of its brief, is unavailing. In *L-3*, the court permitted belatedly produced expert disclosures because the necessity of the witnesses was caused by the actions of the adversary:

> [T]he reason for the necessary testimony by two independent parties who have examined certain discovery from Jaxon, is that Jaxon has listed a number of documents having to do with Jaxon witness, Tim Farajian, as protected by the Attorney-Eyes-Only (AEO) provision in the Protective Order. The practical result of this designation is that Jaxon witnesses, including outside expert Farajian, may look at documents to prepare for the hearing, but Plaintiffs' employees may not. Therefore, Plaintiffs' need to employ outside experts to view and give testimony on the evidence produced by Jaxon is a necessity of Jaxon's own making.

*L-3* in no way permits SRSA's approach here. While the *L-3* defendants produced the underlying information in a way that required a third-party expert to review it, SRSA here did not – and still has not – produced the information on which its expert relied in any form whatsoever. Thus, in *L-3*, the court permitted the belated expert witnesses in order to *promote* fundamental fairness and not to *prevent* it.

Cumulatively, these cases stand for the unremarkable proposition that a court will permit a belatedly disclosed expert opinion where the facts render it just. For example, it would have been unreasonable to require the plaintiff in *Shell* to provide prior disclosure of expert witnesses where less than three weeks elapsed between the initiation and disposition of the motion for a preliminary injunction. Likewise, it would be unreasonable for the court to have prevented the plaintiff in *L-3* from offering the expert testimony where the belated disclosure was the direct result of the defendants' conduct. None of the cases on which SRSA relies stand for the proposition that SRSA actually advances to this Court: that a party may engage in five months of expedited discovery, participate in over a dozen depositions, produce and receive tens of thousands of documents and then submit the testimony of an undisclosed expert, who relied on unproduced information, in support of its preliminary injunction motion.

## II. CONCLUSION

For the foregoing reasons, and those contained in Defendants' Motion, they request the Court grant the motion to strike and preclude Mr. Crain's testimony in its entirety. Alternatively, Defendants request that the Court order SRSA to immediately produce all documents and information provided to Mr. Crain, to present Mr. Crain for a deposition, and to permit Defendants to supplement their submissions in opposition to SRSA's motion for a preliminary injunction.

### Compliance With Type-Volume Limitation

Undersigned counsel certifies that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

Dated: January 27, 2020

By: */s/ Noah S. Robbins*
James F. Bennett
Matthew E. Johnson
**DOWD BENNETT LLP**
1775 Sherman Street, Suite 2010
Denver, Colorado 80203
Telephone: 303-353-4361
Facsimile: 314-863-2111
jbennett@dowdbennett.com
mjohnson@dowdbennett.com

Hara K. Jacobs
Noah S. Robbins
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215-668-8500
Facsimile: 215-864-8999
jacobsh@ballardspahr.com
robbinsn@ballardspahr.com

## CERTIFICATE OF SERVICE

       I hereby certify that on this 27th day of January, 2020, a true and correct copy of the foregoing **DEFENDANTS' REPLY MOTION TO STRIKE THE DECLARATION AND EXHIBITS OF ANDY CRAIN [ECF NOS. 70-71]** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

   Warren A. Braunig
   Benjamin D. Rothstein
   Michelle Ybarra
   Victor H. Yu
   KEKER, VAN NEST & PETERS LLP
   633 Battery Street
   San Francisco, CA 94111-1809

   Scott R. Bialecki
   Matthew C. Miller
   SHERIDAN ROSS P.C.
   1560 Broadway, Suite 1200
   Denver, CO 80202

   *Attorneys for Plaintiffs SRS Acquiom Inc., a Delaware corporation and Shareholder Representative Services LLC, a Colorado limited liability company*

                                       */s/ Brian S.S. Auerbach*
                                        Brian S.S. Auerbach