**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

       Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

       Defendants.

## DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

### I.  INTRODUCTION

After doing literally nothing for more than a year in the face of what it now calls irreparable harm, SRSA demanded an extraordinarily aggressive expedited discovery schedule that required the parties to collect, review, and produce tens of thousands of documents and conduct over a dozen depositions in just a few months.  It was a schedule that SRSA itself could not keep.  Unsurprisingly, innocent mistakes were made by both sides.  That is normal.  What is not normal is SRSA's multi-month effort to concoct a conspiracy from whole cloth about one such oversight.  SRSA apparently believes that by kicking up enough dirt, it can obscure its complete inability to substantiate its legal claims.  "Crying foul and casting aspersions whenever there's a hole in defendants' document productions or whenever some small number of documents (even crucial documents) are found relatively late in the process does not advance plaintiffs' cause and is not conducive to the timely, efficient resolution of this litigation." *Fisher*

*v. Ciba Specialty Chemicals Corp.*, 2007 U.S. Dist. LEXIS 24173, at *3 (S.D. Ala. Mar. 30, 2007).

This is not a case where evidence has been destroyed and the parties are forced to speculate about lost material. Incredibly, this Motion is premised on the inadvertent, temporary redaction of one tab of a spreadsheet, which SRSA has now possessed for months.[1] SRSA's Motion should be denied because a promptly corrected document production error is not spoliation.

SRSA's assertion that Defendants intentionally secreted the information in the spreadsheet tab is belied by the uncontroverted chain of events. Defendants produced other documents referring to the spreadsheet tab in their initial production. Defendants' witnesses testified about the existence of the tab at their depositions, leading to the discovery of the mistaken redaction, and Defendants immediately produced the tab. Defendants promptly reproduced *all* versions of the document from which the tab had been inadvertently redacted along with the corresponding transmittal emails. Defendants then agreed to permit SRSA to re-depose Heather Kelly regarding these documents. SRSA's accusation that Defendants purposefully hid this information is demonstrably wrong.

The remedies that SRSA seeks for the mistaken redaction are illogical. Because SRSA possesses *every single one* of the documents at issue in this motion, the only conceivable prejudice to SRSA was the inability to question Kelly at her deposition regarding her additions to

---

[1] Though SRSA refers to this tab as the "most inculpatory evidence in the case," ECF No. 145 at 12, that characterization is a reflection of the complete lack of merit of SRSA's allegations. The tab is nothing more than a non-confidential list of customers.

the tab.  SRSA, however, rejected Defendants' offer to provide precisely that.  Instead, SRSA seeks to present argument about a document it claims it was prevented from understanding while precluding Defendants from rebutting SRSA's "argument" with "facts" from witnesses with personal knowledge of the document's creation and use.  Defendants inadvertently removed one tab of one document.  Defendants promptly corrected the oversight upon discovery.  The present dispute is emblematic of SRSA's entire case.  SRSA requests spoliation sanctions where no document was destroyed.  SRSA requests an injunction shutting down a business line where SRSA has no trade secrets nor evidence of their misappropriation by Defendants.  SRSA's Motion should be denied in its entirety.

## II.   BACKGROUND

### A.   HK Contacts

Heather Kelly worked in the M&A paying agent industry for more than a dozen years *before ever joining SRSA* and developed a list of contacts including customers, potential customers, and M&A attorneys.  Kelly Decl. ECF No. 130 at ¶¶19-20.  Kelly brought her contacts and customers to SRSA when she was hired in 2014.  *Id.* at ¶¶21-22.  When she left SRSA in March 2018, she created an updated contact list entitled "HK Contacts" and took it with her.  *Id.* at ¶22.[2]

### B.   Strategic Buyers

On October 8, 2018, Alex Tsarnas circulated to his colleagues at PNC several documents, including an Excel spreadsheet titled "Firms by segment 100718. Xlsx" (versions of this

---

[2]  When Greg Nelson left SRSA competitor Wilmington Trust for his position as Head of Sales at SRSA, he emailed to his personal email address a document consisting of contact information for client contacts and M&A attorneys.  Nelson Decl. at ¶85 ECF No. 122-8.

3

document referred to as "Firms by Segment").  The spreadsheet consisted of several tabs including one titled "Strategic Buyers" that identified potential customers for PNC Paid.  Kelly added some of her contacts to the Strategic Buyers tab with her "priority ranking".  *Id.* at ¶36.  SRSA does not assert that Fortis/PNC is prohibited from creating its own list of past and potential customers.  Rather, SRSA's sole claim is that Kelly's addition of her contacts along with her subjective impressions about such potential customers is a trade secret owned by SRSA.

### C. Defendants' Production of Firms by Segment Document

The Court's initial Scheduling Order established a document production deadline of September 11, 2019.  ECF No. 26.  Due to SRSA's inability to meet that production deadline, the parties agreed to extend the document production deadline to September 25, 2019.[3]  ECF No. 46.  Defendants produced the vast majority of their documents, consisting of 11,163 documents, to SRSA by that date.  Huber Decl. at ¶4.[4]

In September 2019, Defendants, their counsel, and their eDiscovery vendor had a call in which they discussed the "Firms by Segment" document.  *Id.* at ¶6; Wallace Decl. at ¶2.  Certain tabs of the Firms by Segment spreadsheet included responsive information while others consisted

---

[3]   When SRSA represented that it would not be able to meet the Court-ordered deposition deadline, the parties again amended the scheduling order to extend that deadline from October 30, 2019 to November 15, 2019.  ECF No. 60.

[4]   By contrast, SRSA has made 16 of its 23 productions of documents *after* September 25, 2019.  Huber Decl. at ¶4.  SRSA affirmatively relies on these documents.  For example, SRSA produced two documents on October 15, 2019 about which it questioned Tsarnas at his deposition two days later.  *See id.* at ¶5.  On November 20, 2019, SRSA produced a document that it cited in support of its preliminary injunction motion filed five days later.  *See id.*; Lee Decl. Ex. 3 (ECF No. 74-3).  On November 25, 2019, SRSA submitted an undisclosed expert declaration, with many exhibits SRSA never produced to Defendants.  *See e.g.*, Crain Decl. Exs. X, AL (ECF Nos. 70-4, 71-11).

4

of non-responsive, confidential information about deals in which Fortis served as shareholder representative. Huber Decl. at ¶7; Wallace Decl. at ¶3. Defendants decided to redact the non-responsive tabs of the Firms by Segment Excel document. Huber Decl. at ¶7; Wallace Decl. at ¶3. Though Defendants' counsel instructed the eDiscovery vendor to produce the Strategic Buyers tab, the vendor misunderstood the Strategic Buyers tab to be one of the tabs that contained non-responsive confidential information and should be redacted. Huber Decl. at ¶7; Wallace Decl. at ¶3. Defendants' eDiscovery vendor redacted the Strategic Buyers tabs from all versions of the Firms by Segment document. Huber Decl. at ¶7. The vendor also identified an Excel spreadsheet titled "Top Firms v2.xlsx" ("Top Firms") that was a near duplicate of the Firms by Segment document and redacted the Strategic Buyers tab there as well. *Id.* at ¶8. The Firms by Segment and Top Firms documents were produced to SRSA as native Excel files on September 18, 2019 with the redacted tabs removed from the native files. *Id.* at ¶9.

### D.     Defendants' Supplemental Productions

On November 5, 2019, SRSA requested that Defendants produce a prioritized spreadsheet of buyers identified by Kelly and Adam Lezack at their depositions. Wallace Decl. at ¶8. Defendants immediately investigated and discovered the referenced document was the Strategic Buyers tab. *Id.* at ¶9. On November 7, 2019, Defendants' eDiscovery vendor informed counsel that the Firms by Segment had been produced with the Strategic Buyers tab redacted. *Id.* at ¶10. This was the first time counsel learned of this error. The next day, Defendants' counsel informed SRSA that the referenced document had been located and produced a stand-alone version of the Firms by Segment document with the Strategic Buyers tab containing the responsive information (PNC_00056508). *Id.* at ¶8; Ex. 3.

On November 14, 2019, SRSA requested that Defendants produce all versions of the Firms by Segment document and cover emails. *Id.* at ¶12; Ex. 4. On November 22, 2019, Defendants produced the stand-alone version of the Firms by Segment document with all tabs (PNC_00056508), re-productions of the previously produced versions of the complete Firms by Segment document with cover emails, and a few additional versions of the complete Firms by Segment document with cover emails. *Id.* at ¶14. Counsel explained that the documents were originally produced with the Strategic Buyers tab redacted due to a miscommunication with an outside vendor. *Id.*

On December 3, 2019, SRSA identified four versions of the Top Firms document that were modified by Defendants' eDiscovery vendor. *Id.* at ¶18. The next day, one day after first being apprised of this issue by SRSA, Defendants re-produced the previously produced versions of the Top Firms document with all tabs. *Id.* at ¶19. Later that day, SRSA asked Defendants to produce a cover email transmitting PNC_00056508. *Id.* at ¶20. On December 5, 2019, again one day after receiving the request from SRSA, Defendants re-produced that version of the Firms by Segment document along with the original cover email transmitting it. *Id.*

During the multiple meet and confers and other communications wherein Defendants fulfilled each of SRSA's requests for additional documents, SRSA never raised its intention to seek sanctions or suggested that it was somehow prejudiced notwithstanding its receipt of all documents it requested. *Id.* at ¶22. Nevertheless, on December 6, 2019, SRSA received leave from Magistrate Judge Crews to file a motion for sanctions based on these production errors but then did nothing. ECF No. 107. A month later, on January 7, 2020, SRSA instead asked that Defendants produce Kelly and Tsarnas for two hours of deposition each in San Francisco the

6

next week.  Robbins Decl. at ¶3.  Defendants offered to produce Kelly for a half hour deposition in San Francisco the next week.  *Id.* at ¶5.  When counsel met and conferred on January 8, 2020, SRSA rejected this proposal.  *Id.* at ¶¶6-14.  The next day, SRSA filed this Motion for evidentiary sanctions.

### III.   ARGUMENT

#### A.   Document Production Errors Do Not Constitute Spoliation.

SRSA's claim that the Court should enter spoliation sanctions against Defendants fails for the most basic reason possible:  nothing was spoliated.  Spoliation is "the intentional destruction of evidence" and, to obtain sanctions based on spoliation, a party must show that "the adverse party was prejudiced by the destruction of the evidence."  *Moreno v. Taos Cnty. Bd. of Comm'rs*, 587 F. App'x 442, 444 (10th Cir. 2014); *EEOC v. JetStream Ground Servs.*, 878 F.3d 960, 964 (10th Cir. 2017).  This Court has defined spoliation as "the intentional destruction of evidence[.]"  *Cejka v. Vectrus Sys. Corp.*, 2018 U.S. Dist. LEXIS 76267, at *1-*2 (D. Colo. May 7, 2018) (quoting *Moreno v. Taos Cty. Bd. of Comm'rs*, 587 F. App'x 442, 444 (10th Cir. 2014)).

The concept of spoliation does not, and cannot, apply to these facts because it is indisputable that no evidence has been destroyed.  Due to a miscommunication, the wrong tabs of the Firms by Segment were mistakenly redacted from the versions originally produced to SRSA.  Huber Decl. ¶¶7-9; Wallace Decl. ¶¶3-4.  When the error was identified, Defendants provided the missing information followed by a supplemental production of corrected versions of the document.  Wallace Decl. ¶¶8-14.

Though SRSA makes much of a mistaken redaction, SRSA does not claim that it is missing a single relevant document.  SRSA possesses the evidence to use at the preliminary

7

injunction hearing, yet it filed a sanctions motion despite this unassailable fact. "There is a crucial difference between the destruction of evidence and its eventual production." *Church of Scientology Int'l v. Time Warner*, 1994 U.S. Dist. LEXIS 1095, at *15 (S.D.N.Y. Feb. 3, 1994) (recognizing, in a case where portions of recordings produced by defendants were inadvertently deleted, "[i]n the final analysis, plaintiff received the recordings in their entirety"). This is not a case where evidence was destroyed, which dooms SRSA's argument at its infancy. *Kincaid v. Wells Fargo Sec. LLC*, 2012 U.S. Dist. LEXIS 6160, at *12 (N.D. Okla. Jan. 19, 2012) ("Plaintiff has not established that any document has been destroyed; thus, Plaintiff has failed to satisfy this requirement for a spoliation sanction."). A spoliation sanction is unwarranted because no evidence has been destroyed. *See also In re Tenet Healthcare Corp. Sec. Litig.*, 2007 U.S. Dist. LEXIS 97821, at *10 (C.D. Cal. Dec. 4, 2007) ("KPMG's conduct of supplementing its workpapers did not amount to spoliation because there was no destruction of documents").

Notwithstanding the absence of spoliation, sanctions are still inappropriate under these circumstances. Defendants' incorrect redactions of the Firms by Segment document were the result of unintentional human error, rather than intentional misconduct. As attested by Defendants' counsel and eDiscovery vendor, the redaction of the Strategic Buyers tab was due to a miscommunication about the information contained in tabs of the Firms by Segment document. Huber Decl. ¶¶7-9; Wallace Decl. ¶¶3-4. Defendants, immediately upon learning of the miscommunication, ensured that SRSA not only received the missing tab within days but then re-produced each version of the document. This Court has recognized that errors resulting from miscommunications between counsel and eDiscovery support teams may be justified. *See Ark. River Power Auth. v. Babcock & Wilcox Power Co.*, 2016 U.S. Dist. LEXIS 194064, at *10 (D.

8

Colo. Oct. 19, 2016) (finding nondisclosure of documents to be "substantially justified" where plaintiff "utilized contract attorneys who failed to follow its instructions"). Defendants apprised SRSA that this error was due to a miscommunication in a November 22, 2019 letter accompanying the supplemental production.

SRSA's speculation that it is "impossible to credit [Defendants'] claim that Defendants systematically concealed some of the most inculpatory evidence in this case *by accident*," is unsupported by facts. ECF No. 145 at 12.[5] The only support SRSA presents for its theory that Defendants engaged in a scheme to conceal evidence is their view that the information in the mistakenly redacted tab is particularly harmful. It is not. The information included in the tab is not a trade secret as demonstrated by the sworn testimony of SRSA employees, including CEO Paul Koenig. *See* ECF No. 120 at 8-9. The Strategic Buyers tab of the Firms by Segment document reflects Kelly's contacts at strategic buyers, who are frequently involved in M&A transactions. As Koenig told a different court under oath: "The major M&A firms are well-known in the industry . . . and many of them are public companies, so details of any of their mergers or acquisitions are also public for many transactions." Koenig Decl. at ¶10 (ECF No. 122-7). In short, the Strategic Buyers tab was initially withheld as an innocent oversight and its accompanying emails were produced to SRSA in their entirety, not spoliated.

---

[5] While the notion that Defendants would "conceal" their possession of information that Plaintiffs' CEO admitted under oath is not even confidential is absurd in its own right, the conspiracy theory that SRSA offers to this Court is not only beyond the pale, it is beyond reason. SRSA asserts that Defendants concocted a scheme to conceal information only to: (1) produce multiple other documents that referenced the Strategic Buyers tab; (2) have multiple witnesses to testify as to the existence of the document; (3) thereafter produce the document immediately upon discovery of the oversight; and (4) ensure that SRSA receive corrected versions of all documents in which the error was manifested.

### B. SRSA Has Suffered No Prejudice Where Defendants Corrected Inadvertent Errors with Corrected Productions.

The fact that no document was destroyed not only dooms SRSA's spoliation claim, it renders its claims of prejudice fanciful. SRSA argues "'[a]ctual prejudice' exists where there is a 'reasonable possibility … that access to the lost material would have produced evidence favorable to [the aggrieved party's] cause.'" ECF No. 145 at 12 (citing *Gates Rubber Co. v. Bando Chem. Indus.*, 167 F.R.D. 90, 104 (D. Colo. 1996)). Yet, *Gates* concerned material that had been lost, not material that was later produced. *Id*. Similarly, in *103 Investors I, L.P. v. Square D Co.*, the court imposed evidentiary sanctions where "defendant was prejudiced by the destruction of the evidence because there was no substitute for a direct visual examination of the busway." 470 F.3d 985, 989 (10th Cir. 2006). Here, SRSA needs no substitute for the mistakenly redacted information because SRSA has had it since November.

Discovery errors do not warrant sanctions where a producing party promptly remedies those errors. In *Radiologix, Inc. v. Radiology & Nuclear Medicine, LLC*, a court in this Circuit declined to impose sanctions based on the inadvertent withholding of responsive documents "because the withholding was harmless." 2019 U.S. Dist. LEXIS 13834, at *12, *19-*20 (D. Kan. Jan. 29, 2019). Similar to Defendants here, plaintiffs in *Radiologix* "quickly worked to determine what had caused the production 'gaps,' tried to fill the gaps by making supplemental document productions to defendant, and produced more discovery to defendant during the additional discovery period to cure the original oversight." *Id.* at *20. The producing party thus "cured any prejudice or surprise by producing the emails in the supplemental production." *Id.* at *12. Any prejudice SRSA might have suffered by the original mistaken redaction was cured by Defendants' corrective productions. *See Riordan v. BJ's Wholesale Club, Inc.,* 2011 U.S. Dist.

LEXIS 3906 (N.D.N.Y. Jan. 14, 2011) ("the records at issue were not destroyed; Plaintiff, in fact, has copies of the documents as they existed prior to the alteration. … Thus, she is not particularly prejudiced by the alterations."); *see also Church of Scientology*, 1994 U.S. Dist. LEXIS 1095, at *13-*14 ("The alacrity with which substitute recordings were provided …prevented plaintiff from suffering any prejudice that could have been caused by the incompleteness of the first recordings.")

SRSA's contention that it is entitled to evidentiary sanctions where Defendants have produced corrected documents is contrary to SRSA's cited case law and conduct. SRSA cites two cases for the proposition that altering documents may constitute spoliation, even where the unaltered documents are eventually produced. *Geiger v. Z-Ultimate Self Defense Studios*, 2014 U.S. Dist. LEXIS 159891 (D. Colo. Nov. 12, 2014); *Suntrust Mortg. Inc. v. United Guar. Residential Inc. Co.*, 508 F. App'x 243 (4th Cir. 2013). SRSA neglects to mention that in both cases the court found that prejudice to the aggrieved party was negligible. *Geiger*, 2014 U.S. Dist. LEXIS 159891, at * 24 ("the resulting prejudice to the plaintiffs is slight because either the information is available elsewhere"); *Suntrust*, 508 F. App'x at 255 (finding aggrieved party "was not significantly prejudiced" where "the original, unaltered e-mails eventually came to light and were before the court for its merits determinations."). SRSA has not suffered prejudice where Defendants produced the corrected documents.

SRSA's insistence that it was prejudiced by Defendants' inadvertent failure to produce certain documents during expedited discovery stands in sharp contrast to SRSA's own discovery conduct. First, two months after the Court-ordered document production deadline, SRSA propounded an expert declaration in support of its preliminary injunction motion along with

exhibits SRSA never produced to Defendants. *See* ECF Nos. 70-73. SRSA's expert even relied on documents that SRSA never produced to Defendants nor did Defendants have an opportunity to depose this expert. *See* ECF Nos. 137, 173. Second, despite the testimony of many of their employees that they used text messages to communicate about business, SRSA has refused to even review this source of evidence for its custodians. *See* ECF No. 115. The Court should reject SRSA's inherently inconsistent position that Defendants' belated production of a document is *sanctionable* while SRSA's intentional refusal to produce documents at all is *permissible*.

### C.     The Relief SRSA Requests Is Inappropriate and Contradictory.

No sanctions are warranted because SRSA was not prejudiced by inadvertent production errors, which Defendants corrected. The lack of any prejudice to SRSA is manifest because SRSA's brief demonstrates that it does not know how to fashion relief to "cure" non-existent prejudice. Initially, after Defendants fulfilled each and every request for additional documentation, SRSA sought and received permission to seek "evidentiary sanctions." ECF. No. 107. On January 7, 2020, two months after receiving the tab at issue and one month after receiving permission to file the instant motion, SRSA for the first time requested to re-depose Kelly and Tsarnas in lieu of filing a motion for sanctions. Robbins Decl. at ¶3. Defendants, again, substantially agreed to all of SRSA's demands.[6] Nevertheless, SRSA proceeded with its motion because SRSA does not seek to cure non-existent prejudice. Rather, SRSA hopes that by

---

[6]     SRSA questioned Kelly on 56 different exhibits during the course of her deposition. SRSA did not ask Tsarnas any questions about the excel file at all. *Id.* at ¶13. The notion that SRSA would have otherwise devoted four out of fourteen hours of these individuals' depositions to a single tab of a single spreadsheet defies credulity.

12

leveling enough baseless accusations against the Defendants, the Court will overlook the fact that SRSA has no trade secrets and no evidence of misappropriation. The result is that SRSA's requested relief is both incoherent and inconsistent.

SRSA first proposes that the Court should hold an evidentiary hearing in order to question Defendants' witnesses about the mistakenly redacted documents and associated emails. In support, SRSA cites a case in which the Fifth Circuit affirmed the trial court's decision *not* to hold an evidentiary hearing. *Resolution Trust Corp. v. S. Union Co., Inc.*, 985 F.2d 196, 198 (5th Cir. 1993). SRSA, however, already has the opportunity to question Defendants' witnesses at the injunction hearing (and expressly declined an opportunity to depose Kelly about the documents). SRSA does not need a Court order to obtain an opportunity it already possesses.[7]

Alternatively, SRSA requests an order precluding Defendants from rebutting SRSA's argument regarding these documents. SRSA offers no authority for such relief. In fact, the court in *Capitol Fed. Sav. Bank v. E. Bank Corp.*, a case cited by SRSA, precluded plaintiffs from relying upon a declaration and accompanying exhibits produced after the close of discovery in support of their motion for injunctive relief. 2007 U.S. Dist. LEXIS 100193, at *20-*22 (D. Mass. Dec. 3, 2007).[8] This conduct is analogous, not to Defendants' inadvertent redaction and supplemental corrected production, but to SRSA's untimely submission of the Crain declaration.

---

[7] SRSA argues additional deposition time with Defendants' witnesses would cause further delay of injunctive relief. Of course, two days before filing this Motion, SRSA proposed additional deposition time and an extension of preliminary injunction briefing. ECF No. 145 at 14 n. 5. Moreover, this complaint rings hollow, especially given that the injunction hearing is still weeks away.

[8] In the other case cited by SRSA in favor of a preclusion order, no party ever moved for a preliminary injunction. *Corp. Express, Inc. v. US Office Prods. Co.*, 2000 U.S. Dist. LEXIS 16553 (N.D. Ill. Oct. 27, 2000).

More fundamentally, SRSA's requested alternative relief is simply illogical.  SRSA contends that it could not depose individuals "on how that list was used [or] whether it is still in use today . . . ."  ECF No. 145 at 16.  Yet, SRSA requests that the Court preclude "Defendants from rebutting SRSA's evidence or argument" about the tab.  *Id.* at p. 18.  In other words, while claiming that it was deprived the opportunity to inquire as to the use of this document, SRSA nevertheless wishes to be able to offer uncontradicted "argument" about the document.  SRSA's relief does not seek to ascertain the truth of this document's origin and use – it seeks judicial permission to manufacture it.  Unsurprisingly, SRSA cites no case where a Court granted permission to perpetrate a fraud upon it.

## IV.  CONCLUSION

For the foregoing reasons, Defendants respectfully request the Court deny SRSA's motion for sanctions based on inadvertent discovery errors that have since been corrected.

Respectfully submitted,

Dated:  January 30, 2020

By:  */s/ Noah S. Robbins*
James F. Bennett
Matthew E. Johnson
**DOWD BENNETT LLP**
1775 Sherman Street, Suite 2010
Denver, Colorado 80203
Telephone: 303-353-4361
Facsimile: 314-863-2111
jbennett@dowdbennett.com
mjohnson@dowdbennett.com

                                        Hara K. Jacobs
                                        Noah S. Robbins
                                        **BALLARD SPAHR LLP**
                                        1735 Market Street, 51st Floor
                                        Philadelphia, PA 19103-7599
                                        Telephone: 215-668-8500
                                        Facsimile: 215-864-8999
                                        jacobsh@ballardspahr.com
                                        robbinsn@ballardspahr.com

## **CERTIFICATE OF COMPLIANCE**

       I certify this pleading complies with the type-volume limitation set forth in Judge Domenico's Civil Practice standard III.A.2

                                        */s/ Elizabeth Weissert*
                                        Elizabeth Weissert

# CERTIFICATE OF SERVICE

I hereby certify that on this 30th day of January 2020, a true and correct copy of the foregoing **DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Warren A. Braunig
Benjamin D. Rothstein
Michelle Ybarra
Victor H. Yu
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

Scott R. Bialecki
Matthew C. Miller
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202

*Attorneys for Plaintiffs SRS Acquiom Inc., a Delaware corporation and Shareholder Representative Services LLC, a Colorado limited liability company*

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Elizabeth Weissert*
　　　　　　　　　　　　　　　　　　　　　　　Elizabeth Weissert