IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

### DECLARATION OF SARAH WALLACE IN SUPPORT OF DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR SANCTIONS

---

I, Sarah Wallace, declare and state the facts I set forth in this declaration are based on my personal knowledge. If called upon as a witness, I would testify to these facts competently under oath.

1.   I am licensed to practice law in the state of Colorado and am a partner at Ballard Spahr, LLP.  I have been counsel for PNC Financial Services Group, PNC Bank N.A., Heather Kelly, and Alex Tsarnas ("Defendants") in this matter.

2.   On September 17, 2019, I participated in a call with principals from Fortis, a PNC executive, in-house counsel at PNC, and an employee of Ernest & Young who PNC engaged as an e-discovery vendor in this matter as part of PNC's efforts to collect documents responsive to Plaintiffs' document requests.  During that call, the group discussed, among several highly

sensitive business documents, an Excel spreadsheet document titled "Firms by segement 101518 v3.xlsx" ("Firms by Segment").

3. This particular spreadsheet was an attachment to an email in which PNC employees were discussing the marketing strategy for launching PNC Paid. As such, the group determined that certain tabs of the Firms by Segment Excel spreadsheet included information that was responsive to SRSA's Requests for Production. Other tabs consisted of non-responsive information about historic deals in which Fortis served as shareholder representative and which predated PNC's acquisition. Specifically, the Law Firms, Private Equity, Venture Capital, and Strategic Buyers tabs contained responsive information. The Fortis Referral Sources Detail, Fortis Escrows with Attorneys, Fortis Escrows by Buyer, and Buyers with Escrow Amount tabs contained non-responsive information about historic Fortis deals. Ernst & Young was instructed to redact the non-responsive tabs of the Firms by Segment Excel document (Fortis Referral Sources Detail, Fortis Escrows with Attorneys, Fortis Escrows by Buyer, and Buyers with Escrow Amount).

4. The next day, on September 18, 2019, PNC made a large document production to SRSA including produced versions of the Firms by Segment document as native Excel files. At the time, I believed that the Strategic Buyers tab had been produced and the Fortis Referral Sources Detail, Fortis Escrows with Attorneys, Fortis Escrows by Buyer, and Buyers with Escrow Amount tabs had been redacted from the native files.

5. Counsel for SRSA and I had previously agreed that neither SRSA nor Defendants would produce "a log of non-privileged documents that were redacted because they included third-party confidential information, such as specific deal terms or shareholders' personal

information." Warren Braunig confirmed this understanding in an October 11, 2019 email. Exhibit 1 October 11, 2019 email from W. Braunig to S. Wallace.

6. Both SRSA and Defendants redacted third-party confidential information, including confidential information of customers and shareholders' personally identifiable information, from documents produced in this litigation. Neither SRSA nor Defendants produced a log of such redactions as there was no protocol in place for doing so.

7. During the October 28, 2019 deposition of Adam Lezack (a Fortis founder), which I defended, Mr. Lezack testified about a list of high priority buyers that consisted of an Excel spreadsheet he created with Heather Kelly, Rick Fink, Ryan Simkin, Patrick Murphy and Alex Tsarnas. Exhibit 2 Lezack Dep. Tr. 358:04-359:17.

8. On November 5, 2019, SRSA wrote to follow up on the prioritized list of buyers Heather Kelly and Adam Lezack discussed at their depositions. SRSA did not believe the spreadsheet had been produced and asked that PNC investigate and produce any copies of the referenced spreadsheet. Rothstein Decl. Ex. E (ECF No. 148-1).

9. Upon receiving this communication from SRSA, I asked Mr. Lezack to identify and send me the document he referenced in his deposition testimony. Mr. Lezack provided me a version of the Firms by Segment document. I sent that version of the Firms by Segment document to Michael Huber, our eDiscovery vendor at Ernest & Young, and asked him to confirm that it had been produced.

10. On November 7, 2019, Mr. Huber informed me that the Firms by Segment document had been produced with certain tabs removed and the Law Firms, Private Equity, Venture Capital, and Buyers with Escrow Amount tabs remaining. I realized that the Strategic Buyers tab, containing responsive information, had been improperly redacted rather than the

3

Buyers with Escrow Amount tab, which contained non-responsive information about previous transactions. I was not aware that the Strategic Buyers tab had been mistakenly removed until November 7, 2019.

11. On November 8, 2019, I wrote to counsel for SRSA informing them that "I was able to locate the document Heather and Adam referenced in their depositions" and that the document would be produced later that day. Exhibit 3 November 8, 2019 email from S. Wallace to W. Braunig. That day PNC produced a stand-alone version of the Firms by Segment document with the Strategic Buyers tab (PNC_00056508).

12. On November 14, 2019, Counsel for SRSA requested that PNC produce all versions of PNC_00056508 and emails transmitting the same. Exhibit 4 November 15, 2019 email from S. Wallace to M. Ybarra. I asked Ernst & Young to search for and locate these documents.

13. On November 19, 2019, I met and conferred with Michelle Ybarra and confirmed that we were in the process of searching for additional versions of the Firms by Segment document for production to SRSA. Rothstein Decl. Ex. K at November 20, 2019 email from S. Wallace to M. Ybarra (ECF No. 148-3).

14. On November 22, 2019, PNC produced to SRSA the stand-alone version of the Firms by Segment document (PNC_00056508) with all tabs, re-productions of the previously produced versions of the Firms by Segment document with all tabs and cover emails, and a few additional versions of the Firms by Segment document with all tabs and cover emails. In our production letter, we explained that the documents were originally produced with the Strategic Buyers tab redacted due to a miscommunication with our vendor. Rothstein Decl. Ex. I (ECF No. 148-2).

4

15. On November 27, 2019, counsel for SRSA wrote asking PNC to explain how this information was redacted in error, when PNC learned of the error, and what steps PNC had taken to confirm no similar errors occurred. Rothstein Decl. Ex. K (ECF No. 148-3). I advised SRSA on November 30, 2019 that there was a miscommunication between Ballard Spahr and Ernst & Young, the issue was discovered very recently, and it was promptly remedied first by producing the document that Heather Kelly and Adam Lezack referenced and shortly thereafter by re-producing all versions of the Firms by Segment spreadsheet that had been produced with the inadvertently redacted tab. *Id.*

16. On December 3, 2019, I met and conferred with Michelle Ybarra who asked me whether any native Excel documents other than the Firms by Segment document had been redacted for something other than personally identifiable information. Rothstein Decl. Ex. L (ECF No. 148-4). I asked Michael Huber whether any additional native Excel spreadsheets had been redacted and he confirmed that the Firms by Segment document was the only native document Ernst & Young redacted in that manner. I transmitted this confirmation to Michael Ybarra. *Id.*

17. I also instructed Michael Huber that, in the future, if Ernest & Young redacts tabs from an Excel spreadsheet, the documents should include a placeholder to show that tabs have been removed.

18. Later on December 3, 2019, Ben Rothstein sent me a list of four additional native Excel files titled Top Firms v2.xlsx ("Top Firms") that identified Michael Huber as the author in the metadata. *Id.* Ben Rothstein asked me to explain why Ernst & Young modified these documents and to produce the original versions of these documents along with cover emails. *Id.* I asked Michael Huber to investigate why these documents had been redacted. Michael Huber

explained to me that the Top Firms documents were near duplicates of the Firms by Segment documents and so Ernst & Young had redacted the Strategic Buyers and Fortis Referral Sources Detail tabs from the native versions.

19.     On December 4, 2019, I wrote to Ben Rothstein and explained that the documents were "additional versions with a different naming convention of the firms by segment excel spreadsheet and were treated in the same manner" and that they "should have been re-produced when we re-produced the other versions." *Id.* That day, *i.e.*, one day after first being apprised of the issue by SRSA, PNC re-produced to SRSA the previously produced versions of the Top Firms document with all tabs. *Id.*

20.     Later on December 4, 2019, Michelle Ybarra wrote asking PNC to produce a cover email transmitting PNC_00056508. Rothstein Decl. Ex. M (ECF No. 148-5). Michael Huber informed me that the cover email transmitting PNC_00056508 had not been produced to SRSA because that particular version of the Firms by Segment document was originally produced as a stand-alone document. On December 5, 2019, again one day after receiving the request from SRSA, PNC re-produced to SRSA that version of the Firms by Segment document (originally produced at PNC_00056508) along with the cover email originally transmitting it. *Id.*

21.     By December 5, 2019, PNC had re-produced corrected versions of the Firms by Segment and Top Firms documents and cover emails transmitting such documents.

22.     At no point during the correspondence and meet and confers described above did SRSA ever indicate that it intended to seek sanctions of any kind. Rather, SRSA requested the production of additional documents, which Defendants promptly produced each time. The first time that SRSA informed PNC that it would seek sanctions was immediately prior to the call with Magistrate Judge Crews on December 6, 2019.

6

      I declare under penalty of perjury that the foregoing is true and correct.

Dated: January 29, 2020

By: */s/ Sarah B. Wallace*
Sarah B. Wallace
**BALLARD SPAHR LLP**
1225 Seventeenth Street, Suite 2300
Denver, Colorado 80202-5596
Telephone: 303-292-2400
Facsimile: 303-296-3956
wallaces@ballardspahr.com