EXHIBIT 4

| | |
|---|---|
| **From:** | Wallace, Sarah B (Denver) |
| **Sent:** | Friday, November 15, 2019 12:18 PM |
| **To:** | Michelle Ybarra; Petrie, Andrew J. (Denver); Jacobs, Hara K. (Phila); Robbins, Noah (Phila) |
| **Cc:** | ACQUIOM-KVP; sheridan-srs@sheridanross.com; Ballard PNC Litigation Team |
| **Subject:** | RE: Compliance with October 17 Discovery Order |

Michelle

PNC_00056508 was in response to Warren specifically asking me to locate that document based on testimony. It had nothing to do with the first contact production other than they were produced at the same time. The document produced is the final version of this document.

Document Request No. 8 read as follows: Documents sufficient to show the identity of all potential or actual customers targeted by PNC for PNC's M&A Payments and Escrow Products, the first date such customer was contacted about PNC's M&A Payments and Escrow Products, and the PNC employee who served as the primary contact for such customer. "PNC's M&A Payments and Escrow Products" is defined as "the suite of online merger and acquisition payments products released by PNC."

The Court subsequently ordered PNC to produce responsive documents as to SRSA's customers lists that SRSA alleged Kelly and Tsarnas took with them. SRSA then provided 4 lists to PNC and even though SRSA has no good faith basis that Tsarnas and Kelly took the identified lists and even though the lists included many names that could not in good faith be identified as customers, PNC nonetheless searched for documents evidencing targeting of those 1,000 "customers" for its online M&A products. This was a very time intensive process that included reviewing any identified hits to determine if the hit was responsive. Many of the hits were not responsive because they involved Fortis providing shareholder services to the "customers". The documents PNC produced are the output of that process- -a process that was undertaken in good faith and was very expensive. To the extent there were communications mentioned on Ms. Kelly's spreadsheets that were not provided there are a number of possibilities. First, the contact could have been verbal Second, the communication could have been social (a Christmas card for instance). Third, PNC did not have any online M&A products until 2019 for which it could have targeted customers. So while we searched communications in 2018, there were few if any that were responsive to the document request.

Further, I am not sure why you think PNC_00056508 is contrary to the documents produced. In all but one instance regarding the entities you identify, the notes state that she will contact the companies in March when her covenants expired.

In short, PNC has complied with its discovery obligations. I am available however to discuss a number of issues early next week including SRSA's failure to produce documentation of SRSA's contingent consideration in its sale to Lovell Minnick as well as its complete failure to search for text messages while at the same time claiming in papers to the Court that PNC destroyed evidence by not producing text messages that may have existed prior to the existence of any litigation.

**Sarah B. Wallace**
Ballard Spahr LLP
1225 17th Street, Suite 2300
Denver, CO 80202-5596
Direct 303.299.7334
Fax 303.296.3956
wallaces@ballardspahr.com
www.ballardspahr.com

**From:** Michelle Ybarra
**Sent:** Thursday, November 14, 2019 11:30 PM
**To:** Petrie, Andrew J. (Denver) ; Wallace, Sarah B (Denver) ; Jacobs, Hara K. (Phila) ; Robbins, Noah (Phila)
**Cc:** ACQUIOM-KVP ; sheridan-srs@sheridanross.com
**Subject:** Compliance with October 17 Discovery Order

⚠ **EXTERNAL**

Counsel,

Pursuant to the Court's October 17 and October 30 orders on SRSA's motion to compel documents responsive to RFP 8, PNC was required to produce documents sufficient to show the identify of all potential or actual SRSA customers targeted by PNC for its competing program, the first date such customer was contacted, and the PNC employee who served as the primary contact. The deadline for PNC's compliance was November 8.

On November 8, PNC produced 26 documents purporting to show the first date it contacted SRSA customers, along with PNC_00056508, a spreadsheet that Ms. Kelly testified about in her deposition but which Defendants inexplicably failed to produce previously.

That spreadsheet reflects Ms. Kelly's notes about her targeting of SRSA customers and indicates she communicated with many of them in October 2018 or earlier. PNC failed to produce those communications in response to RFP 8, and instead produced *later* communications or none at all. This includes, but is not limited to, communications with the following entities that appear on SRSA's customer lists: Amdocs, Blackberry, Comcast, Express Scripts, IQVIA, Monotype Imaging, Salesforce, and Samsung.

PNC also failed to produce emails reflecting how and when PNC_00056508 was shared, even though the document's metadata shows that it was possessed by multiple PNC employees, and other documents indicate it was shared via email between Ms. Kelly and Mr. Tsarnas. See, e.g., PNC__00048457.

PNC's failure to comply with the Court's orders threatens to prejudice SRSA's preparation of its PI motion, due November 25.

Please confirm by close of business November 15 that PNC will (1) comply with the Court's orders and produce all documents responsive to RFP 8; and (2) produce all versions of PNC__00056508 and emails transmitting the same **by Monday, November 18**. Alternatively, provide a time you are available to call the Court on Monday.

Thanks,
Michelle

---

**Michelle S. Ybarra**
Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 676 2271 direct | 415 391 5400 main
mybarra@keker.com | vcard | keker.com