# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

      v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

---

## PLAINTIFFS' MOTION TO RESTRICT ACCESS ON A LIMITED BASIS AT PRELIMINARY INJUNCTION HEARING

---

Pursuant to Local Rule 7.2(c), Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively "Plaintiff" or "SRSA") hereby submit this Motion to Restrict Access on a Limited Basis at the Preliminary Injunction Hearing, set for March 11, 2020, before this Court. *See* ECF No. 180.

Despite extensive efforts to meet and confer with defense counsel regarding a protocol for closing the courtroom on a limited basis,[1] Defendants would not agree in advance to any procedure other than ad hoc (and potentially contested) requests to close the courtroom as the need arises during the hearing. This procedure would needlessly risk disclosure of SRSA's trade secret information in open court and would threaten considerable disruption to the proceedings.

---

[1] As detailed below, SRSA certifies that it has met and conferred extensively with opposing counsel as required by D.C.COLO.RCivR 7.1.

1373471

Instead, by way of this motion, SRSA requests that the Court adopt a protocol in advance of the Preliminary Injunction Hearing that will require both parties to present *documentary* evidence containing SRSA's trade secrets to a limited audience only (through closed-circuit publication), and to present any *oral argument or testimony* likely to disclose SRSA's trade secrets during closed portions of the proceedings. The requested protocol—described in further detail below— will limit courtroom closures to the bare minimum necessary to protect SRSA's trade secret information, while streamlining the process for closing the courtroom and limiting public disclosure of exhibits containing SRSA's trade secrets.

## I.   BACKGROUND

The March 11, 2020 Hearing on SRSA's Motion for Preliminary Injunction ("Preliminary Injunction Hearing") will require the parties to introduce into evidence and question witnesses regarding the trade secret information forming the core of SRSA's misappropriation allegations. In particular:

- SRSA alleges that Defendants misappropriated trade secret customer lists and confidential customer information. *See, e.g.*, ECF No. 86 at 14-17; ECF No. 145 at 2-4.  Proving likelihood of success of these allegations may require comparing the contents of different versions of those lists in a manner that discloses the identity and associated information of customers they contain. Defendants have argued in deposition testimony that specific individual customers on these lists are well-known in the industry, and may seek to discuss those individual customers at the hearing.

2

- SRSA alleges that Defendants misappropriated SRSA's Payments Spreadsheet, a non-public detailed spreadsheet with more than 100 selected data categories designed to elicit relevant information from various types of payees, in order to build Defendants' own Payments Spreadsheet. *See* ECF No. 86 at 17-19. SRSA will need to show one or more variations of the payment spreadsheets to witnesses.  Defendants claim that SRSA's Payments Spreadsheet is not a trade secret and may seek to elicit testimony about it from SRSA or PNC witnesses. *See* ECF No. 120 at 15-16.

- SRSA alleges that Defendants misappropriated its product development strategy trade secrets. *See* ECF No. 86 at 21-24. These allegations will require evidence describing the trade secret strategies themselves, why SRSA chose to pursue them, and what the individual defendants said and did at PNC to promote their adoption. Defendants have argued that these strategies are publicly available or readily ascertainable, *see* ECF No. 120 at 16-17, and thus will also likely seek to discuss them in open court.

- SRSA alleges that PNC misappropriated its pricing strategies. *See* ECF No. 86 at 19-20. As with SRSA's product development strategies, both parties' positions may require discussing the strategies themselves at the hearing.

- SRSA's irreparable harm claim will require presenting evidence of specific lost deals, which could disclose trade-secret customer information, even if the parties are careful not to identify the underlying deal parties by name.

3

1373471

This is not intended to be a complete summary of the ways in which SRSA's trade secrets could be disclosed at the hearing—nor could it be, absent a complete mutual disclosure of all evidence the parties intend to present.

SRSA met and conferred extensively with Defendants regarding SRSA's request to close the courtroom on a limited basis. On February 25, on a telephonic meet and confer, Defendants asked SRSA to provide a written proposal for how it would seek to close the courtroom. On February 29, SRSA provided a detailed proposal. On March 1, Defendants rejected SRSA's proposal, stated they would not agree to a joint request unless SRSA identified "specific exhibits or specific numbers or words within exhibits that would require closing a public courtroom," and suggested that they would agree to close the courtroom for those specific exhibits/numbers/words only "if a foundation for trade secret status is present." *See* Ex. 1.

On March 2, the parties met and conferred telephonically per SRSA's request. SRSA asked Defendants to provide any authority supporting the request to identify, in advance, each specific exhibit/number/word that would be subject to restricted access at the hearing. Defendants provided four authorities,[2] none of which support Defendants' position. SRSA also explained that Defendants' request was overbroad (as some exhibits could potentially be discussed without disclosing their trade secrets contents), incomplete (since trade secrets could

---

[2] *See* D.C.COLO.LCivR 7.2(c)(requiring moving party to "identify *the document or the proceeding* for which restriction is sought" (emphasis added)); *In re Avandia Mktg., Sales Practices & Prod. Liab. Litig.*, 924 F.3d 662, 679 (3d Cir. 2019)(discussing need for parties to make detailed sealing request in connection with summary-judgment *papers*, not a hearing); *Union Oil Co. of Cal. v. Leavell*, 220 F.3d 562, 567 (7th Cir. 2000)(discussing only the sealing of briefs and pleadings in a litigation, not live testimony); *Dumas v. Warner Literary Grp., LLC*, No. 16-cv-00518-NYW, 2016 WL 10879217, at *1 (D. Colo. Mar. 11, 2016)(discussing only the sealing of a Complaint, not a court proceeding).

1373471

be disclosed by live testimony in addition to documents), and extremely burdensome (as the parties' joint exhibit list currently contains over 500 exhibits, more than 200 of which are uniquely Defendants'). On March 3, in hope of reaching a compromise, SRSA provided Defendants a revised written proposal with specific examples of the type of trade secret information for which SRSA would seek closure. Later that day, Defendants again refused to join SRSA's request and stated that Defendants preferred to address requests to close the courtroom during the proceedings as the need arises.

## II.     ARGUMENT

To show a likelihood of success on its trade-secret misappropriation claims, SRSA will need to establish the trade secrets that are at issue, why they qualify as such, and that Defendants misappropriated them. As explained above, this showing will likely require discussion of at least some SRSA trade-secret information. *See BP Am. Prod. Co. v. Hamer*, No. 19-cv-03581-CMA-STV, 2019 WL 7049990, at *2 (D. Colo. Dec. 23, 2019) (closing PI hearing in trade secrets case because "[p]laintiff must show, *inter alia*, a substantial likelihood of success on the merits of its case . . . which entails a description of what the trade secrets are"). Accordingly, SRSA seeks to close the courtroom on a limited basis during the preliminary injunction hearing.

Local Civil Rule 7.2(c) sets forth the requirements for a motion seeking to restrict public access to judicial records and proceedings. In addition to identifying the "proceeding for which restriction is sought," the motion must (i) "address the interest to be protected and why such interest outweighs the presumption of public access"; (ii) "identify a clearly defined and serious injury that would result if access is not restricted"; (iii) "explain why no alternative to restriction

5

is practicable or why only restriction will adequately protect the interest in question"; and (iv) "identify the level of restriction sought." D.C.COLO.LCivR 7.2(c).

This motion seeks to protect SRSA's interest in maintaining the secrecy of its trade secrets, and to avoid the serious injury of losing the economic value of those secrets if they were to be publicized. *See In re Iowa Freedom of Info. Council*, 724 F.2d 658, 662 (8th Cir. 1983) ("[T]rade secrets are a peculiar kind of property" and "[t]heir only value consists in their being kept private[.]"); C.R.S. §§ 7-74-102(4), 7-74-106 (Trade secret owners must use "reasonable means" to protect the secrecy of their alleged trade secrets during litigation.). This interest outweighs the presumption that judicial proceedings should be open to the public. *See also Iowa Freedom*, 724 F.2d at 664 ("[T]rade secrets partake of the nature of property, the value of which is completely destroyed by disclosure. Where only private commercial interests or damage are involved, we think the law justifies the steps taken by the District Court to [close portions of the hearing and] avoid the destruction of these property rights."); *BP Am. Prod. Co. v. Hamer*, No. 19-cv-03581-CMA-STV, 2019 WL 7049990, at *2 (D. Colo. Dec. 23, 2019) (holding that a "[p]laintiff's right to maintain the secrecy of its proprietary information outweighs the public's right to access judicial proceedings and related documents[,]" and listing cases). Indeed, the Defend Trade Secrets Act and the Colorado Uniform Trade Secrets Act both require courts to take reasonable measures to prevent disclosure of the alleged trade secrets during a misappropriation suit.[3]

---

[3] *See* 18 U.S.C.A. § 1835(a)("In any prosecution or other proceeding under this chapter, the court shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets . . . ."); C.R.S. § 7-74-106 ("In an action under this article, a court shall preserve the secrecy of an alleged trade secret by reasonable means . . . .").

6

1373471

For these reasons, courts in this District have closed the *entirety* of preliminary injunction proceedings in trade secrets cases. *See, e.g.*, *B.P. Am.*, 2019 WL 7049990, at \*2 ("[A]ccess to the hearing regarding [p]laintiff's motion for preliminary injunctive relief on December 23, 2019, will be limited to Court personnel and the parties (along with their attorneys, agents, representatives, and witnesses), and exhibits proffered as [p]laintiff's trade secrets shall be admitted into evidence under Level 2 restriction."); *SBM Site Servs. LLC v. Garrett*, No. 10-CV-00385-WJM-BNB (D. Colo. March 25, 2011) (filed as Exhibit 2) (closing entire preliminary-injunction hearing); Ex. 3 (March 21, 2011 *SBM* Motion to Close Courtroom Proceedings). However, recognizing the presumption in favor of public access to Court proceedings, SRSA requests that the Court order only the following limited restrictions:

1.  The courtroom will be closed to the public only during portions of oral argument and witness testimony that disclose information SRSA has alleged is a trade secret.

2.  The parties must use best efforts to provide argument and evidence without disclosing SRSA's alleged trade-secret information, and to minimize both the number of times, and the duration of time that the hearing will be closed.

3.  In particular, for each opening statement, closing statement, and witness examination, the parties must use best efforts to group together all portions of the statement or examination (if any) that will disclose, or threaten disclosure of, SRSA's alleged trade secret information, with the goal of closing the courtroom, at most, only once per statement or examination. For SRSA's presentation, this will include at least the following:

7

      a.   A portion of Paul Koenig's direct examination, which will explain the trade secrets at issue and their value to SRSA;

      b.   A portion of Benjamin Lane's direct examination, which will discuss deals that SRSA has lost as a result of the alleged misappropriation;

      c.   A portion of the cross-examination of Heather Kelly, which will address the specific information that Ms. Kelly misappropriated;

      d.   A portion of SRSA's closing statement, which will summarize key evidence showing that SRSA's alleged trade secrets qualify as such, and that Defendants misappropriated them.

4.  All exhibits that have been previously filed under "Level 1" or "Level 2" restriction, or that were designated "Highly Confidential – Attorneys' Eyes Only" under the Stipulated Protective Order (ECF No. 40), should initially be publicized only to court personnel, the parties' counsel, the parties' corporate representatives, and the witness (by, for example, limiting publication to only those monitors that display an exhibit offered at trial before it is admitted into evidence), so that SRSA has the opportunity to object prior to their publication in open court.

5.  All parties, witnesses, and corporate representatives must maintain the confidentiality of information that is disclosed in (a) exhibits not publicized in open court, and/or (b) testimony presented during closed portions of the proceedings.

6.  All exhibits introduced during the hearing that have previously been filed with the Court shall tentatively be designated with the same Restriction Level (1 or 2), if any, as when previously filed, and such designations shall be subject to the Court's ruling

1373471

on the pending motions to seal. For any exhibit introduced at the preliminary

injunction hearing not previously filed, the exhibit should preliminarily be restricted

as Level 1 or Level 2 based on whether the producing party designated it either

"Confidential" or "HC-AEO" respectively, and such preliminary designation shall be

subject to either party filing a motion to seal within 14 days of the hearing pursuant to

Local Civil Rule 7.2(c).

No alternative, other than restricting access to SRSA's trade secret information in

advance, as described above, would adequately protect SRSA's interest in the secrecy of its trade

secrets. *See ClearOne Commc'ns, Inc. v. Bowers*, 509 F. App'x 798, 802 (10th Cir. 2013)

(reasoning that, in "a trade secrets case[,] public dissemination of certain information [will] have

defeated the whole point of the suit."). The alternative proposed by Defendants—ad hoc requests

to close the courtroom—creates the risk that SRSA's trade secrets will be disclosed in open court

before SRSA can request closure. This risk is exacerbated by Defendants' refusal, during the

meet and confer process, to waive the argument that disclosure of SRSA's trade secret

information during the PI hearing could *itself* form a basis to challenge the trade-secret status of

that information. *See* Ex. 1. Consequently, SRSA can *only* protect its trade secrets by seeking

*advance* restriction of their disclosure.

Advance restriction will also streamline the proceedings considerably. Defendants'

alternative approach could require SRSA to interrupt Defendants' witness examinations if open-

ended questions potentially call for the disclosure of trade secret information. And any argument

over such ad hoc requests will eat into the parties' limited time to present evidence and argument

to the Court.

1373471

Lastly, advance restriction of portions of the hearing, or portions of individual witnesses' testimony, is consistent with orders from other trade secrets cases where courts have attempted to use the least restrictive means available to close the courtroom. *See, e.g.*, *Paradigm All., Inc. v. Celeritas Techs., LLC*, No. 07-cv-1121-EFM, 2009 WL 10690040, at \*1 (D. Kan. Dec. 1, 2009) (closing court during trade secret trial "during such portion of Mr. Brunett's testimony which directly involves confidential trade secrets"); *CDA of Am. Inc. v. Midland Life Ins. Co.*, No. 01-CV-837, 2006 WL 5349266, at \*13 (S.D. Ohio Mar. 27, 2006) (granting in part motion to close courtroom during trade secrets trial, but limiting closure to "portions of the trial in which parties testify as to what they allege to be a 'trade secret'").

## III.    CONCLUSION

For the reasons set forth above, SRSA requests that the Court grant its Motion to Restrict Access on a Limited Basis at the Preliminary Injunction Hearing.

//

//

//

10

1373471

Respectfully submitted,

Dated:  March 4, 2020

By: *s/ Benjamin D. Rothstein*
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Victor H. Yu
*vyu@keker.com*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:        415-391-5400
Facsimile:        415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
*sbialecki@sheridanross.com*
Matthew C. Miller
*mmiller@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:        303 863 9700
Facsimile:        303 863 0223
Email:     *litigation@sheridanross.com*

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

### Compliance With Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.

11

1373471