IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

       Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

       Defendants.

**DEFENDANTS' OPPOSITION TO MOTION TO RESTRICT ACCESS ON A LIMITED BASIS TO PRELIMINARY INJUNCTION HEARING**

## I.    INTRODUCTION

At the scheduling conference setting this matter for hearing, the Court expressed the view that sealing of the courtroom is to be avoided if possible. Trade secret cases are routinely tried with an open courtroom through procedures such as early and specific identification of potentially sensitive documents and well-crafted examinations that may refer to documents or information without testifying in detail or projecting the exhibits. Defendants PNC Financial Services Group, Inc., PNC Bank, N.A., Heather Kelly, and Alex Tsarnas ("Defendants" or "PNC") therefore offered to review documents or proposed testimony that were identified by Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC ("Plaintiffs" or "SRSA") as containing particularly sensitive information. Plaintiffs declined and instead filed a motion to restrict (Doc. 190) that seeks to impose far-reaching limitations on who might attend the hearing, as well as the order and presentation of evidence and argument. Although SRSA asserts these drastic measures are necessary to protect their alleged trade secrets, their motion

1

does not identify the nature of these alleged secrets, the clear and specific injury that would result from disclosure, or why far less restrictive measures would not suffice. SRSA has not satisfied the requirements of this Court's D.C.Colo.LCivR. 7.2 regarding motions to restrict, nor shown that their broad request based on numerous unspecified documents overcomes the strong presumption of public access to court proceedings that is rooted in the common law and in the U.S. Constitution. Thus, plaintiffs' motion should be denied.

## II. BACKGROUND

In late February 2020, approximately two weeks before the preliminary injunction hearing, the parties met and conferred regarding plaintiffs' request to close the courtroom for portions of the hearing. *E.g.*, ECF 190-1. To consider SRSA's request, PNC requested that SRSA identify specific documents subject to plaintiffs' request and a proffer of testimony that it believed required the extreme step of closing the courtroom. PNC stated it was difficult "to address this in the abstract," *id.*, p. 2, rather than on a document-by-document basis.

Plaintiffs declined to do so, suggesting it would be impossible given the "volume of exhibits." *Id.*, p 4. SRSA had the parties' joint exhibit list for more than a week and the parties' preliminary injunction filings for several months. Nevertheless, PNC's counsel assured plaintiffs' counsel that "PNC and its counsel will act in good faith and as officers of court and with a willingness to discuss specific testimony in advance of it being offered." *Id.*, p. 2. Plaintiffs' motion followed.

## III. LEGAL STANDARD

In the Tenth Circuit, as in federal courts across the country, "[l]awsuits are public events." *M.M. v. Zavaras*, 139 F.3d 798, 803 (10th Cir. 1998); *see also M.M. v. Zavaras*, 939 F.

Supp. 799, 801 (D. Colo. 1996) ("secret court proceedings are anathema to a free society"). There is a strong "presumption that trial proceedings will be open," and "[r]equests to exclude the public from trial of a case or parts thereof are granted only in extraordinary circumstances." *Mike v. Dymon*, 1997 WL 38111, at *1 (D. Kan. Jan. 23, 1997) (requiring "overriding interest" to overcome presumption); *see also In re Avandia Mktg., Sales Practices & Prods. Liab. Litig.*, 924 F.3d 662, 672 (3d Cir. 2019) ("strong presumption of openness does not permit the routine closing of judicial records to the public"). As SRSA acknowledges, this presumption applies fully in the context of SRSA's motion for preliminary injunction. *In re Avandia*, 924 F.3d at 672 (presumption applies to "pretrial motions of a nondiscovery nature, whether preliminary or dispositive, and the material filed in connection therewith.").

As numerous courts have explained, the presumption of public access is vital to the fundamental integrity of court proceedings:

> The tradition that litigation is open to the public is of very long standing. People who want secrecy should opt for arbitration. When they call on the courts, they must accept the openness that goes with subsidized dispute resolution by public (and publicly accountable) officials. Judicial proceedings are public rather than private property, and the third-party effects that justify the subsidy of the judicial system also justify making records and decisions as open as possible. What happens in the halls of government is presumptively public business …. Any step that withdraws an element of the judicial process from public view makes the ensuing decision look more like fiat, which requires compelling justification.

*Union Oil Co. of California v. Leavell*, 220 F.3d 562, 567-68 (7th Cir. 2000) (citations omitted); *see also Lanphere & Urbaniak v. State*, 21 F.3d 1508, 1511 (10th Cir. 1994) ("[The right of access to court documents] is an important aspect of the overriding concern with preserving the integrity of the … judicial process[]."); *Otter Prods. v. Seal Shield*, 2014 WL 1213475, at *7 (D. Colo. 2014).

3

Although SRSA gives short-shrift to this principle, it is well-settled that the right of access in cases involving alleged "trade secrets" can be overcome only in narrow circumstances. *See Fed. Open Mkt. Comm. of Fed. Reserve Sys. v. Merrill*, 443 U.S. 340, 362 (1979) ("courts have not given trade secrets automatic and complete immunity against disclosure, but have in each case weighed their claim to privacy against the need for disclosure"); *Union Oil*, 220 F.3d at 567 ("Litigation about trade secrets regularly is conducted in public; the district court seals only the *secrets* (and writes an opinion omitting secret details); no one would dream of saying that every dispute about trade secrets must be litigated in private."); *Joy v. North*, 692 F.2d 880, 894 (2d Cir. 1982) (rejecting motion to seal report that contained alleged trade secrets); *Holland v. GMAC Mortg.*, 2004 WL 1534179, at *2 (D. Kan. June 30, 2004) ("requests by parties to close the courtroom to certain individuals during the presentation of confidential or trade secret information are treated with disfavor and are generally granted only in extraordinary circumstances").  The party seeking to overcome the presumption must demonstrate that "the public's right of access is outweighed by interests which favor nondisclosure." *Otter Prods.*, 2014 WL 1213475, at *7; *see also Mike*, 1997 WL 38111, at *1 ("The presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest").[1]

These principles are reflected in D.C.Colo.LCivR 7.2, which governs motions to restrict access.  "Local Rule 7.2(c) is quite clear that a party seeking to restrict access must make a multi-part showing.  It must: (1) identify the specific document for which restriction is sought;

---

[1] Plaintiffs attempt to distinguish these authorities because some of the cases involve documents under seal, as opposed to proceedings.  The distinction is meaningless.  If anything, there is an "especially strong" right of access to evidence used at trial or a substantial hearing on the merits. *Cf. U.S. v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995).

(2) identify the interest to be protected and the reasons why that interest outweighs the presumption of public access; (3) identify a clear injury that would result if access is not restricted; and (4) explain why alternatives to restricted access—such as redaction, summarization, stipulation, or partial restriction—are not adequate." *Dumas v. Warner Literacy*, 2016 WL 10879217, at *1 (D. Colo. 2016).  "[P]arties should not routinely or reflexively seek to seal materials upon which they predicate their arguments for relief[.]" *Lucero v. Sandia*, 495 F. App'x 903, 913 (10th Cir. 2012).  SRSA has not met its burden under the common law, U.S. Constitution, or Local Rules here.

IV.  **ARGUMENT**

   **A. Invoking the Talismanic Term "Trade Secrets" Does Not Automatically Justify the Closure of the Preliminary Injunction Hearing.**

Plaintiffs' motion to substantially restrict access to the preliminary injunction hearing implicates – and fails to overcome – the well-settled presumption of public access.  At the outset, plaintiffs assert the courtroom should be closed whenever information it claims to be a trade secret is discussed.  ECF 190 at 2-3, 8.  Yet, the heart of SRSA's allegations, which PNC disputes, is that PNC misappropriated purported trade secrets.  This fact, coupled with SRSA's over-designation of documents, discussed *infra*, would result in the closure of a large portion of the preliminary injunction hearing, which only raises SRSA's burden required to justify limiting access.  *See, e.g.*, *Huminski v. Corsones*, 396 F.3d 53, 86 (2d Cir. 2005) ("The quantum of prejudice that the movant must show increases the more extensive the closure sought would be."); *Joy*, 92 F.2d at 894 (because report alleged to contain trade secrets was "the basis for the adjudication, only the most compelling reasons can justify the total foreclosure of public and professional scrutiny").

While it is true that, in appropriate circumstances, the "[p]otential damage from release of trade secrets can be a legitimate basis for … restricting public access during trial," *Encyclopedia Brown Productions. v. Home Box Office*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998), the proponent of such measures must establish that the information is in fact a trade secret. SRSA's motion fails to do so. Instead, SRSA's motion is premised upon the unfounded *assumption* that large swaths of documents are "trade secrets." ECF 190 at 2-3. Aside from saying it is so, plaintiffs have not articulated with *any* specificity the nature of the purported trade secrets they vaguely reference. *See* D.C.Colo.LCivR 7.2(c). Even beyond alleged "customer lists," "detailed spreadsheets," and "product development strategies" – none of which is a true trade secret (*see, e.g.*, ECF 120 at 12-18) – SRSA's motion refers in broad strokes to unspecified "customer information" or "deals" that possibly "could" be revealed in hypothetical testimony. ECF 190 at 2-3, 8. SRSA does not describe any of this theoretical information with the necessary specificity. *E.g.*, *Green Mountain Chrysler Plymouth v. Crombie*, 2007 WL 922255, at *7 (D. Vt. 2007) ("Review of the documents and testimony themselves is essential" and directing movant "to submit for *in camera* review, each item for which they seek protection from disclosure at trial"); *Mike*, 1997 WL 38111, at *1-2 (requiring memoranda and affidavits stating "specifically how the material is the kind of information that courts will protect, that there is good cause for the order to issue, and that the showing of good cause overcomes the presumption of open trials").

Merely invoking the phrase "trade secret" as a talismanic term or otherwise labeling information "non-public" – as plaintiffs do here – is plainly inadequate to overcome the right of access. *E.g.*, *Fed. Open Mkt. Comm.*, 443 U.S. at 362 (1979); *Crombie*, 2007 WL 922255, at *5 (holding "there is no absolute right to protect trade secrets from disclosure"); *In re Iowa Freedom of Info. Council*, 724 F.2d 658 (8th Cir. 1983) (rejecting blanket rule that would require

closure of the courtroom in every case involving trade secrets). SRSA has not made the foundational showing needed to overcome the strong presumption of public access.

Further, as Local Rule 7.2 recognizes, it is not enough that SRSA *itself* has designated documents as "Attorney's Eyes Only" in discovery or prior filings.[2] "Although the Court signed a protective order sealing the parties' written submissions, that fact does not imply that the hearing on those submissions should be closed." *Barr Labs. v. KOS Pharm.*, 362 F. Supp. 2d 421, 424 (S.D.N.Y. 2005); *Crombie*, 2007 WL 922255, at *6; *Joy*, 692 F.3d at 893 (matters under seal in discovery face different considerations in adjudication-phase). The extraordinary step of closing the courthouse doors to the public is entrusted to the Court, not the parties.

Plaintiffs also do not acknowledge that their motion relates to a preliminary injunction, an "extraordinary and drastic remedy" that "frequently requires the court to address the merits of a case, which often includes the presentation of substantial evidence," and for which the right of access is particularly strong. *Ctr. for Auto Safety v. Chrysler*, 809 F.3d 1092, 1098-1103 (9th Cir. 2016) (request to seal documents relating to preliminary injunction subject to "compelling reasons" standard); *Publicker Indus. v. Cohen*, 733 F.2d 1059, 1066-71 (3d Cir. 1984) (applying presumption of public access to hearing for a preliminary injunction and transcripts of same). The need to consider the interests at stake is acute given the posture of plaintiffs' request.

---

[2] Incredibly, SRSA designated 93% of its entire production as "Attorneys' Eyes Only," necessitating Defendants having to seek relief from the Court and accurately predicting the disorder and confusion that it would cause. *See, e.g.*, ECF 56, p. 7 n.6 (presaging that "Over-designation is going to come to a head at the preliminary injunction hearing, where ostensibly SRSA is going to take the position that PNC principals cannot attend the hearing.")

### B. SRSA Has Not Met Its Burden to Show that a Clearly Defined and Serious Injury Would Result from Disclosure.

Beyond plaintiffs' failure to show that *any* of the information at issue is a trade secret, plaintiffs also have not described (beyond a speculative level) the clearly defined and serious injury that would result from disclosure – another requirement under Local Rule 7.2. This showing, too, must be made with specificity and cannot rest on vague allegations. *E.g.*, *Encyclopedia Brown*, 26 F. Supp. 2d at 612-13 ("vague and conclusory allegations" of harm "will not suffice" to seal trial testimony regarding alleged trade secrets). Disregarding this requirement, SRSA asserts in conclusory fashion that broad-scale closure of the hearing may be justified "to avoid the serious injury of losing the economic value of those secrets if they were to be publicized." ECF 190 at 6. Despite the magnitude of their request, SRSA does not specify the nature of this alleged injury or the economic value at stake. This is not enough.

Courts have routinely denied motions to close the courtroom in cases involving alleged trade secrets that are premised on exactly the same arguments as those made by SRSA here. In *Barr*, plaintiffs moved to close the courtroom for a preliminary injunction motion hearing because, as SRSA argues here, "highly sensitive, confidential business and trade secret information of both parties will be discussed." 362 F. Supp. 2d at 422. In holding that plaintiffs had not shown any overriding interest to justify their request, the court observed that:

> [T]he Court must consider claims asserted by two private parties to maintain the confidentiality of alleged trade secrets—an interest of, at best, arguable constitutional underpinnings. Those interests must be weighed against the right of the public to open courtroom proceedings for adjudication of civil disputes, especially controversies in which public interests may be at stake—an interest which does indeed find incontestable grounding in constitutional protections of free speech. In such a conflict there can be no room for doubt as to which interests are the more compelling and thus whose rights must prevail…. [T]he parties here chose a quintessentially public forum to air and resolve their differences. If risks inhere in such a course of action, if the parties fear what judicial proceedings may reveal

8

about their private or business affairs, the consequences must be borne by the litigants, not by the public.

*Id.* at 423.

In *Crombie*, the Court addressed a motion to close the courtroom for portions of a trial involving anticipated testimony regarding the plaintiffs' alleged secret product plans, analysis and financial information. 2007 WL 922255, at *2. The court observed that such a request "challenges one of the most vital principles upon which our judicial system is founded: the presumption of public access." *Id.* at *2, *5. Rather than granting the far-flung relief that the plaintiff – like SRSA here – sought, the court directed the parties to submit for *in camera* review "each item for which they seek protection from disclosure at trial, the portion that they wish redacted or sealed, along with an explanation of the information's value to the company and/or its competitors, and the extent to which the information is available or known outside the company." *Id.* at *7.

Notably, none of the cases SRSA cites in support of its motion suggests any different outcome. SRSA's principal cited authority is *BP America Production Co. v. Hamer*, 2019 WL 7049990 (D. Colo. 2019), which involved a motion to restrict access to a preliminary-injunction hearing that was not opposed on the papers. *Id.* at *1. There, plaintiffs identified specific documents that included confidential source code and production data and noted that witnesses "will necessarily have to disclose trade secret details in explaining for the Court the nature of what Defendants … were working on (*e.g.*, non-public research and development projects)." *Id.* at *2. Based on that specific showing, the court limited access to the hearing to "Court personnel and the parties (along with their attorneys, agents, representatives, and witnesses)" – less relief than SRSA seeks here. *Id. BP America* addressed very different facts than those here, where

9

SRSA seeks to broadly limit access to the courtroom and dictate the manner in which PNC presents evidence and argument.

Likewise, plaintiffs' reliance on a docket entry setting forth the minutes of a preliminary injunction hearing in *SBM Site Services v. Garrett*, No. 10-cv-00385-WJM-BNB (D. Colo.) (ECF 385) (attached as ECF 190-2) is without substance.  The plaintiffs' request to close the courtroom proceedings was "granted for reasons stated on the record," which were not provided. *Id.* at 2.  Little meaningful analysis is offered in *CDA of America, Inc. v. Midland Life Insurance Co.*, 2006 WL 5349266 (S.D. Ohio 2006), a non-precedential case that, in partially granting and partially denying a motion to close the courtroom, noted, without elaboration, that "both parties' arguments [are] well-taken." *Id.* at *13.  And, the *In re Iowa Freedom Council* court clarified that "[w]e do not wish to be understood as announcing a rule that the presence of trade secrets will in every case and at all events justify the closure of a hearing." 724 F.2d at 664.

### C. SRSA's Far-Reaching Request to Dictate the Manner of PNC's Presentation of Argument and Evidence Does Not Reflect the Least Restrictive Means.

Even assuming that SRSA had met its burdens to show the interest to be protected outweighs the strong presumption of public access and the clear and serious injury that would result (neither of which is satisfied, as described above), Local Rule 7.2 also requires the movant to "explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question." D.C.Colo.LcivR 7.2(c)(4).  Plaintiffs have not satisfied this requirement, either.

Although SRSA portrays its motion as seeking only "limited restrictions" (*e.g.*, ECF 190 at 1, 7), that is far from true.  At the outset, SRSA's apparent inability to identify any specific documents at issue – from among the 500 documents on the parties' joint exhibit list – is fundamentally contrary to any claim that its request is "limited." *Id.* at 4-5 (discussing conferral

10

efforts).  Nevertheless, PNC does not oppose SRSA' fourth proposal point – that exhibits previously filed under "Level 1" or "Level 2" restriction, or that were designated "Highly Confidential – Attorneys' Eyes Only" under the Protective Order "should initially be publicized only to court personnel, the parties' counsel, the parties' corporate representatives, and the witness" to provide SRSA with a pre-publication opportunity to object.  *Id.* at 8.  Indeed, it is unclear that any allegedly sensitive exhibits need to be publicized at all versus available in paper.  PNC further agrees that its fact witnesses, other than the individual defendants and the designated representatives of the two corporate defendants, will be excluded from the courtroom until they testify.  Such measures would amply resolve any potential concerns SRSA has about its alleged trade secrets.  To the extent other "protections" regarding live testimony are needed, as SRSA itself has noted, it would be both "overbroad" and "incomplete" to attempt to address them preliminarily via "advance restriction," ECF 190 at 4, 9; rather, those issues, if any, can be raised and addressed during the proceeding itself.[3]

However, SRSA does not stop there but, instead, proposes other far-reaching measures that appear aimed at dictating PNC's strategy (such as how PNC should be required to "group" its discussion of alleged trade secrets in both argument and testimony) and would result in recurrent "ad hoc" closure of the courtroom, including throughout (a) opening statements, (b)

---

[3] SRSA also suggests, with no basis whatsoever, that its extreme proposals are necessary because PNC "refus[ed], during the meet and confer process, to waive the argument that disclosure of SRSA's trade secret information during the PI hearing could *itself* form a basis to challenge the trade-secret status of that information." ECF 190 at 9.  While PNC does not believe that any of the alleged trade secrets or confidential information is a true trade secret, it expressly assured SRSA that PNC will not engage in "gamesmanship" and "will act in good faith and as officers of [the] court." ECF 190-1, p. 2.  Rather, PNC observed that testimony or disclosure could come in many different forms on different subjects (and provided examples) and that this was hard to decide in the abstract.  SRSA's suggestion otherwise disregards the parties' *actual* exchanges and merely demonstrates how far afield their requests are.

direct and cross-examinations of numerous witnesses, (c) unspecified "oral argument," and (d) closing statements. *Id.* at 7-8. As discussed, closing the courtroom, even in trade secret cases, is an extreme remedy that should be used only as a last resort, not prophylactically. SRSA has not explained why less restrictive measures are insufficient. It is unclear, for example, why examining attorneys could not structure their questions in a manner to avoid eliciting the alleged confidential information. *See, e.g., Barr Labs.*, 362 F. Supp. 2d at 424 (closure unnecessary where "issues presented in this hearing may be argued adequately without disclosure of trade secrets or … confidential business information").

PNC has no practical ability to comply with SRSA's proposals, even if they were appropriately tailored given that SRSA's motion relies on vagaries such as "strategies" and "deals."[4] PNC requested that SRSA identify the documents at issue, as required, not as a hypertechnicality but because that information is essential so the Court can enter appropriate findings and provide clear direction to the parties. As SRSA has identified no authority (addressing a motion to limit access or otherwise) endorsing the broad closure sought here or that would permit a plaintiff to direct the order or content of the defendant's presentation of evidence and argument, plaintiffs' motion should be denied.

## V.     CONCLUSION

For the reasons stated herein, because SRSA has not satisfied the requirements of Local Rule 7.2, or made the necessary showing to rebut the strong presumption of open proceedings, plaintiffs' motion to restrict access should be denied.

---

[4] Further, if plaintiffs' motion is meant to encompass every document they have designated "Attorneys' Eyes Only," then the restriction sought is neither "limited" nor the "least restrictive means," but, instead, would be extremely broad and likely require the courtroom to be closed for vast portions of the proceeding. Plaintiffs have offered no justification for this far-reaching request.

**Compliance With Type-Volume Limitation**

Undersigned counsel certifies that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

Dated: March 9, 2020

By: */s/ James F. Bennett*
James F. Bennett
Matthew E. Johnson
**DOWD BENNETT LLP**
1775 Sherman Street, Suite 2010
Denver, Colorado 80203
Telephone: 303-353-4361
Facsimile: 314-863-2111
jbennett@dowdbennett.com
mjohnson@dowdbennett.com

Hara K. Jacobs
Noah S. Robbins
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215-668-8500
Facsimile: 215-864-8999
jacobsh@ballardspahr.com
robbinsn@ballardspahr.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March, 2020, a true and correct copy of the foregoing **DEFENDANTS' OPPOSITION TO MOTION TO RESTRICT ACCESS ON A LIMITED BASIS TO PRELIMINARY INJUNCTION HEARING** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Warren A. Braunig
Benjamin D. Rothstein
Michelle Ybarra

Victor H. Yu
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

Scott R. Bialecki
Matthew C. Miller
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202

*Attorneys for Plaintiffs SRS Acquiom Inc., a Delaware corporation and Shareholder Representative Services LLC, a Colorado limited liability company*

　　　　　　　　　　　　　　　　　　　　　　　*/s/ Jessica Green*