**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., and
SHAREHOLDER REPRESENTATIVE SERVICES LLC,

    Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC.,
PNC BANK, N.A.,
HEATHER KELLY, and
ALEX TSARNAS,

    Defendants.

## ORDER DENYING MOTION TO DISMISS

This is a trade secrets case. Plaintiffs SRS Acquiom, Inc. and Shareholder Representative Services, LLC (collectively, "SRSA" or Plaintiffs) employed Defendants Heather Kelly and Alex Tsarnas in senior management positions until March 2018, when Ms. Kelly and Mr. Tasrnas left SRSA to join Defendants PNC Financial Services Group, Inc. and PNC Bank N.A. (collectively, "PNC"). During Ms. Kelly's and Mr. Tsarnas's tenure there, SRSA developed a suite of products that facilitate the payments-and-escrow process for complicated corporate mergers and acquisitions. SRSA alleges that Ms. Kelly and Mr. Tsarnas misappropriated SRSA's trade secrets, proprietary information, and customers to help PNC create a competing payments-and-escrow product—PNCD Paid—in a mere twelve months.

Before the Court is Defendants' motion to dismiss the newly asserted claims in Plaintiffs' second amended complaint. *See* Doc. 106, Mot. to

Dismiss New Claims Asserted in Sec. Am. Compl. ("Mot."). After careful review of the parties' respective positions, the Court **DENIES** the motion.

## BACKGROUND

This case centers on Heather Kelly's and Alex Tsarnas's departure from their former employer, SRSA, to join of SRSA's competitor, PNC. Doc. 66, Second. Am. Compl. ¶¶ 1–6.[1] SRSA is a company that assists in mergers and acquisitions by operating, among other products, an "online platform that facilitates payments to shareholders" during and after a corporate merger or acquisition. *Id.* ¶ 7. PNC is a national banking association based in Pittsburgh. *Id.* ¶ 11. From June 2014 to March 2018, Ms. Kelly was employed as Senior Vice President and Relationship Manager at SRSA. *Id.* ¶ 13. From September 2014 to January 2018, Mr. Tsarnas was employed as Managing Director of Global Business Development at SRSA. *Id.* ¶ 14. In March 2018, Ms. Kelly and Mr. Tsarnas left SRSA and joined PNC to help PNC develop an online payments-and-escrow product that competes directly with SRSA's online payments-and-escrow product. *Id.* ¶¶ 2–4.

In brief, Plaintiffs allege that Ms. Kelly and Mr. Tsarnas took SRSA's trade secrets to PNC. This alleged misappropriation aided PNC in developing its competing product. *Id.* ¶¶ 1–6. According to the complaint, PNC premiered its competing product in 2019 after a mere twelve months of development, as compared to SRSA's six years of development for its payments-and-escrow product. *Id.* ¶¶ 69–71.

---

[1] For purposes of deciding Defendants' motion to dismiss, the Court accepts the allegations in the second amended complaint as true. *See Sylvia v. Wisler*, 875 F.3d 1307, 1313 (10th Cir. 2017).

Plaintiffs filed the instant action on July 11, 2019 for damages and to enjoin the use of their trade secrets. Doc. 1. They filed an amended complaint one day later, *see* Doc. 12, and the second amended complaint, which is the operative pleading, on November 22, 2019, *see* Doc. 66. In the second amended complaint, Plaintiffs assert claims for misappropriation of trade secrets under the federal Defense of Trade Secrets Act and the Colorado Uniform Trade Secrets Act, breach of contract for breach of the confidentiality and non-solicitation provisions in Ms. Kelly's and Mr. Tsarnas's SRSA contracts, intentional interference with contractual relations, Colorado unfair competition, violation of the federal Computer Fraud and Abuse Act, intentional interference with prospective economic advantage, and breach of the duty of loyalty by Ms. Kelly. *Id.* ¶¶ 124–99.

## DISCUSSION

Defendants now move to dismiss the newly asserted claims in the second amended complaint: that Ms. Kelly breached the non-solicitation agreement in her contract; that PNC and Ms. Kelly committed intentional interference with prospective economic advantage; and that Ms. Kelly breached her duty of loyalty. The Court addresses each challenged claim in turn and concludes that dismissal is improper.

### I. Legal Standard

Dismissal is appropriate if the complaint fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). Under Rule 12(b)(6), at the pleading stage, all allegations of material fact in support of the claims must be accepted as true. *Wilson v. Montano*, 715 F.3d 847, 850 (10th Cir. 2013). To survive such a motion, a complaint must contain sufficient factual matter to "state a claim to relief that is plausible on its

face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

## II. The Claim Breach of the Non-Solicitation Agreement

Plaintiffs' fourth cause of action alleges that Ms. Kelly violated the non-solicitation clause in her employment contract with SRSA:

> During and for a period of one year after termination [] of my employment with [SRSA], I will not directly solicit or take away suppliers, customers, employees or consultants of [SRSA] other than those set forth on Schedule 1 below for my own benefit or for the benefit of any other party.

Second Am. Compl., Exhibit B, at 10, ¶ 17. Plaintiffs allege that Ms. Kelly violated this provision—and thus breached her contract—by soliciting SRSA employees, Ali Bryson, Amanda Jackson, Luda Semenova, and Lisa Kremers, and SRSA customers. Second Am. Compl. ¶¶ 109–21, 157–65. Defendants make four arguments why this claim is subject to dismissal as it pertains to Ms. Kelly.[2]

First, Defendants argue that the fourth cause of action applies only to Ms. Kelly's solicitation of employees, and, because of the pleading deficiencies discussed below, doesn't state a claim for breach of contract. Mot. at 4–6; Doc. 149, Reply in Support of Mot. to Dismiss ("Reply"), at 6. But as Plaintiffs point out, at minimum, their claim for breach of the solicitation clause survives because they also allege that Ms. Kelly solicited SRSA customers within the one-year non-solicitation period. *See* Second Am. Compl. ¶¶ 114–116.

---

[2] Mr. Tsarnas is also a party to Plainitffs' fourth cause of action, but Defendants don't seek dismissal of the claim as it pertains to Mr. Tsarnas.

- 4 -

It is true that the section of the second amended complaint setting out the fourth cause of action only references solicitation of employees. *See* Second Am. Compl. ¶¶ 157–65. But the first paragraph of that section, paragraph 157, "incorporates by reference all prior allegations in this Second Amended Complaint as if fully set forth herein." *Id.* ¶ 57. While it would have been clearer for Plaintiffs to specify in this section that it also applied to alleged solicitation of SRSA customers (in addition to employees), *Jacobs v. Credit Suisse First Bos.*, No. 11-CV-00042-CMA-KLM, 2011 WL 4537007, at *6 (D. Colo. Sept. 30, 2011) (shotgun pleading is strongly disfavored), the Court is persuaded that Defendants were sufficiently on notice that Ms. Kelly's solicitation of SRSA customers formed the basis for the fourth cause of action. Paragraphs 114–16 of the second amended complaint, which appear under the heading "Soliciting SRSA Customers," allege that Ms. Kelly solicited SRSA customers in violation of her contract. Second Am. Compl. at 114–16. Thus, the Court agrees with Plaintiffs that the fourth cause of action survives on this basis.

Second, Defendants argue that the second amended complaint fails to state a claim for breach of contract because the complaint alleges no damages as a result of Ms. Kelly's solicitation of two SRSA employees, Ali Bryson and Amanda Jackson. Mot. at 4. Defendants point out that, even though the second amended complaint says that Ms. Kelly solicited Ms. Bryson and Ms. Jackson, the complaint never alleges that either employee left SRSA as a result of the solicitation. *Id.* But dismissal isn't proper on this basis because, even if Plaintiffs can't prove actual damages, nominal damages are available for breach of contract. *See City of Westminster v. Centric-Jones Constructors*, 100 P.3d 472, 481 (Colo. App. 2003) ("Nominal damages are recoverable for a breach of contract even if no actual damages resulted or if the amount of actual damages has

not been proved."); *Nation v. First Tenn. Bank Nat'l Ass'n*, No. 08-CV-02671-PAB, 2010 WL 3894160, at *7 (D. Colo. Sept. 30, 2010) ("[A] failure of proof of damages does not justify the dismissal of a claim for breach of contract, as it does most tort claims. The victim of a breach of contract is always entitled to nominal damages if he proves a breach but no damages."), *aff'd sub nom. Nation v. First Tennessee Bank Nat. Ass'n*, 703 F.3d 1164 (10th Cir. 2013), *aff'd Nation v. First Tennessee Bank Nat. Ass'n*, 525 F. App'x 649 (10th Cir. 2013). The decisions relied on by Defendants are distinguishable. *DigitalGlobe, Inc. v. Paladino*, 269 F. Supp. 3d 1112, 1126 (D. Colo. 2017), is a decision that arose from a motion for preliminary injunction in which the court ruled that an injunction was improper because, at that stage, the moving party had failed to adduce evidence of damages or other harm. And *Blakely v. USAA Cas. Ins. Co.*, 691 F. App'x 526, 539 (10th Cir. 2017), is a non-precedential bad-faith insurance case, that interpreted and applied Utah law, not Colorado law. *Id.* at 532. Yet even if it were binding, Plaintiffs here, unlike the plaintiffs in *Blakely*, do advance a "theory of nominal damages." *Id.* So dismissal is not proper under *Blakely*.

Third, Defendants say there is no allegation in the complaint that Ms. Kelly directly solicited another SRSA employee, Luda Semenova, and that indirect solicitation is generally not sufficient to state a claim for breach of a non-solicitation agreement under Colorado law. Mot. at 4–5. The Court disagrees—the complaint alleges direct solicitation of Ms. Semenova. The complaint says that "within weeks of resigning from SRSA, [Ms.] Kelly began talking with Luda Semenova, a relationship manager at SRSA, about possible employment with PNC." Second Am. Compl. ¶ 109. According to the complaint, "discussions between [Ms.] Kelly and [Ms. Semenova] about employment at PNC continued for months." *Id.* Ms. Kelly allegedly put Ms. Semenova in contact with other

PNC employees, including PNC's managing director, to discuss leaving SRSA. *Id.* ¶¶ 110–11. And the Complaint says that Kelly's efforts were successful: Ms. Semenova left SRSA and was hired by PNC. *Id.* ¶ 112. The Court is satisfied that these allegations rise to the level of direct solicitation, so it need not and does not address whether the exception to the prohibition against non-solicitation agreements that prohibits indirect solicitation applies here. The Court will not dismiss the fourth cause of action on this basis.

Fourth and finally, Defendants contend that Plaintiffs have failed to state a claim for breach of Ms. Kelly's non-solicitation agreement as to SRSA employee Lisa Kremers. Mot. at 5. Defendants correctly point out that the complaint alleges that Ms. Kelly solicited Ms. Kremers after the one-year period in Ms. Kelly's non-solicitation agreement expired. *Id.* Plaintiffs don't dispute this, and thus no breach-of-contract claim can lie on this allegation.

In sum, with the exception of the alleged solicitation of Ms. Kremers, Plaintiffs have alleged sufficient facts to state a claim that Ms. Kelly breached her non-solicitation agreement. The Court will not dismiss this cause of action.

### III. The Claim for Intentional Interference with Prospective Business Advantage

Defendants next move to dismiss Plaintiffs' eighth cause of action for intentional interference with prospective economic advantage. Mot. at 6. To succeed on this claim, Plaintiffs must plead and prove, "(1) that defendant either induced a third person not to enter into or continue a contractual relationship with plaintiff, or prevented plaintiff from acquiring or continuing the prospective relation; (2) that defendant did so intentionally; and (3) that defendant used improper means to do so."

*Wells Fargo Ins. Servs. USA, Inc. v. McQuate*, 276 F. Supp. 3d 1089, 1117–18 (D. Colo. 2016).

Defendants argue that dismissal is proper because Plaintiffs have failed to allege interference based on improper means. Mot. at 6–7. Specifically, Defendants say that the only improper means alleged in the complaint is reliance on Ms. Semenova to solicit SRSA customers in violation of the non-solicitation clause in Ms. Semenova's employment agreement with SRSA. *Id.* at 7. But, according to Defendants, this can't constitute improper means because Ms. Semenova's non-solicitation clause violates California law, which governs her contract. *Id.*

This argument misses a whole category of improper means alleged in the second amended complaint. The complaint also alleges that Defendants' interference was improper "because they were only in a position to cause interference due to their misuse of SRSA's trade secret, confidential and proprietary information," *as well as* their reliance "on assistance of Luda Semenova." Second Am. Compl. ¶ 190. To be sure, as Defendants note, the Colorado Uniform Trade Secret Act preempts Plaintiffs' intentional-interference claim to the extent it is premised *solely* on the use of trade secrets as improper means. *Wolf Auto Ctr. Sterling, LLC v. Schadegg*, No. 15-CV-01035-MSK-KLM, 2016 WL 10570867, at *3 (D. Colo. Oct. 31, 2016) ("If a claim of tortious interference relies on the theft of a trade secret to establish the requisite 'improper means,' the claim is preempted by [the Colorado Uniform Trade Secrets Act], and conversely, if a claim relying on 'improper means' that does *not* involve stolen trade secrets it is not preempted."). But the Colorado Act doesn't preempt the claim insofar as it alleges non-trade-secret improper means—for example, "business data that, although valuable, does not meet the statutory definition of 'trade secret.'" *Id.* And here, the complaint alleges that the improper means included use of

- 8 -

trade secrets as well as non-trade secret "confidential and proprietary information" of SRSA. Although the use of SRSA's trade secrets cannot serve as a basis for the intentional-interference claim, and while there appears to be significant overlap between information alleged to be trade secret and information alleged to be confidential and proprietary, the categories are not identical. The latter categories are not preempted and suffice to state a claim for intentional interference with economic advantage.

Defendants are correct, however, that Ms. Semenova's non-solicitation agreement cannot supply the "improper means" of the intentional-interference claim. Ms. Semenova's employment contract is governed by California law, *see* Second Amended Compl., Ex. D, at 10, ¶ 19,[3] and under California law "every contract by which anyone is restrained from engaging in a lawful profession, trade, or business of any kind is to that extent void." Cal. Bus. & Prof. Code § 16600. Ms. Semenova's contract contains a non-solicitation provision that states, "During, and for a period of one year after termination of my employment with the Company, I will not directly or indirectly solicit or take away suppliers, customers, employees, or consultants of [SRSA] for my own benefit or for the benefit of any other party."  Doc. 66, Ex. D , at 10, ¶ 17. This kind of broadly worded non-solicitation agreement is void under California law. *See*

---

[3]   "Generally, Colorado enforces contractual choice of law provisions, and follows the Restatement (Second) of Conflict of Laws § 187, in determining the enforceability of these provisions." *Amer. Express Fin. Advisors, Inc. v. Topel*, 38 F. Supp. 2d 1233, 1238 (D. Colo. 1999) (citations omitted). *See also Century 21 Real Estate Corp. v. Meraj Int'l Inv. Corp.*, 315 F.3d 1271, 1281 (10th Cir. 2003) ("Colorado has adopted the approach of the Restatement (Second) of Conflicts of Laws in resolving contract choice of law questions."); *Mountain States Adjustment v. Cooke*, 412 P.3d 819, 823 (Colo. Ct. App. 2016) (same).

*Dowell v. Biosense Webster, Inc.*, 179 Cal. App. 4th 564, 575 (2009) ("Similarly, the broadly worded nonsolicitation clause prevents the employees for a period of 18 months postemployment from soliciting any business from, selling to, or rendering any service directly or indirectly to any of the accounts, customers or clients with whom they had contact during their last 12 months of employment. Ultimately, these provisions restrain the employees from practicing their chosen profession. Indeed, these clauses are similar to those found to be void under section 16600.").

Plaintiffs argue that the non-solicitation provision is saved by the trade-secret exception to California's prohibition against contractual restraints on competition. *See* Doc. 140, Resp. to Mot. to Dismiss ("Resp."), at 12; *Thompson v. Impaxx, Inc.*, 113 Cal. App. 4th 1425, 1429 (Cal. Ct. App. 2003) ("Antisolicitation covenants are void as unlawful business restraints except where their enforcement is necessary to protect trade secrets."). But the non-solicitation clause in Ms. Semenova's contract prohibits solicitation generally, not solicitation based on trade secrets alone. And to the extent it is based on trade secrets alone, as noted above, it would be preempted under Colorado law.

Though Plaintiffs' intentional-interference claim survives on the basis of Defendants' alleged reliance on SRSA's confidential information, the claim cannot be premised on improper means involving trade secrets or Ms. Semenova's unenforceable non-solicitation clause.

### IV.   The Claim for Breach of the Duty of Loyalty

Finally, Defendants move to dismiss Plaintiffs' ninth cause of action, which alleges that Ms. Kelly breached her duty of loyalty to SRSA. Second Am. Compl. ¶¶ 195–99. According to the complaint, "[Ms.] Kelly breached her duty of loyalty by proactively assisting and collaborating with [Mr.] Tsarnas on 'how to build' a copycat product, and authoring a

description of 'how to build' a competing product that she knew [Mr.] Tasrnas would include in a presentation to an SRSA competitor that [Ms.] Kelly had already corresponded with about potential future employment." *Id.* ¶ 198.

In their motion, Defendants initially contended that this claim is barred by the economic loss rule, because Ms. Kelly's employment contract imposes upon her a duty of loyalty. Mot. at 9. But Defendants concede Plaintiffs' argument that, because Defendants are contesting the enforceability of Ms. Kelly's contract, the duty-of-loyalty claim remains viable. *See* Reply at 8–9 (not addressing Plaintiff's response to economic-loss-rule article); *Registry Sys. Intern., Ltd. v. Hamm*, No. 08–cv–00495–PAB–MJW, 2010 WL 326327, at *11 (D. Colo. Jan. 20, 2010) ("[B]ecause the issue of the enforceability of the contracts which allegedly implicate the economic loss rule remains at issue and because [the plaintiff] asserts that its conversion claim represents an alternative theory of relief, summary judgment on [the plaintiff's] conversion claim based on the economic loss rule is not appropriate.").

Defendants also argue that Plaintiffs have failed to allege SRSA suffered damages as a result of Ms. Kelly's alleged breach, because she was merely preparing to leave SRSA when she assisted Mr. Tsarnas. Mot. at 10; Reply at 8–9; *see also Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 493 (Colo. 1989) ("Courts have recognized 'a privilege in favor of employees which enables them to prepare or make arrangements to compete with their employers prior to leaving the employ of their prospective rivals without fear of incurring liability for breach of their fiduciary duty of loyalty.'"). But the complaint doesn't allege that Ms. Kelly was merely preparing to leave. She was, according to the complaint, actively working to assist competitors to build their own products. Second Am. Compl. ¶ 198. That is enough to state a claim for damages based on breach of

the duty of loyalty. *Jet Courier Serv., Inc. v. Mulei*, 771 P.2d 486, 500 (Colo. 1989) (employer entitled to disgorgement of compensation for period of disloyal acts). The Court will not dismiss this claim.

## CONCLUSION

For the foregoing reasons, the motion to dismiss (Doc. 106) is **DENIED**.

Dated: March 26, 2020.    BY THE COURT:

_____
Daniel D. Domenico
United States District Judge