**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

## [PROPOSED] SCHEDULING ORDER

### 1. DATE OF CONFERENCE AND APPEARANCE OF COUNSEL

The Court held a Rule 16(b) and Local Rule 16.1 scheduling conference on June 3, 2020 at 10:00am. The following counsel appeared in person or by telephone/videoconference:

**Counsel for Plaintiff**

Warren A. Braunig, Michelle S. Ybarra, and Victor H. Yu of Keker, Van Nest & Peters LLP and Scott R. Bialecki of Sheridan Ross P.C. for Plaintiff.

**Counsel for Defendants**

James F. Bennett and Matthew E. Johnson of Dowd Bennett LLP, and Hara K. Jacobs and Noah S. Robbins of Ballard Spahr LLP for Defendants.

### 2. STATEMENT OF JURISDICTION

The Court has federal question subject matter jurisdiction under 28 U.S.C. § 1331, as Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC ("Plaintiff" or

1

"SRSA") bring a claim for misappropriation of trade secrets against all parties under the Defend Trade Secrets Act of 2016, 18 U.S.C. § 1836 *et seq.* ("DTSA"). SRSA's state law claims share a common nucleus of operative fact with SRSA's DTSA claim, and, therefore, the Court has supplemental jurisdiction under 28 U.S.C. § 1367(a) over those state law claims as well.

### 3. STATEMENT OF CLAIMS AND DEFENSES

#### a) Plaintiffs' Statement

Plaintiff SRSA provides services to acquiring companies and acquired companies in connection with mergers and acquisitions (M&A) transactions. Those include a series of products geared toward facilitating the payment of funds to shareholders and other entities in M&A transactions and managing funds held in escrow in connection with those payments. Based on years of research and development, SRSA developed an online suite of payments-and-escrow products, allowing SRSA to be an industry leader and affording it significant commercial success.

For four years, SRSA employed Defendants Kelly and Tsarnas in executive roles, where they were entrusted with confidential and trade-secret information. As part of their employment agreements, Kelly and Tsarnas promised to maintain such information confidentially and to return all SRSA property when they returned. And with limited exceptions, they agreed not to solicit SRSA customers or employees for one year after leaving the company.

In 2018, Kelly and Tsarnas were hired by PNC. They plotted with PNC to create a set of online payments-and-escrow products that were direct copycats of SRSA's offerings, in order to target SRSA's existing and prospective customers. At PNC, Kelly and Tsarnas regularly met with PNC's product-development team and, relying on their confidential knowledge and SRSA's products (and product information they had retained after leaving), they guided PNC's development of its competing platform. As a result, despite not having any presence in the online

payments-and-escrow space, PNC developed a set of copycat products in a short, nine-month period.

Kelly, Tsarnas and PNC also used confidential and trade-secret information about SRSA's customers, their preferences, and SRSA's pricing strategy to solicit SRSA's customers for sale of PNC's competing products. For example, while still employed by SRSA and using a confidential SRSA database, Kelly generated a confidential list of SRSA customers and customer information, which she later shared with Tsarnas and PNC. Armed with this information, Defendants were able to specifically and effectively target existing and prospective SRSA customers, leading SRSA to suffer numerous lost sales. Similarly, Kelly and Tsarnas successfully solicited SRSA employees for work at PNC, in violation of Kelly's and Tsarnas's contractual non-solicitation agreements.

As set forth in the nine causes of action in the operative complaint, Defendants are directly liable for misappropriating trade secrets in violation of the DTSA and the Colorado Uniform Trade Secrets Act, Colo. Rev. Stat. § 7-74-101 *et seq.* ("CUTSA"); Kelly and Tsarnas are additionally liable for violating their contractual confidentiality and non-solicitation agreements with SRSA. Defendants are further liable for intentionally interfering with SRSA's customer and employee contracts, as well as SRSA's prospective business relations with customers. Kelly breached her fiduciary duty of loyalty by plotting in various ways to copy SRSA's products and solicit its customers. And because PNC unlawfully mimicked SRSA's products, services and trade names, PNC is liable for violating Colorado's Unfair Competition law. Finally, because she improperly accessed SRSA computers and databases without authorization to gather SRSA information after her resignation, Kelly is also liable under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 *et seq.* ("CFAA").

The parties engaged in limited expedited discovery in the fall, pertaining almost exclusively to liability issues on SRSA's first three causes of action (DTSA and Colorado trade

3

secrets, and breach of duty of confidentiality). SRSA served ten RFPs on PNC and five on each individual defendant, with no interrogatories or RFAs, and took six depositions. Despite the limited nature of this discovery, SRSA had to file numerous motions to compel and did not receive critical responsive documents until after the close of the expedited discovery period. On November 25, 2019, SRSA filed a motion for preliminary injunction, for which Judge Domenico held a one-day evidentiary hearing on March 11, 2020.  SRSA sought injunctive relief only on its trade-secret causes of action and for breach of the confidentiality provision in the employees' contracts.  On March 26, 2020, the Court denied the requested injunctive relief, noting SRSA's burden on a PI motion to make "a particularly strong showing that it is likely to succeed on the merits and that the balance of harms is in its favor" (ECF 207 at 8), and emphasizing that SRSA "could prevail on some of its claims at trial" (*id*. at 11).  For example, with respect to the list of customers and customer information that Ms. Kelly took to PNC and used to create PNC's "target customer list"—a list that was produced to SRSA only after SRSA filed its PI motion, and well after the close of expedited discovery—the Court stated that "such insights and targeted contact information about who, exactly, at a particular potential customer may be the best contact is valuable . . . [and] SRSA may well be able to prove as much to a jury." *Id.* at 14.  The Court ultimately concluded:  "SRSA has failed to make the difficult showing that it is entitled to an injunction at this time." *Id.* at 2.

On the same day that the Court denied the PI motion, it also denied the defendants' motion to dismiss SRSA's claims for breach of Tsarnas and Kelly's non-solicitation agreements, intentional interference with SRSA's prospective business advantage, and breach of Kelly's duty of loyalty to SRSA.

The Court's two March 26 orders highlight the importance to SRSA of being able to complete fulsome discovery on its trade secrets claims, as well as the numerous remaining non-trade secret causes of action that were not addressed in the PI motion because they are

4

compensable with money damages.  There is also substantial discovery to complete on damages issues, as well as the efforts by the individual defendants to destroy evidence of their wrongdoing. SRSA looks forward to proving up all of those issues, and the damages Defendants have caused it, at trial.

      **b)**     **Defendants:**

SRSA's statement of the case, and the conclusory allegations and unsubstantiated theories therein, remain largely unchanged from its initial Complaint.  But much has changed since July of 2019.  The Parties have engaged in months of expedited discovery during which SRSA deposed eight different PNC employees and representatives regarding the almost 12,000 documents and 60,000 pages that PNC has produced to date.  The parties submitted thousands of pages of briefs and exhibits in connection with SRSA's Motion for a Preliminary Injunction, which culminated in an evidentiary hearing before the Honorable Daniel D. Domenico. Following the hearing, the Court issued a lengthy and detailed opinion (Dkt. No. 207) in which it concluded that each piece of information that Defendants' allegedly misappropriated did not qualify as a trade secret.  The key findings by the Court are as follows:

- Plaintiffs attempt to recast Ms. Kelly's contact list as a "customer list" that includes information on "customer relationships," the identity of key "decision-makers," and "customer preferences." Mot. at 14. The problem with this argument is that Ms. Kelly's contact spreadsheet itself contains little if any of this information. It merely identifies the names and contact information of her contacts, which isn't trade-secret material. (Dkt. No. 207 at 13).

- To the extent Ms. Kelly relied on her experience with SRSA to help develop the PNC target customer list, she appears to have taken steps to ensure that she complied with her contractual obligation not to solicit certain SRSA customers within one year of leaving SRSA—the spreadsheet includes a field to identify those companies Ms. Kelly couldn't solicit under her SRSA contract. (*Id.* at 15).

- Ms. Kelly's employment agreement also undermines the idea that she would have understood any knowledge she gained about potential customers to be SRSA's trade secret in two ways. One, its non-competition clause only applied during her

5

employment with SRSA, not after. And two, its non-solicitation clause only applied to certain companies, and only for one year. This implies that any other companies could be solicited, even during the first year, and that others could be solicited after . . . . If this information were truly a trade secret, allowing Ms. Kelly to solicit companies about which she knew such information either immediately or at most in one year, is not a reasonable means of protecting it. (*Id.* at 15-16).

- [T]he Court cannot agree that the spreadsheet is a trade secret. As SRSA conceded, though the spreadsheet contains valuable business information used to sync client information with the SRSA algorithms, SRSA shares that information in every deal it does without any agreement requiring clients to keep the spreadsheet confidential. A party can't claim trade-secret protections over an alleged trade-secret that is shared widely in the industry without protection. (*Id.* at 18-19).

- Initially, while certain specifics about how SRSA arrives at a particular price for a particular deal might be a trade secret, neither its prices nor its general pricing strategies can be considered trade secrets. As Defendants point out, SRSA's pricing information is well known in the industry, shared with customers without confidentiality or other similar agreements, and easily ascertainable by third parties. (*Id.* at 21).

- Plaintiffs have failed to demonstrate a likelihood of success on the merits that knowledge of these products is a trade secret. SRSA advertised the functionalities of Acquiom Compensation Payments and Pre-Closing Solicitation long before Ms. Kelly and Mr. Tsarnas left SRSA . . . . Deal Dashboard fares no better. . . . The Court agrees with Defendants that an online platform to view deal information is hardly a novel idea. (*Id.* at 23-24).

- They have not established that Ms. Kelly obtained these documents by improper means: theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage. . . .They knew that the documents were in Ms. Kelly's possession on April 2, 2018 but waited more than a year to seek an injunction of their use. Ms. Kelly kept the documents (apparently to help facilitate her transition, *see* Doc. 136-3 at 3), told SRSA that she did so, and despite this, SRSA failed to request she return the documents for nearly a year. (*Id.* at 25-26).

Defendants have already established once that SRSA's allegations are misplaced. PNC PAID was not built upon any information taken from SRSA but rather from the collective decades of industry experience of PNC employees along with the assistance of a third-party software development firm. PNC does not utilize SRSA's supposedly trade secret "pricing

6

strategy". It prices its services based on what is profitable to PNC, not SRSA. To the extent there are any similarities between the products and services offered by the Parties, it is merely because such concepts are "readily ascertainable within [the] trade," "shared widely in the industry without protection," "would not be hard to reverse engineer," or "hardly a novel idea." Dkt. No. 207. With respect to SRSA's contract claims, SRSA is unable to point to any alleged conduct by Mr. Tsarnas or Ms. Kelly that caused SRSA harm or to which SRSA did not acquiesce. Rather, as noted by Judge Domenico in the Court's order denying SRSA's motion for a preliminary injunction, the Defendants took active measures to ensure compliance with any contractual obligation they owed to SRSA. Defendants look forward to the opportunity to prove that SRSA's complaint sounds in neither contract nor tort, but rather a fear of free and lawful competition.

### 4. UNDISPUTED FACTS

The following facts are undisputed:

- Plaintiff SRS Acquiom Inc. is a corporation organized and existing under the laws of the state of Delaware. Its principal place of business is located at 950 17th Street, Suite 1400, Denver, Colorado, 80202.

- Plaintiff Shareholder Representative Services LLC is a limited liability company organized and existing under the laws of the state of Colorado. Its principal place of business is located at 950 17th Street, Suite 1400, Denver, Colorado, 80202. Plaintiff Shareholder Representative Services LLC is indirectly wholly owned by Plaintiff SRS Acquiom Inc.

- Defendant PNC Financial Services Group, Inc. is a corporation organized under the laws of the State of Pennsylvania, with its principal place of business in Pittsburgh, Pennsylvania.

- Defendant PNC Bank, N.A., is a national banking association organized under 28 U.S.C. § 1348. PNC Bank, N.A.'s Articles of Association designate the place of its main office as Pittsburgh, Pennsylvania.
- PNC Bank, N.A. is a wholly-owned subsidiary of PNC Financial Services Group, Inc.
- Defendant Heather Kelly was employed by SRSA as Senior Vice President and Relationship Manager from June 2014 through March 2018.
- Defendant Alex Tsarnas was employed by SRSA as Managing Director – Global Business Development from September 2014 to January 2018.

5. **COMPUTATION OF DAMAGES**

On May 20, 2020, Plaintiffs provided a disclosure of damages pursuant to Fed. R. Civ. P. 26(a)(1)(A)(iii). Plaintiffs' disclosure stated as follows:

SRSA cannot compute damages at this time, because the computation requires information that is in Defendants' possession, and because SRSA was not allowed to obtain significant discovery during the expedited discovery period into PNC's financials, its customer base or its customer solicitation efforts. PNC successfully resisted producing information about its revenues and profits from various payments-and-escrow products. *See* ECF No. 51 (October 17, 2019 Order re: October 10, 2019 Discovery Hearing) at 3-4. PNC also successfully precluded SRSA from taking discovery into the customers to which PNC has attempted to sell or has sold products that compete with SRSA's products or Defendants' efforts to obtain that business. *Id.* at 2-3. There remains extensive discovery to take concerning Defendants' misuse of SRSA's trade secret and confidential information, and there has been limited discovery into SRSA's non-trade-secret claims to date. SRSA's initial disclosures are based on the discovery to date and information presently known to SRSA.

SRSA intends to seek compensatory and punitive damages as a result of Defendants' acts of trade secret misappropriation, Kelly and Tsarnas' respective breaches of their employment agreements with SRSA, Kelly's violation of the Computer Fraud and Abuse Act (CFAA), *see* 18 U.S. Code § 1030, and Defendants' other tortious conduct against SRSA. SRSA will seek damages based on lost profits, recovery for Defendants' unjust enrichment, a reasonable royalty, loss of goodwill/reputational damage, and any damages it is entitled to under the CFAA, including the costs of responding to Kelly's conduct.

SRSA may also seek enhanced or special damages permitted by federal and state law, as a result of Defendants' wanton, willful and malicious conduct, including treble damages and recovery of reasonable attorneys' fees and costs.

SRSA anticipates that it will conduct discovery that will provide it with information to compute damages. SRSA's expert witness(es) on damages will analyze information obtained through discovery, as well as potentially other materials, to compute SRSA's damages. SRSA will provide a computation of damages and will produce or make available for inspection and copying any non-privileged documents or other evidentiary material on which SRSA's computation is based. SRSA reserves all rights to revise this disclosure and to provide additional detail throughout the discovery period in this action.

6. **REPORT OF PRECONFERENCE DISCOVERY AND MEETING UNDER FED. R. CIV. P. 26(F)**

   a) **Date of Rule 26(f) meeting.**

   The parties met and conferred on May 6, 2020.

   b) **Names of each participant and party he/she represented.**

   Warren A. Braunig, Michelle S. Ybarra, and Victor H. Yu of Keker, Van Nest & Peters LLP and Matthew C. Miller of Sheridan Ross P.C. for Plaintiff.

James F. Bennett and Matthew E. Johnson of Dowd Bennett LLP, and Hara K. Jacobs and Noah S. Robbins of Ballard Spahr LLP for Defendants.

    c)    **Statement as to when Rule 26(a)(1) disclosures were made or will be made.**

The parties exchanged Rule 26(a)(1) initial disclosures on May 20, 2020.

    d)    **Proposed changes, if any, in timing or requirement of disclosures under Fed. R. Civ. P. 26(a)(1).**

None.

    e)    **Statement concerning any agreements to conduct informal discovery:**

Given that significant discovery has already occurred in the case, the parties did not reach an agreement to conduct informal discovery.

    f)    **Statement concerning any other agreements or procedures to reduce discovery and other litigation costs, including the use of a unified exhibit numbering system.**

The parties have agreed to reduce discovery and litigation costs by using and continuing the numbering system from the parties' Joint Exhibit List, *see* ECF No. 197, prepared for the March 9, 2020 Preliminary Injunction hearing.

The parties agree to electronic service of discovery requests and responses.

    g)    **Statement as to whether the parties anticipate that their claims or defenses will involve extensive electronically stored information, or that a substantial amount of disclosure or discovery will involve information or records maintained in electronic form.**

The parties agree that the claims and defenses in this case will continue to include discovery of electronic information. The parties agree that the previously entered Stipulated Order Regarding Discovery of Electronically Stored Information ("ESI Order"), *see* ECF No. 42, is appropriate to govern ESI-related discovery issues going forward, without prejudice to their ability to propose later changes to the ESI Order.

    h)    **Statement summarizing the parties' discussions regarding the possibilities for promptly settling or resolving the case.**

While the parties remain open to resolving this matter via settlement, no resolution appears to be imminent. The parties have agreed to conduct mediation in this litigation following

10

the exchange of expert reports, and will continue to discuss potential settlement possibilities when appropriate.

## 7.   CONSENT

The parties have not consented to the exercise of jurisdiction of a magistrate judge.

## 8.   DISCOVERY LIMITATIONS

### a)   Modifications which any party proposes to the presumptive numbers of depositions or interrogatories contained in the Federal Rules.

**Depositions**

Pursuant to the Court's Scheduling and Expedited Discovery Order, *see* ECF No. 26 ("Expedited Discovery Order), SRSA took five (5) party depositions, including the deposition of each of the individual defendants, as well as a 30(b)(6) deposition of PNC. Defendants collectively took five (5) depositions of SRSA-affiliated employees, plus a 30(b)(6) deposition of SRSA.

The parties propose that each side may take an additional five (5) party depositions, as well as a further Rule 30(b)(6) deposition to cover topics not included in the previous 30(b)(6) notices, as modified by the Parties' agreement. These limits do not include third-party depositions or expert depositions. The parties separately agree that each party is allowed one deposition for each expert proffered in this action, regardless of the number of issues on which the expert is designated. With respect to the treatment of individuals previously deposed during expedited discovery, the Parties' proposals are as follows:

SRSA proposes that individuals deposed in their individual capacity during the expedited-discovery period in this action may not be re-deposed except upon a showing of good cause. If there is a disagreement about this paragraph, the parties agree to meet and confer and attempt to narrow the dispute before presenting a dispute about this paragraph to the Court.

Defendants propose that a party may re-depose an individual that was deposed during expedited discovery on topics and issues on which that individual was not previously examined. As SRSA contends, "the parties engaged in limited expedited discovery in the fall, pertaining almost exclusively to liability issues on SRSA's first three causes of action." Consequently, there are issues in this litigation for which discovery has largely yet to commence. This includes, for example, the new allegations in SRSA's Amended Complaint, which was not filed until after the close of expedited discovery. Defendants agree that any re-deposition of an individual previously deposed shall count as one of the authorized 5 party depositions.

### Interrogatories

SRSA's Proposal:  SRSA may serve up to thirty-five (35) interrogatories in total, spread among the defendants at SRSA's discretion. Defendants may collectively serve up to twenty-five (25) interrogatories on SRSA. (Defendants' proposal would allow Defendants to serve 100 interrogatories, and Plaintiffs to serve 50 interrogatories, which is unbalanced and excessive.)

Defendants' Proposal:  Defendants propose that each party is entitled to the presumptive limit of twenty-five (25) interrogatories provided for in Federal Rule of Civil Procedure 33(a)(1). SRSA, as the plaintiff, elected to sue to four different individuals and entities, including asserting distinct claims against the individual defendants. Defendants' proposal that each defendant be entitled to the presumptive discovery limits afforded to every party to a federal court litigation flows directly from SRSA's decision to sue these entities and individuals.

**b)      Limitations which any party proposes on the length of depositions.**

SRSA proposes a limit of fourteen cumulative hours for any Rule 30(b)(6) deposition.

Defendants propose a limit of seven cumulative hours for any Rule 30(b)(6) deposition, especially in light of the fact that both Plaintiffs and Defendants have each already been afforded twelve (12) hours of 30(b)(6) deposition time during expedited discovery.

Otherwise, at this time, the parties do not propose any modifications to the length of depositions set forth in Fed. R. Civ. P. 30(d)(1).

   c) **Limitations which any party proposes on the number of requests for production and/or requests for admission.**

**Requests for Production**

The Court's Expedited Discovery Order has already permitted the parties to serve a limited set of requests for production ("RFPs"). Pursuant to the Expedited Discovery Order, SRSA was permitted to serve 10 RFPs to PNC, 5 RFP's to Kelly, and 5 RFP's to Tsarnas. PNC was permitted to serve 15 RFPs to SRSA.

SRSA's Proposal:  SRSA may serve up to 40 additional RFPs in total, spread across the defendants at SRSA's discretion. Defendants collectively should be allowed to serve up to 30 additional RFPs to SRSA.  This volume of requests for production is justified by the fact that there are distinct and uniquely situated defendants and nine causes of action.  (Defendants' proposal, however, would allow Defendants to serve 100 additional RFP's and Plaintiffs to serve 50 additional RFP's, which is unbalanced and excessive.)

Defendants' Proposal:  Defendants propose that each party may serve up to 25 additional RFPs as provided for in the District of Colorado's Instructions for Preparation of Scheduling Order.  As SRSA states, "there are distinct and uniquely situated defendants and nine causes of action."  Each Defendant is entitled to conduct discovery regarding the "uniquely situated" allegations made against them.

**Requests for Admission**

SRSA's Proposal: SRSA may serve up to 25 requests for admission ("RFAs") in total, spread across the defendants at SRSA's discretion. Defendants collectively may serve up to 25 RFAs on SRSA.  These limits do not include RFA's directed solely at establishing the authenticity of documents. (Defendants' proposal would allow Defendants to serve 100 RFA's and Plaintiffs to serve 50, which is unbalanced and excessive.)

13

Defendants' Proposal:  Defendants propose that each party may serve up to 25 RFAs as provided for in the District of Colorado's Instructions for Preparation of Scheduling Order. Defendants do not agree that any limit on RFAs should exclude RFAs directed solely at establishing the authenticity of documents as there are less burdensome means of narrowing authentication issues in advance of trial.

### d) Deadline for service of Interrogatories, Requests for Production of Documents and/or Admissions:

The parties propose that all Interrogatories, RFPs, and RFAs be served at least 30 days before the close of fact discovery. The parties have agreed to postpone serving their next rounds of discovery until June 15, 2020.  While the Parties do not agree on the schedule for discovery, the Parties do agree that all interrogatories, requests for production, and requests for admission must be served at least thirty (30) days prior to the end of the discovery period (in SRSA's proposal) or the end of the non-deposition discovery period (in Defendants' proposal).

### e) Other Planning or Discovery Orders

The parties agree, in part, that the Stipulated Protective Order, *see* ECF No. 40, is sufficient to govern this action, without prejudice to their right to later seek amendments to that order.

Plaintiffs' Statement:  Defendants have complained about Plaintiffs' designation of documents under the Protective Order, which Defendants are using as a tactic to pre-litigate the trade-secret status of various documents and information.  To the extent that Defendants have identified specific documents that they contend were over-designated, however, Plaintiffs have been willing to re-examine the designation and, in some cases, have down-designated such documents.  That procedure, which is spelled out in the Protective Order, is sufficient.

Defendants' Statement:  While Defendants agree that the Stipulated Protective Order is sufficient to govern this action, Defendants have a motion pending before the Court related to what Defendants contend is SRSA's improper designation of documents and information under

14

1383880

the Protective Order.  In addition, Defendants wish to discuss SRSA's improper filing of pleadings in this matter under the Court's Level 2 restriction.

### 9. CASE PLAN AND SCHEDULE

The parties agree that the schedule should be staggered to complete fact discovery, then expert discovery, then dispositive motions, but disagree on the specific details of the case plan and schedule.

#### a) Deadline for Joinder of Parties and Amendment of Pleadings.

SRSA's Proposal:  July 31, 2020 (*approx. 55 days after Scheduling Conference*).

Defendants' Proposal:   Given the significant discovery conducted since the case was initiated in July of 2019, Defendants propose a joinder and amendment deadline of June 30, 2020.

#### b) Discovery Cut-off.

SRSA's Proposal:  February 5, 2021 (*eight months after Scheduling Conference*).

This is a highly complex case involving both technical and commercial intellectual property and involving numerous former SRSA employees now working for PNC.  It took the parties nearly four months—and considerable motion practice—to conduct limited expedited discovery on liability issues almost exclusively pertaining to SRSA's trade secrets and breach of confidentiality claims.  That discovery remains incomplete, as Defendants continued to produce previously-altered and withheld documents until well after SRSA filed its PI motion.  SRSA's remaining discovery—which requires completing discovery on its trade secrets claims, taking discovery on its numerous remaining claims, taking damages discovery, and beginning interrogatories and RFAs from scratch—will require eight months at minimum, particularly given expected delays imposed by the COVID-19 pandemic.

15

Defendants' Proposal:  Defendants propose a discovery cut-off of October 5, 2020 (*four months after Scheduling Conference*) for all discovery other than the completion of depositions. In light of the ongoing pandemic and the difficulties resulting from the inability to safely travel and conduct depositions, Defendants propose while other forms of discovery must be completed by October 5, 2020, the Parties may conduct depositions until December 4, 2020.

**c)      Dispositive Motion Deadline.**

SRSA's Proposal:  May 14, 2021 (*four weeks after close of expert discovery*)

Defendants' Proposal:  March 25, 2021 (*four weeks after close of expert discovery*)

**d)      Expert Witness Disclosure.**

**1.      The parties shall identify anticipated fields of expert testimony, if any.**

SRSA currently anticipates that expert testimony may be appropriate for the following issues: 1) forensic analysis of Defendants' conduct, 2) independent economic value of alleged trade secrets and confidential information, as well as the benefit to a competitor from having access to such trade secret and information; 3) how PNC benefitted from its use of SRSA trade secrets; and 4) damages.

Defendants currently anticipate expert witnesses in the following categories**:**  (1) industry custom and practice related to confidentiality of various parts of the mergers and acquisition process; (2) Plaintiffs' lack of damages; and (3) forensic analysis of relevant documents in the case.

**2.      Limitations which the parties propose on the use or number of expert witnesses.**

SRSA's proposal:  SRSA proposes that each side may disclose no more than five experts, including rebuttal experts.

Defendants' proposal:  Defendants propose that each side may disclose no more than four experts.

> **3. The parties shall designate all experts for any issue on which the party bears the burden of proof and provide opposing counsel and any pro se parties with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:**

SRSA's Proposal:  March 5, 2021 (*four weeks after discovery cutoff*)

Defendants' Proposal: January 4, 2021 (*four weeks after discovery cut-off*)

> **4. The parties shall designate all rebuttal experts and provide opposing counsel and any pro se party with all information specified in Fed. R. Civ. P. 26(a)(2) on or before:**

SRSA's Proposal:  April 2, 2021 (*four weeks after initial reports*)

Defendants' Proposal:  February 4, 2021 (*four weeks after initial reports*)

> **5. Expert Discovery Cut-Off.**

SRSA's Proposal:  April 23, 2021 (*three weeks after rebuttal reports*)

Defendants' Proposal:  February 25, 2021 (*three weeks after rebuttal reports*)

**e)    Identification of Persons to Be Deposed:**

The parties have already taken six depositions per side.  The parties have further identified a number of additional potential witnesses in their respective Initial Disclosures. The parties are continuing to investigate which additional fact witnesses they wish to depose, and will meet and confer on expected deponents.

## 10.    DATES FOR FURTHER CONFERENCES

**a)    Status conferences will be held in this case at the following dates and times:**

_____.

      **b)**      **A final pretrial conference will be held in this case on:**

_____ at o'clock _____ m.  A Final Pretrial Order shall be prepared by the parties and submitted to the court no later than seven (7) days before the final pretrial conference.

### 11. OTHER SCHEDULING MATTERS

      **a)**      **Identify those discovery or scheduling issues, if any, on which counsel after a good faith effort, were unable to reach an agreement.**

SRSA's Statement:  There are three pending discovery disputes, on which the parties met and conferred unsuccessfully, that have yet to be resolved:  1) Plaintiffs' motion for sanctions based on the individual defendants' intentional spoliation of text messages (ECF No. 113); 2) Plaintiffs' motion to compel production of customer list spreadsheets that Kelly unsuccessfully attempted to delete after joining PNC (ECF No. 113); and 3) Defendants' motion to compel production of text messages from certain SRSA custodians (ECF No. 115).  In addition, Judge Domenico has not yet ruled on SRSA's motion for monetary sanctions based on PNC's belated production of critical discovery material until after SRSA filed its PI motion (ECF No. 145).

Defendants' Statement:  The Parties remain unable to resolve the issue regarding SRSA's refusal to produce responsive text messages within its possession, custody, and control which is the subject of a pending motion, Dkt. No. 115.

      **b)**      **Anticipated length of trial and whether trial is to the court or jury.**

SRSA's Position:  SRSA estimates a 10-day trial.  Trial shall be to a jury.

Defendants' Position: Defendants anticipate that trial will take approximately six to ten (6-10) days depending on the outcome of certain summary judgment motions. Trial shall be to a jury.

      **c)**      **Identify pretrial proceedings, if any, that the parties believe may be more efficiently or economically conducted in the District Court's facilities at 212 N. Wahsatch Street,**

**Colorado Springs, Colorado 80903-3476; Wayne Aspinall U.S. Courthouse/Federal Building, 402 Rood Avenue, Grand Junction, Colorado 81501-2520; or the U.S. Courthouse/Federal Building, , La Plata County Courthouse 1060 E. 2nd Avenue, Suite 150, Durango, Colorado 81301.**

None.

### 12. NOTICE TO COUNSEL AND PRO SE PARTIES

The parties filing motions for extension of time or continuances must comply with D.C.COLO.LCivR 6.1(c) by serving the motion contemporaneously upon the moving attorney's client.

Counsel will be expected to be familiar and to comply with the Pretrial and Trial Procedures or Practice Standards established by the judicial officer presiding over the trial of this case.

With respect to discovery disputes, parties must comply with D.C.COLO.LCivR 7.1(a).

Counsel and unrepresented parties are reminded that any change of contact information must be reported and filed with the Court pursuant to the applicable local rule.

### 13. AMENDMENTS TO SCHEDULING ORDER

The scheduling order may be altered or amended only upon a showing of good cause.

DATED at Denver, Colorado, this _____ day of _, 20____.

BY THE COURT:

_____
United States Magistrate Judge

APPROVED:

| | |
|---|---|
| */s/ Warren A. Braunig* | */s/ James F. Bennett* |
| Warren A. Braunig | James Forrest Bennett |
| *wbraunig@keker.com* | Dowd Bennett LLP St. Louis |
| Michelle S. Ybarra | 7733 Forsyth Boulevard, Suite 1410 |
| *mybarra@keker.com* | St. Louis, MO  63105 |
| Benjamin D. Rothstein | Telephone:     314-889-7300 |
| *brothstein@keker.com* | Facsimile:      314-863-2111 |
| Victor H. Yu | jbennett@dowdbennett.com |
| *vyu@keker.com* | |
| Puja V. Parikh | Matthew E. Johnson |
| *pparikh@keker.com* | Dowd Bennett LLP Denver |
| KEKER, VAN NEST & PETERS LLP | 1775 Sherman Street, Suite 2010 |
| 633 Battery Street | Denver, CO  80203 |
| San Francisco, CA 94111-1809 | Telephone:     303-353-4361 |
| Telephone:     415-391-5400 | Facsimile:      314-863-2111 |
| Facsimile:      415-397-7188 | mjohnson@dowdbennett.com |
| | |
| SHERIDAN ROSS P.C. | Hara K. Jacobs |
| Scott R. Bialecki | Noah S. Robbins |
| *sbialecki@sheridanross.com* | BALLARD SPAHR LLP |
| Matthew C. Miller | 1735 Market Street, 51st Floor |
| *mmiller@sheridanross.com* | Philadelphia, PA |
| 1560 Broadway, Suite 1200 | Telephone:     303-202-2400 |
| Denver, Colorado 80202 | Facsimile:      303-296-3956 |
| Telephone:     303 863 9700 | jacobsh@ballardspahr.com |
| Facsimile:      303 863 0223 | robbinsn@ballardspahr.com |
| Email: *litigation@sheridanross.com* | |
| | |
| *Attorneys for Plaintiff* | *Attorneys for Defendants* |

20

1383880