IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

## PLAINTIFFS' UNOPPOSED MOTION TO REDACT PRELIMINARY INJUNCTION HEARING TRANSCRIPT

On March 11, 2020, the Court held a hearing regarding Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC's (collectively, "SRSA") preliminary injunction motion. *See* ECF No. 180 (hearing scheduling order). On May 27, the Court filed a transcript for that hearing provisionally under seal. *See* ECF No. 213. And on May 29, SRSA filed its Notice of Intent to Request Redactions. *See* ECF No. 216. Under Local Rule 7.2(c) and the Court's Guide to Transcript Redaction, SRSA now moves the Court to redact the following portions of the preliminary injunction hearing transcript and to maintain the unredacted version of the transcript under Level 1 restriction:

| Text | Rationale for Seeking Redaction |
|---|---|
| Page 30, lines 3 to 5, the words in between "amassed" and "wasn't in the business" | Reveals confidential SRSA business development strategies |
| Page 36, lines 11 and 12, the words in between "stole her" and "that that customer" | Reveals confidential SRSA customer information |

1

| | |
|---|---|
| Page 40, line 21, the words after "they're worried about" | Reveals confidential SRSA customer information |
| Page 41, line 6, the words in between "one down is" and "I'm sorry." | Reveals confidential SRSA customer information |
| Page 72, lines 15 to 16 (all text) | Reveals confidential SRSA business development strategies |
| Page 73, line 21, the word after "sentence after" | Reveals confidential SRSA business development strategies |
| Page 74, lines 8 to 9, 15 to 18 (all text) | Reveals confidential SRSA business development strategies |
| Page 74, lines 23 to 24 (all text) | Reveals confidential SRSA business-litigation strategies |
| Page 76, line 20, the words in between "wrote it." and "You reviewed this." | Reveals confidential SRSA business-litigation strategies |
| Page 87, lines 4 to 8 (all text) | Reveals confidential SRSA business-litigation strategies |
| Page 104, line 16, the words after "such as" | Reveals confidential SRSA customer information |
| Page 106, the words in between "Example," and "I can qualify later" | Reveals confidential SRSA customer information |
| Page 134, lines 20 to 23 (all text) | Reveals confidential information re: SRSA's payments spreadsheet |
| Page 135, lines 2 to 8 (all text) | Reveals confidential information re: SRSA's payments spreadsheet |
| Page 150, line 16 (all text) | Reveals confidential SRSA customer information |
| Page 151, line 4, the words in between "someone from" and "is saying they" | Reveals confidential SRSA customer information |
| Page 179, lines 5 to 10 (all text) | Reveals confidential SRSA customer information |
| Page 180, lines 19 to 20 (all text) | Reveals confidential SRSA customer information |
| Page 183, lines 7 to 15 (all text) | Reveals confidential SRSA customer information |

3

| | |
|---|---|
| Page 184, lines 3 to 14 (all text) | Reveals confidential SRSA customer information |
| Page 184, line 17, the words in between "named" and "There we go." | Reveals confidential SRSA customer information |
| Page 185, line 3, the words in between "person at" and "to talk to." | Reveals confidential SRSA customer information |
| Page 186, lines 12, 22, 24 (all text) | Reveals confidential SRSA customer information |
| Page 186, line 14, the words in between "are aware" and "counsel responsible for" | Reveals confidential SRSA customer information |
| Page 187, lines 1, 3 (all text) | Reveals confidential SRSA customer information |
| Page 222, line 11 (all text) | Reveals confidential SRSA customer information |
| Page 255, line 13, the words before "document we looked at" | Reveals confidential SRSA customer information |
| Page 262, lines 23 to 24, the words in between "SRSA that" and "would appreciate" | Reveals confidential SRSA customer information |
| Page 263, line 1, the words before "and the other" | Reveals confidential SRSA customer information |
| Page 263, lines 16 to 20 (all text) | Reveals confidential SRSA customer information |
| Page 264, lines 7 to 8 (all text) | Reveals confidential SRSA customer information |
| Page 265, line 9, 12 (all text) | Reveals confidential SRSA customer information |
| Page 265, lines 24 to 25 (all text) | Reveals confidential SRSA customer information |
| Page 266, line 1 (all text) | Reveals confidential SRSA customer information |
| Page 277, lines 19 to 21 (all text) | Reveals confidential SRSA customer information |
| Page 278, line 19, the words before "if we walk in" | Reveals confidential SRSA corporate strategies re: development cost for SRSA's products |

3

Under Local Rule 7.2(c), a motion to restrict public access to documents filed with the Court must:

> (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access . . . ; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question . . .; and (5) identify the level of restriction sought.

"[W]here documents are used to determine litigants' substantive legal rights," restriction is appropriate when the parties "articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted). In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998). Indeed, a court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835; *see* Colo. Rev. Stat. § 7-74-106 ("[A] court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include . . . sealing the records of an action.").

Here, as documented in the above chart, SRSA seeks redaction and Level 1 restriction for three categories of confidential information: (1) SRSA's customer information, preferences and business-development strategies; (2) internal SRSA corporate strategies; and (3) information about SRSA's proprietary payments spreadsheet.[1]

---

[1] Consistent with its request, SRSA has designated the underlying exhibits referenced in the portions of the transcript it seeks to redact as "Confidential" or "High Confidential – Attorneys' Eyes Only." A "Confidential" or "Highly Confidential- Attorneys' Eyes Only" document filed under Level 1 restriction is still "a confidential and restricted document pursuant to the

4

1385965

(1) ***First***, portions of the transcript reference non-public information regarding the identity and preferences of SRSA's customers. In particular, the hearing transcript reveals the identities of companies who have a preference and familiarity for using the online M&A payments-and-escrow products SRSA sells, as reflected in documents that SRSA has designated confidential and supported with declarations submitted during the preliminary-injunction briefing process. Such customer information is trade secret, competitive information. *See Haggard v. Spine*, No. 09-CV-00721CMAKMT, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009) ("Information regarding customers' specialties, business preferences, and contact people" are trade secrets." (brackets and citations omitted)).

(2) ***Second***, SRSA seeks to redact references to its confidential corporate strategies. This information primarily includes references to specific competitors and pricing variables that SRSA looks to in competing in the payments-and-escrow industry. It also includes a reference to the alleged cost of developing SRSA's products and several references to SRSA's business-litigation strategy. Disclosing this information would harm cause SRSA competitive harm in the M&A payments-and-escrow industry. *See Koninklijke Philips N.V. v. Elec-Tech Int'l Co., Ltd.*, No. 14-CV-02737-BLF, 2015 WL 581574, at *1–2 (N.D. Cal. Dec. 10, 2015) (compelling reasons exist to justify sealing information about an entity's "business practices, recruitment efforts, and discussions regarding potential partnerships with other product manufacturers").

---

Protective Order," such that any dissemination of the document in violation of the Protective Order "may be considered contempt of a court order and may result in concomitant sanctions against the party violating the court's order." *Shell v. Am. Family Rights Ass'n*, No. 09-CV-00309-MSK-KMT, 2012 WL 13005966, at *2 (D. Colo. Aug. 27, 2012).

1385965

(3) ***Third***, SRSA also seeks to redact one section of the transcript that reveals technical information about one of SRSA proprietary documents: the payments spreadsheet. During the March 11 hearing, Defendant Kelly recited information about specific fields and the functioning of the payments spreadsheet she learned after "having done it at SRSA." ECF No. 213, Prelim. Inj. Hr'g Tr. at 134:12-134:13. SRSA now seeks to redact that portion of the transcript, as the public disclosure of such technical information would cause competitive harm to SRSA. *See Delphix Corp. v. Actifio, Inc.*, No. 13-CV-04613-BLF, 2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014) (The public disclosure of "highly sensitive information regarding [Plaintiff's] product architecture and development . . . could cause harm to [Plaintiff] if the information were to become known to a competitor.").

Accordingly, redaction of information is warranted here lest the Court's "files might serve as a source of business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, No. 10-CV-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011). Indeed, the Court has already approved Level 1 restriction for the same categories of information included in documents filed with the Court. *See, e.g.*, ECF No. 110 at 7, 8, 10-11(seeking to restrict information about SRSA customer identities and preferences, product-development strategies, and the payments spreadsheet); ECF No. 204 (seeking to restrict customer identities in the parties' joint exhibit list); ECF Nos. 210 & 211 (granting SRSA's motions to restrict preliminary injunction brief and joint exhibit list, respectively).[2]

---

[2] Because no third parties were present at the hearing, the Court also suggested that the parties could state confidential information on the record with the right to later move to redact such information. *See* Prelim. Inj. Hr'g Tr. 174:6-174:7.

6

SRSA's proposed redactions are also narrowly tailored to exclude from the public record only the bare minimum needed to preserve the confidentiality of its information. In certain cases, it is not the redacted words themselves that are confidential, but the broader context that a word, phrase or sentence would reveal if that information became public. For example, if a customer's name was disclosed within a broader line of testimony revealing that customer's preferences or its profitability to SRSA, the disclosure of both that customer's name and its preferences would bring competitive harm to SRSA. But here, instead of seeking to redact the entirety of the discussion about that customer and its preferences, SRSA seeks only to redact that customer's name and other identifying information.

Finally, there is no practicable alternative to redacting the requested portions of the transcript. Public disclosure of the specific, narrowly tailored information SRSA seeks to redact would destroy the value of SRSA's confidential information and cause significant competitive harm to SRSA. To avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request. *Healthtrio, LLC v. Aetna, Inc.*, No. 12-CV-03229-REB-MJW, 2014 WL 6886923, at *1 (D. Colo. Dec. 5, 2014). In addition, should the Court grant SRSA's motion, SRSA will file a public, redacted version of the hearing transcript. *See Slawson Exploration Co. v. Arch Specialty Ins. Co.*, No. 15-CV-01131-KLM, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

Thus, SRSA respectfully requests that the Court redact the transcript for the March 11 hearing transcript and order Level 1 restriction over the unredacted version of the transcript. Along with its motion, SRSA submits a Proposed Order.[3]

### Certificate of Conferral Pursuant to D.C.COLO.LCivR 7.1(a)

Plaintiffs' counsel conferred with counsel for Defendants by telephone on June 17th and 23rd, and again by email between June 19 – 24, 2020.  Defendants state they do not oppose this Motion. Defendants indicated they disagree with the proposed redactions as not meeting applicable standards (except for Page 278, line 19 (all text)), but Defendants do not consider it a matter requiring court intervention at this time and so they consent to the relief requested, and Defendants added that they do not waive any substantive defense related to any of the materials discussed herein, and do not waive the right to contest the confidentiality of the materials Plaintiffs seek to restrict, as well as the designation of any such materials, in any future pleading or proceeding, including at summary judgment and at trial.

---

[3] Under the Court's Policy Concerning Electronic Availability and Redaction of Transcripts, a copy of this Motion will be sent via email to the Court Reporter Tracy Weir.

Respectfully submitted,

Dated: June 24, 2020

By: *s/ Warren A. Braunig*
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Victor H. Yu
*vyu@keker.com*
Puja V. Parikh
*pparikh@keker.com*

KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:     415-391-5400
Facsimile:     415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
*sbialecki@sheridanross.com*
Matthew C. Miller
*mmiller@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:     303 863 9700
Facsimile:     303 863 0223
Email:     *litigation@sheridanross.com*

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

**Compliance With Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.

9

1385965