**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-CV-02005-DDD-SKC

SRS ACQUIOM, INC., a Delaware corporation and
SHAREHOLDER REPRESENTATIVE SERVICES, LLC, a Colorado limited liability
company,

      Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

**DEFENDANTS' BRIEF REGARDING DISCOVERY DISPUTE
ON PNC DEAL AND FINANCIAL INFORMATION**

---

      Defendants PNC Financial Services Group and PNC Bank N.A. (collectively, "PNC") and

Heather Kelly and Alex Tsarnas (the "Individual Defendants") ask that the Court sustain their

objections to the discovery sought by Plaintiffs regarding PNC's customer, transaction, and

financial information. *See* ECF 226. The requests are not proportional to the needs of the case

and are not targeted to the claims alleged or damages sought by SRSA.

## INTRODUCTION

      This is a case between competitors. PNC and SRSA both provide services in corporate

transactions that require payment by an acquiring company to the shareholders of a purchased

company. SRSA alleges that PNC has gained an improper advantage in building its business and

securing customers. PNC denies the allegations. This case is very far along, having had extensive

discovery (thousands of documents produced and 17 depositions) and lengthy briefing in advance of a full-day evidentiary hearing on SRSA's motion for preliminary injunction. On that motion, the Court ruled for Defendants, determining that SRSA did not demonstrate any likelihood of success on any of its claims that any trade secrets existed. ECF 207.

Having lost the preliminary injunction motion in sweeping fashion, SRSA now seeks broad discovery into PNC's customer base and the details of PNC's transactions. The requests are not directed at deals where SRSA had a prior relationship (even tenuous) with the customer. They are not directed at deals where PNC's alleged misconduct was directly tied to a transaction. Nor are the requests limited to targeted financial records that might be relevant to SRSA's damages theories. Rather, these discovery requests are a fishing expedition into PNC's files untethered to any identified deal or legal theory advanced.

As Plaintiff, SRSA does not need PNC's records to determine whether it had a relationship with a customer and thus might have been denied a transaction. SRSA should not be permitted to root through PNC's deal files in pursuit of a claim to allow it to backfill its complaint. Rather, the burden is on SRSA, the Plaintiff, to identify deals that are relevant to its claims so that discovery can be targeted and proportional. This discovery dispute highlights the impropriety of SRSA's strategy, which is to use discovery to try to find claims and damages, and not to substantiate already pled claims and purported damages. *Torch Liquidating Trust v. Stockstill*, 561 F.3d 377, 392 (5th Cir. 2009) ("The role of discovery, however, is to find support for properly pleaded claims, not to find the claims themselves.").

Rather than reconsider its litigation strategy in the face of the Court's preliminary injunction ruling (which has focused the issues), SRSA has elected to go fishing for new claims

that it hopes will be more fruitful.  This approach is not in accordance with the proportionality requirements in the Federal Rules.  Proportionality in discovery (Fed. R. Civ. P. 26), and the "just, speedy, and inexpensive determination of every action and proceeding," (Fed. R. Civ. P. 1) are cornerstones of litigation in the District of Colorado, and SRSA's patently overbroad discovery requests violate the letter of the former while being the antithesis of the spirit of the latter.

## RELEVANT PROCEDURAL BACKGROUND

This is not a case where PNC has refused to provide discovery to SRSA.  PNC has produced 11,715 documents totaling 57,628 pages, including communications with PNC customers or potential customers that mentioned SRSA or SRSA's online products.  Seventeen witnesses were deposed, including the Individual Defendants and PNC's key executives involved in developing and marketing the products.  The Parties thereafter submitted thousands of pages of briefs and exhibits, which culminated in a full day evidentiary hearing before the Court on SRSA's motion for preliminary injunction.  On March 26, 2020, having considered this extensive evidentiary record and testimony presented, the Court rejected SRSA's motion, holding that SRSA failed to show that the purported trade secrets were trade secrets at all and that SRSA had waived any alleged trade secret protection by widely sharing the purportedly confidential information.  ECF 207.  The basis of the ruling was not a failure of proof by SRSA based on a lack of discovery against PNC; the basis of the ruling was that information solely within the possession of SRSA demonstrated the weakness of its own claims.  *See, e.g., id.* at 16 ("SRSA failed to answer this question in its motion papers and hearing evidence"); *id.* at 21 ("Plaintiffs point to no specific data or document").  Important for this dispute, and for consideration under the Rule 26 proportionality requirements, Defendants recently moved for summary judgment on the majority of the claims in

the case, in part due to the case dispositive holdings issued by Judge Domenico in the Preliminary Injunction ruling.  *See* ECF 227, 228, & 229 (Defendants' motions for summary judgment).

Discovery re-commenced after the ruling.  On June 22, 2020, Plaintiffs served nine sets of discovery on the various Defendants, including four sets of Requests for Production, two sets of Requests for Admission, and three sets of Interrogatories.[1]  Defendants' responses were due on July 22, 2020.  PNC asked for a 7 business-day extension.  SRSA was unwilling to provide the extension without material conditions.  PNC therefore responded on the due date.  Separately, PNC unconditionally consented to SRSA's request for an extension to serve discovery responses.  Six days after receiving Defendants' discovery responses, hours prior to a scheduled meet and confer teleconference, Plaintiffs sent an 8-page, single spaced letter listing purported concerns with Defendants' discovery responses.  The Parties held a 45-minute meet and confer call on July 29, and another 30-minute meet and confer call on the morning of August 3.

In these meet-and-confer calls, PNC requested that SRSA identify the specific deals and/or customers such that PNC would consider agreeing to produce documents about deals with customers who had an existing relationship with SRSA, or where SRSA could credibly allege the deal was connected to alleged misconduct by PNC.  *See also* July 29, 2020, Letter from M. Johnson, Ex. A.  Defendants also offered to respond to the 8-page letter by Monday, August 10. Plaintiffs refused that offer and demanded to call the Court to raise two overarching issues: whether SRSA is entitled to detailed discovery of every single deal PNC had earned since entering

---

[1] On June 26, 2020, Defendants served written discovery requests on Plaintiffs, and they also served a Rule 30(b)(6) deposition notice that contained 13 targeted deposition topics for a July 21, 2020, deposition.  Defendants responded on July 17, 2020 with 43-pages of objections to the notice and refused to provide a deponent until Plaintiffs addressed Defendants' objections.

the market, and whether SRSA needs detailed financial records and projections, including the financials underlying every transaction PNC has worked on, from PNC's files.

As PNC understands the matters in dispute, the following discovery requests are at issue:

- Interrogatory No. 2 and RFP No. 14 regarding PNC's customer engagements:

**INTERROGATORY NO. 2:**

Describe each customer engagement from January 1, 2018 through present pursuant to which PNC provided PNC's Payments & Escrow Services. For the purposes of this interrogatory, "Describe" means identify the customer, the deal parties, the specific payments and/or escrow service that PNC contracted to provide, the date and Financial Terms of PNC's engagement, the escrow amount (if any), number of payees, PNC's total revenues and profits from the engagement (including escrow interest), and any code name used for the engagement or project.

**REQUEST FOR PRODUCTION NO. 14:**

All documents from January 1, 2018 to the present constituting or reflecting communications between PNC and any potential or actual customer for PNC's Payments & Escrow Services, including but not limited to individuals or entities listed on any version of "HK Contacts" or the Strategic Buyers page of "Firms by Segement," about PNC's Payments & Escrow Services.

- The following two RFPs regarding PNC's financial information for its M&A payments and escrow services:

**REQUEST FOR PRODUCTION NO. 9:**

Documents sufficient to show the monthly, quarterly and annual revenues, expenses and profits for PNC's M&A Payments and Escrow Products, from January 1, 2018 to the present.

<u>**REQUEST FOR PRODUCTION NO. 16:**</u>

All documents reflecting revenue, profit, or other financial projections created by PNC for PNC's Payments & Escrow Services from 2017 until the present.

*See* Ex. B at 2; Ex. C at 3; Ex. D at 7; Ex. E at 3 (relevant excerpts only).[2]

## <u>LEGAL STANDARD</u>

Federal Rule of Civil Procedure 26(b)(1) "permits a party to obtain discovery of nonprivileged matters that are relevant to the actual claims and defenses in the pending action *and* proportional to the needs of the case." *Davis v. U.S. Dep't of Veterans Affairs*,No. 16-cv-00701-CBS, 2017 WL 3608192, at *8 (D. Colo. Aug. 22, 2017), *aff'd*, 730 F. App'x 571 (10th Cir. 2018). "The relevance and proportionality requirements in Rule 26(b)(1) do not permit a requesting party 'to engage in a fishing expedition in the hopes that he may turn up some relevant or useful information.'" *Id.* (internal citation omitted). "[A]ny proportionality review must begin with a determination of the relevance of the requested discovery, as the degree of relevance of the requested discovery will necessarily drive the remaining questions of how many resources should reasonably be expended in pursuit of it." *GSL Grp., Inc. v. Travelers Indem. Co.*, No. 18-cv-00746-MSK-SKC, 2020 WL 4282291, at *11 (D. Colo. July 24, 2020). The Federal Rules "should be construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R. Civ. P. 1.

---

[2] In addition, SRSA's RFP No. 15 to PNC Bank and RFP No. 11 to PNC Financial are within the sphere of this dispute. RFP No. 15 to PNC Bank seeks all "documents constituting or reflecting internal PNC communications relating to setting the Financial Terms for any potential or actual engagement to provide PNC's Payments & Escrow Services." Ex. C at 3. RFP No. 11 to PNC Financial seeks "all documents comprising, constituting, reflecting or containing any lists of potential customers or sources of referrals for PNC's Payments & Escrow Services." Ex. E at 1.

## ARGUMENT

SRSA asserts that the far-reaching discovery of every PNC deal is necessary "to calculate PNC's unjust enrichment, and to identify deals that SRSA lost to PNC as a result of various torts." July 28, 2020, SRSA Letter, Ex. F at 3.  SRSA's request is without merit because: (a) SRSA's legal theories do not entitle it to discovery on *all* transactions, including those where SRSA had no prospect of earning that business or those where PNC would have obtained the business regardless of any alleged misconduct; and (b) the requested information is overbroad, extending beyond what would be needed for SRSA to advance any legitimate theory.

### A.      SRSA Is Not Entitled to Discovery on Every Detail of Every PNC Transaction.

SRSA has no valid basis to request *every* detail for *every* transaction of PNC as well as every communication with every actual or potential PNC customer.  These requests indicate that SRSA wants to mine PNC's files for an improper purpose, as opposed to proving the case it filed. There is no valid reason for SRSA to obtain all of PNC's customer records, including even those entities with no ties to SRSA or for which SRSA lacks a good faith basis to contend PNC's alleged misconduct was directly tied to the transaction.  SRSA should be required to identify those customers with whom it had an existing relationship so that any remaining discovery that has not already occurred can be directed at the matters that are truly at issue in the case and not overly burdensome.

A review of SRSA's legal theories shows the requests lack proportionality.  For example, SRSA has claims for intentional interference with contract (Count V) and prospective economic advantage (Count VIII).  For these, SRSA must show "a contract existed" with a customer, *Dawson v. Goldman Sachs*, No. 13-cv-02030-CMA-KMT, 2014 WL 5465127, at *4 (D. Colo. 2014), *aff'd*,

680 F. App'x 662 (10th Cir. 2017), or "the existence of a prospective business relationship" with the prospect, which "exists only if there is a reasonable likelihood or probability that a contract would have resulted; there must be something beyond a mere hope," *Seidl v. Greentree Mortg.*, 30 F. Supp. 2d 1292, 1302 (D. Colo. 1998).

Here, the identity of these contracts or prospects is solely within SRSA's possession. Moreover, PNC already searched for and produced documents discussing SRSA or SRSA's products, including those that referenced a potential SRSA customer. SRSA's requests are *not* limited to identified customers where SRSA had a "reasonable likelihood or probability" that a contract would have been formed. It should be SRSA's burden to first identify specific contractual engagements or prospective business relationships.[3]

Similarly, Count III claims that the Individual Defendants breached their agreement not to solicit SRSA customers for a year after their departure. As to Kelly, this obligation was further qualified to allow her to immediately solicit her prior customers listed in the appendix to her agreement (Schedule 1). ECF 207 at 15-16. As a result, Count III would only support discovery into transactions that (a) involved customers not included on Schedule 1 to Ms. Kelly's contract; (b) were obtained by PNC within a year of the Individual Defendants' departure; and (c) involved one of the Individual Defendants soliciting the business. SRSA's discovery is not so targeted.

---

[3] SRSA's discovery responses identify certain deals it believes are at issue in this case. It has not limited its requests to PNC to those transactions. Even if SRSA were to so limit its requests, PNC would be unable to comply because SRSA has designated its discovery responses as "Highly Confidential – Attorneys' Eyes Only," rendering it impossible for PNC to discuss these deals with PNC or the Individual Defendants. The Parties have previously submitted briefs regarding SRSA's over-designation of documents as "Highly Confidential – Attorneys' Eyes Only," and PNC understands this matter to be under submission to the Court and respectfully requests that this Court rule on that motion. *See* ECF 56 & 57.

Finally, Counts I and II (ECF 66) assert claims for alleged trade secret misappropriation. These Counts are based on the same trade secrets that the Court rejected at the preliminary injunction phase, meaning that SRSA has not made a *prima facie* showing that any relevant transactions were related to misappropriation of any SRSA trade secret.  This initial showing is required even as to a disgorgement remedy, which is "extraordinary" and requires proof of a direct connection "between the profits and the wrongdoing" related to a "relevant transaction." *EarthInfo, Inc. v. Hydrosphere Res. Consultants, Inc.*, 900 P.2d 113, 119 (Colo. 1995).  Thus, again, SRSA should be required to identify the "relevant transactions" it believes it would have earned absent the alleged misappropriation, especially where the Court has determined that SRSA's claimed trade secrets are not trade secrets at all.

In any event (and dispositive for the discovery motion at issue), even a valid claim for disgorgement of profits would not support the discovery sought by SRSA here.  SRSA's misappropriation counts do *not* identify any lost customers and are not based on losing specific deals.  Rather, SRSA's theory hinges on the speculative assertion that *all* of PNC's deals are improper because its alleged use of trade secrets allowed it to enter the market.  Under this circumstance, SRSA does not need all the information about each deal, but rather an aggregate profit figure for all deals in which PNC has been involved in a competing business.

In sum, SRSA's discovery requests should be limited to those customers it can identify where it had a pre-existing relationship, especially as Defendants will disproportionally bear the burden of searching for and producing irrelevant documents not tied to a legitimate trade secret. As such, PNC's objections should be sustained.

**B.      SRSA is Not Entitled to Detailed Financial Information.**

In addition to seeking complete financial information for each individual deal of PNC, SRSA seeks far-reaching financial discovery on PNC's operations on an overall basis. *See* p. 6, *supra*. These requests are overly broad and not tied to what is necessary for SRSA's legal theories or damages claims. These requests would require the production of any document reflecting revenue for any specific deal, as well as any aspect of the business at all. For the reasons set forth above, SRSA is not entitled to this transaction-specific data on all of PNC's deals involving customers with no prior relationship with SRSA and/or in connection with transactions that SRSA did not have a reasonable expectation of obtaining absent PNC's alleged misconduct. Moreover, as set forth above, even assuming (contrary to fact) SRSA states a valid claim for the "extraordinary" remedy of disgorgement, all SRSA requires is an aggregate profit figure. SRSA has articulated no valid reason why it requires the far-reaching information it requests, such as *projections* for revenue, profit or other financial matters, or "monthly, quarterly and annual" revenues, expenses and profits. SRSA's damages, if any, would be based on actual profits of PNC derived from use of the alleged trade secrets. *See Bolsa Res., Inc. v. AGC Res., Inc.*, No. 11-cv-01293-MSK-KMT, 2013 WL 5366959, at *2 (D. Colo. Sept. 25, 2013) ("Under the Colorado Uniform Trade Secrets Act, a plaintiff can recover . . . a defendant's *profits* derived from misappropriation of trade secrets." (emphasis added)). SRSA's grossly overbroad and irrelevant discovery requests into PNC's financial documents should be denied as disproportionate.

## <u>CONCLUSION</u>

For the foregoing reasons, Defendants respectfully request that the Court sustain PNC's objections to the discovery at issue.

Dated: August 11, 2020

Respectfully Submitted,

By: */s/ James F. Bennett*

James F. Bennett
Matthew E. Johnson
**DOWD BENNETT LLP**
1775 Sherman Street, Suite 2010
Denver, Colorado 80203
Telephone: 303-353-4361
Facsimile: 314-863-2111
Email: jbennett@dowdbennett.com
      mjohnson@dowdbennett.com

Hara K. Jacobs
Noah S. Robbins
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215-668-8500
Facsimile: 215-864-8999
Email: jacobsh@ballardspahr.com
      robbinsn@ballardspahr.com

*Attorneys for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on this 11th day of August, 2020, a true and correct copy of the foregoing document was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Warren A. Braunig
Benjamin D. Rothstein
Michelle Ybarra
Victor H. Yu
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

Scott R. Bialecki
Matthew C. Miller
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202

***Attorneys for Plaintiffs***

*/s/ Matthew E. Johnson*