



**Warren A. Braunig**
(415) 773-6642
wbraunig@keker.com

July 28, 2020

**VIA ELECTRONIC MAIL**

| | |
|---|---|
| Matthew E. Johnson | James Forrest Bennett |
| Dowd Bennett LLP Denver | Dowd Bennett LLP St. Louis |
| 1775 Sherman Street, Suite 2010 | 7733 Forsyth Boulevard, Suite 1410 |
| Denver, CO  80203 | St. Louis, MO  63105 |
| mjohnson@dowdbennett.com | Jbennett@dowdbennett.com |

Re:   *SRS Acquiom Inc., et al. v. PNC Financial Services Group, Inc., et al.*
        Case No. 1:19-cv-02005-DDD-SKC

Dear Counsel:

We write in advance of the parties' telephonic meet-and-confer scheduled for July 29 to identify the deficiencies with Defendants' responses to discovery received last week.  Many of the deficiencies break down into overarching issues.  For other responses, the problems are more discrete.  We do not attempt in this letter to catalog every problem with each response; and we reserve our right to identify additional issues with the responses.

**Refusal to Respond Based on Preliminary Injunction Ruling**

Defendants refuse to respond to more than a dozen requests, claiming that the Court's preliminary-injunction ruling has invalidated or mooted Plaintiffs' trade-secret claims.  That is not factually correct, and it is not the law.  It is well established in the Tenth Circuit and beyond that a ruling on a preliminary injunction motion is not a ruling on the merits of the claim. *See, e.g.*, *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981) ("[F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."); *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003) ("[I]t bears remembering the obvious: that when a district court holds a hearing on a motion for preliminary injunction it is not conducting a trial on the merits.").  An adverse preliminary injunction ruling is not summary judgment, and does not act as a bar to further discovery.  Indeed, the Court's PI Order emphasized both the high standard to obtain a preliminary injunction and the necessarily preliminary nature of the ruling.  *See, e.g.*, ECF 207, Order Denying Plaintiffs' Motion for a Preliminary Injunction, at 11 ("[E]ven though it is possible that SRSA could prevail on some of its claims at trial, that is not enough to justify a preliminary injunction unless, as explained

1388744

Counsel                                               Via Electronic Mail
July 28, 2020
Page 2

above, Plaintiffs have made such a 'strong showing' that they are likely to succeed that the Court is convinced they are clearly and unequivocally entitled to this extraordinary remedy.").

The purpose of Plaintiffs' requests relating to SRSA's trade secrets is either to establish facts the Court found lacking at the PI hearing or to strengthen SRSA's claims between now and trial. Defendants' refusal to provide additional information about the alleged misappropriated trade secrets would unfairly and improperly preclude SRSA from further building its case. The requests subject to these improper objections include:

- RFP Nos. 13, 15, 16, 17, 18, 21, 24 and 25 to PNC Bank
- Interrogatory Nos. 6 to PNC Bank
- RFA Nos. 3, 4, 5 and 12 to Kelly

RFP No. 16 and 17 to PNC Bank are particularly important examples where Defendants seek to evade discovery on critical information. RFP No. 16 seeks documents relating to the "operational rules, workflows, specifications, business logic or functionality of PNC's Payments and Escrow Products, such as guidelines, instructions, wikis, handbooks, emails or manuals." RFP No. 17 seeks documents "relating to efforts to determine the functionality of PNC's M&A Payments and Escrow Products." The requested information about how PNC's P&E products work (and how the products were devised) goes to the heart of whether PNC used the information Kelly and Tsarnas took with them—in document form and in their own minds— about SRSA's products. PNC's objection that the Court found SRSA's product development *strategies* are not a protectable trade secret is, as described above, a misstatement of the law; but these requests do not go to *strategies*. They go to similarities at the core of SRSA's and PNC's products, and how they came to be.

RFP No. 18 to PNC Bank seeks documents reflecting Defendants' efforts to identify customers or potential customers for the sale and marketing of PNC's products. Given that Plaintiffs have alleged that Defendants used SRSA customer lists and information to identify target customers, this request is plainly appropriate. (In the interest of compromise, however, we are willing to remove "sources of business, sources of referral and/or market segments" from the scope of this request.)

PNC's refusal to answer the other RFP's and interrogatories is just as improper:

- RFP No. 13: Produce documents related to the development or use of the "HK Contacts" document and derived documents.

- RFP No. 15: Produce documents related to setting the financial terms for PNC customer deals for Payments & Escrow Services.

- RFP No. 21: Produce documents related to the development and modification of PNC's Payments Spreadsheet.

1388744

Counsel                                                   Via Electronic Mail
July 28, 2020
Page 3

- RFP No. 24:  Produce documents related to the solicitation of customers listed on SRSA customer lists and lists derived from SRSA information.

- RFP No. 25:  Produce documents related to the decision to include compensation payments, Pre-Closing Solicitation and Deal Dashboard in PNC's product offering.

- Rog No. 6:  Identify the payments spreadsheet used by PNC in connection with each deal for Payment & Escrow Services.

Other than your improper objections, there is no basis to refuse to produce this targeted and highly relevant information.

Kelly likewise refuses to answer RFAs No. 3-5 and 12 by suggesting that the requests are not relevant in light of the PI Order and by interposing nonsensical objections.  These requests are straightforward and clear, seeking information directly relevant to the claims in this case.  Kelly must answer them by admitting or denying.

Please withdraw Defendants' improper objections as described above, and agree to provide substantive responses and produce documents.

In addition, Defendants object to answering Interrogatory No. 12 to PNC Bank on the outrageous basis that SRSA has *waived* its right to seek relief at trial on trade secrets other than those included in its preliminary-injunction motion.  We are aware of no law supporting that position – if you have a case for that remarkable proposition, please provide it to us.

**Failure to Provide Critical Damages Discovery**

Time and again, in its responses, Defendants refuse to provide any information in response to discovery seeking information related to SRSA's damages resulting from Defendants' conduct.

*Customer Information*

Interrogatory No. 2 to PNC Bank seeks detailed information about the deals PNC has engaged in for Payment & Escrow Services since Kelly and Tsarnas joined PNC and enabled PNC to develop a competing and nearly identical product.  In order to calculate PNC's unjust enrichment, and to identify deals that SRSA lost to PNC as a result of various torts, Plaintiffs need an identification of PNC's deals, including the deal parties, services provided, and financial terms of the engagement, including the associated revenue and profit.  There could be no more essential request to enable a damages analysis.  PNC's suggestion that SRSA must first identify a limited set of customer engagements puts the cart before the horse.  SRSA does not always know that it lost deals or customers to PNC; that is precisely why it seeks this information.  In any event, unjust enrichment is an applicable form of damages even if SRSA did not "lose the profits" on a particular deal.  Nor is this a "blockbuster" interrogatory as that term is used by the courts in this district.  Plaintiffs are not seeking contentions but financial information.  And if that information can be identified from the production of a database or documents containing all

Counsel                                                          Via Electronic Mail
July 28, 2020
Page 4


of the requested information, PNC is free to produce such information instead.  Fed. R. Civ. P. 33(d).

RFP No. 14 to PNC Bank, which seeks communications with customers about PNC's Payments & Escrow Services, is essential to understanding which products or features PNC was emphasizing in trying to win business, how PNC positioned itself vis-a-vis SRSA, and why customers chose, or did not choose PNC, which will go to the damages attributable to PNC's misconduct.  PNC took the position at the preliminary injunction phase that customers choose PNC primarily on the basis of relationships, not product capabilities or technology.  This discovery will test that claim, and also demonstrate that the information Defendants misappropriated was critical to its winning business.   PNC Bank improperly requests that Plaintiff first identify the customers it has lost to PNC, but, again, that is backwards:  we do not always know which business would have flowed to SRSA instead.  The information requested will inform that.  In order to narrow this request though, we will agree to limit it to pre-contract communications that were part of the sales process (in other words, before the customer agreed to work with PNC on the particular deal in question).

RFP No. 24 to PNC Bank, which seeks documents relating to, discussing or describing efforts by PNC to sell to customers on customer lists provided to PNC by Kelly is in the same spirit; and Defendants' objections are just as improper.

Defendants relatedly refuse to provide lists of potential customers generated for PNC's Payments and Escrow Business (RFP No. 11 to PNC FSG).  The identity of those lists, when they were created, who created them, and the similarity between the names on there and names on SRSA's lists is directly probative.  If your concern is one of breadth and scope, would you consider a temporal limitation on this request?

*Financial Information*

Defendants inexplicably refuse to produce revenue, profit and financial projections for PNC's P&E Services (RFP No. 16 to PNC FSG).  In addition, PNC still refuses to produce documents in response to RFP No. 9, which sought documents sufficient to show the monthly, quarterly and annual revenues, expenses and profits for PNC's M&A Payments and Escrow Products, from January 1, 2018 to the present.  PNC previously resisted that discovery on the basis that it was improper for expedited discovery and should wait until regular discovery.  Yet PNC still refuses to produce it.

*Licensing-Related Information*

PNC's refusal to provide information about its efforts to purchase, obtain a license, or sell a license to the technology at issue in this litigation makes no sense.  (RFP Nos. 17-18 to PNC FSG).  Plaintiffs have requested, as one form of damages, a reasonable royalty.  PNC's prior licensing efforts are a core consideration in that determination.

1388744

Counsel                                                          Via Electronic Mail
July 28, 2020
Page 5


**Kelly and Tsarnas Communications with Customers**

Kelly refuses to produce personal communications between her and customers or potential customers concerning SRSA, SRSA's products, or PNC and PNC's products (RFP No. 7 to Kelly).  This discovery is relevant to both Plaintiffs' breach of contract claims and its trade-secret and other tort claims.  To the extent that Kelly was communicating with potential customers via personal email, text message, instant messaging, social media or other mechanisms, that is highly probative.  Will you withdraw these objections?

Kelly's refusal to produce her communications with Kingsley and Miller, two customers who submitted declarations on Kelly's behalf, is equally improper (RFP No. 8 to Kelly).  The caveat "relating to the claims and defenses in this action," which modifies Kelly's response, is inappropriate.  By soliciting declarations from these two individuals, Kelly has put the entirety of her communications with them at issue, for issues of foundation and bias.  Furthermore, it is inconceivable that communications with Kingsley or Miller could be privileged.  Please withdraw these objections and produce all communications with either of them.

Tsarnas contends that he has no *non-privileged* communications with customers (RFP No. 6 to Tsarnas).  First of all, how could such communications be privileged?  Are you actually refusing to produce on privilege grounds?  Second, please confirm that you have searched Tsarnas's personal email, text messages, instant messaging, social media and other communication media.

Relatedly, in response to Interrogatory No. 4 to Tsarnas, Tsarnas states that he "does not recall" any communications with potential customers for PNC's Payments & Escrow Services. Has he engaged in a good faith investigation, including a review of personal email, text messages, instant messaging, social media and other communication media?  Kelly's response to Interrogatory No. 4 to Kelly is similarly problematic. She responds that she "is not able to recall the specific communications with potential customers of PNC." Does she remember any detail about whom she communicated with, or when?  Has she engaged in a good faith investigation, including a review of personal email, text messages, instant messaging, social media and other communication media?  We are entitled to a complete narrative response from Kelly.

**Compensation for, and Employment Information Concerning, Kelly and Tsarnas**

In response to Interrogatories No. 8 and 9 to PNC Bank, seeking detail on the compensation and remuneration paid to Kelly and Tsarnas by PNC, your identification of their offer letters is insufficient.  Much of their compensation was contingent on their performance and business that they personally brought into PNC.  Moreover, Kelly testified that her bonus compensation had differed in material ways from the contents of the offer letter that has been produced in this litigation.  We contend that Tsarnas and Kelly were paid extraordinary compensation because of the unique value of the SRSA information (including customer information) they would bring to PNC's development process.  We are entitled to know the total amount each individual defendant received in total compensation from PNC, including any severance pay to Mr. Tsarnas when he left PNC.

1388744

Likewise, RFP No. 23 to PNC Bank seeks documents sufficient to show the credit given to any former SRSA employee for bringing in a particular customer or deal.  PNC witnesses testified that PNC, for bonus purposes, allocates credit for each customer deal to particular PNC employees.  Such information would potentially demonstrate that Kelly and Tsarnas (or other former SRSA employees such as Luda Semenova) were given credit for particular deals, even if they did not directly participate in the sales process, which could nonetheless be a violation of their contractual obligations; or, for example, because they were the ones who suggested that PNC target that customer in a particular way, using their trade-secret knowledge of SRSA's customers.  This information must be produced.

In response to RFP No. 13 to PNC FSG, you offer to provide only documents relating to the hiring of Kelly and Tsarnas but refuse to produce their performance appraisals, bonus determinations, or recommendations for promotion, demotion, or termination.  Such information would reflect on, for example, the perceived value they brought to PNC, and PNC's understanding of their importance to the product development and sales process.  For example, if Kelly's performance appraisal indicated that she "was the most important person in spearheading the development of PNC PAID" or that her "knowledge about Customer A was critical to winning that business," such information would be highly relevant at trial.  Will you withdraw these objections and produce the requested information?

Defendants similarly refuse to produce information about the recent departure of Defendant Tsarnas from PNC.  (RFP No. 14 to PNC FSG; RFP No. 9 to Kelly; RFP No. 8 to Tsarnas)  This information is highly relevant, as it may reflect the value that Tsarnas provided to PNC, PNC's determination that he had acted improperly in connection with his departure from SRSA, or the fact that, after helping to lead the development of PNC's competing products, he was no longer deemed necessary.   Insofar as responsive material is actually privileged, PNC must log it and establish its privileged status.

**Document Deletions**

Defendant Tsarnas's response to Interrogatory No. 2 to Tsarnas makes no sense.  He says that he routinely deletes text messages and does not recall the date on which he deleted any text messages, yet he simultaneously responds that at the time he deleted messages, there was no pending litigation or threat of imminent litigation.  How can he possibly know the latter in light of the former?  On what date does Tsarnas contend there was a threat of imminent litigation?  Please supplement this response to explain Tsarnas's position.  With respect to Interrogatory No. 3 to Tsarnas, Tsarnas states that he is "not aware of any non-privileged, responsive communications" about the deletion of documents or communications involving SRSA.  Yet Kelly testified that she and Tsarnas communicated about deleting text messages because she feared SRSA would be reading their emails.  Please clarify whether Tsarnas's response includes communications with Kelly, and whether his position is that he has not discussed document deletion with Kelly at any point in time from January 1, 2018 to the present.

Counsel                                                     Via Electronic Mail
July 28, 2020
Page 7


Kelly's response to Interrogatories No. 2 and 3 to Kelly is likewise improper.  Kelly's response to Interrogatory No. 2 refers back to her deposition testimony and all of the information identified by Forensic Pursuit.  Her testimony on document deletion is muddled and inconsistent. We are seeking a clear and definitive narrative response from Kelly. As with Tsarnas, Kelly claims that her deletion did not occur at "any time when there was pending litigation or the threat of imminent litigation."  When does she contend that there was a threat of litigation? As for Interrogatory No. 3, we want to clarify whether her contention is that she never discussed document deletion with *anyone* except lawyers, including Tsarnas.

Tsarnas's responses to RFA Nos. 4, 6, 7 and 8 are evasive.  He neither admits nor denies the request, and he must do so.  The RFA did not ask about "pending litigation" or "the claims and defenses in this action." It is a simple yes or no request.  With respect to RFA No. 5 to Tsarnas, is his denial based on the objections that he interposes, or is it a straightforward denial of the request?

Kelly's responses to RFA Nos. 7-11 are problematic for the same reasons and must be supplemented to admit or deny the straightforward "yes or no" request.

**Supposedly "Blockbuster" Interrogatories**

You have refused to provide a narrative response to Interrogatories No. 12 and 13 to PNC Bank, arguing that these constitute impermissible "blockbuster" interrogatories.  We trust then that you will have no objection when Plaintiffs decline to answer Defendants' numerous blockbuster interrogatories.  Although we are prepared to forgo these interrogatories, we ask that you agree to produce the documents you were asked to identify in response to the interrogatories; documents that you contend show that SRSA's alleged trade secrets are not confidential and documents that you contend support your affirmative defenses.  Please confirm that you will do so.

Interrogatory No. 5 to Tsarnas and Interrogatory No. 5 to Kelly are not "blockbuster" interrogatories.  They ask for a narrative explanation for any answers to requests for admission that are other than an unqualified admission.

**Other Issues**

RFP No. 11 to PNC Bank:  PNC Bank objects on the basis that it does not know who SRSA's customers are, and that it previously produced documents involving customers that mentioned SRSA.  Those previous requests were limited to email involving Kelly and Tsarnas.  We ask that you make a broader search for documents and communications that refer to any companies as SRSA customers or detail information about SRSA's relationship or sales efforts with respect to such customer. That is directly related to our intentional interference claims.

RFP No. 12 to PNC FSG:  What is your basis for refusing to produce widely-distributed marketing and sales materials concerning PNC's products?

1388744

Counsel                                                   Via Electronic Mail
July 28, 2020
Page 8

RFP No. 15 to PNC FSG: The relevance of demand letters, draft complaints and other documents reflecting PNC's efforts to enforce its own intellectual property rights and contacts is quite relevant. PNC has taken positions in this litigation that certain categories of information are not confidential or trade-secret in this industry. If PNC has taken conflicting positions in other situations, that is certainly relevant. Defendants' emphasis at the PI hearing on a case involving Wilmington Trust and an SRSA employee alone should demonstrate the relevance.

Interrogatory No. 7 to PNC Bank: Plaintiffs ask PNC to identify all documents in its possession that reflect SRSA or an SRSA employee in a metadata field. PNC responds to a strawman, suggesting it should not have to identify "email communications from SRSA and SRSA employees unrelated to any issue in this action, SRSA documents that SRSA has publicly released, or documents unrelated to the offering or provision of M&A Escrow and Payments Services." We are not seeking email communications at all—except to the extent they contain responsive attachments—and we are not seeking public marketing materials. PNC should search the custodians and data repositories it is otherwise searching for documents with SRSA's name or employee names in metadata. To the extent you need SRSA to provide a list of all of its employees to facilitate this search, we would be happy to do so. Finally, the Forensic Pursuit data referenced in your response was limited solely to Kelly and Tsarnas's machines. It did not provide information on SRSA documents that might have been sent to other individuals or locations at PNC.

Interrogatory No. 11 to PNC Bank: PNC partially answered this interrogatory but has not provided the full information requested. Will PNC commit to answer this interrogatory in full?

RFA No. 1 to Kelly: Kelly says she has no "specific recollection of communications with SRSA employees" in the year after her departure from SRSA. Has she undertaken a good faith review of documents produced in this case in connection with making that answer?

\*\*\*

We look forward to discussing these issues with you tomorrow.

Sincerely,

Warren A. Braunig

WAB:mls

1388744