IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

**PLAINTIFFS' DISCOVERY BRIEF REGARDING PLAINTIFFS'
MOTION TO COMPEL DEFENDANTS' DISCOVERY RESPONSES**

## I. INTRODUCTION

Plaintiffs move to compel regarding two discrete issues: (1) Defendants' refusal to provide discovery on the grounds that the Court's PI Order rendered otherwise discoverable material irrelevant and non-proportional; and (2) Defendants' refusal to provide *any* damages-related discovery at all, even after previously conceding the information is relevant.

SRSA brought this action asserting claims for trade secret misappropriation, breach of contract, and related torts, after Defendants used SRSA information provided by two former employees to develop copycat versions of SRSA's products and to target SRSA's customers. In March, the Court denied SRSA's motion for a preliminary injunction (which addressed only a subset of SRSA's claims), finding that SRSA had not met the heightened standard for a mandatory injunction. The Court recognized that, with further discovery, SRSA may succeed on its claims at trial. However, since the PI Order issued, Defendants have stonewalled, contending

1

that the PI Order was a preclusive and final determination on the merits of SRSA's claims, and refusing to provide any damages-related discovery whatsoever. Neither position has merit, and Defendants' obstructionist tactics are improper. Meanwhile, the deadline for expert reports—including reports on damages—is just six weeks away. Because Defendants have no excuse for refusing to produce the requested discovery, they should be compelled to do by August 24.

## II.    BACKGROUND

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") developed a groundbreaking online platform to provide payments-and-escrow services for parties to M&A transactions. SRSA's products offer a nimble alternative to the cumbersome paper process. Defendants Heather Kelly and Alex Tsarnas are former senior SRSA employees deeply familiar with operation, strategy, and design behind SRSA's online offerings, and who possessed a wealth of knowledge about SRSA's customers. Defendants PNC Financial Services Group and PNC Bank (collectively, "PNC") hired Kelly and Tsarnas to develop a copycat platform at PNC. In developing its platform and targeting SRSA's customers, PNC knowingly relied on confidential and trade secret information that Kelly and Tsarnas took from SRSA.[1]

For example, immediately before resigning from SRSA, Kelly accessed confidential SRSA materials, such as Acquiom Intake Dashboard, and scoured her email to compile information about SRSA's customers. She saved her findings in a document named "HK Contacts." After her arrival at PNC, Kelly used "HK Contacts" to populate a spreadsheet titled "Firms by Segement [sic]," and prioritized SRSA customers for Defendants to solicit using

---

[1] Evidence of Defendants' misappropriation that SRSA obtained during expedited discovery is detailed in SRSA's preliminary-injunction motion and reply. ECF Nos. 88, 163.

2

SRSA's customer information. Based on the limited information PNC produced during expedited discovery, SRSA has identified approximately twenty deals lost to PNC as a result.

Expedited discovery further revealed that Kelly and Tsarnas spent their first six months at PNC providing details about SRSA's products and product-development strategies to PNC's engineering team in order to enable PNC to build copycat products. During their meetings with PNC engineers, Kelly and Tsarnas identified which features PNC should include and why, and provided a roadmap for PNC's product development. Before returning her SRSA laptop, Kelly also emailed herself SRSA documents, including SRSA's proprietary "Payments Spreadsheet," which she later circulated at PNC and which PNC used to develop its competing platform. Armed with SRSA's confidential and trade-secret information, PNC shortened its development timeline and brought a full suite of competing products to market within a year.

On July 11, 2019, SRSA filed this lawsuit, seeking injunctive relief and damages based on unjust enrichment, lost profits and reasonable royalty theories. ECF No. 1. On July 25, 2019, SRSA agreed to forgo a TRO on the condition that the parties stipulate to expedited discovery and a briefing schedule on the PI motion. ECF No. 24. The Court adopted the stipulation and ordered limited document discovery and depositions. ECF Nos. 24, 46. The four-month expedited discovery period focused almost exclusively on issues relevant to the Court's determination on preliminary injunctive relief. Defendants refused to produce any financial or damages-related discovery during that period (*see* ECF Nos. 49, 51), and refused to provide discovery into issues not closely tethered to the PI motion. On November 25, 2019, SRSA moved for a preliminary injunction on five of SRSA's numerous trade secrets and on related

3

claims for breach of contract.[2] Following a one-day evidentiary hearing, on March 26, 2020, the Court concluded that SRSA had "failed to make the difficult showing that it is entitled to an injunction at this time," and denied SRSA's motion. ECF No. 207, at 2 (hereinafter "PI Order").

This Court subsequently issued a Scheduling Order requiring the parties to complete discovery in short order. ECF No. 215. Expert reports are due in six weeks, and all discovery closes in four months. SRSA promptly served discovery requests on June 22, 2020 (one week after a stipulated discovery hiatus ended), including 33 requests for production, 24 interrogatories, and 20 requests for admission. SRSA's requests focus on damages-related issues and understanding Defendants' use of SRSA information. Defendants responded to the discovery on July 22, 2020 but produced no documents and provided no substantive response to almost every request. Following meet-and-confers, the parties reached an impasse on two issues regarding the 21 requests identified in **Appendix A** (the "Disputed Requests"), which reproduces verbatim SRSA's requests and Defendants' responses thereto.[3] Despite not having made a substantive document production in ten months, on August 10, 2020, Defendants filed three motions for partial summary judgment on nearly all of SRSA's claims.

## III. ARGUMENT

Defendants' claim that the PI Order shields them from discovery is without merit and

---

[2] The trade secrets at issue in SRSA's PI motion were (1) customer lists and information, (2) the Payments Spreadsheet, (3) pricing strategies, (4) product-development strategies, and (5) payment methods.

[3] In a July 28, 2020 letter, SRSA detailed several issues with Defendants' responses, and the parties met and conferred the next day. On August 3, 2020, Defendants confirmed that the parties were at an impasse on the two issues presented here. There are more than two dozen other SRSA requests that are the subject of ongoing meet-and-confer efforts and not addressed in this motion. However, Defendants have yet to even respond to SRSA's July 28, 2020 letter.

their refusal to provide damages discovery is unjustified for at least the following reasons.

### A.  Defendants cannot rely on the PI Order as a shield from discovery.

In fourteen Disputed Requests, SRSA seeks discovery regarding Defendants' misappropriation of SRSA information:

- Use of SRSA's Customer-information Trade Secrets (RFPs 13, 18, 24 to PNC Bank; RFA 3 to Kelly): These requests seek information regarding the development and use of "HK Contacts"; efforts by PNC to identify and prioritize customers; efforts to sell to customers listed on "HK Contacts" or "Firms by Segement"; and Kelly's review of SRSA's Acquiom Intake Dashboard in creating a customer contact list later used at PNC.

- Use of SRSA's Workflow, Paying-agent, and Product Development Strategies Trade Secrets (RFPs 16, 17, 25 to PNC Bank): These requests seek information regarding the operational 0rules and workflows of PNC's platform; efforts to determine the functionality of PNC's platform; and PNC's decision to include particular products.

- Use of SRSA's Payments Spreadsheet, Paying-agent, and Product Development Strategies Trade Secrets (RFP 21 to PNC Bank; RFAs 4, 5, 12 to Kelly; Rog 6 to PNC Bank): These requests seek information regarding the development and modification of PNC's payment spreadsheet; Kelly's use of SRSA's Payment Spreadsheet at PNC; and PNC's use of a payment spreadsheet.

- Use of SRSA's Pricing Strategies (RFP 15 to PNC Bank): This request seeks information regarding PNC's setting of financial terms for deals.

- Defendants' Affirmative Defenses (Rog 12 to PNC Bank): This request seeks information about Defendants' claim that SRSA information is ineligible for trade secret protection.[4]

Defendants refuse to respond to these requests on the grounds that the PI Order "held that [some aspect of each of the fourteen requests] are not a protectable, confidential trade secret" and the requested discovery is therefore irrelevant and non-proportional. That objection is legally,

---

[4] Defendants also refuse to respond on the grounds that SRSA waived trade secret claims that were not part of its PI motion. Defendants cite no authority for this remarkable proposition; nor is SRSA aware of any. For this request, however, SRSA has offered to forgo a narrative response if PNC agrees to identify all documents it contends demonstrate that SRSA's trade secrets are publicly available.

5

1388684

factually, and logically flawed.

A preliminary injunction ruling has no bearing on the merits determination. *See, e.g.*, *Heideman v. S. Salt Lake City*, 348 F.3d 1182, 1185 (10th Cir. 2003) ("[I]t bears remembering the obvious: that when a district court holds a hearing on a motion for preliminary injunction it is not conducting a trial on the merits."). Courts are not bound by legal or factual rulings made at the preliminary-injunction phase, and preliminary-injunction rulings have no effect on parties' ability to obtain later discovery.[5]

The reason is apparent: "[a] hearing for preliminary injunction is generally a restricted proceeding, often conducted under pressured time constraints, on limited evidence and expedited briefing schedules." *Id.* at 1188. Here, every aspect of the discovery preceding SRSA's PI motion involved compressed schedules and significant, substantive limitations on the number, types, and scope of requests.[6] SRSA drafted its PI briefing on a compressed timeline, subject to word limits, and without numerous critical documents that Defendants belatedly produced. *See* ECF No. 145. In length and substance, the one-day evidentiary hearing—during which the Court allotted SRSA only two hours to present evidence—was a fraction of the anticipated trial, which even Defendants estimate will take six to ten days. ECF No. 180; ECF No. 214, at 18.

---

[5] *See, e.g.*, *Univ. of Tex. v. Camenisch,* 451 U.S. 390, 395 (1981) ("[F]indings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits."); *Pictet Overseas, Inc. v. Helvetia Tr.*, No. 13-81088-CIV, 2014 WL 5034725, at *5 (S.D. Fla. Sept. 8, 2014) (permitting discovery into topics that "re-visit[]" the "legal findings" made in the court's preliminary injunction decision).

[6] *See* ECF No. 26 at 3-4; *see also* ECF No. 51, at 2 (Discovery Order, noting "'[e]xpedited discovery should be limited . . . and narrowly tailored to seek information necessary to support expedited or preliminary relief.'") (quoting *Avaya, Inc. v. Acumen Telecom Corp.*, No. 10-cv-03075-CMA-BNB, 2011 WL 9293, at *2 (D. Colo. Jan. 3, 2011)).

Defendants also misrepresent the rulings in the PI Order. Contrary to Defendants' characterizations, the Court repeatedly emphasized the preliminary nature of the PI Order and the extraordinary burden applied to SRSA's claims at that stage.[7] For each category of trade secrets, the Court made clear that its ruling was based only on the evidence and arguments presented at that time. *See* **Appendix B** (quotes from the PI Order). Nothing in the PI Order justifies denying SRSA discovery in response to the Disputed Requests.

To take just one example, SRSA seeks documents relating to "the development or use of any version of the 'HK Contacts' document and any documents derived therefrom[.]" *See* **Appendix A** (RFP 13 to PNC Bank). Defendants object that the PI Order held the "contact list is not a protectable, confidential trade secret." *See id.* But in the PI Order, the Court recognized that "HK Contacts" may form part of SRSA's customer-focused trade secrets claim, noting "[a]t trial, SRSA may well be able to prove as much to a jury." ECF No. 207 at 14. The Court continued:

> Given the elevated standards for the extraordinary relief sought here, the Court is unable to say that the record before it establishes with particularity which, if any, of the entries that were transported from the HK Contacts list to the PNC target list would qualify as trade secrets rather than information Ms. Kelly previously knew, was publicly available, or that PNC learned from other sources.

*Id.* (footnote omitted). The Court's ruling is a non-final, preliminary determination.

Finally, as a practical matter, Defendants' approach would eviscerate the preliminary nature of PI motions and force parties to make a Hobson's choice between obtaining preliminary injunctive relief or later, critical merits discovery (but not both). The law does not force litigants to make such a choice. Nor does it permit Defendants to deny SRSA merits discovery simply

---

[7] Because the Court found that SRSA's requested relief would constitute a mandatory injunction, SRSA faced a particularly "elevated" standard. ECF No. 207 at 7.

7

because SRSA did not prevail on the PI motion. SRSA's motion to compel should be granted.

### B. Defendants must provide complete damages-related discovery.

In seven Disputed Requests, SRSA seeks information necessary for its damages analysis:

- Customers and Deals Won by PNC (Rog 2 to PNC Bank): This request seeks information identifying the payments-and-escrow deals and customers PNC has won, including deal parties, date, code name, escrow size, number of payees, revenue, and profit.

- PNC Efforts to Solicit Customers (RFP 11 to PNC Financial; RFP 14 to PNC Bank): These requests seek PNC's lists of target customers and pre-deal communications with potential customers (*i.e.*, communications during the sales process).

- PNC's Financials (RFP 9 to PNC; RFP 16 to PNC Financial): These requests seek PNC's monthly, quarterly, and annual revenues expenses, profits, and financial projections.

- PNC's Licensing Efforts (RFPs 17, 18 to PNC Financial): This request seeks information about PNC's efforts to obtain or sell a license for the processes and technology at issue.

During expedited discovery, Defendants justified their refusal to produce damages-related discovery by arguing, in part, that they would provide it during general discovery. *See* ECF No. 48 at 11. Now, general discovery is in full-swing, reports by damages experts are due in six weeks, and Defendants have reneged on their prior representations—instead refusing to produce damages discovery entirely, or otherwise insisting on limitations that defeat the purpose.[8]

### 1. Rog 2 to PNC Bank and RFP 14 to PNC Bank

These two customer-related requests seek a description of the deals in which PNC has provided online paying and escrow agent services from 2018 (the year Kelly left SRSA) to present (Rog 2), and the production of PNC's communications with potential customers from 2018 to present (RFP 14). Defendants would turn discovery on its head by requiring that SRSA

---

[8] Other requests not discussed herein may implicate information pertinent to a damages analysis, and SRSA reserves the right to argue other requested information is also relevant to damages.

first identify the deals it lost to PNC and then limiting any response to those deals. But SRSA seeks damages based on unjust enrichment, as well as lost profits—meaning Defendants' gains (whether or not "lost" by SRSA) are relevant and discoverable. SRSA has already identified approximately twenty deals that it believes it lost to PNC as a result of Defendants' misconduct. But without the requested discovery, SRSA cannot know the full scope of its damages. The identity of providers of payments-and-escrow services on M&A transactions is often non-public, and PNC has undoubtedly won deals for which SRSA was deprived of the opportunity to bid altogether. *See* ECF 48. Defendants' approach would deprive SRSA of the opportunity to prepare expert opinions addressing *both* SRSA's unjust-enrichment and lost-profits theories. PNC's communications with potential customers are also relevant to establishing causation. PNC's messages to customers, and customers' responses, will demonstrate that PNC used SRSA information to sell PNC's copycat products to SRSA's customers and other third parties. To accommodate PNC's objection about scope, SRSA already agreed to limit this request to communications during the sales process for each deal. The information should be produced.

## 2. RFP No. 9 to PNC & RFP No. 16 to PNC Financial

RFP 9 seeks "[d]ocuments sufficient to show the monthly, quarterly and annual revenues, expenses and profits for PNC's M&A Payments and Escrow Products, from January 1, 2018 to the present." *See* **Appendix A**. SRSA made this request during expedited discovery, and Defendants' sole objection was that the request was premature. When SRSA sought to compel production during expedited discovery, Defendants conceded that the requested information was relevant to SRSA's damages claim and pledged to produce responsive documents "during non-expedited discovery." ECF No. 49 at 11. But now, Defendants purport to assert new objections

9

of overbreadth and irrelevance in a meet and confer letter. *See* **Appendix C** (Defendants' July 29, 2020 Letter). Defendants' new objections are untimely and have been waived. *See Pham v. Hartford Fire Ins. Co.*, 193 F.R.D. 659, 661 (D. Colo. 2000) ("failure to object to [RFPs] within the time permitted by the federal rules has been held to constitute a waiver of any objection.").

PNC's refusal to produce financial projections (RFP 16) is similarly improper. PNC's *financial projections* for this business, when compared to actual financials, will demonstrate the scope of the financial head-start provided by PNC's reliance on SRSA information. Moreover, the projections are relevant to a reasonable-royalty analysis. The requested discovery is highly relevant to SRSA's damages analysis and should be produced.

### 3. RFP Nos. 11, 17 and 18 to PNC Financial

Defendants' relevance and proportionality objections to SRSA's other damages-related requests do not withstand scrutiny. SRSA's licensing-related requests (RFPs 17, 18) are relevant to a reasonable royalty analysis and the independent economic value of the trade secrets.[9] Defendants previously made nearly identical requests of SRSA, to which SRSA agreed to produce. *See* **Appendix D** (PNC's RFP No. 5). Similarly, SRSA's request for PNC's target customer lists (RFP 11) is relevant to both causation and damages, as discussed above.

### IV. CONCLUSION

For the foregoing reasons, this Court should order Defendants to substantively respond to the Disputed Requests and produce responsive documents no later than August 24.

---

[9] *See, e.g.*, *Comput. Assoc. Int'l, Inc. v. Am. Fundware, Inc.*, 831 F. Supp. 1516, 1526-27 (D. Colo. 1993) (reasonable royalty is "what the parties would have agreed to as a fair price for licensing the defendant to put the trade secret to the use the defendant intended at the time the misappropriation took place") (internal quotation marks omitted).

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: August 11, 2020 | By: *s/ Warren A. Braunig*<br>Warren A. Braunig<br>*wbraunig@keker.com*<br>Michelle S. Ybarra<br>*mybarra@keker.com*<br>Benjamin D. Rothstein<br>*brothstein@keker.com*<br>Katie Lynn Joyce<br>*kjoyce@keker.com*<br>Victor H. Yu<br>*vyu@keker.com*<br><br>KEKER, VAN NEST & PETERS LLP<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415-391-5400<br>Facsimile:      415-397-7188<br><br>SHERIDAN ROSS P.C.<br>Scott R. Bialecki<br>*sbialecki@sheridanross.com*<br>Matthew C. Miller<br>*mmiller@sheridanross.com*<br>1560 Broadway, Suite 1200<br>Denver, Colorado 80202<br>Telephone:     303 863 9700<br>Facsimile:      303 863 0223<br>Email:    *litigation@sheridanross.com*<br><br>Attorneys for Plaintiffs<br>SRS ACQUIOM INC. AND<br>SHAREHOLDER REPRESENTATIVE<br>SERVICES LLC |

1388684