**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

**PLAINTIFFS' EMERGENCY MOTION TO AMEND SCHEDULING ORDER
AND FOR EXPEDITED CONSIDERATION**

---

Pursuant to Federal Rule of Civil Procedure ("Rule") 16, Section I.G. of the Court's Civil Practice Standards, and the Court's inherent power to manage its docket, Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively "SRSA") respectfully submit this emergency motion to amend the Court's May 29, 2020 Scheduling Order (ECF No. 215), and for expedited consideration thereto.

**I.     INTRODUCTION**

In setting a November 30, 2020 discovery cutoff, the Court expressly stated in the May 29 scheduling order that it "fully expects the parties to conduct discovery more efficiently and cooperatively than they did the expedited discovery period." ECF No. 215 at 16.  But nearly three months after the entry of that order, Defendants have stonewalled SRSA's discovery, produced zero new documents, and now filed three separate, lengthy, and premature motions for

1

partial summary judgment.  At the same time, Defendants have served over 60 of their own discovery requests, requiring SRSA to continue to produce documents and information that Defendants want for trial.  The net effect of these actions is to impose a unilateral discovery stay.

Under the current discovery schedule, Defendants' actions are causing considerable prejudice to SRSA and will result in irreparable harm.  Expert reports are due in five weeks, and all discovery, including expert discovery, is set to close in just over three months, but SRSA lacks any of the basic discovery it needs to prepare its expert reports, serve follow-up requests or take depositions.  Without any commitment by Defendants to comply with their discovery obligations, SRSA faces the serious risk that, even if this Court orders Defendants to comply with their discovery obligations, Defendants will not even *begin* producing the documents and information SRSA needs until the end of September.  SRSA cannot reasonably be expected to prepare expert reports or complete additional fact discovery in the timetable contemplated by the current scheduling order.

Good cause is thus warranted for a 90-day extension of the deadlines set in the Court's May 2020 Scheduling Order.  Because of the urgent nature of this request, SRSA also seeks expedited consideration of this motion.

**II.     BACKGROUND**

    **A.     Expedited Discovery and SRSA's Preliminary-Injunction Motion.**

On July 25, 2019, SRSA agreed to forego an application for a temporary-restraining order on the condition that the parties stipulate to expedited discovery and a briefing schedule on a preliminary-injunction motion.  ECF No. 24.  The Court adopted the stipulation and ordered limited document discovery and depositions.  ECF Nos. 24, 46.

From July 31 to November 15, 2019, the parties engaged in this expedited discovery process. Both sides served 15 requests for production ("RFPs") and took seven depositions. Neither side was permitted to serve interrogatories or requests for admission ("RFAs"). SRSA's requests for production focused on the early activities of the individual defendants, Kelly and Tsarnas, after they left SRSA, as well as PNC's initial product-development and recruiting processes. During expedited discovery, this Court denied SRSA's motion to compel the production of comprehensive PNC financial and customer information, which PNC argued should be saved for general discovery. ECF No. 49 at 11 ("PNC's financial information might be relevant, if at all, to a future claim for damages if the case were to move forward following a decision on SRSA's request for injunctive relief."). On December 5, 2019, Defendants made a small production of two documents that SRSA had flagged as missing from Defendant's earlier productions. That was Defendants' last production in this action.

On March 26, the Court denied SRSA's preliminary-injunction motion, concluding that SRSA had "failed to make the difficult showing that it is entitled to an injunction at this time." ECF No. 207 at 2. The Court held that "[w]hile there are certainly issues on which Plaintiffs could prevail at trial, they have failed to make the difficult showing that they are clearly and unequivocally entitled to such a drastic remedy rather than an award of damages." *Id.* at 8.

### B.     The May 29 Scheduling Order.

On April 15, the Court issued an Order resetting a Rule 16(b) Scheduling Conference, requiring the parties to file their proposed Scheduling Orders on May 27. *See* ECF No. 209.

On May 6, as part of their Rule 26(f) meet and confer, the parties agreed that in light of business interruptions caused by the COVID-19 pandemic and uncertainty about what discovery

3

limits this Court would set in its scheduling order, neither party would serve general discovery until June 15, 2020.

On May 29, the Court issued a Scheduling Order. *See* ECF No. 215. The Court set a six-month schedule for all discovery, with a September 25 deadline for initial expert reports, a discovery cutoff on November 30, and a dispositive-motion deadline on December 30. Each side was permitted 45 additional RFPs, 45 interrogatories, 45 RFAs, up to five party depositions plus a 30(b)(6) deposition, and up to three third-party depositions. *See id.* at 11-13.

Critically, from November 15, 2019 (the end of the expedited discovery period) to June 15, 2020, SRSA was not permitted to conduct discovery in this action.

### C. Defendants' Obstruction of SRSA's New Discovery.

On June 22, one week after the parties agreed they could serve general discovery requests, SRSA promptly served its first set of general discovery requests, which included 33 RFPs, 24 interrogatories, and 20 RFAs. With limited exceptions, SRSA's discovery focused on specific issues it was excluded from obtaining in general discovery. Specifically, SRSA sought:

- Damages-related discovery, including information about Defendants' revenues and profits, and deals won and lost to SRSA.

- Information relating to Defendants' communications with prospective customers, which—in addition to demonstrating the use of SRSA's customer-information trade secrets—will support SRSA's claim that Defendants intentionally interfered with SRSA's contracts and prospective business opportunities.

- Discovery concerning a PNC customer-list called "Firms by Segment," which was derived from SRSA customer lists and information and was produced ***after the close of expedited discovery***. *See* ECF No. 145 (SRSA's Motion for Sanctions) at 3-4.

- Documents related to specific processes, technical specifications, or product roadmaps not produced in expedited discovery.

- Information relating to SRSA's Unfair Competition claim and other loss-of-goodwill suffered by SRSA, including requests for marketing material promulgated by PNC.

4

- Information about Kelly and Tsarnas's specific contributions to PNC's development process, their performance and salary records, and their record of deleting responsive text messages and other information.

Unfortunately, Defendants have refused to provide substantive responses to the vast majority of SRSA's discovery requests *and have not produced a single document in response to SRSA's 33 RFPs*.

On July 28, less than a week after receiving Defendants' discovery responses, SRSA sent a letter to Defendants, identifying 12 categories of deficiencies in Defendants' responses, which cover more than fifty discrete responses. *See* ECF No. 233-6 (SRSA's July 28 letter). The parties conducted two telephonic meet-and-confers. After it became clear that Defendants were not going to budge on at least two categories of deficiencies, the parties received Court permission to submit simultaneous discovery briefs on those issues. That dispute is pending with the Court. *See* ECF No. 234 (SRSA's brief); ECF No. 233 (Defendants' brief).

For the other deficiencies raised in SRSA's July 28 letter, PNC has repeatedly delayed providing a written response or engaging in any substantive meet-and-confer. Three weeks have now passed since SRSA's letter specifically detailing issues with Defendants' responses, and Defendants have not even responded to that letter, much less withdrawn their objections, supplemented their responses or produced documents. PNC's unilateral self-granted stay of discovery continues to this day.[1]

---

[1] On July 29, Defendants did send a written response to an earlier July 1 letter sent by SRSA. In its July 1 letter, SRSA asked Defendants to supplement their production of documents and withdraw responses and objections made to RFPs during the expedited-discovery period. Defendants' July 29 letter repeated the same objections and logic that undergirded its written responses and objections, without commenting on the other outstanding issues SRSA raised in its letter.

5

Defendants have also refused to cooperate with SRSA in obtaining key third-party discovery. Since July 1, SRSA has attempted to subpoena a third-party witness, Alex Kingsley. Defendants previously elicited a declaration from Kingsley (an attorney who had previously worked with Kelly) in support of their preliminary-injunction opposition. Despite Kingsley's close connection with Defendants, Defendants have refused to inform SRSA of Kingsley's location, help facilitate service on Kingsley, or otherwise assist in obtaining the requested documents. On August 3, counsel from the Sheridan Ross firm was able to confer with Kingsley by phone. Kingsley himself refused to accept service of process of his subpoena or notify SRSA of his location to be personally served. Kingsley and Defendants' refusal to cooperate with SRSA's attempts at service has resulted in extensive cost and delay to SRSA, resulting in at least 12 unsuccessful attempts to serve Kingsley at his home address.

### D. Defendants' Premature Summary Judgment Motions

Rather than respond to SRSA's discovery, Defendants have attempted an end-run by filing three early summary-judgment motions on August 10. Although formally styled as "partial" motions, in 60-plus pages of briefing, Defendants seek summary judgment on all but two of SRSA's causes of action. Defendants contend that the Court's preliminary-injunction order not only provides a "case dispositive" grounds for Defendants to move for summary judgment, but it also permits Defendants a supposed basis to resist production of further discovery on proportionality grounds. *See* ECF No. 233 at 3-4 (Defendants' August 11, 2020 Discovery Brief). SRSA will likely be forced to respond to these summary-judgment motions without the benefit of the very discovery that they sought in part to address the issues raised by the Court's preliminary-injunction order.

### E. SRSA's attempts to meet and confer with Defendants

Under Local Rule 7.1(a), between August 11-14, SRSA met and conferred with Defendants to seek a 90-day extension of the case schedule in light of Defendants' unilateral refusal to produce any discovery and Defendants' early and comprehensive summary-judgment briefs, which will consume most of SRSA's bandwidth over the coming month. Defendants refused to agree to any modification of the schedule.[2]

### III. ARGUMENT

#### A. Good cause exists to modify the current schedule.

Rule 16(b) provides that a scheduling order may be modified "for good cause and with the judge's consent." Good cause exists where the "scheduling deadlines cannot be met despite [the movant's] diligent efforts." *Lehman Bros. Holdings Inc. v. Universal Am. Mortg. Co.*, LLC, 300 F.R.D. 678, 681 (D. Colo. 2014) (citations omitted). But "[z]eal to dispose of pending litigation," should not result "in deprivation of reasonable opportunity to make adequate preparation for trial." *Summers v. Missouri Pac. R.R. Sys.*, 132 F.3d 599, 605–06 (10th Cir. 1997). And "while the pretrial order defines a lawsuit's boundaries in the trial court," "total inflexibility is undesirable." *Id.* at 604.

A court may weigh the following factors in determining whether to adjust a scheduling order: "(1) whether trial is imminent; (2) whether the request to reopen or extend discovery is opposed; (3) whether the non-moving party would be prejudiced; (4) whether the moving party was diligent in obtaining discovery within the guidelines established by the Court; (5) the

---

[2] SRSA repeatedly proposed to telephonically meet and confer with Defendants, but Defendants' counsel never responded to that request, leaving the parties to discuss SRSA's request solely via e-email.

7

foreseeability of the need for additional discovery in light of the time allowed for discovery by the Court; and (6) the likelihood that the discovery will lead to relevant evidence." *Waller v. Lovingier*, No. 1:14-cv-02109-WYD-NYW, 2016 WL 11693706, at *3 (D. Colo. Mar. 22, 2016).

Here, each of these factors—except for Defendants' opposition to SRSA's motion—directly favors the granting of an extension.

*First*, trial is not imminent. There is no trial date scheduled at all—and in light of the COVID-19 pandemic, it likely will be more than a year before any trial can take place in this matter.

*Second*, PNC will not be prejudiced by the delay. In light of the denial of the preliminary-injunction motion, PNC is currently operating unfettered in the marketplace. The only prejudice to PNC will be that an extension will require it to meaningfully participate in the discovery process instead of trying to run out the clock. But meaningful participation in discovery is what is intended within the Scheduling Order and Rule 26. That is hardly the sort of prejudice with which the courts are concerned. *See F.T.C. v. Standard Oil Co. of California*, 449 U.S. 232, 244 (1980) ("[T]he expense and annoyance of litigation is part of the social burden of living under government." (citations omitted)).

*Third*, SRSA has been quite diligent in seeking discovery within the current schedule. SRSA served detailed and specific requests within a week of the opening of general discovery; and after Defendants served their inadequate responses, SRSA sent a meet-and-confer letter within four business days, promptly attempted to meet and confer and obtained Court permission to file a discovery brief to address two significant issues. By contrast, PNC continues to defer

8

addressing the numerous deficiencies in its discovery responses that SRSA raised three weeks ago in its July 28 meet-and-confer letter.

*Fourth*, the requested extension is necessary to provide appropriate time to complete the initial round of discovery, while allowing foreseeable follow-up discovery and depositions based on Defendants' responses. To properly answer SRSA's discovery requests, PNC will have to run targeted searches of ESI to identify documents that were not the subject of expedited discovery, including the details of payments-and-escrow deals that PNC has won, communications with potential customers, product-specification documents, details of meetings in which PNC determined which products to prioritize and why, and marketing documents. If the expedited discovery period is any guide, PNC will need weeks, and likely months, to review and produce all of the requested materials. Had Defendants begun that work when they received SRSA's requests on June 22, that process would be significantly underway, if not completed.[3] But two months after SRSA served its requests, Defendants have **produced nothing** and have now made clear they **intend to produce nothing** until this Court orders them to do so. That has a "cascading effect" on the rest of the discovery. *Kinetic Concepts, Inc. v. Convatec Inc.*, No. 1:08-cv-00918, 2010 WL 1418312, at *4 (M.D.N.C. Apr. 2, 2010) (extending three-month fact-discovery deadline and following expert-discovery deadlines). For example, SRSA cannot serve follow-up discovery concerning PNC customer deals about which SRSA is not aware until PNC provides the discovery SRSA has already requested that identifies those deals.[4] Likewise, SRSA

---

[3] And indeed, SRSA is fully willing to conduct these additional searches to respond to Defendants' own discovery requests and has been diligent in responding to Defendants' discovery requests.

[4] As described in SRSA's recent Discovery Brief, although SRSA has already identified more

cannot properly prepare for depositions until it receives documents necessary to examine those witnesses.  And, most urgently, SRSA cannot prepare its expert damages report—currently due in *only five weeks*—without the damages discovery that Defendants refused to produce in the expedited discovery period and still have not produced.

*Fifth*, the discovery SRSA seeks, and that Defendants are attempting to impede, will undoubtedly lead to evidence both relevant and proportional to this action.  As detailed above, SRSA is attempting to obtain damages discovery, discovery into PNC's use of SRSA's trade secrets, and discovery into Defendants' communications with its customers, including customers who moved their business from SRSA to PNC, among other issues.  There could hardly be discovery more central and critical to SRSA's causes of action, the preparation of expert reports and the defense against Defendants' summary-judgment motions.

Defendants' complete and total obstruction of the discovery process unfairly prejudices SRSA's ability to meet the rest of scheduled deadlines.  Most importantly, SRSA is supposed to serve initial expert reports in just over a month, on September 25.  But how is SRSA supposed to serve a damages report when PNC unilaterally refuses to produce any damages discovery?  How is SRSA supposed to serve a report explaining how PNC benefitted from its use of SRSA confidential information if PNC will not answer document requests and interrogatories seeking information on the use of SRSA information?  Defendants have failed to produce any discovery on its financial data, including the revenues and profits it obtained from transactions in the M&A

---

than 20 deals that it lost to PNC as a result of PNC's misconduct, because of the confidential nature of many M&A deals, there are likely dozens of additional deals that involved former SRSA customers or upon which SRSA bid but lost for which SRSA is not yet aware were taken by PNC.

market. Without this documentation, SRSA cannot begin to calculate damages from any lost sales it suffered to PNC, nor the amount of disgorgement or unjust enrichment. SRSA cannot even take a meaningful deposition of a PNC financial recordkeeper. Similarly, Defendants' resistance to producing any further discovery that would reveal the current state of their product or their reliance on SRSA documents, procedures, or technical processes makes it impossible for SRSA to determine the full scope of the technical head-start that PNC enjoyed from using SRSA's confidential information.

Courts have repeatedly recognized that a party's refusal to produce documents relevant to expert discovery is good cause to amend a case schedule. Expert discovery "often cannot go forward in a productive way when fact discovery remains outstanding," and delays in fact discovery often cause "a cascading effect on the completion of expert discovery." *Kinetic Concepts*, 2010 WL 1418312, at *4. Disruptions to a party's ability to conduct expert discovery alone is sufficient good cause to amend a scheduling order. *See Codding v. Allstate Fire & Cas. Ins. Co.*, 2016 U.S. Dist. LEXIS 16213, *3 (D. Colo. Feb. 9, 2016) (amending scheduling order after plaintiff refused to produce relevant medical records needed to prepare defendants' expert disclosures).

Courts in this district and across the country have similarly held that case extensions are necessary when one party's intransigence is blocking the completion of discovery. *See, e.g.*, *Enos-Martinez v. Bd. of Cty. Comm'rs of Cty. of Mesa*, No. 10-cv-00033-MSK-DLW, 2011 WL 836478, at *2 (D. Colo. Mar. 7, 2011) (extending discovery cutoff to permit plaintiff to review documents sought in a motion to compel and complete depositions); *Pandeosingh v. Am. Med. Response, Inc.*, No. 14-cv-01792-PAB-KMT, 2014 WL 5465220, at *3 (D. Colo. Oct. 28, 2014)

(reopening discovery and finding that "plaintiff has acted diligently but has been thwarted by defendant's failure to timely produce requested documents"); *Prasad v. County of Sutter*, 2:12-cv-00592-TLN-JFM, 2013 WL 3773894, at *1 (E.D. Cal. July 17, 2013) (plaintiffs were prejudiced by having to conduct depositions without relevant documents). Since Defendants have refused to provide any substantive information in response to the vast majority of SRSA's requests, SRSA requires the requested extension to fairly prosecute its case to trial. The Court should modify the case schedule to prevent that injustice and to ensure that SRSA has a reasonable amount of time to receive and review discovery responses, conduct depositions, and prepare expert reports.

Finally, Defendants' early filing of three 20-page summary judgment motions, accompanied by approximately 1200 pages of exhibits, warrants an extension of the case schedule. Although Defendants contend that these motions are predicated on the Court's preliminary-injunction order, Defendants waited four months from entry of that order to file their motion, and SRSA's opposition will come due in the thick of discovery (including SRSA's own document productions) and just before the expert disclosure deadline. While Defendants are free to file a motion for summary judgment at the time of their choosing, this Court should not reward Defendants for doing so at a time geared to maximize the disruption to SRSA's prosecution of the litigation.

### B.      SRSA's proposed extension is reasonable.

For the reasons set forth above, SRSA respectfully requests a 90-day extension of the current scheduling order and a 21-day extension to respond to Defendants' summary judgment motions, as set forth below:[5]

| Event | Current Deadline | Proposed Deadline |
|---|---|---|
| Expert Disclosure Deadline | September 25, 2020 | December 22, 2020 |
| Rebuttal Expert Deadline | October 26, 2020 | February 1, 2021 |
| Discovery Cutoff | November 30, 2020 | March 1, 2021 |
| Dispositive Motion Deadline | December 30, 2020 | March 30, 2021 |

SRSA's proposed schedule will grant sufficient time for the Court to rule on the pending discovery disputes, for Defendants to then gather and produce responsive documents and information, and for the parties to resolve any other discovery disputes in a timely manner (without unfairly punishing SRSA due to Defendants' untimely summary-judgment motions). The ninety-day extension is commensurate with the delays engineered by Defendants: Two months of discovery have already passed—with no document production from Defendants and no substantive interrogatory or RFA responses. At least another month will pass before those deficiencies are properly addressed. Moreover, by adjusting deadlines for all parties, SRSA's proposed schedule also eliminates any potential unfairness for Defendants. *See Walker v. THI of N.M. at Hobbs Ctr.*, 262 F.R.D. 599, 606 (D.N.M. 2009) (adjusting deadlines for expert and fact discovery and concluding that "the Court believes that it will be able to adjust all deadlines so

---

[5]To the extent any of the proposed deadlines are not exactly 90 days later than the original deadline, SRSA has made those adjustments to account for holidays.

13

that it can mitigate or eliminate prejudice to [defendants]").  In their status conference statement, Defendants suggest that a 3-month extension at this time is excessive when there remain three months in discovery.  But that overlooks that expert disclosures are only five weeks away, and Defendants have provided nothing of substance in response to SRSA's June 2020 discovery.  Given the current structure of the schedule, and Defendants' obstruction, the most reasonable solution is to continue all fact and expert discovery deadlines by ninety days.[6]

### C.     Expedited Consideration and Briefing of SRSA's Emergency Motion is Warranted.

SRSA requests that the Court resolve this motion on a shortened schedule.  On a standard briefing schedule for a noticed motion, this motion would not be fully briefed until the day before expert reports are due. Because of the urgent nature of SRSA's request, SRSA respectfully requests that the Court consider its emergency motion with expedited consideration.

SRSA asks that the Court simply grant this emergency motion and amend the schedule per above.  But should the Court believe that further briefing on SRSA's motion is necessary, SRSA respectfully requests that briefing be on an expedited basis, with Defendants' opposition to be filed by Monday, August 24; and SRSA's reply due by Wednesday, August 26. Once such briefing is completed, SRSA respectfully requests that the Court consider SRSA's emergency motion as soon thereafter as is convenient for the Court.

---

[6] ***In the alternative***, if the Court does not want to extend all of the discovery deadlines, moving the parties' expert disclosure deadlines to late December and late January respectively, and allowing expert discovery to follow fact discovery, would likely address much of the prejudice. That would still afford the parties 100 days to complete fact discovery, with a few additional weeks to complete expert disclosures.  Such an approach also would be consistent with the schedules proposed by both parties in their May 2020 joint [Proposed] Scheduling Order.  ECF 214 at 15-17.

14

Further, as noted in SRSA's statement in the parties' August 17 Joint Status Report, ECF No. 235 at 10, SRSA believes the parties and the Court would benefit from convening a status conference to discuss the case schedule and other outstanding issues.

Respectfully submitted,

Dated: August 17, 2020

By: *s/ Warren A. Braunig*
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Katie Lynn Joyce
*kjoyce@keker.com*
Victor H. Yu
*vyu@keker.com*

KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:       415-391-5400
Facsimile:       415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
*sbialecki@sheridanross.com*
Matthew C. Miller
*mmiller@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:       303 863 9700
Facsimile:       303 863 0223
Email:     *litigation@sheridanross.com*

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

## Compliance With Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.