**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

**DECLARATION OF BORIS KOGAN**

1391002.v1

I, Boris Kogan, hereby declare and state:

1.      I am over 18 years of age, and I submit this declaration on behalf of Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") in the above-captioned matter. The following statements are based on my personal knowledge, unless otherwise stated.

2.      I am the Vice President, Legal, at Ellie Mae, Inc., a company that developed and markets a technology platform for the mortgage lending and borrowing industry.  At Ellie Mae, I am responsible for managing all aspects of the company's legal department, including M&A activity.  Prior to joining Ellie Mae five years ago, I led the legal department at Hansen Medical, a publicly traded medical device company.  I began my career as a transactional attorney at Cooley LLP.

3.      Over the course of my career, I have been involved in more than 30 M&A transactions:  as outside counsel, as inside counsel on the buy-side and as inside counsel on the sell-side.  I have worked with multiple shareholder representatives, including SRS and Fortis. And I have worked with multiple paying agents, including U.S. Bank, Deutsche Bank, Wells Fargo, and, most recently, SRS Acquiom.  I am quite familiar with the mechanics of M&A deals, including the payments process.

4.      One of the hallmarks of M&A transactions is their confidentiality.  M&A deals typically require the exchange of highly confidential financial information, shareholder information and other information of the parties, their attorneys and their vendors (including paying agents, escrow agents and shareholder representatives).  All the entities involved in the

1

M&A process with each other are expected to treat each other's information and documents confidentially.

5. Another hallmark of M&A transactions is their speed. Many M&A deals come together quickly, and the period between the decision to commence a transaction and closing is often a fire drill for everyone involved. Given the speed of these transactions and the number of participants in the M&A process (lawyers, accountants, vendors), it would be difficult and time-consuming for all of the involved entities to exchange, review, and execute multilateral non-disclosure agreements. As someone who has been in the role of lawyer and party, I have always understood that the information and documents shared among all the parties involved in an M&A transaction were presumptively confidential, even if there was no formal NDA between them.

6. One of the important documents conveyed in the M&A process is a payments spreadsheet. Where the deal involves some compensation to the shareholders or employees of the acquired company, the buyer and/or paying agent must collect information from the acquired company in order to facilitate payment. In my role as a deal party and attorney, I have seen a number of different payment spreadsheets from different paying agents. While there are some fields in a payment spreadsheet that would obviously be necessary, each payment spreadsheet reflects that paying agent's learned understanding of what needs to be gathered to complete the various functions of the paying agent and to provide whatever ancillary services, such as tax reporting, the paying agent has agreed to provide. The further a paying agent gets from simple one-time payments to a single shareholder, the more complicated the payment spreadsheet gets.

7. I consider paying agent spreadsheets conveyed to the parties in an M&A transaction to be confidential. My understanding has always been that it would be inappropriate

to send one paying agent's payment spreadsheet to another paying agent outside of a transaction in which they were both involved.

8. When evaluating paying agents and shareholder representatives, I have often obtained price quotes from multiple competitors. While I might tell a competitor "here's the price you've got to beat," I would not think it appropriate to send one paying agent's specific bid to another paying agent, and do not do so in the regular course of business  The same is true with shareholder representatives. I consider bids by vendors to be at least somewhat confidential, regardless of how they are conveyed.

9. In my experience, many factors go into picking a paying agent for an M&A transaction, including the specific product features offered by the paying agent, price, the preferences of the lawyers or other parties involved, and my history with the paying agent. There are number of factors that make relationships with a paying agent "sticky" relationships, including familiarity with the paying agent's platform, legal documents, payment spreadsheet and fee structure. For that reason, once a paying agent has a historical relationship with an acquiring company or its lawyers, they tend to work together repeatedly. I do not believe that relationship with an individual relationship manager is the primary driver of who gets hired as the paying agent. I certainly would not choose a paying agent simply because of a relationship manager. In the past and going forward, I consider a number of factors, including product features, price, reputation and service provided by the paying agent.

10. In 2020, in connection with the sale of our company, I have worked for the first time with SRS Acquiom as a paying agent. I have been impressed with the intuitive interface of SRSA's online portal, its smooth and efficient payment process, and its excellent customer

3

service.  My experience with SRS Acquiom's payments platform will make me more likely to choose them as a paying agent in the future.

I declare under penalty of perjury that the foregoing is true and correct.  Executed on September 11, 2020 in Danville, California.

*/s/ Boris Kogan*
Boris Kogan

4

1391002.v1