**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

   v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

**PLAINTIFFS' OBJECTIONS TO MAGISTRATE'S**
**SECOND WRITTEN DISCOVERY ORDER (ECF NO. 277)**

---

## TABLE OF CONTENTS

**Page**

I.      INTRODUCTION ................................................................................................1

II.     BACKGROUND ..................................................................................................1

      A.    The parties conduct limited expedited discovery.....................................1

      B.    Discovery is stayed for seven months.......................................................2

      C.    Defendants file early summary-judgment motions, seeking to end the case without producing information in general discovery................................3

      D.    Defendants' refusal to produce discovery precludes SRSA's experts from offering complete opinions on liability and damages. ..............................4

III.    ARGUMENT .......................................................................................................6

      A.    The Magistrate erred by denying SRSA discovery critical to proving causation and damages.............................................................................6

          1.    Deals Won by PNC (*Rog 2 to PNC Bank*)....................................6

          2.    Distribution of PNC's Payment Spreadsheet (*Rog 6 to PNC Bank*)............9

          3.    PNC's Financial Projections (*RFP 16 to PNC Financial*).........................10

          4.    PNC's Customer Communications (*RFP 14 to PNC Bank*)......................11

      B.    The Magistrate improperly denied SRSA relevant trade-secret discovery............12

          1.    Defendants' Use of SRSA's Pricing Strategies (*RFP 15 to PNC Bank*)........13

          2.    PNC's Specifications and User Manuals for Products at Issue (*RFP 16 to PNC Bank*) .....................................13

          3.    PNC's Technical Development Documents for Products at Issue (*RFP 17 to PNC Bank*) ..............................................14

          4.    Kelly's and Tsarnas's Contributions to PNC's Products (*RFPs 21 and 25 to PNC Bank*) ..............................................14

IV.     CONCLUSION...................................................................................................16

i

COMPLIANCE WITH TYPE-VOLUME LIMITATION ...........................................................17

CERTIFICATE OF CONFERRAL .............................................................................................17

1392553

**TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*CardioVention, Inc. v. Medtronic, Inc.*,
    483 F. Supp. 2d 830 (D. Minn. 2007) .....................................................................................8

*Cvent, Inc. v. RainFocus, Inc.*,
    No. 2:17-cv-00230-RJS-DBP, 2018 WL 10398700 (D. Utah Apr. 11, 2018) ......................12

*Geophysical Sys. Corp. v. Raytheon Co.*,
    117 F.R.D. 646 (C.D. Cal. 1987) .................................................................................. *passim*

*Iconics, Inc. v. Massaro*,
    266 F. Supp. 3d 461 (D. Mass. 2017) .....................................................................................8

*Mackey v. Watson*,
    No. 17-cv-01341-CMA-STV, 2019 WL 3543624 (D. Colo. Aug. 5, 2019) ...........................6

*Milliken & Co. v. Evans*,
    No. 7:14-cv-778-BHH, 2016 WL 11530305 (D. S.C. July 22, 2016) ....................................12

*Perez v. J.P. Meyer Trucking*,
    No. 08-cv-02008-KLM-KMT, 2009 WL 1706697 (D. Colo. June 17, 2009) .......12, 13, 14, 15

*Running Foxes Petroleum, Inc. v. Nighthawk Production LLC*,
    No. 14-cv-01466-MSK-MJW, 2015 WL 9312097 (D. Colo. Dec. 23, 2015) ..........................6

*Scotsman Indus., Inc. v. Broadbent*,
    No. 11-cv-01793-JLK-KLM, 2012 WL 3869183 (D. Colo. Sept. 6, 2012) .............................9

*Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*,
    No. 07-cv-02324-WYD-MEH, 2008 WL 2185882 (D. Colo. May 23, 2008) .......................15

**State Cases**

*Sonoco Prods. Co. v. Johnson*,
    23 P.3d 1287 (Colo. App. 2001) ..............................................................................................7

*The Retirement Group v. Galante*,
    176 Cal. App. 4th 1226 (2009) ...............................................................................................8

**Federal Statutes**

18 U.S.C. § 1836.................................................................................................................7

**State Statutes**

C.R.S. § 7-74-104(1)...........................................................................................................7

## I.      INTRODUCTION

In this complex and high-stakes trade-secrets case, Defendants' stonewalling has deprived SRSA of essential discovery relevant to liability and damages, leaving SRSA without critical information needed to prosecute its case. In response to numerous SRSA discovery requests, PNC responded with blanket refusals to produce on the basis that this Court's preliminary-injunction ruling was dispositive on the merits and foreclosed further trade-secrets discovery or discovery to identify the quantum of damages. Six weeks after the parties submitted discovery briefs, the Magistrate overruled PNC's blanket objection but *sua sponte* declared that the requests were overbroad, denying them in full (even though PNC's intransigence had prevented the parties from meeting and conferring about breadth). Other than tossing SRSA a few crumbs with minimal value, the Magistrate's Order leaves SRSA with practically no damages discovery and denies SRSA any follow-up discovery on its trade-secrets claims. Because the Magistrate's rulings are contrary to law, his Order should be reversed.

## II.     BACKGROUND

### A.      The parties conduct limited expedited discovery.

On July 11, 2019, SRSA filed this lawsuit asserting trade-secret misappropriation, breach of contract, unfair competition and related claims, and seeking injunctive relief, plus unjust enrichment and lost profits damages. ECF No. 1.

For less than three months, from July 31 to November 15, 2019, the parties engaged in stipulated expedited discovery. ECF Nos. 24, 46. Both sides served limited requests for production and took seven depositions. Neither side was permitted interrogatories or requests for admission, and the Magistrate "limited discovery to matters relevant to Plaintiffs' anticipated

1

motion for preliminary injunction." ECF No. 51 at 1-2.  For example, during expedited discovery, SRSA requested PNC's customer information, including its communications with actual and potential customers. ECF No. 48. The Magistrate denied SRSA's motion to compel customer information, as beyond the scope of the preliminary-injunction hearing. ECF No. 51 at 2. The Magistrate also rejected SRSA's request for damages-related discovery as premature. *Id.* at 4.[1]

On March 26, 2020, this Court denied SRSA's preliminary-injunction motion, finding that "[w]hile there are certainly issues on which Plaintiffs could prevail at trial," SRSA failed to meet the high bar for injunctive relief. ECF No. 207 at 8.

**B.      Discovery is stayed for seven months.**

On April 15, 2020, the Court issued an Order resetting a Rule 16(b) Scheduling Conference, requiring the parties to file proposed Scheduling Orders on May 27. *See* ECF No. 209. In light of the interruptions caused by COVID-19 and uncertainty about discovery limitations, the parties agreed neither side would serve general discovery until June 15, 2020. Consequently, for seven months between the end of expedited discovery (November 15, 2019) and June 15, 2020, discovery was effectively stayed.

On May 29, 2020, the Magistrate issued a Scheduling Order setting initial expert reports due on September 25, close of fact discovery on November 30, and a December 30 dispositive motions deadline.

---

[1] SRSA filed a second motion to compel on December 12, 2019. *See* ECF No. 113. It has been fully briefed for over nine months but remains pending.

**C.      Defendants file early summary-judgment motions, seeking to end the case without producing information in general discovery.**

After general discovery opened, SRSA promptly served comprehensive requests seeking, among other things, damages and customer information that PNC had refused to produce during expedited discovery, as well as follow-up discovery on SRSA's trade-secret claims.  In response, Defendants categorically refused to produce relevant information on the ground that SRSA's trade-secret claims (and damages flowing therefrom) were foreclosed by the Court's preliminary-injunction order.

With the expert-report deadline fast approaching, SRSA requested briefing on PNC's blanket refusals. The Magistrate ordered the parties to file simultaneous briefs by August 11. On August 10, however, Defendants filed three motions for partial summary judgment, arguing (among other things) that SRSA could not meet its evidentiary burden to prove its claims.

SRSA's August 11 brief sought an order compelling production of information concerning trade-secret liability and damages. ECF No. 234. Defendants filed their brief the same day. ECF No. 233. Less than a week later, SRSA filed an emergency motion to modify the scheduling order, seeking a 90-day extension of remaining case deadlines in light of Defendants' discovery delays, early summary-judgment motions, and SRSA's inability to prepare fulsome expert reports without adequate discovery from Defendants. ECF No. 238.

On September 3, 2020, with no ruling from the Magistrate on either the discovery or scheduling order motions, SRSA filed a Request for a Status Update, noting the imminent expert-disclosure deadline. ECF No. 247. On September 24, 2020—one day before SRSA's expert reports were due—the Magistrate issued the Second Written Discovery Order, denying the majority of the requests raised in SRSA's August 11 brief. ECF No. 277. The Magistrate

3

correctly noted that PNC's objections were improper because the preliminary-injunction ruling "was not a ruling on the merits," but nonetheless held that the bulk of SRSA's requests were "too broad and unduly burdensome on their face." *Id.* at 4-5.

> **D.    Defendants' refusal to produce discovery precludes SRSA's experts from offering complete opinions on liability and damages.**

On September 25, 2020, SRSA served preliminary expert reports from its damages expert, Greg Regan, and technical trade-secret expert, Adam Woodworth. As their reports explain, Defendants' refusal to produce discovery impaired their ability to prepare fulsome opinions. Mr. Regan concluded that Defendants' limited production "has precluded a complete damages analysis." *See* Declaration of Katie Lynn Joyce ("Joyce Decl.") at Ex. 1, ¶¶ 3-7. For example, due to PNC's refusal to produce *any* deal data after May 2019, Mr. Regan was foreclosed from fully calculating unjust enrichment damages, and could not make any unjust enrichment calculations after May 2019:



*Id.* at ¶¶ 4, 131.

The holes in Defendants' production affected every aspect of Mr. Regan's analysis. He lacked data necessary to identify all lost deals, or to analyze "changes in SRSA's transaction frequency and volume" with customers. *Id.* at ¶ 63; *see also id.* at ¶ 91-94, 97. For the lost sales that he could identify, Mr. Regan was forced to rely on estimates, or forgo calculations altogether. *See id.* at ¶¶ 106-07, 112-13. Even as to the unjust enrichment period for which Mr. Regan had some PNC data (*albeit* incomplete), he could not calculate PNC's actual fees and was forced to estimate Defendants' profits. *See id.* at ¶¶ 128-130, 133, 141-142. For head-start damages, Mr. Regan was precluded entirely from calculating the benefit of "avoiding a ramp up period." *Id.* at ¶¶ 141-142.

Mr. Woodworth's analysis was similarly impaired. Mr. Woodworth opined on whether, and to what degree, PNC relied on SRSA information and obtained an undeserved head-start. *See* Joyce Decl. Ex. 2, ¶ 12. His opinion was limited by Defendants' omission of:

> documents concerning the business logic or functionality of PNC's products, including PNC's operational or business rules; workflows and specifications; guidelines and instruction manuals; wikis; memoranda; handbooks; Invision documents, and JIRA tickets.

Joyce Decl., Ex. 2, ¶¶ 16, 119. His analysis was further hindered by PNC's failure to produce documents "relating to PNC's decision to pursue development of specific products and capabilities" and reflecting Kelly's and Tsarnas's contributions to PNC's product-development. *Id.*

All of the discovery described above was properly sought by SRSA in June, refused by PNC in August, and denied by the Magistrate in September. PNC's refusal to produce discovery, and the Magistrate's error in condoning it, deprives SRSA of a chance to fully and fairly

1392553

prosecute its claims. It has also allowed Defendants to burn *four months* of the six-month general discovery period without making any meaningful document production. (SRSA's motion to modify the scheduling order remains pending.) SRSA is left with no choice but to seek relief from the Court.[2]

### III. ARGUMENT

A district court must modify or set aside any part of a magistrate's order that is clearly erroneous or is contrary to law. *Mackey v. Watson*, No. 17-cv-01341-CMA-STV, 2019 WL 3543624, at *3 (D. Colo. Aug. 5, 2019) (citing Fed. R. Civ. P. 72(a)). "The district court conducts an independent, plenary review" on matters of law. *Id.* If, after reviewing the record as a whole, the district court concludes the Magistrate abused his discretion or is left with the "firm conviction that a mistake has been made," the order must be overturned. *Running Foxes Petroleum, Inc. v. Nighthawk Production LLC*, No. 14-cv-01466-MSK-MJW, 2015 WL 9312097, at *2 (D. Colo. Dec. 23, 2015) (internal citation omitted).

### A. The Magistrate erred by denying SRSA discovery critical to proving causation and damages.

#### 1. Deals Won by PNC (*Rog 2 to PNC Bank*)

This request seeks specific information on "each customer engagement from January 1, 2018 through present pursuant to which PNC provided PNC's Payments & Escrow Services." namely the deal parties, the service(s) provided, the date and financial terms, the escrow amount, number of payees, PNC's revenues and profits on the deal, and any code names for the deal. This interrogatory serves as a cornerstone to SRSA's damages case, and each piece of the requested

---

[2] **Appendix A** hereto shows SRSA's initial requests, Defendants' responses, the Magistrate's ruling, and SRSA's proposed narrowing of the requests, which Defendants rejected.

1392553

information is necessary to determining lost profits and/or unjust enrichment and linking the deals to other information in this case. Joyce Decl. Ex. 8. SRSA alleges that PNC was unjustly enriched by the misappropriation of SRSA trade secrets (including but not limited to the ones addressed at the PI hearing)—and that PNC attained some or all of its payments-and-escrow profits because of that misappropriation.

But the Magistrate merely ordered PNC to "identify" any "Overlapping" customers to whom PNC provided services (*i.e.*, customers that appear on both the "HK Contacts" and PNC's "Firms by Segement" [sic] customer lists, excluding those exempted by Schedule 1 of Kelly's non-solicit agreement with SRSA). ECF No. 277 at 8. Even for those customers, PNC is not required to provide information about the deals it has done with them. The Magistrate's ruling is contrary to law in three ways.

*First*, the Magistrate improperly limited the scope of "relevant and proportional" customers. A trade-secret plaintiff is entitled to recover damages for unjust enrichment, measured by the *profits to the defendant*. *See* 18 U.S.C. § 1836(b)(3)(B); C.R.S. § 7-74-104(1); *Sonoco Prods. Co. v. Johnson*, 23 P.3d 1287, 1290 (Colo. App. 2001). By defining relevant customers as only those appearing on misappropriated SRSA customer lists, the Magistrate ignored SRSA's other trade secrets theories, limited SRSA's damages to lost profits, and precluded SRSA from properly establishing unjust enrichment. The Magistrate's ruling is wrong as a matter of law.

For unjust enrichment, it is irrelevant whether PNC's profits were earned by selling business to a former SRSA customer or an unrelated third-party. To the extent PNC profited from its misappropriation—including through use of SRSA's payments process technology or

other technical trade secrets—the relevant customer base for unjust enrichment includes *all* of PNC's payments-and-escrow customers. *See CardioVention, Inc. v. Medtronic, Inc*., 483 F. Supp. 2d 830, (D. Minn. 2007) ("Unjust enrichment is typically measured by profits gained from the sale of the product containing the trade secret."); *Iconics, Inc. v. Massaro*, 266 F. Supp. 3d 461, 468 (D. Mass. 2017) ("Once the plaintiffs demonstrate that the defendants have made profits from sales of products incorporating the misappropriated trade secrets, the burden shifts to the defendants to demonstrate the portion of their profits which is not attributable to the trade secrets.").

     *Second*, even if the Magistrate's attempt to limit SRSA to lost profits damages were proper (it is not), his Order defines that customer base too narrowly. HK Contacts is but one document among many taken by Kelly. It does not reflect the complete universe of stolen information. And regardless of whether Kelly's contract with SRSA permitted her to *solicit* certain customers immediately upon termination, she was never permitted to use SRSA's confidential information to do so.[3] By excluding the "Schedule 1" customers to Kelly's non-solicitation agreement, the Magistrate erroneously conflates damages available for breach of the non-solicitation agreement with trade-secret damages. *See The Retirement Group v. Galante*, 176 Cal. App. 4th 1226, 1238 (2009) (defendant may incur trade-secret liability independent of any contractual undertaking). In so doing, the Magistrate improperly curtailed SRSA's damages discovery. *See Geophysical Sys. Corp. v. Raytheon Co.*, 117 F.R.D. 646, 647 (C.D. Cal. 1987) (reversing Magistrate's ruling and recognizing "relevance in the discovery context is…broad").

---

[3] Tsarnas had no similar carve-out to his non-solicit agreement.

*Third*, the Magistrate erred in requiring PNC to merely "identify" customers without any other detail, leaving SRSA unable to determine (1) which deals it lost to PNC, (2) the factual basis for a calculation of SRSA's lost profits or PNC's unjust enrichment on each deal, and (3) whether the lost deals relate to other documents produced in this case. The Magistrate provided no rationale for allowing PNC to omit this information. Following the Magistrate's Order, PNC served its supplemental response, consisting of nothing more than a list of eight company names, which fails to provide any of the information that will allow SRSA to identify deal-specific financials and related information. *See* Joyce Decl., Ex. 3. By arbitrarily limiting the information SRSA requested, the Magistrate denied SRSA information necessary to precisely establish its damages, contrary to the federal discovery rules. *See Scotsman Indus., Inc. v. Broadbent*, No. 11-cv-01793-JLK-KLM, 2012 WL 3869183, at *2 (D. Colo. Sept. 6, 2012) (discovery rules incorporate a "deliberately broad standard which is meant to allow the parties to discover the information necessary to prove or disprove their cases").

## 2. Distribution of PNC's Payment Spreadsheet (*Rog 6 to PNC Bank*)

PNC used a stolen SRSA payments spreadsheet to develop its own PNC payments spreadsheet and provide competitive services to PNC customers. *See* ECF No. 262 at 7. Interrogatory 6 asked PNC to identify, for each PNC deal, the specific payment spreadsheet provided to the customer (if any), and the document reflecting such communication, so that SRSA could more accurately calculate the scope of damages associated with that act of misappropriation/breach of contract. The requested communications also bear on PNC's claim that such spreadsheets are shared without any expectation of confidentiality. *See, e.g.*, ECF No. 262 at 7-9. PNC refused to respond to this request, citing the Preliminary Injunction Order.

The Magistrate overruled PNC's objection, but then again limited the universe of relevant customers to those appearing on both "HK Contacts"[4] and "Firms by Segement," excluding customers exempt from Kelly's non-solicitation agreement. ECF 277 at 8. For the reasons discussed above, that limitation is wrong as a matter of law. Defendants' use of SRSA's payments spreadsheet, or any spreadsheet derived therefrom, constitutes misappropriation regardless of whether it was sent to a former SRSA customer or not. The Magistrate also improperly failed to require PNC to identify the provided payment spreadsheet by bates number, making it impossible for SRSA to know which customers received which version of the spreadsheet. Because the Magistrate's ruling deprives SRSA of information necessary to prove its claims, it must be reversed.

### 3. PNC's Financial Projections (*RFP 16 to PNC Financial*)

This request, as narrowed, seeks all final, centrally-maintained documents reflecting financial projections created by PNC between October 1, 2017 and July 31, 2019 for PNC's Payments & Escrow Services. The Magistrate refused to compel *any* production for RFP 16 on the basis that financial projections have no relevance to this case. Not so.

"The Court must review the magistrate's order with an eye toward the broad standard of relevance in the discovery context." *See Geophysical Systems*, 117 F.R.D. at 647. Here, comparing PNC's early financial projections to its actual financial results (which PNC was ordered to produce) will indicate the degree to which PNC's use of confidential information from SRSA provided a head start that allowed PNC to achieve financial success more rapidly than

---

[4] During her employment at SRSA, Kelly mined SRSA's information to compile "HK Contacts." *See* ECF No. 262 at 3-4, 10-15.

initially anticipated. The Magistrate's conclusion on relevance was contrary to law, and his decision should be reversed. *See id.* at 648-49.

### 4.     PNC's Customer Communications (*RFP 14 to PNC Bank*)

RFP 14 seeks PNC's communications with customers about PNC's provision of payments-and-escrow services, in order to establish but-for causation regarding why customers selected PNC. PNC argued that its response should be limited to "the specific third parties" that SRSA claims are the subject of, or related to, the claims asserted in this lawsuit." *See* Joyce Decl. Ex. 5 at 3.   Both parties thus agreed that some volume of communications would be responsive.

The Magistrate did not adopt PNC's formulation; instead, he summarily denied the request as "too broad and unduly burdensome." ECF No. 277 at 5. Prior to filing these objections, and in the interest of compromise, SRSA offered to narrow this request consistent with PNC's proposed limitation: "*pre-contract* communications with customers identified in two customer lists at issue ("HK Contacts," "Firms by Segement") or otherwise identified in SRSA's interrogatory responses." These reflect the universe of customers PNC most likely targeted by relying on SRSA confidential or trade secret information.[5] Pressing its advantage, PNC now refuses to produce *any* customer communications.

The Magistrate's Order improperly turned this request into an all-or-nothing proposition. SRSA's request is plainly relevant to causation. Even the limited customer communications produced to-date confirm that PNC targeted SRSA customers by trumpeting PNC's ability to

---

[5] HK Contacts and Firms by Segement identify SRSA's key customers, information about them and Kelly's priority rankings (ECF No. 262 at 3-4), making it likely PNC solicited them using SRSA information; SRSA's interrogatory responses include customers and transactions that SRSA has identified as "lost" to PNC.

offer products identical to SRSA's (as a result of contractual breaches and trade-secret misappropriation). While PNC will dispute the meaning of such communications, it cannot deny their relevance.[6] Rather than summarily deny the original request, the Magistrate should have at least adopted PNC's proposed limitation. Given the limitations to which SRSA has agreed, this Court should reverse the Magistrate's ruling. *See Geophysical Systems*, 117 F.R.D. at 648.

   **B.    The Magistrate improperly denied SRSA relevant trade-secret discovery.**

   The magistrate further erred by refusing to compel specific follow-up discovery concerning SRSA's trade-secret claims. In the parties' initial meet-and-confer, PNC refused to engage on these requests at all, claiming that the Court's PI Order effectively ended discovery on SRSA's trade-secret claims. *See* ECF No. 234 at 5; ECF No. 233-6 at 1-3. PNC made clear that they would not produce documents on any of these topics without a Court order.

   For nearly every request discussed below, the Magistrate overruled PNC's objection— but then denied relief on the basis of overbreadth and undue burden (ECF No. 277 at 4-5).  But PNC had failed to raise those objections in its discovery brief, ECF No. 233, waiving the argument, and the Magistrate should not have made it for them. *See, e.g.*, *Perez v. J.P. Meyer Trucking*, No. 08-cv-02008-KLM-KMT, 2009 WL 1706697, at *1 (D. Colo. June 17, 2009) ("It is the nonmoving party's burden to show why a discovery request is objectionable. Failure to raise an objection in the response to a motion to compel is deemed a waiver of that objection."). Because the Magistrate's reliance on waived objections is contrary to law, the Court should compel discovery in response to the narrowed requests on which SRSA seeks relief.

---

[6] *See, e.g.*, *Cvent, Inc. v. RainFocus, Inc.*, No. 2:17-cv-00230-RJS-DBP, 2018 WL 10398700, at *2 (D. Utah Apr. 11, 2018) (allowing fulsome trade-secret discovery); *Milliken & Co. v. Evans*, No. 7:14-cv-778-BHH, 2016 WL 11530305, at *4-6, *8 (D. S.C. July 22, 2016) (same).

1.      **Defendants' Use of SRSA's Pricing Strategies (*RFP 15 to PNC Bank*)**

RFP 15 seeks internal PNC communications regarding setting prices or financial terms on payments-and-escrow products and services, relative to those offered by a competitor.  The relevance of this request is apparent: PNC's ability to match or underbid SRSA's pricing, in order to win deals, was enhanced by its access to SRSA's confidential pricing strategies. Internal PNC communications about pricing relative to SRSA's pricing (whether SRSA is explicitly named or not) are directly probative of Defendants' misappropriation. By refusing to compel this discovery, based on objections that Defendants never asserted, the Magistrate ruled contrary to law. *See Perez*, 2009 WL 1706697, at *1.

Moreover, the Magistrate's ruling rewards PNC for refusing to meet and confer in good faith, and instead asserting an impenetrable objection based on the preliminary-injunction ruling. PNC's refusal made it impossible for SRSA to understand PNC's objections and propose limitations accordingly. The Magistrate's Order improperly condones PNC's behavior.

2.      **PNC's Specifications and User Manuals for Products at Issue (*RFP 16 to PNC Bank*)**

This narrowed request seeks draft and final versions of specification documents for PNC PAID, Compensation Payments, and Pre-Closing Solicitation, the contents of any internal wikis or updated user manuals for these products, and any documents containing or describing Kelly or Tsarnas's contributions to such documents. SRSA alleges that PNC misappropriated SRSA's confidential workflows and product-development strategies and incorporated SRSA's trade secrets into PNC products. This request seeks documents directly probative of those claims. By refusing to compel discovery based on waived objections, the Magistrate ruled contrary to law. *See id.*

13

### 3. PNC's Technical Development Documents for Products at Issue (*RFP 17 to PNC Bank*)

RFP 17 seeks specific documents dated between March 1, 2018 and June 30, 2019: (a) "wireframes" or mockups of PNC PAID created in the InVision software-development platform; (b) JIRA tickets (records of software-development tasks) generated in the development of PNC PAID; and (c) documents reflecting Kelly's and Tsarnas's contributions to the functionality of PNC's Deal Dashboard. SRSA has already adduced significant evidence that Defendants relied on SRSA's confidential information while developing PNC's copycat products. The requested documents will show the prototyping, iteration, and evolution of those products, and are directly probative of SRSA's trade-secret and breach-of-contract claims. Far from "amorphous," ECF No. 277 at 5, SRSA has specified the products and categories of documents at issue; they are neither burdensome nor overbroad. *See Geophysical Systems*, 117 F.R.D. at 648. By refusing to compel this discovery, based on objections that PNC waived, the Magistrate ruled contrary to law. *See Perez*, 2009 WL 1706697, at *1.

### 4. Kelly's and Tsarnas's Contributions to PNC's Products (*RFPs 21 and 25 to PNC Bank*)

These requests seek documents reflecting contributions by Kelly and/or Tsarnas to PNC's decision to include Compensation Payments, Pre-Closing Solicitation, and Deal Dashboard within its product suite (RFP 25) and to the development of PNC's payments spreadsheet (RFP 21).

The evidence produced to-date shows that Kelly and Tsarnas used SRSA information to help PNC determine which products and features PNC should include in its offering and disseminated SRSA information about the importance of offering certain features. *See* ECF No.

262 at 5, 20. SRSA developed that information over years of market research and trial-and-error experimentation, and it is confidential and proprietary. *See id.* at 5; *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, No. 07-cv-02324-WYD-MEH, 2008 WL 2185882, at *19 (D. Colo. May 23, 2008). PNC's use of that information is discoverable, and RFP 25 seeks to confirm that SRSA has all evidence of their contributions to the selection of key products and features.

The contributions of Kelly and Tsarnas to the development (or re-development) of PNC's payment spreadsheet—which SRSA has already established was derived from an SRSA confidential document—are also discoverable. The documents sought by RFP 21 will illuminate whether and to what extent PNC has modified its payments spreadsheet since litigation commenced, and the roles of Kelly and Tsarnas in that process. Both RFPs 21 and 25 seek evidence directly probative of Defendants' liability and are narrowly tailored to the contributions of the individual defendants. By refusing to compel plainly relevant, proportional discovery, based on waived objections, the Magistrate ruled contrary to law. *See Perez*, 2009 WL 1706697, at *1.

//

//

//

15

1392553

## IV.    CONCLUSION

For the foregoing reasons, this Court should reverse the Magistrate's Order and grant

SRSA's requested relief, as detailed in the [Proposed] Order.


Respectfully submitted,


Dated: October 8, 2020                    By:   */s/ Warren A. Braunig*
                                                Warren A. Braunig
                                                *wbraunig@keker.com*
                                                Michelle S. Ybarra
                                                *mybarra@keker.com*
                                                Benjamin D. Rothstein
                                                *brothstein@keker.com*
                                                Katie Lynn Joyce
                                                *kjoyce@keker.com*
                                                Victor H. Yu
                                                *vyu@keker.com*

                                                KEKER, VAN NEST & PETERS LLP
                                                633 Battery Street
                                                San Francisco, CA 94111-1809
                                                Telephone:       415-391-5400
                                                Facsimile:       415-397-7188

                                                SHERIDAN ROSS P.C.
                                                Scott R. Bialecki
                                                *sbialecki@sheridanross.com*
                                                Matthew C. Miller
                                                *mmiller@sheridanross.com*
                                                1560 Broadway, Suite 1200
                                                Denver, Colorado 80202
                                                Telephone:       303 863 9700
                                                Facsimile:       303 863 0223
                                                Email:     *litigation@sheridanross.com*

                                                Attorneys for Plaintiffs
                                                SRS ACQUIOM INC. AND
                                                SHAREHOLDER REPRESENTATIVE
                                                SERVICES LLC

1392553

**COMPLIANCE WITH TYPE-VOLUME LIMITATION**

The undersigned counsel certifies that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

**CERTIFICATE OF CONFERRAL**

Plaintiffs' counsel conferred with defense counsel on the present objection. Defense counsel opposes the relief requested herein.

1392553