# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

   v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

**PLAINTIFFS' OMNIBUS MOTION TO RESTRICT
(1) THE PARTIES' PARTIAL SUMMARY JUDGMENT PAPERS;
(2) EXHIBITS 6 AND 7 SRSA'S RULE 56(D) MOTION;
(3) EXHIBIT 7 TO DEFENDANTS' OPPOSITION TO PLAINTIFFS' EMERGENCY
MOTION; AND
(4) EXHIBIT 3 TO PLAINTIFFS' OCTOBER 8 OBJECTION**

---

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively,

"SRSA") move to restrict information found in (1) the parties' respective briefing and supporting

papers supporting and opposing Defendants' August 10, 2020 motions for partial summary

judgment, *see* ECF 227 to 229, 262, 263, 271, and supporting papers; (2) Exhibits 6 and 7 to

SRSA's September 16 Rule 56(d) Motion, *see* ECF 267-7, 267-8; (3) Exhibit 7 to Defendants'

Opposition to SRSA's Emergency Motion to Amend the Scheduling Order, *see* ECF 241-7; and

(3) Exhibit 3 to SRSA's October 8 Objection, *see* ECF 291.

On August 31, Defendants filed a motion to restrict information in Defendants' three

briefs and supporting papers, seeking restriction over both SRSA and Defendants' information.

ECF 246.  On September 4, Defendants filed an unopposed motion to restrict Exhibit 7 to

1

1391723

Defendants' Opposition to SRSA's Emergency Motion to Amend Scheduling Order, *see* ECF

249.  On September 14, the Court denied without prejudice Defendants' August 31 and

September 4 motions as they related to SRSA information. *See* ECF 253, 254. The Court

maintained the materials under seal until SRSA filed its own motion to restrict.  *See* ECF 275.

To streamline the parties' restriction requests and to avoid making duplicative arguments

justifying restriction over similar documents, the parties jointly moved to consolidate all sealing

requests for the parties' summary judgment papers together, into an omnibus motion due on

October 14.  *See* ECF 280. This motion follows.[1]

## I.      ARGUMENT

"[W]here documents are used to determine litigants' substantive legal rights," restriction

is appropriate when the parties "articulate a real and substantial interest that justifies depriving

the public of access to the records that inform our decision-making process." *Colony Ins. Co. v.

Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted).

Under Local Rule 7.2(c), a motion to restrict public access to documents filed with the

Court must: (1) identify the document or the proceeding for which restriction is sought; (2)

address the interest to be protected and why such interest outweighs the presumption of public

access; (3) identify a clearly defined and serious injury that would result if access is not

restricted; (4) explain why no alternative to restriction is practicable or why only restriction will

adequately protect the interest in question; and (5) identify the level of restriction sought.  Each

of these factors is met here.

---

[1] Because Exhibit 3 to SRSA's October 8 Objection, *see* ECF 289, includes information similar
in nature to that disclosed in the parties' summary-judgment papers, SRSA also moves for
restriction of that exhibit in this omnibus motion.

1391723

A.        **Description of Documents and Restriction Level Sought**

For the Court's convenience, SRSA attaches as **Exhibit A** to this motion a chart listing its

restriction request on a document-by-document basis.[2] SRSA requests Level 1 restrictions for all

documents.

B.        **SRSA's interest in the protection of its confidential and HC-AEO**
          **information outweighs the presumption of public access**

In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a

legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd. v. Home Box Office,*

*Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998). A court "shall enter such orders and take such

other action as may be necessary and appropriate to preserve the confidentiality of trade secrets."

18 U.S.C. § 1835; *see* Colo. Rev. Stat. § 7-74-106 ("[A] court shall preserve the secrecy of an

alleged trade secret by reasonable means, which may include . . . sealing the records of the

action."). Under Local Rule 7.2, courts in this District have frequently concluded that "the

presumption of public access to Court files is outweighed by [a party's] interest in maintaining

its business information private." *Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*, 2019

WL 4242669, at *4 (D. Colo. Sept. 5, 2019).

Here, SRSA seeks to restrict several categories of sensitive business information found in

Defendants' papers: (1) SRSA customer information; (2) SRSA technical information; (3) SRSA

pricing strategies; and (4) SRSA internal policies and procedures.  Restriction over these

categories of information is warranted here lest the Court's "files might serve as a source of

---

[2] For the Court's convenience, SRSA briefly describes the category of information it seeks
restriction over in the right-hand column of Exhibit A, although it makes its specific justification
under the Local Rule 7.2 factors within the body of this brief.

1391723

business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, 2011 WL 1375117, at \*3 (D. Colo. Apr. 12, 2011).

***First***, SRSA seeks to restrict confidential SRSA customer information. As documented in Exhibit A, documents attached to the both parties' papers directly discuss the identity of SRSA's customer identities, their contact information, and their preferences, including:

- Excerpts of SRSA's highly confidential customer database, revealing customer names, contact information, and preference for payments-and-escrow products. *See, e.g.*, ECF 266, 266-1 to 266-8.

- Presentations given to customers and other referral sources about new SRSA features and developments. *See, e.g.*, ECF 228-22 to 228-25, 228-28, 228-30 to 228-37

- Defendants' documents, spreadsheets, and internal communications showing Defendants' reliance on and use of SRSA customer information. *See, e.g.*, ECF 256-7, 256-8, 257-1, 258-12, 259-13, 259-15, 259-16, 259-15, 259-16, 257-1, 260-4, 260-22.

- SRSA customer communications, the compilation of which together reveal SRSA customer identities and preferences. *See, e.g.*, ECF 228-7 to 228-17, 259-18, 259-19, 282-6, 283-2 to 283-23.

- Testimony and discovery responses identifying SRSA customers lost to PNC and their value to SRSA. *See, e.g.*, ECF 227-19 at 4-10, 259-2, 227-18, 227-1.

- Briefing and documents referencing customers PNC has poached from SRSA. *See, e.g.*, ECF 227, 227-18, 256-7, 257-4, 260-3.

1391723

Such information is worthy of restriction, as its public disclosure would directly harm SRSA.  "[I]nformation regarding his customers' surgical specialties, business preferences, and contact people" is recognized as trade secret.  *See Haggard v. Spine*, 2009 WL 1655030, at \*9 (D. Colo. June 12, 2009); *see also Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1258 (D. Colo. 2005); *see Johnstech Int'l Corp. v. JF Microtechnology SDN*, 2016 WL 4091388, at \*3 (N.D. Cal. Aug. 2, 2016) (granting motion to seal "specific customer names and the percentage of business to those customers").  As supported by the declaration of SRSA's Director of Business Intelligence Ben Lane, SRSA's compilations of customer names and information are maintained secretly by SRSA and would be quite valuable to a competitor in the online payments-and-escrow products industry, who could then use such information to solicit SRSA's customers. *See* ECF 266 ¶¶ 1-22, 262 at 12-13. The disclosure of such information would thus be highly damaging to SRSA's competitive standing in the marketplace.

In addition to revealing SRSA customer information, numerous documents within this category discuss or reference SRSA's business-development strategy.  *See, e.g.*, ECF 227-1, 227-2.  Information about a company's business-development practices—as well as its discussions with potential customers—is routinely restricted from public view. *See Koninklijke Philips N.V. v. Elec-Tech Int'l Co., Ltd.*, 2015 WL 581574, at \*1–2 (N.D. Cal. Dec. 10, 2015) (compelling reasons exist to justify sealing information about an entity's "discussions regarding potential partnerships with other product manufacturers"). Such information should also be restricted here. SRSA maintains such information confidentially.  *See* ECF 266 ¶¶3-21.

5

1391723

*Second*, SRSA seeks to restrict information regarding SRSA's technical processes, operational procedures, and proprietary documents used to run its online payments platform. The information SRSA seeks to restrict consists of:

- SRSA's trade-secret identification, as well as its declarations, describing operation processes and development history of its trade secret information. *See* ECF 259-1, 227-19 at 39-40, 256-10.

- Internal SRSA documents describing its payments and operational processes. *See* ECF 258-18, 258-19, 260-16.

- Documents attaching or describing SRSA's proprietary payments spreadsheet. *See, e.g.*, ECF 228-3, 227-11.

- SRSA product roadmaps and specifications.  *See, e.g.*, ECF 228-26, 228-27, 256-10, 256-15, 256-16, 257-16, 257-17, 258-1.

- Communications and other documents reflecting Defendants' use of SRSA product and payments-process information. *See, e.g.*, ECF 256-7, 257-18, 258-16, 259-14, 260-15, 260-16, 260-19, 267-7 256-15, 257-16, 257-17.

- PNC payments-processing and operation documents reflecting PNC's use of SRSA payments and operational processes.  *See, e.g.*, ECF 229-14 , 258-19, 267-7, 267-8, 260-15, 260-16, 260-20.

The public disclosure of "highly sensitive information regarding [Plaintiff's] product architecture and development . . . could cause harm to [Plaintiff] if the information were to become known to a competitor."  *Delphix Corp. v. Actifio, Inc.*, 2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014).   And here, such technical information took years of research and

6

1391723

development for SRSA to develop, is not disclosed publicly or only disclosed with appropriate confidentiality restrictions, and is worthy of trade-secret status. *See* ECF 256-10 ¶¶7-14, 21-65; 262 at 7-10, 19-26.   As attested to in SRSA's employee declaration, a competitor armed with such information would gain significant insight into how to mimic SRSA's industry-leading products, and cause SRSA competitive harm in the marketplace. *See* ECF 256-10 ¶¶7-14, 21-65.

   ***Third***, SRSA seeks to restrict documents revealing SRSA's non-public pricing strategies. These materials include numerous references to the procedures, methodologies, and documents SRSA relies on to set its pricing for specifics market segments and products.  Pricing information is routinely afforded trade-secret status. *See Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1258 (D. Colo. 2005).  And here, SRSA seeks to restrict documents that disclose:

- Internal SRSA memoranda, presentations, and calculators describing SRSA's pricing strategy. *See* ECF 229-17, 262, 268, 256-2, 257, 257-9 to 257-15, 259-10, 260-20.

- A confidential contract with an SRSA partner bank used to determine SRSA's revenues from its escrow services.  *See* ECF 258-8.

- SRSA communications revealing historic SRSA prices to customers. *See, e.g.*, ECF 283-18, 283-20.

- PNC communications reflecting PNC's use of SRSA pricing strategies. *See, e.g.*, ECF 259-9, 258-10.

   Information about SRSA's pricing strategies is highly sensitive and worthy of restriction. As SRSA has supported through declarations of its CEO, Paul Koenig, SRSA does not disclose the information making up its pricing strategies, and it would be incredibly difficult for a competitor to reverse engineer the information comprising SRSA's strategies.  *See* ECF 268 ¶¶

4-11, 257 ¶¶15-20.  SRSA's pricing information is worthy of trade-secret status. *See* ECF 262 at 15-19.  And if known to its competitors, SRSA's pricing strategies would directly harm SRSA by permitting its competitors to predict SRSA's pricing in future deals and to undercut SRSA in the marketplace. *See id.*; ECF 268 ¶¶ 4-11.

*Fourth*, SRSA also seeks restriction over documents revealing internal SRSA corporate polices and procedures. These include:

- Documents directly discuss non-public, internal SRSA corporate security and human-resources policies.  *See, e.g.*, ECF 229-5, 229-8, 256-4.

- Documents revealing SRSA employee compensation.  *See* ECF 256-11, 260-11.

- Proprietary, non-public SRSA documents used in its online payments-and-escrow business. *See* ECF 260-18.

- Confidential information about SRSA's product-development process and staffing on internal projects.  *See* ECF 227-19 at 39-41.

Courts have routinely sealed such internal corporate information.  *See In re High-Tech Employee Antitrust Litig.*, 2013 WL 163779, at *5 (N.D. Cal. Jan. 15, 2013) (granting motion to seal with respect to defendant's "policies[] and procedures" because "the disclosure of this information could cause [d]efendants competitive harm"); *Koninklijke Philips*, 2015 WL 581574, at *1–2 (compelling reasons exist to justify sealing information about an entity's "business practices" and "recruitment efforts"). To avoid SRSA's competitors and other third parties mimicking—or exploiting—SRSA's procedures and practices, such information should be restricted from public review.

1391723

C.      There is no practicable alternative to restriction

No practical alternative to restriction exists here because public disclosure of the specific, narrowly tailored information SRSA seeks to seal would destroy their value and cause significant competitive harm to SRSA. SRSA maintains confidentiality over its trade secrets and other confidential information, to avoid the inevitable harm that would result from disclosure. In such cases, to avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request. *See Healthtrio, LLC v. Aetna, Inc.*, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014).  Recognizing the public value of access this Court's records, SRSA will file public redacted versions of the restricted documents (where it can be done) to narrowly tailor its request as much as practicable under the circumstances. *Slawson Exploration Co. v. Arch Specialty Ins. Co.*, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

Finally, the Court has already approved Level 1 restriction for the same categories of information SRSA now seeks to restrict. In conjunction with its preliminary-injunction briefing and January 2020 Motion for Sanctions, SRSA previously sought, and obtained, restriction over the same confidential technical and business information at issue in its current motion.  Indeed, numerous copies of declarations, communications, and other documents from the parties' preliminary-injunction papers that continue to be maintained under restriction have now simply been re-attached to the parties' summary-judgment briefing. *See* ECF 193 (granting motion to restrict SRSA customer information found in Defendants' communications); 194 & 210 (restricting numerous SRSA and PNC documents containing SRSA confidential and trade-secret

1391723

information), 222 (redacting reference to SRSA customers, confidential business information, and product-development strategies found in the March 11 hearing transcript).

There is thus good cause to grant SRSA's motion, and SRSA respectfully requests that the Court order Level 1 restriction over the materials identified in Exhibit A.

### Certificate of Conferral Under Local Rule 7.1(a)

Under Local Rule 7.1(a), the parties conferred through written correspondence on September 21, September 22, October 9, October 12, and October 13, 2020. The parties met and conferred telephonically on October 14, 2020.  Defendants indicated they would not oppose SRSA's restriction request for ECF 227-15, 228-1, 229-5, 229-8, 226-1 to 226-3, 226-6, 257-18, 267-7, 267-8,  256-4, 256-6 (for lines 330:18-330:25), 256-11, 256-14 to 256-16, 257-16, 258-8, 259-4, 259-14, 260-12, 260-16, 260-19, and 283-22, but would oppose the remainder of SRSA's request.

*//*

*//*

*//*

10

1391723

Respectfully submitted,

Dated: October 14, 2020

By:  *s/ Victor H. Yu*
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Katie Lynn Joyce
*kjoyce@keker.com*
Victor H. Yu
*vyu@keker.com*

KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:       415-391-5400
Facsimile:       415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
*sbialecki@sheridanross.com*
Matthew C. Miller
*mmiller@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:       303 863 9700
Facsimile:       303 863 0223
Email:     *litigation@sheridanross.com*

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

## Compliance With Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set

forth in Judge Domenico's Practice Standard III.A.1.

11

1391723