**IN THE UNITED STATES DISTRICT
COURT FOR THE DISTRICT OF COLORADO
Judge Daniel D. Domenico**

Case No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., and SHAREHOLDER REPRESENTATIVE
SERVICES LLC,

    Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., PNC BANK, N.A.,
HEATHER KELLY, and ALEX TSARNAS,

    Defendants.

---

# ORDER

---

Before the court are nine motions: three motions for summary judgment filed by the Defendants (Docs. 227, 228, 229); Plaintiffs' motion pursuant to Federal Rule of Civil Procedure 56(d) to deny without prejudice Defendants' motions for summary judgment (Doc. 267); Plaintiffs' appeal of Magistrate Judge Crews's September 24, 2020 second written discovery order (Doc. 289); Plaintiffs' motion for leave to file a surreply in support of its response in opposition to Defendants' motions for summary judgment (Doc. 294); and Plaintiffs' motion for a hearing on the pending motions (Doc. 300). As explained below, the court SUSTAINS IN PART and OVERRULES IN PART Plaintiffs' objections to Magistrate Judge Crews's second written discovery order; GRANTS Plaintiffs' Rule 56(d) motion; and DENIES WITHOUT PREJUDICE the motions for summary judgment, the motion for leave to file a surreply, and the motion for a hearing.

# BACKGROUND

The court addressed this case's background in detail in its order denying Plaintiffs' motion for a preliminary injunction:

> As the fees bankers and attorneys can charge for them show, mergers and acquisitions are complicated affairs. Even the payments-and-escrow aspect of an acquisition, by which the actual purchase funds are transferred among entities and shareholders, is surprisingly complex. On the payment side of an acquisition or merger, the target company must collect consents from its shareholders. Doc. 66, ¶ 23. Post-merger or acquisition, the buyer must obtain key tax and contractual forms from its shareholders, which it does by sending a "letter of transmittal" to shareholders of the acquired company. *Id.* ¶ 27. A letter of transmittal contains essential tax and contract forms that each shareholder must fill out and return to receive payment. *Id.* The buyer must also pay for the acquired company. *Id.* ¶ 28. To do this, the buyer often hires a paying agent to create and collect the paperwork necessary to facilitate payment. *Id.* Historically, this process was done manually, on paper. *Id.* ¶ 30.
>
> SRSA, however, has over the last decade developed a suite of products that allow much of this payments-and-escrow business to be done online. *Id.* ¶¶ 23, 32. In 2012, SRSA developed a product they call Acquiom Clearinghouse. *Id.* ¶ 33. Clearinghouse is an electronic platform that collects and processes the shareholder information needed for payment in a merger or acquisition. *Id.* Around the same time, SRSA developed Acquiom Compensation Payments, which is an electronic platform for the post-merger payments process. *Id.* ¶ 36. SRSA's suite of relevant products is rounded out by Deal Dashboard, an online site where a buyer or seller can see in one place the status of all of its deals being facilitated by SRSA, and Pre-Closing Solicitation, an automated system for distributing and recording shareholder consents and agreements. *Id.* ¶ 39.
>
> PNC is a large international bank based in Pittsburgh. One of its subsidiaries, Defendant PNC Financial Services Group, Inc., is a financial-services business with hundreds of billions of dollars in assets and deposits. Doc. 134, ¶ 2.

In 2018, PNC acquired Fortis Advisors, LLC, ("Fortis"). *Id.* ¶ 3. Among other services, Fortis offered shareholder services in mergers and acquisitions. *Id.* ¶ 4. PNC says that its main purpose in acquiring Fortis was to offer PNC clients a full suite of payment-and-escrow services so that it could obtain the escrow deposits during a merger or acquisition. *Id.* ¶ 5.

Defendants Heather Kelly and Alex Tsarnas were employees of SRSA until they left to join PNC in March 2018. Ms. Kelly is a veteran of the payments-and-escrow services industry. Doc. 130, ¶¶ 3–5. Before joining SRSA, she served in payments-and-escrow leadership positions at Wells Fargo Bank and Wilmington Trust. *Id.* ¶¶ 3–4. In 2014, SRSA successfully recruited Ms. Kelly to leave Wilmington Trust. *Id.* ¶ 5. Also in 2014, SRSA hired Mr. Tsarnas as its managing director of global business development. Doc. 74, ¶ 25. Ms. Kelly and Mr. Tsarnas were heavily involved in developing and marketing SRSA's payment-and-escrow products. Mot. at 6–7.

Both Ms. Kelly and Mr. Tsarnas entered into written employment agreements with SRSA. Among other provisions, their contracts prohibit them from misappropriating SRSA's trade secrets, confidential and proprietary information, and company property; competing with SRSA while employed there; and soliciting customers of SRSA for one year after termination from SRSA. Doc. 74, ¶¶ 5, 7; Doc. 75-2, at 3, 6–8. Ms. Kelly's non-solicitation agreement included an exception for approximately 40 customers she had pre-existing relationships with before she joined SRSA. Doc. 75-1, at 16.

SRSA fired Mr. Tsarnas in January 2018, and Ms. Kelly quit in March 2018. The details surrounding Ms. Kelly's departure are important to understanding this case. Ms. Kelly resigned from SRSA on March 8, and her last day was March 9. Mot. at 8. On the last two days of Ms. Kelly's employment with SRSA, she created a document entitled "HK Contacts.xlsx," in which she input contact information of client representatives and other industry contacts from her SRSA email and an SRSA database. Doc. 73, ¶¶ 27–31. SRSA says that she used this list at PNC to update a target list for PNC Paid. Mot. at 11. On April 2, 2018, Ms. Kelly's counsel informed SRSA that Ms. Kelly had numerous

3

SRSA documents in her possession, including the payments spreadsheet discussed below. Doc. 136-3. SRSA did not respond to the letter.

When Ms. Kelly and Mr. Tsarnas left SRSA to join PNC in March 2018, PNC had just begun developing a competing suite of online payment-and-escrow products that ultimately became PNC Paid. Thirteen months later, in April 2019, PNC publicly launched PNC Paid. Doc. 82, ¶ 5. PNC executed its first deal on PNC Paid in January 2019. Doc. 94-7, at 1207. The basis of Plaintiffs' motion for preliminary injunction is that Ms. Kelly and Mr. Tsarnas misappropriated five SRSA trade secrets, giving PNC an unlawful head start on PNC Paid. The five alleged trade secrets are: (1) Ms. Kelly's contact list; (2) an Excel spreadsheet known as the "payments spreadsheet," which SRSA uses to gather and input shareholder information; (3) SRSA's pricing strategies; (4) SRSA's product-development strategies; and (5) two procedural documents taken by Ms. Kelly.

Doc. 207 at 2–5.

Plaintiffs filed suit on July 11, 2019. *Id.* at 5. Defendants agreed to engage in expedited discovery in exchange for SRSA to forego filing a motion for temporary restraining order. *Id.* On March 26, 2020, the court denied SRSA's motion for a preliminary injunction, ruling that "while there are certainly issues on which Plaintiffs could prevail at trial, they have failed to make the difficult showing that they are clearly and unequivocally entitled to such a drastic remedy rather than an award of damages." *Id.* at 8.

On May 29, 2020, Magistrate Judge Crews ordered that the remaining discovery in the case be completed by November 30, 2020, and that the parties file their dispositive motions, if any, no later than December 30, 2020. Doc. 215. Magistrate Judge Crews later extended the discovery deadline to December 21, 2020. Doc. 308. The parties submitted a discovery dispute over SRSA's discovery requests to Magistrate Judge Crews on August 11, 2020—the day after Defendants filed three motions

for summary judgment. Docs. 230–34. Magistrate Judge Crews issued his second written discovery order on September 24. Doc. 277. And SRSA filed its Rule 56(d) motion on October 8. Doc. 289.

## ANALYSIS

### I.   SRSA's Objections (Doc. 289) to the Second Written Discovery Order (Doc. 277)

Judge Crews's second written discovery order addressed Defendants' objections to a number of SRSA's written discovery requests. Doc. 277 at 1. SRSA appeals Judge Crews's rulings as to nine discovery requests: interrogatories 2 and 6 to PNC Bank; request for production 16 to PNC Financial; and requests for production 14–17, 21, and 25 to PNC Bank. Doc. 289.

### A.  Standard of Review

When a party timely objects to a magistrate judge's ruling on a non-dispositive matter, the court must overrule the objections unless the magistrate judge's ruling was clearly erroneous or contrary to law. Fed R. Civ. Proc. 72(a). A ruling is clearly erroneous if the magistrate judge abused his discretion or if, "after viewing the record as a whole, the court is left with a 'definite and firm conviction that a mistake has been made.'" *Running Foxes Petroleum, Inc. v. Nighthawk Prod. LLC*, No. 14-CV-01466-MSK-MJW, 2015 WL 9312097, at *2 (D. Colo. Dec. 23, 2015). A magistrate judge's ruling is contrary to law if he applied the wrong legal standard or if he wrongly applied the right legal standard. *Mackey v. Watson*, No. 17-CV-01341-CMA-STV, 2019 WL 3543624, at *3 (D. Colo. Aug. 5, 2019).

### B.  Interrogatories 2 and 6 to PNC Bank

Interrogatory 2 to PNC Bank reads:

> Describe each customer engagement from January 1, 2018 through present pursuant to which PNC provided PNC's Payments & Escrow Services. For the purposes of this interrogatory, "Describe" means identify the customer, the deal parties, the specific payments and/or escrow service that PNC contracted to provide, the date and Financial Terms of PNC's engagement, the escrow amount (if any), number of payees, PNC's total revenues and profits from the engagement (including escrow interest), and any code name used for the engagement or project.

Doc. 277-1 at 10. Judge Crews ruled that this request is disproportionate to the scope of SRSA's claims because it requests discovery relating to all customer interactions, not only those overlapping customers between Ms. Kelly's contact list and PNC's target customer list. Doc. 277 at 8. Judge Crews thus limited the request to only those overlapping customers. *Id.*

Interrogatory 6 to PNC Bank reads:

> For each customer engagement for PNC's Payments & Escrow Services in which you provided a customer with a payments spreadsheet, identify the payments spreadsheet and the communication by which it was provided. For the purposes of this interrogatory, "identify" means state the name of the file, the date of transmission, the name of the PNC representative who transmitted the payments spreadsheet, the recipient of the transmission, and Bates number of the payments spreadsheet and communications transmitting the same.

Doc. 277-1 at 7. Judge Crews likewise ruled that this interrogatory was overbroad and limited it to identification of customer engagements with the customers overlapping between Ms. Kelly's contact list and PNC's target customer list. *Id.* at 8.

These rulings are contrary to law. If SRSA demonstrates that Defendants profited from the alleged misappropriation of trade secrets, it is entitled to the *entirety* of profits Defendants made from the product

that incorporated those secrets. *See CardioVention, Inc. v. Medtronic, Inc.*, 483 F. Supp. 2d 830, (D. Minn. 2007). But these rulings effectively limit Plaintiffs to evidence of damages only related to Ms. Kelly's alleged breach of contract. SRSA is entitled to discover information related to sales of PNC's payment-and-escrow services to the entirety of PNC's customer base, not only those overlapping customers between Ms. Kelly's contact list and PNC's target customer list. Otherwise, SRSA would not have the full picture of damages and possibly causation. The court thus sustains SRSA's objection as to interrogatories 2 and 6.

## C. Request for Production 16 to PNC Financial

Request for production 16 to PNC Financial requests production of "All documents reflecting revenue, profit, or other financial projections created by PNC for PNC's Payments & Escrow Services from 2017 until the present." Doc. 277-1 at 10. Magistrate Judge Crews ruled this RFP was too broad and limited it to "documents showing PNC's quarterly profits from the referenced product(s) for the years" 2018 to 2020. Doc. 277 at 7. Judge Crews's ruling as to RFP 16 wasn't clearly erroneous. While SRSA is correct that, as a general matter, relevance in discovery is broader than, say, relevance on at trial, Doc. 289 at 10, the ruling wasn't a misapplication of that principle. RFP 16 requests documents that are irrelevant to the case, so Judge Crews reasonably limited its breadth. The court overrules SRSA's objection as to RFP 16.

## D. Requests for Production 14–17, 21, and 25

These requests for production to PNC Bank request production of:

- **RFP 14:** "All documents from January 1, 2018 to the present constituting or reflecting communications between PNC and any potential or actual customer for PNC's Payments & Escrow Services, including but not limited to individuals or entities listed on any version of 'HK Contacts'

or the Strategic Buyers page of 'Firms by Segment,' about PNC's Payments & Escrow Services." Doc. 277-1 at 10. As part of the meet and confer process, SRSA agreed to narrow this request to pre-contract communications that were part of the sales process. *Id.*

- **RFP 15:** "All documents constituting or reflecting internal PNC communications relating to setting the Financial Terms for any potential or actual engagement to provide PNC's Payments & Escrow Services." *Id.* at 3.

- **RFP 16:** "All documents from March 1, 2018 to the present relating to the operational rules, workflows, specifications, business logic, or functionality of PNC's M&A Payments and Escrow Products, such as guidelines, instructions, wikis, memoranda, handbooks, emails, or manuals." *Id.*

- **RFP 17:** "All documents from March 1, 2018 to the present [later narrowed to June 30, 2019] relating to efforts to determine the functionality of PNC's M&A Payments and Escrow Products, including but not limited to communications, notes, meeting minutes, photographs, diagrams, calendar invites, or calendar entries regarding the same." *Id.*

- **RFP 21:** "All documents, from March 1, 2018 to the present, relating to the development, modification, enhancement, or re-development of any payment spreadsheet in connection with PNC's provision of PNC's Payments & Escrow Services." *Id.* at 4.

- **RFP 25:** "All documents relating to PNC's decision to include the following products within PNC's M&A Payments and Escrow Products: Optionholder Compensation Payments, Pre-Closing Solicitation, and Deal Dashboard." *Id.* at 5.

Magistrate Judge Crews dealt with these requests *en masse*, refusing to compel responses to any of them. Doc. 277 at 5. He reasoned that these RFP's are "broad and unduly burdensome on their face" requesting documents related to "amorphous categories of information." *Id.* And he refused to narrow these RFP's "given their numerosity and the[ir] sheer breadth." *Id.*

This ruling wasn't clearly erroneous. For each RFP, SRSA argues that the documents requested are "plainly relevant" and "directly probative" to their claims. Doc. 289 at 11, 13. There surely is a core of documents hidden in each request that is, in fact, relevant. But Judge Crews reasonably concluded that each request fails to meet the particularity requirement of Federal Rule of Civil Procedure 34(b)(1) that requests "must describe with reasonable particularly" the documents or items to be produced. Tacking on broad phrases like "relating to" to a request for an already broad category of documents pushes a request for production beyond what is permissible under the Rules' liberal standards of relevance in discovery. *Cardenas v. Dorel Juvenile Grp., Inc.*, 232 F.R.D. 377, 382 (D. Kan. 2005). It is SRSA's burden, not the court's, to craft particularized requests for production. Given that, and the broad-to-the-point-of-burdensome nature of these RFP's, Judge Crews did not err in refusing to compel production the documents responsive to these RFP's. The court overrules SRSA's objections as to RFP's 14–17, 21, and 25.

## II.   SRSA's Rule 56(d) Motion to Deny Pending Motions for Summary Judgment (Doc. 289)

SRSA moves the court to deny or defer Defendants' motions for summary judgment on the ground that they are premature. Under Federal Rule of Civil Procedure 56(d), "if a nonmovant shows by affidavit or declaration that, for specified reasons, it cannot present facts essential to justify its opposition, the court may: (1) defer considering the motion or deny it; (2) allow time to obtain affidavits or declaration or to take discovery; or (3) issue any other proper order." "Summary judgment should be refused where the nonmoving party has not had the opportunity to discover information that is essential to his opposition." *Cerveny v. Aventis, Inc.*, 855 F.3d 1091, 1110 (10th Cir. 2017) (alterations

adopted). "Requests for further discovery should ordinarily be treated liberally." *Id.* "But relief under Rule 56(d) is not automatic." *Id.* To be entitled to relief under Rule 56(d), the movant must submit an affidavit "(1) identifying the probable facts that are unavailable, (2) stating why these facts cannot be presented without additional time, (3) identifying past steps to obtain evidence of these facts, and (4) stating how additional time would allow for rebuttal of the adversary's argument for summary judgment." *Id.* SRSA has submitted an affidavit in support of its motion. Doc. 267-1. After consideration of its motion and affidavit, the court concludes that it is appropriate to defer consideration of Defendants' motions for summary judgment.

First, SRSA has identified probable facts that additional discovery will reveal: evidence of PNC's use of the alleged trade secrets, including further evidence of PNC's use of SRSA's technical documents, Doc. 267-1 at ¶¶ 27, 30; evidence demonstrating that the items taken by Ms. Kelly deserve trade-secret status, including PNC's internal communications discussing the value of the alleged trade secrets, Doc. 267-1 at ¶ 45; and evidence revealing PNC's efforts to target SRSA customers from Ms. Kelly's contact list, *id.* at ¶¶ 33–37, 39–41. Second, SRSA's affidavit in support of its motion avers that PNC has not fully responded to discovery requests that would allow SRSA to discovery additional evidence needed to defeat Defendants' motions for summary judgment. *Id.* at ¶¶ 46–50. Third, SRSA has averred that discovery is ongoing and so additional time will result in discovery of helpful information. *Id.* at ¶ 50. Fourth, according to SRSA's affidavit in support of its motion, the additional discovery will help rebut Defendants' motions for summary judgment, including evidence that Defendants' alleged misappropriation has caused customer confusion. *Id.* at ¶ 38.

Defendants oppose SRSA's motion on the ground that SRSA has

failed to identify any probable facts additional discovery will uncover. Doc. 288 at 1. Defendants say that SRSA merely identifies "topics for additional discovery." *Id.* at 6. But as explained above, SRSA's affidavit has done more than identify the additional discovery it seeks. SRSA has instead identified facts that additional discovery will reveal relating to PNC's use of the alleged trade secrets, customer confusion as a result of the alleged misrepresentation, and communications revealing that SRSA treated the items at issue as trade secrets. Under the liberal standard applied to Rule 56(d) motions, this is enough to defer ruling on Defendants' motions for summary judgment.

## CONCLUSION

The court **OVERRULES IN PART** and **SUSTAINS IN PART** SRSA's objections to the second written discovery order (Doc. 289); **GRANTS** SRSA's Rule 56(d) motion (Doc. 267); and **DENIES WITHOUT PREJUDICE** Defendants' motions for summary judgment (Docs. 227, 228, 229), SRSA's motion for leave to file a surreply (Doc. 294), and SRSA's motion for hearing (Doc. 300).

It is **FURTHER ORDERED** that if the parties choose to file motions for summary judgment, those motions may not exceed **12,000 words total per side**. Responses to any such motions for summary judgment may not exceed **12,000 words total per side**. Replies may not exceed **6,000 words total**. The parties may exceed these limitations only for good cause shown. To the extent feasible, the parties are encouraged to consolidate their respective motions and responses into single omnibus moving papers, *e.g.*, Defendants file one motion for summary judgment and Plaintiffs file one response.

Dated: November 18, 2020.        BY THE COURT:

Daniel D. Domenico
United States District Judge