**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

      v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

**JOINT HEARING BRIEF FOR JANUARY 27, 2021 HEARING ISSUES**

---

Consistent with Special Master Tenner's request during the January 21, 2021 status conference, the parties hereby submit the following joint statement to identify the five disputes that have not previously been briefed and that will be addressed at the January 27, 2021 hearing.

1. **Kelly's Communications with Miller and Kingsley**

The parties dispute whether SRSA is entitled to Kelly's production of "[a]ll communications with Alex Kingsley or Dennis Miller from January 1, 2016 until present." RFP 8 to Kelly.

***SRSA'S POSITION*:** In the PI and summary-judgment proceedings, Defendants relied on declarations from Kingsley and Miller—clients that Kelly managed—who glowingly tout her talents, support Defendants' theories, and criticize SRSA. *See* ECF 126, 129. Both men are listed in PNC's initial disclosures. Yet Defendants refuse to produce all of Kelly's communications with them—even though "[e]vidence of a witness' relationship with a party that might cause the witness to slant his testimony for the party is widely admissible impeachment evidence."

1

*Casaretto v. Geico Cas. Co.*, 2017 WL 2335378, at *2 (D. Colo. May 30, 2017). The limited text messages Kingsley produced suggest they have a personal and social relationship that extends back years, which may have slanted his testimony. Defendants have articulated no burden, and SRSA has been unable to otherwise obtain the documents. SRSA received limited documents from BlackBerry (Miller's employer), and Kingsley produced only a subset of text messages.

**DEFENDANTS' POSITION**: Attorneys Kingsley and Miller provided Declarations on behalf of the Defendants in this case that were submitted to the Court as part of the preliminary injunction proceedings. Defendants have already produced all communications that relate to the Declarations and this lawsuit. SRSA has already issued third party subpoenas to Mr. Kingsley and to Mr. Miller's employer, Blackberry. Mr. Kingsley produced every single message in his possession between Ms. Kelly and him, which amounted to 34 pages of text messages dating back to at least early 2017. Mr. Miller, through his employer, Blackberry, produced 502 pages of documents in response to the subpoena to him. Yet SRSA still advances the unreasonable and disproportionate position that Ms. Kelly needs to search for every single communication between her and Mr. Kingsley and between her and Mr. Miller regardless of whether those communications relate in any way to this lawsuit. Ms. Kelly has known both Declarants professionally for years, so this request is unreasonable and should be rejected.

    2.    **PNC's Efforts to Enforce Similar IP Rights**

The parties dispute whether SRSA is entitled to PNC's production of "[a]ll demand letters, draft complaints, notices or any other document PNC sent to third parties regarding any legal action for trade secret misappropriation, unfair competition, or to enforce non-competition and non-solicit agreements by PNC relating to any of PNC's products or services." RFP 15 to PNC Financial. SRSA has agreed to narrow this request to PNC's production of documents, such as demand letters, draft complaints, or notices, that PNC sent to third parties to enforce the following categories of intellectual property rights: customer information, payment process technology, pricing information, business plans, or product-development strategies. .

**SRSA'S POSITION**: This request, narrowed through the meet-and-confer process, is tailored to identify inconsistencies between Defendants' current litigation positions and its prior positions regarding similar categories of information. PNC's prior demand letters or threats made

against third parties could directly undermine its positions in this litigation about what is or is not confidential or worthy of protection; and Defendants themselves have repeatedly sought to rely on SRSA's positions in outside litigation. For example, Defendants argued in their summary-judgment brief that a customer list containing "mere contact information" is not entitled to trade-secret protection—and in support, relied on statements made by SRSA's CEO in an entirely different litigation. *See* ECF 228 at 12, 12 n.5. Turnabout is fair play. Nor is SRSA's request overly broad or unduly burdensome. At PNC's urging, SRSA narrowed it to focus on categories of information alleged as trade secrets in this case.

**DEFENDANTS' POSITION**: SRSA is the plaintiff with the burden of proof in this case, and it is claiming that it has various trade secrets that were misappropriated (it does not have any trade secrets and nothing was misappropriated). By way of background, PNC Bank is the seventh largest bank in the U.S. and it has operations in 40 states, and it has approximately 52,000 employees. It also has extensive intellectual property. SRSA's request as written is not limited to the products or services at issue in this case, which are under the business umbrella of "PNC Paid." Indeed, it is not even limited to the intellectual property rights SRSA claims to possess by, for example, inquiring about non-competition agreements. Defendants have explained previously to SRSA that PNC has never tried to enforce any intellectual property rights related to the business of PNC Paid. The much broader and completely irrelevant request to which PNC objects has no relationship to this case, and it is completely disproportionate to the needs of the case.

### 3. PNC's Withholding of Documents Under the Forensic Inspection Protocol

Under the Stipulated Forensic Inspection Order (ECF 43-1), SRSA requested production of 11 user-generated documents, ten found in a SRSA-issued MacBook Ms. Kelly retained and one in Mr. Tsarnas' PNC laptop. PNC has refused to produce them on relevance grounds.

**SRSA'S POSITION**: SRSA is plainly entitled to these documents. ***First***, the Order permits a party to withhold documents *only* on privilege grounds. *See* ECF 43-1 ¶ 8. Defendants withheld documents on relevance grounds, an improper violation of the Order. ***Second***, even if the Order permitted relevance objections, Defendants failed to timely raise any objection to SRSA's request in the required two-day window, waiving any objections. *See id.* ¶ 6. ***Third***,

these documents are plainly relevant. They pre-date Kelly and Tsarnas' departure from SRSA and based on file name, appear to include SRSA technical and commercial information. They are thus directly relevant to (a) SRSA's misappropriation claim and (b) its claim that Kelly and Tsarnas breached their contractual obligations to return SRSA documents upon departure.

**DEFENDANTS' POSITION:** The current dispute centers on documents that SRSA demanded "pursuant to the Forensic Inspection Order – not pursuant to any discrete RFPs. Under that Order, SRSA may request production of any 'user-generated files' from Kelly and Tsarnas' devices relevant to this litigation." ECF 113 at 10. Though SRSA has previously acknowledged to the Court that it may only request user-generated files "relevant to this litigation," SRSA now asserts that if it demands production of a document under the Forensic Inspection Order, as opposed to a Request for Production, Defendants may only withhold a document on the basis of privilege and Defendants are not entitled to any other objection afforded to parties in Federal Court. SRSA's objection is illogical and contrary to prior statements made by it to the Court and Defendants as SRSA has repeatedly acknowledged that nothing in the Federal Rules or the Forensic Inspection Order entitles SRSA to irrelevant documents:

- Warren Braunig Email, 9/11/19: "If the documents collected by Forensic Pursuit are personal information unrelated to SRSA or this litigation, we do not want them and you may withhold them."

- Ben Rothstein Email, 11/18/19: Requesting production of specific user-generated files because of "the apparent relevance of these five specific documents"

- Victor Yu Email, 11/20/19: Initiating request under Forensic Inspection Order and stating that "we appreciate a production of responsive messages."

### 4.  SRSA's 30(b)(6) Topics Regarding Technical Information

The parties dispute whether SRSA is entitled to 30(b)(6) testimony on its topics 9 and 12. Topic 9: "PNC's efforts to modify, re-design, or replace its payments spreadsheet after July 11, 2019." Topic 12: "The product requirements, product specifications, business rules and payments workflows for PNC's M&A Payments and Escrow Products, including those set forth in the different versions of its Payment Product Specifications and associated appendices, and the contributions of Kelly and Tsarnas to their creation."

***SRSA'S POSITION:*** Topic 9 is the same issue addressed at the January 22 conference: PNC's efforts to modify its payments spreadsheet after the litigation was filed. The Special Master already rejected PNC's relevance and burden objections to discovery of the same issue (RFP 26 to PNC Financial, RFP 30 to Kelly and Tsarnas). SRSA simply seeks a deposition on the information Defendants will produce, which is relevant to establishing misappropriation, and the extent of PNC's head start provided by their misappropriation for calculating damages. Topic 12 is plainly relevant to misappropriation: PNC's product specifications, and the contributions of Kelly and Tsarnas to their development, is a central issue. Indeed, the Court's Rule 56(d) Order explicitly held that SRSA was entitled to such discovery. *See* ECF 315 at 11, ECF 267-1 ¶¶21-30. PNC has now agreed to produce additional development documents in response to RFPs 24, 25, and 30 to PNC Financial. Now, SRSA seeks a deposition on these issues.

**DEFENDANTS' POSITION**:

<u>Topic 9</u>

This topic is irrelevant to SRSA's claims in this suit. SRSA alleges that Defendants misappropriated its allegedly trade secret payments spreadsheet and used it to create PNC's own payments spreadsheet. However, the Court has already found that it "cannot agree that the spreadsheet is a trade secret" because "SRSA shared that information in every deal it does without any agreement requiring client to keep the spreadsheet confidential." ECF No. 207 at 19. PNC's efforts to modify its payments spreadsheet after this suit was filed in July 2019 have no bearing whatsoever on whether SRSA's payments spreadsheet, which it freely distributed, qualifies for trade secret status.  Moreover, the Topic is overbroad in that it is not limited to modifications to the aspects of the payments spreadsheet that SRSA contends is a trade secret.

<u>Topic 12</u>

This topic is an improper blockbuster discovery request that is largely irrelevant to SRSA's actual claims in this suit as already held by Judge Crews and affirmed by Judge Domenico. SRSA previously moved to compel PNC to respond to a request for production similar to this topic seeking "all documents form March 1, 2018 to the present, relating to the operational rules, workflows, specifications, business logic, or functionality of PNC's M&A Payments and Escrow Products, such as guidelines, instructions, wikis, memoranda, handbooks, emails, or manuals." Judge Crews denied the motion to compel, finding the request to be "too broad and unduly burdensome[.]" ECF No. 277 at 5. Judge Domenico then confirmed this ruling, finding "Judge Crews reasonably concluded that each request fails to meet the particularity requirement of

Federal Rule of Civil Procedure 34(b)(1)." ECF 315 at 9.  To be clear, Judge Crews and Judge Domenico held that it would impose an undue burden to collect and review the documents responsive to this request.  Given that a corporate representative could only be prepared on this Topic by collecting and reviewing (in addition to familiarizing themselves with such documents) these very same documents, Topic 12 is *per se* unduly burdensome.

### 5. PNC's Request for Third-Party Payment Spreadsheets Received by SRSA

The parties dispute whether Defendants are entitled to production of all "paying agent spreadsheets other than SRS[A]'s" and "all Documents Concerning the manner in which SRS[A] obtained" them. (Kelly RFP 1)

***SRSA'S POSITION*:** Defendants' request is disproportionate. It is undisputed that (1) other paying agents (*e.g.*, Wilmington Trust, JP Morgan) have their own payments spreadsheets. and (2) when PNC/Fortis and SRSA serve as shareholder representatives, they receive and help populate those spreadsheets for shareholders. *See* ECF 123 ¶¶ 58-59. PNC has produced a few copies of them in this case. *See* ECF 123-1, 125-1. PNC's request for all third-party spreadsheets and associated communications within SRSA is overbroad and unduly burdensome. Under PNC Financial RFP 3, SRSA has ***already agreed*** to produce third-party spreadsheets that existed and were used in developing its own. Also, since shareholder-rep is a distinct business from payment-and-escrow services, this request would require collecting from many *new* custodians who had nothing to do with the development of SRSA trade secrets. Such a review would raise privacy concerns for third-party shareholders, requiring significant redaction at great expense.

***DEFENDANTS' POSITION*:** Defendants' Request for Production No. 1 sought "all paying agent spreadsheets from any company other than SRSA that You possess and all Documents Concerning the manner in which SRS obtained each copy of the paying agent spreadsheet of any other company."  RFP No. 1 to SRSA.  SRSA is refusing to search for and produce third-party payment spreadsheets and the emails associated with SRSA's receipt of those payment spreadsheets from other companies, law firms, and other entities.  SRSA asserts that it would be too burdensome because they possess so many third-party spreadsheets.  The reason SRSA does not want to produce these spreadsheets and their transmittal email chains is because it would further undermine SRSA's argument that payments spreadsheets in the M&A payments industry are provided under some sort of fictional, unwritten, unstated "implied confidentiality duty" in the industry.  In addition, the payments spreadsheets of others will likely

demonstrate that there is nothing unique, let alone trade secret, about SRSA's own payments spreadsheet.  Further, Judge Domenico previously held that "PNC produced numerous emails showing SRSA had forwarded copies of the spreadsheet to deal parties without requiring confidentiality commitments from them."  ECF No. 207 at 18.  Judge Domenico also held that "Plaintiffs are not likely to succeed on the merits of their trade-secrets claims as they pertain to the spreadsheet."  Despite this, SRSA continues to push its payment spreadsheet theories, and is obstructing relevant discovery while doing so.

Dated: January 25, 2021

Respectfully submitted,

By:  *s/ Warren A. Braunig*
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Katie Lynn Joyce
*kjoyce@keker.com*
Victor H. Yu
*vyu@keker.com*

KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:      415-391-5400
Facsimile:       415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
*sbialecki@sheridanross.com*
Matthew C. Miller
*mmiller@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:      303 863 9700
Facsimile:       303 863 0223
Email:      litigation@sheridanross.com

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

1635692

8

| | |
|---|---|
| Dated: January 25, 2021 | By: *s/ Matthew E. Johnson* |
| | DOWD BENNETT LLP<br>James Forrest Bennett<br>*jbennett@dowdbennett.com*<br>7733 Forsyth Boulevard, Suite 1410<br>St. Louis, MO 63105<br>Telephone: 314-889-7300<br>Facsimile: 314-863-2111 |
| | DOWD BENNETT LLP<br>Matthew E. Johnson<br>*mjohnson@dowdbennett.com*<br>1775 Sherman Street, Suite 2010<br>Denver, CO 80203<br>Telephone: 303-353-4361<br>Facsimile: 314-863-2111 |
| | BALLARD SPAHR LLP<br>Hara K. Jacobs<br>*jacobsh@ballardspahr.com*<br>Noah S. Robbins<br>*robbinsn@ballardspahr.com*<br>1735 Market Street, 51st Floor<br>Philadelphia, PA 19103-7599<br>Telephone: 215-665-8500<br>Facsimile: 314-863-2111 |
| | Attorneys for Defendants |

8

1635692