**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

       Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

       Defendants.

**PLAINTIFFS' RESPONSE TO DEFENDANTS' POST-HEARING BRIEF
REGARDING SRSA'S MOTION FOR SANCTIONS (ECF 113)**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT .........................................................................................................................2

    A. Defendants' due process complaints are meritless. ................................................2

    B. Defendants' duty to preserve text messages attached in March 2018. ....................3

        1. Defendants should have reasonably anticipated litigation. ..........................3

        2. Defendants subjectively anticipated litigation. ...........................................6

    C. Defendants fail to refute the evidence of bad-faith spoliation. ...............................7

    D. SRSA has established prejudice warranting an adverse inference. .........................8

III. CONCLUSION ....................................................................................................................10

i

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Allstate Ins. Co. v. W. Am. Ins. Co.*
   2010 WL 4595591 (D. Colo. Nov. 5, 2010) ............................................................................5

*Alvariza v. Home Depot*,
   240 F.R.D. 586 (D. Colo. 2007) ...........................................................................................10

*Apple Inc. v. Samsung Elecs. Co.*,
   881 F. Supp. 2d 1132 (N.D. Cal. 2012) ..................................................................................6

*Asher Assoc., LLC v. Baker Hughes Oilfield Ops., Inc.*,
   2009 WL 1328483 (D. Colo. May 12, 2009) ......................................................................4, 5

*Baer v. Salt Lake City Corp.*,
   2016 WL 11407816 (D. Utah Sept. 7, 2016) ..........................................................................7

*Burlington N. & Santa Fe R. Co. v. Grant*,
   505 F.3d 1013 (10th Cir. 2007) .............................................................................................10

*Burton v. R.J. Reynolds Tobacco Co.*,
   2002 WL 598334 (D. Kan. Mar. 4, 2002) ...............................................................................2

*Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*,
   244 F.R.D. 614 (D. Colo. 2007) .............................................................................................5

*Cadence Educ. v. Vore*,
   2019 WL 216552 (D. Kan. Jan. 16, 2019) ..............................................................................2

*Cousino v. Mass. Mut. Life Ins. Co.*,
   2014 WL 11532284 (N.D. Okla. July 9, 2014) ...................................................................4, 5

*Gates Rubber Co. v. Bando Chem. Indus., Ltd*,
   167 F.R.D. 90 (D. Colo. 1996) ...............................................................................................9

*Grabenstein v. Arrow Elecs.*,
   2012 WL 1388595 (D. Colo. Apr. 23, 2012) ........................................................................10

*Hauck v. Wabash Nat'l Corp.*,
   2020 WL 532345 (D.N.M. Feb. 3, 2020) .........................................................................9, 10

*Henning v. Union Pac. R. Co.*,
    530 F.3d 1206 (10th Cir. 2008) ...............................................................................................10

*Howell v. Maytag*,
    168 F.R.D. 502 (M.D. Pa. 1996).............................................................................................10

*Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*,
    139 F.3d 912 (10th Cir. 1998) ..................................................................................................6

*McCargo v. Texas Roadhouse Inc.*,
    2011 WL 1638992 (D. Colo. May 2, 2011)..............................................................................8

*Morris v. Union Pac. R.R.*,
    373 F.3d 896 (8th Cir. 2004) .................................................................................................7, 8

*Oldenkamp v. United Am. Ins. Co.*,
    619 F.3d 1243 (10th Cir. 2010) ...............................................................................................10

*Oto Software, Inc. v. Highwall Techs., LLC*,
    2010 WL 3842434 (D. Colo. Aug. 6, 2010) ..........................................................................4, 9

*Paisley Park Enters., Inc. v. Boxill*,
    330 F.R.D. 226 (D. Minn. 2019)...............................................................................................5

*Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*,
    621 F. Supp. 2d 1173 (D. Utah 2009)......................................................................................6

*Ramirez v. Wal-Mart Stores, Inc.*,
    2019 WL 4037951 (D. Colo. Aug. 27, 2019) (Crews, J.).........................................................6

*Resolution Tr. Corp. v. Dabney*,
    73 F.3d 262 (10th Cir. 1995) ...............................................................................................2, 3

*Ringers Techs. LLC v. Harmer*,
    2020 WL 6385813 (S.D. Tex. Aug. 17, 2020) .........................................................................4

*Thompson v. U.S. Dep't of Hous. and Urban Dev.*,
    219 F.R.D. 93 (D. Md. 2003)....................................................................................................5

*Trujillo v. Triple R Trucking, LLC*,
    2019 WL 233330 (D. Colo. Jan. 16, 2019)..............................................................................6

*TVI, Inc. v. Harmony Enters., Inc.*,
    2019 WL 3804214 (W.D. Wash. Aug. 13, 2019) .....................................................................4

1659248

*Velocity Press, Inc. v. KeyBank, N.A.*,
 2011 WL 1584720 (D. Utah Apr. 26, 2011) ............................................................................. 5

*Vigil v. Whirpool Corp.*,
 2001 WL 36102292 (D.N.M. Nov. 16, 2001) ........................................................................ 10

*Wolff v. United Airlines, Inc.*,
 2019 WL 4450255 (D. Colo. Sept. 17, 2019) ............................................................. 5, 6, 8, 10

*Zbylski v. Douglas Cty. Sch. Dist.*,
 154 F. Supp. 3d 1146 (D. Colo. 2015) ................................................................................. 4, 6

## I.     INTRODUCTION

SRSA's post-hearing brief identified four distinct categories of text-message spoliation, spanning the period from March 2018, when Kelly and Tsarnas joined PNC, through July 13, 2019, two days after this litigation was filed. SRSA marshaled substantial evidence that Defendants' spoliation was intentional and caused prejudice. SRSA is entitled to a finding of spoliation and an adverse inference.

Defendants' post-hearing brief takes an ostrich-like view of the facts, while offering misdirection and half-baked excuses. **First**, Defendants argue that, until July 2019, litigation was not reasonably foreseeable and thus they had no duty to preserve—notwithstanding multiple threatening letters from SRSA; a draft complaint against Tsarnas asserting trade-secret misappropriation and breach of contract claims; and the fact that Defendants were engaged in the very conduct that SRSA had expressed concern about. Those facts would put reasonable persons on notice. Defendants' privilege log confirms that they *subjectively* anticipated ligation, too.

**Second**, Defendants argue SRSA has not suffered prejudice because SRSA cannot definitively prove the contents of the deleted messages. But SRSA need only show a "reasonable possibility" of prejudice, supported by "concrete evidence." The shocking 1:1 Kelly-Tsarnas messages that were produced (March 2018 from WhatsApp, and February 2019 – July 2019 text messages) are concrete evidence indicating that another twelve months of messages would have been just as inculpatory.

**Third**, Defendants allege their due-process rights have been violated, even though the Special Master held a two-day ten-hour evidentiary hearing and authorized two separate post-

1

hearing briefs. Defendants had every opportunity to defend their egregious, bad-faith spoliation. That they now plead for mercy on procedural grounds speaks volumes.[1]

## II.     ARGUMENT

### A.     Defendants' due process complaints are meritless.

Defendants contend, for the first time in their post-hearing brief, that sanctions based on Kelly's and Tsarnas's post-June 2018 conduct would deprive them of due process. The argument does not withstand scrutiny. In a motion for sanctions, due process requires notice and an opportunity to be heard, and "the opportunity to fully brief the issue is sufficient to satisfy due process requirements." *Resolution Tr. Corp. v. Dabney*, 73 F.3d 262, 268 (10th Cir. 1995).[2] Here, Defendants had far more opportunity than that. The Special Master held two days of hearing, with live witness testimony, opening statements and two rounds of post-hearing briefing. This exceeds, by a considerable margin, what due process requires. *See id.*

Nor are Defendants victims of surprise. SRSA has long made clear its intent to prosecute the full scope of Defendants' spoliation, including facts uncovered since the parties filed their initial discovery briefs in November 2019 (ECF 113, 115). Andrew Crain's expert report, served in September 2020, set forth the forensic evidence that Kelly and Tsarnas manually deleted text messages, including text messages with Semenova, before and after June 2018 and up through the day their phones were imaged. Ex. 104 ¶¶ 66-72.[3] And at the December 28, 2020 Special

---

[1] Defendants make much of the fact that a text chain, Bates-labeled PNC_000520882, was produced by Rick Fink, not Alex Tsarnas. ECF 352 at 1 & n.1. But that correction has no bearing on whether Defendants spoliated evidence or SRSA is entitled to an adverse inference.

[2] *See also Burton v. R.J. Reynolds Tobacco Co.*, 2002 WL 598334, *3 n.1 (D. Kan. Mar. 4, 2002) (Plaintiff had "ample opportunity to make its case" because the "opportunity to respond in writing satisfies the due process requirement of an opportunity to be heard prior to the imposition of sanctions"); *Cadence Educ. v. Vore*, 2019 WL 216552, *5 (D. Kan. Jan. 16, 2019) (accord).

[3] A corrected report, served on January 26, 2021, is in the evidentiary record. Ex. 104. For the

Master hearing, SRSA clarified that the deleted texts at issue in this motion included "months of text messages that were deleted," including texts "with this woman Ms. Semenova." *See* Ex. B. Defendants also had fifteen days after February 2 to prepare for the second day of the hearing, at which they cross-examined Mr. Crain, and could have called or re-called any witness they wanted, including Kelly, Tsarnas, Semenova, or SRSA CEO Paul Koenig.[4] Defendants were not deprived an "opportunity to respond." *Resolution*, 73 F.3d at 268.

Defendants' "due process" argument is particularly hypocritical because Defendants themselves rely on evidence and argument beyond their November 2019 discovery brief (ECF 115). That brief omits two primary defenses they now rely on: that Kelly's 365-day "Keep Messages" setting caused the spoliation, and that SRSA executives' "friendly" correspondence with Kelly relieved her of a duty to preserve. Both were raised for the first time this year. *See* Exs. D, E. That is not a due-process violation either. The Special Master's procedure gave both sides plenty of opportunity to respond.[5]

### B. Defendants' duty to preserve text messages attached in March 2018.

#### 1. Defendants should have reasonably anticipated litigation.

It is undisputed that Defendants *did not* preserve text messages in March 2018. Defendants argue, however, that their failure to preserve is excused because Plaintiffs' multiple

---

Special Master's reference, the September 25, 2020 report is attached. *See* Ex. A ¶ 66-72.

[4] As the parties discussed at the time, Mr. Koenig was not "skiing in Vail" on February 2. ECF 352 at 20. He had multiple work commitments that day that could not be moved, and Defendants failed to subpoena him in a timely manner. *See* Ex. C. Of course, Defendants had every opportunity to subpoena him for the second day of the hearing—but elected not to.

[5] The upshot of Defendants' "due process" argument is that SRSA should file a *second* spoliation motion to address spoliation between July 2018 and July 2019. That would be wasteful and unnecessary, given that both sides already elicited testimony and submitted evidence covering that period. The Special Master should decide the spoliation allegations, now, once and for all.

3

letters and draft complaint failed to put them on notice that litigation was reasonably foreseeable. The duty to preserve evidence arises when a party "knew or should have known, that litigation was imminent"—in other words, that "the evidence may be relevant to future litigation." *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1162 (D. Colo. 2015).[6] In this district, the duty arises if a putative plaintiff sends a letter identifying the dispute, threatening to "proceed with such legal and other action to enforce its rights," and describing potential claims. *See Asher Assoc., LLC v. Baker Hughes Oilfield Ops., Inc.*, 2009 WL 1328483, at *3 (D. Colo. May 12, 2009). Other courts have found the duty triggered by even less direct language.[7]

As detailed in SRSA's initial brief (ECF 353 at 4-5, 9-13), the letters sent between March and June 2018 were more than sufficient to trigger a preservation duty. SRSA identified concrete concerns about Kelly's and Tsarnas's possession and use of trade secrets, and their non-solicit covenants; accused both of them of breaching the non-solicit; demanded the return of information in their possession; and made clear that SRSA would "aggressively pursue legal remedies" and "vigorously enforce its legal rights." Exs. 13, 16, 17, 22, 26. In May 2018, SRSA sent a draft complaint to Tsarnas, which—like the ultimately-filed complaint—accused him of trade-secret misappropriation and breach of contract, and explicitly put at issue Kelly's

---

[6] Defendants use the word "imminent" to suggest that it means something other than that litigation be "reasonably foreseeable" under the circumstances. ECF 352 at 10. In fact, courts in this district use those terms interchangeably. *See, e.g.*, *Zbylski*, 165 F. Supp. 3d at 1162-63; *Oto Software, Inc. v. Highwall Techs., LLC*, 2010 WL 3842434, at *8, *10 (D. Colo. Aug. 6, 2010).

[7] *See Cousino v. Mass. Mut. Life Ins. Co.*, 2014 WL 11532284, at *7 (N.D. Okla. July 9, 2014) (letter promising to "move quickly to exhaust all legal remedies available to [Plaintiff]" triggered duty); *TVI, Inc. v. Harmony Enters., Inc.*, 2019 WL 3804214, at *3 (W.D. Wash. Aug. 13, 2019) (letter "reserving [] right to pursue legal or equitable remedies" triggered duty); *Ringers Techs. LLC v. Harmer*, 2020 WL 6385813, at *3 (S.D. Tex. Aug. 17, 2020) (letters threatening to "refer[] this matter to my attorneys" and threatening suit triggered duty).

communications during spring 2018. Ex. 22 ¶¶ 7, 14, 15, 41-52, 58-76. SRSA warned that "discovery will certainly extend to Mr. Tsarnas's interactions with SRS employees and PNC Bank." Ex. 22 at 2. These specific accusations would have put any reasonable person on notice. *See, e.g.*, *Asher*, 2009 WL 1328483, at *3, *Cousino*, 2014 WL 11532284, at *7.[8]

Defendants complain that SRSA's 2018 letters failed to explicitly demand document preservation. ECF 352 at 10-11. But the duty to preserve does not turn on such a demand. *See Paisley Park Enters., Inc. v. Boxill*, 330 F.R.D. 226, 234 (D. Minn. 2019) ("that Plaintiffs did not *sua sponte* issue a litigation hold letter to [] Defendants is of little or no relevance," citing Rule 37(e)); *Thompson v. U.S. Dep't of Hous. and Urban Dev.*, 219 F.R.D. 93, 100 (D. Md. 2003) (relying on court's inherent powers for the same rule). Defendants' reliance on *Wolff v. United Airlines, Inc.*, 2019 WL 4450255, at *3 (D. Colo. Sept. 17, 2019), is misplaced. *See* ECF 352 at 11. While *Wolff* held that the plaintiff's hold letter triggered a duty to preserve in that case, it did not hold that a plaintiff *must* send a hold letter to trigger the duty. *See* 2019 WL 4450255, at *3.[9]

---

[8] Defendants wrongly analogize SRSA's letters to those in *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 623 (D. Colo. 2007). In *Cache*, the plaintiff sent one letter asking to resolve the dispute "without litigation or additional media exposure," and a second stating that the plaintiff was "willing to listen to what [the defendant] might propose" to resolve the matter. *Id.* at 622. Unlike here, the *Cache* plaintiff never threatened to enforce legal rights. *See Asher*, 2009 WL 1328483, at *7 (distinguishing *Cache*). Likewise, in *Velocity Press, Inc. v. KeyBank, N.A.*, 2011 WL 1584720, at *2 (D. Utah Apr. 26, 2011), the plaintiff suggested that the defendant "faced serious claims for lender liability," but never threatened to enforce those claims itself.

[9] *Allstate Ins. Co. v. W. Am. Ins. Co.* 2010 WL 4595591, at *3 (D. Colo. Nov. 5, 2010), cited by Defendants, is not on point either. *Allstate* held that the duty to preserve attached when the plaintiff sent a demand letter that "threatened to sue" defendant. *Id.* It referenced a hold letter merely to suggest that if plaintiff wished to preserve documents *before* its demand letter was sent (not after), it could have sent defendant an earlier hold letter. *See id.*

Defendants' further suggestion that any preservation duty they had in spring 2018 dissipated a year later when Kelly and Tsarnas's covenants expired (ECF 352 at 8), is wrong on the law and the facts. The allegations in SRSA's letters swept far broader than the one-year covenants. *See* Exs. 13, 16, 22, 26. And, of course, Kelly and Tsarnas hid the fact that they were using SRSA information at PNC to develop copycat products and to solicit SRSA employees and customers. *See* Tr. 225:18-226:12 (Kelly); Ex. 34; ECF 254 at A-2-4, 8, 9, 11, 20 21, 22. SRSA is not arguing that Defendants' preservation duty was "perpetual"—but PNC cannot be excused from failing to preserve simply because SRSA held its fire 16 months until it saw PNC's infringing products brought to market. *See Trujillo v. Triple R Trucking, LLC*, 2019 WL 233330, at *2 (D. Colo. Jan. 16, 2019) (duty arose two years before suit); *Zbylski*, 154 F. Supp. 3d at 1165 (duty triggered by investigation two years before suit); *Phillip M. Adams & Assocs., L.L.C. v. Dell, Inc.*, 621 F. Supp. 2d 1173 (D. Utah 2009) (duty arose four years before suit).[10]

### 2. Defendants subjectively anticipated litigation.

The existence of an *objective* duty to preserve obviates any need to consider Defendants' claims that they did not *subjectively* anticipate litigation. *See Apple Inc. v. Samsung Elecs. Co.*, 881 F. Supp. 2d 1132, 1145 (N.D. Cal. 2012). However, ample evidence also confirms that Defendants anticipated litigation as early as 2018. Defendants' privilege log includes over 70 communications conducted in "anticipation for" or about "threatened litigation," during and after SRSA's 2018 demand letters. Kelly and Tsarnas both acknowledged that SRSA would sue them

---

[10] Numerous other cases are in accord. *See, e.g., Jordan F. Miller Corp. v. Mid-Continent Aircraft Serv., Inc.*, 139 F.3d 912, *1, *6 (10th Cir. 1998) (table) (duty arose two years before suit); *Ramirez v. Wal-Mart Stores, Inc.*, 2019 WL 4037951, at *3 (D. Colo. Aug. 27, 2019) (duty arose 17 months before suit) (Crews, J.); *Wolff*, 2019 WL 4450255, at *3 (duty arose 9 months before suit).

for violating their employment agreements if SRSA discovered evidence of wrongdoing. Tr. 43:5-43:10 (Tsarnas); 190:19-22 (Kelly); ECF 254 at A-26. And defense counsel's response to SRSA's letter relied on the substance of Defendants' communications, implicitly recognizing that they were relevant and should have been preserved. *See* ECF 353 at 12-13. Defendants' self-serving, after-the-fact testimony that they were "shocked' when SRSA brought suit is entitled to minimal weight, given the contrary evidence, including Kelly's deletion of a year's worth of text messages in February 2019, just two days after her meeting with Koenig. *See Baer v. Salt Lake City Corp.*, 2016 WL 11407816, at *6 (D. Utah Sept. 7, 2016); Tr. 257:4-25 (Crain).

### C. Defendants fail to refute the evidence of bad-faith spoliation.

SRSA's evidence of bad faith is unrebutted:  On multiple occasions, over sixteen months, and including *after the Complaint was filed*, both Kelly and Tsarnas manually deleted text messages with each other and with Semenova. ECF 353 at 5-8, 13-17 (summarizing evidence). Even if the Special Master were constrained to considering spoliation of text messages sent between January and June 2018 (he is not), SRSA proved that Tsarnas deleted messages throughout that period, and Kelly intentionally deleted twelve months of 1:1 text messages with Tsarnas in February 2019 (a period that includes February – June 2018). SRSA also proved that Kelly and Tsarnas both manually deleted all of their text messages with Semenova, including after SRSA filed its Complaint alleging that "PNC has successfully recruited [Semenova]" and "[d]iscovery will confirm whether Kelly and/or Tsarnas violated their contractual agreements in soliciting [her] to leave SRSA." *See* ECF 353 at 8; ECF 1 at ¶ 85 (Complaint).

As Defendants' own cited authority makes plain, "the most important consideration" for a court analyzing bad faith is "intentionality." *See Morris v. Union Pac. R.R.*, 373 F.3d 896, 901

7

(8th Cir. 2004). Intent may be determined "through consideration of circumstantial evidence, witness credibility, motives of the witnesses in a particular case, and other factors." *Id.* But the "intentional destruction of relevant records—either paper or electronic—is clearly willful conduct." *McCargo v. Texas Roadhouse Inc.*, 2011 WL 1638992, at *8 (D. Colo. May 2, 2011).

Defendants, counter-factually, continue to rely on the excuse of automatic retention settings. ECF 352 at 17. But, as SRSA previously established, the retention settings cannot explain the majority of their deletion, which was performed ***manually***. ECF 353 at 17. This case is thus completely different from *Wolff* because, in that case, all deletion occurred automatically and there was ***no*** evidence that defendant "acted with the intent" to destroy evidence, "or otherwise engaged in bad faith conduct." *Wolff*, 2019 WL 4450255 at *4. Here, the evidence of Kelly's and Tsarnas's bad faith—right up until their phones were imaged—is overwhelming.

Defendants' attempt to distance PNC from the acts of its employees fares no better. As explained in *Morris*, a case cited by Defendants, "[w]hen a corporation is involved, the inquiry depends in part on corporate policies, but also to some extent on the intent of corporate employees." *Morris*, 373 F.3d at 902. Here, PNC turned a blind eye and failed to preserve key text messages that Kelly and Tsarnas were actively deleting. PNC is therefore culpable too. *See, e.g.*, *McCargo*, 2011 WL 1638992, at *9 (finding corporate defendant engaged in bad faith and reasoning "even if Defendant's intent was not evil, Defendant certainly had notice of the duty to preserve, a responsibility to do so, and understood the consequences of the failure to do so").

**D.     SRSA has established prejudice warranting an adverse inference.**

SRSA has been permanently prejudiced in this litigation because Kelly and Tsarnas destroyed twelve months of 1:1 text messages between them, covering the period when they

decided to join PNC, helped develop PNC PAID, and began marketing that product to SRSA's long-time customers. That the intentionally deleted text messages were inculpatory can be inferred from the inculpatory text messages that weren't destroyed and the fact that both Defendants went out of their way to delete them. *See* ECF 354 (Appendix).

Defendants overstate the evidentiary burden SRSA must satisfy. ECF 352 at 14-15. In fact, Defendants' cases confirm that the hurdle for establishing prejudice is low. For example, in *OTO Software*, the court explained that the moving party "needs only to come forward with **plausible, concrete suggestions** as to what the lost evidence might have been." 2010 WL 3842434, at *11-12 (emphasis added).[11] *Gates Rubber* similarly recognized that prejudice exists if "**the general nature** of the destroyed documents or materials [is] known, **if only to a limited extent.**" *Gates Rubber Co. v. Bando Chem. Indus., Ltd*, 167 F.R.D. 90, 115 (D. Colo. 1996). In fact, prejudice "may be presumed" if the spoliator "acted in bad faith or in a grossly negligent manner" or if "destruction of evidence" is shown. *Id.* at 105; *OTO*, 2010 WL 3842434, at *11.

Wherever the legal bar is set, SRSA exceeds it. *See* ECF 353 at 18-20. As SRSA has proven, Kelly and Tsarnas frequently texted each other about work, including their efforts to take SRSA clients and recruit SRSA employees. *See* Exs. 10, 41, 160; ECF 354 (Appendix). But Defendants' destruction of evidence leaves SRSA with a gaping twelve-month hole in that record. *See Gates Rubber*, 167 F.R.D. at 105 ("general nature" of lost documents sufficient to show prejudice). No speculation is required to find that SRSA suffers prejudice. While Defendants pretend that Kelly's production of her WhatsApp messages with Tsarnas cured any

---

[11] *See also Hauck v. Wabash Nat'l Corp.*, 2020 WL 532345, at *7 (D.N.M. Feb. 3, 2020) (cautioning that "courts must be careful that the application of this burden is not too onerous, otherwise the spoliating party might be allowed to profit from its own misconduct").

prejudice (ECF 352 at 15-16), they only used WhatsApp for a few weeks in March 2018 (*see* Ex. 160) despite admitting to texting continuously. Tr. 46:13-21 (Tsarnas), 152:2-15 (Kelly). Kelly's production of March 2018 WhatsApp messages does nothing to replace the thousands of deleted text messages from the other months at issue. Ex. 160; Tr. 254:19-255:21 (Crain).

Finally, Defendants fall back on a string-cite of cases finding no prejudice (ECF 352 at 14-15), but those are cases where the moving party failed to produce ***any*** evidence of prejudice or the evidence was not permanently lost. *See, e.g.*, *Wolff*, 2019 WL 4450255, at *6 (no prejudice where "*Defendant has conceded* that it is not currently aware of specific data on that cell phone that would be helpful to its case") (emphasis added);[12] *Hauck*, 2020 WL 532345, at *10 (expert could reconstruct the accident from existing evidence).[13] Those cases are plainly inapposite here.

### III. CONCLUSION

An adverse inference is the only tool that can properly address the prejudice caused by Defendants' bad-faith spoliation. SRSA has cited multiple cases, on analogous facts, that granted an adverse inference. ECF 353 at 18, 20. Even Defendants' cases support SRSA. *See, e.g.*, *Howell v. Maytag*, 168 F.R.D. 502, 507 n.2 (M.D. Pa. 1996) (adverse-inference sanction granted where party failed to provide adversary an opportunity to inspect evidence before it was destroyed). For the foregoing reasons, SRSA's Motion should be GRANTED.

---

[12] *See also Vigil v. Whirpool Corp.*, 2001 WL 36102292, at *1 (D.N.M. Nov. 16, 2001) (no evidence to support speculation); *Alvariza v. Home Depot*, 240 F.R.D. 586, 589-90 (D. Colo. 2007) (accord); *Grabenstein v. Arrow Elecs.*, 2012 WL 1388595, at *3 (D. Colo. Apr. 23, 2012) (accord); *Henning v. Union Pac. R. Co.*, 530 F.3d 1206, 1219 (10th Cir. 2008) (accord).

[13] *See also Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1251 (10th Cir. 2010) (plaintiff contemporaneously shared in a recorded conversation "the essence of the [lost] written communication"); *Burlington N. & Santa Fe R. Co. v. Grant*, 505 F.3d 1013 (10th Cir. 2007) (plaintiff "generated extensive documentation of the condition of the land before and during remediation").

1659248

|  |  |
|---|---|
| Dated: March 9, 2021 | Respectfully submitted,<br><br>By: _s/ Warren A. Braunig_<br>Warren A. Braunig<br>*wbraunig@keker.com*<br>Michelle S. Ybarra<br>*mybarra@keker.com*<br>Benjamin D. Rothstein<br>*brothstein@keker.com*<br>Katie Lynn Joyce<br>*kjoyce@keker.com*<br>Victor H. Yu<br>*vyu@keker.com*<br><br>KEKER, VAN NEST & PETERS LLP<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone: 415-391-5400<br>Facsimile: 415-397-7188<br><br>SHERIDAN ROSS P.C.<br>Scott R. Bialecki<br>*sbialecki@sheridanross.com*<br>Matthew C. Miller<br>*mmiller@sheridanross.com*<br>1560 Broadway, Suite 1200<br>Denver, Colorado 80202<br>Telephone: 303 863 9700<br>Facsimile: 303 863 0223<br>Email: *litigation@sheridanross.com*<br><br>Attorneys for Plaintiffs<br>SRS ACQUIOM INC. AND<br>SHAREHOLDER REPRESENTATIVE<br>SERVICES LLC |

11

1659248