**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

## DEFENDANTS' POST-HEARING RESPONSE BRIEF

Defendants PNC Financial Services Group, Inc. and PNC Bank N.A. (collectively "PNC") as well as Defendants Heather Kelly and Alex Tsarnas (the "Individual Defendants" and, collectively with PNC, the "Defendants") submit this Brief in Response to Plaintiffs' Post-Hearing Brief.

## I.   INTRODUCTION

SRSA's post-hearing brief bears almost no relationship to its sanctions motion, the two-day hearing, or the governing law.  As for the facts, the story that SRSA tells in its brief misrepresents the testimony, misleadingly quotes documents from the record, relies on documents not in the record, and invents a theory regarding the February 5, 2019 meeting between Kelly and Koenig that is not only unsupported but -- *is directly contradicted* -- by all evidence of record.  As for the law, SRSA recites extra-jurisdictional cases applying a distinctly different legal standard than is required by the controlling cases in this Circuit and District, and it applies the wrong legal standard to its fabricated story.  SRSA's brief culminates by requesting entirely new relief that is untethered to the "facts" SRSA invents and unsupported by the law on which even it relies.

While SRSA did not even attempt to establish a right to the extreme sanction it seeks under the law of this Circuit, it nevertheless fails to establish sanctionable conduct under the law of any Circuit.  SRSA identifies no case where a court found that letters like SRSA's March 2018 letters triggered a duty to preserve.  SRSA likewise tries, but fails, to cite any authority for the proposition that sheer speculation that relevant documents were deleted constitutes prejudice.  And SRSA provides no authority even suggesting that deletion resulting from an unknown automatic retention setting constitutes bad faith.  SRSA failed to meet its burden to demonstrate all of the above factors and its motion must be denied.

## II.   RESPONSE TO SRSA'S STATEMENT OF "FACTS"

While it is impossible to fully catalogue the avalanche of misrepresentations set forth in SRSA's brief, *see* Appendix A, one misrepresentation bears particular attention given the

prominence SRSA afforded to it.  As the first so called "intentional act[] of spoliation" identified in its brief, SRSA claims that "Kelly manually deleted all of her 1:1 text messages with Alex Tsarnas on or about February 7, 2019[.]"  ECF 353 at 1.  SRSA repeats a version of this misrepresentation no fewer than <u>seven</u> times in its brief.  *See id.* at 6, 11, 14, 15, & 17.  This misrepresentation, which forms the basis for the date range in SRSA's proposed order,[1] is not only unsupported, it is directly contradicted by record evidence.

SRSA's distortion of the evidence surrounding the events of February 2019 cannot be understated.  SRSA asserts that "on or around February 7, 2019, Kelly deleted all of her 1:1 messages with Tsarnas, destroying the entire history of their communications." *Id.* at 6.  This is pure conjecture.  SRSA's only evidence of this supposed February 7, 2019 manual mass deletion is that the earliest preserved 1:1 message between Kelly and Tsarnas was from that date.  Ex. 41.  But, SRSA has <u>no</u> evidence that a thread of messages dating back to February 2018 was deleted in February 2019, and its theory contradicts all record evidence.  SRSA's own forensic expert, Andy Crain, testified he was "not aware of any affirmative evidence that would establish that [Kelly] manually deleted messages from before June of 2018."  Tr. 279:15-17.  As to SRSA's unsupported claim that messages were deleted "on or around February 7, 2019," Crain confirmed "with iMessages, we don't know the precise day that they're deleted" and even conceded "[i]t could have been" "two months prior" that Kelly's messages with Tsarnas prior to February 7, 2019 were deleted (assuming they existed at all). Tr. 257:19-25; 296:9-25.

The clear insinuation from SRSA is that Koenig must have said something to Kelly

---

[1] *See* ECF 353-1 (requesting adverse inference finding Kelly and Tsarnas intentionally destroyed text-message communications "from February 7, 2018 to July 13, 2019").

during their February 5, 2019 meeting that caused her to fear litigation and to delete her text messages with Tsarnas.  ECF 353 at 11.  But Kelly's testimony about the tone of the meeting is unrefuted because Koenig refused to testify and evaded service of a subpoena.  *See, e.g.,* Tr. 208:6-14 ("we left each other after giving each on [sic] a hug").  And SRSA cannot argue in its brief that which its CEO refused to testify to under oath.[2]  Moreover, Kelly's testimony is supported by the text messages, preserved by her (but not produced by Koenig), where Koenig told her "it was great seeing you" and that he missed working with her, all without a scintilla of suggestion that Koenig threatened litigation during this meeting in any form.  Ex. 140.  SRSA's misrepresentation of the record evidence to concoct a theory out of whole cloth, is the height of impropriety.

### III.  ARGUMENT

#### A.  No Duty To Preserve Existed When The Alleged Messages Were Deleted.

In asserting that Defendants were under a never-ending duty to preserve as of March 8, 2018, SRSA relies almost exclusively on cases from outside the Tenth Circuit that apply a different standard than the "imminent" standard set forth by the Tenth Circuit in determining whether a duty to preserve exists.  *Turner v. Pub. Serv. Co.*, 563 F.3d 1136, 1149 (10th Cir. 2009); *compare Blumenthal Distribs., Inc. v. Herman Miller, Inc.*, No. EDCV141926JAKSPX, 2016 WL 6609208, at *10 (C.D. Cal. July 12, 2016) (applying Ninth Circuit standard that a duty

---

[2] If SRSA contends Kelly's February 2, 2021, testimony regarding the tenor of her February 2019 meeting with Koenig was false, it could have asked for permission for him to testify on February 17, 2021.  Tellingly, it made no effort to do so notwithstanding the facial impropriety of refusing to produce its CEO in the district where he resides.  Ex. 1 hereto, Tr. 146:13-147:14 (Special Master warning presciently that "they may regret not having Mr. Koenig available").  Defendants, in contrast, voluntarily produced a corporate representative.

to preserve arises where "a potential claim is identified" (subsequent history omitted)), *with Cache La Poudre Feeds, LLC v. Land O'Lakes Farmland Feed, LLC*, 244 F.R.D. 614, 621 (D. Colo. 2007) ("the duty to preserve relevant documents should require more than a mere possibility of litigation").[3]

In *Asher Associates, LLC v. Baker Hughes Oilfield Operations, Inc.*, No. 07CV01379-WYDCBS, 2009 WL 1328483, at *8 (D. Colo. May 12, 2009), Judge Shaffer distinguished his decision in *Cache* by finding that a September 8, 2006, letter created a duty to preserve where the letter "provided [defendant] with an 'interim damage calculation,'" "demanded an 'immediate payment' and imposed a five-day deadline for making that payment." Here, SRSA's March 2018 letters did not demand a payment – they invited a phone call. Exs. 13, 17. Importantly, in *Asher*, Judge Shaffer held that an earlier letter did not trigger the duty to preserve because that letter "had not specifically threatened litigation." 2009 WL 1328483, at *8.

Moreover, none of the cases cited by SRSA establish that *its letters* to Defendants in March 2018 demonstrate that litigation was imminent. In *Zest*, the letter "stated explicitly that Zest would be forced to break the Parties' contract and sue for patent infringement . . . ." 2014

---

[3] In fact, none of SRSA's cases employed the Tenth Circuit's "imminent" standard other than *Asher*. *See Zest IP Holdings, LLC v. Implant Direct Mfg. LLC*, No. 10CV541-GPC WVG, 2014 WL 6851607, at *9 (S.D. Cal. June 16, 2014) (applying Ninth Circuit's "as soon as a claim is identified" standard); *Apple Inc. v. Samsung Elcs. Co., Ltd.*, 881 F. Supp. 2d 1132, 1136 (N.D. Cal. 2012) (applying a "reasonably anticipated" litigation standard); *Resendez v. Smith's Food & Drug Ctrs., Inc.*, No. 2:15-CV-00061-JAD, 2015 WL 1186581, at *4 (D. Nev. Mar. 16, 2015) (applying a "pending or reasonably foreseeable litigation" standard); *Michron Tech., Inc. v. Rambus, Inc.*, 645 F.3d 1311, 1320 (Fed. Cir. 2011) (same); *Goodman v. Praxair Servs.*, 632 F. Supp. 2d 494, 509 (D. Md. 2009) (applying Fourth Circuit's "relevant to anticipated litigation" standard); *Thompson v. United States HUD*, 219 F.R.D. 93, 99 (D. Md. 2003) (same). These cases are patently irrelevant because the divergent standards they apply for assessing when a preservation obligation arises is not the law of this Circuit.

WL 6851607, at *10.  Here, SRSA can point to no similarly explicit statement in its March 2018 correspondence.  *Goodman*, on which SRSA also relies, similarly supports Defendants' position.  There, the court held that an email saying "that he had 'real questions,'" was "vague, and would not, when objectively viewed, put [defendants] on notice of foreseeable litigation."  632 F. Supp. 2d at 510; *compare id.* with Ex. 13 ("We are writing to advise you of SRS's concerns").  Notably, the *Goodman* court distinguished a second letter that ultimately triggered the duty to preserve explaining that, unlike in *Cache* (*see* ECF 352 at 11), the second letter in *Goodman* "openly threatens litigation."  *Id.* at 511.  Here, SRSA's March 2018 letters do not even mention litigation, let alone openly threaten it.  Exs. 13, 17.[4]

Unable to cite to authority (from anywhere) supporting its position that its March 2018 letters triggered a duty to preserve, let alone a duty to preserve documents for *16 months*, SRSA instead relies on the fact that Defendants retained counsel and after-the-fact entries on Defendants' privilege log.  Retaining counsel does not demonstrate that litigation is imminent.  *Church Mut. Ins. Co. v. Coutu*, No. 17-CV-00209-RM-NYW, 2018 WL 2388555, at *5 (D. Colo. May 25, 2018).  Nor does the use of the phrase "in anticipation of litigation" in a privilege log compiled a year and a half later demonstrate that litigation was imminent in March of 2018.  *OTO Software, Inc. v. Highwall Techs., LLC*, No. 08-CV-01897-PAB-CBS, 2010 WL 3842434,

---

[4] SRSA argues that it threatened litigation by relying on a misleading quote of only part of a sentence from one of its letters stating it was "prepared to 'aggressively pursue legal remedies.'"  ECF 353 at 9 (quoting in part Ex. 13).  SRSA's selective quotation is disingenuous at best.  In its March 9, 2018 letter, SRSA summarized Kelly's and Tsarnas's contractual agreements and then stated that it "will aggressively pursue legal remedies <u>should there be any violation of these terms</u>."  Ex. 13 (emphasis added).  Stating that you will pursue legal remedies if you have a basis to do so is quite different then asserting that you, in fact, currently possess a cause of action that you will imminently pursue.

at *8 (D. Colo. Aug. 6, 2010) (cautioning of the difficulty in assessing preservation obligations "either prospectively or with the benefit (and distortion) of hindsight" (citation omitted)), *report and recommendation adopted*, No. 08-CV-01897-PAB-CBS, 2010 WL 3842430 (D. Colo. Sept. 27, 2010). Indeed, if the imminence of litigation was measured solely by hindsight, the fact that SRSA did not file until July 11, 2019 conclusively establishes that litigation was not imminent in March 2018. In any event, SRSA continues to ignore that even if litigation was imminent in March 2018 (it was not), its subsequent *legal inaction* and *non-litigious interactions* would objectively lead anyone to conclude that litigation was not imminent, thus releasing whatever theoretical duty existed. *Howell v. Maytag*, 168 F.R.D. 502, 507 (M.D. Pa. 1996).

B. **SRSA Cannot Demonstrate Any Prejudice.**

SRSA's attempt to demonstrate prejudice begins with yet another demonstrable misrepresentation, which it then applies to more extra-jurisdictional cases. SRSA first asserts that it has been "permanently deprived [] of contemporaneous text messages between Kelly, Tsarnas, and Semenova . . . ." ECF 353 at 17-18. Defendants possess Semenova's text messages with Kelly and Tsarnas and have already agreed to produce any responsive text messages. *See* Ex. 2 hereto. Second, while acknowledging that prejudice requires "concrete evidence" and not merely a "fertile imagination," ECF 353 at 18 (citing *McCargo v. Texas Roadhouse, Inc.*, 2011 WL 1638992, at *5 (D. Colo. May 2, 2011), SRSA proceeds to do just that. *Id.* at 19 ("SRSA is left to imagine").[5] SRSA presents "a naked invitation for this court to

---

[5] SRSA's assertion that the Court can presume "other" incriminating texts would have existed is not only contrary to the authority of this Circuit, *see* ECF 352 at 13-15, but premised on a false predicate. The "gems" that SRSA cites (which are not part of the record) regarding Kelly's solicitation of SRSA customers all occur <u>after</u> the expiration of her non-solicitation restriction on March 8, 2019. ECF 207 at 15 (Kelly's "non-solicitation clause only applied to certain

6

speculate first that something was missing and second that what is missing might be of evidentiary value." *Oldenkamp v. United Am. Ins. Co.*, 619 F.3d 1243, 1251 (10th Cir. 2010). This does not demonstrate prejudice in this Circuit and is plainly insufficient. *Aircraft Fueling Sys. v. Sw. Airlines Co.*, 2011 U.S. Dist. LEXIS 103544, at *3 (N.D. Okla. Sept. 13, 2011) (stating it is "not 'unfair' to require Plaintiff [] to establish its contentions" and holding that "Plaintiff has not identified anything in particular within these e-mails, or within any deposition, or within other discovery that indicates anything relevant is missing.").

SRSA principally relies on *McCargo* in support of its proposition that because SRSA believes certain produced text messages (ECF 353 at 19) are helpful to its case, it is sufficient to presume that other, even more helpful texts, must have existed. *McCargo* in no way supports SRSA's assertion that such unbridled speculation is sufficient to establish prejudice. Importantly, in *McCargo*, and unlike here, the plaintiff pointed to <u>specific</u> evidence that both existed and was relevant: videos of co-workers applauding a fellow co-worker who threatened to "lynch" the plaintiff and laughing while rapping "racially offensive language" that were clearly relevant to the discrimination and hostile work environment claim. 2011 WL 1638992, at *7. *McCargo* in no way supports SRSA's contention that mere speculation as to the existence of otherwise unarticulated "other texts" establishes prejudice.

SRSA's other cases (none are from the Tenth Circuit) suffer the same infirmity. For example, in *Stevenson v. Union Pac. R.R.*, 354 F.3d 739, 748 (8th Cir. 2004), the court found prejudice from the loss of a specific, identified document, namely "the only recording of

---

companies, and only for one year. This implies that any other companies could be solicited, even during the first year, and that others could be solicited after.").

conversations between the engineer and dispatch contemporaneous with the accident . . . ." Likewise, in *Silvestri v. GMC*, 271 F.3d 583, 584 (4th Cir. 2001), the court found prejudice because plaintiff destroyed the car involved in the accident giving rise to the litigation, thereby "den[ying] General Motors access to the only evidence from which it could develop its defenses adequately." Here, SRSA argues prejudice predicated not on specific, identified evidence but on the theoretical assumption that other relevant text messages existed. That does not suffice. *Burlington N. & Santa Fe Ry. Co. v. Grant*, 1013 F.3d 1013, 1032-33 (10th Cir. 2007) ("absent meaningful evidence that Grant has been actually, rather than merely theoretically, prejudiced, we affirm the district court's denial of Grant's motion for spoliation sanctions.").[6]

### C.   Neither the Individual Defendants nor PNC Acted in Bad Faith.

SRSA's arguments contending that Defendants acted in bad faith are fallacious because SRSA never connects its so-called evidence of bath faith with the deletion of the text messages at issue in this motion. First, and critically, SRSA makes no effort to identify a single action of PNC that was taken in bad faith despite seeking an adverse inference against PNC. *Cf.* ECF 353 at 16, n. 14 (arguing PNC is "vicariously liable").[7] With respect to the Individual Defendants, SRSA argues Tsarnas acted in bad faith because before he "turned over his phone for imaging, he deleted all 1:1 texts with Kelly that were on his phone at the time – including numerous texts

---

[6] SRSA's reliance on *Goodman* is inapt because *Goodman*, applying Fourth Circuit law, never made a finding of prejudice. Instead, the court denied a request for terminating sanctions because plaintiff "fail[ed] to articulate how Tracer/PSI's destruction of evidence has substantially denied Goodman the ability to prosecute his claim." 632 F. Supp. 2d at 519.

[7] SRSA's accusation that PNC was "willfully blind" does not demonstrate bad faith and is unproven. *Mueller v. Swift*, No. 15-CV-1974-WJM-KLM, 2017 WL 3058027, at *5 (D. Colo. July 19, 2017) (denying adverse inference where the "record does not establish – at least not clearly – that Plaintiff was acting with an *intent* to deprive Defendants of relevant evidence").

8

exchanged hours after Kelly and Tsarnas received notice of SRSA's Complaint." *Id.* at 13-14. This is a diversion. SRSA is not seeking sanctions based on deletion of those July 12, 2019 messages, nor could it because they were preserved by Kelly. Similarly, SRSA argues that "Kelly manually deleted her entire 1:1 text message conversations with Semenova" after learning of the lawsuit. *Id.* at 15.[8] But these messages also are not the subject of this sanctions motion and, again, were preserved by PNC. Tr. at 336:10-23. Tellingly, SRSA never directly addresses how the text messages actually at issue – Kelly's and Tsarnas's text messages dated from January to June 2018 – were deleted. And for obvious reason. SRSA's own forensic expert admitted there is no evidence they were manually deleted rather than routinely deleted as a function of automatic message retention settings on their iPhones. *See* Tr. 312:19-313:8.

These facts do not remotely constitute bad faith under the law of this Circuit.[9] *McCargo*, the only case SRSA cites from this Circuit to find bad faith, did not involve documents lost as the result of an unknown auto-deletion setting. In *McCargo*, defendant's witness "testified in his deposition that he knew if he didn't preserve the recordings they would be overwritten" and yet did nothing. 2011 WL 1638992, at *22. In other words, he "made a conscious and willful decision not to take steps to preserve evidence that he knew would be destroyed without his

---

[8] SRSA also cites to Kelly's supposed deletion of messages with Tsarnas on February 7, 2019. *Id.* at 14-15. As set forth above, SRSA possesses no evidence to support this statement and it is conclusively disproven by all record evidence. *See supra* Section II.

[9] SRSA asserts that "[s]poliation is willful if the offending party has 'some notice that the documents were potentially relevant to the litigation before they were destroyed.'" ECF 353 at 13 (quoting in part *United States v. Kitsap Physicians Serv.*, 314 F.3d 996, 1001 (9th Cir. 2002)). While SRSA cites to no case in this Circuit applying the Ninth Circuit's standard, the Ninth Circuit itself in *Kitsap* found no bad faith where "the documents were kept and destroyed in the ordinary course of business." *Id.* (rejecting argument that would have required defendants to "keep documents in perpetuity").

taking action." *Id.* at *23.  Here, the unrefuted testimony is that Kelly and Tsarnas had no knowledge of the auto-deletion settings on their phones.  Tr. at 51:7-14; 197:20-198:5.

SRSA again resorts to cases outside the Circuit that bear no resemblance to the facts at issue here.  *Leon v. IDX Sys. Corp.*, 464 F.3d 951, 959 (9th Cir. 2006) (plaintiff "intentionally deleted many files and then wrote a program to write over deleted documents"); *Stevenson*, 354 F.3d at 747-48 (upholding finding of bad faith because railroad knew the relevance of the recording from past accidents but *sua sponte* commenting that "this case tests the limits of what we are able to uphold as a bad faith determination").  SRSA's attempt to turn unknown automatic deletion into bad faith has no support in the law.

### D. SRSA Is Seeking To Violate Defendants' Due Process.

SRSA admits that the sanction it now seeks from the Special Master is entirely different than what it requested from the Court but argues that "[b]oth sides had the opportunity to take, and did take, testimony concerning all of the alleged spoliation at the evidentiary hearing; and Defendants will have two more brief to address it."  ECF 353 at 1, n. 1.  This is insufficient.  In *Hutchinson v. Pfeil*, 208 F.3d 1180 (10th Cir. 2000), the Tenth Circuit rejected the defendants' argument "that appellants had the benefit of an open-ended hearing within which to respond to the claims against them, and insist[ed] that this afforded them sufficient notice and opportunity to be heard on their liability for Rule 11 sanctions" because "providing the [sanctioned party] with an opportunity to mount a defense on the spot does not comport with due process." *Id.* at 1185 (internal quotation marks omitted).  The same reasoning applies here.

## IV. CONCLUSION

For the foregoing reasons, SRSA's Motion for Sanctions should be denied.

Dated: March 9, 2021

By: */s/ James F. Bennett*
James F. Bennett
Matthew E. Johnson
**DOWD BENNETT LLP**
1775 Sherman Street, Suite 2010
Denver, Colorado 80203
Telephone: 303-353-4361
Facsimile: 314-863-2111
jbennett@dowdbennett.com
mjohnson@dowdbennett.com

Hara K. Jacobs
Noah S. Robbins
**BALLARD SPAHR LLP**
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215-668-8500
Facsimile: 215-864-8999
jacobsh@ballardspahr.com
robbinsn@ballardspahr.com

*Attorneys for Defendants PNC Financial Services Group, Inc., PNC Bank N.A., Heather Kelly, and Alex Tsarnas*

11

# CERTIFICATE OF SERVICE

I hereby certify that on this 9th day of March 2021, a true and correct copy of the foregoing **DEFENDANTS' POST-HEARING RESPONSE BRIEF** was electronically filed with the Clerk of this Court using the CM/ECF system, which will electronically mail notice to the following attorneys of record:

Warren A. Braunig
Benjamin D. Rothstein
Michelle Ybarra
Victor H. Yu
Katie Lynne Joyce
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809

Scott R. Bialecki
Matthew C. Miller
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, CO 80202

*Attorneys for Plaintiffs*

/s/ Matthew E. Johnson
Matthew E. Johnson