Appendix A

Misrepresentations in Plaintiffs' Post-Hearing Brief (ECF No. 353)

| SRSA Representation | Cited Evidence | Actual Record Evidence |
|---|---|---|
| "Heather Kelly manually deleted all of her 1:1 text messages with Alex Tsarnas on or about February 7, 2019." ECF 353 at 1.<br><br>"on or around February 7, 2019, Kelly deleted all of her 1:1 messages with Tsarnas, destroying the entire history of their communications from shortly after Tsarnas was fired, through their hiring at PNC, development of PNC PAID, and solicitation of SRSA customers." ECF 353 at 6.<br><br>Within 48 hours of meeting with Koenig, Kelly deleted all of her existing 1:1 texts with Tsarnas in February 2019." ECF 353 at 11.<br><br>"on or shortly before February 7, 2019, Kelly manually destroyed her entire 1:1 iMessage conversation with Tsarnas." ECF 353 at 14.<br><br>"This means Kelly manually deleted, at that time, at least all of the 1:1 iMessages between her and Tsarnas in the 365-day | Tr. 244:13-14 (Crain) (Kelly manually deleted text messages)<br><br>Tr. 245:8-12 (Crain) (the earliest 1:1 message between Kelly and Tsarnas on her iPhone is dated February 7, 2019)<br><br>Tr. 253:19-22 (Crain) (Kelly manually deleted iMessages with Tsarnas)<br><br>Tr. 257:1-11 (Crain) (the February 7, 2019 date of the earliest message with Tsarnas on Kelly's iPhone corresponds with Kelly's February 5, 2019 meeting with Koenig)<br><br>Ex. 160 (SRSA demonstrative) | SRSA has no evidence that a single 1:1 message between Kelly and Tsarnas existed on Kelly's iPhone on February 7, 2019, let alone a thread of thousands of messages dating to February 2018. This is pure conjecture that contradicts, without support, the sworn testimony of SRSA's own expert, Mr. Andy Crain.<br><br>The only evidence of this is that the 1:1 message thread between Kelly and Tsarnas that was preserved begins on February 7, 2019. Ex. 41. There is no evidence of how many messages with Tsarnas existed at any time on Kelly's iPhone before that date.<br><br>Crain testified he was "not aware of any affirmative evidence that would establish that [Kelly] manually deleted messages from before June of 2018." Tr. 279:15-17<br><br>Crain testified: "with iMessages, we don't know the precise day that they're deleted. So we just have to infer that they're deleted obviously on or after their date of send/receive. So in this instance it could be February 6th, February 7th or it |

1

| SRSA Representation | Cited Evidence | Actual Record Evidence |
|---|---|---|
| period between February 7, 2018 and February 7, 2019." ECF 353 at 14-15.<br><br>"Within 48 hours of that lunch, Kelly destroyed her entire text thread with Tsarnas." ECF 353 at 15.<br><br>"Defendants cannot refute the proof that Kelly deleted her entire 1:1 iMessages with Tsarnas in February 2019 (meaning she manually deleted at least the missing messages from February 2018 to February 2019)" ECF 353 at 17. | | could be multiple instance prior to February 7th, 2019." Tr. 257:19-25.<br><br>Crain agreed "It could have been" "two months prior" that Kelly's messages with Tsarnas, if any, prior to February 7, 2019 were deleted. Tr. 296:9-25.<br><br>Crain identified deleted but recoverable messages on Kelly's iPhone with Tsarnas dated from before and after February 7, 2019. Tr. 297:4-298:17. |
| "thousands of text messages between Kelly and Tsarnas, as well as messages they exchanged with Semenova, are forever lost." ECF 353 at 1. | None | No messages with Semenova have been lost. PNC preserved all of her messages with Kelly and Tsarnas. Tr. 336:10-23 (Defendants' counsel). |
| "while some of these WhatsApp messages could be located and produced from Kelly's Phone (Tsarnas deleted WhatsApp from his phone)…" ECF 353 at 3. | None | Kelly retained 535 Whats App messages with Tsarnas and all responsive messages were produced. Ex. 160. There is no evidence that any WhatsApp messages were lost. There is also "no evidence indicating or suggesting that she deleted WhatsApp." Tr. 294:7-8 (Crain). |
| "On May 15, 2018, SRSA again demanded that Tsarnas cease his unlawful conduct…" ECF 353 at 4. | Ex. 22 (May 15, 2018 letter and draft complaint) | This letter and attached complaint was only directed to Tsarnas, not PNC or Kelly and related to a promissory note owed by Tsarnas. Ex. 22. |

2

| SRSA Representation | Cited Evidence | Actual Record Evidence |
|---|---|---|
| "Following Mr. DeForest's vigorous (but ultimately false) assurances that Kelly and Tsarnas would abide by their obligations to SRSA, SRSA sent a June 15, 2018 letter stating, without any time limitation, that it would 'continue to closely monitor' the situation, while reserving the right to file suit 'without further notice.'" ECF 353 at 5. | Ex. 26 (June 15, 2018 letter) | This letter was only directed to Tsarnas, not PNC or Kelly. Ex. 26. The letter to PNC said it would monitor the conduct of Kelly and Tsarnas only "over the coming year" Ex. 13. The last letter to PNC about Kelly or Tsarnas was sent in March 2018, not June. Ex. 18. |
| "Kelly and Tsarnas also solicited SRSA employees, including Semenova, who joined PNC in April 2019" ECF 353 at 6. | Tr. 62:24-63:1 (Tsarnas) (testifying only that Semenova joined PNC in April 2019) | The cited evidence does not support the proposition that Kelly or Tsarnas solicited Semenova or any other SRSA employees. |
| "Upon joining PNC, Semenova immediately helped Defendants solicit SRSA's customers." ECF 353 at 6 | SRSA App. A-10 (Kelly texting that a key SRSA customer "wouldn't have moved so quickly" to PNC without Semenova's efforts) | Kelly's non-solicit had expired (on March 8, 2019) at the time Semenova joined PNC (in April 2019). Tr. 190:1-3; 193:1-11 (Kelly). Semenova's non-solicit is invalid and unenforceable as a matter of law. ECF 206. |
| "Extrapolating from the message data that does exist between February 7, 2019 and July 14, 2019, when their phones were imaged, Kelly and Tsarnas likely deleted thousands of text messages from precisely the period when they are accused of using SRSA trade secrets and soliciting SRSA employees and customers." ECF 353 at 7. | Tr. 46:10-21 (Tsarnas) (agreeing he texted with Kelly frequently) 244:10-14 (Crain) (Kelly manually deleted text messages) 245:8-12 (Crain) (the earliest 1:1 message between Kelly and Tsarnas | SRSA's assertion that Kelly and Tsarnas deleted thousands of messages is pure speculation unsupported by any evidence. The only evidence SRSA has is of the 31 deleted but recoverable messages on Kelly's iPhone (Tr. 254:19-255:4 (Crain)) and the 4 deleted but recoverable |

3

| SRSA Representation | Cited Evidence | Actual Record Evidence |
|---|---|---|
| | on her iPhone is dated February 7, 2019) 253:19-256:1 (Crain) (Kelly manually deleted iMessages with Tsarnas) Crain Report ¶¶ 66-72 Ex. 160 (SRSA demonstrative) | messages on Tsarnas's iPhone. Tr. 240:7-11(Crain). Crain could only speculate that "there could have been others." Tr. 255:5-10. Crain testifying whether other text messages were manually deleted: "We just don't know." Tr. 317:14-20. |
| "PNC does not dispute these numbers, or the implication that months and months of messages between Kelly and Tsarnas were permanently deleted." ECF 353 at 7 | Tr. 392:18-23  (quoting Special Master Tenner: "Mr. Rothstein, I'll allow you to ask whatever questions you want to ask, but it's not lost on me that no one has testified that the information in this chart with respect to one-on-one messages is incorrect. There's no evidence in front of me.") | Quoting the special master is not evidence of what PNC does and does not dispute. PNC certainly disputes any implications SRSA is making here or that any implication constitutes evidence. |
| "Defendants had a duty to preserve starting in March 2018, when SRSA sent a series of threatening letters, followed by a draft complaint to Defendants." ECF 353 at 9. | None | SRSA only sent a draft complaint to Tsarnas, not to PNC or Kelly, relating to a promissory note. Ex. 22. |
| "SRSA repeatedly emphasized that it would be monitoring both Kelly and Tsarnas on an ongoing basis." ECF 353 at 10. | Ex. 13 (3/9/18 letter to G. Jordan) Ex. 17 (3/20/18 letter to G. Jordan) Ex. 26 (6/15/18 letter to W. DeForest) | The last letters to PNC and last letters concerning Kelly were sent in March 2018. These letters discussed monitoring their behavior "over the coming year." Ex. 13.  SRSA did not file suit until four |

4

| SRSA Representation | Cited Evidence | Actual Record Evidence |
|---|---|---|
| | | months after the end of the "coming year." |
| "Kelly understood that 'not abiding by my contract' would land her in litigation with SRSA." ECF 353 at 10 | Tr. 190:19-22 (Kelly) ("It proves I was abiding by my contract. And not abiding my contract is the only way I would have ended up in litigation.")<br><br>SRSA App. A-26 ("admitting that SRSA would 'sue the crap out of us' and 'rightly so' if she violated her non-solicit" by hiring Amanda Jackson, which never occurred) | This message and the testimony about it are focused on Kelly's non-solicitation agreement. That obligation ended after one year – in March 2019. Tr. 190:1-6 Kelly). |
| "the supposedly friendly interactions between Kelly and SRSA's employees in late 2018 and early 2019 did not release Defendants from their duty to preserve." ECF 353 at 11. | Tr. 207:5-23 (Kelly) (describing lunch with Koenig)<br><br>Tr. 174:5-24 (Kelly) (describing message exchange with Lon LeClair on July 12, 2019) | Kelly was texting Lon LeClair, COO of SRSA, the day she learned of the complaint July 12, 2019. Tr. 174:5-24 (Kelly) ("I had some business intel he might like to know of"… I thought Lon should know about it); Ex. 139 (Kelly/LeClair texts).<br><br>SRSA offered no evidence to rebut Kelly's testimony or the corroborating text messages discussed therewith. The friendly interactions are not "supposed," they are conclusively established. |
| "In any event, the evidence strongly suggests that Kelly's testimony that her February 2019 conversation with SRSA | Tr. 257:4-25 (Crain) (the February 7, 2019 date of the earliest message with Tsarnas on Kelly's iPhone | Ex. 140 (Kelly/Koenig texts dated February 5, 2019). Kelly: "You're amazing and I really miss working with |

5

| SRSA Representation | Cited Evidence | Actual Record Evidence |
| --- | --- | --- |
| CEO caused her no concern about future litigation is false." ECF 353 at 11. | corresponds with Kelly's February 5, 2019 meeting with Koenig)<br><br>Tr. 206:22-207:3 (Kelly) (describing Koenig texting her to ask her to meet for lunch in February 2019)<br><br>Ex. 140 (Kelly/Koenig texts) | you." Koenig: "Me too! It was great seeing you and safe travels."<br><br>Tr. 208: 6-14 (Kelly) "Based on your interaction with Mr. Koenig in February of 2019, what did you think about the prospect of litigation at that point in time with SRSA?" "I thought it was – there was no way. I just – I thought we were going to be frenemies. And as you can see from the texts with Lon, the type of frenemies where we could share business intel. I just – I had no clue this was coming." |
| "Defendants' communications with outside counsel 'in anticipation for litigation' continued into February 2019" ECF 353 at 12. | None | Tr. 117:15-118:4 (Tsarnas) "So my impression of this log is the communication that I had with Walter to talk about the fact that my one-year nonsolicit has expired. And it was around that time, which makes sense that I would have reached out to him after that time, but shortly after the expiration..." |
| "Also on February 7, 2019 – the exact same day as the last preserved 1:1 iMessage between Kelly and Tsarnas – Tsarnas emailed Deforest "in anticipation of litigation' for the first time in seven months to discuss his Employee Invention Assignments and Confidentiality | Tr. 257:4-25 (Crain) (the February 7, 2019 date of the earliest message with Tsarnas on Kelly's iPhone corresponds with Kelly's February 5, 2019 meeting with Koenig)<br><br>Ex. 54 at 77 (privilege log entries) | Tr. 117:15-118:4 (Tsarnas) "So my impression of this log is the communication that I had with Walter to talk about the fact that my one-year nonsolicit has expired. And it was around that time, which makes sense that I |

6

| SRSA Representation | Cited Evidence | Actual Record Evidence |
|---|---|---|
| Agreements with SRSA." ECF 353 at 15 note 12. | | would have reached out to him after that time, but shortly after the expiration..." |
| "Kelly manually deleted her entire 1:1 text message conversation with Semenova … she deleted texts with Semenova after receiving notice of this lawsuit." ECF 353 at 15. | Tr. 341:25-342:8 (Crain) (agreeing "it is possible" that "there could have been other text messages exchanged between Ms. Kelly and Ms. Semenova earlier on July 12th that were deleted from Ms. Kelly's phone at some point prior to 3:00 pm that day") | SRSA has no evidence of how many messages were deleted on July 12, 2019.<br><br>The original Complaint did not assert a claim against Kelly for breaching her nonsolicitation of employees obligation and only mentioned Semenova in one paragraph. ECF 12 ¶ 85. Those claims were added in SRSA's Second Amended Complaint, which it sought leave to file on November 13, 2019. ECF 61. |
| "SRSA's expert Andy Crain confirmed that the default setting on iPhones, including the specific version of iOS on Kelly's and Tsarnas's phone at the time they were imaged, was to retain messages 'forever,' and that one could only change that setting manually." ECF 353 at 17. | Tr. 259:11-261:3 (Crain) (explaining the factory default for version 12.3.1 of the iOS that was on Kelly and Tsarnas iPhones when they were imaged was to keep messages forever) | Crain did know what iOS was installed when Kelly bought her phone but "her phone is a vintage that was released in, like, fall of '18" Tr. 281:21-25<br><br>Crain did not test the default keep messages setting for the version of the iOS that existed when Kelly bought her iPhone. "I don't know what it was[.]"Tr. 282:1-8<br><br>Crain did not know what iOS was installed when Tsarnas bought his iPhone. "I've never looked into that." Tr. 282:17-21. |

7

| SRSA Representation | Cited Evidence | Actual Record Evidence |
|---|---|---|
| | | Crain did not believe "installation of a new version of the iOS operating system [would] override the existing text message retention setting" on an iPhone. Tr. 283:20-284:1.<br><br>Crain "would expect that [the text message retention setting] would port over" to a new iPhone when the contents of an old iPhone is copied over to it. Tr. 284:17-285:2. |
| "their deletion completely erased evidence of at least Tsarnas's improper solicitation of Semenova, and possibly Kelly's." ECF 353 at 19. | None | No messages with Semenova have been lost. PNC preserved all of her messages with Kelly and Tsarnas. Tr. 336:10-23 (Defendants' counsel). |