IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

    Plaintiffs,

    v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

    Defendants.

---

**UNOPPOSED MOTION TO RESTRICT APPENDIX TO PLAINTIFFS' POST-HEARING BRIEF (ECF NO. 354)**

---

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") move to restrict information found in the Appendix to SRSA's March 2, 2021 post-hearing brief regarding Defendants' spoliation of text messages. *See* ECF No. 354. On February 17, 2021, at the conclusion of a two-day evidentiary hearing, the Special Master ordered supplemental briefing regarding SRSA's request for spoliation sanctions for Defendants' deletion of text message communications. On March 2, SRSA filed its post-hearing brief (ECF No. 353), and attached to it an Appendix containing excerpts of certain relevant communications between Defendants Kelly and Tsarnas (ECF No. 354). SRSA filed its Appendix provisionally under Level 1 Restriction, and now moves to restrict portions of the Appendix.

**I.    ARGUMENT**

"[W]here documents are used to determine litigants' substantive legal rights," restriction is appropriate when the parties "articulate a real and substantial interest that justifies depriving

1

the public of access to the records that inform our decision-making process." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted).

Under Local Rule 7.2(c), a motion to restrict public access to documents filed with the Court must: (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question; and (5) identify the level of restriction sought.  Each of these factors is met here.

**A.     Description of Documents and Restriction Level Sought**

SRSA seeks Level 1 restriction over the following portions of its Appendix.

| Appendix Cite | Portion SRSA Seeks Restriction Level 1 Over |
|---|---|
| A-7 | 2018-03-09 7:51:25 Alex Tsarnas text: The word in between "I saw" and "That was great" |
| A-10 | 2019-06-24 16:53:59 Heather Kelly text: The words in between "for both" and "to sign" |
| A-10 | 2019-06-25 19:04:21 Heather Kelly text: The word in between "at team" and "wouldn't have" |
| A-14 | 2019-03-31 13:59:05 Heather Kelly text: the first three words of the text |
| A-14 | 2019-03-31 13:59:05 Heather Kelly text: word in between "to my" and "dinner" |
| A-17 | 2019-06-06 15:18:24 Alex Tsarnas text: words in between "of the" and "balances" |
| A-17 | 2019-06-13 14:50:18 Heather Kelly text: word in between "got a" and "deal" |

| Appendix Cite | Portion SRSA Seeks Restriction Level 1 Over |
|---|---|
| A-17 | 2019-06-13 14:50:25 Heather Kelly text: entire text |
| A-17 | 2019-06-31 14:50:31 Heather Kelly text: entire text |
| A-17 | 2019-06-13 15:00:54 Heather Kelly text: words in between the start of the text and "in the same" |
| A-18 | 2019-06-25 6:17:08 Heather Kelly text: word in between "that the" and "transaction will likely" |
| A-19 | 2019-06-28 17:50:27 Heather Kelly text: last word of the text |
| A-19 | 2019-06-28 17:50:58 Heather Kelly text: word in between "go get" and "next" |
| A-19 | 2019-06-28 17:51:08 Alex Tsarnas text: word in between "figures" and "said they" |
| A-20 | 2019-03-08 2:46PM Alex Tsarnas text: words in between "on the" and "escrow" |
| A-20 | 2019-03-08 2:54PM Heather Kelly text: word in between "is a" and "side deal" |
| A-20 | 2019-03-08 2:55PM Heather Kelly text: word in between "no" and "is the" |
| A-20 | 2019-03-08 2:55PM Heather Kelly text: word after "so much" and "work for" |

**B.     SRSA's interest in the protection of its confidential and HC-AEO information outweighs the presumption of public access**

In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998). A court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835; *see* Colo. Rev. Stat. § 7-74-106 ("[A] court shall preserve the secrecy of an

3

alleged trade secret by reasonable means, which may include . . . sealing the records of the action."). Under Local Rule 7.2, courts in this District have frequently concluded that "the presumption of public access to Court files is outweighed by [a party's] interest in maintaining its business information private." *Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*, 2019 WL 4242669, at *4 (D. Colo. Sept. 5, 2019).

      Here, SRSA seeks Level 1 restriction over several, narrowly tailored portions of the Appendix that reveal the identities of SRSA customers that Kelly and Tsarnas unlawfully poached using SRSA confidential information. *See, e.g.*, A-10, A-14, and A-17. Such customer information has routinely been afforded trade secret status worthy of sealing. *See Haggard v. Spine*, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009) (recognizing that "information regarding [] customers' surgical specialties, business preferences, and contact people" was a trade secret); *Xantrex Tech. Inc. v. Advanced Energy Indus., Inc.*, 2008 WL 2185882, at *18 (D. Colo. May 23, 2008) ("Detailed customer information is a trade secret."); *Johnstech Int'l Corp. v. JF Microtechnology SDN*, 2016 WL 4091388, at *3 (N.D. Cal. Aug. 2, 2016) (granting motion to seal "specific customer names and the percentage of business to those customers").

      Indeed, the disclosure of such information would be highly damaging to SRSA's competitive standing in the marketplace. As articulated in the declaration of SRSA's Director of Business Intelligence, SRSA's compilations of customer names and information are maintained secretly and not disseminated to competitors. *See* ECF No. 266 ¶¶ 1-22, ECF No. 262 at 12-13. Such information would be quite valuable to a competitor in the online payments-and-escrow products industry, who could then use such information to solicit SRSA's customers. *See* ECF No. 266 ¶¶ 6, 10-11, 14, 16, 20-21.

4

### C. There is no practicable alternative to restriction

No practical alternative to restriction exists here because public disclosure of the specific, narrowly tailored information SRSA seeks to seal would destroy their value and cause significant competitive harm to SRSA. SRSA maintains confidentiality over its trade secrets and other confidential information, to avoid the inevitable harm that would result from disclosure. In such cases, to avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request. *See Healthtrio, LLC v. Aetna, Inc.*, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014).

Further, SRSA's proposed restrictions are narrowly tailored and will shield from public view only a few lines of text out of the 26 excerpted text communications cited in the Appendix. Recognizing the public value of access this Court's records, SRSA will file public redacted versions of the restricted documents to narrowly tailor its request as much as practicable under the circumstances. *See Slawson Exploration Co. v. Arch Specialty Ins. Co.*, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

Finally, the Court has already approved Level 1 restriction for the same categories of information SRSA now seeks to restrict. In conjunction with its preliminary-injunction briefing and January 2020 Motion for Sanctions, SRSA previously sought, and obtained, restriction over the similar confidential customer information at issue in its current motion. *See* ECF No. 193 (granting motion to restrict SRSA customer names and other customer information found in Defendants' files).

5

There is thus good cause to grant SRSA's motion, and SRSA respectfully requests that the Court order Level 1 restriction over the materials identified in this motion.

**Certificate of Conferral Under Local Rule 7.1(a)**

On March 16 and March 17, 2021, the parties met and conferred about SRSA's motion. Defendants do not oppose this Motion to Restrict. However, Defendants do not waive the right to contest the confidentiality and/or trade secret nature of the materials Plaintiffs seek to restrict in the future, including on the merits of the case, and expressly reserve their right to do so. The parties agreed that Defendants' non-opposition to this Motion shall not be used as an admission against Defendants or for any other purpose.

//

//

//

Respectfully submitted,

Dated: March 16, 2021

By: *s/ Victor H. Yu*
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Katie Lynn Joyce
*kjoyce@keker.com*
Victor H. Yu
*vyu@keker.com*

KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:	415-391-5400
Facsimile:	415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
*sbialecki@sheridanross.com*
Matthew C. Miller
*mmiller@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:	303 863 9700
Facsimile:	303 863 0223
Email:	*litigation@sheridanross.com*

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

## Compliance With Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

1662084