# EXHIBIT B

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF COLORADO
 3
     SRS ACQUIOM, INC., a Delaware
 4   corporation, and SHAREHOLDER
     REPRESENTATIVE SERVICES, LLC,
 5   a Colorado limited liability
     company,
 6
                  Plaintiffs,
 7
     vs.                             No.  1:19-cv-02005-DDD-SKC
 8
     PNC FINANCIAL SERVICES GROUP,
 9   INC., a Pennsylvania corporation,
     PNC BANK, N.A., a national
10   association, HEATHER KELLY, an
     individual, and ALEX TSARNAS, an
11   individual,
12             Defendants.
     -------------------------------/
13
14
15                   REMOTELY CONDUCTED
16   EVIDENTIARY HEARING REGARDING SPOLIATION OF EVIDENCE
17                       VOLUME 2
18             WEDNESDAY, FEBRUARY 17, 2021
19
20
21
22   Stenographically reported by:
     LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
23   California CSR No. 10523
     Washington CSR No. 3318
24   Oregon CSR No. 19-0458
     Texas CSR No. 11318
25
```

Page 266

**Page 335**

violated their employment contract. So why should I not hear argument about that?

MR. BENNET: We view the motion as having put us on notice of sanctions related to what's set forth in the motion.

We are in the midst of dealing with text messages generally for other -- from other people's phones, and I do believe that the parties are pretty far along on that process.

And I do think that since this came up and Ms. Kelly wasn't even asked any questions about it by either party, that the appropriate thing to do would be to decide this motion based on what's set forth in the pleadings, which doesn't mention her at all and talks about the entirely different time period. And if they had asked about other items, we would have been talking about that in the hearing and asked about it.

So I think that this is putting the cart before the horse in terms of any issues with these text messages or, frankly, their own that they haven't provided. But this motion was about June -- about a discrete time period, a critical time period, as they said it was. It's in their italicized sentences, and it's in the headline.

**Page 336**

And to say that more than that is at issue on something like this I don't think is fair to Ms. Kelly or our presentation. But --

SPECIAL MASTER TENNER: If that's your position, why did I get that e-mail yesterday?

MR. BENNET: Because they came up -- I was trying to actually, hopefully, prevent an issue from coming up about whether we actually had those texts or not.

They asked a question that we objected to, as you'll recall, about the Seminova/other people, which I objected to, and they -- or I objected to the concept at the beginning, and we were going to hear the evidence.

And then they said, Well, none of those texts were produced.

That came up in the testimony, and so I just want everybody to know that we had those.

When we had those, we looked at them, and I wanted to -- you know, heads-up on that we had them, that we have 3,000 of them, that they date back from when they were both even SRSA employees over a three-year period.

I went back and looked at Ms. Kelly's testimony, which she was testifying about what she

**Page 337**

thought was at issue in the case. Found one question and answer that I thought might be ambiguous and wanted to -- and, therefore, I sent the e-mail. That's -- that was the reasoning.

The facts are what the facts are. The facts are that her phone -- her phone shows that from the moment she got the hold notice at 3:00 p.m. on July 12th, which is before she was sued for breach of solicitation, which is before SRSA sent the hold notice, from the moment that she has that, she has the text with Seminova after that.

There are seven texts prior to that time period that are not on her phone but are on Seminova's phones.

SPECIAL MASTER TENNER: Okay. Here's what I'm going to do: The fact that she may have or did delete messages to Seminova is relevant to her good -- the good faith argument, relevant to her state of mind, you know, and so I'm going to allow inquiry into that for that purpose.

And then when we have our arguments and we do our post-hearing briefing, you all can argue whether or not I should be ruling on anything other than that limited purpose of it being -- going to her state of mind, or whether or not we're going to

**Page 338**

open this up to sanctions for spoliating those text messages.

That's a whole different issue on which, given the fact that I'm going to allow the testimony because it goes to state of mind, I can just let you address when the time comes to address it.

MR. BENNET: Thank you.

And I know you mentioned the e-mails were not of record, and so I did want to mention that the two -- the other basis.

Mr. Johnson correctly pointed out that SRSA's position is that there was a claim for solicitation, but that claim was made well after July.

In addition, SRS says there's document requests for her text messages as well, and that document request was also after this time period as well. So I just wanted to make sure that the transcript included what was in the e-mail last night on that point. So thank you.

And I think we understand your ruling on briefing and the purpose for which this is being received.

MR. BRAUNIG: And thank you. I appreciate that also, Mr. Tenner.

**Page 415**

1  side said because you're doing it simultaneously.
2        And there's no way any lawyer that I've
3  heard from on this case is going to be willing to
4  let the record stand and not want to get another
5  word in.
6        And so it seems to me that it probably
7  makes sense to set two layers of post-hearing
8  briefing, one where you simultaneously brief, and
9  then another shortly thereafter and with much fewer
10 pages, where you get a chance to respond to what the
11 other person says.
12       Does that seem like the right way to go?
13       MR. BRAUNIG:  I think that would be fine
14 with plaintiffs.
15       SPECIAL MASTER TENNER:  And I'm getting a
16 thumbs up from Mr. Hoops, which -- he's on mute.
17       (Simultaneous speakers - unclear.)
18       MR. BENNET:  You could give Mr. Hoops
19 credit, but --
20       SPECIAL MASTER TENNER:  Sure looks
21 familiar.  I thought the tie color changed.
22       MR. BENNET:  It actually did.  I'm in one
23 of my Zoom modes where I'm putting on ties as I need
24 come on and see you.
25       SPECIAL MASTER TENNER:  All right.  I'm

**Page 416**

1  glad I wasn't hallucinating.
2        So that's what we're going to do.  We're
3  going to do post-hearing briefs -- initial
4  post-hearings briefs, not to exceed 20 pages, and --
5  what was -- you guys wanted to trigger that from the
6  date of your receiving the transcript; right?
7        MR. BRAUNIG:  We did.
8        SPECIAL MASTER TENNER:  So 20 pages from --
9  how many days from the receipt of the transcript?
10       MR. BRAUNIG:  I think we discussed a week
11 from receiving the transcript, but obviously I don't
12 want to squeeze anybody, and if people need more
13 time.
14       SPECIAL MASTER TENNER:  Actually, I think
15 that's a very fair time frame because you can start
16 drafting the brief now based on your notes and maybe
17 you even have roughs of the transcript.  So seven
18 days sounds entirely appropriate.
19       And then seven days thereafter, I'm just
20 going to -- response briefs.  And the response
21 briefs not to exceed ten pages.
22       All right.  Anything else on this
23 particular motion before we move on?
24       MR. BRAUNIG:  Give me just a sec to make
25 sure I don't have anything from any of my team since

**Page 417**

1  we don't have the usual ability to pass notes to
2  each other.
3        MR. BENNET:  Nothing from PNC.
4        MR. BRAUNIG:  I think we're -- nothing from
5  plaintiffs either.
6        SPECIAL MASTER TENNER:  All right.  So for
7  the court reporter's sake, she can now close out
8  that transcript.
9        (Hearing concluded at 1:21 p.m.)
10              ---oOo---

**Page 418**

1  STATE OF CALIFORNIA )
                        ) ss.
2  COUNTY OF SONOMA    )
3
4        I do hereby certify that the foregoing
5  proceedings were reported by me to the best of my
6  ability and thereafter transcribed into typewriting
7  under my direction.
8        I further certify that I am not of counsel
9  nor attorney for either or any of the parties
10 hereto, nor in any way interested in the outcome of
11 the cause named in the caption.
12 Dated:  February 23, 2021
13
14
15
16
17
18
19        /s/ Lorrie L. Marchant
20        LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
          California CSR No. 10523
21        Washington CSR No. 3318
          Oregon CSR No. 19-0458
22        Texas CSR No. 11318

39 (Pages 415 - 418)