IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability
company,

       Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

       Defendants.

---

**SPECIAL MASTER'S ORDER RE: WRITTEN DISCOVERY DISPUTES RAISED AT APRIL 21 and APRIL 28, 2021 STATUS CONFERENCES**

---

At the April 21 and April 28, 2021 status conferences the Parties raised a number of disputes arising out of written discovery requests.  On April 16, 2021, pursuant to the direction of the Special Master, the Parties served their Joint Status Report regarding the issues. [Dkt. 387]  This Order addresses items III through XI of the Report.  The disputes concerning items I and II of the Report were addressed by my Order dated April 22, 2021. [Dkt. 391].  At the April 21, 2021 status conference, Mr. Yu, Ms. Joyce, Mr. Rothstein, and Mr. Miller appeared on behalf of the Plaintiffs.  Mr. Robbins, Ms. Jacobs, Mr. Johnson and Mr. Hoops appeared on behalf of the Defendants.  At the April 28, 2021 status conference, Mr. Yu, Ms. Joyce, Mr. Rothstein, and Mr. Miller appeared on behalf of the Plaintiffs.  Mr. Robbins, Ms. Jacobs, Mr. Johnson and Ms. Weissert appeared on behalf of the Defendants.  The status conferences were recorded by a court reporter, who will

prepare a transcript.

Pursuant to the Parties' Joint Status Report, the arguments of counsel at the status conferences, and being otherwise fully advised, the Court finds and orders as follows:

III.    Interrogatory No. 22 and Request for Admission No. 15 to SRSA

These discovery requests concern Plaintiff SRSA's litigation hold.  Interrogatory 22 asks when litigation holds were instituted by SRSA.  RFA 15 asks SRSA to admit that a memorandum prepared by Mr. Braunig concerning future litigation (listed on SRSA's privilege log as item 506) refers to SRSA's litigation hold.

Defendants argue that the timing of the litigation hold is relevant to determine when SRSA anticipated litigation; an issue which is central to a number of issues in the case. It also argues that it is relevant to the defense of laches, to determine if Plaintiffs waited too long to bring their claims here.  I agree.

SRSA argues that it did not rely on its litigation holds as a basis for anticipating litigation and that it is instead relying on demand letters sent in 2018 for that purpose.  It argues that the litigation hold is irrelevant to laches because the date when it filed the lawsuit is the relevant date.  However, Defendants are not required to simply accept these propositions.  They are entitled to seek evidence that is relevant to the determination of both issues.  While not determinative, when SRSA instituted its litigation hold is certainly relevant to both inquiries.

For the foregoing reasons, SRSA's objections to Interrogatory No. 22 are OVERRULED.  SRSA shall respond to the Interrogatory within 14 days of this Order.

Regardless of the relevance of SRSA's litigation hold, RFA 15 is claimed to be privileged and the privilege log description supports that claim.  Defendants cannot, by

use of a request for admission, solicit the information that is protected in that document.

For the foregoing reasons, SRSA's objection to Request for Admission No. 15 is SUSTAINED.

IV.     Interrogatory No. 23 to SRSA

This Interrogatory concerns the HK Contact List and the Strategic Buyers tab that Plaintiffs claim is a trade secret.  To determine whether it is a trade secret, the Interrogatory requests, for each item of customer information contained in the documents, 1) the identity of the SRSA employee that learned the information, 2) the date that the employee learned the information, 3) how the employee learned the information, 4) the efforts expended by SRSA to learn the information, 5) the efforts made to keep the information confidential, and whether the information was ever subject to a confidentiality agreement.

Notwithstanding its objections, SRSA provided five pages of information, most of which is responsive to the Interrogatory.  But SRSA did not respond to each of the subparts for all of the customer information contained in the two documents.

SRSA argues that responding to each subpart would require it to "slice and dice" its response and that such an exercise would be irrelevant, disproportionate, and unduly burdensome.  While I find the requested information is relevant to the trade secret claims, the gist of SRSA's argument is that it would take a great deal of effort to respond to all subparts of the Interrogatory for all of the customer information contained in the documents.  I agree that responding would require a great deal of effort.

However, given the stakes at issue in this case and having considered the factors set forth in F.R.Civ.P 26(b)(1), I find that the Interrogatory is not disproportionate to the needs of the case and is not unduly burdensome.  The requested information is relevant to determining whether the two documents – key documents in this case - are trade secrets.  While a great deal of information has already been provided in the response, not all of the requested information has been provided.

For the foregoing reasons, SRSA's objections to Interrogatory No. 23 are OVERRULED.  SRSA shall respond to the Interrogatory within 14 days of this Order.

V.   Interrogatories No. 24, 25, 34, 35, 36, 37, 38, and 39 to SRSA

Interrogatory 24 states:  "For each trade secret you allege in this Action, identify all facts supporting your contention that the information comprising the trade secret is not generally known to competitors."  SRSA objects to the Interrogatory because 1) it as an improper "blockbuster" interrogatory because it seeks "all facts", 2) it seeks irrelevant information, 3) it is disproportionate to the needs of the case, and 4) it is unlimited to any particular trade secret or document.  I disagree.

For reasons I have stated previously, asking for "all facts" does not make a discovery request a "blockbuster" request.  Asking for anything less than all facts in a discovery request would rarely make sense.  The Interrogatory is clearly relevant.  The real issue is whether, as SRSA contends, the request is overly broad and/or disproportionate to the needs of the case.  I find that it is not.

While contention interrogatories are frowned upon at the outset of most cases, this case has seen substantial discovery and is close to the discovery deadline.  At this

point, SRSA should be able to identify the trade secrets at issue and be able to identify the facts that support its contention that the trade secrets are not generally known. Keeping this information from Defendants would substantially impair Defendants' ability to prepare for trial.  Having considered the factors set forth in F.R.Civ.P 26(b)(1), I find that the Interrogatory is not disproportionate to the needs of the case and is not unduly burdensome.

 For the foregoing reasons, SRSA's objections to Interrogatory No. 24 are OVERRULED.  SRSA shall respond to the Interrogatory within 14 days of this Order.

Interrogatories 25, 34, 35, 36, 37, 38 and 39 each ask SRSA to identify how information sought in the request differs from "Prior Art".  SRSA argues that the definition of "Prior Art" impermissibly interjects issues of irrelevant patent law into the case.  Defendants argue that the definition appropriately incorporates principles relevant to SRSA's trade secret allegations.

"Prior Art" is defined in Defendants' interrogatories as "information that is publicly or generally known or obvious, including to those versed in the relevant field or discipline."  I agree with Defendants that this phrase, while it rings of patent concepts, incorporates relevant trade secret principles or requirements.

However, the inquiry does not end there.  Each of these Interrogatories asks how certain claimed trade secrets or elements of trade secrets "differ from Prior Art".  Thus, each asks how the trade secret differs from what is known or obvious.  This is precisely what SRSA will have already answered in response to Interrogatory No. 24.  Because

the information would be duplicative of the prior interrogatory, SRSA's objection to responding to how its trade secrets differ from Prior Art are SUSTAINED.

Because the responses to Interrogatories 34, 35, 36, 37, 38, and 39 would do nothing more than elicit information already provided, SRSA need not respond to these Interrogatories.  However, Interrogatory 25 also seeks information that would not have been provided in response to Interrogatory 24.  Therefore, SRSA's objections to responding to "what is unique about soliciting that particular information and how it differs from Prior Art" are SUSTAINED.  However, SRSA's objections to the remainder of Interrogatory  25 are OVERRULED.  The information sought in the remainder of the Interrogatory is relevant and proportional to the needs of the case and SRSA shall respond to the remainder of Interrogatory 25 within 14 days of this Order.

      VI.   <u>Interrogatory No. 29 to SRSA</u>

This Interrogatory states:  "For each M&A Transaction for which SRSA seeks to disgorge profits of Defendants, state all facts supporting the contention that SRSA would have otherwise been engaged on the Transaction but for the Defendants' alleged misconduct, including the specific services you contend SRSA would have been engaged to provide and the facts supporting same."

SRSA objects, claiming that whether it would have been hired is irrelevant to its trade secret unjust enrichment claim.  It argues that it is legally entitled to disgorgement of Defendants' profits regardless.  Defendant argues that the law requires proof that it would have been hired before disgorgement of profits can be awarded.  Much of the briefing and argument (and the Court's subsequent review of the cases) centered on

this legal issue.  Compare *Earthinfo, Inc. v Hydrosphere Resource Consultants, Inc*., 900 P.2d 113 (Colo. 1995) with *Cartel Asset Mgmt. v Ocwen Financial Corp*., 249 Fed.Appx. 63 (10th Cir. 2007)

However, upon review of the language of the Interrogatory, resolution of this objection is much simpler.  The Interrogatory, by its terms, only requires a response if SRSA contends that it would have otherwise been engaged.  If SRSA is not making this contention, it can simply state so.

For the foregoing reasons, I order that SRSA respond to the Interrogatory within 14 days of this Order.  If SRSA does not contend that it would otherwise have been engaged, it can simply say so in its response.  No further response to the Interrogatory is necessary.  However, if SRSA's response is anything other than an unconditional denial that it is making this contention, it must respond to the remainder of the Interrogatory.

VII.   Interrogatory No. 42 to SRSA

This Interrogatory asks SRSA to "Identify each employee that departed, resigned, was terminated or otherwise left SRSA between March 9, 2018 to the present along with the date of such departure."  Defendants argue that the information is necessary to show that potential clients of SRSA did not choose SRSA because of the departure of employees.

SRSA objects, arguing that the Interrogatory is irrelevant, disproportionate to the needs of the case, overly broad and unduly burdensome.  I agree.  This Interrogatory seeks information concerning, among other former employees, employees who left the

company to pursue other careers or stay home and raise a family, employees who were fired for theft or poor job performance, and employees who retired or went back to school. The departure of these employees has no relevance or only hypothetical relevance to whether a potential client did not hire SRSA. The information concerning whether or not a particular potential customer did or did not hire SRSA lies wholly with that customer.

For the foregoing reasons, SRSA's objections to Interrogatory No. 42 are SUSTAINED.

VIII.    Interrogatory No. 44 to SRSA

This Interrogatory asks SRSA to identify the financial interest Paul Koenig – SRSA's Co-Founder and CEO – has in the outcome of the litigation. SRSA responded to the Interrogatory by stating that Mr. Koenig "is a stockholder of SRSA. Other than his generalized interest as a stockholder, which is no different than any other stockholder, Mr. Koenig has no financial interest in this litigation."

Defendants argue that this response fails to specifically identify the amount of his stockholding and, hence, the full extent of his financial interest. I agree.

First, I reject the statement that Mr. Koenig has a generalized interest which is no different than any other stockholder. By definition, the more stock a person owns in a closely held corporation (or any corporation for that matter), the greater his or her financial interest in the outcome of litigation the company is pursuing.

Second, the amount of stock owned by Mr. Koenig bears directly on what he personally has at stake in this litigation and, as a result, his credibility. The damage

request in this case is roughly $150 million.  If Mr. Koenig owns even a small fraction of the company's stock, his credibility could be questioned.  The greater the fraction of the company's stock that he owns, the greater his credibility could be questioned.  I reject SRSA's argument that the amount of stock he owns has no bearing on his credibility. Common sense dictates that it does.

For the foregoing reasons, SRSA's objections to Interrogatory No. 44 are OVERRULED.  SRSA shall provide a response that fully discloses Mr. Koenig's stockholding and any other financial interest he has in the outcome of this litigation within 14 days of this Order.

IX.   Request for Production No. 26 to SRSA

This Request states:  "Produce all Documents reflecting, constituting, or otherwise evidencing confusion among consumers regarding the source or origin of Payments & Escrow Products."  In response, SRSA agreed to produce, after a reasonable and diligent inquiry, all documents evidencing customer confusion between SRSA and PNC.  It refused to produce documents evidencing customer confusion between SRSA and any other market participant.  At issue here is whether that information is relevant and discoverable.

Defendants argue that evidence of confusion between SRSA and other market participants is relevant to Plaintiffs' unfair competition claim.  Colorado courts have hardly been precise in defining what constitutes common law unfair competition. Illustrative of this lack of clarity is the Court's opinion in *NetQuote, Inc. v. Bird*, 504 F.Supp. 2d 1126 (D. Colo. 2007).  In that case, Judge Ebel provided a thorough

analysis of unfair competition law in Colorado – in both cases alleging tradename appropriation and non-trade or "generic" unfair competition.  After reviewing the caselaw, Judge Ebel found that "state and federal courts applying Colorado law have consistently held that the tort of unfair competition requires, first, that the defendant has copied the plaintiff's products or services or misappropriated plaintiff's name or operations in some regard, and second, that this conduct is likely to deceive or confuse the public because of the difficulties in distinguishing between **the plaintiff's and defendant's** products and services." Id. at 1131 (emphasis added)

Other courts have focused on the more specific claim of unfair competition of a trade name.  See *HealthOne of Denver, Inc. v. UnitedHealth Group, Inc.*, 805 F.Supp. 2d 1115 (D. Colo. 2011).  Having reviewed the Second Amended Complaint [Dkt. 66], it is clear that Plaintiff's claim is of the "generic" variety.  It does not allege that Defendants are improperly using its name.  Rather, it alleges that Defendants are improperly misappropriating its work.  *Id.* at para. 180 ("Defendant PNC has unfairly competed by misappropriating SRSA's expenditure of labor, skill, and money, and further by misrepresenting SRSA's work, including SRSA's LOR forms, as its own.") Any use of an SRSA trade name would be merely incidental to this claim of "generic" unfair competition.

Because this a "generic" unfair competition case, the confusion that is the focus of the inquiry is confusion between the Plaintiffs' and the Defendants' products. However, Request for Production No. 26 goes beyond that.  It asks for information about confusion between Plaintiff's products and any other product.  Plaintiffs appropriately limited their response to confusion between SRSA and PNC.

For the foregoing reasons, SRSA's objections to Request for Production No. 26 is SUSTAINED.

X.   Interrogatory No. 2 to PNC

This Interrogatory seeks deal information for PNC's customer engagements from January 1, 2018 through the present.  PNC previously objected to this Interrogatory and by his Order dated November 18, 2020 [Dkt. 315], Judge Domenico ordered PNC to respond.

PNC responded to Judge Domenico's Order by providing all of the requested information for its Treasury Management division, but not for its Asset Management Group ("AMG").  It argues that AMG provided escrow services on a limited basis for institutional clients predating the events at issue here.  However, it is undisputed that AMG falls within the definition of PNC in the discovery requests.  Judge Domenico has already ruled that PNC, which by definition included AMG, must respond to the Interrogatory.  The time to raise the distinction between AMD and Treasury Management was when the discovery responses were originally made.  Judge Domenico's Order is the law of the case.  I will not alter that Order here.

For the foregoing reasons, PNC's objections to Interrogatory No. 2 are OVERRULED.  PNC shall respond to the Interrogatory within 14 days of this Order.

XI.   Interrogatories No. 13, 14, 15 and 16 to PNC Financial

Much like PNC's contention interrogatories to SRSA regarding trade secret information (section IV, *supra*), these Interrogatories ask with respect to HK Contacts, the Strategic Buyers Tab, and the Payment Process Documents, 1) whether PNC

contends that the information is readily ascertainable or generally known, and 2) if so, to describe the source of the information that makes it so.

The Court previously overruled Defendants' objections to these Interrogatories and ordered responses. [Dkt. 355, item 5]   Plaintiffs argue the responses provided by PNC Financial are overly general and insufficient.  PNC Financial argues they have fully responded.

But for the phrase "such as" in the response to Interrogatories 13 and 15, I find that responses to these discovery requests are sufficient.  PNC Financial is ordered to provide amended responses within 14 days of the date of this Order.  If the amended response simply removes the phrase "such as", the response will be sufficient.  If the amended response does not remove the phrase, I will reconsider this ruling.


Dated:  April 30, 2021                    BY THE COURT



                                          _____
                                          David M. Tenner, Special Master



## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **SPECIAL MASTER'S ORDER RE: WRITTEN DISCOVERY DISPUTES RAISED AT APRIL 21 and APRIL 28, 2021 STATUS CONFERENCES**was electronically filed with the Clerk of the Court using the CM/ECF system on this 30th day of April, 2021, which will send notification of such filing to the following parties:

Warren A. Braunig  wbraunig@keker.com
Michelle S. Ybarra  mybarra@keker.com
Benjamin D. Rothstein  brothstein@keker.com
Katie Lynn Joyce  kjoyce@keker.com
Victor H. Yu  vyu@keker.com
Puja V. Parikh  pparikh@keker.com
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415-391-5400
Facsimile: 415-397-7188

Scott R. Bialecki  sbialecki@sheridanross.com
Matthew C. Miller  mmiller@sheridanross.com
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone: 303 863 9700
Facsimile: 303 863 0223
Email: litigation@sheridanross.com

*Attorneys for Plaintiffs*
SRS ACQUIOM INC. and
SHAREHOLDER REPRESENTATIVE SERVICES LLC

James Forrest Bennett  jbennett@dowdbennett.com
Megan S. Heinz  mheinsz@dowdbennett.com
Jeffrey R. Hoops jhoops@dowdbennett.com
DOWD BENNETT LLP
7733 Forsyth Boulevard, Suite 1410
St. Louis, MO 63105

Matthew E. Johnson  mjohnson@dowdbennett.com
DOWD BENNETT LLP
1775 Sherman Street, Suite 2010
Denver, Colorado 80203
Telephone: 303-353-4361
Facsimile: 314-863-2111


Hara K. Jacobs  jacobsh@ballardspahr.com
Noah S. Robbins  robbinsn@ballardspahr.com
Elizabeth P. Weissert  weisserte@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599

Telephone: 215-668-8500
Facsimile: 215-864-8999

*Attorneys for Defendants*
PNC FINANCIAL SERVICES GROUP, INC.,
PNC BANK, N.A., HEATHER KELLY, and ALEX TSARNAS

*s/  Heather Grant*
Heather Grant