IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

---

**PLAINTIFFS' OBJECTION TO SPECIAL MASTER'S ORDER RE: DISCOVERY ISSUES RAISED AT APRIL 21, 2021 STATUS CONFERENCE (ECF NO. 391)**

---

# TABLE OF CONTENTS

**Page**

I. BACKGROUND ........................................................................................................2

II. ARGUMENT.............................................................................................................6

    A. SRSA should not be required to down-designate its payments spreadsheets. ................................................................................................6

    B. SRSA should not be required to down-designate documents from completed transactions, including bid proposals. ......................................8

III. CONCLUSION........................................................................................................10

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Hill Phoenix, Inc. v. Classic Refrigeration Socal, Inc.*,
   No. 8:19-cv00695, 2019 WL 11519088 (C.D. Cal. Aug. 13, 2019)..........................................10

*Univ. of Texas v. Camenisch*,
   451 U.S. 390 (1981).......................................................................................................................8

**Rules**

Fed. R. Civ. P. 53 ..............................................................................................................................6

Plaintiffs SRS Acquiom, Inc. and Shareholder Representative Services LLC (collectively, "SRSA") respectfully object to the portions of the Special Master's Order Re: Discovery Issues Raised at April 21, 2021 Status Conference (ECF No. 391) requiring that SRSA "down-designate" the confidentiality designation for two specific categories of documents in its document production: (1) SRSA's payments spreadsheets, and (2) documents concerning specific client engagements, including SRSA's bid proposals for those engagements.

In the five months since the Court appointed the Special Master to hear discovery disputes, he has issued six written orders ruling on several dozen contested discovery requests, deposition topics, subpoenas, and other disputes. *See* ECF Nos. 347, 348, 355, 391, & 400. The extended discovery period will end in less than two weeks (May 26). SRSA has not objected to any of the Special Master's rulings until now. SRSA brought this lawsuit to protect its trade secrets and brings this Objection for the exact same reason: The two categories of documents at issue contain SRSA trade secret information, and an order requiring SRSA to down-designate them effectively strips those documents of their protection before the merits of SRSA's trade secrets claims are addressed.

The Special Master's Order relied almost entirely on findings the Court made in denying SRSA's motion for a preliminary injunction against Defendants' misuse of related categories of alleged trade secret information. But preliminary-injunction findings are not final or binding on the Court, and the parties' dispute regarding the trade secret status of these documents remains live. SRSA should not be forced to forgo the heightened protection afforded by the Stipulated Protective Order for "non-public trade secrets" (ECF No. 40 at ¶ 2.7) before the Court or a jury has the opportunity to determine, on a full factual record, whether they qualify for trade secret

1

status. Accordingly, SRSA respectfully requests that the Court sustain this Objection and order that SRSA be permitted to maintain HC-AEO protection over its payments spreadsheets and documents concerning specific client engagements (including bid proposals).

## I.    BACKGROUND

This is an action for trade secret misappropriation. SRSA is a financial technology company that, among other capabilities, uses a proprietary online platform to provide "paying agent" services in M&A transactions. SRSA alleges that two of its former employees—Heather Kelly and Alex Tsarnas—misappropriated SRSA's trade secrets, brought those trade secrets to PNC, and used them at PNC to build a competing online paying agent product and steal SRSA's customers. The trade secrets SRSA alleges Defendants stole include SRSA's "payments spreadsheet" (a highly-complex and formatted MS Excel file that SRSA uses to gather data regarding payees in the M&A deal for import into its database) and commercial information regarding who SRSA's customers are and how SRSA prices its services.

SRSA filed its Complaint on July 12, 2019. Shortly thereafter, the parties jointly requested that the Court enter a two-tiered Stipulated Protective Order—*i.e.*, one that permits the parties to designate materials "confidential" or "highly confidential – attorneys' eyes only" (hereinafter, "HC-AEO")—because they anticipated "that they will be required to produce documents and information in this lawsuit that are confidential and competitively sensitive, including technical product details, product roadmaps, business strategies, and pricing information." ECF No. 36 at 1. Defendants acknowledged that many of the documents produced by both parties would be designated as HC-AEO; indeed, the individual Defendants (Kelly and Tsarnas) requested and received the ability to review HC-AEO materials on their own by arguing

2

1690204

that there were "likely to be thousands pages of AEO documents" produced by SRSA in the case. *Id*. at 9.

The Court subsequently entered a Stipulated Protective Order that defined "confidential" information or items as:

> documents, information (regardless of how it is generated, stored, or maintained) or tangible things that contain or otherwise reference confidential and non-public development, financial, sensitive, competitive, or commercial information, non-public personal information, or any other non-public information for which a good faith claim of need for protection from disclosure can be made and which has been designated by one of the Parties pursuant to this Protective Order as containing Confidential Information. For the purposes of this Protective Order, "Confidential Information" specifically includes, but is not limited to: (1) confidential research, development or commercial information; (2) personal financial information; and (3) any non-public financial information of an entity.

ECF 40 at ¶ 2.2. The Stipulated Protective Order defined HC-AEO materials as:

> extremely sensitive "Confidential Information or Items" (regardless of how it is generated, stored, or maintained) or tangible things that contain or otherwise reference non-public trade secrets or other current or prospective confidential research, development, commercial, sensitive, competitive, or financial information, or other highly-sensitive data, the disclosure of which to a Party or Non-Party could cause either a competitive disadvantage to a Party or could create a substantial risk of serious harm that could not be avoided by less restrictive means.

*Id*. at ¶ 2.7.

During the expedited discovery period in the late summer and fall of 2019, SRSA produced, within eight weeks of receiving document requests from Defendants, more than 10,000 documents and 80,000 total pages. *See* accompanying Declaration of Benjamin D. Rothstein ("Rothstein Decl.") ¶ 2. Due to the nature of the trade secret claims at issue and the subject matter of Defendants' document requests, SRSA produced entire categories of extremely sensitive business information, such as:

- Business plans and commercial strategy slide decks, including board presentations;

- Documents describing SRSA's pricing strategy and individual prices;

- Due diligence documents and other highly sensitive documents generated in connection with a third party's investment in SRSA;

- Internal risk analyses;

- Confidential customer information including customer lists, communications with customers regarding their preferences, and communications with customers containing the customers' confidential information (that SRSA is obligated to make best efforts to protect); and

- Technical product development information, including product specifications, internal-use manuals, product roadmaps, and numerous internal communications regarding obstacles encountered during product development and the solutions thereto.

*Id*. ¶¶ 3-4. Consequently, SRSA designated a high volume of its production as HC-AEO—just as both parties predicted when they jointly requested a two-tiered protective order. Documents designated "confidential" can be shared with any "Party" (in other words, anyone at PNC); documents designated HC-AEO, on the other hand, can be shared only with designated PNC in-house lawyers, and the individual defendants under specified circumstances. *Id*. at ¶¶ 7.2 & 7.3.

In late October 2019, the parties raised a dispute with Judge Crews regarding whether SRSA should be required to re-review the confidentiality designations for the *entire* document production it turned over during expedited discovery (over 10,000 documents). *See* ECF Nos. 55 and 56. The Special Master took up this dispute on January 22, 2021. He found that SRSA's "initial review [and designation of its document production] was not the review required by the Federal Rules of Civil Procedure" and ordered the parties to meet and confer regarding which categories of documents produced by SRSA should be down-designated from HC-AEO to

"confidential" or "no designation." Rothstein Decl. Ex. A at 38:11-24. SRSA did not object to that ruling.

On February 11, 2021, Defendants provided a list to SRSA proposing nine separate categories of documents for SRSA to down-designate. Rothstein Decl. Ex. B. In the ensuing weeks, the parties engaged in "numerous meet and confers" (ECF No. 387 at 3) regarding these categories. At a March 8, 2021 status conference before the Special Master, both parties described their then-ongoing meet-and-confer efforts as "productive." Rothstein Decl. Ex. C at 98:11-99:17. Ultimately, the parties were able to reach agreement regarding six out of the nine categories of documents Defendants initially proposed, and SRSA has since lowered the designation on *1,644 documents* in its production from HC-AEO to either confidential or no designation. Rothstein Decl. ¶ 5.

The parties presented their positions regarding the three disputed categories in a joint statement to the Special Master and argued their positions at an April 21, 2021 status conference. *See* ECF No. 387 at 4-16; Rothstein Decl. Ex. D at 26:18-91:12. The Special Master ruled the next day. ECF No. 391. SRSA objects to the Special Master's ruling insofar as it requires SRSA to "down-designate" two of the disputed categories. The first category, as defined in the parties' briefing, comprises "documents provided by SRSA to deal parties under an implied duty of confidentiality," but, as the Special Master recognized in his Order, the specific documents "primarily at issue" in this category are versions of SRSA's payments spreadsheet. *Id*. at 4. The second category comprises "documents that include past financial information or information concerning a completed or abandoned transaction, including bid proposals." *Id*. at 5. SRSA

objects to the Special Master's Order requiring SRSA to down-designate documents in this category that identify SRSA's customers and/or disclose SRSA's pricing information.

## II.     ARGUMENT

When a party objects to the Special Master's order in this case, the Court reviews the Special Master's findings of fact and conclusions of law *de novo*. Fed. R. Civ. P. 53(f); ECF No. 329. The Special Master's ruling that the categories of documents at issue in this Objection do not qualify for HC-AEO protection under the Stipulated Protective Order is a legal ruling and should be reviewed *de novo*. Indeed, the categories at issue comprise trade secrets asserted by SRSA in this lawsuit and the Special Master's Order requiring SRSA to down-designate them is a de facto ruling on whether they should receive protection typically afforded to trade secret documents and information.

### A.     SRSA should not be required to down-designate its payments spreadsheets.

The Stipulated Protective Order permits SRSA to designate "non-public trade secrets" as HC-AEO. Thus, the parties' briefing and oral argument addressed whether recipients of SRSA's payments spreadsheets were under an implied obligation to keep the spreadsheets confidential, such that the spreadsheets retained trade secret status even though SRSA distributes them to deal parties without a written confidentiality agreement. *See, e.g.*, ECF No. 387 at 7-12. In requiring SRSA to down-designate its payments spreadsheets, the Special Master sidestepped this critical issue: "I make no finding concerning whether or not there is an implied duty of confidentiality related to these documents." ECF No. 391 at 4.

Instead, the Special Master reasoned that SRSA's "payment spreadsheets do not meet the initial requirement [for HC-AEO designation] of being 'extremely' sensitive" because they "are

6

simply too widely disseminated and known in the industry[,]" and therefore the payments spreadsheets do not qualify for HC-AEO protection. *Id*. at 4-5. This ruling should be overturned for the simple reason that it addresses the wrong issue. There was no evidence before the Special Master—and no evidence in the record of this case at all—that SRSA disseminates its payments spreadsheets to anyone other than parties directly involved in the M&A transactions for which SRSA provides paying agent services. If the receiving parties are obligated to keep SRSA's payments spreadsheets confidential, and SRSA derives independent economic value from the spreadsheets not being generally known among others (an issue on which neither party presented evidence to the Special Master), then the spreadsheets qualify as "non-public trade secrets" and are properly designated HC-AEO. See ECF No. 40 at ¶ 2.7. By basing his ruling solely on the number of parties who received SRSA's payments spreadsheets, without considering whether those parties were obligated to keep the spreadsheets confidential, the Special Master overlooked the determinative issue.

Additionally, the evidence the Special Master considered does not support his ruling. The Special Master relied on "Judge Domenico's [Preliminary Injunction] Order, the additional evidence subsequently discovered by Plaintiffs after that Order and cited in the Joint Status Report at p. 9, and the arguments of counsel[.]" *Id*. at 4. But Judge Domenico's findings in connection with the preliminary injunction are not final and should not be considered dispositive in determining whether SRSA should be forced to disclose its alleged trade secrets to Defendants without HC-AEO protection. As the Supreme Court has explained:

> The purpose of a preliminary injunction is merely to preserve the relative positions of the parties until a trial on the merits can be held. Given this limited purpose, and given the haste that is often necessary if those positions are to be preserved, a preliminary injunction is customarily granted on the basis of

> procedures that are less formal and evidence that is less complete than in a trial on the merits. . . . and ***the findings of fact and conclusions of law made by a court granting a preliminary injunction are not binding at trial on the merits***.

*Univ. of Texas v. Camenisch*, 451 U.S. 390, 395 (1981) (citations omitted) (emphasis added).

Additionally, the only "new evidence" cited by *either* party in the Joint Status Report is testimony from a third party—Boris Kogan—who submitted a declaration in opposition to Defendants' July 2020 summary-judgment motion stating: "I consider paying agent spreadsheets conveyed to the parties in an M&A transaction to be confidential. My understanding has always been that it would be inappropriate to send one paying agent's payment spreadsheet to another paying agent outside of a transaction in which they were both involved." ECF No. 269 at ¶ 7. By requiring SRSA to down-designate its payments spreadsheets, the Special Master is requiring SRSA to forego AEO protection for its payments spreadsheets before SRSA has the opportunity to present a fully-developed body of evidence to the Court or a jury in support of the spreadsheets' trade secret status.

**B.    SRSA should not be required to down-designate documents from completed transactions, including bid proposals.**

The documents at issue in this category are documents designated as HC-AEO because they disclose the identity of SRSA's clients and/or because they disclose SRSA's bidding proposals for particular deals. As SRSA explained in its portion of the April 16, 2021 Joint Status Report, the compilations of these documents would provide a level of detail regarding SRSA's pricing information and customer list that "would not be available to Defendants under any other circumstances." ECF No. 387 at 12-13.

With respect to communications with SRSA's clients in past engagements and deal documents from those transactions, the Special Master found only that "[t]here was conflicting

8

evidence about whether or not the identity of deal parties has, in fact, been kept confidential." ECF No. 391 at 6. But there is *no* evidence in the record that the *entire compilation* of customer information that the Special Master has now ordered SRSA to down-designate has ever been shared outside the company. That compilation of information is competitively sensitive—a point that is not disputed. *See* ECF No. 266 (Declaration of SRSA employee Ben Lane) at ¶ 20. Indeed, the individual Defendants' employment agreements with SRSA specifically identified "all information contained in customer / subscriber records" as "trade secrets and proprietary information" that are subject to their ongoing confidentiality obligations to SRSA. *See, e.g.*, ECF No. 75-1. And, as SRSA pointed out in its April 16, 2021 submission, PNC has used the HC-AEO designation liberally with respect to the exact same type of information—emails discussing completed transactions dating as far back as mid-2019. See ECF No. 387 at 13; ECF No. 387-7. The Special Master's ruling did not address PNC's own practices in designating its own documents from the same category.

In ordering SRSA to down-designate documents containing SRSA's bid proposals, the Special Master relied *entirely* on Judge Domenico's finding that SRSA's "pricing information is 'well known in the industry, shared with customers without confidentiality or similar agreements, and easily ascertainable by third parties.'" ECF No. 391 at 5 (citing ECF No. 207 at 21). This finding does not support the Special Master's ruling. First, as explained above, Judge Domenico's findings at the preliminary injunction stage are not final and should not be dispositive as to whether SRSA can maintain HC-AEO protection over these documents. Second, Judge Domenico did not consider, at the preliminary injunction stage, whether SRSA could assert trade secret protection over the entire compilation of every bid proposal and the identity of

9

every customer disclosed during discovery. So even if, hypothetically, SRSA's competitors could reverse engineer SRSA's pricing strategy with some degree of confidence based on information available to them, a complete set of SRSA's bidding proposals would provide a level of insight and confidence not previously available—particularly when coupled with specific information about the deals for which SRSA made those proposals. These compilations are "extremely sensitive" and should be subject to HC-AEO protection. *See Hill Phoenix, Inc. v. Classic Refrigeration Socal, Inc.*, No. 8:19-cv00695, 2019 WL 11519088, at *2 (C.D. Cal. Aug. 13, 2019) (entering two-tier protective order with attorneys'-eyes-only tier based on finding that "the sensitive nature of the commercial information in dispute"—including "bidding proposals"—"could cause Plaintiff competitive harm").

### III.   CONCLUSION

The consequences of an incorrect ruling are significant for SRSA. The documents at issue in this Objection contain information that SRSA claims as trade secret, the Court has not ruled on the merits of that claim, and the evidence considered by the Special Master does not support his ruling. If SRSA is forced to down-designate these documents, they will be made available to PNC employees, without SRSA even knowing who at PNC has reviewed them, or why. In a trade-secrets case, that would be highly prejudicial. SRSA should not be forced to disclose these documents to Defendants without an HC-AEO designation. SRSA therefore respectfully requests that the Court sustain this Objection.

//

//

//

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: May 13, 2021 | By: *s/ Warren A. Braunig*<br>Warren A. Braunig<br>*wbraunig@keker.com*<br>Michelle S. Ybarra<br>*mybarra@keker.com*<br>Benjamin D. Rothstein<br>*brothstein@keker.com*<br>Katie Lynn Joyce<br>*kjoyce@keker.com*<br>Victor H. Yu<br>*vyu@keker.com*<br><br>KEKER, VAN NEST & PETERS LLP<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone:     415-391-5400<br>Facsimile:      415-397-7188<br><br>SHERIDAN ROSS P.C.<br>Scott R. Bialecki<br>*sbialecki@sheridanross.com*<br>Matthew C. Miller<br>*mmiller@sheridanross.com*<br>1560 Broadway, Suite 1200<br>Denver, Colorado 80202<br>Telephone:     303 863 9700<br>Facsimile:      303 863 0223<br>Email:     *litigation@sheridanross.com*<br><br>Attorneys for Plaintiffs<br>SRS ACQUIOM INC. AND<br>SHAREHOLDER REPRESENTATIVE<br>SERVICES LLC |

## **COMPLIANCE WITH TYPE-VOLUME LIMITATION**

As required by this Court's Practice Standard III(A)(4), above-signed counsel hereby certifies that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

11

1690204