# Plaintiffs' Exhibit 2

```
 1              IN THE UNITED STATES DISTRICT COURT
 2                 FOR THE DISTRICT OF COLORADO
 3
    SRS ACQUIOM, INC., a Delaware
 4  corporation, and SHAREHOLDER
    REPRESENTATIVE SERVICES, LLC,
 5  a Colorado limited liability
    company,
 6
               Plaintiffs,
 7
    vs.                           No.  1:19-cv-02005-DDD-SKC
 8
    PNC FINANCIAL SERVICES GROUP,
 9  INC., a Pennsylvania corporation,
    PNC BANK, N.A., a national
10  association, HEATHER KELLY, an
    individual, and ALEX TSARNAS, an
11  individual,
12             Defendants.
    _____/
13
14
15                    REMOTELY CONDUCTED
16   EVIDENTIARY HEARING REGARDING SPOLIATION OF EVIDENCE
17                         VOLUME 2
18              WEDNESDAY, FEBRUARY 17, 2021
19
20
21
22  Stenographically reported by:
    LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
23  California CSR No. 10523
    Washington CSR No. 3318
24  Oregon CSR No. 19-0458
    Texas CSR No. 11318
25
```

Page 266

## Page 267

```
 1        A P P E A R A N C E S
 2        (All appearances via Zoom)
 3  Appearing as counsel on behalf of the Plaintiffs:
 4     KEKER, VAN NEST & PETERS, LLP
        By:  Warren Braunig, Esquire
 5          Ben Rothstein, Esquire
            Michelle Ybarra, Esquire
 6          Victor Yu, Esquire
            Katie Joyce, Esquire
 7          Trevor White, Esquire
            Christina Blais, Esquire
 8      633 Battery Street
        San Francisco, CA 94111
 9      (415) 391-5400
        wbraunig@keker.com
10      brothstein@keker.com
        mybarra@keker.com
11      vyu@keker.com
        kjoyce@keker.com
12      twhite@keker.com
        cblais@keker.com
13  and
        SHERIDAN ROSS, PC
14      By:  Scott Bialecki, Esquire
        1560 Broadway Suite 1200
15      Denver, CO 80202
        (303) 863-9700
16      sbialecki@sheridanross.com
17  (Continued)
18           ---oOo---
```

## Page 268

```
 1        A P P E A R A N C E S
 2        (All appearances via Zoom)
 3  Appearing as counsel on behalf of the Defendants:
 4     DOWD BENNETT
        By:  James F. Bennett, Esquire
 5          Matthew E. Johnson, Esquire
            Jeffrey Hoops, Esquire
 6          Megan Heinsz, Esquire
            Katie Feigenbutz, Paralegal
 7      7733 Forsyth Blvd., Suite 1900
        St. Louis, MO 63105
 8      (314) 889-7300
        jbennett@dowdbennett.com
 9      mjohnson@dowdbennett.com
        jhoops@dowdbennett.com
10      mheinsz@dowdbennett.com
11     BALLARD SPAHR, LLP
        By:  Hara K. Jacobs, Esquire
12          Noah Robbins, Esquire
            Elizabeth P. Weissert, Esquire
13      1735 Market Street, 51st Floor
        Philadelphia, PA 19103
14      (215) 864-8745
        robbinsn@ballardspahr.com
15
16  Special Master:
17      David M. Tenner, Esq.
18  Also present:
19      Casey McTigue, Executive Director &
        Associate General Counsel at SRS Acquiom
20
        Erik Derk
21
        Natalie Moritz
22
        Emily Dimond
23
24           ---oOo---
25
```

## Page 269

```
 1              I N D E X
 2         INDEX OF EXAMINATIONS
 3    WITNESS:  ANDREW CRAIN          PAGE
 4  CROSS-EXAMINATION BY MR. ROBBINS     273
 5  REDIRECT EXAMINATION BY MR. ROTHSTEIN   313
 6  RECROSS EXAMINATION BY MR. ROBBINS    343
 7    WITNESS:  ERIC DERK
 8  DIRECT EXAMINATION BY MR. ROTHSTEIN    348
 9  CROSS EXAMINATION BY MS. JACOBS      375
10  REDIRECT EXAMINATION BY MR. ROTHSTEIN   391
11  RECROSS EXAMINATION BY MS. JACOBS     410
12           ---oOo---
```

## Page 270

```
 1         INDEX OF EXHIBITS
 2  EXHIBITS                    PAGE
    ADMITTED INTO EVIDENCE
 3
    Exhibit 161                  347
 4
 5           ---oOo---
```

**Page 355**

1  A. Well, it could have been one of a few
2 counsel. Lance Carr is typically the person, inside
3 counsel team, that sends and submits notification to
4 custodians.
5  Q. Okay. So it's Lance Carr or somebody who
6 works with Lance Carr on litigation discovery issues
7 for PNC's in-house counsel department?
8  A. Yeah. The common team that works on that
9 would be people such as Emily Dimond and
10 Natalie Moritz.
11  Q. Okay. And that -- and you don't know which
12 of those three individuals -- Ms. Dimond,
13 Ms. Moritz, or Mr. Carr -- sent the two litigation
14 hold notices at issue in this case; is that correct?
15  A. I don't know specifically what individuals
16 sent the legal hold notice, correct.
17  Q. Okay. Can you open your binder to the
18 litigation hold notice that was sent to Mr. Tsarnas.
19  A. Can you tell me which exhibit that is?
20  MS. JACOBS: Mr. Tenner, I object. First
21 of all, I believe that litigation hold notice is
22 privileged. We certainly haven't received SRS's
23 litigation hold notice in this case. In fact, I'm
24 pretty certain and virtually positive it is on their
25 privilege log.

**Page 356**

1 The fact that Mr. Derk reviewed it in
2 preparation for his deposition today doesn't alter
3 the fact that it is a privileged document, and he is
4 not required to testify about the contents of it.
5  SRS --
6  SPECIAL MASTER TENNER: My understanding
7 was he was just asked to look for it in a binder.
8  MS. JACOBS: They are going to now -- I
9 believe that Mr. Rothstein is now going to ask him
10 to pull it out. He's going to ask him questions
11 about the substance of it. And this line of
12 questioning is improper.
13  SRSA has taken the position in this case
14 that its own litigation hold notice is privileged.
15 It's on its privilege log. And SRSA cannot now come
16 back to PNC and say, Well, our notice is privileged
17 and yours isn't.
18  SPECIAL MASTER TENNER: The binders in
19 front of the witness are the exhibit binders; right?
20  MS. JACOBS: They are.
21  SPECIAL MASTER TENNER: And so if he's
22 going to look at an exhibit, why would I not permit
23 him to look at an exhibit?
24  MS. JACOBS: I don't believe that document
25 is in the exhibit binders.

**Page 357**

1  SPECIAL MASTER TENNER: Well, then let's
2 get there. The question was look at the exhibit
3 binder.
4  And, Mr. Rothstein, ask your question.
5  MS. JACOBS: It would be helpful if
6 Mr. Rothstein would direct us all to what tab of an
7 exhibit binder that Mr. Derk is looking at so we
8 could follow along.
9  MR. ROTHSTEIN: I think this is -- I think
10 Ms. Jacobs is deliberately confusing the record
11 here.
12  Mr. Derk has documents in a binder in front
13 of him. They're not part of the exhibit binders.
14 They are documents that Ms. Jacobs is now claiming
15 are privileged, despite the fact that this
16 spoliation motion has abrogated the privilege over
17 them in the fact that Mr. Derk reviewed them in
18 connection with his testimony today and has already
19 testified about them.
20  He's here as a 30(b)(6) witness. These
21 documents were prepared for him to review in
22 connection with his testimony today, and we'd like
23 to see them. And we certainly think we should be
24 able to ask questions about them.
25  MS. JACOBS: I'm sorry, Mr. Tenner. To

**Page 358**

1 clarify what Mr. Rothstein is saying is that
2 Mr. Derk apparently has preparation documents
3 somewhere in this room where he is right now that
4 are not exhibits in this proceeding, and he's asking
5 him to go look into our work product and pull it out
6 and testify about it, and that is improper.
7  SPECIAL MASTER TENNER: No. Actually,
8 Ms. Jacobs, if a witness brings to a hearing a
9 document that the witness says he reviewed in
10 preparation for the hearing, then that document gets
11 to be seen.
12  And so, Mr. Rothstein -- the objection is
13 overruled. And, Mr. Rothstein, go ahead and
14 continue your questioning.
15  MR. ROTHSTEIN: Okay. Thank you.
16  BY MR. ROTHSTEIN:
17  Q. Mr. Derk, could you please open whatever
18 binder it is that contains the litigation hold
19 notice that was provided on July 12th, 2019, to
20 Ms. Kelly and pull it out for a moment.
21  A. Okay. Please proceed.
22  Q. Okay. Who's the sender of that litigation
23 hold notice?
24  A. PNC is the sender of the litigation hold
25 notice.

```
 1  side said because you're doing it simultaneously.
 2       And there's no way any lawyer that I've
 3  heard from on this case is going to be willing to
 4  let the record stand and not want to get another
 5  word in.
 6       And so it seems to me that it probably
 7  makes sense to set two layers of post-hearing
 8  briefing, one where you simultaneously brief, and
 9  then another shortly thereafter and with much fewer
10  pages, where you get a chance to respond to what the
11  other person says.
12       Does that seem like the right way to go?
13       MR. BRAUNIG:  I think that would be fine
14  with plaintiffs.
15       SPECIAL MASTER TENNER:  And I'm getting a
16  thumbs up from Mr. Hoops, which -- he's on mute.
17       (Simultaneous speakers - unclear.)
18       MR. BENNET:  You could give Mr. Hoops
19  credit, but --
20       SPECIAL MASTER TENNER:  Sure looks
21  familiar.  I thought the tie color changed.
22       MR. BENNET:  It actually did.  I'm in one
23  of my Zoom modes where I'm putting on ties as I need
24  come on and see you.
25       SPECIAL MASTER TENNER:  All right.  I'm
                                                 Page 415
```

```
 1  glad I wasn't hallucinating.
 2       So that's what we're going to do.  We're
 3  going to do post-hearing briefs -- initial
 4  post-hearings briefs, not to exceed 20 pages, and --
 5  what was -- you guys wanted to trigger that from the
 6  date of your receiving the transcript; right?
 7       MR. BRAUNIG:  We did.
 8       SPECIAL MASTER TENNER:  So 20 pages from --
 9  how many days from the receipt of the transcript?
10       MR. BRAUNIG:  I think we discussed a week
11  from receiving the transcript, but obviously I don't
12  want to squeeze anybody, and if people need more
13  time.
14       SPECIAL MASTER TENNER:  Actually, I think
15  that's a very fair time frame because you can start
16  drafting the brief now based on your notes and maybe
17  you even have roughs of the transcript.  So seven
18  days sounds entirely appropriate.
19       And then seven days thereafter, I'm just
20  going to -- response briefs.  And the response
21  briefs not to exceed ten pages.
22       All right.  Anything else on this
23  particular motion before we move on?
24       MR. BRAUNIG:  Give me just a sec to make
25  sure I don't have anything from any of my team since
                                                 Page 416
```

```
 1  we don't have the usual ability to pass notes to
 2  each other.
 3       MR. BENNET:  Nothing from PNC.
 4       MR. BRAUNIG:  I think we're -- nothing from
 5  plaintiffs either.
 6       SPECIAL MASTER TENNER:  All right.  So for
 7  the court reporter's sake, she can now close out
 8  that transcript.
 9       (Hearing concluded at 1:21 p.m.)
10              ---oOo---
                                                 Page 417
```

```
 1  STATE OF CALIFORNIA )
                       ) ss.
 2  COUNTY OF SONOMA    )
 3
 4       I do hereby certify that the foregoing
 5  proceedings were reported by me to the best of my
 6  ability and thereafter transcribed into typewriting
 7  under my direction.
 8       I further certify that I am not of counsel
 9  nor attorney for either or any of the parties
10  hereto, nor in any way interested in the outcome of
11  the cause named in the caption.
12  Dated:  February 23, 2021
13
14
15
16
17
18
19       [signature: Lorrie L. Marchant]
20       LORRIE L. MARCHANT, RMR, CRR, CCRR, CRC
         California CSR No. 10523
21       Washington CSR No. 3318
         Oregon CSR No. 19-0458
22       Texas CSR No. 11318
23
24
25
                                                 Page 418
```

39 (Pages 415 - 418)