**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

    Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

    Defendants.

---

**PLAINTIFFS' UNOPPOSED MOTION TO RESTRICT DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF GREG REGAN, AND EXHIBITS THERETO (ECF NOS. 432, 432-1 THROUGH 432-7, AND 432-10)**

---

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") move to restrict information found in Defendants' Motion to Exclude the Testimony of Greg Regan, and Exhibits 1 through 7 and 10 thereto, filed on June 14, 2021 (ECF Nos. 432, 432-1 through 432-7, and 432-10), which were filed as Restricted Level 1. SRSA now moves to maintain the restricted nature of those filings.

**I.    ARGUMENT**

"[W]here documents are used to determine litigants' substantive legal rights," restriction is appropriate when the parties "articulate a real and substantial interest that justifies depriving

the public of access to the records that inform our decision-making process." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted).

To support a motion to restrict public access under D.C.COLO.LCivR 7.2(c), a party must: (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question; and (5) identify the level of restriction sought.  Each of these factors is met here.

### A. Description Of Documents And Restriction Level Sought

SRSA seeks to restrict certain portions of Defendants' Motion to Exclude the Testimony of Greg Regan (hereinafter "Regan *Daubert* Motion"), and Exhibits 1 through 7 and 10 thereto (ECF Nos. 432, 432-1 through 432-7, and 432-10).  SRSA identifies the content within those documents to be restricted, as well as the bases for restriction, within the body of this Motion below.  SRSA requests Level 1 restriction for all documents.

### B. SRSA's Interest In The Protection Of Its Confidential Information Outweighs The Presumption Of Public Access

In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998).  A court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets."  18 U.S.C. § 1835; *see* Colo. Rev. Stat. § 7-74-106 ("[A] court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include . . . sealing the

records of the action."). Under D.C.COLO.LCivR 7.2, courts in this District have frequently concluded that "the presumption of public access to Court files is outweighed by [a party's] interest in maintaining its business information private." *Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*, 2019 WL 4242669, at *4 (D. Colo. Sept. 5, 2019).

Here, SRSA seeks to restrict two categories of sensitive, non-public information found in the Regan *Daubert* Motion and Exhibits: (1) specifics about SRSA's financials, assets, liabilities, and business and operations strategies, and (2) information regarding SRSA customers and customer strategies. Restriction over these categories of information is warranted here lest the Court's "files might serve as a source of business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011).

    1.    **Information Related to SRSA's Confidential Business Analyses, Operations and Strategies, and Financials, Assets, and Liabilities**

SRSA seeks to restrict confidential, non-public, and sensitive information related to SRSA's business analyses, operations and strategies, and finances, assets, and liabilities. Within this category, SRSA seeks partial or full restriction of the Regan *Daubert* Motion and its Exhibits 1 through 5, 7, and 10, which contain this type of sensitive, non-public information.

First, SRSA seeks partial restriction of the Regan *Daubert* Motion (ECF No. 432) because it discloses non-public, sensitive information regarding shareholder payments under the non-public terms of the acquisition of SRSA by a third-party, specific dollar figures for certain potential incremental liabilities, the proportion of SRSA deals won with specific customers, and SRSA's share of certain markets. This content is located in ECF No. 432 at:

3

- ECF Page 2, all text between "B. Regan's Failure to Account for a" and "Renders His";

- ECF Page 5, all text between the words "because the revenue was lost,"" and "Regan similarly failed to employ";

- ECF Page 9, all text between the words "For instance, historically SRSA won" and "but Regan's analysis of lost profits includes";

- ECF Page 9, all text between the words "market share of" and "Ex. 4 ("Initial Hall Report")";

- ECF Page 9, all text between the words "competitors in the market," and "would have won none.";

- ECF Page 10, image that follows the words "54 "lost profits" deals:";

- Page 11, all text; and

- ECF Page 16, all text between the words "could not say that the" and "amount that Regan used".

SRSA also seeks partial restriction of Exhibit 1, which is the Preliminary Expert Report of Greg J. Regan (ECF No. 432-1) that contains sensitive, non-public business strategy, operations, and analyses, as well as financial, asset, and liabilities information. This document includes information related to the monthly breakdown of deals won and closed by SRSA, non-publicly disclosed business partners, disclosure of research and development costs, transaction fees charged in deals, interest rates charged for escrow accounts, information on how escrow account deals are won or obtained, non-public developments and details of SRSA's escrow business, details about SRSA's incremental and variable costs and expenses, non-public deal specific service, terms, and cost details, and information related to lost transactions. This content is located in ECF No. 432-1 at:

- ECF Page 4, all text between the words "c." and "48";

4

- ECF Page 8, image that precedes paragraph 7;

- ECF Page 13, n. 30, all text that follows the words "independent escrow agents.";

- ECF Page 14, all text and image in paragraph 28;

- ECF Page 14, n. 34, all text that follows the words "See also";

- ECF Page 14, n. 35, all text;

- ECF Page 21, all text between the words "Methods for granting access to SRSA's online platform," and "System for creating a personalized";

- ECF Page 38, all text between the words "a. Transaction Fees" and "b. Float Revenue";

- ECF Page 39, paragraphs 102-104, all text ;

- ECF Page 39, n. 186, all text;

- ECF Page 39, n. 191, all text;

- ECF Page 40, paragraph 105, all text;

- ECF Page 40, all text that follows the words "funds remain in escrow?";

- ECF Page 41, all text that precedes the words "SRSA's median period of fifteen months";

- ECF Page 41, n. 197, all text;

- ECF Page 42, paragraphs 116-119, all text;

- ECF Page 42, ns. 199, 200, 202, and 203, all text;

- ECF Page 43, all text that precedes the words "iii. SRSA's Lost Profits";

- ECF Page 46, all text between the words "associated with its payments-and-escrow services" and "iii. PNC's Profits";

- ECF Page 46, n. 216, all text;

- ECF Page 52, all text that follows the words "disgorgement if proven at trial.";

- ECF Page 53, all text that precedes the words "155.";

- ECF Page 53, ns. 246 and 248, all text; and
- ECF Pages 73-75, 77-81, 83, 85, 87, 89, 91, and 92-94, entirety.

SRSA also seeks partial restriction of Exhibit 2, which is the Corrected Supplemental Report of Greg J. Regan (ECF No. 432-2). This document contains sensitive, non-public information related to SRSA's incremental and variable costs and expenses, SRSA revenues, a breakdown of deals won and closed by SRSA, transaction specific lost-profits, disclosure of attributes for specific SRSA deals, and non-public deal specific service, terms, revenues, and cost details. This content is located in ECF No. 432-2 at:

- ECF Page 6, all text between the words "of SRSA's lost revenues." and "The lost profits applicable";
- ECF Page 8, all text between the words "c." and "14."; and
- ECF Pages 43, 44, 46-49, 51, and 119, entirety.

SRSA next seeks the complete restriction of Exhibit 3, which is excerpts from the Transcript for the Deposition of Greg Regan (ECF No. 432-3). The testimony discusses non-public SRSA information related to specific R&D costs, what comprises those R&D costs, timelines of product development, valuation of intangible assets, and customer names.

SRSA further seeks partial restriction of Exhibit 4, which is the Expert Rebuttal Report of David A. Hall (ECF No. 432-4). That document contains sensitive, non-public information related to SRSA's specific R&D costs, what comprises those R&D costs, valuation of intangible assets, information related to SRSA's market share, interest rates charged for escrow accounts, information on how escrow account deals are won or obtained, non-public developments and details of SRSA's escrow business, and information related to SRSA's incremental and variable costs and expenses.

This content is located in ECF No. 432-4 at:

- ECF Page 8, all text between the words "In reaching this conclusion" and "and 2) certain PNC costs";

- ECF Page 9, all text between the words "allocated by PNC to the project" and "PNC's $4.9 million also does not include any legal";

- ECF Pages 10-12, entirety (including all text, tables, images, and footnotes);

- ECF Page 17, all text that follows the words "particularly important given that";

- ECF Page 17, n. 40, all text;

- ECF Pages 21-23, entirety (including all text, tables, images, and footnotes);

- ECF Page 24, all text between the words "also includes assumed product revenue" and "In total, Mr. Regan calculated PNC's alleged unjust enrichment";

- ECF Page 27, all text between the words "escrows included in the calculation." and "After the issuance of Mr. Regan's report,";

- ECF Page 30, all text between the words "and paying agent activities," and "However, such a calculation makes no"; and

- ECF Page 36, entirety.

SRSA further seeks partial restriction of Exhibit 5, which is the Supplemental Expert Rebuttal Report of David A. Hall (ECF No. 432-5). That document contains sensitive, non-public information related to SRSA's interest rates charged for escrow accounts, information on how escrow account deals are won or obtained, developments and details of SRSA's escrow business, terms and details surrounding the non-public acquisition of SRSA by a third-party and payments to shareholders, and SRSA revenues. This content is located in ECF No. 432-5 at:

- ECF Page 3, all text between the words "E. SRSA" and "10"; and

- ECF Pages 11-15, entirety (including all text, tables, images, and footnotes).

SRSA also seeks the complete restriction of Exhibit 7, which is excerpts from the Transcript for the Deposition of Steven Pierson (ECF No. 432-7). The testimony discusses non-public, sensitive SRSA information related to terms and details surrounding the non-public acquisition of SRSA by a third-party and payments to shareholders, and SRSA annual revenues.

Finally, SRSA seeks the complete restriction of Exhibit 10, which is excerpts from the Transcript for the Deposition of Deborah Lynn Wapensky (ECF No. 432-10). The testimony discusses non-public, sensitive SRSA information related to SRSA's specific R&D costs and what comprises those R&D costs.

The information related to SRSA business strategies and operations, and financials, assets, and liabilities—for which SRSA seeks restriction—is confidential, sensitive, and worthy of restriction under federal and Colorado law. Generally, courts "have 'supervisory power over [their] own records and files' and can appropriately deny access to these materials when they might be used 'as sources of business information that might harm a litigant's competitive standing.'" *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013) (quotation omitted). Thus, "Courts have recognized that the potential danger from releasing confidential business information or trade secrets may favor nondisclosure." *Greenway Nutrients, Inc. v. Blackburn*, No. 13-cv-01088-MSK-KMT, 2013 WL 12246891, at *1 (D. Colo. May 20, 2013); *see also SOLIDFX, LLC*, 2012 U.S. Dist. LEXIS 101075, 2012 WL 2917116, at *2 ("Privacy and preservation of trade secrets are among the interests which have been found, under certain circumstances, to overcome the presumption of openness." (citing *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 637 (D. Colo. 2010)); *Genscape, Inc.*, 2019 WL 4242669, at *3. Certainly, under Colorado law, trade secrets may, of course, include "confidential business or

financial information … or other information relating to any business or profession which is secret and of value."  Section 7-74-102(4), C.R.S.; *SBM Site Servs.,* 2011 WL 1375117, at *3.

This Court has held that the exact types of internal non-public and sensitive business information discussed above should be protected from disclosure.  For example, in *Dish Network, L.L.C. v. WNET*, a third-party sought to protect "confidential internal business strategies and commercially sensitive subject matter."  No. 13-cv-00832-PAB-KLM, 2014 WL 1628132, at *3 (D. Colo. Apr. 24, 2014).  The Court held that it had "no difficulty finding that the information sought here meets the generally-accepted definitions of confidential commercial information."  *Id.* at *4 (citing *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc*., No. 1:05-MC-107, 2005 WL 2571943, at *1 (W.D. Mich. Oct. 12, 2005) (holding that market analyses and strategic business plans are confidential commercial information); 9 James Wm. Moore et al., Moore's Federal Practice - Civil § 45.52[1] (3d. ed. 2013) ("Confidential commercial information is production or testimony that would cause 'substantial economic harm' to the competitive position of the entity from whom it is obtained.")).  The Court further reasoned that restriction was warranted because the information about business dealings was "proprietary," the party had maintained its confidentiality, and the information was important to the health of the company's business.  *Dish Network*, 2014 WL 1628132, at *4; s*ee also XY, LLC v. Trans Ova Genetics, LC*, No. 13-CV-00876-WJM-NYW, 2015 WL 7014419, at *3 (D. Colo. Nov. 12, 2015) (restricting confidential business information).

Additionally, and in the context of whether confidential financial information should even be subject to discovery at all, Colorado has recognized a cognizant, protectable interest over confidential financial information, which has been acknowledged and adopted by the federal

courts. *See, e.g.*, *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005); *Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 555 (D. Colo. 2009) (applying Colorado test as a matter of comity for discoverability of financial information); *Bennett v. SSC Palisade Operating Co., LLC*, No. 14-CV-00923-WJM-KLM, 2014 U.S. Dist. LEXIS 105349, 2014 WL 3809768, at *1 (D. Colo. Aug. 1, 2014).

### 2.     Confidential Non-Public Information Related to SRSA's Customers

SRSA seeks to restrict confidential, non-public, and sensitive information related to SRSA customers and customer strategies. SRSA seeks partial or full restriction of the Regan *Daubert* Motion and its Exhibits 1 through 6, which contain this type of sensitive, non-public information. These documents identify numerous SRSA customers by name that are not publicly available, the specific services provided to those customers, amounts paid by or charged to those customers, and lost deals with particular companies. This content is located in the Regan *Daubert* Motion, ECF No. 432, for which SRSA seeks partial restriction, at:

- ECF Page 9, all text between the words "For instance, historically SRSA won" and "but Regan's analysis of lost profits includes";

- ECF Page 9, n. 1, all text between the words "single deal involving" and "Supplemental Regan Report at Schedule 1.1.";

- ECF Page 10, image that follows the words "54 "lost profits" deals:";

- ECF Page 10, all text between the words "component of a deal with" and "Ex. 6 at 12:13-17."; and

- ECF Page 10, all text between the words "including for clients like" and "Regan further assumes,".

This content is further located in ECF No. 432-1, for which SRSA seeks partial restriction, at:

- ECF Page 3, all text between the words "Methodology to Identify SRSA's Lost Transactions" and "vi. Other Identified Lost Transactions";

- ECF Page 20, entirety of table that precedes the words "d. SRSA's Trade Secrets";

- ECF Page 20, ns. 76-83, all text;

- ECF Page 27, all text between the words "customers from SRSA. For example," and "Additional examples will be discussed";

- ECF Page 27, n. 122, all text;

- ECF Page 29, all text that follows the words "responsive to SRSA's damage-related discovery requests.";

- ECF Page 29, ns. 130-132, all text;

- ECF Pages 30-36, entirety (including all text, all footnotes, all images, and all tables);

- ECF Page 37, all text between the words "such as S&P Capital IQ" and "93.";

- ECF Page 37, n. 178, all text;

- ECF Page 38, all text between the words "a. Transaction Fees" and "b. Float Revenue";

- ECF Page 38, n. 182, all text between the words "lower price than SRSA" and "When PNC produces data regarding";

- ECF Page 41, all text between the words "available to calculate lost profits." and "I anticipate reviewing additional"; and

- ECF Pages 57, 59, 61, 63, 65, 69, 73-75, 77-79, and 80-81, entirety.

This content is further located in ECF No. 432-2, for which SRSA seeks partial restriction, at:

- ECF Pages 27, 29, 31, 33, 35, 39, 43, 44, 46-49, 51, 53, 55, 59-84, and 115, entirety.

11

This content is further located throughout ECF No. 432-3, for which SRSA seeks full restriction.

This content is further located in ECF No. 432-4, for which SRSA seeks partial restriction, at:

- ECF Page 18, all text that follows "PNC obtained these deals for reasons other than the alleged misconduct";
- ECF Pages 19-20, entirety (including all text, tables, images, and footnotes);
- ECF Page 25, all text that precedes "B. Net Interest Income";
- ECF Page 33, n. 78, all text; and
- ECF Page 39, 47, 55, 59, and 63, entirety.

This content is further located in ECF No. 432-5, for which SRSA seeks partial restriction, at:

- ECF Page 7, all text between the words "Mr. Regan includes" and "in the Regan Supplemental Report";
- ECF Page 7, all text between the words "each of those eight" and "should be excluded from";
- ECF Page 8, all text that follows the words "my calculation of SRSA's potential lost profits:";
- ECF Page 9, all text between the words "PNC claims SRSA would not have won." and "Excluding the alleged lost profits deals";
- ECF Page 10, entirety (including all text, tables, images, and footnotes);
- ECF Pages 11-15, entirety (including all text, tables, images, and footnotes);
- ECF Page 21, entirety (including all text, tables, images, and footnotes); and
- ECF Pages 24-146, entirety (including all text, tables, images, and footnotes).

This content is further located throughout ECF No. 432-6, for which SRSA seeks full restriction.

The information related to SRSA customers, customer strategies, and lost deals are worthy of restriction, as its public disclosure would directly harm SRSA.  *See Haggard v. Spine*, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009) ("[I]nformation regarding his customers' surgical specialties, business preferences, and contact people" is recognized as trade secret); *see also Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1258 (D. Colo. 2005); *see Johnstech Int'l Corp. v. JF Microtechnology SDN*, 2016 WL 4091388, at *3 (N.D. Cal. Aug. 2, 2016) (granting motion to seal "specific customer names and the percentage of business to those customers").  As supported by the declaration of SRSA's Director of Business Intelligence Ben Lane, SRSA's compilations of customer names and information are maintained secretly by SRSA and would be quite valuable to a competitor in the online payments-and-escrow products industry, who could then use such information to solicit SRSA's customers.  *See* ECF 266 ¶¶ 1-22, 262 at 12-13.  The disclosure of such information would thus be highly damaging to SRSA's competitive standing in the marketplace.

C.  **There Is No Otherwise Practicable Alternative To Restriction That Will Ensure SRSA Does Not Suffer These Injuries**

No practical alternative to restriction exists here because public disclosure of the specific, narrowly tailored information SRSA seeks to seal would destroy its value and cause significant competitive harm to SRSA.  SRSA maintains confidentiality over its trade secrets and other confidential information to avoid the inevitable harm that would result from disclosure.  In such cases, to avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request.  *See*

*Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014).

Further, SRSA's proposed restrictions are narrowly tailored. Recognizing the public value of access to this Court's records, SRSA is willing to file publicly redacted versions of the restricted documents to narrowly tailor its request as much as practicable under the circumstances. *See Slawson Exploration Co. v. Arch Specialty Ins. Co.*, No. 15-cv-03313-KLM, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

There is thus good cause to grant SRSA's Motion, and SRSA respectfully requests that the Court order that ECF Nos. 432, 432-1 through 432-7, and 432-10 be maintained under Level 1 restriction, as described herein.

**Certificate of Conferral Under D.C.COLO.LCivR 7.1(a)**

On July 6, 2021, the parties met and conferred about SRSA's Motion. Defendants do not oppose this Motion to Restrict. In addition, Defendants believe document Nos. 432, 432-1, 432-2, 432-4, and 432-5 should remain under restriction from public viewing as they also contain information Defendants have designated as Confidential in the matter. Defendants also do not waive the right to contest the confidentiality and/or trade secret nature of the materials Plaintiffs seek to restrict in the future, including on the merits of the case, and expressly reserve their right to do so. The parties agree that Defendants' non-opposition to this Motion shall not be used as an admission against Defendants or for any other purpose.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: July 6, 2021 | By: s/ Matthew C. Miller<br>SHERIDAN ROSS P.C.<br>Scott R. Bialecki<br>    *sbialecki@sheridanross.com*<br>Matthew C. Miller<br>    *mmiller@sheridanross.com*<br>1560 Broadway, Suite 1200<br>Denver, Colorado 80202<br>Telephone: 303-863-9700<br>Facsimile: 303-863-0223<br>Email:    *litigation@sheridanross.com*<br><br>Warren A. Braunig<br>    *wbraunig@keker.com*<br>Michelle S. Ybarra<br>    *mybarra@keker.com*<br>Benjamin D. Rothstein<br>    *brothstein@keker.com*<br>Katie Lynn Joyce<br>    *kjoyce@keker.com*<br>Victor H. Yu<br>    *vyu@keker.com*<br>KEKER, VAN NEST & PETERS LLP<br>633 Battery Street<br>San Francisco, CA 94111-1809<br>Telephone: 415-391-5400<br>Facsimile: 415-397-7188<br><br>ATTORNEYS FOR PLAINTIFFS<br>SRS ACQUIOM INC. AND SHAREHOLDER<br>REPRESENTATIVE SERVICES LLC |

**Compliance With Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).