IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

    Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

    Defendants.

**PLAINTIFFS' UNOPPOSED MOTION TO RESTRICT DEFENDANTS' MOTION TO EXCLUDE THE TESTIMONY OF ADAM WOODWORTH AND EXHIBITS THERETO (ECF NOS. 433, 433-1 THROUGH 433-7)**

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") move to restrict information found in Defendants' Motion to Exclude the Testimony of Adam Woodworth and its Exhibits A through G, filed on June 14, 2021 (ECF Nos. 433, 433-1 through 433-7), which were filed as Restricted Level 1.  SRSA now moves to maintain the restricted nature of those filings.

**I.**	**ARGUMENT**

"[W]here documents are used to determine litigants' substantive legal rights," restriction is appropriate when the parties "articulate a real and substantial interest that justifies depriving

the public of access to the records that inform our decision-making process." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted).

To support a motion to restrict public access under D.C.COLO.LCivR 7.2(c), a party must: (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question; and (5) identify the level of restriction sought. Each of these factors is met here.

### A.    Description Of Documents And Restriction Level Sought

SRSA seeks to restrict certain portions of Defendant's Motion to Exclude Testimony of Adam Woodworth (hereinafter "Woodworth *Daubert* Motion"), and Exhibits A through G thereto (ECF Nos. 433, 433-1 through 433-7, respectively). Mr. Woodworth is SRSA's technical expert who opines on Defendant PNC's reliance on SRSA's trade secrets and confidential information to develop its own competing products, and whether they obtained a head start from that use. The information in the Woodworth *Daubert* Motion and its Exhibits is confidential and worthy of sealing because it either discloses sensitive SRSA technical processes, procedures, roadmaps and describes PNC information that incorporates protectable SRSA materials. It further discloses confidential and sensitive SRSA financial information.

SRSA identifies the content within those documents to be restricted, as well as the bases for restriction, within the body of this Motion below. SRSA requests Level 1 restriction for all documents.

### B. SRSA's Interest In The Protection Of Its Confidential Information Outweighs The Presumption Of Public Access

In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998). A court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835; *see* Colo. Rev. Stat. § 7-74-106 ("[A] court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include . . . sealing the records of the action."). Under D.C.COLO.LCivR 7.2, courts in this District have frequently concluded that "the presumption of public access to Court files is outweighed by [a party's] interest in maintaining its business information private." *Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*, 2019 WL 4242669, at *4 (D. Colo. Sept. 5, 2019).

Here, SRSA seeks to restrict several categories of sensitive, non-public information found in the Woodworth *Daubert* Motion and its Exhibits: (1) SRSA product and technical information; and (2) specifics about SRSA's financials, assets, liabilities, and business and operations strategies. Restriction over these categories of information is warranted here lest the Court's "files might serve as a source of business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011).

#### 1. Information Related to Internal and Confidential SRSA Product Development and Technical Information

First, SRSA seeks partial restriction of the Woodworth *Daubert* Motion (ECF No. 433) and its Exhibits (ECF Nos. 433-1 through 433-7) for disclosure of sensitive, non-public product

development and technical information related to its suite of online products. Specifically, the Woodworth *Daubert* Motion contains non-public, detailed accounts of the Clearinghouse product timeline. This content is located in ECF No. 433 at: [1]

- ECF Page 17, between the words "*Id.* at 112:12-19." and "Ex. C at 68:17-69:7.";
- ECF Page 18, between the words "would last 6-9 months. Report ¶114.¶" and "I would have expected PNC";
- ECF Page 18, between the words "product to market." Report ¶114.¶" and "Ex. G."; and
- ECF Page 18, between the words "viable version of Clearinghouse –" and "– demonstrates that Woodworth's".

SRSA also seeks partial restriction of Exhibit A to the Woodworth *Daubert* Motion, which is the Preliminary Expert Report of Adam Woodworth (ECF No. 433-1). That report contains SRSA non-public, sensitive product development details, disclosure of customer needs considered in product development procedures, market and business strategies considered in product development, and other product development details and timelines, with specifics on factors that contributed to the development timeline. This content is located in ECF No. 433-1 at:

- ECF Page 20, between the words "in building Clearinghouse.[4]" and "49. At its core";
- ECF Page 22, between the words "refining its payments spreadsheet," and "SRSA's spreadsheet also includes";
- ECF Page 22, from the words "those other than shareholders.[12]" and to the end of page;

---

[1] As stated below in Section C, SRSA will file publicly available versions with the identified portions redacted if ordered to do so.

4

- ECF Page 23, image after the words "*Example of 2017 Payments Workflow in ACP*";

- ECF Page 23, between the words "continual research and development.[14]" and "54. Like every software company";

- ECF Page 24, image after the words "*January 8, 2017 Product Roadmap For Year 2018*";

- ECF Pages 24 to 25, from the beginning of paragraph 55 to the words "After a year of development work,"; and

- ECF Pages 25 to 26, all of paragraphs 56, 57, and 58.

The Preliminary Expert Report of Adam Woodworth (ECF No. 433-1) further contains Defendant PNC's development information that shows and discloses the use of SRSA technical processes, product development details, product roadmap information, and technical working details of products as part of the misappropriation of SRSA trade secrets. This content is located in ECF No. 433-1 at:

- ECF Pages 34 to 35, all of paragraph 78 after the words "shortly after joining the company.";

- ECF Page 35, all of paragraph 79 after the words "before a "release of funds."[56]";

- ECF Page 37, between the words "version Kelly emailed herself;" and "and the metadata reflects";

- ECF Pages 38 to 39, between the words "with its back-end system.[75]" and "Not surprisingly, the "canonical" PNC";

- ECF Page 40, between the words "an entirely new spreadsheet." and "As discussed above, PNC";

- ECF Page 40, between the words "that would show buyers:" and "Tsarnas explained the business";

- ECF Page 41, between the words "an email that same day:" and "91. Documents produced by PNC";

- ECF Page 41 to 42, both images after the words "exercise[85] are excerpted below:";

- ECF Page 46, between the words "ancillary or complementary products." and "100. Kelly and Tsarnas significantly";

- ECF Page 47, between the words "Tsarnas gave precise insight into" and "102. The product-strategy";

- ECF Page 48, between the words "it would be advisable or profitable" and "Without the input of Kelly and Tsarnas"; and

- ECF Page 54, between the words "forming the opinions in this report," and "I can appreciate that, although".

SRSA also seeks partial restriction of Exhibit B to the Woodworth *Daubert* Motion, which is the Transcript for the Deposition of Adam Woodworth (ECF No. 433-2). This testimony refers to a third-party technical development document produced for SRSA and gives details of product development timelines. This content is located in ECF No. 433-2 at:

- Transcript 110:8-12; 111:3-12; and 113:8-13

SRSA further seeks partial restriction of Woodworth *Daubert* Motion Exhibit C, which is the Transcript for the Deposition of Greg Regan (ECF No. 433-3). This testimony gives detailed accounts of the Clearinghouse product timeline. This content is located in ECF No. 433-3 at:

- Transcript 68:18-69:18

SRSA also seeks full restriction of Exhibits D, E, F, and G to the Woodworth *Daubert* Motion (ECF Nos. 433-4, 433-5, 433-6 and 433-7). These documents are the user flow and requirements for SRS Clearinghouse Product, the statement of work for the user flow and requirements, a copy of the Clearinghouse Concept Prototype v1, and an internal release statement with confidential notations for the Clearinghouse product. These documents are highly sensitive and proprietary, and disclose specific technical product architecture, product

6

design definitions, and work flows for the Clearinghouse product, as well as internal business analyses and discussions.

The public disclosure of "highly sensitive information regarding [Plaintiff's] product architecture and development . . . could cause harm to [Plaintiff] if the information were to become known to a competitor." *Delphix Corp. v. Actifio, Inc.*, No. 13-cv-04613-BLF, 2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014). Such information should be sealed from public disclosure when doing so would cause a competitive advantage to others. *Verde Envtl. Techs., Inc. v. C2R Glob. Mfg. (In re C2R Glob. Mfg.)*, Nos. 18-30182-beh, 20-02028-beh, 2020 Bankr. LEXIS 3452, at *8 (Bankr. E.D. Wis. Dec. 10, 2020). Product development and technical information is the type of content that deserves protection from disclosure when it would give an unfair advantage in developing rival products. *In re Koninklijke Philips Patent Litig.*, No. 18-cv-01885-HSG, 2020 U.S. Dist. LEXIS 64457, at *10 (N.D. Cal. Apr. 13, 2020)(citing *In re Elec. Arts, Inc.*, 298 F. App'x 568, 569 (9th Cir. 2008) (ordering sealing where documents could be used "'as sources of business information that might harm a litigant's competitive standing'")); *see also Arista Networks, Inc. v. Cisco Sys.*, 2017 U.S. Dist. LEXIS 216345, 2017 WL 6043303, at *3-4 (N.D. Cal. Nov. 28, 2017) (finding that disclosure of internal assessments of products and development strategies would result in competitive harm and thus that the information is sealable).

And here, such technical information took years of research and development for SRSA to develop, is not disclosed publicly or only disclosed with appropriate confidentiality restrictions, and is worthy of trade-secret status. *See* ECF No. 256-10 ¶¶ 7-14, 21-65; and ECF No. 262 at ¶¶ 7-10, 19-26. A competitor armed with such information would gain significant

7

insight into how to mimic SRSA's industry-leading products, and cause SRSA competitive harm in the marketplace.  *See* ECF No. 256-10 at ¶¶ 7-14, 21-65.

### 2. Information Related to SRSA's Confidential Financials

Finally, SRSA seeks to restrict confidential, non-public financial information.  In this regard, SRSA seeks partial restriction of portions of Exhibit C to the Woodworth *Daubert* Motion, which is excerpts from the Transcript for the Deposition of Greg Regan (ECF No. 433-3).  The testimony of Mr. Regan discloses assessed costs and values associated with the development and final product of Clearinghouse.  This content is located in ECF No. 433-3 at:

- Transcript 66:1-67:10

The information related to SRSA financials and assets, and liabilities—for which SRSA seeks restriction—is confidential, sensitive, and worthy of restriction under federal and Colorado law.  Generally, courts "have 'supervisory power over [their] own records and files' and can appropriately deny access to these materials when they might be used 'as sources of business information that might harm a litigant's competitive standing.'" *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013) (quotation omitted).  Thus, "Courts have recognized that the potential danger from releasing confidential business information or trade secrets may favor nondisclosure." *Greenway Nutrients, Inc. v. Blackburn*, No. 13-cv-01088-MSK-KMT, 2013 WL 12246891, at *1 (D. Colo. May 20, 2013); *see also SOLIDFX, LLC*, 2012 U.S. Dist. LEXIS 101075, 2012 WL 2917116, at *2 ("Privacy and preservation of trade secrets are among the interests which have been found, under certain circumstances, to overcome the presumption of openness." (citing *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 637 (D. Colo. 2010)); *Genscape, Inc.*, 2019 WL 4242669, at *3.  Certainly, under Colorado law, trade secrets

8

may, of course, include "confidential business or financial information … or other information relating to any business or profession which is secret and of value." Section 7-74-102(4), C.R.S.; *SBM Site Servs.,* 2011 WL 1375117, at *3.

This Court has held that the exact types of internal non-public and sensitive business information discussed above should be protected from disclosure. For example, in *Dish Network, L.L.C. v. WNET*, a third-party sought to protect "confidential internal business strategies and commercially sensitive subject matter." No. 13-cv-00832-PAB-KLM, 2014 WL 1628132, at *3 (D. Colo. Apr. 24, 2014). The Court held that it had "no difficulty finding that the information sought here meets the generally-accepted definitions of confidential commercial information." *Id.* at *4 (citing *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc.*, No. 1:05-MC-107, 2005 WL 2571943, at *1 (W.D. Mich. Oct. 12, 2005) (holding that market analyses and strategic business plans are confidential commercial information); 9 James Wm. Moore et al., Moore's Federal Practice - Civil § 45.52[1] (3d. ed. 2013) ("Confidential commercial information is production or testimony that would cause 'substantial economic harm' to the competitive position of the entity from whom it is obtained.")). The Court further reasoned that restriction was warranted because the information about business dealings was "proprietary," the party had maintained its confidentiality, and the information was important to the health of the company's business. *Dish Network*, 2014 WL 1628132, at *4; s*ee also XY, LLC v. Trans Ova Genetics, LC*, No. 13-CV-00876-WJM-NYW, 2015 WL 7014419, at *3 (D. Colo. Nov. 12, 2015) (restricting confidential business information).

Additionally, and in the context of whether confidential financial information should even subject to discovery at all, Colorado has recognized a cognizant, protectable interest over

9

confidential financial information, which has been acknowledged and adopted by the federal courts.  *See, e.g.*, *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005); *Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 555 (D. Colo. 2009) (applying Colorado test as a matter of comity for discoverability of financial information); *Bennett v. SSC Palisade Operating Co., LLC*, No. 14-CV-00923-WJM-KLM, 2014 U.S. Dist. LEXIS 105349, 2014 WL 3809768, at *1 (D. Colo. Aug. 1, 2014).

> **C.     There Is No Otherwise Practicable Alternative To Restriction That Will Ensure SRSA Does Not Suffer These Injuries**

No practical alternative to restriction exists here because public disclosure of the specific, narrowly tailored information SRSA seeks to seal would destroy its value and cause significant competitive harm to SRSA.  SRSA maintains confidentiality over its trade secrets and other confidential information to avoid the inevitable harm that would result from disclosure.  In such cases, to avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request.  *See Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014).

Further, SRSA's proposed restrictions are narrowly tailored.  Recognizing the public value of access to this Court's records, SRSA is willing to file publicly redacted versions of the restricted documents to narrowly tailor its request as much as practicable under the circumstances.  *See Slawson Exploration Co. v. Arch Specialty Ins. Co.*, No. 15-cv-03313-KLM, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

There is thus good cause to grant SRSA's Motion, and SRSA respectfully requests that the Court order that ECF Nos. 433, and 433-1 through 433-7 be maintained under Level 1 restriction, as described herein.

**Certificate of Conferral Under D.C.COLO.LCivR 7.1(a)**

On July 6, 2021, the parties met and conferred about SRSA's Motion. Defendants do not oppose this Motion to Restrict. In addition, Defendants believe document no. 433-1 should remain under restriction from public viewing as it also contains information Defendants have designated as Confidential in the matter. However, Defendants do not waive the right to contest the confidentiality and/or trade secret nature of the materials Plaintiffs seek to restrict in the future, including on the merits of the case, and expressly reserve their right to do so. The parties agree that Defendants' non-opposition to this Motion shall not be used as an admission against Defendants or for any other purpose.

|  |  |
|---|---|
|  | Respectfully submitted, |
| Dated: July 6, 2021 | By: s/ Matthew C. Miller |
|  | SHERIDAN ROSS P.C. |
|  | Scott R. Bialecki |
|  | *sbialecki@sheridanross.com* |
|  | Matthew C. Miller |
|  | *mmiller@sheridanross.com* |
|  | 1560 Broadway, Suite 1200 |
|  | Denver, Colorado 80202 |
|  | Telephone: 303-863-9700 |
|  | Facsimile: 303-863-0223 |
|  | Email: *litigation@sheridanross.com* |
|  |  |
|  | Warren A. Braunig |
|  | *wbraunig@keker.com* |
|  | Michelle S. Ybarra |
|  | *mybarra@keker.com* |
|  | Benjamin D. Rothstein |
|  | *brothstein@keker.com* |
|  | Katie Lynn Joyce |
|  | *kjoyce@keker.com* |
|  | Victor H. Yu |
|  | *vyu@keker.com* |
|  | KEKER, VAN NEST & PETERS LLP |
|  | 633 Battery Street |
|  | San Francisco, CA 94111-1809 |
|  | Telephone: 415-391-5400 |
|  | Facsimile: 415-397-7188 |
|  |  |
|  | ATTORNEYS FOR PLAINTIFFS |
|  | SRS ACQUIOM INC. AND SHAREHOLDER |
|  | REPRESENTATIVE SERVICES LLC |

**Compliance With Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).