**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

**PLAINTIFFS' UNOPPOSED MOTION TO RESTRICT PLAINTIFFS' MOTION TO
EXCLUDE EXPERT OPINIONS, REPORT, AND TESTIMONY OF RICHARD
HARROCH, AND EXHIBITS TO THE DECLARATION OF WARREN BRAUNIG IN
SUPPORT THEREOF (ECF NOS. 434, 435-1, 435-2, AND 435-3)**

---

      Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively,

"SRSA") move to restrict information found in its Motion to Exclude Expert Opinions, Report,

and Testimony of Richard Harroch, and Exhibits A, B, and C to the Declaration of Warren

Braunig in support thereof, filed on June 14, 2021 (ECF Nos. 434, 435-1, 435-2, and 435-3),

which were filed as Restricted Level 1.  SRSA now moves to maintain the restricted nature of

those filings.

I.     <u>**ARGUMENT**</u>

      "[W]here documents are used to determine litigants' substantive legal rights," restriction

is appropriate when the parties "articulate a real and substantial interest that justifies depriving

the public of access to the records that inform our decision-making process." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted).

To support a motion to restrict public access under D.C.COLO.LCivR 7.2(c), a party must: (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question; and (5) identify the level of restriction sought. Each of these factors is met here.

### A.   Description Of Documents And Restriction Level Sought

SRSA seeks to restrict certain portions of its Motion to Exclude Expert Opinions, Report, and Testimony of Richard Harroch (hereinafter "Harroch *Daubert* Motion"), and Exhibits A, B, and C thereto (ECF Nos. 434, 435-1, 435-2, and 435-3, respectively). SRSA identifies the content within those documents to be restricted, as well as the bases for restriction, within the body of this Motion below. SRSA requests Level 1 restriction for all documents.

### B.   SRSA's Interest In The Protection Of Its Confidential Information Outweighs The Presumption Of Public Access

In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998). A court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835; *see* Colo. Rev. Stat. § 7-74-106 ("[A] court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include . . . sealing the

records of the action.").  Under D.C.COLO.LCivR 7.2, courts in this District have frequently concluded that "the presumption of public access to Court files is outweighed by [a party's] interest in maintaining its business information private."  *Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*, 2019 WL 4242669, at *4 (D. Colo. Sept. 5, 2019).

Here, SRSA seeks to restrict several categories of sensitive, non-public information found in the Harroch *Daubert* Motion and Exhibits: (1) SRSA product and technical information; (2) specifics about SRSA's financials, assets, liabilities, and business and operations strategies; and (3) information regarding SRSA customers.  Restriction over these categories of information is warranted here lest the Court's "files might serve as a source of business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011).

### 1.    Information Related to Internal and Confidential SRSA Product and Technical Information

First, SRSA seeks partial restriction of the Harroch *Daubert* Motion (ECF No. 434) for disclosure of sensitive, non-public product and technical information related to considerations of client and market factors during its development, its affect on the relevant market, and technical functionality.[1]  This content is located in ECF No. 434 at:

- ECF Page 6, between the words "SRSA's Deal Dashboard" and "SRSA's pricing strategies";

- ECF Page 6, between the words "selection and organization of fields" and "was a years-long iterative"; and

---

[1] As stated below in Section C, SRSA will file publicly available versions with the identified portions redacted if ordered to do so.

- ECF Page 16, between the words "SRSA spreadsheet's innovations" and "174:18-175:13".

The public disclosure of "highly sensitive information regarding [Plaintiff's] product architecture and development . . . could cause harm to [Plaintiff] if the information were to become known to a competitor." *Delphix Corp. v. Actifio, Inc.*, No. 13-cv-04613-BLF, 2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014). And here, such technical information took years of research and development for SRSA to develop, is not disclosed publicly or only disclosed with appropriate confidentiality restrictions, and is worthy of trade-secret status. *See* ECF No. 256-10, ¶¶ 7-14, 21-65; 262 at 7-10, 19-26. A competitor armed with such information would gain significant insight into how to mimic SRSA's industry-leading products, and cause SRSA competitive harm in the marketplace. *See id.* at ¶¶ 7-14, 21-65.

### 2.  Information Related to SRSA's Confidential Business Analyses, Operations and Strategies, and Financials, Assets, and Liabilities

Next, SRSA seeks to restrict confidential, non-public, and sensitive information related to SRSA business analyses, operations and strategies, and finances, assets, and liabilities.

SRSA seeks partial restriction of portions of Exhibits A and Exhibit B to the Harroch *Daubert* Motion, which are the Expert Report of Richard Harroch and the Supplemental Expert Report of Richard Harroch (ECF Nos. 435-1 and 435-2, respectively). The Expert Report of Richard Harroch quotes from a confidential SRSA agreement with a SRSA customer revealing confidential, non-public terms of the agreement. The Supplemental Expert Report of Richard Harroch contains quotes that contain risk factors discussed associated with the acquisition of SRSA by an investor, discussions of the transaction overview containing market and customer analyses, contents of an SRSA strategic planning meeting, and discussions of SRSA's product

competitive landscape summary, among other confidential strategic business information, and

were generated solely for internal use relating to a private acquisition.  The document also

contains excerpts of a deposition of an SRSA corporate representatives discussing when and why

SRSA may lose bids.  This content is located in ECF No. 435-1 at:

- ECF Page 15, from the words "Payments Administration Agreement:" to the words "*Letter of Transmittal*" on ECF Page 16

This content is also located in ECF No. 435-2 at:

- ECF Page 10, from the words "acquiring SRSA, including" to the words "6. From LMP0000964" on ECF Page 11;

- ECF Page 11, between the words "5 above. (LMP0000970)" and "(LMP0000970) o Repeats some";

- ECF Page 11, between the words "item 7 below and:" and "(LMP0000976)";

- ECF Page 11, from the words "its Acquisition of SRSA" to the end of page;

- ECF Page 12, from the words "to in my deposition):" to the end of page;

- ECF Page 13, between the words "(SRSAvPKT00054344):" and "Competitors listed were";

- ECF Page 13, from the words "lose an escrow deal:" to the end of page;

- ECF Page 14, between the words "Q ( BY MR BENNETT)" and "(P. 43)";

- ECF Page 14, between the words "Report—September 2018:" and "(LMP0001395)"; and

- ECF Page 14, from the words "factors related to SRSA:" to the end of page.

SRSA also seeks partial restriction of portions the Supplemental Expert Report of

Richard Harroch (ECF No. 435-2) that contain sensitive, non-public financial, asset, and

liabilities information. The document quotes from SRSA and investor internal documents that

reveal valuations of intangible SRSA assets and valuations of SRSA as a whole, and other information related to the non-public terms and analysis of a private acquisition.

This content is located in ECF No. 435-2 at:

- ECF Page 10, between the words "November 8, 2018" and "(SRSAvPKT00075525)"; and

- ECF Page 10, between the words "3Q19 Valuation" and "(LMP0000646)".

The information related to SRSA business strategies and operations, and financials, assets, and liabilities—for which SRSA seeks restriction—is confidential, sensitive, and worthy of restriction under federal and Colorado law.  Generally, courts "have 'supervisory power over [their] own records and files' and can appropriately deny access to these materials when they might be used 'as sources of business information that might harm a litigant's competitive standing.'"  *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013) (quotation omitted).  Thus, "Courts have recognized that the potential danger from releasing confidential business information or trade secrets may favor nondisclosure." *Greenway Nutrients, Inc. v. Blackburn*, No. 13-cv-01088-MSK-KMT, 2013 WL 12246891, at *1 (D. Colo. May 20, 2013); *see also SOLIDFX, LLC*, 2012 U.S. Dist. LEXIS 101075, 2012 WL 2917116, at *2 ("Privacy and preservation of trade secrets are among the interests which have been found, under certain circumstances, to overcome the presumption of openness." (citing *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 637 (D. Colo. 2010)); *Genscape, Inc.*, 2019 WL 4242669, at *3. Certainly, under Colorado law, trade secrets may, of course, include "confidential business or financial information … or other information relating to any business or profession which is secret and of value."  Section 7-74-102(4), C.R.S.; *SBM Site Servs.,* 2011 WL 1375117, at *3.

This Court has held that the exact types of internal non-public and sensitive business information discussed above should be protected from disclosure.  For example, in *Dish Network, L.L.C. v. WNET*, a third-party sought to protect "confidential internal business strategies and commercially sensitive subject matter." No. 13-cv-00832-PAB-KLM, 2014 WL 1628132, at *3 (D. Colo. Apr. 24, 2014).  The Court held that it had "no difficulty finding that the information sought here meets the generally-accepted definitions of confidential commercial information."  *Id.* at *4 (citing *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc*., No. 1:05-MC-107, 2005 WL 2571943, at *1 (W.D. Mich. Oct. 12, 2005) (holding that market analyses and strategic business plans are confidential commercial information); 9 James Wm. Moore et al., Moore's Federal Practice - Civil § 45.52[1] (3d. ed. 2013) ("Confidential commercial information is production or testimony that would cause 'substantial economic harm' to the competitive position of the entity from whom it is obtained.")).  The Court further reasoned that restriction was warranted because the information about business dealings was "proprietary," the party had maintained its confidentiality, and the information was important to the health of the company's business.  *Dish Network*, 2014 WL 1628132, at *4; s*ee also XY, LLC v. Trans Ova Genetics, LC*, No. 13-CV-00876-WJM-NYW, 2015 WL 7014419, at *3 (D. Colo. Nov. 12, 2015) (restricting confidential business information).

Additionally, and in the context of whether confidential financial information should even be subject to discovery at all, Colorado has recognized a cognizant, protectable interest over confidential financial information, which has been acknowledged and adopted by the federal courts. *See, e.g*., *Alcon v. Spicer*, 113 P.3d 735 (Colo. 2005); *Bonanno v. Quizno's Franchise Co., LLC*, 255 F.R.D. 550, 555 (D. Colo. 2009) (applying Colorado test as a matter of comity for

discoverability of financial information); *Bennett v. SSC Palisade Operating Co., LLC*, No. 14-CV-00923-WJM-KLM, 2014 U.S. Dist. LEXIS 105349, 2014 WL 3809768, at *1 (D. Colo. Aug. 1, 2014).

    **3.**    **Confidential Non-Public Information Related to SRSA's Customers**

Finally, SRSA seeks to restrict confidential, non-public, and sensitive information related to SRSA customers and customer strategies.

SRSA seeks partial restriction of portions of Exhibits A and Exhibit C to the Harroch *Daubert* Motion, which are the Expert Report of Richard Harroch and Excerpts from the Transcript for the Deposition of Richard Harroch (ECF Nos. 435-1 and 435-3, respectively). The Expert Report of Richard Harroch specifically identifies numerous SRSA customers by name that are not publicly available, the specific services provided to those customers, and lost deals with particular companies.  This content is located in ECF No. 435-1 at:

- ECF Page 9, from the words "paying agent services to" to the words "protecting information from";

- ECF Page 11, from the words "served as escrow agent for" to the words "These are two of the deals that";

- ECF Page 11, from the words "[it] is unlikely that" to the words "would have moved its business";

- ECF Page 11, from the words "Example Transaction –" to the words "47. As an example of";

- ECF Page 11, from the words "I understand that the" to the words "transaction came to PNC";

- ECF Page 11, from the words "have been chosen for the" to the words "deal, given its lack";

- ECF Page 13, from the words "using Google to search for" to the words "in house counsel transactions";

- ECF Page 13, from the words "the PitchBook profile for" to the words "Exhibit 6.";

- ECF Page 14, from the words "Buyers (such as" to the words "The date of the M&A event"; and

- The entirety of Exhibit 6 to ECF No. 435-1, at ECF Pages 45 to 72.

This content is also located in ECF No. 435-3 at:

- Transcript page 49:10-24;

- Transcript pages 148:1-149:25;

- Transcript page 199:10;

- Transcript page 214:16;

- Transcript page 215:20-23; and

- Transcript page 217:10-11.

The information related to SRSA customers, customer strategies, and lost deals are worthy of restriction, as its public disclosure would directly harm SRSA. *See Haggard v. Spine*, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009) ("[I]nformation regarding his customers' surgical specialties, business preferences, and contact people" is recognized as trade secret); *see also Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1258 (D. Colo. 2005); *see Johnstech Int'l Corp. v. JF Microtechnology SDN*, 2016 WL 4091388, at *3 (N.D. Cal. Aug. 2, 2016) (granting motion to seal "specific customer names and the percentage of business to those customers"). As supported by the declaration of SRSA's Director of Business Intelligence Ben Lane, SRSA's compilations of customer names and information are maintained secretly by SRSA and would be quite valuable to a competitor in the online payments-and-escrow products industry, who could then use such information to solicit SRSA's customers. *See* ECF 266 ¶¶ 1-22, 262 at 12-13. The

disclosure of such information would thus be highly damaging to SRSA's competitive standing in the marketplace.

### C.   There Is No Otherwise Practicable Alternative To Restriction That Will Ensure SRSA Does Not Suffer These Injuries

No practical alternative to restriction exists here because public disclosure of the specific, narrowly tailored information SRSA seeks to seal would destroy its value and cause significant competitive harm to SRSA.  SRSA maintains confidentiality over its trade secrets and other confidential information to avoid the inevitable harm that would result from disclosure.  In such cases, to avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request.  *See Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014).

Further, SRSA's proposed restrictions are narrowly tailored.  Recognizing the public value of access to this Court's records, SRSA is willing to file publicly redacted versions of the restricted documents to narrowly tailor its request as much as practicable under the circumstances.  *See Slawson Exploration Co. v. Arch Specialty Ins. Co.*, No. 15-cv-03313-KLM, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

There is thus good cause to grant SRSA's Motion, and SRSA respectfully requests that the Court order that ECF Nos. 434, 435-1, 435-2, and 435-3 be maintained under Level 1 restriction, as described herein.

**Certificate of Conferral Under D.C.COLO.LCivR 7.1(a)**

On July 6, 2021, the parties met and conferred about SRSA's Motion.  Defendants do not oppose this Motion to Restrict.  However, Defendants do not waive the right to contest the confidentiality and/or trade secret nature of the materials Plaintiffs seek to restrict in the future, including on the merits of the case, and expressly reserve their right to do so.  The parties agree that Defendants' non-opposition to this Motion shall not be used as an admission against Defendants or for any other purpose.

Respectfully submitted,

Dated:  July 6, 2021,                   By:  s/ Matthew C. Miller
                                             SHERIDAN ROSS P.C.
                                             Scott R. Bialecki
                                                  *sbialecki@sheridanross.com*
                                             Matthew C. Miller
                                                  *mmiller@sheridanross.com*
                                             1560 Broadway, Suite 1200
                                             Denver, Colorado 80202
                                             Telephone:  303-863-9700
                                             Facsimile:  303-863-0223
                                             Email:      *litigation@sheridanross.com*

                                             Warren A. Braunig
                                                  *wbraunig@keker.com*
                                             Michelle S. Ybarra
                                                  *mybarra@keker.com*
                                             Benjamin D. Rothstein
                                                  *brothstein@keker.com*
                                             Katie Lynn Joyce
                                                  *kjoyce@keker.com*
                                             Victor H. Yu
                                                  *vyu@keker.com*
                                             KEKER, VAN NEST & PETERS LLP
                                             633 Battery Street
                                             San Francisco, CA 94111-1809
                                             Telephone: 415-391-5400
                                             Facsimile: 415-397-7188

                                             ATTORNEYS FOR PLAINTIFFS
                                             SRS ACQUIOM INC. AND SHAREHOLDER
                                             REPRESENTATIVE SERVICES LLC

## **Compliance With Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set

forth in Judge Domenico's Practice Standard III(A)(1).