# EXHIBIT 8

FILED LEVEL 1 RESTRICTED

# SRS ACQUIOM INC

# VS.

# PNC FINANCIAL SERVICES GROUP

<u>Deposition</u>

# PAUL KOENIG

11/15/2019

_____

# AB Court Reporting & Video

*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

**FILED LEVEL 1 RESTRICTED**

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 25

1  Wilmington Trust was describing its spreadsheets to
2  be in its lawsuit, again without ever having seen
3  their spreadsheets.
4      Q    Do you now have a different understanding
5  as to the substance of the spreadsheets that
6  Wilmington Trust accused Mr. Nelson of bringing with
7  him to SRS?
8           MS. YBARRA:  Objection, outside the scope.
9      A    Do I -- I still have not seen the
10 spreadsheets, so my understanding is the same as what
11 it was based on their description.
12     Q    (BY MR. ROBBINS)  So if it was just a
13 customer list but all it set forth was the name of a
14 customer, you would agree that's not a trade secret,
15 correct?
16          MS. YBARRA:  Objection, incomplete
17 hypothetical, and it calls for a legal conclusion.
18     A    That depends.  So compilations, as you
19 know, can be a trade secret depending on what that
20 compilation is.  So I would need to know more about
21 what that customer list is.
22     Q    (BY MR. ROBBINS)  I just told you, the
23 customer list is the name of customers, nothing else.
24          Is that a compilation of trade secret, in
25 your view?

Page 26

1           MS. YBARRA:  Objection, calls for a legal
2  conclusion, incomplete hypothetical.
3      A    I don't know without the facts and
4  circumstances related to it.  If it's a list of three
5  customers, it may not be.  If it's a compilation, I
6  don't know when it becomes a trade secret.
7      Q    (BY MR. ROBBINS)  So M&A attorneys,
8  they're easily found through simple Internet
9  searches, is your declaration in Mr. Koenig's -- in
10 Mr. Nelson's case, correct?
11          MS. YBARRA:  Objection, mischaracterizes
12 the document.
13     A    So the document says, M&A attorneys and
14 all their contact information can be easily found
15 through simple Internet searches.
16     Q    (BY MR. ROBBINS)  And you stand by that
17 test -- that statement, correct?
18     A    I do.
19     Q    But yet you believe if somebody simply
20 takes that Internet search and plops it into a
21 spreadsheet, that becomes a trade secret?
22          MS. YBARRA:  Objection, vague, calls for a
23 legal conclusion, incomplete hypothetical.
24     A    That's not what I said.
25     Q    (BY MR. ROBBINS)  Okay.  So what else

Page 27

1  would someone have to add to transform the results of
2  simple Internet searches into a trade secret list, in
3  your view?
4           MS. YBARRA:  Objection, vague, incomplete
5  hypothetical, calls for a legal conclusion.
6      A    They could either contain additional
7  information or be a significant compilation that it
8  becomes a trade secret.
9      Q    (BY MR. ROBBINS)  Now, you've never seen
10 the spreadsheets that Mr. Nelson was accused of
11 taking, correct?
12     A    That's correct.
13     Q    So you have no idea how significant a
14 compilation they are, right?
15     A    As I said on this, based on the
16 description, my understanding is that we would not
17 see value, but I was basing it on the description.
18     Q    Now, Mr. Nelson was also alleged to have
19 taken a list of all of Wilmington Trust's deals,
20 correct?
21     A    I don't recall if that was specifically
22 what was alleged.
23     Q    I'm sorry, all of his deals at Wilmington
24 Trust?
25     A    Again, I don't recall specifically if it

Page 28

1  was alleged there was a list of all his deals, some
2  of his deals.  I don't remember specifically what
3  they alleged.
4      Q    Okay.  So if Ms. Kelly brought a list of
5  some of her deals from SRS to PNC, is that okay?
6           MS. YBARRA:  Objection, vague, incomplete
7  hypothetical, calls for a legal conclusion, I think.
8      A    I don't know specifically what all
9  Mr. Nelson's obligations were to Wilmington Trust and
10 how that may have factored in.
11          I know that Ms. Kelly specifically had
12 obligations under a contractual agreement not to
13 retain any information or materials whatsoever, and
14 to keep confidential everything -- all information
15 she had to us.
16          MR. ROBBINS:  Motion to strike.  That's
17 definitely not what the confidentiality agreement
18 says.
19     Q    (BY MR. ROBBINS)  Now, you also state in
20 this declaration, which, again, this is subject to
21 the penalty of perjury, correct?
22     A    I'm sorry, what is, the declaration?
23     Q    Yes.
24     A    I assume it is, yes.
25     Q    As is the complaint, you're also subject

FILED LEVEL 1 RESTRICTED

HIGHLY CONFIDENTIAL - ATTORNEYS EYES ONLY

Page 29

1  to the penalty of perjury, correct?
2  A   Yes.
3  Q   It says, we already generally know what
4  our competitors are charging for fees.  It is no
5  secret.
6      Correct?
7  A   That is what it says.
8  Q   And so is it your understanding that while
9  SRS generally knows what its competitors charge for
10 fees, competitors don't know what SRS charges for
11 fees?
12 A   That's not what I'm saying with this.
13 Q   Okay.  So why is -- why -- okay.  Well,
14 then, tell me, what are you saying with this?
15 A   That general information about what
16 competitors may charge, that's what it says in this,
17 is no secret.  But going beyond that and knowing all
18 of our pricing information, what we priced on
19 specific deals with specific customers, when we might
20 vary from those, all the factors that could go into a
21 broader pricing strategy is not just a general
22 knowledge of what competitors charge in the abstract.
23 Q   Could you please turn to Page 15 of the
24 trade secret disclosure?
25 A   The -- hang on.  That's -- which one is

Page 30

1  that?
2      MS. YBARRA:  That's Exhibit 2.
3  A   Okay.  Okay.  Got it.
4  Q   (BY MR. ROBBINS)  Am I reading correct
5  where it says, that first line of A, SRS's overall
6  pricing strategy comprises SRS trade secret price
7  information documents including SRS's baseline prices
8  and fees.
9      Am I understanding now correctly that it's
10 not -- those are not individual trade secrets, but
11 it's the compilation of 1 through 4 that SRS contends
12 is its trade secret?
13     MS. YBARRA:  Objection, calls for a legal
14 conclusion.
15 A   The compilation certainly is a trade
16 secret.  Whether -- to the extent the various
17 elements are, I'm not a sufficient intellectual
18 property expert to break that out.
19 Q   (BY MR. ROBBINS)  I assure you, I am not
20 asking for your opinion as to whether they are trade
21 secrets.  I'm simply asking whether SRS contends that
22 SRS's baseline prices and fees alone constitutes a
23 trade secret.
24     MS. YBARRA:  Same objection.
25 A   So my read of what we're contending in

Page 31

1  this document is that our overall pricing strategy,
2  which includes these components, is a trade secret.
3  Q   (BY MR. ROBBINS)  And so the individual
4  components are not, is that --
5  A   I -- I do not have sufficient knowledge --
6      MS. YBARRA:  Same objection.
7  A   -- either way.
8  Q   (BY MR. ROBBINS)  Well, if you're the
9  designee on the reasonable measures to protect the
10 trade secrets but can't actually identify what are
11 the trade secrets that SRS is alleging, who would be
12 able to tell me what are the actual trade secrets at
13 issue in this case?
14     MS. YBARRA:  Objection, argumentative.
15 The witness has identified the trade secrets at
16 issue.
17 Q   (BY MR. ROBBINS)  Is baseline pricing a
18 trade secret, sir?
19     MS. YBARRA:  Objection, calls for a legal
20 conclusion.
21 A   I'll give the same answer I gave before.
22 Q   (BY MR. ROBBINS)  Do you contend baseline
23 pricing is a trade secret?
24     MS. YBARRA:  Same objection.
25 A   I'd have same answer.

Page 32

1  Q   (BY MR. ROBBINS)  Okay.  Which is you
2  don't know?
3      MS. YBARRA:  Same objection,
4  argumentative.
5  A   It's the same answer.  It's -- I know that
6  we're -- what we're alleging here, as it says, it's
7  the overall pricing strategy compromise -- or excuse
8  me -- comprises the trade secret.  Whether each
9  element is, I do not have sufficient basis or legal
10 knowledge to know.
11     MR. ROBBINS:  Okay.  So our position is
12 that there has to be a discussion with the Court
13 because SRS is -- was required by court order to
14 identify its trade secrets, and if its 30(b)(6) rep
15 and CEO cannot identify what actually is the issue,
16 obviously that's something we will bring to the
17 Court.
18     MS. YBARRA:  And our position is he has,
19 and you're asking him legal questions and harassing
20 him.
21     MR. ROBBINS:  Well, I'm sorry you feel
22 that way.
23     MS. YBARRA:  If that's how you want to
24 spend your time on the record, so be it.
25     MR. ROBBINS:  Thank you.