# EXHIBIT 15

FILED LEVEL 1 RESTRICTED

# SRS ACQUIOM INC

# VS.

# PNC FINANCIAL SERVICES GROUP

### Deposition

## JORDAN SISK

*10/24/2019*

_____

## AB Court Reporting & Video

*216 16th Street, Suite 600*
*Denver Colorado, 80202*
*303-296-0017*

**FILED LEVEL 1 RESTRICTED**

### Page 9

1   my question.
2       Would you like the court reporter to read
3   it back?
4   A   Yes, I would.
5       MR. ROBBINS:  If you would.
6       (Requested record read.)
7   A   That is correct.
8   Q   (BY MR. ROBBINS) Okay.  Now, what
9   method -- so if today I use SRS to refer collectively
10  to SRS Acquiom, Inc. and Shareholder Representative
11  Services, LLC, will you just let me know if at any
12  point you believe it's important to distinguish
13  between those two entities?
14  A   Certainly.
15  Q   Okay.  What are the methods by which SRS
16  protects its trade secrets?
17      MR. YU:  Objection, beyond the scope.
18  Q   (BY MR. ROBBINS) Go ahead.
19  A   All employees are required to sign an
20  employee confidentiality agreement as part of their
21  employment agreement.  We also maintain a corporate
22  information security policy as well as an acceptable
23  use policy.
24  Q   Are there any other methods by which SRS
25  protects the secrecy of its trade secrets?

### Page 10

1       MR. YU:  Objection, beyond the scope.
2   A   My understanding is yes, but --
3   Q   (BY MR. ROBBINS) What are they?
4       MR. YU:  Objection, beyond the scope.
5   A   I mean, my understanding is I'm speaking
6   about the policies today, not every single measure
7   that SRS uses to protect its trade secrets.
8   Q   (BY MR. ROBBINS) So it would be fair to
9   say that other than with respect to the two policies
10  that you've mentioned, you're not prepared today to
11  testify as to any other method by which SRS protects
12  its alleged trade secrets?
13      MR. YU:  Objection, misstates the prior
14  testimony, beyond the scope.
15  A   No.  My understanding is that I'm here
16  today to discuss the protections provided by our
17  corporate policies as they apply to every employee at
18  SRS Acquiom.
19  Q   (BY MR. ROBBINS) Well, what I'd like to
20  know is other than those that you mentioned, what
21  other ones -- what other methods does SRS use to
22  protect its alleged trade secrets?
23      MR. YU:  Objection, beyond the scope.
24  A   My understanding is that I'm here to
25  discuss the policies today, not every single method

### Page 11

1   that SRS may employ to protect its trade secrets.
2   Q   (BY MR. ROBBINS) So you're refusing to
3   provide information that you possess regarding
4   methods other than those two policies by which SRS
5   protects its alleged trade secrets, correct?
6       MR. YU:  Objection, argumentative, beyond
7   the scope.
8   A   No.  My -- I'm -- I'm here to -- I'm not
9   here to discuss everything that SRSA uses to protect
10  its trade secrets.
11  Q   (BY MR. ROBBINS) You're here to -- you
12  understand you're here to answer the questions that I
13  pose, correct?
14  A   I do understand that.
15      MR. YU:  Objection, argumentative.
16  Q   (BY MR. ROBBINS) So I have asked you a
17  question.  I would appreciate an answer.  Now this is
18  the fourth or fifth time.  Other than those two
19  policies, what methods does SRS use to protect its
20  alleged trade secrets?
21      MR. YU:  Objection, beyond the scope.
22  A   Can you restate the -- or can you repeat
23  the question, please?
24      (Requested record read.)
25      MR. YU:  You know, I'm going to object to

### Page 12

1   this line of questioning as beyond the scope.  So
2   that's a repeat, but I'm also going to object to that
3   question as beyond the scope as well.
4   A   We use various other methods that I'm not
5   here to discuss today.
6   Q   (BY MR. ROBBINS) I don't know what you
7   guys want to do.  I'm not proceeding in this fashion.
8   He's here to answer the questions.  He doesn't tell
9   me where he's drawing the line.
10      So we can cancel.  We'll file, you know, a
11  motion to compel and for sanctions and come back.
12  It's up to you.  If you want to go off the record and
13  speak with your witness, I'm happy to do that, too.
14      But I don't think it's outrageous for me
15  to expect that if I ask a question, I'm going to get
16  my answer regardless of what he wants to talk about.
17      So why don't we go off the record so that
18  counsel can confer with the witness.
19      MR. YU:  Okay.
20      THE VIDEOGRAPHER:  We're going off the
21  record.  The time is 11:17 a.m.
22      (Discussion off the record.)
23      THE VIDEOGRAPHER:  We're back on the
24  record.  And just to note that the time in the
25  beginning of the deposition was wrong, but the

CONFIDENTIAL

CONFIDENTIAL

Page 13

1 correct time now is 9:27 a.m.
2     MR. ROTHSTEIN:  Can we just go off the
3 record one more time?
4     THE VIDEOGRAPHER:  We're going off the
5 record, the time is 9:27 a.m.
6     (Discussion off the record.)
7     THE VIDEOGRAPHER:  We're back on the
8 record.  The time is 9:28 a.m.
9     MR. ROBBINS:  Ben, you're talking about
10 formalizing it on the record.  I don't -- if one of
11 you wants to recount what we discussed as to the
12 scope of this witness' preparation or -- or what he
13 is prepared to testify about to today.
14     MR. ROTHSTEIN:  Sure.  So the witness
15 today, consistent with the email that I sent to
16 Ms. Wallace on October 21st, will be prepared to
17 testify regarding Topic 2B, to the extent 2B covers
18 companywide information security policies and
19 practices -- sorry, withdrawn.
20     The witness will be prepared to testify
21 about Topic 2B, as set forth in my email dated
22 October 21st, 2019 to the extent 2B covers
23 companywide information security policies and
24 practices and the application of those policies and
25 practices to the individual defendants' employment

Page 14

1 with the company.
2     The witness will also cover Topic 5, to
3 the extent Topic 5 covers SRSA's policies and
4 practices for granting and limiting employees' access
5 to documents on SRSA's document management system.
6     And I brought copies of the email that I
7 sent to Ms. Wallace, which I'm prepared to hand out
8 if you'd like a copy.
9   Q   (BY MR. ROBBINS)  No.  Mr. Sisk, if going
10 forward, if there is a question that I ask that you
11 don't believe you are prepared to testify to today, I
12 would ask you that you answer that you don't know or
13 you're not prepared to testify, as opposed to what I
14 interpreted in our prior session as a refusal to
15 answer.
16     Does this make sense?
17   A   Yes.
18   Q   Okay.  Now, if you could, you had
19 mentioned two companywide policies with respect to
20 the protection of SRS trade secrets generally,
21 correct?
22   A   Correct.
23   Q   And one of those was that all employees
24 must sign a confidentiality agreement, correct?
25   A   That's correct.

Page 15

1     MR. YU:  Objection, misstates prior
2 testimony.
3   Q   (BY MR. ROBBINS)  The other one, can
4 you -- can you remind me what the second policy that
5 you testified to was?
6   A   Sure.  So the -- the other policy, the
7 corporate information security policy, in addition,
8 we have an acceptable use policy, and the handbook --
9 the employee handbook does also cover aspects of, you
10 know, protection of company confidential data.
11   Q   So as to streamline our time today, if I
12 were to ask you how particular trade secrets that my
13 clients are alleged to have been misappropriated are
14 covered by the specific provisions of SRS's
15 confidentiality agreement, is that a topic you would
16 not be prepared to testify to to- -- I'm sorry -- to
17 today?
18   A   To clarify, I don't -- I don't know which
19 specific trade secrets are at issue in this case.
20 They're not something that I've been privy to.
21     But I can speak to how the company treats
22 confidential data and the protections in place for
23 confidential data.
24   Q   Okay.  Are you aware of any instance,
25 other than this case, in which SRS has sued to

Page 16

1 enforce a confidentiality agreement against a former
2 employee?
3     MR. YU:  Objection, it's beyond the scope.
4   A   I'm unaware in my capacity.
5   Q   (BY MR. ROBBINS)  Okay.  Well, let's --
6 and I understand you might not be prepared to testify
7 to it today, but let's just find out the old-
8 fashioned way.
9     (Exhibit 26 marked.)
10   Q   (BY MR. ROBBINS)  Now, Mr. Sisk, Exhibit
11 26 is -- the first part is -- is a letter and a
12 general employment to a former SRS employee named
13 Luda Semenova.  And you're free to review it as you'd
14 like.
15     My only questions, however, are going to
16 pertain to the last page of the exhibit, which is the
17 description of trade secrets and proprietary
18 information.
19   A   Correct.
20   Q   And so --
21     MR. YU:  I'm sorry, which page are you on?
22     MR. ROBBINS:  The very last page.
23   Q   (BY MR. ROBBINS)  And so -- and again, if
24 you don't know, you're not prepared to testify today,
25 that's fine.  I'm just trying to find out.