# EXHIBIT 47

**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

      Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

**DECLARATION OF WALTER DEFOREST IN SUPPORT OF DEFENDANTS'
OPPOSITION TO PLAINTIFFS' MOTION FOR PRELIMINARY INJUNCTION**

---

I, Walter DeForest, declare and state the facts I set forth in this declaration are based on my personal knowledge. If called upon as a witness, I would testify to these facts competently under oath.

1. I am a licensed attorney in the state of Pennsylvania and have been practicing law for 49 years.

2. On March 9, 2018, outside counsel for SRSA, Jonathan Patchen, wrote a letter to Greg Jordan, General Counsel for PNC Bank, advising PNC Bank that Ms. Kelly and Mr. Tsarnas had employment agreements with restrictive covenants. I attach a copy of Mr. Patchen's March 9, 2018 letter as Exhibit A.

3. In that letter, Mr. Patchen took the position that it would be "extremely difficult, if not impossible, for either Mr. Tsarnas or Ms. Kelly to perform their new jobs without inevitably disclosing" SRSA's "confidential and trade secret information."

4. PNC engaged me to represent PNC Bank, Mr. Tsarnas and Ms. Kelly in connection with this letter, and I responded to Mr. Patchen's letter on March 20, 2018. I attach a copy of my March 20, 2018 letter to Mr. Patchen as Exhibit B.

**Heather Kelly**

5. Over the course of approximately the next month, Mr. Patchen and I had several calls relating to Ms. Kelly. In the course of those calls, I advised Mr. Patchen, among other things, that we would obtain information as to what material Ms. Kelly had taken from SRSA. I also advised him that Ms. Kelly had retained her former SRSA computer that she was sending me.

6. On April 2, 2018, I wrote Mr. Patchen a letter attached as Exhibit C, advising, *inter alia*, that

"Heather has forwarded to me without retaining a copy:

- Two notebooks with various notes and phone numbers – personal and deal related. Scratch type papers and notes. – Hard copy.

- 40 or so pages of printed / redline procedures for SRS Acquiom Administration

- One Fedex envelope containing the following hard copy documents:
    o SRS Acquiom (VMware specific) escrow agreement
    o SRS Acquiom (VMware specific) second form of escrow agreement.
    o SRS Acquiom standard form of escrow agreement
    o SRS Acquiom standard form of payments administration agreement (LT)

- 2 -

> o   SRS Acquiom standard form payments administration agreement (No LT)"

7. I further advised Mr. Patchen, in that letter, that in addition to the documents that Ms. Kelly returned to me that Ms. Kelly had emails on her personal account that included the following:

> 1. SRSA Tender Agreement
> 2. SRSA Payment Spreadsheet
> 3. SRSA Opinion re "Proskauer Opinion"

8. I also relayed, in that letter, the information from Ms. Kelly that she had wiped her computer shortly after leaving SRSA.

9. The originals of the documents listed in my letter of April 2, 2018 to Mr. Patchen and in Paragraph 6 above, were in my possession from early April 2018 through July 25, 2019, when I provided them to the Ballard Spahr law firm. On July 22, 2019, I provided copies of the documents referenced in Paragraph 6 to new counsel for SRSA, who requested copies after the Complaint in this action was filed. Ms. Kelly's computer, which, I was advised, she had obtained from SRSA, was in my possession from April 16, 2018 until April 3, 2019, when I returned it to Ms. Kelly.

10. Despite being advised on April 2, 2018 that Ms. Kelly had the documents listed in Paragraph 7 above in her possession, including the SRSA Payment Spreadsheet, at no point did SRSA request that Ms. Kelly return or destroy these documents. SRSA did not communicate with me about Ms. Kelly's possession of the SRSA Payment Spreadsheet following my April 2, 2018 letter, prior to the filing of the Complaint in this action.

11. I did not receive any further communications from SRSA regarding Ms. Kelly during the 14 months between April 2018 and July 13, 2019 when SRSA served Ms. Kelly with the complaint in this action.

**Alex Tsarnas**

12. On May 15, 2018, I received a letter from Mr. Patchen regarding Mr. Tsarnas. I attach a copy of that letter as Exhibit D. In that letter, SRSA accused Mr. Tsarnas of abusing SRSA's expense reimbursement program and said that because "of the extent of SRS's confidential, proprietary, and trade secret information known by Mr. Tsarnas, the urgency created by Mr. Tsarnas' actions cannot be understated."

13. In that same letter, Mr. Patchen attached a draft complaint, which among other things alleged: "there can be little doubt that PNC hired Mr. Tsarnas precisely because it seeks to break into the particular area of M&A space that Mr. Tsarnas helped manage for SRS and to replicate SRS's proprietary systems, processes, and business model. The threat presented by Mr. Tsarnas' employment in this role cannot be overstated—SRS's proprietary payment and escrow product and services are market differentiators, and his possession of that information while in the service of a competitor is definitionally [sic] an action of misappropriation and a breach of his EIAC Agreement."

14. I responded to Mr. Patchen's May 15, 2018 letter on May 17, 2018. I attach a copy of my May 17, 2018 letter as Exhibit E.

15. On June 15, 2018, Mr. Patchen wrote me a letter stating that SRSA did not intend to proceed with filing a complaint against Mr. Tsarnas but that it would "continue to closely monitor Mr. Tsarnas' behavior." I attach a copy of Mr. Patchen's June 15, 2018 letter as Exhibit F.

- 5 -

16.    I did not receive any further communications from SRSA regarding Mr. Tsarnas during the 13 months between June 15, 2018 and July 13, 2019 when SRSA served Mr. Tsarnas with the complaint in this action.

I declare under penalty of perjury that the foregoing is true and correct.

Dated:  December 11, 2019                By: _____
                                                        Walter P. DeForest