IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

    Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

    Defendants.

---

**PLAINTIFFS' UNOPPOSED MOTION TO RESTRICT DEFENDANTS' REPLY IN SUPPORT OF MOTION TO EXCLUDE THE TESTIMONY OF GREG REGAN (ECF NO. 483)**

---

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") move to restrict information found in Defendants' Reply in Support of Motion to Exclude the Testimony of Greg Regan (ECF No. 483, hereinafter "Regan *Daubert* Reply"), filed on July 23, 2021 as Restricted Level 1. SRSA now moves to maintain the restricted nature of that filing.

**I.    ARGUMENT**

"[W]here documents are used to determine litigants' substantive legal rights," restriction is appropriate when the parties "articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted).

To support a motion to restrict public access under D.C.COLO.LCivR 7.2(c), a party must: (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question; and (5) identify the level of restriction sought.  Each of these factors is met here.

A.  **Description Of Documents And Restriction Level Sought**

SRSA seeks to restrict certain portions of the Regan *Daubert* Reply.  SRSA identifies the content to be restricted, as well as the bases for restriction, within the body of this Motion below.  SRSA requests Level 1 restriction for this document.

B.  **SRSA's Interest In The Protection Of Its Confidential Information Outweighs The Presumption Of Public Access**

In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a legitimate basis for sealing documents."  *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998).  A court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets."  18 U.S.C. § 1835; *see* Colo. Rev. Stat. § 7-74-106 ("[A] court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include . . . sealing the records of the action.").  Under D.C.COLO.LCivR 7.2, courts in this District have frequently concluded that "the presumption of public access to Court files is outweighed by [a party's] interest in maintaining its business information private."  *Genscape, Inc. v. Live Power*

2

*Intelligence Co. NA, LLC*, No. 18-cv-02525-DDD-KLM, 2019 WL 4242669, at *4 (D. Colo. Sept. 5, 2019).

Here, SRSA seeks to restrict two categories of sensitive, non-public information found in the Regan *Daubert* Reply: (1) specifics about SRSA's business and operations strategies, and commercial transactions, and (2) information regarding SRSA customers. Restriction over these categories of information is warranted here lest the Court's "files might serve as a source of business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011).

### 1. Information Related to SRSA's Confidential Business Operations and Strategies, and Commercial Transactions

SRSA seeks to restrict confidential, non-public, and sensitive information related to SRSA's business operations and strategies, and commercial transactions found within portions of the Regan *Daubert* Reply. Specifically, SRSA seeks restriction of non-public, sensitive information regarding the type and computation basis of payments made under the non-public terms of Lovell Minnick Partners' ("LMP") investment in SRSA. SRSA also seeks restriction of similar information related to an acquisition made by Defendant PNC because it indirectly reveals aspects of LMP's investment in SRSA. This content is located in the Regan *Daubert* Reply at:

- ECF No. 483 at 2, all text between "Failure to Account for the" and "Variable Costs";
- ECF No. 483 at 5, all text between "for significant variable costs—" and "—which, pursuant to Regan's own";
- ECF No. 483 at 9, all text between "Regan's Failure to Account for the" and "Variable Costs Renders";

- ECF No. 483 at 9, all text between the "significant variable costs" and "should be overlooked";

- ECF No. 483 at 9, all text between "does not believe" and "should be deducted as variable costs";

- ECF No. 483 at 9, all text between "issued his supplemental expert report" and "he admitted (contrary to SRSA's position now in its brief)";

- ECF No. 483 at 10, all text between "SRSA insists that" and "are not variable costs because";

- ECF No. 483 at 10, all text between "ECF 432-8 at 43. Indeed," and "fall under Regan's own explanation";

- ECF No. 483 at 10, all text between "Both the" and "ECF 432-5 at 11."; and

- ECF No. 483 at 10, all text after "analysis. ECF 432-5 at 17." to the end of the page.

The information related to SRSA business strategies and operations, and commercial transactions—for which SRSA seeks restriction—is confidential, sensitive, and worthy of restriction under federal and Colorado law. Generally, courts "have 'supervisory power over [their] own records and files' and can appropriately deny access to these materials when they might be used 'as sources of business information that might harm a litigant's competitive standing.'" *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013) (quotation omitted). Thus, "Courts have recognized that the potential danger from releasing confidential business information or trade secrets may favor nondisclosure." *Greenway Nutrients, Inc. v. Blackburn*, No. 13-cv-01088-MSK-KMT, 2013 WL 12246891, at *1 (D. Colo. May 20, 2013); *see also SOLIDFX, LLC, v. Jeppesen Sanderson, Inc.*, No. 11-CV-01468-WJM-BNB, 2012 WL 2917116, at *2 (D. Colo. July 16, 2012) ("Privacy and preservation of trade secrets are among the interests which have been found, under certain circumstances, to overcome

4

the presumption of openness." (citing *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 637 (D. Colo. 2010)); *Genscape, Inc.*, 2019 WL 4242669, at *3. Certainly, under Colorado law, trade secrets may, of course, include "confidential business or financial information . . . or other information relating to any business or profession which is secret and of value." COLO. REV. STAT. § 7-74-102(4); *SBM Site Servs.,* 2011 WL 1375117, at *3.

This Court has held that the exact types of internal non-public and sensitive business information discussed above should be protected from disclosure. For example, in *Dish Network, L.L.C. v. WNET*, a third-party sought to protect "confidential internal business strategies and commercially sensitive subject matter." No. 13-cv-00832-PAB-KLM, 2014 WL 1628132, at *3 (D. Colo. Apr. 24, 2014). The Court held that it had "no difficulty finding that the information sought here meets the generally-accepted definitions of confidential commercial information." *Id.* at *4 (citing *Spartanburg Reg'l Healthcare Sys. v. Hillenbrand Indus., Inc*., No. 1:05-MC-107, 2005 WL 2571943, at *1 (W.D. Mich. Oct. 12, 2005) (holding that market analyses and strategic business plans are confidential commercial information); 9 James Wm. Moore et al., Moore's Federal Practice - Civil § 45.52[1] (3d. ed. 2013) ("Confidential commercial information is production or testimony that would cause 'substantial economic harm' to the competitive position of the entity from whom it is obtained.")). The court further reasoned that restriction was warranted because the information about business dealings was "proprietary," the party had maintained its confidentiality, and the information was important to the health of the company's business. *Dish Network*, 2014 WL 1628132, at *4; s*ee also XY, LLC v. Trans Ova Genetics, LC*, No. 13-CV-00876-WJM-NYW, 2015 WL 7014419, at *3 (D. Colo. Nov. 12, 2015) (restricting confidential business information).

### 2. Confidential Non-Public Information Related to SRSA's Customers

Next, SRSA seeks to restrict sensitive, non-public information found in the Regan *Daubert* Reply which specifically identifies SRSA customers by name that are not publicly available. This content is located in Regan *Daubert* Reply at:

- ECF 483 at 6, from the words "business in the past, such as" to the words "These assumptions cannot be squared".

The non-public information related to SRSA customers are worthy of restriction, as its public disclosure would directly harm SRSA. *See Haggard v. Spine*, No. 09-cv-00721-CMA-KMT, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009) ("[I]nformation regarding his customers' surgical specialties, business preferences, and contact people" is recognized as trade secret); *see also Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1258 (D. Colo. 2005); *see Johnstech Int'l Corp. v. JF Microtechnology SDN*, No. 14-cv-02864-JD, 2016 WL 4091388, at *3 (N.D. Cal. Aug. 2, 2016) (granting motion to seal "specific customer names and the percentage of business to those customers"). As supported by the Declaration of SRSA's Director of Business Intelligence, Ben Lane, SRSA's compilations of customer names and information are maintained secretly by SRSA and would be quite valuable to a competitor in the online payments-and-escrow products industry, who could then use such information to solicit SRSA's customers. *See* ECF Nos. 266, ¶¶ 1-22; and 262 at 12-13. The disclosure of such information would thus be highly damaging to SRSA's competitive standing in the marketplace.

### C. There Is No Otherwise Practicable Alternative To Restriction That Will Ensure SRSA Does Not Suffer These Injuries

No practical alternative to restriction exists here because public disclosure of the specific, narrowly tailored information SRSA seeks to seal would destroy its value and cause significant

competitive harm to SRSA.  SRSA maintains confidentiality over its trade secrets and other confidential information to avoid the inevitable harm that would result from disclosure.  In such cases, to avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request.  *See Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014).

Further, SRSA's proposed restrictions are narrowly tailored.  Recognizing the public value of access to this Court's records, SRSA is willing to file publicly redacted versions of the restricted documents to narrowly tailor its request as much as practicable under the circumstances.  *See Slawson Exploration Co. v. Arch Specialty Ins. Co.*, No. 15-cv-03313-KLM, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

There is thus good cause to grant SRSA's Motion, and SRSA respectfully requests that the Court order that Defendants' Reply in Support of Motion to Exclude the Testimony of Greg Regan (ECF No. 483) be maintained under Level 1 restriction, as described herein.

### Certificate of Conferral Under D.C.COLO.LCivR 7.1(a)

On August 5, 2021, the parties met and conferred about SRSA's Motion.  Defendants do not oppose this Motion to Restrict.  However, Defendants do not waive the right to contest the confidentiality and/or trade secret nature of the materials Plaintiffs seek to restrict in the future, including on the merits of the case, and expressly reserve their right to do so.  The parties agree that Defendants' non-opposition to this Motion shall not be used as an admission against Defendants or for any other purpose.

7

Respectfully submitted,

Dated:  August 6, 2021

By: s/ Scott R. Bialecki
Warren A. Braunig
    *wbraunig@keker.com*
Michelle S. Ybarra
    *mybarra@keker.com*
Benjamin D. Rothstein
    *brothstein@keker.com*
Katie Lynn Joyce
    *kjoyce@keker.com*
Victor H. Yu
    *vyu@keker.com*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone: 415-391-5400
Facsimile: 415-397-7188

Scott R. Bialecki
    *sbialecki@sheridanross.com*
Brian S. Boerman
    *bboerman@sheridanross.com*
SHERIDAN ROSS P.C.
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:  303-863-9700
Facsimile:  303-863-0223
Email:  *litigation@sheridanross.com*

ATTORNEYS FOR PLAINTIFFS
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

## Compliance With Type-Volume Limitation

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).