**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

**PLAINTIFFS' UNOPPOSED MOTION TO RESTRICT EXHIBIT 7 TO DEFENDANTS' BRIEF IN OPPOSITION TO PLAINTIFFS' EMERGENCY MOTION TO AMEND SCHEDULING ORDER (ECF NO. 241-7)**

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") move to continue to restrict Exhibit 7 to Defendants' Brief in Opposition to Plaintiffs' Emergency Motion to Amend Scheduling Order (ECF No. 241-7), filed as Restricted Level 1. Good cause exists to grant this unopposed Motion. In support thereof, SRSA states as follows:

I.  ARGUMENT

"[W]here documents are used to determine litigants' substantive legal rights," restriction is appropriate when the parties "articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted).

Under D.C.COLO.LCivR 7.2(c), a motion to restrict public access to documents filed with the Court must: (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question; and (5) identify the level of restriction sought. Each of these factors is met here.

  A.  Description of Documents and Restriction Level Sought

SRSA seeks to maintain Level 1 restrictions for the below document[1]:

| Document | Portion for Which SRSA Seeks Level 1 Restriction |
| --- | --- |
| Exhibit 7 to Defendants' Brief in Opposition to Plaintiffs Emergency Motion to Amend Scheduling Order (ECF No. 241-7) | Pages 4-7, all text in each bullet point; |

---

[1] This document and the portions thereof for which SRSA seeks restriction were previously identified in ECF No. 293-1, which is incorporated herein by reference.

| | |
|---|---|
| | Page 8, text after the words "across multiple deals" and before "To the extent Defendants"; |
| | Page 11, the first word beginning each bullet point; |
| | Pages 14-15, all text in each bullet point; |
| | Page 16, all text in between the words "across multiple deals" and "To the extent Defendants provided"; |
| | Pages 28-30, all text in each bullet point; |
| | Pages 30-31, all text in between the words "'That's awesome!!' *Id*." to the end of the paragraph; |
| | Page 36, the words in between "Pre-Closing Solicitation products" and "participated in development"; |
| | Pages 39-41, all text after "Deal Dashboard" to the end of the first full paragraph on page 41; |
| | Pages 41-42, all text in second full paragraph stating on page 41; |
| | Page 42, all text in the first full paragraph after the words "various SRS employees"; |
| | Pages 49-50, all text between the words "Solicitation offerings," and "PNC willfully used"; |
| | Page 51, the word after "SRS clients, including"; |
| | Pages 57-58, all text beginning after the words "may be derived" to the end of page 58; |

| | Page 61, all text in second and third paragraphs; and<br><br>Pages 65-66, all text in third and fourth paragraph starting on page 65 |
|---|---|

**B.    SRSA's Interest in the Protection of its Confidential Information Outweighs the Presumption of Public Access**

In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998). A court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835; *see* COLO. REV. STAT. § 7-74-106 ("[A] court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include . . . sealing the records of the action."). Under D.C.COLO.LCivR 7.2, courts in this District have frequently concluded that "the presumption of public access to Court files is outweighed by [a party's] interest in maintaining its business information private." *Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*, No. 18-cv-02525-DDD-KLM, 2019 WL 4242669, at *4 (D. Colo. Sept. 5, 2019).

Here, SRSA seeks to restrict sensitive business information in the form of (1) SRSA's customer information, including customer identities, customer preferences, and SRSA's business arrangements with its customers; (2) SRSA's confidential information related to its product-development processes; and (3) confidential information related to SRSA's internal processes and staffing. Restriction over these categories of information is warranted here lest the Court's "files might serve as a source of business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011).

3

1. **Confidential Information Regarding Customer Identities, Customer Preferences, and SRSA's Business Arrangements with Customers**

SRSA seeks to restrict confidential, non-public and sensitive information related to the identity of SRSA's customers and other customer information. In particular, the document for which SRSA seeks to maintain restriction references SRSA customers lost to PNC. This information is located in all portions of the document for which restriction is sought except for the portions on pages 36, 39-42, and 49-50 of ECF No. 241-7. The document for which SRSA seeks to maintain restriction also includes other information about SRSA's customers, such as customer preferences. *See* ECF No. 241-7, 65-66.

Such information is worthy of restriction, as its public disclosure would directly harm SRSA. "[I]nformation regarding his customers' surgical specialties, business preferences, and contact people" is recognized as trade secret. *See Haggard v. Spine*, No. 09-cv-00721-CMA-KMT, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009); *see also Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1258 (D. Colo. 2005); *see Johnstech Int'l Corp. v. JF Microtechnology SDN*, No. 14-cv-02864-JD, 2016 WL 4091388, at *3 (N.D. Cal. Aug. 2, 2016) (granting motion to seal "specific customer names and the percentage of business to those customers"). As supported by the declaration of SRSA's Director of Business Intelligence, Ben Lane, SRSA's compilations of customer names and information are maintained secretly by SRSA and would be quite valuable to a competitor in the online payments-and-escrow products industry, who could then use such information to solicit SRSA's customers. *See* ECF Nos. 266 ¶¶ 1-22, 262 at 12-13. The disclosure of such information would thus be highly damaging to SRSA's competitive standing in the marketplace. Courts in this district have recognized that the identity of a party's customers is properly restricted in these circumstances. *See Deschenes Consulting LLC v. Nu*

*Life Mkt. LLC*, No. 1:19-cv-03465-RM-SKC, 2020 WL 2747702, at *4 (D. Colo. May 27, 2020) (where "customers' identities are in fact trade secrets it's clear that at least their identities should be redacted").

The document for which SRSA seeks to maintain restriction also includes information about SRSA's business arrangements with its customers. *See* ECF No. 241-7, 57-58, 60. Confidential information related to SRSA's business arrangements are also confidential, sensitive, and worthy of restriction under federal and Colorado law. Generally, courts "have 'supervisory power over [their] own records and files' and can appropriately deny access to these materials when they might be used 'as sources of business information that might harm a litigant's competitive standing.'" *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013) (quotation omitted). Thus, "[c]ourts have recognized that the potential danger from releasing confidential business information or trade secrets may favor nondisclosure." *Greenway Nutrients, Inc. v. Blackburn*, No. 13-cv-01088-MSK-KMT, 2013 WL 12246891, at *1 (D. Colo. May 20, 2013); *see also SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, 2012 WL 2917116, at *2 (D. Colo. July 16, 2012) ("Privacy and preservation of trade secrets are among the interests which have been found, under certain circumstances, to overcome the presumption of openness." (citing *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 637 (D. Colo. 2010)); *Genscape*, 2019 WL 4242669, at *3. Certainly, under Colorado law, trade secrets may, of course, include "confidential business or financial information . . . or other information relating to any business or profession which is secret and of value." COLO. REV. STAT. 7-74-102(4); *SBM Site Servs.,* 2011 WL 1375117, at *3.

5

Courts regularly restrict information about business arrangements with customers in these circumstances. *See, e.g., BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Organisation*, No. 2:17-CV-503, 2019 WL 8108115, at *10 (E.D. Va. Aug. 15, 2019) ("[T]he manner in which the parties structured their business relationship is sensitive business information that is typically sealed by Courts."); *FTC v. Qualcomm Inc.*, No. 17-CV-00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) ("[T]o the extent that the instant motion seeks to seal information that, if published, may harm Qualcomm's or third parties' competitive standing and divulges terms of confidential contracts, contract negotiations, or trade secrets, the Court agrees with the parties that compelling reasons exist to seal this information."); *accord. Grundig Multimedia AG v. Eton Corp.*, No. 20-cv-05205-NC, 2021 WL 411237, at *6 (N.D. Cal. Feb. 5, 2021) (restricting agreement that disclosed how a party structures its business agreements, giving competitors an opportunity to modify their own business strategies). In addition, information about discussions with customers or potential customers is routinely restricted from public view. *See Koninklijke Philips N.V. v. Elec-Tech Int'l Co., Ltd.*, No. 14-cv-02737-BLF, 2015 WL 581574, at *1-2 (N.D. Cal. Dec 10, 2015) (compelling reasons exist to justify sealing information about an entity's "discussions regarding potential partnerships with other product manufacturers"). As SRSA maintains such information as confidential, it should also be restricted here. *See* ECF No. 266 ¶¶ 3-21.

      **2.**      **Confidential Information Concerning SRSA's Product-Development Processes**

SRSA also seeks to restrict information regarding SRSA's product-development process. The document for which SRSA seeks to maintain restriction is a set of discovery responses that detail SRSA's product-development processes. *See* ECF No. 241-7, 36, 39-41, 42.

6

The public disclosure of "highly sensitive information regarding [Plaintiff's] product architecture and development . . . could cause harm to [Plaintiff] if the information were to become known to a competitor." *Delphix Corp. v. Actifio, Inc.*, No. 13-cv-04613-BLF, 2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014). And here, such technical information took years of research and development for SRSA to develop, is not disclosed publicly or only disclosed with appropriate confidentiality restrictions, and is worthy of trade-secret status. *See* ECF Nos. 256-10 ¶¶ 7-14, 21-65; 262 at 7-10, 19-26. As attested to in SRSA's employee declaration, a competitor armed with such information would gain significant insight into how to mimic SRSA's industry-leading products, and cause SRSA competitive harm in the marketplace. *See* ECF No. 256-10 ¶¶ 7-14, 21-65.

### 3. Confidential Information Concerning Internal SRSA Processes and Staffing

Finally, SRSA seeks restriction information revealing internal SRSA processes and staffing. The document for which SRSA seeks to maintain restriction reveals confidential information about SRSA's product-development process and staffing on its internal projects. *See* ECF No. 241-7, 36, 39-41, 42.

Courts have routinely sealed such internal corporate information. *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2013 WL 163779, at *5 (N.D. Cal. Jan. 15, 2013) (granting motion to seal with respect to defendants' "policies[] and procedures" because "the disclosure of this information could cause [d]efendants competitive harm"); *Koninklijke Philips*, 2015 WL 581574 at *1-2 (compelling reasons exist to justify sealing information about an entity's "business practices" and "recruitment efforts"). To avoid SRSA's competitors and

7

other third parties mimicking – or exploiting – SRSA's procedures and practices, such information should be restricted from public view.

        **C.**        **There is No Practicable Alternative to Restriction**

No practicable alternative to restriction exists here because public disclosure of the specific, narrowly tailored information SRSA seeks to seal would destroy its value and cause significant competitive harm to SRSA. SRSA maintains confidentiality over its trade secrets and other confidential information to avoid the inevitable harm that would result from disclosure. In such cases, to avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request. *See Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014). Recognizing the public value of access to this Court's records, SRSA is willing to file a public redacted version of the restricted document to narrowly tailor its request as much as practicable under the circumstances. *Slawson Exploration Co. v. Arch Specialty Ins. Co.*, No. 15-cv-01131-KLM, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

There is thus good cause to grant SRSA's unopposed Motion, and SRSA respectfully requests that the Court maintain Level 1 restriction over the materials identified in this Motion.

**Certificate of Conferral Under D.COLO.LCivR 7.1(a)**

On August 25, August 30, and September 2, the parties met and conferred about SRSA's Motion. Defendants do not oppose this Motion to Restrict. However, Defendants do not waive the right to contest the confidentiality and/or trade secret nature of the materials Plaintiffs seek to restrict in the future, including on the merits of the case, and expressly reserve their rights to do

so. The Parties agree that Defendants' non-opposition to this Motion shall not be used as an admission against Defendants or for any other purpose.

Respectfully submitted,

Dated: September 8, 2021

By:   s/ Brian S. Boerman
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Katie Lynn Joyce
*kjoyce@keker.com*
Victor H. Yu
*vyu@keker.com*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:		415-391-5400
Facsimile:		415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
   *sbialecki@sheridanross.com*
Brian S. Boerman
   *bboerman@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:		303 863 9700
Facsimile:		303 863 0223
Email:	*litigation@sheridanross.com*

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

**Compliance With Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.