INITHE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

**PLAINTIFFS' MOTION TO RESTRICT PLAINTIFFS' RESPONSE IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT [ECF 521] AND SUPPORTING PAPERS THERETO**

# TABLE OF CONTENTS

**Page**

I. INTRODUCTION ...................................................................................................................1

II. ARGUMENT..........................................................................................................................2

    A. Description of Documents and Restriction Level Sought........................................3

    B. SRSA's Interest in the Protection of its Confidential Information Outweighs the Presumption of Public Access ...........................................................3

        1. Confidential Information Regarding SRSA Customers and SRSA's Business Arrangements and Negotiations with Customers .........................5

        2. Confidential SRSA Technical and Product-Development Information ................................................................................................8

        3. Confidential Information Relating to SRSA's Pricing Strategies..............11

        4. Confidential Internal SRSA Corporate Information ..................................12

    C. SRSA's Interest in the Protection of its Confidential Information Outweighs the Presumption of Public Access .........................................................13

    D. The Court Should Not Resolve Questions of Trade-Secret Status on a Motion to Restrict .....................................................................................................14

III. CONCLUSION.....................................................................................................................15

# TABLE OF AUTHORITIES

Page(s)

**Federal Cases**

*BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Organisation*,
   No. 2:17-CV-503, 2019 WL 8108115 (E.D. Va. Aug. 15, 2019) .............................................8

*Colony Ins. Co. v. Burke*,
   698 F.3d 1222 (10th Cir. 2012) ...............................................................................................2

*Delphix Corp. v. Actifio, Inc.*,
   No. 13-cv-04613-BLF, 2014 WL 4145520 (N.D. Cal. Aug. 20, 2014) ..................................10

*Deschenes Consulting LLC v. Nu Life Mkt. LLC*,
   No. 19-cv-03465-RM-SKC, 2020 WL 2747702 (D. Colo. May 27, 2020).........................7, 15

*Doubleclick Inc. v. Paikin*,
   402 F. Supp. 2d 1251 (D. Colo. 2005)................................................................................6, 12

*Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*,
   26 F. Supp. 2d 606 (S.D.N.Y. 1998).........................................................................................3

*FTC v. Qualcomm Inc.*,
   No. 17-CV00220-LHK, 2019 WL 95922 (N.D. Cal. Jan. 3, 2019).....................................8, 12

*Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*,
   No. 18-cv-02525-DDD-KLM, 2019 WL 4242669 (D. Colo. Sept. 5, 2019) ........................4, 5

*Greenway Nutrients, Inc. v. Blackburn*,
   No. 13-cv-01088MSK-KMT, 2013 WL 12246891 (D. Colo. May 20, 2013) ..........................4

*Grundig Multimedia AG v. Eton Corp.*,
   No. 20-cv-05205-NC, 2021 WL 411237 (N.D. Cal. Feb. 5, 2021) ..........................................8

*Haggard v. Spine*,
   No. 09-cv-00721-CMA-KMT, 2009 WL 1655030 (D. Colo. June 12, 2009).........................6

*Healthtrio, LLC v. Aetna, Inc.*,
   No. 12-cv-03229-REB-MJW, 2014 WL 6886923 (D. Colo. Dec. 5, 2014)............................13

*Hershey v. ExxonMobil Oil Corp.*,
   550 F. App'x 566 (10th Cir. 2013) ...........................................................................................4

1749622

*In re High-Tech Employee Antitrust Litig.*,
    No. 11-CV-02509-LHK, 2013 WL 163779 (N.D. Cal. Jan. 15, 2013) ...................................12

*Johnstech Int'l Corp. v. JF Microtechnology SDN*,
    No. 14-cv-02864-JD, 2016 WL 4091388 (N.D. Cal. Aug. 2, 2016) .........................................6

*Koninklijke Philips N.V. v. Elec-Tech Int'l Co., Ltd.*,
    No. 14-cv-02737-BLF, 2015 WL 581574 (N.D. Cal. Dec 10, 2015)..............................8, 9, 12

*L-3 Communs. Corp. v. Jaxon Eng'g & Maint., Inc.*,
    125 F. Supp. 36 1155, 1186 (D. Colo. 2015)........................................................................14

*In re Qualcomm Litig.*,
    No. 17-CV00108-GPC-MDD, 2019 WL 1557656 (S.D. Cal. Apr. 9, 2019) ..........................11

*SBM Site Servs., LLC v. Garrett*,
    No. 10-cv-00385-WJM-BNB, 2011 WL 1375117 (D. Colo. Apr. 12, 2011)..................4, 7, 15

*Slawson Exploration Co. v. Arch Specialty Ins. Co.*,
    No. 15-cv-01131-KLM, 2016 WL 1572370 (D. Colo. Apr. 19, 2016) ...................................14

*SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*,
    No. 11-cv-01468-WJM-BNB, 2012 WL 2917116 (D. Colo. July 16, 2012) ............................4

**Federal Statutes**

18 U.S.C. § 1835...................................................................................................................3, 13

**State Statutes**

COLO. REV. STAT. 7-74-102(4) ................................................................................................7

COLO. REV. STAT. § 7-74-106 .....................................................................................2, 3, 15

COLO. REV. STAT. § 7-7410 ...................................................................................................13

1749622

## I. INTRODUCTION

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") move to maintain restriction over SRSA's Response in Opposition to Defendants' Motion for Summary Judgment ("Response") and certain supporting exhibits thereto, as identified in Exhibit A to this motion. Each of these documents was filed as Restricted Level 1.

In this trade-secret case, Defendants' principal argument on summary judgment is that the SRSA trade-secret information they stole does not qualify for protection as such. *See* ECF 492 at 5-34. Defendants' moving papers discussed SRSA's confidential information at length, *see id.*, and SRSA consequently moved to restrict portions of those pleadings. *See* ECF 548. SRSA's Response quotes, cites to, and describes in considerable detail the very trade secrets that Defendants' summary-judgment motion challenges. SRSA now moves to restrict that information as well. Good cause exists to grant this Motion, because restricting the identified portions of SRSA's Response papers is necessary to prevent the disclosure of SRSA's confidential business information, including the very trade secrets that SRSA filed this lawsuit to protect.

Defendants oppose this motion to restrict—just as they opposed SRSA's motion to restrict portions of their moving papers—even though this is exactly the sort of information Colorado law contemplates should be sealed, even though SRSA has proposed narrow redactions that would restrict only the most sensitive information, and even though the Court has repeatedly sealed similar information in this case.[1]

---

[1] *See, e.g.*, ECF 518 (restricting customer information), ECF 514 (restricting customer information and internal corporate information); ECF 511 (restricting technical and product-development information, and customer information); ECF 508 (restricting technical and

1

And just as before, this motion to restrict is the wrong procedural vehicle to litigate trade-secret status, particularly given that the parties are enmeshed in summary-judgment proceedings on the very same issue. As explained previously and as detailed again below, courts in this District regularly grant motions to restrict covering the sort of information SRSA seeks to restrict. SRSA's Response relies on six sworn declarations substantiating that SRSA's technical, customer and business strategy information is maintained confidentially by SRSA; and that disclosure of such information would be highly damaging to SRSA's business. *See* ECF 533; 531; 295-1; 269; 268; 266. Those declarations, incorporated herein by reference, address precisely the information, or categories of information, that SRSA now seeks to restrict. There is no doubt that this motion seeks the restriction of "alleged trade secrets," for which, under Colorado law, courts "shall preserve the secrecy of . . . by reasonable means," including by sealing documents. COLO. REV. STAT. § 7-74-106. The parties should resolve their dispute about whether SRSA's trade secrets qualify as such in the context of summary judgment, or at trial; not on a motion to restrict.

## II.   ARGUMENT

"[W]here documents are used to determine litigants' substantive legal rights," restriction is appropriate when the parties "articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted).

---

product-development information, and customer information); ECF 438 (restricting pricing strategy information, technical and product-development information, and internal corporate information); ECF 394 (restricting pricing strategy information); ECF 210 (restricting customer information, technical and product-development information, pricing strategy information, and internal corporate information).

To support a motion to restrict public access under D.C.COLO.LCivR 7.2(c), a party must: (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question; and (5) identify the level of restriction sought. Each of these factors is met here.

### A. Description of Documents and Restriction Level Sought

For the Court's convenience, SRSA attaches as Exhibit A to this motion a chart listing its requested restriction on a document-by-document basis. The justification for restricting each document identified in Exhibit A is set forth in this Motion. SRSA seeks to maintain **Level 1** restrictions for all documents identified in Exhibit A.

### B. SRSA's Interest in the Protection of its Confidential Information Outweighs the Presumption of Public Access

In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998). A court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835; *see* COLO. REV. STAT. § 7-74-106 ("[A] court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include . . . sealing the records of the action."). Under D.C.COLO.LCivR 7.2, courts in this District have frequently concluded that "the presumption of public access to Court files is outweighed by [a party's] interest in

3

maintaining its business information private." *Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*, No. 18-cv-02525-DDD-KLM, 2019 WL 4242669, at *4 (D. Colo. Sept. 5, 2019).

Here, SRSA seeks to restrict sensitive business information in the form of (1) confidential information regarding customer identities and preferences, and SRSA's business arrangements and negotiations with its customers; (2) confidential information related to SRSA's technical specifications, payment methods, and product-development strategies; (3) confidential information relating to SRSA's pricing and pricing strategies; and (4) internal non-public SRSA corporate information.

Restriction over these categories of information is warranted here lest the Court's "files might serve as a source of business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011). Indeed, courts "have supervisory power over [their] own records and files' and can appropriately deny access to these materials when they might be used 'as sources of business information that might harm a litigant's competitive standing." *Hershey v. ExxonMobil Oil Corp.*, 550 F. App'x 566, 574 (10th Cir. 2013) (quotation omitted). And thus, "[c]ourts have recognized that the potential danger from releasing confidential business information or trade secrets may favor nondisclosure." *Greenway Nutrients, Inc. v. Blackburn*, No. 13-cv-01088MSK-KMT, 2013 WL 12246891, at *1 (D. Colo. May 20, 2013); *see also SOLIDFX, LLC v. Jeppesen Sanderson, Inc.*, No. 11-cv-01468-WJM-BNB, 2012 WL 2917116, at *2 (D. Colo. July 16, 2012) ("Privacy and preservation of trade secrets are among the interests which have been found, under certain circumstances, to overcome the presumption of openness."

(citing *Huddleson v. City of Pueblo*, 270 F.R.D. 635, 637 (D. Colo. 2010)); *Genscape, Inc.*, 2019 WL 4242669, at *3.

        1.    **Confidential Information Regarding SRSA Customers and SRSA's Business Arrangements and Negotiations with Customers**

SRSA seeks to restrict confidential, non-public, and trade-secret information about SRSA's customers.

*First*, SRSA's Response cites to numerous documents revealing detailed information about SRSA customers, including their identities, preferences, contact information, and SRSA's business strategies for managing those customers. SRSA cited to such documents to demonstrate the independent economic value of its customer-information trade secret, and to show Defendants' reliance on SRSA customer information to poach customers. *See, e.g.*, ECF 521 at 14-17. SRSA now seeks to maintain restriction over the following documents, as the public reveal of this compilation of information would disclose the identities of, and information concerning, numerous SRSA customers:

- ECF 521 (Response) at ECF pages 17, 24-26, 47, and 51-53;
- ECF 522 (Ex. 1) at ECF pages 6-12, 13, 16, 19-22, 24-26, 47-48;
- ECF 522-4 (Ex. 5) at SADFs 39-42;
- ECF 524-2 (Ex. 23);[2]
- ECF 524-3 (Ex. 24) at ECF page 2;
- ECF 524-4 (Ex. 25);
- ECF 524-5 (Ex. 26);

---

[2] Unless otherwise indicated, SRSA seeks to restrict the entirety of the exhibit.

- ECF 524-7 (Ex. 28), at the specific portions described in Ex. A;
- ECF 524-8 (Ex. 29), at the specific portions described in Ex. A;
- ECF 524-9 (Ex. 30);
- ECF 525 (Ex. 31) at ECF page 2;
- ECF 525-1 (Ex. 32) at ECF pages 2-4;
- ECF 525-3 (Ex. 34);
- ECF 526-8 (Ex. 49); and
- ECF 527-1 (Ex. 52), in the specific portion described in Ex. A.
- ECF 528-3 (Ex. 65);
- ECF 530 (Wada Decl.) ¶¶6, 7; and
- ECF 530-1 (Wada Decl. Ex. A).

This material should be restricted because disclosing the information SRSA has compiled over several years regarding its key customers and their preferences would cause competitive harm to SRSA. *See, e.g.*, *Haggard v. Spine*, No. 09-cv-00721-CMA-KMT, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009) ("[I]nformation regarding his customers' surgical specialties, business preferences, and contact people" is recognized as trade secret.); *see also Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1258 (D. Colo. 2005) (recognizing that "the identity of the targeted clients" is "itself a potential trade secret"); *Johnstech Int'l Corp. v. JF Microtechnology SDN*, No. 14-cv-02864-JD, 2016 WL 4091388, at *3 (N.D. Cal. Aug. 2, 2016) (granting motion to seal "specific customer names and the percentage of business to those customers"). As supported by the declaration of SRSA's Director of Business Intelligence Ben Lane, SRSA's customer identities, and information about them, are maintained secretly by SRSA and would be

quite valuable to a competitor in the online payments-and-escrow products industry, who could then use such information to solicit SRSA's customers. *See* ECF 266 ¶¶1-22, ECF 262 at 12-13. The disclosure of such information would thus be highly damaging to SRSA's competitive standing in the marketplace. Courts in this District have recognized that the identity of a party's customers is properly restricted in these circumstances. *See Deschenes Consulting LLC v. Nu Life Mkt. LLC*, No. 19-cv-03465-RM-SKC, 2020 WL 2747702, at *4 (D. Colo. May 27, 2020) (where "customers' identities are in fact trade secrets it's clear that at least their identities should be redacted").

***Second***, SRSA seeks to maintain restriction over information related to SRSA's business arrangements and negotiations with its customers, including descriptions of SRSA's non-public contractual arrangements with select, high-value customers. This information is cited numerous times in:

- ECF 521 (SRSA Response) at ECF pages 48-49;
- ECF 522 (Ex. 1) at ECF pages 51-53, 55, 57-58; and
- ECF 522-4 (Ex. 5) at SADFs 34-38.

SRSA maintains the details of its customer contracts confidentially.  *See* ECF 266 ¶18.

Confidential information related to SRSA's business arrangements and negotiations with its customers is also confidential, sensitive, and worthy of restriction under federal and Colorado law. Under Colorado law, "confidential business or financial information" or "other information relating to any business or profession which is secret and of value" qualifies for trade-secret protection. COLO. REV. STAT. 7-74-102(4); *SBM Site Servs.*, 2011 WL 1375117, at *3. Courts regularly restrict information that discloses terms of confidential contracts or business

7

arrangements in these circumstances. *See, e.g., BASF Plant Sci., LP v. Commonwealth Sci. & Indus. Organisation*, No. 2:17-CV-503, 2019 WL 8108115, at *10 (E.D. Va. Aug. 15, 2019) ("[T]he manner in which the parties structured their business relationship is sensitive business information that is typically sealed by Courts."); *FTC v. Qualcomm Inc.*, No. 17-CV00220-LHK, 2019 WL 95922, at *3 (N.D. Cal. Jan. 3, 2019) ("[T]o the extent that the instant motion seeks to seal information that, if published, may harm Qualcomm's or third parties' competitive standing and divulges terms of confidential contracts, contract negotiations, or trade secrets, the Court agrees with the parties that compelling reasons exist to seal this information."); *accord Grundig Multimedia AG v. Eton Corp.*, No. 20-cv-05205-NC, 2021 WL 411237, at *6 (N.D. Cal. Feb. 5, 2021) (restricting agreement that disclosed how a party structures its business agreements, giving competitors an opportunity to modify their own business strategies). In addition, information about discussions with customers or potential customers is routinely restricted from public view. *See Koninklijke Philips N.V. v. Elec-Tech Int'l Co., Ltd.*, No. 14-cv-02737-BLF, 2015 WL 581574, at *1-2 (N.D. Cal. Dec 10, 2015) (compelling reasons exist to justify sealing information about an entity's "discussions regarding potential partnerships with other product manufacturers").

      **2.**     **Confidential SRSA Technical and Product-Development Information**

SRSA also seeks to maintain restriction over information revealing SRSA's non-public and trade-secret technical processes, operational procedures, and strategies. SRSA's Response relies on declarations, deposition testimony, product specifications, wireframes, and other documents to demonstrate the independent economic value of its technical trade secrets and Defendants' misappropriation of the same. Specifically, SRSA's Response and its supporting

8

documents disclose information regarding (1) SRSA's payment procedures, including its procedures for electronically tracking, suspending, and updating payments in a transaction (*see, e.g.*, ECF 521 at 11-12); (2) the design of its proprietary Deal Dashboard product (*see, e.g., id.* at 25-27); (3) the legal and operational structure of a SRSA payments product called Acquiom Compensation Payments ("ACP") (*see, e.g., id.* at 27-28); (4) SRSA's nonpublic, proprietary product roadmaps and specifications (*see, e.g., id.* at 28-33) and (5) SRSA's electronic methods for document distribution (s*ee, e.g., id.* at 34-35); and (6) SRSA's proprietary payments spreadsheet (*see, e.g., id.* at 22). This content is located at:

- ECF 521 (SRSA Response) at ECF pages 13-17, 20-21, 23-26, 31, 35, 37-43;
- ECF 522 (Ex. 1) at ECF pages 35-44, 46-47;
- ECF 522-4 (Ex. 5) at SADFs 26, 27;
- ECF 522-7 (Ex. 8), at the specific portions described in Ex. A;
- ECF 522-8 (Ex. 9), at the specific portions described in Ex. A;
- ECF 522-9 (Ex. 10), at the specific portions described in Ex. A;
- ECF 523-3 (Ex. 14);
- ECF 523-4 (Ex. 15);
- ECF 523-5 (Ex. 16);
- ECF 523-6 (Ex. 23);
- ECF 523-7 (Ex. 24) at ECF page 2;
- ECF 525-5 (Ex. 36), at the specific portions described in Ex. A;
- ECF 525-6 (Ex. 37), at the specific portions described in Ex. A;
- ECF 526-1 (Ex. 42);

1749622

- ECF 526-5 (Ex. 46);
- ECF 526-6 (Ex. 47);
- ECF 531 (Eckberg Decl.) ¶¶3-9;
- ECF 531-1 (Eckberg Decl. Ex. 1);
- ECF 531-2 (Eckberg Decl. Ex. 2);
- ECF 531-3 (Eckberg Decl. Ex. 3);
- ECF 533 (Perry Decl.) ¶¶5-8;
- ECF 533-1 (Perry Decl. Ex. 1);
- ECF 533-2 (Perry Decl. Ex. 2);
- ECF 533-3 (Perry Decl. Ex. 3);
- ECF 534 (Yates Decl.) ¶4; and
- ECF 534-1(Yates Decl. Ex. 1).

The public disclosure of "highly sensitive information regarding [Plaintiff's] product architecture and development . . . could cause harm to [Plaintiff] if the information were to become known to a competitor." *Delphix Corp. v. Actifio, Inc.*, No. 13-cv-04613-BLF, 2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014). Here, such technical information took years of research and development, is not disclosed publicly or only disclosed with appropriate confidentiality restrictions, and is worthy of trade-secret status. *See* ECF 256-10 ¶¶7-14, 21-65; 262 at 7-10, 19-26; ECF 295-1 ¶¶4-5; ECF 531 ¶¶3-9. As attested to in numerous SRSA employee declarations, a competitor armed with such information would gain significant insight into how to mimic SRSA's industry-leading products, and cause SRSA competitive harm in the marketplace. *See* ECF 256-10 ¶¶7-14, 21-65; ECF 295-1 ¶3.

Information regarding product-development strategies is similarly sensitive and is likewise routinely restricted from public view. *See, e.g., In re Qualcomm Litig.*, No. 17-CV-00108-GPC-MDD, 2019 WL 1557656, at *3 (S.D. Cal. Apr. 9, 2019) (finding compelling reasons to seal "proprietary business records, discussions of internal strategy, [and] company dealings"). Publicizing SRSA's internal strategic information would provide SRSA's competitors with sensitive information that they would otherwise be unable to ascertain and which could be used against SRSA in the marketplace. As SRSA maintains such information as confidential, it should also be restricted here. *See* ECF 266 ¶¶3-21.

### 3. Confidential Information Relating to SRSA's Pricing Strategies

SRSA also seeks to restrict documents revealing SRSA's non-public and trade-secret pricing strategies. These materials include numerous references to the procedures, methodologies, and documents SRSA relies on to set its pricing for specific market segments and products. The documents at issue include, for example, internal SRSA memoranda, presentations, and calculators describing SRSA's pricing strategies (*see, e.g.*, ECF 521 at 23); and communications revealing sensitive, non-public information about the "float" interest rate SRSA obtains from its banking partner (*see, e.g.*, ECF 521 at 24). This content is located at:

- ECF 521 (SRSA Response) at ECF pages 32-34;
- ECF 522 (Ex. 1) at ECF page 49;
- ECF 522-4 (Ex. 5) at SADFs 19, 22;
- ECF 522-9 (Ex. 10); and
- ECF 525-8 (Ex. 40).

Information about SRSA's pricing strategies is highly sensitive and worthy of restriction. Pricing information is routinely afforded trade-secret status. *See Doubleclick*, 402 F. Supp. 2d at 1258. As SRSA has supported through declarations of its CEO, Paul Koenig, SRSA does not disclose the information making up its pricing strategies, and it would be incredibly difficult for a competitor to reverse engineer the information comprising SRSA's strategies. *See* ECF 268 ¶¶4-11, ECF 257 ¶¶15-20. SRSA's pricing information is worthy of trade-secret status. *See* ECF 521 at 31-34. And if known to its competitors, SRSA's pricing strategies would directly harm SRSA by permitting its competitors to predict SRSA's pricing in future deals and to undercut SRSA in the marketplace. *See id.*; ECF 268 ¶¶4-11. Therefore, it should be subject to restriction.

### 4. Confidential Internal SRSA Corporate Information

Finally, SRSA seeks to maintain restriction over several documents revealing sensitive SRSA business and strategy information. **First**, SRSA seeks to restrict an exhibit revealing confidential business intelligence SRSA obtained regarding a competing bank. (ECF 527-2, Ex. 53). **Second**, SRSA seeks to restrict two exhibits referencing SRSA executive compensation (ECF 524, Ex. 21; 524-1, Ex. 22).

Courts have routinely sealed such internal corporate information. *See In re High-Tech Employee Antitrust Litig.*, No. 11-CV-02509-LHK, 2013 WL 163779, at *5 (N.D. Cal. Jan. 15, 2013) (granting motion to seal with respect to defendants' "policies[] and procedures" because "the disclosure of this information could cause [d]efendants competitive harm"); *Koninklijke Philips*, 2015 WL 581574, at *1-2 (compelling reasons exist to justify sealing information about an entity's "business practices" and "recruitment efforts"); *FTC v. Qualcomm Inc.*, 2019 WL

95922, at *3. To avoid SRSA's competitors and other third parties exploiting such internal SRSA business information, such information should be restricted from public view.

### C. SRSA's Interest in the Protection of its Confidential Information Outweighs the Presumption of Public Access

No practicable alternative to restriction exists here because public disclosure of the specific, narrowly tailored information SRSA seeks to seal would destroy its value and cause significant competitive harm to SRSA.

As described above, SRSA will suffer a concrete and serious injury to its competitive standing if restriction is not maintained. Indeed, SRSA maintains confidentiality over its trade secrets and other confidential information, to maintain its competitive advantage and to avoid the inevitable harm that would result from disclosure. *See, e.g.*, ECF 295-1, ¶¶3, 10; 268, ¶¶6, 8-9, 11, 13; 266, ¶¶6, 11, 14, 16, 20-21, 24. In such cases, to avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request. *See Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2014 WL 6886923, at *3 (D. Colo. Dec. 5, 2014).

SRSA's interest in its confidential information outweighs the presumption of public access. Indeed, in the context of a trade-secret dispute like here, the legislatures have already weighed the competing concerns and decided in favor of restriction. COLO. REV. STAT. § 7-74106; 18 U.S.C. § 1835 (requiring courts to "enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets"). And having already granted motions to restrict covering these same categories of information,[3] this Court

---

[3] *See* footnote 1, *supra*.

has already recognized that SRSA's interests outweigh the presumption of public access. Moreover, the public has minimal interest in access to any portions of the exhibits that are not cited in a brief. *See L-3 Communs. Corp. v. Jaxon Eng'g & Maint., Inc.*, 125 F. Supp. 36 1155, 1186 (D. Colo. 2015) ("Any portion of an exhibit that is not specifically cited in a party's brief is, by definition, beyond the scope of the Court's review and thus irrelevant.").

There is no practicable alternative to restriction, and only restriction will adequately protect SRSA's interest. The competitive value of the information for which SRSA seeks restriction is derived from its non-public nature. *See, e.g.*, ECF 295-1 ¶¶3, 10; ECF 268 ¶¶6, 8-9, 11, 13; ECF 266 ¶¶6, 11, 14, 16, 20-21, 24.

Recognizing the public value of access to this Court's records, however, SRSA is willing to file public redacted versions of the restricted documents to narrowly tailor its request as much as practicable under the circumstances. *Slawson Exploration Co. v. Arch Specialty Ins. Co.*, No. 15-cv-01131-KLM, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

### D. The Court Should Not Resolve Questions of Trade-Secret Status on a Motion to Restrict

Notwithstanding these facts, Defendants have declared their intent to oppose this motion, on the basis that the information is not sufficiently confidential.[4] That is not only wrong on the facts, as described above; it is also procedurally improper. Defendants are not entitled to a second bite at the apple on their summary-judgment motion by arguing, in opposition to a motion

---

[4] On September 28, 2021, Defendants represented that they would oppose the entirety of SRSA's motion except for SRSA's request to maintain restriction over: (1) the non-public escrow amounts listed on ECF pages 6 to 12 of ECF 522; (2) ECF 523-7; (3) ECF 524 ¶1; (4) ECF 524-1 ¶1; (5) ECF 530 Ex. A; and (6) ECF 531-1 to ECF 531-3.

14

to restrict, that SRSA's confidential information does not qualify as trade-secret. *See, e.g.*, *Deschenes Consulting LLC v. Nu Life Mkt. LLC*, No. 19-cv-03465-RM-SKC, 2020 WL 2747702, at *3 (D. Colo. May 27, 2020) (rejecting "Deschenes's argument . . . that Nu Life's motions to restrict should not be granted unless and until Nu Life can show as a matter of law that its corporate customers' identities are trade secrets"). Motions to restrict are subject to an entirely different standard than trade-secret status, *see id.*, and are appropriate whenever disclosure "might serve as a source of business information that could harm a litigant's competitive standing," *see SBM Site Servs*, 2011 WL 1375117, at *3. Further, Colorado law instructs that courts "shall preserve the secrecy of an ***alleged*** trade secret by reasonable means, which may include . . . sealing the records of the action." COLO. REV. STAT. § 7-74-106 (emphasis added). Defendants' attempt to re-litigate the confidentiality of SRSA's customer, technical, and pricing-strategy information would turn what is typically an administrative motion into a contested, evidentiary matter—one that is not suitable for summary judgment, much less a motion to restrict. The Court should reject Defendants' procedurally improper gambit.

## III.    CONCLUSION

There is thus good cause to grant SRSA's Motion, and SRSA respectfully requests that the Court maintain Level 1 restriction over the materials identified in this Motion.

### Certificate of Conferral Under D.C.COLO.LCivR 7.1(a)

On September 28, 2021, the parties met and conferred about SRSA's Motion. Defendants intend to oppose this Motion to Restrict.

15

1749622

Respectfully submitted,

Dated: September 29, 2021

By: s/ *Victor H. Yu*
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Katie Lynn Joyce
*kjoyce@keker.com*
Victor H. Yu
*vyu@keker.com*

KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:      415-391-5400
Facsimile:       415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
*sbialecki@sheridanross.com*
Matthew C. Miller
*mmiller@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:      303 863 9700
Facsimile:       303 863 0223
Email:    *litigation@sheridanross.com*

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

## **Compliance With Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III(A)(1).

1749622