# Exhibit I

March 21, 2018 Correspondence from Walter P. DeForest to Jonathan A. Patchen

# DeForest Koscelnik Yokitis & Berardinelli
Attorneys at Law

PITTSBURGH
Koppers Building, 30th Floor
436 Seventh Avenue
Pittsburgh, PA  15219

DETROIT
440 Burroughs Street, Suite 136
Detroit, MI  48202

NEW YORK
401 Park Avenue South, 10th Floor
New York, NY  10016

Walter P. DeForest
Licensed in Pennsylvania, West Virginia, Ohio, Michigan, New York
Direct Dial:  412-227-3101
Email:  deforest@deforestlawfirm.com
REPLY TO PITTSBURGH

March 21, 2018

**VIA ELECTRONIC AND FIRST CLASS MAIL**

Jonathan A. Patchen
Taylor & Patchen, LLP
One Ferry Building
Suite 355
San Francisco, CA 94111

Re: Alex Tsarnas

Dear Mr. Patchen:

      This letter is in response to your letter to Alex Tsarnas dated March 20, 2018.  I am advised as follows.

      Regarding your request that Mr. Tsarnas provide a "written description of facts and circumstances by which Heather Kelly terminated her employment with SRS and joined PNC/Fortis," Mr. Tsarnas has limited knowledge of Heather's departure from SRS and joining PNC/Fortis. Mr. Tsarnas did not introduce Ms. Kelly to Fortis or PNC. Ms. Kelly was in contact with Fortis before Mr. Tsarnas was.  Ms. Kelly suggested that PNC/Fortis reach out to Mr. Tsarnas who had been terminated by SRS and was unemployed. Mr. Tsarnas then had conversations with PNC/Fortis about joining the company. Mr. Tsarnas believes that Ms. Kelly started at PNC on March 19th and that Ms. Kelly received a written offer to join the company sometime prior to that. He believes it is likely that Ms. Kelly accepted her offer from PNC prior to Mr. Tsarnas even receiving a draft offer from PNC, which he received on March 14th. Mr. Tsarnas is not yet an employee of PNC, although it is anticipated he shortly will be.

      Please note that there was no violation by Ms. Kelly for making the suggestion that PNC reach out to Mr. Tsarnas as he was already an unemployed former employee of SRS when she made this suggestion.

# DeForest Koscelnik Yokitis & Berardinelli

Jonathan A. Patchen
Taylor & Patchen, LLP
March 21, 2018
Page 2

      Regarding your request that Mr. Tsarnas provide a "written description of [his] reason for contacting other SRS employees, some of whom [he] had minimal contact with while employed by SRS", he does not know what employees you are referencing that you claim he has contacted that he had minimal contact with while employed by SRS. He can think of only one person with whom he had less than frequent contact and even as to that person, Alex did not solicit his employment at PNC. In any event, Alex received numerous inquiries from SRS employees in the days following his departure from SRS inquiring about his departure and indicating a concern about him. He largely responded to persons that expressed concerns about his situation. He did not make any solicitation of any of them for employment by PNC. As discussed, it was only yesterday that he received a formal offer from PNC and has not been and is not currently in a position to offer employment at PNC to anyone.

      As stated in a previous letter, Mr. Tsarnas has affirmed that he does intend to comply with any obligations he has under his employment agreement with SRS. He has also advised as follows. He has conducted a thorough search for SRS documents. The following is a description of his search. He believes that he did this search after his departure from SRS and prior to your first letter to PNC on March 9th. By that time, he had destroyed all SRS documents that he had, which were not a large amount. He has not shared any SRS documents with anyone since his departure from SRS. On his cell phone, he believes that he may have limited contact information for SRS employees and possibly a few customers of SRS that he did not have prior to his coming to SRS. He has informed me that he is purchasing a new phone today and over the next few days will be getting the phone up and running. He intends for this new phone to not contain contact information of any customers of SRS that he did not have prior to his coming to SRS or SRS employee contact information, aside from perhaps the information of some SRS employees that are personal friends of Mr. Tsarnas. The phone he was using prior to the new phone will be preserved and sent to me for safe keeping for at least a year before destruction. If any contact information of customers of SRS that Alex did not have prior to his coming to SRS or SRS employee contact information (aside from perhaps the information of some SRS employees who are personal friends of Mr. Tsarnas), is stored on the cloud or any other electronic devices in his possession, with your consent, he will delete that contact information from these devices.

      Regarding the "steps [he] will affirmatively take to avoid disclosure and/or misuse of SRS's confidential and trade secret information," Mr. Tsarnas advises that he will not disclose any trade secret, confidential, or proprietary information of SRS. As discussed above, he states that he does not have any SRS documents in his possession. Mr. Tsarnas does not know SRS's code or any similar technical knowledge about SRS. He has knowledge about how to engage in closing, disbursement, and escrow activities, none of which is a trade secret and is industry knowledge, as well as knowledge he brought to SRS.

DeForest Koscelnik Yokitis & Berardinelli

Jonathan A. Patchen
Taylor & Patchen, LLP
March 21, 2018
Page 3

Very truly yours,

DeFOREST KOSCELNIK YOKITIS
& BERARDINELLI

By
    Walter P. DeForest

WPD:sb

Nonconfidential - No Stamp

SRSAvPKT00074634