# Exhibit N

December 1, 2020 SRSA Objection to PNC Subpoena to Kivu Consulting



**KEKER VAN NEST & PETERS**

Keker, Van Nest & Peters LLP
633 Battery Street
San Francisco, CA 94111-1809
415 391 5400
keker.com

**Warren A. Braunig**
(415) 773-6642
wbraunig@keker.com

December 1, 2020

**VIA ELECTRONIC MAIL**

Hara K. Jacobs
Ballard Spahr LLP
1735 Market St., 51st Floor
Philadelphia, PA 19103-7599
jacobsh@ballardspahr.com

Re:   *SRS Acquiom Inc., et al. v. PNC Financial Services Group, Inc., et al.*
      Case No. 1:19-cv-02005-DDD-SKC

Dear Hara:

I write regarding Defendants' November 13, 2020 Notice of Subpoena of Kivu Consulting ("Kivu"), seeking a deposition of third-party Kivu Consulting on eleven identified topics. SRSA objects to this deposition in its entirety. SRSA requests that, if the parties cannot resolve this issue via meet-and-confer, the parties raise this issue with Magistrate Judge Crews, pursuant to his standing order for discovery disputes; or with Mr. Tenner, the appointed discovery special master. <u>In the meantime, please confirm that the deposition, noticed for December 8, will be held in abeyance</u>.

Kivu's work for SRSA in 2018 was performed under the auspices of counsel in connection with a forensic investigation that SRSA and its counsel understood could result in possible litigation. As you well know, discovery from an expert "retained or specially employed by another party in anticipation of litigation or to prepare for trial and who is not expected to be called as a witness at trial" is forbidden in the absence of "exceptional circumstances," which are not present here. Fed. R. Civ. P. 26(b)(4)(D). SRSA has a designated forensic expert, Andy Crain, and Defendants have deposed him. There is no good-faith basis to seek information from an earlier non-testifying forensic consultant that no party or expert is relying upon.

Topics 1, 2, 4, 5, 6, 7, 8 and 9—which concern the substance of Kivu's work—are also improper because they seek information protected by the attorney-client privilege and work-product doctrines. As you are aware, Defendants asked SRSA to produce the Kivu report last year, and we met and conferred about the issue in November 2019. As we explained during a meet-and-confer call on November 19, 2019, Kivu materials are protected by the attorney-client privilege and work-product doctrine, and appear as entries 329, 452, and 455 on SRSA's privilege log.

1526455

Hara K. Jacobs
December 1, 2020
Page 2

Following that discussion, Defendants did not challenge SRSA's privilege and work-product assertions.

In October 2020, after nearly a year of silence about the issue, Defendants sought to obtain the privileged and work-product information directly from Kivu through a third-party document subpoena.  When the subpoena bore no fruit, Defendants served a deposition subpoena on Kivu seeking similar information, plus irrelevant information regarding Kivu's handling and preservation of documents.

Defendants' subpoena tactics improperly seek the production of privileged and work-product information.  Defendants are seeking testimony about the "the work performed by Kivu" (Topic 1); Kivu's provision of evidence "extracted in furtherance of its investigation" (Topic 2); information "about documents" that were responsive to the October 2020 subpoena (Topics 4-5); and communications about this litigation, Heather Kelly, Alex Tsarnas, or PNC (Topics 6-9).

The attorney-client privilege protects against the disclosure of "communications between a client and a third-party where the communication was made in confidence for the purpose of obtaining legal advice from the lawyer."  *Collardey v. All. For Sustainable Energy, LLC*, 406 F. Supp. 3d 977, 980 (D. Colo. 2019) (internal quotation marks omitted).  Indeed, "the attorney-client privilege can extend to communications with non-attorneys 'when the purpose of the communication is to assist the attorney in rendering advice to the client.'"  *Id.* (quoting *United States v. Adlman*, 68 F.3d 1495, 1499 (2d Cir. 1995)); *see also Upjohn Co. v. United States*, 449 U.S. 383, 390 (1981) ("The privilege exists to protect not only the giving of professional advice to those who can act on it but also the giving of information to the lawyer to enable him to give sound and informed advice.").

Similar to *Collardey*—where the Court upheld the application of the attorney-client privilege to information regarding a third-party investigation that was conducted "to assist [defendant's] counsel in providing legal advice," 406 F. Supp. 3d at 980-81—the noticed Topics 1, 2, and 4-9 fall squarely within the attorney-client privilege.  The purpose of Kivu's engagement was to provide forensic analysis that would assist SRSA's counsel in providing legal advice.  *See, e.g.*, Deposition of Mark Vogel, at 162:18-22 (testifying that the Kivu investigation "was under the control of our general counsel" and "as long as it was under the control of the general counsel, I deferred to our legal advisors").

Topics 1, 2 and 4-9 are also subject to the work product doctrine.  "The work product doctrine protects materials prepared in anticipation of litigation."  *Weitzman v. Blazing Pedals, Inc.*, 151 F.R.D. 125, 126 (D. Colo. 1993).  "The doctrine is an intensely practical one, grounded in the realities of litigation in our adversary system," which includes that "attorneys often must rely on the assistance of investigators and other agents."  *United States v. Nobles*, 422 U.S. 225, 238 (1975); *see also Hallmark Cards, Inc. v. Murley*, 2010 WL 4608678, at *5 (S.D.N.Y. Nov. 9, 2010) (acknowledging that materials regarding a consultant "performing computer forensics analysis and not legal analysis" may be subject to the work-product doctrine, and collecting cases).  "The test is whether, 'in light of the nature of the [information] and the factual situation

1526455

Hara K. Jacobs
December 1, 2020
Page 3

in the particular case, the [information] can fairly be said to have been prepared or obtained because of the *prospect* of litigation.'" *Collardey*, 406 F. Supp. 3d at 982 (emphasis in original and internal quotation marks omitted).

It should come as no surprise that SRSA was concerned about Ms. Kelly's and Mr. Tsarnas's misconduct and evaluating potential legal action, as expressed in multiple letters from SRSA's outside counsel around the time of Ms. Kelly's resignation. *See, e.g.*, Letter from Patchen to Jordan (Mar. 9, 2018); Letter from Patchen to Jordan (Mar. 20, 2018); Letter from Patchen to DeForest (May 15, 2018); Letter from Patchen to DeForest (June 15, 2018). And SRSA had no business reason to take the unusual step of conducting a forensic investigation of former employees' devices, unless the possibility of legal action was on the horizon. *See, e.g.*, *Patel v. L-3 Commc'ns Holdings, Inc.*, 2016 WL 4030704, at *2-3 (S.D.N.Y. July 25, 2016) (applying work product doctrine to third-party forensic investigation materials; "to demonstrate that material is protected by the attorney work product doctrine, a party need only show that, in light of the nature of the document and the factual situation in the particular case, the document can fairly be said to have been prepared or obtained because of the prospect of litigation") (internal quotation marks omitted). Under these circumstances, the work-product doctrine plainly applies to Topics 1, 2 and 4-9. *See Collardey*, 406 F. Supp. 3d at 982-83.

The remainder of the topics concern irrelevant information about Kivu's handling and preservation of privileged and work-product documents. Kivu is not a party to this action and their handling of materials (to which Defendants were never entitled in the first place) has no bearing on any claims or defenses in this case. This is nothing more than a fishing expedition, and one that Kivu, as a third party, particularly should not have to bear.

Finally, in light of the implication raised by your subpoena that SRSA or SRSA's counsel instructed Kivu to "destroy" or "delete" information relating to this matter, I can assure you that did not happen. After alerting Kivu in early June 2019 that its services would no longer be needed, SRSA's counsel asked Kivu to provide a copy of all images of SRS Acquiom machines, and all Kivu work product, to Andy Crain at BRG. All of the information provided by Kivu to Mr. Crain has been preserved. At no point did SRSA or SRSA's counsel instruct anyone from Kivu to delete or destroy anything.

In light of the foregoing, SRSA objects to the Kivu Subpoena. If Defendants intend to continue their pursuit of this clearly improper deposition, please let me know when you are available to meet and confer.

Sincerely,

Warren A. Braunig

1526455

Hara K. Jacobs
December 1, 2020
Page 4


cc: Bridget Choi

1526455