# Exhibit P

Excerpts from March 8, 2021 Hearing

```
 1                IN THE UNITED STATES DISTRICT COURT
 2                   FOR THE DISTRICT OF COLORADO
 3                         _____
 4
           SRS ACQUIOM, INC., a            )
 5         Delaware corporation, and       )
           SHAREHOLDER REPRESENTATIVE      )
 6         SERVICES LLC, a Colorado        )
           limited liability company,      )Case No.
 7                                         )19-cv-02005-DDD-SKC
                      Plaintiffs,          )
 8                                         )
                  vs.                      )
 9                                         )
           PNC FINANCIAL SERVICES          )
10         GROUP, INC., a Pennsylvania     )
           corporation, PNC BANK, N.A.,    )
11         a national association,         )
           HEATHER KELLY, an               )
12         individual, and ALEX            )
           TSARNAS, an individual,         )
13                                         )
                      Defendants.          )
14                                         )
15
16
17
18                   REMOTE VIDEOTAPED HEARING
19                     Monday, March 8, 2021
20                       Denver, Colorado
21
22
23
24
25     Reported by:  B. Suzanne Hull, CSR No. 13495
```

Page 1

```
 1   a letter.  But that doesn't go to the question of did
 2   you reasonably anticipate litigation on March -- and
 3   especially --
 4           SPECIAL MASTER TENNER:  Sending a letter goes
 5   to that issue.  It just doesn't answer the question.
 6           MR. ROBBINS:  Well, so if it doesn't answer the
 7   question, to me it is nonresponsive and not part of the
 8   answer.  The answer is --
 9           SPECIAL MASTER TENNER:  So if it is not -- if
10   it is nonresponsive, it is not an admission or a denial.
11           MR. ROBBINS:  Except at --
12           SPECIAL MASTER TENNER:  It is nonresponsive.
13           MR. ROBBINS:  Except at the end where they
14   deny.  That becomes the denial, in my view.
15           SPECIAL MASTER TENNER:  But the denial -- the
16   denial is conditional on all of the other admissions
17   that come before it.
18           MR. ROBBINS:  Okay.  But if -- but if those --
19   if we agree those are improper and irrelevant, I don't
20   believe you can actually then condition it based on
21   something that is improper or irrelevant.  But I --
22   I think we appreciate each other's, perhaps, difference
23   of opinion on that.
24           But I want to also talk about another fact:
25   Why SRS' claim that litigation was imminent during this
```

1            But now as we get to the evidence SRS cites, as
2     you heard Mr. Yu -- I'm not going to go in depth about
3     those letters again.  I think, Mr. Tenner, you are
4     familiar with the content.  I want to pull out a couple
5     things about that.
6            First is that Mr. Yu was saying May and June of
7     2018 letters.  I don't think that is relevant to
8     determine whether in March of 2018 there was
9     a likelihood of litigation at the time.  Because when we
10    talk about those May and June letters, those were
11    directed solely to Mr. Tsarnas.  And the issue about
12    Kivu, as we understood it, is that Kivu's work related
13    to Ms. Kelly's computer; so I don't understand how work
14    from Ms. Kelly's computer in March of 2018 is somehow
15    relevant that they sent letters to Mr. Tsarnas in May
16    and June of 2018.
17           And then as we get to the -- and I think that
18    is even more noteworthy given that one of the things we
19    learned at the end of the evidentiary hearing was that
20    SRS' expert -- retained expert, Mr. Crain, testified
21    that with respect to Ms. Kelly computer, he relied on an
22    image of that computer that he had received, which we
23    believe to have been done by Kivu.
24           But with respect to Mr. Tsarnas, he testified
25    that it was his firm who created the image of

Page 29

```
 1              Just to answer your question directly, the
 2    appropriate time to take discovery about the Kivu image
 3    that -- that had the forensic artifacts on it subject to
 4    Mr. Crain's analysis would have been at Mr. Crain's
 5    deposition.  That is a routine topic of expert
 6    deposition, which is to learn about the materials that
 7    the expert relied on.
 8              I did want to just directly respond to
 9    something that Mr. Robbins mentioned just now, which is
10    the sort of insinuation that there was a mutuality of
11    the provision of forensic devices in this lawsuit.  To
12    be very clear, we offered to defendants to let them make
13    requests for forensic artifacts from the image of
14    Ms. Kelly's computer to the same extent that we were
15    permitted to make requests for forensic artifacts of the
16    computers and devices that have been in defendants'
17    possession and that they, therefore, turned over to
18    Forensic Neutral; so neither party has had direct access
19    to the complete images of devices in the possession of
20    the other side.  Those images, of course, would contain
21    user-generated content, e-mails, documents that could be
22    subject to privilege, documents that could be highly
23    confidential and not relevant to the lawsuit; and so the
24    reason we didn't give them an image is because of that.
25    To be very clear, though --
```

```
 1              SPECIAL MASTER TENNER:  But what I am hearing
 2    is that you offered them a form of access to the image.
 3              MR. ROTHSTEIN:  A form of access that was the
 4    same as the form of access that we were offered to the
 5    images in their possession.
 6              And, also, just to be clear, we produced at the
 7    time that Mr. Crain submitted his expert report or
 8    before -- I think it was actually in the fall of 2019,
 9    the actual forensic artifacts that he relied on and
10    considered in rendering his actual expert opinions, as
11    we are required to do under Rule 26; so I just wanted to
12    clarify the record on that point.
13              SPECIAL MASTER TENNER:  Okay.  Anybody want
14    to -- does anybody disagree with Mr. Rothstein's
15    statement that you were offered access to the image in
16    the same way that you offered access to the images of
17    your computers?
18              MR. ROBBINS:  I think the -- the difference is
19    that the forensic protocol required us to provide images
20    to Forensic Pursuit of our devices, which we did.  Then
21    it becomes a question of what queries can you run and
22    what information will the other side agree to allow to
23    be produced.  So you know, it -- I can't say that we
24    were -- the access that you are really talking about is
25    not the access to actual queries but the access to,
```

Page 59

```
 1   STATE OF CALIFORNIA.    )
                             )  ss.
 2   COUNTY OF KERN          )
 3
 4
 5           I, B. Suzanne Hull, a Certified Shorthand
 6   Reporter for the State of California, hereby certify
 7   that I was present remotely via Zoom virtual technology
 8   and reported in stenotypy all the proceedings in the
 9   foregoing-entitled matter; and I further certify
10   that the foregoing is a full, true, and correct
11   statement of such proceedings and a full, true, and
12   correct transcript of my stenotype notes thereof.
13           Dated this 10th day of March, 2021, at
14   Bakersfield, California.
15
16
17                    [signature]
18                    B. Suzanne Hull, CSR No. 13495
19
20
21
22
23
24
25
```

Page 108