**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability company,

        Plaintiffs,

  v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

        Defendants.

**PLAINTIFFS' UNOPPOSED MOTION TO RESTRICT PLAINTIFFS' RESPONSE TO DEFENDANTS' OBJECTION TO SPECIAL MASTER ORDER (ECF NO. 570) AND EXHIBITS B AND E THERETO (ECF NOS. 570-1 AND 570-2)**

Plaintiffs SRS Acquiom Inc. and Shareholder Representative Services LLC (collectively, "SRSA") move to continue to restrict Plaintiffs' Response to Defendants' Objection to Special Master Order (ECF No. 570) and Exhibits B and E thereto (ECF Nos. 570-1 and 570-2). Each of these documents was filed as Restricted Level 1. Good cause exists to grant this unopposed Motion, especially as the Court has already granted prior motions to restrict this information. In support thereof, SRSA states as follows:

## I.   ARGUMENT

"[W]here documents are used to determine litigants' substantive legal rights," restriction is appropriate when the parties "articulate a real and substantial interest that justifies depriving the public of access to the records that inform our decision-making process." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1242 (10th Cir. 2012) (citation omitted).

Under D.C.COLO.LCivR 7.2(c), a motion to restrict public access to documents filed with the Court must: (1) identify the document or the proceeding for which restriction is sought; (2) address the interest to be protected and why such interest outweighs the presumption of public access; (3) identify a clearly defined and serious injury that would result if access is not restricted; (4) explain why no alternative to restriction is practicable or why only restriction will adequately protect the interest in question; and (5) identify the level of restriction sought. Each of these factors is met here.

### A.     Description Of Documents And Restriction Level Sought

SRSA seeks to maintain Level 1 restrictions for the below documents:

| Document | Portion for Which SRSA Seeks Level 1 Restriction |
|---|---|
| Plaintiffs' Response to Defendants' Objection to Special Master Order (ECF No. 570) | • Page 10, footnote 6, the portion in between "First, SRSA's disclosures to LMP stated" and "Second, Kelly's 'save the date'" |
| Exhibit B to Plaintiffs' Response to Defendants' Objection to Special Master Order (ECF No. 570-1) | • Paragraph 17 (ECF No. 570-1 – Page 8 of 29)<br>• Table 2, following Paragraph 26 (which appears on ECF No. 570-1 – Pages 10, 11, and 12 of 29)<br>• Paragraph 27 and Table 3, which follows it (which appears on ECF No. 570-1 – Pages 12 and 13 of 29)<br>• Paragraphs 28, 29, and 30 (ECF No. 570-1 – Page 13 of 29)<br>• Table 4, following Paragraph 31 (ECF No. 570-1 – Page 14 of 29)<br>• Paragraphs 35(a) – 35(h) (ECF No. 570-1 – Page 15 of 29)<br>• Table 6 and Table 7, following Paragraph 55.b (ECF No. 570-1 – Page 21 of 29)<br>• Table 8, following Paragraph 64 (ECF No. 570-1 – Page 23 of 29) |
| Exhibit E to Plaintiffs' Response to Defendants' Objection to Special Master Order (ECF No. 570-2) | • Page 7, the entirety of the "compensation" portion of Alex Tsarnas' SRSA employment contract |

### B.     SRSA's Interest In The Protection Of Its Confidential Information Outweighs The Presumption Of Public Access

This Motion seeks restriction of SRSA's trade secrets. In a trade-secrets dispute, the "[p]otential damage from release of trade secrets is a legitimate basis for sealing documents." *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 612 (S.D.N.Y. 1998). A court "shall enter such orders and take such other action as may be necessary and appropriate to preserve the confidentiality of trade secrets." 18 U.S.C. § 1835; *see* Colo. Rev.

2

Stat. § 7-74-106 ("[A] court shall preserve the secrecy of an alleged trade secret by reasonable means, which may include . . . sealing the records of the action.").

This Motion also seeks restriction of SRSA's confidential business information. Courts have the power to restrict this type of information. *See Nixon v. Warner Communs.*, 435 U.S. 589, 598 (1978) (noting that courts have "refused to permit their files to serve as . . . sources of business information that might harm a litigant's competitive standing"). Under D.C.COLO.LCivR 7.2, courts in this District have frequently concluded that "the presumption of public access to Court files is outweighed by [a party's] interest in maintaining its business information private." *Genscape, Inc. v. Live Power Intelligence Co. NA, LLC*, No. 18-cv-02525-DDD-KLM, 2019 WL 4242669, at *4 (D. Colo. Sept. 5, 2019). And courts in this district have recognized that information need not qualify for trade secret protection to meet that standard. *See, e.g.*, *Anchondo-Galaviz v. State Farm Mut. Auto Ins. Co.,* No. 18-cv-01322-JLK-NYW, 2019 WL 11868519, at *11 (D. Colo. July 19, 2019) (granting motion to restrict despite the court's "skeptic[ism] that [the] materials . . . constitute cognizable trade secrets").

Here, SRSA seeks to restrict sensitive business information in the form of (1) information related to a confidential, highly-sensitive merger SRSA participated in; (2) SRSA's confidential and trade secret customer information; (3) SRSA's confidential and trade secret product strategies and payments spreadsheet; and (4) confidential information relating to SRSA's executive compensation. Restriction over these categories of information is warranted here lest the Court's "files might serve as a source of business information that could harm a litigant's competitive standing." *SBM Site Servs., LLC v. Garrett*, No. 10-cv-00385-WJM-BNB, 2011 WL 1375117, at *3 (D. Colo. Apr. 12, 2011).

### 1. Confidential Information regarding Merger Agreement and Related Due Diligence

SRSA seeks to restrict confidential, non-public and sensitive information found in SRSA's Response related to a confidential, highly-sensitive merger, the merger agreement and related due diligence. The Court, recognizing the sensitive nature of this information, has previously granted motions to restrict the same information in the underlying documents. *See* ECF Nos. 436 (granting motion to restrict schedule to merger agreement previously submitted at ECF No. 418-2) and 447 (granting motion to restrict cited portions of ECF No. 424-3).

The portions of the Response for which SRSA seeks restriction reveal non-public, confidential SRSA and third-party information regarding due diligence performed in connection with a third-party investment into SRSA.[1] The Response reveals specific discussions and communications between SRSA and its investment firm in connection with the transaction, and their public disclosure would reveal confidential information about SRSA's business and its operations. Such information should be restricted from public view. *See Sumotext Corp. v. Zoove, Inc.*, No. 16-cv-01370-BLF, 2020 WL 836737, at *2 (N.D. Cal. Feb. 2, 2020) (granting motion to seal due diligence information and noting that "[d]ue diligence reports are commonly prepared by companies considering an acquisition and thus typically involve detailed confidential data about the target business.").

### 2. SRSA's Confidential and Trade Secret Customer Information

SRSA also seeks to restrict documents revealing SRSA's confidential and trade secret customer information included in the Crain Report attached to the Response as Exhibit B (ECF

---

[1] The need to restrict the information from the schedule to the merger agreement is also discussed in SRSA's prior motion to restrict Defendants' Objection (ECF No. 568).

4

No. 570-1). The Court has recognized the highly-sensitive nature of this information by granting a previous motion to restrict access to the exact same portions of the Crain Report. *See* ECF No. 382.

SRSA seeks Level 1 restriction over several, narrowly tailored portions of Exhibit B that reveal the identities of SRSA customers that Kelly and Tsarnas unlawfully poached using SRSA confidential information. *See, e.g.*, ECF No. 570-1 at Pages 10-15, 23. Such customer information has routinely been afforded trade secret status worthy of sealing. *See Haggard v. Spine*, No. 09-cv-00721-CMA-KMT, 2009 WL 1655030, at *9 (D. Colo. June 12, 2009) (recognizing that "information regarding [] customers' surgical specialties, business preferences, and contact people" was a trade secret); *see also Doubleclick Inc. v. Paikin*, 402 F. Supp. 2d 1251, 1258 (D. Colo. 2005); *Johnstech Int'l Corp. v. JF Microtechnology SDN*, No. 14-cv-02864-JD, 2016 WL 4091388, at *3 (N.D. Cal. Aug. 2, 2016) (granting motion to seal "specific customer names and the percentage of business to those customers").

Indeed, the disclosure of such information would be highly damaging to SRSA's competitive standing in the marketplace. As articulated in the declaration of SRSA's Director of Business Intelligence, SRSA's compilations of customer names and information are maintained secretly and not disseminated to competitors. *See* ECF No. 266 ¶¶ 1-22; ECF No. 262 at 12-13. Such information would be quite valuable to a competitor in the online payments-and-escrow products industry, who could then use such information to solicit SRSA's customers. *See* ECF No. 266 ¶¶ 6, 10-11, 14, 16, 20-21.

5

### 3.  SRSA's Confidential and Trade Secret Product Strategies and Payments Spreadsheet

SRSA further seeks to restrict SRSA's confidential and trade secret product strategies and payments spreadsheet included in the Crain Report attached to the Response as Exhibit B (ECF No. 570-1). The Court has recognized the highly-sensitive nature of this information by granting a previous motion to restrict access to the exact same portions of the Crain Report. *See* ECF No. 382.

In particular, SRSA seeks Level 1 restriction over two narrowly tailored portions of Exhibit B that reveal SRSA's confidential and trade secret product-development strategies (*see* ECF No. 570-1 at Page 8 of 29), as well as screen-shots of portions of SRSA's confidential and trade secret "payments spreadsheet," which is a foundational document to SRSA's online platform (*see* ECF No. 570-1 at Page 21 of 29).

The public disclosure of "highly sensitive information regarding [Plaintiff's] product architecture and development . . . could cause harm to [Plaintiff] if the information were to become known to a competitor." *Delphix Corp. v. Actifio, Inc.*, No. 13-cv-04613-BLF, 2014 WL 4145520, at *2 (N.D. Cal. Aug. 20, 2014). And here, such technical information took years of research and development for SRSA to develop, is not disclosed publicly or only disclosed with appropriate confidentiality restrictions, and is worthy of trade-secret status. *See* ECF Nos. 256-10 ¶¶ 7-14, 21-65; 262 at 7-10, 19-26. As attested to in SRSA's employee declaration, a competitor armed with such information would gain significant insight into how to mimic SRSA's industry-leading products, and cause SRSA competitive harm in the marketplace. *See* ECF No. 256-10 ¶¶ 7-14, 21-65.

### 4. Confidential Information Relating to SRSA's Executive Compensation

SRSA further seeks to restrict a portion of Exhibit E revealing the amount of compensation SRSA provided to one of its senior executives. Courts have routinely sealed employee compensation information. *See Southcentral Found. v. Alaska Native Tribal Health Consortium*, No. 3:17-cv-00018-TMB, 2018 WL 11352150, at *7 (D. Alaska Sept. 17, 2018) (granting motion to seal non-public employee compensation information because competitors could use employee compensation information "to undercut [employer's] compensation terms"); *see also East West Bank v. Shanker*, No. 20-cv-07364-WHO, 2021 WL 3112452, at *17 (N.D. Cal. July 22, 2021) (granting request to seal information about employee compensation for defendant). "Public disclosure of [employee compensation] information will disadvantage [SRSA] by allowing its competitors to offer better terms to prospective employees." *See Cellular Communs. Equip. v. Apple Inc.*, No. 6:14-cv-251-KNM, 2017 WL 10311215, at *4 (E.D. Tex. Jan. 5, 2017). And because compensation is not at issue here, the public has minimal interest in the public disclosure of this information.

### C.  There Is No Practicable Alternative To Restriction

No practicable alternative to restriction exists here because public disclosure of the specific, narrowly tailored information SRSA seeks to seal would destroy its value and cause significant competitive harm to SRSA. SRSA maintains confidentiality over its trade secrets and other confidential information, to avoid the inevitable harm that would result from disclosure. In such cases, to avoid the public disclosure of "proprietary information that might lead to economic harm if available to [SRSA's] competitors," this Court should grant SRSA's sealing request. *See Healthtrio, LLC v. Aetna, Inc.*, No. 12-cv-03229-REB-MJW, 2014 WL 6886923,

7

at *3 (D. Colo. Dec. 5, 2014). Recognizing the public value of access to this Court's records, SRSA is willing to file public redacted versions of the restricted documents to narrowly tailor its request as much as practicable under the circumstances. *Slawson Exploration Co. v. Arch Specialty Ins. Co.*, No. 15-cv-01131-KLM, 2016 WL 1572370, at *11-12 (D. Colo. Apr. 19, 2016) (granting motion to restrict in part based on party's filing of public redacted versions).

There is thus good cause to grant SRSA's unopposed Motion, and SRSA respectfully requests that the Court maintain Level 1 restriction over the materials identified in this Motion.

## Certificate of Conferral Under D.C.COLO.LCivR 7.1(a)

On November 15 and 18, 2021, the Parties met and conferred about SRSA's Motion. Defendants do not oppose this Motion to Restrict. However, Defendants do not waive the right to contest the confidentiality and/or trade secret nature of the materials Plaintiffs seek to restrict in the future, including on the merits of the case, and expressly reserve their right to do so. The Parties agree that Defendants' non-opposition to this Motion shall not be used as an admission against Defendants or for any other purpose.

Dated: November 23, 2021

Respectfully submitted,

By: s/ *Brian S. Boerman*
Warren A. Braunig
*wbraunig@keker.com*
Michelle S. Ybarra
*mybarra@keker.com*
Benjamin D. Rothstein
*brothstein@keker.com*
Katie Lynn Joyce
*kjoyce@keker.com*
Victor H. Yu
*vyu@keker.com*
KEKER, VAN NEST & PETERS LLP
633 Battery Street
San Francisco, CA 94111-1809
Telephone:	415-391-5400
Facsimile:	415-397-7188

SHERIDAN ROSS P.C.
Scott R. Bialecki
*sbialecki@sheridanross.com*
Brian S. Boerman
*bboerman@sheridanross.com*
1560 Broadway, Suite 1200
Denver, Colorado 80202
Telephone:	303 863 9700
Facsimile:	303 863 0223
Email:	*litigation@sheridanross.com*

Attorneys for Plaintiffs
SRS ACQUIOM INC. AND
SHAREHOLDER REPRESENTATIVE
SERVICES LLC

**Compliance With Type-Volume Limitation**

I hereby certify that the foregoing pleading complies with the type-volume limitation set forth in Judge Domenico's Practice Standard III.A.1.

9