IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Daniel D. Domenico**

Civil Action No. 1:19-cv-02005-DDD-SKC

SRS ACQUIOM INC.; and
SHAREHOLDER REPRESENTATIVE SERVICES LLC,

    Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC.; and
PNC BANK, N.A.; and
HEATHER KELLY; and
ALEX TSARNAS,

    Defendants.

## ORDER ON EXPERT OPINIONS AND DISCOVERY

    SRS Acquiom, Inc. and Shareholder Representative Services LLC (collectively, "SRSA") allege that Heather Kelly and Alex Tsarnas improperly revealed trade secrets to their new employers, PNC Financial Services Group, Inc. and PNC Bank, N.A. (collectively, "PNC"). The parties have moved to exclude expert opinions under Rule 702 and have objected to rulings by Magistrate Judge Crews and Special Master Tenner. For the reasons stated below, the motions are denied, and the objections are overruled.

## DISCUSSION

### I. Motions to Exclude Expert Witnesses

#### A. Legal Standards

Federal Rule of Evidence 702 permits testimony by experts if the following four factors are met:

> (a) the expert's scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue;
>
> (b) the testimony is based on sufficient facts or data;
>
> (c) the testimony is the product of reliable principles and methods; and
>
> (d) the expert has reliably applied the principles and methods to the facts of the case.

Fed. R. Evid. 702.

#### B. Greg Regan

The defendants' motion to exclude Greg Regan's testimony under Rule 702 is denied because they have not shown that his testimony would be unreliable. Doc. 442. The defendants' argument hinges on Mr. Regan's allegedly unjustified assumption and alleged failure to account for relevant data. *Id.* They argue that Mr. Regan's analysis wrongly assumes the extent to which SRSA could provide escrow services and the extent of its development costs, and wrongly fails to account for SRSA's records showing that it does not win every deal it bids on, its lost profits associated with its acquisition, PNC's historic record of providing escrow services, and the earnout paid by PNC to Fortis's shareholders.

While Rule 702 requires that expert testimony be based on sufficient evidence and that it use reliable principles and methodologies, it does not require that all expert conclusions be true. That determination belongs to the jury. "The evidentiary requirement of reliability is lower than the merits standard of correctness." *In re Paoli R.R. Yard PCB Litig.*, 35 F.3d 717, 744 (3d Cir. 1994) (quoted with approval in Fed. R. Evid. 702 2000 advisory committee's note). The Supreme Court's foundational *Daubert* opinion contemplates the admission of "shaky" evidence, noting that "[v]igorous, cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof" are sufficient remedies. *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579, 596 (1993).

I find that Mr. Regan's opinion is sufficiently reliable and meets Rule 702's standards for admission. Mr.Regan "analyzed hundreds of documents produced by the parties, and numerous depositions, discovery responses, pleadings, and treatises." Doc. 462 at 5. "Citing authoritative sources, Regan calculated lost profits based on 'the difference in profits between (a) what the plaintiffs would have earned but for the defendants' actions and (b) the actual profits made by the plaintiff,' and unjust enrichment based on an accounting of certain profits realized by Defendants." *Id.* I find that Mr. Regan's testimony uses sufficiently reliable data and methodology and could help a finder of fact understand evidence or determine a fact at issue. Flaws in his methods or data may be fodder for cross-examination, but do not warrant exclusion of his testimony.

### C. Adam Woodworth

The defendants' motion to exclude Adam Woodworth's testimony is denied because he is qualified to testify as an expert, his testimony

- 3 -

would assist a trier of fact, and his testimony is sufficiently reliable for the purposes of Rule 702. Doc. 443. The defendants argue that Mr. Woodworth is unqualified because his experience as a software engineer did not include time developing financial services software, because his testimony amounts to rehashing the statements of SRSA employees, and because his testimony uses unreliable methodology and insufficient information.

I find that Mr. Woodworth's experience in software development is sufficient to qualify him as an expert on financial-services software. Mr. Woodworth has been the Chief Technology Officer of SRSA, a financial-services software company since September 2019. Doc. 433-1 at 4. He has worked as a software professional for thirty-three years, has been "involved in all aspects of system and software development," and has been "responsible for the installation and maintenance of complex hardware systems, developed software solutions on multiple computing platforms, and managed high-functioning software development teams for different companies." *Id.*

I also find that Mr. Woodworth's opinion would assist the trier of fact and does not simply rehash his colleagues' statements. The defendants allege that "[n]owhere in his Report does Woodworth independently assess whether the information he alleges Tsarnas or Kelly disclosed reflects SRSA information," but that is an overstatement. Doc. 433 at 6-7. In the paragraph that the defendants find issue with, Mr. Woodworth opines that notes from a PNC meeting "precisely reflect[] the manner in which SRSA's product executes those same tasks," Doc. 433-1 at 34-35. Throughout the rest of his opinion, Mr. Woodworth opines on how SRSA software works, its similarities with PNC's software, and PNC's ability to replicate it. Again, to the extent his opinion is based on "shaky" information from SRSA employees, that can be brought out on cross-

examination. I find that his opinions, which use quotations from his colleagues as evidence, nonetheless provide distinct information for the finder of fact.

Mr. Woodworth's second opinion is likewise based on sufficient evidence and methodology to satisfy the requirements of Rule 702. The defendants argue that his assertion that PNC would need "16-24 months to bring a commercially viable product to market" is unsupported by any methodology, Doc. 433 at 15, but an expert may "tie observations to conclusions through the use of what Judge Learned Hand called 'general truths derived from . . . specialized experience.'" *Kumho Tire Co. v. Carmichael*, 526 U.S. 137, 148 (1999). The defendants separately argue for excluding this opinion because Mr. Woodworth used a timeline from separate testimony without independently testing its veracity. Doc. 433 at 17. It is unnecessary, for the purposes of Rule 702, for Mr. Woodworth to have independently verified the basis for his testimony. Mr. Woodworth's testimony satisfies the requirements of Rule 702.

### D.  Richard Harroch

SRSA's motion to exclude Richard Harroch's testimony under Rule 702 is denied because Mr. Harroch is qualified as an expert, and his testimony is based on sufficiently reliable evidence and methodology. SRSA asserts that Mr. Harroch lacks expertise to opine on "the commercial value of SRSA's trade secrets, whether or not they are the sort of information he would consider secret, and the reasons why customers might choose one paying agent over another." Doc. 434 at 10. I disagree. Mr. Harroch is a Managing Director and Global Head of M&A for VantagePoint Capital Partners, a venture capital firm investing in software companies, the founder of several internet companies, and a former mergers and acquisitions lawyer. Doc. 459-1 at 3. I find that Mr. Harroch's

experience in software and M&A is sufficient for him to opine on those topics. SRSA argues that Mr. Harroch's testimony is unreliable because he is insufficiently familiar with SRSA's business model, Doc. 434 a 14-15, and its trade secrets, *id.* at 16, and because he hasn't reviewed sufficient transaction documents or M&A deal data. *Id.* at 18. As explained in Section II(B) above, expert testimony need not be correct to be admissible. I find that Rule 702 does not preclude Mr. Harroch from testifying.

## II. Defendants' Objection to Magistrate Judge's Discovery Order

The defendants have registered two objections to one of Magistrate Judge Crews's discovery orders. Doc. 441. They object to Judge Crews's order that they disclose all communications since 2016 between Defendant Kelly and her colleague Alex Kingsley, who is a witness in this case, on the basis that it is irrelevant and that the production is disproportionate to the needs of this case. Doc. 453 They also object to Judge Crews's order that SRSA CEO Paul Koenig, another witness in this case, need not disclose his financial interest in the litigation. When a magistrate judge issues a ruling on a nondispositive matter, a district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law." Fed. R. Civ. P. 72(a). Since neither of Judge Crews's orders is clearly erroneous or contrary to law, the defendants' objections are overruled.

### A. Communications with Alex Kingsley

SRSA's Request for Production No. 8 to Defendant Kelly seeks "All communications with Alex Kingsley . . . from January 1, 2016 until the present." Doc. 348 at 1-2. The defendants objected to this RFP on the basis that it was irrelevant, *id.* at 2, but Special Master Tenner

- 6 -

concluded that those communications were relevant since "Plaintiffs made a prima facie case at the hearing that [Mr. Kingsley's] relationship with Ms. Kelly might affect his credibility." *Id.* Special Master Tenner further ruled that "[i]f Defendants believe that communications are irrelevant, they may withhold a communication and note it on a relevancy log," which would "include all of the information that would be included on a privilege log" and "should be sufficient for Plaintiffs to determine if the document is relevant and discoverable." *Id.* Judge Crews overruled the defendants' objections to Special Master Tenner's order. Doc. 441.

The defendants first object to this ruling on the basis that the discovery is irrelevant, and therefore not discoverable under Fed. R. Civ. P. 26(b)(1). According to the defendants, "[t]he only conceivably relevant Kingsley-related communications—those related to the Declaration—have been produced." Doc. 452 at 9. The defendants then argue that "the burden and expense of drafting a detailed log of hundreds of banal communications between Kelly, Kingsley, and others outweighs its possible benefit." Doc. 452 at 11.

The defendants are mistaken in stating that only the communications related to Mr. Kingsley's declaration are relevant. As Special Master Tenner noted, "Plaintiffs made a prima facie case at the hearing that his relationship with Ms. Kelly might affect his credibility." Doc. 348 at 2. Evidence that Mr. Kingsley lacks credibility as a witness is relevant to "a party's claim or defense." Fed. R. Civ. P. 26(b)(1); *see also* Fed. R. Evid. 401. Further, the defendants would not be unduly prejudiced by these disclosures, since they may withhold any communications that are irrelevant to Mr. Kingsley's credibility as a witness. Special Master Tenner's ruling was a reasonable application of Rule 26(b)(1) and thus Judge Crews' order upholding it was neither contrary to law nor clearly erroneous. The defendants' objection is overruled.

### B. Paul Koenig's Financial Interest in This Lawsuit

Defendants' Interrogatory No. 44 "asks SRSA to identify the financial interest Paul Koenig—SRSA's Co-Founder and CEO—has in the outcome of the litigation." Doc. 400 at 8. SRSA replied that Mr. Koenig is a shareholder of SRSA and has no financial interest in the litigation other than his generalized interest as a stockholder. *Id.* Special Master Tenner ordered SRSA to "fully disclose[] Mr. Koenig's stockholding and any other financial interest he has in the outcome of this litigation," *id.* at 9, but Judge Crews overruled that order. Doc. 441.

The defendants object to this ruling on the basis that Mr. Koenig's financial interest in SRSA affects his credibility as a witness. I agree, but it does not follow that the defendants require further disclosures from him. SRSA has already disclosed that Mr. Koenig is an SRSA stockholder, which means that he stands to benefit from any increase in SRSA shares. Any juror could infer from Mr. Koenig's position as CEO that his shares are likely substantial. This is sufficient for the defendants to question Mr. Koenig's impartiality before a jury, and they do not need a precise disclosure to flesh out their point. Since Judge Crews's order was neither contrary to law nor clearly erroneous, the defendants' objection is overruled.

### III. Defendants' Objection to Special Master's Discovery Order

The defendants object to Special Master Tenner's order quashing their subpoena to Kivu Consulting. Doc. 563. Their objection is overruled because Special Master Tenner's decision was an appropriate application of Rule 26 to the facts of this case. "[T]he court may set aside a master's ruling on a procedural matter only for an abuse of discretion," Fed. R. Civ. P. 53(f)(5), but it must review all factual and legal findings underlying it de novo. Fed. R. Civ. P. 53(f)(3), (4). Special Master Tenner

- 8 -

quashed the defendants' subpoena to Kivu Consulting on the basis that its work for SRSA was prepared in anticipation of litigation, and therefore not discoverable under Fed. R. Civ. P. 26(b)(4)(D). I agree.

Rule 26(b)(4)(D) provides that "a party may not, by interrogatories or deposition, discover facts known or opinions held by an expert who has been retained or specially employed by another party in anticipation of litigation . . . and who is not expected to be called as a witness at trial." The parties dispute whether SRSA hired Kivu Consulting in anticipation of litigation and therefore whether the above exemption applies. I find that it did and that Special Master Tenner properly quashed the defendants' subpoena.

SRSA's counsel first instructed it to hold and preserve documents relating to this case in January 2018, before Defendant Kelly resigned from SRSA, but after Defendant Tsarnas had done so. Doc. 569-1 at 3. On March 9, 2018, SRSA's counsel warned PNC that SRS would "aggressively pursue legal remedies available to us should there be violation of" Kelly's and Tsarnas's contractual terms. Doc. 569-2 at 2. By the time SRSA hired Kivu Consulting to examine Defendant Kelly's laptop, on March 15, 2018, it had been contemplating trial for at least two months. Doc. 562 at 3; Doc. 570 at 7. Its express purpose in hiring Kivu Consulting, a forensics firm, was almost certainly to related to potential litigation.

The defendants argue that Kivu Consulting was not hired in anticipation of litigation and offer evidence showing that SRSA did not plan on suing the defendants as early as March 2018. It notes that SRSA's CEO's letter threatened to "monitor" Kelly and Tsarnas "over the coming year," implying that SRSA planned to wait at least a year before filing suit. Doc. 569-2 at 2. SRSA did not issue a written litigation hold

until May 7, 2019. Doc. 562-10 at 3. In September 2018, it reported to its private-equity acquirer that it was monitoring potential misappropriation by Defendant Tsarnas and PNC, but not by Defendant Kelly, but it hired Kivu to investigate Defendant Kelly's laptop. Doc. 562-12 at 4.

Rule 26(b)(4)(D) protects work by experts made in anticipation of litigation. SRSA has shown that in March 2018, it was preparing to potentially take legal action against the defendants and that its express purpose in hiring Kivu Consulting was to prepare for this litigation. That its suit did not fully materialize until much later does not undermine Rule 26's protection. *See In re Leslie Fay Cos. Sec. Litig.*, 161 F.R.D. 274, 280 (S.D.N.Y. 1995) ("While the 'anticipation of litigation' requirement does not limit protection to documents prepared in the course of an ongoing litigation against the specific party attacking the invocation of the doctrine, the documents must have been prepared at least with 'an eye toward litigation.'"). The defendants' objection is overruled.

## CONCLUSION

It is **ORDERED** that:

The motions to exclude expert testimony, **Docs. 432, 433, 434**, are **DENIED**;

The objection to Magistrate Judge Crews's order, **Doc. 452**, is **OVERRULED**; and

The objection to the Special Master Tenner's order, **Doc. 562**, is **OVERRULED**.

DATED: July 7, 2023

BY THE COURT:

~~Daniel D.~~ Domenico
United States District Judge