IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 19-cv-02005-DDD-SKC

SRS ACQUIOM INC., a Delaware corporation, and
SHAREHOLDER REPRESENTATIVE SERVICES LLC, a Colorado limited liability
company,

      Plaintiffs,

v.

PNC FINANCIAL SERVICES GROUP, INC., a Pennsylvania corporation,
PNC BANK, N.A., a national association,
HEATHER KELLY, an individual, and
ALEX TSARNAS, an individual,

      Defendants.

---

**SPECIAL MASTER'S ORDER, REPORT AND RECOMMENDATION RE:
PLAINTIFFS' DISCOVERY BRIEF RE: DEFENDANTS' SPOLIATION OF TEXT
MESSAGES [Dkt. 113, item 1]**

---

Plaintiffs filed their Discovery Brief Regarding (1) Defendants' Spoliation of Text

Messages [Dkt. 113, item 1] on December 12, 2019.  Defendants filed their Brief

Regarding Spoliation on the same date.  [Dkt. 115].  The Court and the Parties thereafter

interpreted the Discovery Briefs as a Motion for Sanctions for Spoliation of Evidence.  On

November 30, 2020, the undersigned was appointed as Special Master to resolve

disputes concerning discovery and disclosures.  [Dkt. 324]

Upon reviewing the briefing, the Court ordered an evidentiary hearing on the

Motion.  The hearing took place, via Zoom, on February 2, 2021 and concluded on

February 17, 2021.  Mr. Braunig, Mr. Rothstein, Ms. Ybarra, Mr. Yu, Ms. Joyce, Mr. White,

Ms. Blais, and Mr. Bialecki appeared on behalf of the Plaintiffs.  Mr. Bennett, Mr. Johnson,

Mr. Hoops, Ms. Heinsz, Ms. Jacobs, Mr. Robbins, and Ms. Weissert appeared on behalf of the Defendants.  The Court heard testimony from Defendant Alex Tsarnas, Defendant Heather Kelly, Andrew Crain, and Eric Derk.

The Parties' post-hearing briefs were filed on March 2, 2021 [Dkt. 352 and 353]. The Parties' Response Briefs were filed on March 9, 2021.  [Dkt. 364 and 366].  Plaintiffs then filed their Supplemental Statement regarding their Motion on April 2, 2021.  [Dkt. 377].  Defendants filed their Response to the Supplement on April 9, 2021.  [Dkt. 384]

Having reviewed the foregoing and having heard the arguments of counsel, the Court finds, orders, and recommends as follows:

At issue is whether or not the deletion of certain text messages from the cellphones of Defendants Tsarnas and Kelly should be considered spoliation of evidence and, if so, what the appropriate sanction should be for such conduct.  While the parties agree that certain text messages were deleted from Defendants' cellphones, they disagree about 1) whether or not the deletions were made at a time when Defendants Tsarnas and Kelly had a duty to preserve evidence because litigation was imminent, 2) whether or not the deletions prejudiced the Plaintiffs, and 3) whether or not the deletions were made intentionally or in bad faith.

"Spoliation sanctions are proper when (1) a party has a duty to preserve evidence because it knew, or should have known, that litigation was imminent, and (2) the adverse party was prejudiced by the destruction of evidence."  *Turner v. Public Service C*o. *of Colorado*, 563 F.3d 1136, 1149 (10th Cir. 2009), citing *Burlington N. & Santa Fe Ry. Co. v. Grant*, 505 F.3d 1013, 1032 (10th Cir. 2007).  "If the aggrieved party seeks an adverse

inference to remedy the spoliation, it must also prove bad faith." *Id.  See also* F.R.Civ.P. 37(e) (for electronically stored information, adverse inference instruction requires "finding that the party acted with the intent to deprive another party of the information's use in the litigation".  The burden of proof is a preponderance of the evidence. *Session v. Romero*, 2019 WL 324777 at p. 4 (D. Colo. 2109), citing *Zbylski v. Douglas Cty. Sch. Dist.*, 154 F. Supp. 3d 1146, 1160 (D. Colo. 2015) (noting that a party moving for spoliation sanctions "has the burden of proving, by a preponderance of the evidence, that the opposing party failed to preserve evidence or destroyed it").

While magistrate judges of this Court have disagreed over how to apply this standard, compare *Zbylski, supra*, with *Cache La Poudre Feeds, LLC v. Land O'Lakes, Inc.*, 244 F.R.D. 614, 621 (D. Colo. 2007), the Tenth Circuit has made clear that for spoliation to occur, litigation must be "imminent". *Turner, supra,* at 1149.

Before dealing with the principal assertions made in the motion – that Defendants Kelly and Tsarnas committed sanctionable spoliation by deleting text messages – the Court turns to three arguments raised by the Parties that are more easily resolved:  1) whether allegedly new arguments raised by Plaintiffs deprived the Defendants of due process; 2) whether liability should attach to the deletion of text messages with Luda Semanova; and 3) whether Defendant PNC, as opposed to the individuals who deleted text messages, is liable for spoliation.

<u>Whether Defendants were deprived of due process.</u>

Defendants argue that the evidence presented at the hearing and the arguments raised during briefing went beyond the issue set forth in the original discovery briefs [Dkts. 113 and 115] and, as a result, they were deprived of due process.

I agree that both parties presented evidence and argument that went beyond the issue set forth in the original discovery brief.  However, I reject the notion the Defendants' due process rights were violated.  The actual direct evidence of deletions was provided in an expert report provided well before the hearing.  There were no surprises as far as the information presented at the hearing.  And if Defendants felt ambushed, they could have simply so informed the Court, explained why they needed more time to prepare and asked for that additional time.  They failed to do so.

More importantly, there was a 15-day gap between the first day of the hearing and the second day of the hearing.  This gave Defendants ample time to prepare for the testimony that was presented on the first day by Plaintiffs.

"A party facing the possible assessment of costs, expenses or attorney fees has a due process right to notice that such sanctions are being considered by the court and a subsequent opportunity to respond. An opportunity to be heard does not require an oral or evidentiary hearing on the issue; the opportunity to fully brief the issue is sufficient to satisfy due process requirements." *Resolution Trust Corp. v. Dabney,* 73 F.3d 262, 268 (10th Cir. 1995) (internal citations omitted).  Here, Defendants had a full and fair opportunity to not only brief the issues raised by Plaintiffs, but also had a full and fair opportunity to address the testimony presented at the hearing.

Defendants' reliance on *Hutchinson v. Pfeil*, 208 F.3rd 1180 (10th Cir. 2000), is misplaced.   In *Hutchinson*, the Court and not a party, raised a new issue (Rule 11 sanctions) at a hearing without notice.   There was no opportunity, like here, for the aggrieved party to address the charge.   Here, Defendants had ample opportunity, not to mention 15 days, to respond.

For the foregoing reasons, Defendants claim that they were denied due process is DENIED.

<u>Whether liability should attach to the deletion of texts to Ms. Semanova.</u>

It is undisputed that text messages to Luda Semanova – another SRS employee who left SRS, allegedly at the urging of Defendants – were deleted by Kelly after notice of the lawsuit was received.   However, it is equally undisputed that these texts were ultimately discovered on Semanova's phone and produced by Defendants.   While the deletion of these texts from Defendants' phones and Kelly's denial of the deletions at the hearing is evidence I have considered when determining whether or not Defendants acted intentionally and in bad faith when other texts were deleted, the Semanova deletions themselves cannot be the subject of spoliation sanction because they were recovered and, hence, did not cause any prejudice to Plaintiffs. <u>See</u> *Turner, supra* at 1149 (prejudice is required for spoliation to occur.)

For the foregoing reasons, Plaintiffs' claim that deletion of the Semanova texts constitutes spoliation is DENIED.

<u>Whether Defendant PNC is liable for spoliation.</u>

There is no evidence that the corporate PNC Defendants deleted any text messages and no evidence that Defendant PNC caused any text messages to be deleted, much less in bad faith.  PNC immediately issued a litigation hold once it received the Complaint.  Plaintiffs initial communications with PNC stated that "SRS does not currently believe that PNC involved . . .".  Ex. 13.  Plaintiffs cites to no authority that a corporate entity can liable for spoliation itself when it did not itself destroy any evidence or can be liable for sanctions vicariously.

For the foregoing reasons, Plaintiffs' claim that Defendant PNC should be liable for spoliation is DENIED.

The Court now addressed the more central claims in this case:  Whether or not Defendants Kelly and Tsarnas' conduct constitutes spoliation and, if so, whether or not it was done in bad faith such that an adverse inference instruction is warranted.  To describe the evidence presented as a difficult jigsaw puzzle would be an understatement.  <u>See</u> Recommendation, *infra*, at pp. 12 - 13.

<u>Whether or not the deleted texts caused prejudice to Plaintiffs.</u>

Less difficult, however, is determining whether or not Plaintiffs suffered prejudice from the deletions.  Here, Plaintiffs clearly did.

"With regard to prejudice, "[t]he burden is on the aggrieved party to establish a reasonable possibility, based on concrete evidence rather than a fertile imagination that

access to the lost material would have produced evidence favorable to his cause."
*McCargo v. Texas Roadhouse, Inc.*, 2011 WL 1638992 (D. Colo.) at p. 5, citing *Gates
Rubber Co. v. Bando Chem. Indus., Ltd.*, 167 F.R.D. 90, 104 (D. Colo.1996). "A
prerequisite to deciding whether spoliation occurred is determining whether Plaintiff has
produced evidence that relevant e-mails are, in fact, missing." *Grabenstein v. Arrow
Electronics, Inc.*, 2012 WL 1388595 (D. Colo.) at p. 2.

It does not take any imagination to determine that the text messages deleted by
Kelly and Tsarnas more than possibly contained relevant information. One need only
look at the texts between Kelly and Tsarnas and among Kelly, Tsarnas and Semanova
that <u>have</u> been produced to see that Defendants were not merely exchanging
pleasantries. <u>See</u> WhatsApp texts attached as Appendix 1, 2, 3, 4, 15 ("I think it's so
exciting that acquiom is going to start bleeding clients. I love it. You're awesome."), 16
("It's going down the list now and it's what we've been waiting for . . . To take SRS
down".), and 18 ("The fact that with in one week Srs will realize they lost two of their
biggest clients that type of shit gets me up in the morning I am so freaking excited to do
what I can to do which is destroyed Christa. Snarky bitch".) (grammar and spelling from
originals) to Plaintiffs' Post-Hearing Brief. [Dkt. 354]. And the missing texts are at the
time when it is undisputed that Defendants were talking to each other about the very
issues that are the subject of this action.

I find that there is more than a reasonable possibility that the missing texts would
have produced information favorable to Plaintiffs and, therefore, Plaintiffs have met their
burden of proving prejudice.

<u>Defendants Kelly and Tsarnas – Evidence showing spoliation occurred.</u>

The more difficult determination is whether or not Defendants Kelly and Tsarnas had a duty to preserve evidence because they knew, or reasonably should have known, that litigation was imminent.

On March 9 and March 20, 2018, upon learning that PNC hired or intended to hire Kelly and Tsarnas, SRSA's counsel sent what it describes as "legal warning letters" to PNC and Tsarnas.  Exs. 13 and 16.  The March 9 letter states that SRSA intends to monitor Kelly and Tsarnas' activities and "will aggressively pursue any legal remedies available to us" should they breach the terms of their agreements.  The March 20 letter to Tsarnas states that SRSA believes that he was already in breach of his contractual obligations and "[u]nless SRS becomes convinced that you have not violated your legal obligations, it intends to immediately pursue all available remedies against you . . .".  PNC, Kelly and Tsarnas then retained outside counsel.  Ex. 18.

On March 13, 2018, 4 days after the initial "legal warning letter', Natalie Moritz at PNC sent a communication to Marianne Dean and Thomas Lang at PNC concerning the SRS letter.  That letter was not produced in this litigation, based on PNC's claim that in concerned legal advice "in anticipation of litigation".  PNC Privilege Log, Ex. 54, p. 2. Subsequent communications among these individuals were also withheld as legal advice in anticipation of litigation.  *Id*.  Communications including both Kelly and Tsarnas as early as June 16, 2018 were also withheld as communications with counsel "in anticipation of litigation." *Id*. at p. 29

On May 15, 2018, SRSA's counsel followed-up with another letter concerning Tsarnas' conduct. Ex. 22. In that letter counsel stated: "Based on the information learned to date, SRS intends to remedy Mr. Tsarnas's violations to the fullest extent possible. SRS has prepared and is ready to file the attached complaint against Mr. Tsarnas."

After March of 2018, the number of recoverable texts between Kelly and Tsarnas plummeted. In March 2018, 485 texts were recovered. In April 2018, 0 texts were recovered. See Graph of Non-Deleted Text Messages on Plaintiffs' Post-Hearing Brief [Dkt. 353], p. 2., Ex. 160.

After Tsarnas received notice of the lawsuit, which was filed on July 11, 2019, he deleted all of his texts with Kelly. He also deleted his WhatsApp application, which also contained texts with Kelly. Hearing Transcript ("Tr."), pp. 47-50. Forensic imaging of the cellphones confirmed that Tsarnas deleted at least one text with Kelly after learning of the lawsuit. Tr., pp. 319-320.

Tsarnas and Kelly principally texted using iMessages (texts through their Apple iPhones) and WhatsApp. All of her iMessages prior to February 17, 2019 were deleted. Tr., p. 245, Ex. 160. Kelly and Tsarnas's iPhones have a default setting to keep texts "Forever". Both Kelly and Tsarnas at some point changed the default settings. Although she testified at the hearing that she did not delete any texts after she received notice of the lawsuit, it was later discovered that Kelly deleted her entire text chain with Luda Semanova after receiving notice of the lawsuit. Tr., p. 172, Ex. 161.

On March 24, 2018, Kelly texted a former SRSA employee, Amanda Jackson, on WhatsApp. In that text conversation, she indicated that certain text messages can't be

tracked. ("They can't track these messages.")  She went on to state:  "You'd of course want to delete the app and close your account if they ever took your phone."  App. A-23 to Plaintiffs' Post-Hearing Brief.

<u>Defendants Kelly and Tsarnas – Evidence showing spoliation did not occur</u>.

While Defendants received "litigation warning letters", Exs. 13 and 16, conspicuously absent from those letters is any request for Defendants to preserve documents.  In fact, despite the fact that the March 20, 2018 letter to Tsarnas said that SRSA "intends to immediately pursue all available remedies against you", it did not do so.  There were no actual threats of a lawsuit against Kelly in the litigation warning letters.

No further threats of litigation were sent until the Complaint was actually filed more than a year later, on July 11, 2019, even though the litigation letters stated that SRSA was "monitoring" the Defendants' conduct during this period of time.

When the Complaint was filed, Kelly's phone was set to delete texts after one year. Tr., p. 279.  Tsarnas's phone was set to delete texts after 30 days.  Tr., p. 285.  There is no way to forensically determine from the iPhones when a text message was deleted other than it must have been deleted after it was sent.  *Id*.

While it is undisputed that Kelly and Tsarnas switched to WhatsApp for their text messaging, Kelly testified that she did so not to make it harder to trace their messages, but because she was concerned that SRSA was eavesdropping on her text messages and WhatsApp was more secure.  Tr., pp. 186-187.  Although Tsarnas deleted his WhatsApp application, Kelly did not and she preserved and produced all of her WhatsApp messages with Tsarnas.  *Id*.

Tsarnas testified that he was "kind of OCD" about his text inbox and used the text inbox as a to-do list, deleting texts that he no longer felt he needed to deal with. This included his texts with Kelly, which he didn't think were relevant. Tr., pp. 47-50.

<u>Findings and recommendations regarding spoliation of text messages.</u>

This is a close case. There is evidence to support spoliation and evidence to support a finding that spoliation did not occur. However, based on my review of the evidence and the credibility of the witnesses, I find that, based on a preponderance of the evidence, it is more likely than not that Kelly and Tsarnas failed to preserve their text messages when they knew or should have known that litigation was imminent and that they did so intentionally. In doing so, I rely not only on the evidence and the arguments of counsel, but also on what I believe to be a more common-sense approach to the evidence. Kelly and Tsarnas knew that litigation was, at a minimum, something to be concerned about. Under such circumstances, if the texts were exculpatory instead of inculpatory, I would suspect that they would have made sure to save them. That, of course, did not happen.

Just as importantly, I also find that a reasonable jury, hearing the same evidence I heard, could reasonably come to the opposite conclusion: That Defendants did not fail to preserve evidence when litigation was imminent and/or did not act in bad faith.

Did Kelly and Tsarnas switch their text deletion settings from "Forever"? If so, did they do so to unclutter their inboxes or did they do so because they understood it would delete their communication with each other? Did they switch to WhatsApp because Kelly was concerned about her texts being monitored or did they do so because they believed

WhatsApp messages couldn't be retrieved once deleted?   Did Tsarnas delete his WhatsApp application because he believed there was nothing relevant in those messages or because he wanted to make sure that the messages were not recovered?   Was the dramatic decrease in recoverable texts in April 2018 the result of Defendants' efforts to delete incriminating evidence or the result of automatic deletions?

There are no easy answers to any of these questions.  The answers rely to a great extent to an evaluation of the demeanor of Kelly and Tsarnas as witnesses.  A reasonable jury could easily come to a different conclusion than I have reached here.   Unlike the cases cited in the Parties' briefing, where the facts are set forth as certain, the facts here are anything but certain.

As a result, I do not believe that an order is appropriate other than the orders I have issued above, nor do I believe a sanctions order is appropriate at this time.  Rather, I instead chose to make a recommendation pursuant to F.R.C.P 53 and paragraph 5 of the Court's Order of Appointment [Dkt. 324] ("<u>Review of Special Master's Reports, Orders or **Recommendations**.</u> Subject to the provisions of Fed. R. Civ. P. 53(f), any report or order of the Special Master is effective upon its issuance. Any objection to any report, order or **recommendation** of the Special Master shall be filed within the time period stated in Fed. R. Civ. P. 53(f)."). (emphasis added).

The Court hereby RECOMMENDS that if Plaintiffs present a prima facie case at trial that supports an adverse inference instruction, then Judge Domenico can submit an adverse inference instruction to the jury to the effect that <u>if</u> the jury finds that Kelly and/or Tsarnas failed to preserve text messages when they knew or should have known that litigation was imminent, and did so in bad faith, then the jury "may or must" - per Rule

37(e) -infer that the evidence, if it had been available, would have been detrimental to the Defendant's case.

The facts here are far from clear. To issue an order requiring an adverse inference instruction under these circumstances, when a jury could reasonably conclude that spoliation did not occur and/or that Defendants acted in good faith, would be improper. In my view, that decision is best left to the jury under these circumstances.

Dated:  September 8, 2023            BY THE COURT

David M. Tenner, Special Master

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing **SPECIAL MASTER'S ORDER, REPORT AND RECOMMENDATION RE: PLAINTIFFS' DISCOVERY BRIEF RE: DEFENDANTS' SPOLIATION OF TEXT MESSAGES [Dkt. 113, item 1]** was electronically filed with the Clerk of the Court using the CM/ECF system on this 8th day of September, 2023, which will send notification of such filing to the following parties:

> Warren A. Braunig  wbraunig@keker.com
> Michelle S. Ybarra  mybarra@keker.co
> Benjamin D. Rothstein  brothstein@keker.com
> Katie Lynn Joyce  kjoyce@keker.com
> Victor H. Yu  vyu@keker.com
> Puja V. Parikh  pparikh@keker.com
> KEKER, VAN NEST & PETERS LLP
> 633 Battery Street
> San Francisco, CA 94111-1809
> Telephone: 415-391-5400
> Facsimile: 415-397-7188
>
> Scott R. Bialecki  sbialecki@sheridanross.com
> Brian S. Boerman  bboerman@sheridanross.com
> SHERIDAN ROSS P.C.
> 1560 Broadway, Suite 1200
> Denver, Colorado 80202
> Telephone: 303 863 9700
> Facsimile: 303 863 0223
> Email: litigation@sheridanross.com
>
> *Attorneys for Plaintiffs*
> SRS ACQUIOM INC. and
> SHAREHOLDER REPRESENTATIVE SERVICES LLC
>
> James Forrest Bennett  jbennett@dowdbennett.com
> Megan S. Heinz  mheinsz@dowdbennett.com
> Jeffrey R. Hoops jhoops@dowdbennett.com
> DOWD BENNETT LLP
> 7733 Forsyth Boulevard, Suite 1410
> St. Louis, MO 63105
>
> Matthew E. Johnson  mjohnson@dowdbennett.com
> DOWD BENNETT LLP
> 1775 Sherman Street, Suite 2010
> Denver, Colorado 80203
> Telephone: 303-353-4361

Facsimile: 314-863-2111

Hara K. Jacobs  jacobsh@ballardspahr.com
Noah S. Robbins  robbinsn@ballardspahr.com
Elizabeth P. Weissert  weisserte@ballardspahr.com
BALLARD SPAHR LLP
1735 Market Street, 51st Floor
Philadelphia, PA 19103-7599
Telephone: 215-668-8500

*Attorneys for Defendants*
PNC FINANCIAL SERVICES GROUP, INC.,
PNC BANK, N.A., HEATHER KELLY, and ALEX TSARNAS

s/  Heather Grant
Heather Grant